1   Andrew Goodman, Esq. (State Bar No. 115685)
    **GOODMAN LAW OFFICES**
2   **A PROFESSIONAL CORPORATION**
    30700 Russell Ranch Road
3   Suite 250
    Westlake Village, CA. 91362
4   PHONE: (818) 802-5044
    FACSIMILE: (818) 975-5256
5   E-Mail: agoodman@andyglaw.com

6

    Attorneys for Petitioning Creditors
7

8                    **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

10

11  In re:                                  Case No. 2:20-bk-21020-BR

12  THOMAS VINCENT GIRARDI                  [Chapter 7]

13                     Debtor.              **MOTION OF PETITIONING
                                            CREDITORS' FOR APPOINTMENT
14                                          OF INTERIM TRUSTEE PURSUANT
                                            TO 11 U.S.C. § 303(g); MEMORANDUM
15                                          OF POINTS AND AUTHORITIES.**

16                                          **[DECLARATIONS OF PAUL CODY,
                                            BORIS TREYZON AND KIMBERLY
17                                          ARCHIE FILED CONCURRENTLY
                                            HEREWITH ALONG WITH REQUEST
18                                          FOR JUDICIAL NOTICE]**

19                                          **[11 U.S.C. § 303(g); 11 U.S.C. § 701 and
                                            Fed.R.BankP. 2001]**
20
                                            **[FILING IN CONJUNCTION WITH
21                                          APPLICATION FOR ORDER
                                            SHORTENING TIME, LBR 9075-1(b)]**
22
                                            **Hearing Date:**
23                                          **DATE: December ___, 2020
                                            TIME:  _____ A.M/P.M.**
24                                          **CTRM: "1668"**
                                                   **255 E. Temple Street**
25                                                 **Los Angeles, CA. 90012**

26

27
    _____
28  ///

                                    1

# **Table of Contents**

I.  INTRODUCTION .................................................................................................... 4

II.  FACTUAL BACKGROUND .................................................................................. 5

    A.  The Parties ........................................................................................................ 5

    B.  The Estate's Assets Must Be Protected During the Gap Period......................... 6

    C.  Debtors Have a Demonstrated History of Misrepresentation and Dissipation of Assets, Necessitating an Interim Trustee........................................................................... 7

    D.  Lenders' CAL II and Stillwell Pursue the Appointment of a Receiver Over GK ........... 10

    E.  Due to Girardi's Mishandling of Funds, the US District Court for the Northern District of Illinois Orders that a Trustee Be Appointed and Freezes All Assets of GK and Mr. Girardi 10

    F.  Competing Law Firms Are Actively Seeking to Divert Estate Assets to Themselves ....... 12

    G.  This Bankruptcy Was Filed to Protect Against the Dissipation of Assets ..................... 12

III.  LEGAL ARGUMENT ......................................................................................... 13

    A.  Section 303(g) Authorizes the Court to Appoint an Interim Trustee .............................. 13

    B.  Federal Rule Of Bankruptcy Procedure 2001 Sets Out The Procedure For The Appointment Of An Interim Trustee.......................................................................... 13

    C.  Movants Have Satisfied the Procedural Requirements for the Appointment of an Interim Trustee ........................................................................................................ 14

    D.  Appointment of an Interim Trustee is Necessary to Preserve the Estate's Property and Prevent Loss ........................................................................................................ 14

    E.  There is Reasonable Likelihood that an Order for Relief Will be Entered Against Debtor 16

    F.  Any Bond Requirement Should be Minimal......................................................... 18

IV.  CONCLUSION.................................................................................................... 18

i

1

## **TABLE OF AUTHORITIES**

2

CASES

3  *Accountants Referral Serv., Inc.*, 142 B.R. at 429)------------------------------------------------------- 16

4  *Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *3------------------------------------------------ 16

5  *Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *6------------------------------------------------ 16

6  *Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *7------------------------------------------------ 18

7  *In re Alpine Lumber & Nursery*, 13 B.R. 977, 979 (Bankr. D. Cal. 1981) ------------------------ 13

8  *In re Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221 (Bankr. D. Md. 2007) ------------------------- 15

9  *In re Concrete Pumping Service, Inc.*, 943 F.2d 627 (6th Cir. 1991)------------------------------------ 17

10 *In re DiLorenzo, III*, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993)----------------------------------- 16

11 *In re Euro-American Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D. N.Y. 2007)------------------------ 17

12 *In re Focus Media, Inc.*, 378 F.3d 916, 928-29 (9th Cir. 2004) (citing *In re Bishop Baldwin, Rewald, Dillingham & Wong, Inc.*, 779 F.2d 471, 475 (9th Cir. 1985))------------------------------------------- 17

13 *In re James Plaza Joint Venture*------------------------------------------------------------------------- 15

14 *In re James Plaza Joint Venture*, 62 B.R. 959 (Bankr. S.D. Tex. 1986)----------------------------------- 15

15 *In re James Plaza Joint Venture*, 62 B.R. 959, 961 (Bankr. S.D. Tex. 1986)------------------------------ 13

16 *In re Mylotte, David & Fitzpatrick*, 2007 WL 2033812 at *6 (Bankr. E.D. Pa. 2007) ------------------- 17

17 *In re Professional Accountants Referral Services, Inc.*, 142 B.R. 424 (Bankr. D. Colo. 1992). ------------- 13

18 *In re WLB-RSK Venture*, 320 B.R. 221 (9th Cir. B.A.P. 2004) ----------------------------------------- 17

19 *James Plaza Joint Venture*, 62 B.R. at 962 ------------------------------------------------------------- 15

20 STATUTES

21 11 U.S.C. § 109 ----------------------------------------------------------------------------------------- 16

22 11 U.S.C. § 303(b)(1) ----------------------------------------------------------------------------------- 17

23 11 U.S.C. § 303(g)--------------------------------------------------------------------------------------- 13

24 RULES

25 Federal Rule of Bankruptcy Procedure ("FRBP") 2001(a) ----------------------------------------------- 14

26 Federal Rule of Bankruptcy Procedure 2001------------------------------------------------------------- 13

27 FRBP 2001(b) ------------------------------------------------------------------------------------------- 18

28

**TREATISES**

*9 Collier on Bankruptcy* ¶ 2001.02[2] at p. 2001-5 (15th ed. rev. 2008) -------------------------------------- 15

*9 Collier on Bankruptcy* ¶ 2001.02[3] at p. 2001-6 ------------------------------------------------------------ 15

1       TO INVOLUNTARY DEBTORS GIRARDI KEESE ("GK") AND THOMAS

2 GIRARDI, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL PARTIES

3 REQUESTING SPECIAL NOTICE AND THEIR RESPECTIVE ATTORNEYS OF

4 RECORD:

5       PLEASE TAKE NOTICE that pursuant to an Order Shortening Time granted on

6 December 24, 2020, a hearing will take place on **December ___, 2020 at _____** before

7 the Honorable Barry Russell, United States Bankruptcy Judge, in Courtroom "1668" of

8 the above-entitled Court located at 255 E. Temple Street, Los Angeles, California 90012

9 to consider the <u>Emergency Motion of Robert M. Keese, Jill O'Callahan, as Successor In</u>

10 <u>Interest to James O'Callahan, John Abassian, Erika Saldana, Virginia Antonio, and  Kimberly</u>

11 <u>Archie (collectively "Petitioning Creditors" or "Movants") For An Order Directing the United</u>

12 <u>States Trustee to Appoint an Interim Trustee Under 11 U.S.C. 303(g)</u> (the "Motion").

13       This Motion is brought pursuant to Local Bankruptcy Rule 9075-1(b) on shortened notice;

14 11 U.S.C. § 303(g); 11 U.S.C. § 701 and Fed.R.Bankr.P. 2001.

15       The Motion is based upon this Motion, the attached Memorandum of Points and

16 Authorities, the declarations of Paul Cody, Boris Treyzon and Kimberly Archie filed concurrently

17 with this Motion, the file in this case of which this Court may properly take judicial notice and

18 any other matters and evidence which may be presented to the Court at the hearing on the

19 Emergency Motion.

20       PLEASE TAKE FURTHER NOTICE that pursuant to the Order Shortening Time granted

21 on December 24, 2020, any response and/or Opposition MUST be filed so as to be <u>RECEIVED</u>

22 **no later than December ___ at ____ p.m.** by (i) Counsel for Petitioning Creditors at the address

23 listed in the upper left-hand corner on the first page of this document; (ii) the Office of the United

24 States Trustee, 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA. 90017, Attn: Ron Maroko,

25 Esq., Ron.Maroko@usdoj.gov

26       PLEASE TAKE FURTHER NOTICE that any opposition must also be filed with the

27 Bankruptcy Court, no later than December ___, 2020 at ____ p.m. Any reply shall be filed with

28 the Bankruptcy Court and served on only those parties filing opposition such that the reply is

1  RECEIVED by the Bankruptcy Court no later than December ___, 2020 at ___ p.m.

2          WHEREFORE, Petitioning Creditors respectfully requests that the Court (i) find that

3  Notice of this Emergency Motion is appropriate under the circumstances; (ii) grant the Motion;

4  (iii) enter an Order Directing the United States Trustee to Appoint an Interim Chapter 7 Trustee

5  Under 11 U.S.C. 303(g); and (iv) grant such other and further relief as the Court deems just and

6  proper.

7  DATED: December 24, 2020              GOODMAN LAW OFFICES,
                                        A Professional Corporation
8
9                                       By: /s/ Andrew Goodman
                                            ANDREW GOODMAN
10                                          Attorneys for Petitioning Creditors

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On December 18, 2020, involuntary bankruptcy petitions (the "Petitions") were filed against Girardi Keese ("GK") and Thomas Girardi ("Girardi"). The Petitions were served on GK and Girardi on December 22, 2020. GK and Girardi's responses to the Petitions must be filed no later than January 15, 2021. The Petitions were filed and served:

(a)    after numerous secured and unsecured creditors commenced litigation against GK and Girardi;

(b)    after numerous secured and unsecured creditors obtained judgments, writs of attachments, etc. against GK and Girardi and executing on assets;

(c)    after the U.S. District Court, N.D. Illinois, Hon. Thomas M. Durkin, entered an Order in the *In re Lion Air Flight JT610 Crash*, (i) holding GK and Girardi in civil contempt, (ii) ordering all of their assets frozen pending further order of the Court; and (iii) ordering that the "Girardi Assets" not be used to pay attorneys' fees until a Trustee is appointed in these involuntary cases and then only upon application to and approval by the Trustee (the "Freeze Order"). Request for Judicial Notice ("RJN"), Exhibit "A".

This Motion was filed to obtain appointment of an interim trustee during the gap period to, among other things:

1.    Immediately begin protecting the assets of proposed debtor's estates for the benefit of all creditors – not just the creditors with "deep pockets".

2.    Retain the services of an experience law firm, evaluate all cases in which GK and/or Girardi are counsel of record, communicate with clients and make decisions regarding continued litigation, settlement, etc.

3,    Secure settlement proceeds for cases that have been settled.

4.    Insure that work is being performed by third party vendors and experts to protect GK and its clients' interests.

5.    Initiate an immediate investigation and accounting to establish GK's assets and liabilities and whether assets have been transferred or dissipated.

- 4 -

1    If an interim trustee is not appointed immediately pursuant to this Motion, then

2    GK, Girardi and its creditors face the immediate threat of losing clients/files, which are

3    believed to be the single largest asset of the Estates, including losing files to third-party

4    law firms who are already seeking to take over these cases. This would have the effect of

5    significantly reducing the amount of monies available for GK's and Girardi's creditors.

6    Moreover, if an interim trustee is not appointed, the distinct possibility exists that

7    defendants in cases which have already settled will be emboldened to refuse to pay the

8    agreed upon settlement amounts, claiming they do not know to whom those settlement

9    proceeds should be paid. For all of these reasons and based upon the facts and law set

10   forth in greater detail below, the declarations filed concurrently herewith, the exhibits and

11   RJN, absent appointment of an interim Chapter 7 trustee during this Gap Period, creditors

12   will suffer irreparable harm.

13   **II.    FACTUAL BACKGROUND**

14   **A.    The Parties**

15   GK, a general partnership, is a plaintiff's law firm based in Los Angeles, California

16   practicing in the areas of personal injury, defective products, sexual abuse, toxic torts,

17   business law, employment law, and aviation law. Cody Decl. ¶ 3. The current status of

18   GK is unknown to Movants and it is unclear whether it is still operational. *Id.* ¶ 3. A

19   significant number of GK's attorneys have resigned in recent months such that as of

20   December 21, 2020, only 4 attorneys remain in addition to Mr. Girardi and his brother

21   Jack Girardi. *Id.* ¶ 3. As of the date of the filing of this Motion, GK's website

22   (www.girardikeese.com) is not active. *Id.* ¶ 3. As of the filing of the Involuntary Petition,

23   GK was counsel of record in a significant number of matters which were undertaken on a

24   contingency basis such that GK/Girardi will receive payment of its legal fees if a case

25   resolves in favor of GK's clients. *Id.* ¶ 4. If GK and/or Girardi are not actively prosecuting

26   these cases, clients and GK risk losing a substantial amount in attorneys' fees, which

27   could be used to pay creditors. Girardi is the founding partner of GK and purports to hold

28   100% ownership of GK. *Id.* ¶ 5.

**B.    The Estate's Assets Must Be Protected During the Gap Period**

Perhaps the most important and valuable assets of the Debtor's bankruptcy estate ("Estate") are the Debtor's rights to payment for their representation of clients in a number of lawsuits. Cody Decl. ¶ 31. GK is expected to receive at least $10 million from settlements reached in certain settled cases, including the cases below, and such payments are expected to be made imminently ("Settled Cases"):

- *Gabriel Abikzer and Maria Abikzer v. Jeffrey Joel, City of Los Angeles, et al.*, Case No. BC706830, Superior Court of California – County of Los Angeles ("*Abikzer*");

- *Eileen A. Staats v. City of Palo Alto.*, Case No. 115-CV-284956, Superior Court of California – County of Santa Clara ("*Staats*");

- *Jane Doe v. Princess Cruise Lines, Ltd.*, Case No. 2:19-cv-9181, US District Court for the Central District of California—Los Angeles Division ("*Princess Cruise Lines*");

- *Saldana, et al. v. Garcia, et al.*, Case No. BC605449, Superior Court of California – County of Los Angeles ("*Saldana*");

- *Ricarte v. Victor Valley Medical*, Case No. CIVSD1717346, Superior Court of California – County of San Bernardino ("*Ricarte*");

- *Estate of Timothy Sweeney, et al. v. Olympus America Inc.*, Case No. BC640556, California Superior Court – County of Los Angeles ("*Sweeney*");

- *McCarty v. Siung*, Case No. RGI 7856893, Superior Court of California - County of Alameda ("*Ghost Ship*"); and

- *Route 91* which arose out of the October 1, 2017 shooting in Las Vegas. In June, 2018, all pending actions were removed to federal court in the District Court of Nevada located in Clark County, Nevada. A settlement was reached pursuant to which $800 million dollars was supposedly to be deposited into a settlement fund by November 13, 2020. GK represents twenty-seven plaintiffs in that matter.

1   Cody Decl. ¶ 31.

2        In addition to the Settled Cases, several other cases are pending as to which GK is

3   owed significant sums—in the tens of millions of dollars for work performed on such

4   cases ("Active Cases"). *Id.* ¶ 32. For instance, in just one (consolidated) Active Case,

5   *Southern California Gas Leak Cases*, Case No. JCCP4861 (Cal. Super. Ct., Los Angeles

6   County), Debtors represent over 8,000 clients who allege to have been exposed to harmful

7   chemicals. *Id.* Debtors have represented to its creditors that the gross settlement in that

8   case is expected to be $1 billion. Cody Decl. ¶ 32 & Ex. 5 to Cody Declaration. **[Bates**

9   **Stamp Pgs 87 – 111].** If an interim trustee is not promptly appointed, there is a significant

10  risk that payments made in these cases to the Debtors will be transferred, concealed, or

11  otherwise dissipated. Further, an interim trustee is necessary to provide stability to GK

12  and to preserve the confidence of its clients during the period of time until the Court rules

13  on the involuntary petition.

14       **C.**    **Debtors Have a Demonstrated History of Misrepresentation and**
          **Dissipation of Assets, Necessitating an Interim Trustee**
15
16       The Debtors have demonstrated a history of not only of failing to pay creditors, but

17  also making hollow promises to pay creditors while dissipating or transferring away

18  assets. Cody Decl. ¶¶ 22-25;29. As demonstrated in this Statement of Facts and as more

19  fully detailed in the concurrently filed Declarations of Paul Cody, Boris Treyzon, Esq.,

20  and Kimberly Archie, the evidence of GK and Giardi's insolvency is overwhelming. The

21  prompt appointment of an interim trustee will help the Estate maximize assets for the

22  benefit of its creditors in a transparent manner without the Debtors' concealment or

23  transfer of funds coming into the Estate.

24       Much of GK and Girardi's debt is owed to litigation finance companies, such as

25  California Attorney Lending, Inc. ("CAL II"), Stillwell Madison LLC ("Stillwell"),

26  Virage Capital Management ("Virage"), and Law Finance Group. *Id.* These companies

27  have lent GK millions of dollars in working capital credit lines. *Id.* Such credit lines

28  typically are secured by certain assets of GK (and, in the case of CAL II, all assets of both

- 7 -

1    Debtors), including rights to payment from the firm's contingency fee cases. *Id.* ¶¶ 12 -

2    19. In connection with pledging their assets, Debtors promised to their various lenders not

3    to pledge the same assets as collateral for other debt. Despite these promises, Debtors

4    breached their agreements and re-pledged the same collateral to other lenders without

5    disclosing that they were doing so in contravention of their loan agreements. *See Id.* ¶ 21;

6    RJN, Exs. "A", "H" and "S".

7         By 2018, the Debtors had incurred so much debt that their cash flow began to

8    tighten and they became unable to pay their debts as they became due. Debtors defaulted

9    under several loans from their lenders. Cody Decl. ¶ 21. GK and Girardi made significant

10   promises of repayment in forbearance and other agreements only to quickly default on

11   such promises. *Id.* ¶ 21; RJN, Exs. "A", "H", "S" **[Bates Stamp Pgs 006; 121; 295]**. As a

12   result, the Debtors faced significant litigation by their lenders alleging not only

13   nonpayment but also breaches of various covenants, including covenants that they would

14   not repledge collateral to other lenders. Cody Decl. ¶¶ 33-34; RJN, Exs. "A", "H", and

15   "S". In June 2019, Law Finance Group obtained entry of a $6 million judgment against

16   GK and Girardi. Cody Decl. ¶ 22; RJN, Ex. "I". This judgment later was satisfied in full

17   apparently by using funds constituting collateral of other, senior lenders without their

18   knowledge. Cody Decl. ¶ 22.

19        In 2020, GK and Girardi's creditor Stillwell obtained right to attach orders in the

20   amount of nearly $6,000,000, in a lawsuit against the Debtors for fraud and breach of

21   contract. *Id.* ¶ 23; RJN, Ex. "U". In its July 14, 2020, written ruling on Stillwell's request

22   for right to attach orders, the California Superior Court found, among other things, that

23   based on the significant evidence of GK and Girardi's inability to pay lenders and service

24   providers, GK and Girardi were "insolvent...in that they are generally not paying their

25   debts as they become due." Cody Decl. ¶ 23; RJN, Ex. "U".

26        After GK and Girardi stopped paying CAL II, on or around October 27, 2020, CAL

27   II obtained entry of a confession of judgment against the Debtors in the amount of

28   approximately $6.25 million. Cody Decl. ¶ 10 &30; Exhibit 2 to Cody Declaration.

- 8 -

1    GK and Girardi have also failed to pay former clients and service

2    providers/vendors. As discussed in greater detail in section II.E., *infra*, the United States

3    District Court for the Northern District of Illinois recently found the Debtors to have

4    misappropriated settlement funds owing to clients that are families of the victims of Lion

5    Air Flight 610, which crashed near Jakarta, Indonesia, after alleged system failures. RJN,

6    Ex. "K" **[Bates Stamp Pg. 200]**. GK and Girardi also failed to pay former clients Joseph

7    Ruigomez, Kathleen Ruigomez, and Jaime Ruigomez (together, "Ruigomezes") obtained

8    entry of a stipulated judgment against Debtors on April 20, 2020 in the principal amount

9    of $11,000,000. Cody Decl. ¶ 24; RJN, Ex. Q. **[Bates Stamp Pg.282]**

10    Prior to the filing of this case, on December 18, 2020 ("Petition Date"), GK and

11    Girardi appear to have agreed to improperly pay Ruigomezes from the attorneys' fees'

12    earned in that case of approximately $5,700,000. These were monies that should be paid

13    to their senior secured lender, CAL II. Cody Decl. ¶ 25. GK and Girardi concealed this

14    promise from CAL II until just months before the Petition Date. *Id.* Other former clients

15    of the Debtors have also sued them for failure to distribute settlement proceeds. Cody

16    Decl. ¶ 24; RJN, Exs. "F", "P", and "R". **[Bates Stamp Pages 104, 276 & 287]**.

17    In addition to GK's and Girardi's lenders, suppliers, and former clients, its various

18    co-counsel are also seeking to recover payments owed by GK and Girardi. On or around

19    September 29, 2020, the Law Offices of Robert P. Finn filed suit against the Debtors

20    alleging that they had failed to disburse funds owed to Mr. Finn pursuant to a co-counsel

21    agreement. RJN, Ex. "F" **[Bates Stamp Pg. 104]**. As discussed in greater detail below,

22    Chicago-based plaintiff's law firm Edelson, P.C. ("Edelson") has sued GK for, among

23    other things, failing to distribute settlement proceeds owed to clients and Edelson, as co-

24    counsel. Cody Decl. ¶ 42; RJN, Ex. "B". **[Bates Stamp Pg. 045]**

25    GK and Girardi have also stopped paying their service providers, including KCC

26    Class Action Services, LLC, which provided litigation support services to GK. RJN, Ex.

27    "D" **[Bates Stamp Pg. 082]** and GSI Group, Inc., which provided armed guard services at

28    Girardi's home. RJN, Ex. "C". **[Bates Stamp Pg.076]**.

- 9 -

**D.    Lenders' CAL II and Stillwell Pursue the Appointment of a Receiver Over GK**

On or around December 4, 2020, based on, among other things, the Debtors' misconduct set forth above, CAL II filed an *ex parte* application for the appointment of a receiver ("Receivership Motion") in the Superior Court of California for the County of Los Angeles in Case No. 20STCP03546. RJN, Ex. "A". **[Bates Stamp Pg. 005]**. Creditor Stillwell joined in this motion. *Id.* After the Receivership Motion was filed the Debtors, CAL II, a plaintiff's law firm known as Abir Cohen Treyzon Salo, LLP ("ACTS"), and a collection agent designated by ACTS had entered into an agreement for the transfer of responsibility for certain cases from GK to ACTS and for the segregation, preservation, and distribution of certain proceeds from such cases. Cody Decl. ¶ 38.

Prior to the Petition Date, ACTS began the process of associating into various cases as counsel of record and transferring certain files. *Id.*

At the hearing on the Receivership Motion, the court stated it was inclined to appoint a receiver over GK and based on CAL II's tentative withdrawal of the Receivership Motion based on its agreement with the ACTS law firm, continued the hearing on the Receivership Motion to allow the parties to decide whether to continue pursuing it. *Id.* ¶ 39.

Before the Receivership Motion was decided, CAL II, Stillwell, and ACTS reached an agreement in principle concerning the segregation and preservation of funds constituting GK's lenders' collateral. In light of the agreements reached with the ACTS firm, CAL II withdrew the Receivership Motion. *Id.* It was further mooted by order of the US District Court for the Northern District of Illinois entered an order providing for the appointment of a trustee and freezing all assets of the Debtors. *Id.*

**E.    Due to Girardi's Mishandling of Funds, the US District Court for the Northern District of Illinois Orders that a Trustee Be Appointed and Freezes All Assets of GK and Mr. Girardi**

One Active Case in which GK is entitled to significant payment is *In re Lion Air Flight JT 610 Crash* pending in the Northern District of Illinois as Case No. 18-07686

- 10 -

1    ("*In re Lion Air*"). RJN, Ex. "M". **[Bates Stamp Pg. 209]**. In that case, Edelson and GK

2    jointly represented various plaintiffs pursuant to co-counsel agreements. *Id.* On or around

3    December 2, 2020, Edelson filed a motion for an order requiring Debtors to show cause

4    why it should not be held in contempt for violating orders of the court on the grounds that,

5    among other things, Debtors had failed to distribute certain settlement proceeds from

6    defendant Boeing to their clients, the families of victims of the airplane crash. RJN, Ex.

7    "M". In its response, GK admitted that four of six clients at issue had not been paid

8    proceeds owing to them in the amount of $500,000 each. RJN. Ex. "N" **[Bates Stamp Pg.**

9    **224]**. They conceded that GK "does not anticipate the immediate ability to disperse

10   the…outstanding funds." *Id.*

11       Also on December 2, 2020, Edelson filed a complaint in the United States District

12   Court for the Northern District of Illinois Eastern Division against Mr. Girardi and GK,

13   among other defendants, which was designated as Case No. 20-07115 ("*Edelson* Case").

14   RJN., Ex. "B". **[Bates Stamp Pg. 045]**. In the *Edelson* Case, Edelson alleges that Mr.

15   Girardi and GK have been embezzling settlement proceeds that should have been paid to

16   GK's plaintiff clients in the *In re Lion Air* cases. *Id.* Edelson also seeks a constructive

17   trust over all amounts paid by Boeing to Mr. Girardi and GK. *Id.*

18       On December 14, 2020, the *In re Lion Air* court held GK and Mr. Girardi in

19   contempt after finding clear and convincing evidence that the Debtors had violated the

20   court's orders concerning distribution of settlement proceeds. *Id.*, Ex."K" and "N[1]" at

21   32:8-19; 33:10-34:18; 36:19-39:15. When asked what happened to the missing funds, Mr.

22   Girardi's attorney stated "We don't have a comprehensive understanding of the

23   disposition at this time." *Id.* at 16:2-5. When asked whether Mr. Girardi would like to

24   speak to the missing funds, Mr. Girardi's attorney stated "I've advised him to decline

25   that." *Id.* at 16:7-8.

26       The District Court further held that it was "referring this all to the U.S. Attorney's

27   Office" due to "serious ethical violation[s]." *Id.* 30:13-15. The Court entered a civil

28
    ───────────────
    [1] Transcript from OSC Hearing

1    sanction of $2 million and entered a judgment in that amount against GK and Girardi. *Id.*

2    at 37:18-38:6. The court declined to delay entering civil contempt orders, stating that "I'm

3    worried about the money—if there is any money left or has gone elsewhere is going to get

4    harder and harder to track down for the benefit of the people who are owed that money."

5    *Id.* at 37:6-10. The court ordered that a trustee be appointed and ordered an asset freeze as

6    to all assets of GK and Mr. Girardi. *Id.* at 42:12-16; 43:24-44:2; *see also* <u>RJN</u>, Ex. "K"

7    (the "Freeze Order") and "N".

8          In the Freeze Order, the Court did not appoint a trustee expressly based upon the

9    representation that involuntary bankruptcy petitions against the Debtors would soon be

10   filed and upon the courts' and parties' agreement that "a bankruptcy trustee in the Central

11   District of California would be best suited to preserve assets and deal with competing

12   claims." *Id.*

13       **F.**    <u>**Competing Law Firms Are Actively Seeking to Divert Estate Assets to**</u>
     <u>**Themselves**</u>

14   

15         Movants have learned of several attempts by competitors of GK to divert sums

16   owing to GK to themselves both before and after the Freeze Order, as well as before and

17   after the Petition Date. Cody Decl. ¶ 41. For instance, in connection with a settlement

18   reached in the *Abizkzer* case, GK is owed over $7 million for its legal work performed on

19   behalf of clients in that case. *Id.* Notwithstanding GK's and Girardi's rights to significant

20   sums for its legal work on those cases, Edelson now challenges GK's rights to payment,

21   and it has even directed the defendant in that case, the City of Los Angeles, to pay the

22   portion owed to GK to Edelson directly. Cody Decl. ¶ 41. If an interim trustee is not

23   appointed, there is a significant risk assets of GK, including its rights to payment, will be

24   significantly impaired without oversight, transparency, or regard for GK's creditors'

25   interests.

26       **G.**    <u>**This Bankruptcy Was Filed to Protect Against the Dissipation of Assets**</u>

27         On December 18, 2020, Movants filed involuntary petitions under chapter 7 of title

28   11 of the United States Code ("Bankruptcy Code") against GK and Girardi. The

1    Involuntary Petition and Summons and Notice of Status Conference was served on GK

2    and Girardi via mail pursuant to Fed.R.Bankr.P. 7004. The last day to respond to the

3    Involuntary Petitions is January 15, 2021. The initial Status Conference on the Involuntary

4    Petitions is set for February 16, 2021 at 2:00 p.m. (Declaration of Andrew Goodman).

5    **III.    LEGAL ARGUMENT**

6    **A.    Section 303(g) Authorizes the Court to Appoint an Interim Trustee**

7    11 U.S.C. § 303(g) empowers this Court, upon the request of a party in interest

8    such as Movants, and after notice to Debtor and a hearing, to appoint an interim trustee to

9    take possession of the property of Debtor's estate, and to operate Debtor's business until

10    such time as the Court has ruled upon the involuntary petition for relief filed by Movants

11    against Debtor. Section 303(g) reads, in pertinent part, as follows:

12    
> At any time after the commencement of an involuntary case
> under chapter 7 of this title but before an order for relief in the
13    > case, the court, on request of a party in interest, after notice to
> the debtor and a hearing, and if necessary to preserve the
14    > property of the estate or to prevent loss to the estate, may order
> the United States trustee to appoint an interim trustee under
15    > section 701 of this  title to take possession of the property of
> the estate and to operate any business of the debtor.
16    
17    11 U.S.C. § 303(g). *See In re James Plaza Joint Venture*, 62 B.R. 959, 961 (Bankr. S.D.

Tex. 1986) (appointing an interim trustee in an involuntary Chapter 7 petition under the section
18    
303(g) standard); *In re Alpine Lumber & Nursery,* 13 B.R. 977, 979 (Bankr. D. Cal. 1981)
19    
(finding appointment of interim trustee warranted in involuntary chapter 11 petition under
20    
303(g)); *In re Professional Accountants Referral Services, Inc.*, 142 B.R. 424 (Bankr. D. Colo.
21    
1992).
22    
23    **B.    Federal Rule Of Bankruptcy Procedure 2001 Sets Out The Procedure For
The Appointment Of An Interim Trustee**

24    Federal Rule of Bankruptcy Procedure 2001 sets out the procedure for the appointment of

25    an interim trustee before entry of an order for relief in a chapter 7 case. It provides:

26    
> (a) Appointment. At any time following the commencement of an
> involuntary liquidation case and before an order for relief, the court
27    > on written motion of a party in interest may order the appointment
> of an interim trustee under §303(g) of the [Bankruptcy] Code. The
28    > motion shall set forth the necessity for the appointment and may be

- 13 -

granted only after hearing on notice to the debtor, the petitioning creditors, the United States trustee, and other parties in interest as the court may designate.

(b) Bond of movant. <u>An interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court,</u> conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under §303(i) of the [Bankruptcy] Code.

(c) Order of appointment. The order directing the appointment of an interim trustee shall state the reason the appointment is necessary and <u>shall specify the trustee's duties.</u>

(d) Turnover and report. Following qualification of the trustee selected under § 702 of the [Bankruptcy] Code, the interim trustee, unless otherwise ordered, shall (1) forthwith deliver to the trustee all the records and property of the estate in possession or subject to control of the interim trustee and, (2) within 30 days thereafter file a final report and account.

Fed. R. Bankr. P. 2001 (2012) (emphasis added).

**C.     Movants Have Satisfied the Procedural Requirements for the Appointment of an Interim Trustee**

Procedurally, the prerequisites for appointment of an interim trustee under Section 303(g) and Fed.R.Bankr.P. 2001 have been met. Debtor's above-captioned case under chapter 7 has been commenced by Petitioners through the filing of the involuntary petition.  The appointment can only be made "on request of a party in interest," and this Motion by Movants constitutes such a request. Notice to the Debtor must also be given, and the Court must hold a hearing on the motion. Movants have complied with the Local Bankruptcy Rules applicable to emergency motions and notice of the emergency motion will be duly provided to Debtor and the United States Trustee, as required by Section 303(g) and Federal Rule of Bankruptcy Procedure ("FRBP") 2001(a).

**D.     Appointment of an Interim Trustee is Necessary to Preserve the Estate's Property and Prevent Loss**

Each day Girardi remains in control, the Estate risks waste and dissipation of assets. An interim trustee will provide transparency to creditors and protect Estate assets. According to the plain language of section 303(g), the standard for the appointment of an interim trustee is that such an appointment is "necessary to preserve the property of the

1    estate or to prevent loss to the estate." "[T]he contours of the law under section 303(g)

2    and Rule 2001 are not well defined." 9 *Collier on Bankruptcy* ¶ 2001.02[2] at p. 2001-5

3    (15th ed. rev. 2008) (noting that of the 1,178,555 bankruptcy petitions filed in 1996, only

4    1004 of them were involuntary chapter 7 petitions).

5       GK and Girardi's misconduct satisfies the standard set forth in section 303(g) that

6    the appointment of an interim trustee is necessary "to preserve the property of the estate

7    and to take possession of the property of the estate/operate any business of the debtor."

8    "In the final analysis, the appointment of an interim trustee lies within the sound

9    discretion of the bankruptcy court, guided in large part by the best interests of the

10   creditors." 9 *Collier on Bankruptcy* ¶ 2001.02[3] at p. 2001-6.

11      Although the analysis for an interim trustee is fact-specific, courts often appoint an

12   interim trustee where property of the estate is in danger of dissipation pending an order for

13   relief. *In re James Plaza Joint Venture*, 62 B.R. 959 (Bankr. S.D. Tex. 1986); *In re*

14   *Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221 (Bankr. D. Md. 2007).

15      In *In re James Plaza Joint Venture*, the debtor acknowledged that its only asset was

16   $150,000 in a bank account, which it claimed was necessary to maintain certain causes of

17   action pending in both bankruptcy and state court and to defend against the involuntary

18   bankruptcy action. *James Plaza Joint Venture*, 62 B.R. at 962. In support of their motion

19   to appoint an interim trustee, the petitioners argued that there was a danger the funds

20   would be "disposed of, distributed, or dissipated prior to the time that a trial may be held

21   on the merits of the Involuntary Petition." *Id.* at 961. The court agreed with the

22   petitioners and found that since the further prosecution of claims would be the

23   responsibility of the trustee, it was appropriate to appoint an interim trustee in order to

24   preserve assets of the estate pending its ruling on the involuntary petition. *Id.* at 962-63.

25      In addition to dissipation of the estate's property, courts may appoint an interim

26   trustee where there is a strong uncertainty regarding the reliability of the debtor's financial

27   records and the nature of the organization itself. *Centre for Mgmt. & Tech., Inc.*, 2007

28

1   WL 3197221, at *6[2] (finding that "evidence of murky financial recordkeeping," among

2   other things, evidenced a need for an interim trustee).

3     Finally, an interim trustee is necessary in order to prevent irreparable harm "which

4   would likely result between the time of the filing of the petition and the scheduled

5   hearing." *In re DiLorenzo, III*, 161 B.R. 752, 754 n.8 (Bankr. S.D.N.Y. 1993) (internal

6   citations omitted) (finding petitioner lacked evidence to substantiate its fear that debtor

7   would transfer property out of the estate before the order for relief).

8     Here, it is evident that an interim trustee is necessary to preserving the Debtor's

9   assets because the Debtor is not only insolvent, but also rapidly becoming operationally

10   defunct.

11   **E. There is Reasonable Likelihood that an Order for Relief Will be
       Entered Against Debtor**

12
13     At least one court has required a petitioning creditor to demonstrate that there is

14   reasonable likelihood that an order for relief will ultimately be issued.

15      [S]o as to avoid appointing an interim trustee in a case that
       will soon be dismissed, the Court must determine as a
16      preliminary matter: 'that there is a reasonable likelihood, or
       probability, that this Debtor will eventually be found to be a
17      proper involuntary debtor under 11 U.S.C. § 303 and that an
       order for relief will enter.

18
19   *Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *3 (quoting Prof'l *Accountants

20   Referral Serv., Inc.*, 142 B.R. at 429).

21     Should the Debtor contest the Involuntary Petition, the facts set forth above reveal that an

22   order for relief will likely be entered against the Debtor pursuant to both: (1) Section 303(h)(1),

23   for failing to pay its debts as they come due; and (2) Section 303(h)(2), for appointing a

24   custodian within 120 days of filing the petition.

25     First, Debtor is eligible to be a debtor under chapter 7, pursuant to 11 U.S.C. §

26   109.  Debtor appropriately belongs in a chapter 7, as liquidation is the likely course of

27   action and there is little to no likelihood of reorganization.  Therefore, Debtor properly

28

---

[2] In re The Centre For Management And Technology, Inc is a Chapter 7 involuntary case.

- 16 -

1    qualifies for chapter 7 bankruptcy pursuant to Section 303(a).

2      Second, Petitioners are appropriate petitioners pursuant to 11 U.S.C. § 303(b)(1).

3    In particular, the Involuntary Petition was filed by more than three creditors, each of

4    whom holds non-contingent, undisputed claims, aggregating more than $13,475 pursuant

5    to Section 303(b)(1) (in fact, the total amount of unpaid debts is roughly $6 million.

6    These claims are not subject to a bona fide dispute, as the majority of them are traditional

7    trade debts owed primarily through services rendered. *See, e.g.*, *In re Mylotte, David &*

8    *Fitzpatrick*, 2007 WL 2033812 at *6 (Bankr. E.D. Pa. 2007) ("A bona fide dispute arises

9    only when there is substantial factual or legal contention as to the claim. . . . the objecting

10    party [must] demonstrate that a bona fide dispute does exist. This burden must be met by

11    some objective evidence of a bona fide dispute because the statutory standard is not

12    subjective.") (internal citations omitted).

13      Third, it is likely that the Court will ultimately enter an order for relief because

14    Debtor is generally not paying its debts as they come due. "The failure to pay just one

15    significant creditor can support a finding that the debtor is generally not paying its debts."

16    *In re Euro-American Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D. N.Y. 2007); *see*

17    *also In re Concrete Pumping Service, Inc.*, 943 F.2d 627 (6th Cir. 1991). "This circuit

18    has adopted a 'totality of the circumstances' test for determining whether an alleged

19    debtor is generally paying its debts as they become due." *In re Focus Media, Inc.*, 378

20    F.3d 916, 928-29 (9th Cir. 2004) (citing *In re Bishop Baldwin, Rewald, Dillingham &*

21    *Wong, Inc.*, 779 F.2d 471, 475 (9th Cir. 1985)). "The amount of the delinquency, the

22    materiality of the nonpayment, and the nature of the conduct of the debtor's affairs are to

23    be considered under the 'totality of the circumstances test.'" *In re WLB-RSK Venture*,

24    320 B.R. 221 (9th Cir. B.A.P. 2004).

25      When analyzed under the totality of the circumstances test, it is clear that Debtor

26    is generally not paying its debts as they come due. As discussed above, the failure to pay

27    just one significant creditor can support a finding that the debtor is not paying its debts.

28    Here, nearly $6 million remains due and owing, and Debtor cannot pay these debts.

### F.     Any Bond Requirement Should be Minimal

FRBP 2001(b) imposes a bond requirement on any appointment of an interim trustee under Section 303(g). Movants acknowledge that the "bond requirement is mandatory rather than discretionary." *Centre for Mgmt. & Tech., Inc.*, 2007 WL 3197221, at *7. However, Movants contend that the requisite bond should be minimal because there is no indication that Debtor could be harmed by the appointment of an interim trustee. The Freeze Order is in place, which already prevents the Debtors from using assets until further order of the court.

Further, since all indications are that Debtor is not actively prosecuting cases in which it has been retained, the appointment of an interim estate can only benefit the Estate. An interim trustee will be able to prompt action, including (i) obtaining possession of files, (ii) evaluating pending cases, (iii) consummate pending settlements, (iv) retain counsel to prosecute cases, (v) investigate whether cases have been improperly taken by other attorneys/law firms from Debtor and bring appropriate action; and (vi) evaluate and analyze claims of both secured and unsecured creditors.

Accordingly, Movants respectfully request that the Court impose only a minimal bond not to exceed $10,000.

## IV.     CONCLUSION

For all of the foregoing reasons, Movants respectfully request that the Court (i) find that notice of this Emergency Motion is appropriate under the circumstances; (ii) grant this Motion; (iii) enter an Order Directing the United States Trustee to Appoint an Interim Trustee Under 11 U.S.C. 303(g); and (iv) grant such other and further relief as the Court deems just and proper.

Dated: December 24, 2020

GOODMAN LAW OFFICES, APC

By: _____
ANDREW GOODMAN
Attorneys For Petitioning Creditors

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

GOODMAN LAW OFFICES, A PROFESSIONAL CORPORATION, 30700 RUSSELL RANCH ROAD, SUITE 250, WESTLAKE VILLAGE, CA. 91362

A true and correct copy of the foregoing document entitled (*specify*):  PETITIONING CREDITORS MOTION FOR
APPOINTMENT OF INTERIM TRUSTEE PURSUANT TO 11 USC 303(g); MEMORANDUM OF POINTS AND
AUTHORITIES

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/24/2020        , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   12/24/2020        , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   12/24/2020        , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
    Leonard Pena (lpena@penalaw.com)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/24/2020    Andrew Goodman | /s/ Andrew Goodman |
|---|---|
| *Date*         *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2:20-bk-21020-BR - Notice will be electronically mailed to:**

**Eric D Goldberg on behalf of Creditor Stillwell Madison, LLC  -**
**eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com**

**Andrew Goodman on behalf of Petitioning Creditor Erika Saldana**
**agoodman@andyglaw.com**

**Andrew Goodman on behalf of Petitioning Creditor Jill O'Callahan**
**agoodman@andyglaw.com**

**Andrew Goodman on behalf of Petitioning Creditor John Abassian**
**agoodman@andyglaw.com**

**Andrew Goodman on behalf of Petitioning Creditor Kimberly Archie**
**agoodman@andyglaw.com**

**Andrew Goodman on behalf of Petitioning Creditor Robert M. Keese**
**agoodman@andyglaw.com**

**Andrew Goodman on behalf of Petitioning Creditor Virginia Antonio**
**agoodman@andyglaw.com**

**M. Jonathan Hayes on behalf of Interested Party Courtesy NEF**
**jhayes@rhmfirm.com, roksana@rhmfirm.com; matt@rhmfirm.com;**
**janita@rhmfirm.com; susie@rhmfirm.com; priscilla@rhmfirm.com;**
**pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com;**
**sloan@rhmfirm.com**

**Lewis R Landau on behalf of Interested Party Courtesy NEF**
**Lew@Landaunet.com**

**Aram Ordubegian on behalf of Interested Party Courtesy NEF**
**ordubegian.aram@arentfox.com**

**Matthew D. Resnik on behalf of Interested Party Courtesy NEF**
**matt@rhmfirm.com, Roksana@rhmfirm.com; janita@rhmfirm.com;**
**susie@rhmfirm.com;max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com;**
**russ@rhmfirm.com;rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com**

**Ronald N Richards on behalf of Interested Party Courtesy NEF**
**ron@ronaldrichards.com, morani@ronaldrichards.com, justin@ronaldrichards.com**

**United States Trustee (LA)**
**ustpregion16.la.ecf@usdoj.gov**

## THE FOLLOWING PARTIES WILL BE SERVED VIA UNITED STATES MAIL

**Thomas Girardi**
**1126 Wilshire Boulevard**
**Los Angeles, CA. 90017**

**Girardi Keese**
**1126 Wilshire Boulevard**
**Los Angeles, CA. 90017**

**Leonard Pena, Esq.**
**PENA & SOMA, APC**
**402 S. Marengo Avenue, Suite B**
**Pasadena, CA. 91101**