# EXHIBIT "1"

**015**

# EXHIBIT 1

# EXHIBIT 1

**CLOSING CHECKLIST**
**CALIFORNIA ATTORNEY LENDING II, INC.**
**$3,500,000 REVOLVING LOAN TO**
**GIRARDI KEESE, A GENERAL PARTNERSHIP**
**ORGANIZED UNDER CALIFORNIA LAW**

**Key:**

| | | |
|---|---|---|
| Lender | = | California Attorney Lending II, Inc., a New York corporation |
| Borrower | = | Girardi Keese, a general partnership organized under California law |
| Individual Guarantor | = | Thomas V. Girardi |

**LOAN DOCUMENTS**

1.  Revolving Promissory Note for maximum principal amount of $3,500,000, signed by Borrower.

2.  Guaranty of Individual Guarantor.

3.  Security Agreement signed by Borrower, as debtor
    Exhibit A - Questionnaire

4.  Girardi Keese Certificate, together with the following attachments:
    Schedule I – Certificate of Partnership
    Schedule II – Partnership Agreement
    Schedule III – Resolutions

5.  Intercreditor Agreement with Comerica Bank.

6.  UCC-1 Financing Statement to be filed with California Secretary of State.

**SUPPLEMENTAL DOCUMENTS**

1.  Governmental Certificates from California:
    a.  Uniform Commercial Code Search for Borrower and Individual Guarantor

2.  Key Loan Term Summary with Lender Forms.

1

Initials

**017**

## REVOLVING PROMISSORY NOTE
### California Attorney Lending II, Inc.

Delivered in Buffalo, New York                                                   $3,500,000
                                                                                 July __ , 2011

1.      **DEFINITIONS.** For purposes of this Note:

a.      **Borrower.** The "Borrower" means Girardi Keese, a general partnership organized under California law, having its principal office located at 1126 Wilshire Blvd, Los Angeles, CA 90017.

b.      **Collateral.** "Collateral" means all of Borrower's present and future right, title and interest in and to any and all accounts, choses in action, causes of action, settlement proceeds, attorneys' liens, attorneys' fees, general intangibles, contract rights, deposit and other bank accounts and instruments, instruments, documents, chattel paper and obligations in any form in each case arising out of or related to the rendition of services by Debtor whether earned by performance or otherwise in connection with the following:  (i) all matters with respect to which the Borrower is representing one or more individuals or estates against SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Glaxo Wellcome UK Ltd., GlaxoSmithKline UK Limited Brentford, McKesson Corporation and others, or any of them, in connection with the prescription drug Rosiglitazone, marketed under the trade names Avandia, Avandamet and Avandaryl; and (ii) all matters with respect to which the Borrower is representing one or more individuals or estates against Zimmer Inc., Zimmer Holdings Inc. and others, or any of them, in connection with the so-called "Zimmer Hip" litigation; all of Debtor's books related to the foregoing; and all cash and non-cash proceeds of any of the foregoing, in whatever form, including without limitation all proceeds of proceeds, all insurance policies covering same and all interest or dividends thereon.

c.      **Credit.** The "Credit" means a revolving credit facility made available by the Lender to the Borrower in the maximum principal amount equal to the Limiting Principal Amount.

d.      **Event of Default.** An "Event of Default" occurs or exists if:

(i)     the Borrower defaults in the payment when due, whether by acceleration or otherwise, of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note; or

(ii)    the Borrower or any Guarantor defaults in the observance or performance when due, whether by acceleration or otherwise, of any obligation (including, but not limited to, any obligation to pay any money except as described in clause (i) of this Section 1(d), whether for any principal, interest, fee, tax, charge, cost or expense or otherwise), whether now existing or hereafter arising or accruing,  (a) under this Note or any agreement or arrangement now or hereafter entered into between the Borrower or any Guarantor and the Holder, (b) owed by Borrower to any third party, where the maturity of any such obligation is accelerated or there occurs or exists any event or condition that, whether immediately or after notice, lapse of time or both notice and lapse of time and whether or not waived, would constitute a default with respect to or permit the acceleration of the maturity of any such obligation, or (c) owed by Borrower to any governmental entity; or

(iii)   the Borrower or any Guarantor fails to provide the Holder with (A) copies of the Borrower's and Guarantor's annual federal tax returns to be delivered on the sooner of (i) three days after filing or (ii) the 15th day of the

2

Initials

**018**

tenth month of each fiscal year for the immediately preceding fiscal year; (B) an updated case and status list with respect to the clients and cases of the Borrower at least once each calendar quarter, (C) copies of monthly bank statements of the Borrower from each of its bank accounts (trust and operating accounts) at least once each calendar quarter, (D) current updated financial statements of Borrower not later than the 15th day of each calendar quarter in the form completed by Borrower and delivered to Holder on or before execution of this Note, (E) a current updated personal financial statement for each Guarantor to be delivered on or before April 15th of each year in the form completed by the Guarantor and delivered to Holder on or before execution of this Note, (F) evidence of current malpractice insurance for the Borrower and life insurance coverage of Guarantor on the anniversary date of coverage; (G) notice of any material change in the business, clients or prospects of the Borrower, (H) copies of any notice of cancellation, revocation or non-renewal of any malpractice insurance or any life insurance policy assigned to Holder as part of the Collateral within five (5) business days after receipt thereof by the Borrower or the Guarantor, (I) copies of any default notice or notice of the existence of facts or circumstances that with the passage of time will constitute a default under any obligation of Borrower that are received by Borrower, or (J) any documentation or information reasonably requested by the Holder that relates to the business or assets of the Borrower or any Guarantor; or

(iv)     the Borrower or any Guarantor is dissolved, ceases to exist, participates or agrees to participate in any merger, consolidation or other absorption (unless the Borrower or such Guarantor is the surviving entity with respect thereto), assigns or otherwise transfers or disposes of a majority of his, her or its assets, makes or permits what might be a fraudulent transfer or fraudulent conveyance of any of his, her or its assets, becomes insolvent (however such insolvency is evidenced), generally fails to pay his, her or its debts as they become due, fails to pay, withhold or collect any tax as required by applicable law, suspends or ceases its business or has served, filed or recorded against him, her or it or any of his, her or its assets any judgment, order or award of any court, other governmental authority or arbitrator or any lien; or

(v)     any Guarantor dies, becomes incompetent or purports to terminate his, her or its obligations pursuant to any guaranty or other agreement evidencing obligations of such Guarantor to the Holder; or if this Note remains outstanding on August 1, 2012, Thomas V. Girardi fails to maintain in effect life insurance on his life in a minimum amount equal to $3,500,000 that is subject to an effective collateral assignment to the Holder of this Note at all times on and after August 1, 2012 while this Note is outstanding; or

(vi)     the Borrower or any Guarantor has any receiver, trustee, custodian or similar Person for him, her or it or any of his, her or its assets appointed (whether with or without his, her or its consent), makes any assignment for the benefit of creditors, admits in writing his, her or its inability to pay debts generally as they become due, or commences or has commenced against him, her or it any bankruptcy or insolvency proceeding or any formal or informal proceeding for the dissolution, liquidation or winding up of the affairs of or the settlement of claims against him, her or it; or

(vii)     any representation or warranty heretofore made to the Lender or hereafter made to the Holder, or any financial statement heretofore provided to the Lender or hereafter provided to the Holder, by or on behalf of the Borrower or any Guarantor, proves, as of the date thereof, to have been incorrect or misleading in any material respect, or before the execution and delivery to the Lender by the Borrower of this Note there occurred and was not disclosed to the Lender any material adverse change in any information disclosed in any such representation or warranty heretofore so made or in any such financial statement heretofore so provided; or

(viii)     there occurs any change in the management of, or the beneficial ownership of any stock of or other ownership interest in, the Borrower that is, in the opinion of the Holder, adverse to its interest and is not corrected to its

3

Initials

full satisfaction within 30 days after it gives to the Borrower a notice that it considers such change adverse to its interest; or

(ix)    there occurs any change in the value of the Collateral or Borrower's or any Guarantor's ownership interest in the Collateral, that is, in the opinion of the Holder, adverse to its interest and is not corrected to its full satisfaction within 10 days after it gives to the Borrower a notice that it considers such change adverse to its interest; or

(x)    except for Permitted Indebtedness, Borrower or any Guarantor incurs after the date of this Note or repays after the date of this Note any indebtedness or liability, including any indebtedness or liability to any member or shareholder of the Borrower or any Guarantor or any affiliate of any Guarantor (for clarity, any future indebtedness of Borrower or any Guarantor not included in Permitted Indebtedness requires the prior written consent of Holder which consent may require that the proceeds of such financing be used to repay this Note in whole or in part); or

(xi)    there occurs or exists any event or condition of default, without the prior written consent of the Holder, with respect to any (A) indebtedness or liability of Borrower or any Guarantor or (B) security agreement or other writing evidencing or relating to any Collateral; or

(xii)    Borrower or any Guarantor creates, assumes or suffers to exist any mortgage, security interest, judgment or lien (including tax liens) on any of its assets now or hereafter acquired other than liens relating to Permitted Indebtedness, purchase money liens relating to the acquisition of fixed assets, or consumer debt; or

(xiii)    any Guarantor owns or hereafter acquires, without prior written consent of the Holder, an ownership interest, either direct or indirect, in any entity engaged in the practice of law other than Borrower; or

(xiv)    any license to practice law held by Borrower or any Guarantor is suspended or revoked.

e.    **Guarantor.** "Guarantor" means, other than the Borrower, any Person (i) who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note or (ii) any asset of whom or which now or hereafter directly or indirectly secures the payment of any of the Outstanding Principal Amount or any such interest or other amount.

f.    **Holder.** The "Holder" means the Lender or any transferee of this Note.

g.    **Lender.** The "Lender" means California Attorney Lending II, Inc., a New York corporation having its chief executive office at 6400 Main Street, Suite 120, Williamsville, NY 14221, its successors and assigns.

h.    **Limiting Principal Amount.** "Limiting Principal Amount" means $3,500,000, US currency.

i.    **Loan.** "Loan" means any loan by the Holder pursuant to the Credit.

j.    **Loan Request.** "Loan Request" means any oral (including, but not limited to, telephonic), written or other (including, but not limited to, facsimile or email) request for a Loan.

k.    **Maturity Date.** The "Maturity Date" has the meaning set forth in Section 4 of this Note.

l.    **Outstanding Principal Amount.** The "Outstanding Principal Amount" means the outstanding principal

4

Initials

amount of this Note from time to time.

m.    **Permitted Indebtedness.** "Permitted Indebtedness" means indebtedness of a Person (A) to the Lender; (B) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of such Person's business; (C) arising from the endorsement in the ordinary course of such Person's business of any check or other negotiable instrument for deposit or collection; or (D) secured by a Permitted Lien as defined in the Security Agreement.

n.    **Person.** "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust or unincorporated association; (ii) any court or other governmental authority or (iii) any other entity, body, organization or group.

o.    **Security Agreement.** "Security Agreement" means the Security Agreement described in Section 18 of this Note.

p.    **Specified Matters.** "Specified Matters" means collectively the following: (i) all matters with respect to which the Borrower is representing one or more individuals or estates against SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Glaxo Wellcome UK Ltd., GlaxoSmithKline UK Limited Brentford, McKesson Corporation and others, or any of them, in connection with the prescription drug Rosiglitazone, marketed under the trade names Avandia, Avandamet and Avandaryl; and (ii) all matters with respect to which the Borrower is representing one or more individuals or estates against Zimmer Inc., Zimmer Holdings Inc. and others, or any of them, in connection with the so-called "Zimmer Hip" litigation.

q.    **Uniform Commercial Code.** "Uniform Commercial Code" means the Uniform Commercial Code as in effect from time to time in the State of New York.

2.    **PROMISE TO PAY.** For value received, the Borrower promises to pay to the order of the Holder in lawful money of the United States and immediately available funds at any of the offices of the Holder:

a.    The Outstanding Principal Amount and interest as described in Section 3 of this Note by paying the amounts described in Section 4 of this Note;

b.    On demand by the Holder, each cost and expense (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice, litigation or any other purpose) incurred by the Holder in endeavoring to (i) collect any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note, (ii) preserve or exercise any right or remedy of the Holder pursuant to this Note or (iii) preserve or exercise any right or remedy of the Holder relating to any Collateral including the payment of unpaid insurance premiums, taxes, assessments or other obligations or incurrence of legal fees or court costs.

3.    **INTEREST.** The Borrower shall pay interest, calculated on the basis of a 360 day year for the actual number of days of each (365 or 366, as applicable), on the Outstanding Principal Amount from and including the date of this Note to but not including the date the Outstanding Principal Amount is paid in full. The rate per year shall be **Eighteen Percent (18%)**. Interest at such rate, and not any rate set by statute, shall be computed in any entry of judgment pertaining to this Note, and further, shall be paid subsequent to the entry of such judgment, and until actual satisfaction of said judgment. The judgment shall include both the action and the obligation itself. In such event, the Interest rate shall continue up through and including all foreclosure proceedings and proceedings for payment of monies, including but not limited to surplus money proceedings and shall be computed in the entry of any judgment, and further, subsequent to the entry of any judgment, and until actual satisfaction of this Note and

5

Initials

said judgment.

Notwithstanding the foregoing, (A) in no event shall such interest be payable at a rate in excess of the maximum rate permitted by applicable law and (B) solely to the extent necessary to result in such interest not being payable at a rate in excess of such maximum rate, any amount that would be treated as part of such interest under a final judicial interpretation of applicable law shall be deemed to have been a mistake and automatically canceled, and, if received by the Holder, shall be refunded to the Borrower or applied to the Outstanding Principal Amount, as determined by the Holder, it being the intention of the Lender and the Borrower that such interest not be payable at a rate in excess of such maximum rate.

4.      **PAYMENTS.** In addition to the Mandatory Prepayment provisions of Section 9 of this Note, the Borrower shall (a) pay the Outstanding Principal Amount in twenty-four (24) equal installment payments commencing on August 1, 2013 and continuing monthly thereafter with the final payment due and payable on July 1, 2015 (the "Maturity Date") and (b) pay monthly interest as described in Section 3 of this Note that has accrued on the Outstanding Principal Amount through the last day of any calendar month, beginning with the calendar month containing the date of this Note, all such payments of principal or interest by the 10th day of the succeeding calendar month.

In addition, the Borrower shall at all times prior to the Maturity Date (a) maintain an interest reserve (the "Reserve") with the Holder equal to 30 days' interest based on the Outstanding Principal Amount on the later of the date of the most recent Loan under this Note or the last day of the most recently ended calendar month during the term of this Note and (b) maintain an authorization for electronic funds transfer by the Holder at a bank and account designated by Borrower and reasonably acceptable to the Holder for payments under this Note. The Holder may, but shall not be obligated to, deduct from the proceeds of any Loan an amount sufficient to fund the Reserve, may commingle the Reserve with its other funds, shall have no obligation to pay any interest on the Reserve and shall be entitled to set off against the Reserve, or authorize an electronic funds transfer for, any amount that is not paid to the Holder when due under this Note.

5.      **LOAN REQUESTS.**

(a) At any time prior to August 1, 2013, the Borrower may make a Loan Request, which Request shall be irrevocable, that specifies (i) the amount requested as the principal amount of the Loan, (ii) the law firm purposes for the Loan, and (iii) the business day of the Holder on which such Loan is requested to be made. All Loan Requests shall be for the sole purpose of funding the operating expenses of Borrower or interest payments under this Note. No Loan Requests may be made to fund the activities or operations of any Guarantor or any third party entity. Notwithstanding the foregoing, no Loan shall be made with respect to any principal amount prepaid under Section 9 of this Note until at least one (1) business day after the date of such prepayment. **Notwithstanding anything contained in this Note to the contrary, commencing August 1, 2013, Borrower shall not be permitted to make any further Loan Requests under this Note.**

(b) Notwithstanding anything contained in this Note to the contrary, the decision whether to honor such Loan Request and make such Loan shall be in the sole discretion of the Holder. The Holder may treat as made by the Borrower and rely upon, and the Borrower shall be bound by, any Loan Request that the Holder in good faith believes to be valid and to have been made in the name or on behalf of the Borrower by any officer, manager, member, partner or other individual authorized to act on behalf of the Borrower, and the Holder shall not incur any liability to the Borrower or any other Person as a direct or indirect result of honoring such Loan Request and making such Loan.

6.      **LIMITATION ON OUTSTANDING PRINCIPAL AMOUNT.** The Borrower shall not at any time permit, and the Holder shall not at any time be obligated to permit, the Outstanding Principal Amount to exceed the

6

Initials

Limiting Principal Amount.

7.      **SCHEDULE OF ADVANCES OR LOAN ACCOUNT.** There shall be payable as principal pursuant to this Note only so much of the Limiting Principal Amount as shall have been advanced by the Holder as a Loan or Loans and is outstanding.  The Holder shall set forth on a schedule or loan account (including, but not limited to, any schedule or loan account maintained in computerized records) annotations evidencing (a) the date and principal amount of each Loan, (b) the date and amount of each payment applied to the Outstanding Principal Amount and (c) the Outstanding Principal Amount after each Loan and each such payment. Each such annotation shall, in the absence of manifest error, be conclusive and binding upon the Borrower. No failure by the Holder to make and no error by the Holder in making any annotation on such schedule or loan account shall affect the Borrower's obligation to repay the principal amount of each Loan, the Borrower's obligation to pay interest on the outstanding principal amount of each Loan or any other obligation of the Borrower to the Holder pursuant to this Note or otherwise.

8.      **OPTIONAL PREPAYMENT.** The Borrower shall have the option of prepaying, without penalty or premium, the Outstanding Principal Amount to the Holder in full or part at any time and from time to time provided, that (a) the Outstanding Principal Amount must exceed $50,000 at all times during the first one hundred twenty (120) days after the date of this Note, and (b) upon prepaying the Outstanding Principal Amount in full, the Borrower shall pay to the Holder all interest and other amounts payable to this Note and remaining unpaid.  With respect to prepayments made on or after August 1, 2013, any partial prepayment shall not result in a reduction in the term of this Note, and the Holder will recalculate the monthly principal amortization for the remaining term of the Note as of the first day of the month immediately following the date of prepayment.

9.      **MANDATORY PREPAYMENT.** In addition to payments set forth above, Borrower shall be required to pay the Holder an amount equal to 100% of all Net Fees (as hereinafter defined) received by Borrower in connection with the Specified Matters, commencing on the date hereof and continuing until the Outstanding Principal Amount and interest thereon has been paid in full (collectively, the "Mandatory Prepayments").  All Mandatory Prepayments must be paid to Holder within three (3) business days after receipt thereof by Borrower and shall be applied first to the payment of any outstanding interest, then fees, and the balance to repay the Outstanding Principal Amount.  When all Net Fees in connection with the Specified Matters have been paid as provided in this paragraph, Holder will reevaluate the availability of the Credit hereunder and may demand payment of any Outstanding Principal Balance and accrued interest and fees.

        For purposes of this section, **"Net Fees"** means all legal fees and reimbursed expenses resulting from any client representation or referral (whether contingent, hourly, fixed fee or other) after payment of all amounts owing to third party lawyers (other than employees or partners of Borrower) for assistance or referral with respect to such client representation. Until payment is remitted to Holder, any such funds payable to the Borrower and related to the Specified Matters shall be held in Borrower's trust account for the benefit of the Holder.  Borrower shall continue to escrow any and all such funds received until payment of the mandatory amount is transmitted to Lender.  Funds in Borrower's trust account in which the Holder has an interest shall not be paid to anyone except Holder.  With respect to prepayments made on or after August 1, 2013, any partial prepayment shall not result in a reduction in the term of this Note, and Holder will recalculate the monthly principal amortization for the remaining term of the Note as of the first day of the month immediately following the date of prepayment.

10.     **PURPOSE OF LOANS.** The Borrower shall not obtain or use the proceeds of any Loan for any purpose other than for law firm purposes, that is for working capital of the Borrower including payments to any Guarantor but only as elsewhere permitted under this Note. The Borrower acknowledges, warrants and represents to, and agrees with, the Lender that no Loan proceeds shall be used by the Borrower for other than a business or commercial purpose of the Borrower.

11.     **AMOUNTS IMMEDIATELY DUE.** Upon or at any time or from time to time after the occurrence or

7

Initials

existence of any Event of Default other than, with respect to the Borrower, an Event of Default described in clause (vi) of the definition of Event of Default set forth in Section 1(d) of this Note, the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of the Holder and without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by the Borrower), become immediately due. Upon the occurrence or existence of, with respect to the Borrower, any Event of Default described in such clause (vi), the Outstanding Principal Amount and all such interest and other amounts shall, without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by the Borrower), automatically become immediately due.

12.     **BOOKS AND RECORDS.** The Borrower shall maintain accurate books and records regarding its financial condition, including, but not limited to, aged listings of accounts payable and accounts receivable, all expenses and disbursements, business operations, and the status and condition of the Collateral. Holder shall have the right at any time upon reasonable notice to inspect and audit such books, records, and accounts, and to make copies thereof.

13.     **CHANGES AND WAIVERS.** No course of conduct pursued, accepted or acquiesced in, and no oral, written or other agreement or representation made, by or on behalf of the Holder in the future will change this Note or waive any right or remedy of the Holder under or arising as a result of this Note. Any change in this Note or waiver of any right or remedy of the Holder under or arising as a result of this Note must be made in a writing signed by or on behalf of the Holder.

14.     **GOVERNING LAW.** This Note shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, other than the conflict of law provisions of such State, and, to the extent applicable, the federal law of the United States, without regard to the law of any other jurisdiction.

15.     **CONSENT TO JURISDICTION. AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF BORROWER OR HOLDER, BORROWER HEREBY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND HOLDER PERTAINING TO THIS NOTE OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS NOTE SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF ERIE WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF ANY LEGAL ACTION; PROVIDED, HOWEVER, HOLDER MAY AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY HOLDER AGAINST BORROWER, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS NOTE, OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY HOLDER. BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK COURT. BORROWER REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS CONSENT TO JURISDICTION PROVISION WITH ITS LEGAL COUNSEL, AND HAS MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.**

16.     **WAIVER OF TRIAL BY JURY. THE BORROWER KNOWINGLY, VOLUNTARILY,**

8

Initials

**024**

INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT THE BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO (a) THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY OTHER WRITING HERETOFORE OR HEREAFTER EXECUTED IN CONNECTION WITH THE CREDIT OR ANY LOAN OR COLLATERAL, (b) ANY TRANSACTION ARISING OUT OF OR OTHERWISE RELATING TO THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING OR (c) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING.

17.    SERVICE OF PROCESS. PROCESS ON BORROWER IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS NOTE WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (I) PERSONALLY DELIVERED, (II) TWO BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, POSTAGE PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (III) 4 BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO THE BORROWER AT THE ADDRESS SET FORTH IN SECTION 1(a). Such service shall be deemed in every respect effective service of process upon Borrower and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon the Borrower. Nothing in this Section shall affect the Holder's right to serve process in any other manner permitted by law. Borrower may add additional addresses or change its address for purposes of service of process by giving 10 days' prior written notice of such change to the Holder in accordance with the notice provisions of the Security Agreement.

18.    SECURITY AGREEMENT.   This Note is secured by the terms of a Security Agreement given by Borrower to Lender simultaneously herewith.

Dated: July 5, 2011

Girardi Keese

By: _____

Thomas V. Girardi, Partner

### ACKNOWLEDGMENT FOR NOTE

STATE OF CALIFORNIA

COUNTY OF Los Angeles : SS.

On the 5th day of July in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared Thomas V. Girardi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Partner of Girardi Keese, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

Shirleen H. Fujimoto
Notary Public

9

Initials

SHIRLEEN H. FUJIMOTO
COMMISSION # 1833089
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires May 15, 2015

**025**

Notary Public

**ALLONGE TO REVOLVING PROMISSORY NOTE, DATED JULY ___, 2011, ISSUED BY
GIRARDI KEESE
TO CALIFORNIA ATTORNEY LENDING II, INC.**

NOTICE: THIS NOTE IS SUBJECT TO A SECURITY INTEREST GRANTED BY CALIFORNIA
ATTORNEY LENDING II, INC. TO BANK OF AMERICA PURSUANT TO A COLLATERAL
AGREEMENT DATED MARCH 31, 2010, BETWEEN SUCH PARTIES, AS SUCH COLLATERAL
AGREEMENT MAY BE AMENDED, SUPPLEMENTED, REPLACED, RESTATED OR
OTHERWISE MODIFIED FROM TIME TO TIME

10



Initials

**026**

## GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY** (the "Guaranty") from **THOMAS V. GIRARDI**, individually, with a principal address at 100 Los Altos Drive, Pasadena, CA 91105 (the "Guarantor") to **CALIFORNIA ATTORNEY LENDING II, INC.**, a New York corporation with a place of business at 6400 Main Street, Suite 120, Williamsville, NY 14221 (the "Lender").

### W I T N E S S E T H :

**WHEREAS**, Girardi Keese ("Borrower") is, on the date hereof, executing and delivering to Lender that certain Revolving Promissory Note in the principal amount of $3,500,000 as the same may be amended from time to time ("Note") pursuant to which Lender is extending certain credit facilities (the "Credit Facilities") to Borrower; and

**WHEREAS**, the Lender is unwilling to extend the Credit Facilities to the Borrower unless it receives this Guaranty; and

**WHEREAS**, the Guarantor is willing to execute and deliver this Guaranty to Lender in order to induce the Lender to extend the Credit Facilities and the Guarantor has approved the form and substance of each and all of the documents relating to the Credit Facilities including the Revolving Promissory Note, Security Agreement, certifications, letters and other documentation (the "Loan Documents").

**NOW, THEREFORE**, in order to induce the Lender to extend the Credit Facilities to the Borrower and in consideration of the premises and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Guarantor intends to guarantee absolutely and unconditionally (and jointly and severally if there is more than one Guarantor) to the Lender, the punctual payment of collectively (i) the outstanding principal amount of the Note at any time and all interest and other amounts now or in the future payable under the Note and (ii) all other obligations of the Borrower to the Lender for the payment of money, however evidenced, regardless of the purpose for which incurred and whether for the payment of any principal, interest, fee or expense or otherwise, existing now or coming into existence in the future or absolute or contingent (the "Obligations") and such further payment and performance as may be set forth in Article 2 hereof.

### ARTICLE 1
### REPRESENTATIONS AND WARRANTIES OF THE GUARANTOR

The Guarantor hereby represents and warrants to Lender (if the Guarantors are more than one party, said representations and warranties are made only with respect to the particular party) that:

**Section 1.1**    **Capacity of the Guarantor**.  The Guarantor:

(A)    has the capacity to enter into this Guaranty; and

(B)    has his principal residence address or its office address at the address set forth in the first paragraph of this Guaranty.

**Section 1.2**    **No Violation of Restrictions**.  Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereby nor the fulfillment of or compliance with the provisions of this Guaranty will conflict with or result in a breach of any of the terms, covenants, conditions or provisions of any

11

Initials

agreement, judgment or order to which the Guarantor is a party or by which the Guarantor is bound, or will constitute a default under any of the foregoing, or result in the creation or imposition of any lien of any nature whatsoever.

**Section 1.3      Compliance with Law.** The Guarantor is not in violation of any law, ordinance, governmental rule, regulation, order or judgment to which the Guarantor may be subject which is likely to materially affect the financial condition of the Guarantor.

**Section 1.4      Financial Statements and Other Information.** The financial statements and any other information submitted by the Guarantor to Lender fairly represent the financial condition as of the date of each statement and there has been no material adverse change in the financial condition of the Guarantor since the date of the respective statements submitted to Lender.

**Section 1.5      Solvency of Guarantor and Borrower.** The Guarantor's assets exceed his liabilities and the Guarantor has made an appropriate financial investigation of the Borrower and has determined that the Borrower is solvent at the time of execution of this Guaranty.

## ARTICLE 2
## COVENANTS AND AGREEMENTS

**Section 2.1      Guaranty of Payment.** The Guarantor irrevocably, absolutely and unconditionally (and jointly and severally if there is more than one Guarantor) guarantees to the Lender:

(A)      The punctual payment of the Obligations.

(B)      The full and prompt performance of any and all obligations of the Borrower to Lender under the Loan Documents.

**Section 2.2      Obligations Unconditional.** This Guaranty shall remain in full force and effect until the Obligations and all sums due under the Loan Documents are paid in full, irrespective of any interruptions in the business relationships of the Borrower and the Guarantor with the Lender. The Guarantor's obligation hereunder shall not be affected, modified or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of the Guarantor:

(A)      The invalidity, irregularity, illegality or unenforceability of, or any defect in, any Loan Document or any collateral security for the Credit Facilities (including the "Collateral" as defined in the Security Agreement of even date herewith given by the Borrower and the Guarantor to the Lender);

(B)      Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce the Obligations or amend or otherwise affect any Loan Document or any other obligation of the Borrower or any other obligor or any other terms of payment.

(C)      The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under any Loan Document or of the Guarantor under any Loan Document, or of any other guarantor of the Credit Facilities or any part thereof, or of any other party who has given collateral as security for the payment of the Credit Facilities or any part thereof.

(D)      The failure to give notice to the Guarantor of the occurrence of an event of default under any Loan Document.

12

Initials

(E)     The loss, release, sale, exchange, surrender or other change in any Collateral.

(F)     The extension of the time for payment of any principal of or interest on the Obligations or of the time for performance of any other obligations, covenants or agreements under or arising out of any Loan Document or the extension or the renewal of any thereof.

(G)     The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in any Loan Document.

(H)     The performance of, or the omission to perform, any of the actions referred to in any Loan Document.

(I)     Any failure, omission or delay on the part of the Lender to enforce, assert or exercise any right, power or remedy conferred on the Lender in any Loan Document.

(J)     The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting, the Guarantor or the Borrower or any of their assets, or any allegation or contest of the validity of any Loan Document.

(K)     The default or failure of the Guarantor to fully perform any obligations set forth in this Guaranty.

(L)     Any event or action that would, in the absence of this paragraph, result in the release or discharge of the Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty (other than payment in full of the Obligations or a written release provided by Lender to the Guarantor).

(M)     Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

## Section 2.3    Waivers by Guarantor.

(A) Guarantor waives any and all rights that are or may become available to Guarantor by statute or otherwise to require Lender to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy in Lender's power whatsoever. Lender may, at its election, exercise any right or remedy it may have against Guarantor or any security now or hereafter held by or for the benefit of Lender including, without limitation, the right to foreclose upon any such security by judicial or nonjudicial sale, without affecting or impairing in any way the liability of Guarantor hereunder except to the extent the Obligations may thereby be paid and performed, even though any rights which Guarantor may have or otherwise might obtain by subrogation against others might be diminished or destroyed. Guarantor acknowledges that any such exercise of a right or remedy with respect to any collateral security for the Obligations may result in a loss, in part or whole, of Lender's right to collect from Borrower any deficiency that may remain after any such exercise of such a right or remedy and that, where such a loss occurs, Guarantor will also suffer a loss of any rights and remedies, arising in law or equity, which Guarantor may have to collect any amount from Borrower; and Guarantor agrees to remain bound notwithstanding any such loss. Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for the Obligations, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of law or otherwise. Only the net proceeds from any such foreclosure, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such security is held or by law, shall be applied against the Obligations. Lender may at its discretion purchase all or any part of such security so sold or offered for sale for its own account and may apply against the amount bid therefor all or any part of the

13

Initials

Obligations for which such security is held; and in such case, only that portion of the Obligations so applied, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such security is held or law, shall be applied against the Obligations. Guarantor waives any defense arising out of the absence, impairment or loss of any right to reimbursement or subrogation or other right or remedy of Guarantor against Borrower or any such security, whether resulting from the election by Lender to exercise any right or remedy it may have against Debtor, any defect in, failure of, or loss or absence of priority with respect to Lender's interest in such security, or otherwise. In the event that any foreclosure sale is deemed to be not commercially reasonable, Guarantor waives any right that he, she or it may have to have any portion of the Obligations discharged except to the extent of the amount actually bid and received by Lender at any such sale. Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment or performance hereunder or enforcement hereof.

(B) **Waiver of Notices and Demands**. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations. At the option of Lender, Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon the Obligations or any security therefor and recovery may be had against Guarantor in such action or proceeding, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower. Without limiting the foregoing, Guarantor acknowledges that repeated and successive demands may be made and payments or performance made hereunder in response to such demands as and when, from time to time, Borrower may default in payments or performance of the Obligations or other obligations under the Loan Documents. Notwithstanding any such performance hereunder, this Guaranty shall remain in full force and effect and shall apply to any and all subsequent defaults by Borrower in payment or performance of the Obligations or other obligations under the Loan Documents.

(C) **Waiver of Defenses**. Guarantor waives any defense arising by reason of any disability or defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower. Guarantor waives any setoff, defense or counterclaim which Borrower or Guarantor may have or claim to have against Lender.

(D) **Real and Personal Property Waivers**. Guarantor waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things: (i) that Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; and (ii) if Lender forecloses on any real property collateral pledged by Borrower: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from the Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property.

(E) **No Waiver; Remedies**. In addition to, and not in limitation of the waivers, no failure on the party of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right thereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

(F) **Guarantor's Understanding With Respect To Waivers**. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

14

Initials

**030**

**Section 2.4**    <u>Nature of Guaranty</u>.  This Guaranty is a guaranty of payment and not of collection and the Guarantor hereby waives the right to require that any action be brought first against the Borrower or any other guarantor, or to require any security, or to require that resort be made to any security or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or of the Guarantor.

**Section 2.5**    <u>Continuation of Guaranty</u>.  The Guarantor further agrees that the obligations hereunder shall continue to be effective or reinstated, as the case may be, if at any time payment of all or any part thereof of the Credit Facilities is rescinded or must otherwise be restored by the Lender upon the bankruptcy or reorganization of the Borrower, the Guarantor or otherwise.

**Section 2.6**    <u>Subordination of Debt</u>.  The Guarantor hereby subordinates any and all indebtedness of the Borrower now or hereafter owed to the Guarantor to all indebtedness of the Borrower to Lender and agree with Lender that, from and after the date whereon Lender notifies Guarantor that an event of default under one or more of the Loan Documents has occurred and is continuing, Guarantor shall not demand or accept any payment from the Borrower of any such indebtedness, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any interest in any of the security described in and encumbered by the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and paid over to Lender on account of the indebtedness of such Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty except to the extent the principal amount of such outstanding indebtedness shall have been reduced by such payment.

**Section 2.7**    <u>Financial Statements and Other Information</u>.  Guarantor agrees to deliver to Lender (A) on or before April 15th of each year, personal financial statements and information applicable to the Guarantor on Lender's standard form or other form acceptable to Lender and (B) copies of each of the Guarantor's annual federal tax return to be delivered on the sooner of (i) three days after filing or (ii) October 15th of each year for the immediately preceding fiscal year.  Guarantor agrees to promptly deliver to Lender from time to time any additional documentation or information reasonable requested by the Lender that relates to the business or assets of the Guarantor.

**Section 2.8**    <u>Transfer of Interest</u>.  Except as expressly permitted pursuant to the Loan Documents, the Guarantor agrees not to make or permit to be made, by voluntary or involuntary means, any transfer of the interest of the Guarantor in the Borrower, without first obtaining the prior written consent of Lender.

## ARTICLE 3
## EVENTS OF DEFAULT

**Section 3.1**    <u>Events of Default Defined</u>.  An "Event of Default" shall exist if any of the following events occurs and is continuing:

(A)    The Guarantor fails to perform or observe any covenant contained herein.

(B)    Any warranty, representation or other statement by or on behalf of Guarantor contained in this Guaranty or in any Loan Document is false or misleading in any material respect when made.

(C)    A receiver, liquidator or trustee of Guarantor or any of his property is appointed by court order, or any party named as a Guarantor is adjudicated bankrupt or insolvent or any of his, her or its property is sequestered by court order and such order remains in effect for more than sixty (60) days, or a petition is filed against Guarantor

15

Initials

under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within ninety (90) days of such filing.

(D)  Guarantor files a petition in voluntary bankruptcy or seeks relief under any provision of any reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against it under any such law.

(E)  Guarantor makes an assignment for the benefit of creditors or admits in writing inability to pay debts generally as they become due, or consents to the appointment of a receiver, trustee or liquidator of all or any part of his, her or its property.

(F)  The occurrence of an Event of Default under the Note or any other Loan Document.

**Section 3.2**   **Remedies on Default**.  If an Event of Default exists, Lender may proceed to enforce the provisions hereof and to exercise any other rights, powers and remedies available to the Lender without prior written notice to Guarantor.

**Section 3.3**   **Waiver and Notice**.

(A)  No remedy herein conferred upon or reserved to the Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty now or hereafter existing at law or in equity or by statute.

(B)  No delay or omission to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient.

(C)  In order to entitle the Lender to exercise any remedy reserved to it in this Guaranty, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Guaranty.

(D)  No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom or course of dealing.

## ARTICLE 4
## MISCELLANEOUS

**Section 4.1**   **Construction**.  If this Guaranty is executed by two or more parties, they shall be jointly and severally liable hereunder and the phrase Guarantor whenever used herein shall be construed to refer to each of the parties in the same manner and with the same effect as if each party had signed a separate guaranty.

**Section 4.2**   **Governing Law**.  This Guaranty shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws.

**Section 4.3**   **Successors and Assigns**.  This Guaranty shall inure to the benefit of and be binding upon the successors and assigns of each of the parties hereto.

**Section 4.4**   **Notices**.  Any notices required or permitted to be given hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes at the time of delivery in person, one day after delivery to a nationally recognized overnight courier with receipt requested to the parties at the addresses set forth at the head of this Guaranty, or to such other addresses as the parties may for themselves designate in writing as

16

Initials

provided herein for the purpose of receiving notices hereunder.

**Section 4.5     Entire Agreement**. This Guaranty and the Loan Documents constitute the entire understanding between the Borrower, the Guarantor and Lender and to the extent that any writings not signed by Lender or oral statements or conversations at any time made or had are inconsistent with the provisions of this Guaranty or the other Loan Documents, the same shall be null and void.

**Section 4.6     Amendments**. No amendment, change, modification, alteration or termination of this Guaranty shall be made except upon the written consent of Lender and the Guarantor.

**Section 4.7     Assignment**. This Guaranty is assignable by Lender in whole or in part in conjunction with an assignment of the Loan Documents and any assignment hereof or any transfer or assignment of the Loan Documents or portions thereof shall operate to vest in any such assignee the rights and powers, in whole or in part, as appropriate, herein conferred upon and granted to Lender.

**Section 4.8     Partial Invalidity**. The invalidity or unenforceability of any one or more phrases, sentences, clauses or sections in this Guaranty shall not affect the validity or enforceability of the remaining portions of the Guaranty or any part thereof.

**Section 4.9     SUBMISSION TO JURISDICTION**. THE GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF ERIE, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF ANY LEGAL ACTION, AND GUARANTOR WAIVES ANY RIGHT TO OBJECT TO JURISDICTION WITHIN THE FOREGOING FORUM BY LENDER. NOTHING CONTAINED HEREIN SHALL PREVENT LENDER FROM BRINGING ANY SUIT, ACTION OR PROCEEDING OR EXERCISING ANY RIGHTS AGAINST ANY SECURITY, AGAINST GUARANTOR PERSONALLY, AGAINST ANY PROPERTY OF GUARANTOR, WITHIN ANY OTHER JURISDICTION, AND THE INITIATION OF SUCH SUIT, ACTION OR PROCEEDING OR TAKING OF SUCH ACTION IN ANY SUCH OTHER JURISDICTION SHALL IN NO EVENT CONSTITUTE A WAIVER OF THE AGREEMENTS CONTAINED HEREIN WITH RESPECT TO THE LAWS OF THE STATE OF NEW YORK GOVERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO OR THE AGREEMENT OF THE GUARANTOR TO SUBMIT TO PERSONAL JURISDICTION WITHIN THE STATE OF NEW YORK AND COUNTY OF ERIE.

**Section 4.10     WAIVER OF JURY TRIAL**. THE GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, AND THE GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE GUARANTOR'S CONSENT TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. THE GUARANTOR REPRESENTS AND WARRANTS THAT HE HAS REVIEWED THIS JURY WAIVER

17

Initials

PROVISION WITH HIS LEGAL COUNSEL, AND HAS MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

Section 4.11    SERVICE OF PROCESS. PROCESS ON GUARANTOR IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS GUARANTY WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (I) PERSONALLY DELIVERED, (II) TWO BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, POSTAGE PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (III) 4 BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO THE GUARANTOR AT THE APPLICABLE ADDRESSES SET FORTH AT THE BEGINNING OF THIS GUARANTY. Such service shall be deemed in every respect effective service of process upon the Guarantor and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon the Guarantor. Nothing in this Section shall affect the Lender's right to serve process in any other manner permitted by law. Guarantor may add additional addresses or change an address for purposes of service of process by giving 10 days' prior written notice of such change to the Lender.

Section 4.12    Unlimited Guaranty.    This Guaranty is unlimited in amount.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of the day and year set forth.

Dated: July 5, 2011

_____
Thomas V. Girardi, Individually

## ACKNOWLEDGMENTS (FOR GUARANTY)

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On the 5th day of July in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared Thomas V. Girardi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

SHIRLEEN H. FUJIMOTO
COMMISSION # 1933088
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires May 18, 2013

_____
Notary Public

18

Initials

# SECURITY AGREEMENT
## CALIFORNIA ATTORNEY LENDING II, INC.

In consideration of California Attorney Lending II, Inc., a New York corporation having its chief executive office at 6400 Main Street, Suite 120, Williamsville, NY 14221 (the "Secured Party") heretofore or hereafter (1) extending or agreeing to extend any credit or other financial accommodation to or relying on any guaranty, endorsement or other assurance of payment of Girardi Keese, a California general partnership having an office at 1126 Wilshire Blvd., Los Angeles, CA 90017 ("Borrower") or (2) agreeing to any direct or indirect extension, renewal, refinancing or other modification or replacement of or waiving or forbearing from exercising any right or remedy relating to any obligation heretofore or hereafter arising or accruing as a result of any such credit or other financial accommodation to Borrower, and for other valuable consideration, the receipt and adequacy of which is acknowledged, **Girardi Keese** (the "Debtor"), agrees with the Secured Party as follows:

1.     **DEFINITIONS.** In this Agreement:

a.     **Account Debtor.** An "Account Debtor" means any person or entity with an obligation to pay or transfer cash, property or proceeds to any Debtor on an account, chattel paper or general intangible regardless whether such obligation arises from business or personal matters or assets of such Debtor.

b.     **Collateral.** The "Collateral" means:

All Debtor's present and future right, title and interest in and to any and all accounts, choses in action, causes of action, settlement proceeds, attorneys' liens, attorneys' fees, general intangibles, contract rights, deposit and other bank accounts and instruments, instruments, documents, chattel paper and obligations in any form in each case arising out of or related to the rendition of services by Debtor whether earned by performance or otherwise in connection with the following: (i) all matters with respect to which the Borrower is representing one or more individuals or estates against SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Glaxo Wellcome UK Ltd., GlaxoSmithKline UK Limited Brentford, McKesson Corporation and others, or any of them, in connection with the prescription drug Rosiglitazone, marketed under the trade names Avandia, Avandamet and Avandaryl; and (ii) all matters with respect to which the Borrower is representing one or more individuals or estates against Zimmer Inc., Zimmer Holdings Inc. and others, or any of them, in connection with the so-called "Zimmer Hip" litigation; all of Debtor's books related to the foregoing; and all cash and non-cash proceeds of any of the foregoing, in whatever form, including without limitation all proceeds of proceeds, all insurance policies covering same and all interest or dividends thereon.

c.     **Event of Default.** An "Event of Default" occurs or exists if

(i)     there occurs or exists any event or condition of default under any Revolving Promissory Note or other instrument (A) now or hereafter evidencing any of the Obligations or (B) the payment of which is now or hereinafter guaranteed by the Debtor (including, but not limited to, a Revolving Promissory Note, dated the date of this Agreement, issued by Borrower to the Secured Party, or any direct or indirect extension, renewal, refinancing or other modification or replacement of such Revolving Promissory Note); or

(ii)     there occurs or exists any event or condition of default under any guaranty of the Obligations; or

19

Initials

**035**

(iii)   the Secured Party deems itself insecure with respect to the Obligations or is of the opinion that the Collateral is or may not be sufficient or has decreased or may decrease in value, whether or not the Secured Party has sought any Other Collateral from the Debtor or any Guarantor.

**d.    Obligations.** The "Obligations" means collectively all obligations to the Secured Party for the payment of any money (whether for the payment of any principal, interest, fee, charge, cost or expense or otherwise) or the performance of any other obligation (including, but not limited to, pursuant to this Agreement), however evidenced, regardless of kind, class or form, incurred for any business or commercial purpose or otherwise, now existing or hereafter arising or accruing, created directly or by any assignment or other transfer, direct or indirect, absolute or contingent (whether pursuant to any guaranty, endorsement or other assurance of payment or otherwise), similar or dissimilar or related or unrelated and whether or not arising or accrued subsequent to any commencement of, or made, proved, voted or allowed as a claim in any case or other proceeding pursuant to, any bankruptcy, insolvency or similar statute, that have been heretofore or are hereafter incurred by, whether alone or otherwise, the Debtor, the Borrower, any direct or indirect successor of the Debtor or the Borrower or any direct or indirect assignee or other transferee of all or substantially all of the assets of the Debtor or the Borrower.

**e.    Other Collateral.** "Other Collateral" means, other than the Collateral, any collateral, subordination, guaranty, endorsement or other security or assurance of payment, whether now existing or hereafter arising or accruing, that now or hereafter secures the payment of or is otherwise applicable to any of the Obligations.

**f.    Guarantor.** "Guarantor" means any Person, including Thomas V. Girardi, who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Obligations.

**g.    Permitted Liens.** "Permitted Liens" means (i) whether now existing or hereafter arising or accruing, any security interest in or other lien on any of the Collateral in favor of the Secured Party or (ii) any security interest in or other lien on any of the Collateral existing on this date that is (A) fully and accurately described in the response to question 6 contained in the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement or (B) consented to in writing by the Secured Party.

**h.    Person.** "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust, unincorporated association, government or political subdivision, (ii) any court, agency or other governmental body or (iii) any other entity, body, organization or group.

**i.    Record.** "Record" means any information that is now or hereafter (i) inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in perceivable form, except to the extent constituting confidential information (whether contained in any client file of the Debtor or otherwise) that the Debtor is not permitted to disclose to the Secured Party by reason of any ethical or disciplinary rule, regulation or law governing the Debtor's conduct.

**j.    Security Interest.** "Security Interest" means any security interest or other lien granted or otherwise created pursuant to the first sentence of Section 2 of this Agreement.

**k.    Uniform Commercial Code.** "Uniform Commercial Code" means the Uniform Commercial Code in effect at any time in the State of New York.

**l.    Other Terms.** All capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Uniform Commercial Code..

**2.    GRANT OF SECURITY INTEREST.** To secure the payment and performance of the Obligations, the

20

Initials

Debtor grants to the Secured Party a security interest in and assigns, pledges and hypothecates to the Secured Party the Collateral. Each Security Interest is a continuing, absolute and unconditional security interest or other lien.

**3. REINSTATEMENT OF OBLIGATIONS.** Each portion of the Obligations heretofore or hereafter paid or satisfied by any of the Collateral, or any money or Other Collateral, heretofore or hereafter received, applied or retained by the Secured Party and later recovered from the Secured Party as a result of any claim (including, but not limited to, any claim involving any allegation that any money constituted trust funds or that the receipt, application or retention of any of the Collateral or any money or Other Collateral or the grant, perfection or other creation or protection of any security interest in or other lien on any of the Collateral or any Other Collateral constituted a preference or fraudulent conveyance or transfer), however asserted and whether now existing or hereafter arising or accruing, shall be reinstated as part of the Obligations for purposes of this Agreement as of the date it originally arose or accrued.

**4. COVENANTS.**

**a. Affirmative Covenants.** The Debtor shall (i) maintain complete and accurate Records relating to the Collateral, (ii) before the end of any applicable grace period, pay each tax, assessment, fee and charge imposed by any government or political subdivision upon any of the Collateral, this Agreement or any agreement, instrument or other Record evidencing any of the Collateral or any of the Obligations, (iii) defend the Collateral against each demand, claim, counterclaim, setoff and defense asserted by any Person (including, but not limited to, any Account Debtor) other than the Secured Party and (iv) promptly notify the Secured Party of (A) any threat or commencement of any action or other legal proceeding, any entry of any judgment or order of any court, agency or other governmental body, or any assertion by any Person (including, but not limited to, any Account Debtor) other than the Secured Party of any demand, claim, counterclaim, setoff or defense, relating to any of the Collateral, (B) any occurrence or existence of any Event of Default, any event or condition that, after notice, lapse of time or both notice and lapse of time, would constitute any Event of Default or any event or condition that has or will or might have any material adverse effect on (I) any of the Collateral, (II) the Debtor, (III) any Guarantor or (IV) the business, operations, assets, affairs or condition (financial or other) of the Debtor or any Guarantor and (C) any change in the location of the chief executive office of the Debtor.

**b. Negative Covenants.** Without the prior written consent of the Secured Party, the Debtor shall not (i) sell or otherwise dispose of any of the Collateral or any interest or right in any of the Collateral except in the ordinary course of business, or (ii) provide to the Secured Party or permit to be provided to the Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect, (iii) execute or otherwise authenticate or permit to be filed or remain on file in any public office any financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than the Secured Party as a secured party, except for any financing statement or amendment of any financing statement heretofore consented to by the Secured Party in writing or relating solely to any Permitted Liens, or (iv) upon or at any time after any occurrence or existence of any Event of Default, (A) enforce, extend, renew, refinance or otherwise modify or replace, request, demand, accept, collect or otherwise realize upon, compromise, cancel, discharge, subordinate, accelerate, give any receipt, release or discharge relating to, commence, prosecute or settle any action or other legal proceeding relating to, waive or forbear from exercising any right or remedy relating to or adversely affect any obligation of any Person (including, but not limited to, any Account Debtor obligated with respect to any of the Collateral) relating to any of the Collateral, or (B) agree or otherwise incur any obligation to do anything described in clause (iv)(A) of this sentence, or (v) without giving the Secured Party at least 30 days' prior written notice (A) change its location for purposes of Article 9 of the Uniform Commercial Code (including, but not limited to, its jurisdiction of organization if it is a Registered Organization), (B) make any change in its name, identity or structure or (C)

21

Initials

**037**

participate in any merger, consolidation or other absorption, or (vi) grant or otherwise create, permit to exist or agree or otherwise incur any obligation to grant or otherwise create or permit to exist any security interest in or other lien on any of the Collateral other than Permitted Liens, or (vii) use any money of the Borrower, funds in any Deposit Account of the Borrower or funds represented by any certificate of deposit of the Borrower in partial or complete satisfaction of any obligation of the Borrower except for obligations incurred in the ordinary course of the business of the Borrower, or (viii) create, incur, assume or have any indebtedness or other obligation (A) arising from the borrowing of any money or (B) pursuant to any guaranty or other contingent obligation, except for indebtedness and other obligations (I) to the Secured Party, (II) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of its business, (III) arising from the endorsement in the ordinary course of its business of any check or other negotiable instrument for deposit or collection or (IV) secured by a Permitted Lien.

c.    **Additional Covenants Triggered by Request of Secured Party.** Promptly upon the request of the Secured Party, the Debtor shall (i) deliver to the Secured Party each financing statement, amendment of any financing statement and other Record, and take each other action (including, but not limited to, making any endorsement), requested by the Secured Party to perfect, maintain the validity, perfection or priority of, or enforce, any Security Interest, otherwise protect the interest of the Secured Party in or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral, whether under applicable law or otherwise, verify any of the Collateral or otherwise accomplish any purpose of this Agreement, (ii) deliver to the Secured Party each Record included in the Collateral, together with each endorsement, instrument of assignment and other Record that the Secured Party requests to accomplish the assignment or other transfer of such Record to the Secured Party, and, until such delivery, hold such Record in trust for the Secured Party, (iii) cause each Instrument representing Proceeds or other proceeds of any of the Collateral to be made payable, as requested by the Secured Party, to the Secured Party alone or the Secured Party and the Debtor jointly, (iv) provide to the Secured Party all information requested by the Secured Party and relating to (A) any of the Collateral, (B) any Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral, (C) the Debtor, (D) any Guarantor or (E) the business, operations, assets, affairs or condition (financial or other) of the Debtor or any Guarantor (including, but not limited to, financial statements prepared in a form satisfactory to the Secured Party and, if requested by the Secured Party, audited, reviewed or compiled by an independent certified public accountant satisfactory to the Secured Party) and (v) permit each officer, employee, accountant, attorney and other agent of the Secured Party to inspect the Collateral and audit, copy and extract each Record included in the Collateral.

d.    **Collateral Collections.** After an Event of Default shall have occurred, Secured Party shall have the right at any and all times to enforce Debtor's rights against Account Debtors and other parties obligated on Collateral, including, but not limited to, the right to: (a) notify and/or require Debtor to notify any or all Account Debtors and other parties obligated on Collateral to make payments directly to Secured Party or in the care of a post office lock box under the sole control of Secured Party established at the Debtor's expense subject to Secured Party's customary arrangements and charges therefor, and to take any or all action with respect to Collateral as Secured Party shall determine in its sole discretion, including, without limitation, the right to demand, collect, sue for and receive any money or property at any time due, payable or receivable on account thereof, compromise and settle with any person liable thereon, and extend the time of payment of otherwise change the terms thereof, without incurring liability or responsibility to Debtor; (b) require Debtor to segregate and hold in trust for Secured Party and, on the day of Debtor's receipt thereof, transmit to Secured Party in the exact form received by Debtor (except for such assignments and endorsements as may be required by Secured Party), all cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral; and/or (c) establish and maintain at Secured Party a "Repayment Account," which shall be under the exclusive control and subject to the sole order of Secured Party and which shall be subject to the imposition of such customary charges as are imposed by Secured Party from time to time upon such accounts, for the deposit of cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral from which Secured Party may, in its sole

22

Initials

**038**

discretion, at any time and from time to time, withdraw all or any part. Secured Party's collection and enforcement of Collateral against Account Debtors and other persons obligated thereon shall be deemed to be commercially reasonable if Secured Party exercises due care and follows the procedures that Secured Party generally applies to the collection of obligations owed to Secured Party. All cash and non-cash proceeds of the Collateral may be applied by Secured Party upon Secured Party's actual receipt of cash proceeds against such of the Obligations, matured or unmatured, as Secured Party shall determine in its sole discretion. Secured Party may defer the application of non-cash proceeds of Collateral, including, but not limited to, non-cash proceeds collected from Account Debtors and other persons obligated on Collateral, to the Obligations until cash proceeds are actually received by Secured Party.

e.     **Care of Collateral.** Debtor shall have all risk of loss of the Collateral. Secured Party shall have no liability or duty, either before or after an Event of Default, to collect or enforce any of its rights against the Collateral, to collect any income accruing on the Collateral, or to preserve rights against Account Debtors or other parties with prior interest in the Collateral. If Secured Party actually receives any notices requiring action with respect to Collateral in Secured Party's possession, Secured Party shall take reasonable steps to forward such notices to Debtor. Debtor is responsible for responding to notices concerning the Collateral, voting the Collateral, and exercising rights and options, calls and conversions of the Collateral. Secured Party's sole responsibility is to take such action as is reasonably required by Debtor in writing, provided, however, Secured Party is not required to take any action that, in Secured Party's sole judgment, would adversely affect the value of the Collateral as security for the Obligations. While Secured Party is not required to take certain actions, if action is needed, in Secured Party's sole discretion, to preserve and maintain the Collateral, Debtor authorizes Secured Party to take such actions, but Secured Party is not obligated to do so.

**5.     POWER OF ATTORNEY.** Upon the occurrence or existence of any Event of Default, the Debtor irrevocably and unconditionally appoints the Secured Party as the attorney-in-fact of the Debtor, with full power of substitution and revocation, to take, in the name and on behalf of the Debtor or otherwise, each action relating to any of the Collateral that the Debtor could take (subject to the limitations contained in Section 12(j) of this Agreement), provided such appointment and power does not violate any code of professional conduct and the ethical rules thereunder applicable to the legal profession. The power of attorney given pursuant to the preceding sentence is coupled with an interest in favor of the Secured Party.

**6.     CERTAIN RIGHTS, REMEDIES AND DUTIES.**

a.     **Rights and Remedies Pursuant to Applicable Law.** With respect to the Collateral, the Secured Party shall have each applicable right and remedy pursuant to applicable law (including, but not limited to, the Uniform Commercial Code) or this Agreement.

b.     **Additional Rights Without Event of Default.** The Secured Party shall have the right to (i) file in any public office each financing statement or amendment of any financing statement relating to any of the Collateral that the Secured Party desires to file and (ii) verify any of the Collateral in any manner or through any medium, whether directly with any Person (including, but not limited to, any Account Debtor) obligated with respect thereto or otherwise or in the name of the Debtor or otherwise.

c.     **Additional Rights Upon or After Event of Default.** Upon or at any time after any occurrence or existence of any Event of Default, the Secured Party shall have the right to, for the purpose of preserving or enhancing the value of any of the Collateral or exercising any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement, (i) perform each obligation of the Debtor pursuant to this Agreement and (ii) take control of all Proceeds and other proceeds thereof.

23

Initials

**d.     Application of Proceeds.** The Secured Party shall apply all proceeds received by the Secured Party from any collection, sale or other disposition of or other recovery upon or otherwise on account of any of the Collateral (including, but not limited to, as money payable pursuant to any insurance on any of the Collateral) first to liabilities, costs and expenses described in Section 7 of this Agreement and then to the remainder of the Obligations, whether due or not due, in any order determined by the Secured Party.

**e.     Notice of Disposition.** It is mutually agreed that commercial reasonableness and good faith require Lender to give Guarantors no more than ten days' prior written notice of the time and place of any public disposition of Collateral or of the time after which any private disposition or other intended disposition is to be made. It is mutually agreed that it is commercially reasonable for Lender to disclaim all warranties which arise with respect to the disposition of the Collateral.

## 7.     EXPENSES; INDEMNIFICATION.

**a.     Expenses.** The Debtor shall pay to the Secured Party on demand each cost and expense (including, but not limited to, if the Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter incurred by the Secured Party in (i) searching for, filing or recording or obtaining any information relating to any financing statement, amendment of any financing statement or other Record relating to any of the Collateral or otherwise obtaining any information relating to the Debtor or any of the Collateral or (ii) endeavoring to (A) enforce any obligation of the Debtor pursuant to this Agreement or preserve or exercise any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or (B) preserve or exercise any right or remedy relating to or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral. After such demand for the payment of any cost or expense incurred by the Secured Party in performing any obligation of the Debtor pursuant to this Agreement, the Debtor shall pay interest at an annual rate equal to the lesser of 25% or the highest rate permitted by applicable law on the portion of such cost or expense remaining unpaid.

**b.     Indemnification.** The Debtor shall indemnify and defend the Secured Party and each officer, employee, accountant, attorney, banker, lender and other agent of the Secured Party on demand, without any limitation as to amount, against each liability, cost and expense (including, but not limited to, if the Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter imposed on, incurred by or asserted against the Secured Party or such officer, employee, accountant, attorney or other agent as a result of any claim (including, but not limited to, any claim involving any allegation of any violation of applicable law (including, but not limited to, any criminal statute)), however asserted and whether now existing or hereafter arising or accruing, arising out of any collection, sale or other disposition of any of the Collateral or any breach by the Debtor of any representation or warranty or any covenant or other agreement contained in, or any other fact or circumstance relating to, this Agreement, except to the extent any such liability, cost or expense is caused by the gross negligence, bad faith or willful misconduct of the Secured Party or such officer, employee, accountant, attorney or other agent.

**8.     TERMINATION.** This Agreement shall remain in full force and effect until and shall terminate only upon (a) the actual receipt by an officer of the Secured Party at the chief executive office of the Secured Party of a written notice of the termination of this Agreement by any one of the Debtor, (b) the expiration of a reasonable period of time for the Secured Party to act upon such written notice and (c) the final and indefeasible payment in full of (i) each portion of the Obligations (A) arising or accrued before such receipt of such written notice and the expiration of such period of time, (B) thereafter arising or accruing as a result of any credit or other financial accommodation theretofore committed or otherwise agreed to by the Secured Party or (C) thereafter arising or accruing as a result of any of the Obligations described in clause (c)(i)(A) or (B) of this sentence (including, but not limited to, (I) all interest, fees, charges, costs and expenses thereafter arising or accruing with respect to any of the

24

Initials

**040**

Obligations described in such clause (c)(i)(A) or (B) and (II) all of the Obligations thereafter arising or accruing as a result of any direct or indirect extension, renewal, refinancing or other modification or replacement of any of the Obligations described in such clause (c)(i)(A) or (B)) and (ii) each liability, cost and expense that the Debtor is obligated to pay pursuant to Section 7 of this Agreement, whether theretofore or thereafter arising or accruing.

**9.    REPRESENTATIONS, WARRANTIES AND ADDITIONAL COVENANTS.** The Debtor represents, warrants and covenants with and to the Secured Party as follows:

**a.    Authority.** The execution, delivery to the Secured Party and performance of this Agreement and the grant or other creation of each Security Interest by the Debtor (i) do not and will not violate applicable law, any judgment or order of any court, agency or other governmental body by which the Debtor is bound or, if the Debtor is not an individual, any certificate or articles of incorporation or organization, by-laws, operating or partnership agreement or other charter, organizational or other governing document of the Debtor or any resolution or other action of record of any shareholders, members, partners, directors or managers of the Debtor, (ii) do not and will not violate or constitute any default under any agreement, instrument or other Record by which the Debtor is bound or to which the Debtor's property is subject, (iii) if the Debtor is not an individual, are and will be in furtherance of the purposes and within the power and authority of the Debtor and (iv) do not and will not require any authorization of, notice to or other act by or relating to any Person (including, but not limited to, any Account Debtor or, if the Debtor is not an individual, any shareholder, member, partner, director or manager of the Debtor) that has not been duly obtained, given or done and is not in full force and effect.

**b.    Enforceability.** This Agreement is enforceable in accordance with its terms against the Debtor. All of Debtor's accounts, chattel paper, deposit accounts, documents, general intangibles, instruments, investment property, letter of credit rights and other liens, contracts, leases and agreements constituting the Collateral are and shall be valid, genuine and legally enforceable obligations and rights belonging to Debtor and not subject to any claim, defense, set-off, or counterclaim of any kind.

**c.    Ownership.** Debtor is and shall remain owner of the Collateral.

**d.    Questionnaire.** Each answer contained in any questionnaire submitted by or on behalf of the Debtor to the Secured Party in connection with this Agreement (including, but not limited to, the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement) is complete and accurate.

**e.    Rights and Obligations with Respect to Collateral.** Except as heretofore disclosed by the Debtor to the Secured Party in writing, there exists (i) no security interest in or other lien on any of the Collateral other than Permitted Liens, (ii) no presently effective financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than the Secured Party as a secured party other than those relating solely to Permitted Liens, (iii) no contractual or other restriction on the grant or other creation of any security interest in or assignment, pledge or hypothecation of any of the Collateral, and (iv) no demand, claim, counterclaim, setoff or defense, no action or other legal proceeding, and no outstanding judgment or order of any court, agency or other governmental body, relating to any of the Collateral. Debtor (i) shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein; (ii) shall cooperate with Secured Party in obtaining and maintaining control with respect to all deposit accounts, investment property, letter of credit rights and electronic chattel paper consituting the Collateral; (iii) shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissolution without Secured Party's prior written consent; (iv) shall not change its state of organization without first notifying Secured Party in writing; (v) shall immediately advise Lender in writing of any change in address of Debtor or the Collateral; and (vi) shall provide Secured Party with possession, as appropriate, of all chattel paper, documents, instruments and investment property constituting the Collateral.

25

Initials

f.   **Actions with Respect to Collateral.** Except as heretofore disclosed by the Debtor to the Secured Party in writing, the Debtor has not (i) sold or otherwise disposed of any of the Collateral or any interest or right in any of the Collateral or (ii) extended, renewed, refinanced or otherwise modified or replaced, compromised, canceled, discharged, subordinated, accelerated, waived, forborne from exercising any right or remedy relating to or adversely affected any obligation of any Person (including, but not limited to, any Account Debtor) relating to any of the Collateral.

g.   **Accounts and General Intangibles.** Each Account and General Intangible included in the Collateral is or, if not now existing, will be genuine, in all respects what it purports to be and enforceable in accordance with its terms against each Person (including, but not limited to, any Account Debtor) obligated with respect thereto, subject to no demand, claim, counterclaim, setoff or defense.

h.   **Incorrect or Misleading Information.** The Debtor has not provided to the Secured Party or permitted to be provided to the Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect.

i.   **Taxes.** The Debtor has duly filed all applicable income or other tax returns and has paid all income or other taxes when due, and there are no outstanding tax liens against the assets of any Debtor.

## 10.   CERTAIN CONSENTS AND WAIVERS.

a.   **Consents.** Except to the extent expressly provided in this Agreement, this Agreement shall not be modified or terminated, no Security Interest, no obligation of the Debtor pursuant to this Agreement and no right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be impaired or otherwise adversely affected, and no such right or remedy shall be waived, by any act, omission or other thing, whether heretofore occurred or hereafter occurring. The Debtor knowingly, voluntarily, intentionally and irrevocably consents, without any notice, to each act, omission and other thing, whether heretofore occurred or hereafter occurring, that would or might, but for such consent, modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest or any such obligation, right or remedy or operate as a waiver of any such right or remedy.

b.   **Waivers.** The Debtor knowingly, voluntarily, intentionally and irrevocably waives, without any notice, each act and other thing upon which, but for such waiver, any Security Interest, any obligation of the Debtor pursuant to this Agreement or any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement would or might be conditioned.

## 11.   NOTICES AND OTHER COMMUNICATIONS. Each notice and other communication relating to this Agreement (i) shall be given in writing, (ii) if given by facsimile, shall be directed to the Secured Party at (716) 568-0266 and to the Debtor at his, her or its facsimile number set forth on the signature page of this Agreement, (iii) if given otherwise in writing, shall be directed to the Secured Party or the Debtor at their respective addresses indicated at the beginning of the Agreement or on the Signature Page to this Agreement and (iv) if sent by mail or overnight courier service, shall be deemed to have been given when deposited in the mail, first-class or certified postage prepaid, or accepted by any post office or overnight courier service for delivery, and to have been received by the Secured Party or the Debtor upon such Person's actual receipt thereof. Address and facsimile information may be updated by any notice sent in accordance with the preceding sentence. Each requirement under applicable law of reasonable notice of any event by the Secured Party to the Debtor shall be deemed to have been met if a notice of such event is given by the Secured Party to the Debtor at least 10 days before the date on or after which

26

Initials

such event is to occur.

## 12.  MISCELLANEOUS.

**a.  Reliance by Other Persons.** Each Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral may accept without any question any exercise by the Secured Party of any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

**b.  Limitation on Security Interest.** The payment of the Obligations shall not be secured by any Security Interest to the extent of any amount in excess of the maximum amount the payment of which can be so secured without rendering such Security Interest unenforceable under applicable law as a fraudulent conveyance or transfer.

**c.  Obligations Relating to Collateral.** The grant or other creation of any Security Interest shall not constitute an assignment by the Debtor to the Secured Party of any obligation of the Debtor relating to any of the Collateral. The Debtor shall remain obligated to perform each such obligation, and the Secured Party shall not be obligated to perform any such obligation, whether or not the Secured Party exercises any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement. The only obligations of the Secured Party relating to the Collateral shall be, to the extent required by applicable law, to act in a commercially reasonable manner in exercising with respect to any of the Collateral any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement.

**d.  Liability.** If more than one Person executes this Agreement, (i) each of them shall be jointly and severally liable pursuant to this Agreement, and (ii) this Agreement shall be construed, interpreted and enforced, whether in any action or other legal proceeding or otherwise, as to each of them as though each of them had executed and delivered to the Secured Party a separate agreement identical to this Agreement.

**e.  Assignment or Grant of Participation.** In conjunction with any assignment or other transfer of or grant of any participation in any of the Obligations by the Secured Party, the Secured Party shall have the right to assign or otherwise transfer or grant any participation in this Agreement, any Security Interest, any obligation of the Debtor pursuant to this Agreement or any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

**f.  Binding Effect.** This Agreement shall be binding upon the Debtor and each direct or indirect legal representative, successor and assignee of the Debtor and shall inure to the benefit of and be enforceable by the Secured Party and each direct or indirect successor and assignee of the Secured Party.

**g.  Entire Agreement, Modifications and Waivers.** This Agreement contains the entire agreement between the Secured Party and the Debtor with respect to the subject matter of this Agreement and supersedes each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral, written or other agreement and representation heretofore made, by or on behalf of the Secured Party with respect thereto. No action heretofore or hereafter taken or not taken, no course of conduct heretofore or hereafter pursued, accepted or acquiesced in, no oral, written or other agreement or representation heretofore made, and no agreement or representation hereafter made other than in writing, by or on behalf of the Secured Party shall modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest, any obligation of the Debtor pursuant to this Agreement or any right or remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or operate as a waiver of any such right or remedy. No modification of this Agreement or waiver of any such right or remedy shall be effective unless made in a writing duly executed by the Secured Party and specifically referring to such modification or waiver.

27

Initials

**043**

**h.    Rights and Remedies Cumulative.** All rights and remedies of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be cumulative, and no such right or remedy shall be exclusive of any other such right or remedy.

**i.    Extent of Consents and Waivers.** Each consent and waiver of the Debtor contained in this Agreement shall be deemed to have been given to the extent permitted by applicable law.

**j.    Exercise of Rights; Requests.** Except as expressly provided in this Agreement, each right and remedy of the Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement may be exercised (i) at any time and from time to time, (ii) in the sole discretion of the Secured Party, (iii) without any notice or demand of any kind and (iv) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed, but the Secured Party shall not be obligated to exercise any such right or remedy. Each such right and remedy may be exercised only to the extent that the exercise thereof does not (i) violate applicable law or (ii) if requiring the Debtor to take any action, require the Debtor to violate any ethical or disciplinary rule, regulation or law governing non-disclosure of confidential information by an attorney or prohibiting the unauthorized practice of law. Each request by the Secured Party pursuant to this Agreement may be made (i) at any time and from time to time, (ii) in the sole discretion of the Secured Party and (iii) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed.

**k.    Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

**l.    Governing Law.** This Agreement shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York without regard to principles of conflicts of laws.

**m.    Headings.** In this Agreement, headings of sections are for convenience of reference only and have no substantive effect.

**13.    CONSENTS AND WAIVERS RELATING TO LEGAL PROCEEDINGS.**

**a.    JURISDICTIONAL CONSENTS AND WAIVERS. THE DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY CONSENTS AND AGREES THAT ANY ACTION OR OTHER LEGAL PROCEEDING COMMENCED BY THE SECURED PARTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF SUCH ACTION; PROVIDED, HOWEVER, SECURED PARTY MAY, AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN POSSESSION OR FORECLOSURE UPON ANY COLLATERAL, TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY SECURED PARTY AGAINST DEBTOR OR WITH RESPECT TO ANY COLLATERAL, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS AGREEMENT OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY SECURED PARTY. DEBTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO PERSONAL JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND DEBTOR HEREBY WAIVES ANY OBJECTIONS WHICH DEBTOR MAY HAVE BASED UPON LACK**

28

Initials

OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY
CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED
APPROPRIATE BY SUCH NEW YORK COURT.

b.   WAIVER OF TRIAL BY JURY. THE DEBTOR KNOWINGLY, VOLUNTARILY,
INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT THE DEBTOR  MAY HAVE TO A
TRIAL BY JURY WITH RESPECT TO ANY ACTION OR OTHER LEGAL PROCEEDING, WHETHER
BASED ON ANY CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE,
ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, ANY OF THE
OBLIGATIONS, ANY OF THE COLLATERAL OR ANY OTHER COLLATERAL.

c.   SERVICE OF PROCESS. PROCESS ON DEBTOR IN ANY SUIT, ACTION OR PROCEEDING
ARISING OUT OF THIS AGREEMENT WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN
IN ANY ONE OF THE FOLLOWING WAYS: (I) PERSONALLY DELIVERED, (II) TWO BUSINESS
DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER,
POSTAGE PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (III) 4 BUSINESS DAYS AFTER
SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID,
RETURN RECEIPT REQUESTED, ADDRESSED TO THE DEBTOR AT THE APPLICABLE ADDRESS
SET FORTH IN THIS AGREEMENT.  Such service shall be deemed in every respect effective service of
process upon and shall, to the fullest extent permitted by law, be taken and held to be valid personal service
upon the Debtor.  Nothing in this Section shall affect the Secured Party's right to serve process in any other
manner permitted by law.  Debtor may add additional addresses or change the address for purposes of
service of process by giving 10 days' prior written notice of such change to the Secured Party.


Dated: July 2, 2011

Girardi Keese

By: _____
Thomas V. Girardi, Partner
Facsimile No.  213 481 1554

29

Initials

045

## EXHIBIT A

## QUESTIONNAIRE

1. What is the Borrower's legal name?

   Girardi Keese

2. What is the Borrower's jurisdiction of organization and business structure:

   General partnership under the laws of California

3. What is the Borrower's Federal Employer Identification Number or Social Security Number?

   SSN  548 50 5134  (EIN# 95-2988995)

4. What is the address (including state, county and zip code) of a business office of the Borrower?

   1126 Wilshire Blvd., Los Angeles, CA 90017

5. What is the address (including state, county and zip code) of each location at which any Record included in the Collateral is or will be kept other than the locations the addresses of which are indicated in the answers to question 4?

   1126 Wilshire Blvd., Los Angeles, CA 90017

6. In the case of any security interest or other lien covering any of the Collateral and existing on the date of this Agreement in favor of any Person other than the Secured Party, what are the complete name and address of each such Person in whose favor such security interest or other lien exists, and what is the nature of such security interest or other lien?

### Permitted Liens

| Name of Person | Address | Nature of Security Interest/Lien |
|---|---|---|
| Comerica Bank | 75 East Trimble Road San Jose, CA 95131 deposits | blanket lien, as well as various specific security interests in certain accounts, contracts and |
| Dell Financial Services L.P. | 12234 N. 1H-35, Bldg. B Austin, TX 78753 | specific computer equipment |
| Key Equipment Finance Inc. | 1000 So. McCaslin Blvd. Superior, CO 80027 | specific leased equipment |
| Ikon Financial Svcs. | 1738 Bass Rd. Macon, GA 31210 | specific leased equipment |

30

Initials

**046**

Comerica Bank-California    333 W. Santa Clara St.    as to Thomas V. Girardi, certain specified shares
San Jose, CA 95113    of stock in Coast Resorts, Inc.

7.    What is the legal name and principal residence address of each Debtor other than the Borrower?

    None

31

Initials

**047**

ACKNOWLEDGMENT (SECURITY AGREEMENT)

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On the 5th day of July in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared Thomas V. Girardi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Partner of Girardi Keese, and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

_Shirleen H. Fujimoto_
Notary Public

SHIRLEEN H. FUJIMOTO
COMMISSION # 1833089
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires May 15, 2015

32

Initials

**048**

## BORROWER'S CERTIFICATE

With respect to certain credit facilities to be extended by California Attorney Lending II, Inc., a New York corporation (the "Lender"), the undersigned certifies and verifies to Lender, its successors and assignees as follows:

1.  I am [check applicable box:]
    [ the duly elected and qualified President or Secretary
    [ the duly appointed Manager or other authorized Member
    ☑ a duly authorized Partner     of **Girardi Keese, organized under the laws of California**

2.  If the Borrower is a corporation or limited liability company, attached to this Borrowing Certificate as Schedule I is a correct and complete copy of, as applicable, the Certificate of Incorporation or Articles of Organization of the Borrower. If the Borrower is a partnership, attached to this Borrowing Certificate as Schedule I is a correct and complete copy of the publicly filed organizational document of the Borrower.

3.  If the Borrower is a corporation or limited liability company, attached to this Borrowing Certificate as Schedule II is a correct and complete copy of, as applicable, the By-Laws or Operating Agreement of the Borrower.

4.  If the Borrower is a general or limited liability partnership, attached to this Borrower's Certificate as Schedule II is a correct and complete copy of the Partnership Agreement of the Borrower.

5.  The resolutions attached to this Borrowing Certificate as Schedule III (collectively the "Resolutions") were duly adopted either (a) at a meeting of the board of directors, members or partners of the Borrower duly called and held on [specify date:]

    **July ___, 2011**
    which meeting a quorum was present and participated, or (b) by unanimous written consent of the directors, members or partners of the Borrower.

6.  None of the Resolutions has been rescinded, revoked or modified in any way.

7.  All of the Resolutions are in full force and effect.

8.  Neither any of the Resolutions nor any action taken or to be taken pursuant to any of the Resolutions (a) violates or will violate applicable law, any judgment or order of any court, agency or other governmental body by which the Borrower is bound, the Certificate of Incorporation, Articles of Organization, Certificate of Registration, By-Laws, Operating Agreement, Partnership Agreement or other governing document of the Borrower or any resolution or other action of record of the shareholders, directors or partners of the Borrower, (b) violates, will violate or constitutes or will constitute any default under any agreement, or instrument or other document by which the Borrower is bound or to which any of the Borrower's property is subject or (c) requires or will require any authorization of, notice to or other act by or relating to any individual, any court, agency or other governmental body or any other entity, body, organization or group (including, but not limited to, any shareholder, director, member, manager or partner of the Borrower) that has not been duly obtained, given or done and is not in full force and effect.

9.  Each of the following persons (individually a "Signer") (a) if the Borrower is a corporation or a limited liability company, has been duly elected to and qualified for and holds the office of the Borrower set opposite his or her name thereon, or (b) if the Borrower is a partnership, together constitute all of the partners of such partnership or (c) has been designated by Borrower as a person authorized to transact financial transactions on behalf of Borrower. Each Signer is duly authorized to execute the loan documents between Lender and the Borrower and is also authorized to make a Loan Request on behalf of the Borrower as that term is defined in the Note executed by Borrower to Lender:

| NAME | TITLE | SIGNATURE |
|------|-------|-----------|

33

Initials

Thomas V. Girardi          Partner          _____

10.   The signature set opposite each Signer's name on the list above is a true specimen of such Signer's signature.

11.   With respect to the borrowing of $3,500,000 by Girardi Keese from California Attorney Lending II, Inc., (i) the terms of the borrowing were negotiated in the State of New York, (ii) the drafting of the loan documents and the funding of the loan was in the State of New York (iii) the laws of the State of New York are intended by the parties to apply with respect to the construction, interpretation and choice of law governing all documents executed by the Borrower; and (iv) California Attorney Lending II, Inc. and its legal counsel are located within the State of New York. The loan was intended by the Lender and Borrower as a New York loan to be construed under New York law regardless of any other location of the Borrower or any guarantor.

12.   **The Borrower has not granted or incurred any liens against its assets since the date of its loan application to Lender.**

13.   The undersigned certifies that the Borrower and each Guarantor has duly filed all applicable income or other tax returns and has paid all income or other taxes when due, and that there are no outstanding tax liens against the assets of any of them.

IN WITNESS WHEREOF, I have executed this Borrowing Certificate as of July __, 2011 and verify that all of the information contained herein is true and correct to the best of my knowledge being fully aware that Lender will rely on the accuracy of this Borrowing Certificate in extending credit facilities to Borrower.

_____
Thomas V. Girardi

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On the 5th day of July in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared Thomas V. Girardi, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

SHIRLEEN H. FUJIMOTO
COMMISSION # 1933089
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires May 15, 2015

34

_____
Initials

**050**

# SCHEDULE I

## CERTIFICATE OF PARTNERSHIP

35

Initials

**051**

# SCHEDULE II

## PARTNERSHIP AGREEMENT

36



Initials

## SCHEDULE III

### Resolutions

### Girardi Keese (the "Borrower")
Organized under the laws of California

RESOLVED, that any officer, manager, member or partner of the Borrower (individually an "Authorized Person") be, and he or she hereby is, authorized, directed and empowered, acting alone, in the name or on behalf of the Borrower or otherwise, to transact with and through California Attorney Lending II, Inc. (the "Lender") all such business as he or she shall deem necessary or appropriate upon such terms as he or she shall deem necessary or appropriate (including, but not limited to, obtaining loans and other extensions of credit, guaranteeing or otherwise becoming contingently liable for obligations of others, applying for loans and other forms of credit and pledging, hypothecating, assigning, encumbering, granting security interests in and otherwise creating liens upon all assets including real and personal property, whether tangible or intangible, contingent or accrued, now owned or hereafter acquired ("Property") as security for loans and other extensions of credit and guaranties and other contingent liabilities) and, in connection with any such transaction of business, to do all such acts and other things as he or she shall deem necessary or appropriate (including, but not limited to, signing, drawing, endorsing, executing and delivering notes, guaranties, assignments, pledges, hypothecations, security agreements, mortgages, powers of attorney, confessions of judgment, indemnifications, receipts, waivers and other agreements, instruments and other documents, making and receiving delivery of any Property, accepting, receiving, withdrawing and waiving demands and notices and incurring and paying liabilities, costs and expenses); and be it further

RESOLVED, that, without limiting the generality of the foregoing resolution, any Authorized Person be, and he or she hereby is, authorized, directed and empowered, acting alone, in the name or on behalf of the Borrower or otherwise, to obtain from the Lender revolving loans the total of the outstanding principal amounts of which does not at any time exceed $3,500,000 and to pledge, hypothecate, assign, encumber, grant security interests in and otherwise create liens on Property as security for such loans; and be it further

RESOLVED, that all loans and other extensions of credit heretofore obtained by the Borrower from the Lender, all actions heretofore taken by the Lender with respect to any Property of the Borrower and all transactions and agreements occurring or entered into between the Borrower and the Lender are ratified, approved and confirmed in all respects; and be it further

RESOLVED, that notwithstanding the dissolution or termination of existence of the Borrower or any change in the identity of or any modification or termination of any authority of any Authorized Person, the Lender may rely upon and act in accordance with the foregoing resolutions until it shall receive and have a reasonable time to act on a written notice to the contrary from an Authorized Person.

Initials

### Key Loan Term Summary with Lender Forms

**The following summary sets forth certain key terms in the Loan Documents between California Attorney Lending II, Inc. ("CAL") and Borrower and provides copies of forms required to be used by the Lender. THIS IS NOT A LEGAL DOCUMENT, it is not a complete listing of all rights and obligations of the parties under the Loan Documents, and is intended solely for the purpose of assisting Borrower in its administration of its Loan with CAL. In all events, the Loan Documents are controlling with respect to the parties' rights and remedies with respect to the Loan.**

1. <u>Draw Requests:</u> All Loan Requests are subject to the review and approval of CAL and must be submitted by e-mail or facsimile on the Draw Request form (attached).

2. <u>Purpose:</u> The LOC will be used solely by Borrower to (i) refinance the Borrower's existing credit facilities (if any), (ii) pay the operating expenses of Borrower's legal practice, or (iii) fund interest payments on the LOC.

3. <u>Payment Terms:</u> <u>Months 1-24</u>: Monthly interest only, except as described in "Mandatory Pre-Payments" below. <u>Months 25-48</u>: Monthly interest, plus 1/24 of the outstanding principal balance each month.

4. <u>Mandatory Pre-Payments:</u> To the extent of outstanding interest and principal, 100% of all fees and reimbursed expenses from the following: (i) Award from the Vioxx Common Benefit Fund; (ii) Avandia litigation; (iii) Fogel v. Farmers Group, Inc. Line availability to be reevaluated upon the resolution and receipt of fees from these cases with adjustments made based upon remaining collateral.

5. <u>Interest:</u> 18% per annum, payable on the 10th day of every month. Invoices are issued on the 1st day of every month. One month's interest in advance is payable to CAL at the closing and held on account, to be applied in the event timely payment is not made. We will require the Borrower to initiate preauthorized electronic funds transfers from a specified bank account to pay the interest on the 10th of every month.

6. <u>Fees and Charges:</u> Borrower will be charged a closing fee equal to 3% of the LOC amount.

38

Initials

**054**

# *California Attorney Lending II, Inc.*

*Specialized Lending Exclusively For the Legal Community*

## AUTHORIZATION FOR LOAN PAYMENT
## AUTOMATIC WITHDRAWAL FORM

### Borrower's Information

**Full Name:** GIRARDI KEESE

**SS# or EIN#:** EIN# 95-2988995 (Soc Sec #548 50 5134)

**Email Address:** tgirardi@girardikeese.com

### Borrower's Bank Information

**Bank Name:** COMERICA BANK

**Bank ABA (Routing) No.** 121137522

**Bank Telephone No.** 562 463 6565

**Bank Address:** 13200 Crossroads Parkway North, Ste. 200, City of Industry, CA 91746

**Borrower's Bank Account No.** 1890686098

The undersigned on behalf of Borrower authorizes California Attorney Lending II, Inc. to initiate preauthorized electronic funds transfers from the bank account indicated above, and the undersigned authorizes the bank named above to debit the transfers to that account. This authorization shall not be revoked, modified, or in any other way altered without the express written consent of both the undersigned and California Attorney Lending II, Inc.

**Borrower:** GIRARDI KEESE

**Authorized Signature:** _____    **Date:** 7/15/11

**Name and Title of Signer:** Thomas V. Girardi, Partner

Return this Form and a Voided Check to California Attorney Lending II, Inc.

39

Initials

**055**

**GIRARDI KEESE**
1126 Wilshire Blvd.
Los Angeles, CA 90017

**DRAW REQUEST**

Ms. Megan Payne
Chief Operating Officer
California Attorney Lending II, Inc.
6400 Main St.
Suite 120
Williamsville, NY 14221

Re: <u>Revolving Line of Credit</u>

Dear Ms. Payne:

Girardi Keese hereby requests the additional sum of <u>Three Million</u> Dollars ($ <u>3,000,000</u>), drawn from the Law Firm's revolving line of credit. Please deposit the funds on or before _____ into the bank account you have on file for our firm.

The funds will be used as follows:

| | |
|---|---|
| Operating Expenses: | $ yes |
| Client/Case Expenses: | $ case costs |
| Advertising: | $ |
| Partner draws/salary: | $ |
| Payroll: | $ |
| Other_____ | $ |

Very truly yours,
Girardi Keese

By:_____
Partner   Thomas V. Girardi

40

Initials

**056**

## WIRE INSTRUCTION STATEMENT INFORMATION

**TO:**        ACCOUNTING
**FROM:**      MEGAN PAYNE, CHIEF OPERATING OFFICER
**SUBJECT:**   CLOSING – $3,500,000 REVOLVING LINE OF CREDIT – GIRARDI KEESE
**DATED:**        JULY 5, 2011

### WIRE INSTRUCTIONS FOR GIRARDI KEESE

**NAME OF ACCOUNT DEBTOR:**             THOMAS V. GIRARDI

**NAME OF FINANCIAL INSTITUTION:**      Comerica Bank

**ADDRESS OF FINANCIAL INSTITUTION:**   13200 Crossroads Parkway North, Ste. 200

City of Industry, CA 91746

**ABA NUMBER:**                         121137522

**ACCOUNT NUMBER:**                     1890686098

GIRARDI KEESE

By: _____

THOMAS V. GIRARDI

41

Initials

**057**

**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

## UCC Filing Acknowledgement

07/06/2011

Page 1 of 1

DAMON MOREY LLP
THE AVANT BUILDING - SUITE 1200
200 DELAWARE AVENUE
BUFFALO NY 14202

| | |
|---|---|
| Filing Fee: | $5.00 |
| Total Fee: | **$5.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**   File Date: **07/06/2011**   File Time: **09:08**

Filing Number: **11-7275806299**   Lapse Date: **07/06/2016**

Debtor(s):
ORGANIZATION   **GIRARDI KEESE**

**1126 WILSHIRE BLVD. LOS ANGELES CA USA 90017**

Secured Party(ies):
ORGANIZATION   **CALIFORNIA ATTORNEY LENDING II, INC.**

**6400 MAIN STREET, SUITE 120 WILLIAMSVILLE NY USA 14221**

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. • SACRAMENTO, CA 95814 • PO BOX 942835 • SACRAMENTO, CA 94235-0001 • (916) 653-3516 • HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

058

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Timothy C Cashmore
716-858-3883

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Damon Morey LLP
The Avant Building - Suite 1200
200 Delaware Avenue
Buffalo, NY 14202
USA

DOCUMENT NUMBER: 29534010002
FILING NUMBER: 11-7275806299
FILING DATE: 07/06/2011 09:08
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Girardi Keese | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1126 Wilshire Blvd. | Los Angeles | CA | 90017 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | general partnership | CA | ☑NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| California Attorney Lending II, Inc. | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6400 Main Street, Suite 120 | Williamsville | NY | 14221 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
All Debtor's present and future right, title and interest in and to any and all accounts, choses in action, causes of action, settlement proceeds, attorneys' liens, attorneys' fees, general intangibles, contract rights, deposit and other bank accounts and instruments, instruments, documents, chattel paper and obligations in any form in each case arising out of or related to the rendition of services by Debtor whether earned by performance or otherwise in connection with the following: (i) all matters with respect to which the Borrower is representing one or more individuals or estates against SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Glaxo Wellcome UK Ltd., GlaxoSmithKline UK Limited Brentford, McKesson Corporation and others, or any of them, in connection with the prescription drug Rosiglitazone, marketed under the trade names Avandia, Avandamet and Avandaryl; and (ii) all matters with respect to which the Borrower is representing one or more individuals or estates against Zimmer Inc., Zimmer Holdings Inc. and others, or any of them, in connection with the so-called "Zimmer Hip" litigation; all of Debtor's books related to the foregoing;

**5. ALT DESIGNATION:** ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

| ☐6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
Girardi Keese

FILING OFFICE COPY

**059**

Page 2

Case 2:20-bk-21020-BR   Doc 14-1   Filed 12/24/20   Entered 12/24/20 13:11:58   Desc
Exhibit Exhibits 1 through 7 To Declaration of Paul Cody With Proof of Service   Page 46 of 114

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** Girardi Keese | |

OR

| **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME, SUFFIX** |
|---|---|---|
| | | |

**10. MISCELLANEOUS:**

**DOCUMENT NUMBER: 29534010002**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| **11a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|
| | | | |

OR

| **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **11d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID#, if any** ☐NONE |
|---|---|---|---|---|
| | | | | |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| **12a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|
| | | | |

OR

| **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

**13. This FINANCING STATEMENT covers** ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14. Description of real estate:**

**16. Additional collateral description:**

and all cash and non-cash proceeds of any of the foregoing, in whatever form, including without limitation all proceeds of proceeds, all insurance policies covering same and all interest or dividends thereon.

**15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**17. Check only if applicable and check only one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

**FILING OFFICE COPY**

# EXHIBIT "2"

# EXHIBIT 2

# EXHIBIT 2

Electronically FILED by Superior Court of California, County of Los Angeles on 10/27/2020 03:19 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Rose,Deputy Clerk

20STCP03546

1  RICHARD W. LABOWE, ESQ. (BAR NO. 105905)
   RICHARD W. LABOWE, A PROFESSIONAL CORPORATION
2  1631 W. BEVERLY BLVD.
   SECOND FLOOR
3  LOS ANGELES, CA  90026-5746
   (213) 250-9800
4

5  Attorneys for Plaintiff
   CALIFORNIA ATTORNEY LENDING II, INC.
6

7

8

9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10               **FOR THE COUNTY OF LOS ANGELES**

11

12  CALIFORNIA ATTORNEY LENDING II, INC.,    )  CASE NO.  20STCP03546
                                            )
13                    Plaintiff,            )  **CONFESSION TO JUDGMENT;**
                                            )  **CERTIFICATE OF DEFENDANTS'**
14       vs.                                )  **ATTORNEY; STATEMENTS**
                                            )  **AUTHORIZING CONFESSION OF**
15  GIRARDI & KEESE, A CALIFORNIA GENERAL   )  **JUDGMENT**
16  PARTNERSHIP, THOMAS V. GIRARDI,         )
    Individually, and DOES I through X, Inclusive,  )  **[C.C.P. §§1132-1134]**
17                                          )
                                            )
18                    Defendants            )
    _____    )
19

20

21        IT IS HEREBY STIPULATED BY AND BETWEEN Plaintiff CALIFORNIA ATTORNEY

22  LENDING II, INC. ("**CAL**") and Defendants GIRARDI & KEESE, A CALIFORNIA GENERAL

23  PARTNERSHIP ("**G&K**") and THOMAS V. GIRARDI ("**GIRARDI**") [collectively "**the**

24  **Defendants**"], either individually or through their attorneys of record as follows:

25                              **RECITALS**

26        1.     In 2011, CAL and G&K entered into a financing arrangement, which was

27  personally guaranteed by GIRARDI, secured in part by the attorney's fees and reimbursable

28  costs that G&K was entitled to receive in its representation of various clients.

                                      1
_____
                        **CONFESSION TO JUDGMENT, ETC.**

**063**

2.      Defendant G&K defaulted in the performance of the obligations owing to Plaintiff and on or about November 8, 2019, for good and valuable consideration, Defendant G&K executed and delivered to Plaintiff its Fourth Amended and Restated Promissory Note in favor of Plaintiff CAL (**"the Note"**) wherein Defendant G&K agreed to repay Plaintiff the principal sum of $8,000,000.00.

3.      Interest and Interest Rates on the Note are calculated as follows:

*a.      Calculation of Interest*. Interest shall be calculated on the basis of a 360 day year for the actual number of days of each year (365 or 366, as applicable), on the Outstanding Principal Amount for each day from and including the date of this Note to but not including the date the Outstanding Principal Amount is paid in full.  Notwithstanding the foregoing, at Lender's option without further consent by the Borrower, Lender may compound interest on a monthly or annual basis as determined by the Lender in its sole discretion.

*b.      Interest Rate*. Interest will accrue (A) on the first $5,000,000 of Credit at the rate of 16% per annum, except as set forth below, (B) on the next $2,000,000 of Credit at the rate of 19% per annum, except as set forth below and (C) on the remaining $1,000,000 of Credit at the rate of 2% per month, for a minimum of six (6) months, except as set forth below.

*c.      Increase in Interest Rate; LIBOR Unavailable*. If on the first business day of any calendar month, the LIBOR Rate equals more than 2.0% per annum, the interest

1  rate applicable on each day during such calendar month will equal (A) the applicable rate

2  set forth above, plus (B) the excess of the LIBOR Rate on such first business day of such

3  calendar month over 2.0%.  Notwithstanding anything to the contrary set forth herein, if the

4  LIBOR Rate shall for any reason be unavailable, then any reference hereto to LIBOR Rate

5

6  shall be deemed to mean the Base Rate.

7

8          *d.*      ***Default Interest***. On and after the occurrence of an Event of Default,

9  the interest rate applicable to this Note shall equal the rate per year that is the lesser of (i)

10  24.9% or (ii) the maximum rate permitted by applicable law ("**Default Interest**"). Default

11
   Interest shall be payable during any period of default and up to and including the date of the
12
   next payment made after such period of default. Default Interest, and not any rate set by
13
14  statute, shall be computed in any entry of judgment pertaining to this Note, and further, shall

15  be paid subsequent to the entry of such judgment, and until actual satisfaction of said

16  judgment. The judgment shall include both the action and the obligation itself. In such event,

17  the Default Interest rate shall continue up through and including all foreclosure proceedings

18
   and proceedings for payment of monies, including but not limited to surplus money
19
   proceedings and shall be computed in the entry of any judgment, and further, subsequent to
20
21  the entry of any judgment, and until actual satisfaction of this Note and said judgment.

22

23          *e.*      ***Maximum Applicable Rate***. In no event shall such interest be payable

24  at a rate in excess of the maximum rate permitted by applicable law. Any amount payable

25  under this Note that is interest, or that is treated as interest, and that would cause such

26
   maximum rate to be so exceeded shall be deemed to have been a mistake and
27
28  automatically canceled. If any such amount that causes the maximum rate to be exceeded

3

**CONFESSION TO JUDGMENT, ETC.**

is received by Holder, such amount shall be refunded to Borrower or applied to the

Outstanding Principal Amount, as determined by Holder. It is the intention of Lender and

Borrower that interest not be payable at a rate in excess of such maximum rate."

"

    4.      On or about November 8, 2019, for good and valuable consideration, CAL

entered into a written Fourth Amended and Restated Security Agreement ("**the

Agreement**") with Defendant G&K, whereby CAL was granted a security interest in all

personal property of Defendant G&K including, without limitation, goods, inventory,

equipment, accounts, contract rights, deposit accounts, chattel paper, investment property,

general intangibles, commercial tort claims, and any right to payment of any Debtor for

client representation or referral and for costs and expenses, whether or not yet earned by

performance, and the proceeds thereof, as well as all other rights to payment by G&K of

every type and description, whether then existing or thereafter arising and all proceeds

thereof ("**the Collateral**") to secure performance under the Note.


    5.      The obligations described in the Note were personally guaranteed by

GIRARDI.


    6.      The money borrowed or to be borrowed from CAL, as identified in the Note,

was or will be utilized for working capital of Defendant G&K located in the County of Los

Angeles, California (or interest on the Note).


    7.      On or about July 6, 2011, CAL filed a Financing Statement with the Secretary

of State of California as file number 11-7275806299 concerning the Collateral, a Financing

1    Statement continuation on June 15, 2016 as file number 16-75306737, and a Financing

2    Statement amendment to add GIRARDI as a Debtor on July 19, 2017 as file number 17-

3    75969950.

4

5

6          8.     The various contracts contain attorney fees provisions.  CAL necessarily

7    engaged the services of attorneys to protect its rights.

8

9   **THE CURRENT DEBT**

10          9.     As of November 12, 2019, the balance due on the Note was $7,184,642.72

11   plus interest and other contract charges (including legal expenses incurred by CAL) in

12   accordance with the Agreement and the Note.

13

14

15        10.     CAL is willing to stay enforcement actions on condition that G&K and

16   GIRARDI agree to confess judgment in favor of CAL as set forth below.

17

18        11.     CAL and Defendants G&K and GIRARDI desire to avoid the risks and

19   expenses attended upon litigation and desire to reach a full and final settlement of all

20   matters, claims and causes of action arising out of the foregoing transactions.

21

22

23      **NOW, THEREFORE**, the parties hereto stipulate and agree as follows:

24

25        A.     The RECITALS are agreed facts and incorporated herein by this reference.

26

27

28

5

CONFESSION TO JUDGMENT, ETC.

**067**

B.      G&K, GIRARDI consent to the jurisdiction of the Superior Court of the State of California for the County of Los Angeles.

C.      CAL shall have judgment against Defendants G&K, GIRARDI for possession of the Collateral.

D.      CAL shall have judgment against Defendants G&K, GIRARDI in the principal sum of $8,000,000.00 plus interest as provided in paragraph 3 of the Recitals from November 12, 2019 and other contract charges, including reasonable legal expenses incurred by CAL relative to its claims against Defendants G&K, GIRARDI subsequent to November 11, 2019.  Said sum represents all principal and contract charges incurred and owing by Defendants G&K, GIRARDI to CAL as of November 8, 2019.

E.      Further, CAL shall be entitled judgment against G&K and GIRARDI for all advances made to G&K subsequent to November 8, 2019 as well as for all reasonable attorneys' fees and costs incurred subsequent to November 8, 2019, including, without limitation, drafting as well as monitoring the terms of this Confession to Judgment and related documents, and, in the event of subsequent default in the terms of this Confession to Judgment, additional reasonable attorneys' fees pursuant to the terms of the underlying contracts, in seeking entry of a judgment as well as enforcement of any judgment that may be entered.

F.      The sum set forth in Paragraphs D and E shall be satisfied by the following payment schedule:

**6**

CONFESSION TO JUDGMENT, ETC.

**i.**     **Regularly Scheduled Payments of Interest and Principal**.

**Monthly Interest**. G&K shall pay monthly all interest that has accrued on the Note through the last day of each calendar month (beginning with November 2019), no later than the 10th day following the end of such calendar month, calculated at the rate and in the manner set forth in paragraph 3 of the Recitals.

**Principal Payment Schedule During Amortization Period**. In addition to the mandatory prepayments required below, G&K shall pay the Note in twenty-four (24) consecutive monthly installments commencing on December 1, 2021 ("the **Amortization Period**") and continuing on the same day of each month thereafter with the final payment due and payable on November 1, 2023 (the "**Maturity Date**"). G&K shall pay each monthly installment payable for a calendar month no later than the 10th day following the end of such calendar month.

**Monthly Principal Amount; Effect of Prepayment on Monthly Principal Amount**. Each such monthly principal installment payable during the Amortization Period shall be in an equal amount, sufficient to amortize in full in 24 installments the Note determined as of November 30, 2021. In the event of a mandatory prepayment or optional prepayment of this Note during the Amortization Period, the amount of each remaining monthly principal installment shall be recalculated so as to equal the level monthly amount

7

1  sufficient to amortize the then Note after giving effect to such mandatory or

2  optional prepayment over the then remaining Amortization Period (and the

3  term of this Note shall not be shortened).

4

5

6      **ii.**    **Mandatory Prepayments Based on Net Fees and Expenses**.

7

8      **Payments Based on Net Fees and Expenses**. During the

9  entire term of this Note and subject to the last sentence of this paragraph,

10  G&K shall pay to CAL, an amount equal to (1) 50% of Net Fees and

11  Expenses, as received from the Lion Air Crash, Porter Ranch, FTR and

12  Abikzer litigations (limited to the Note, interest and fees due at the time of

13  receipt) and (2) on all other matters, 25% of Net Fees and Expenses, in

14  excess of $7,500,000 received on a quarterly basis (based on calendar

15  quarters ending March 31, June 30, September 30 and December 31),

16  provided that when Net Fees and Expenses in any quarter exceed

17  $10,000,000 G&K shall pay 50% of Net Fees and Expenses in excess of

18  $10,000,000 in addition to the required 25% of Net Fees and Expenses

19  between $7,500,000 and $10,000,000. G&K shall continue to hold in G&K's

20  trust account any Net Fees and Expenses received until the applicable

21  amount of such Net Fees and Expenses is transmitted to CAL.

22

23

24  G.   **TIME IS OF THE ESSENCE.**  All installments shall be paid in the form

25  of company check, attorney trust account check, cashier's checks, certified funds or wire

26  transfer and are to be made payable to CALIFORNIA ATTORNEY LENDING II, INC. and

27  delivered to CAL, 6400 Main Street, Suite 120, Williamsville, NY 14221, Attention: Megan

28

**8**

**CONFESSION TO JUDGMENT, ETC.**

**070**

1  Payne (or such other address as CAL may provide in writing) on or before the dates they

2  mature.  **ANY SCHEDULED MONTHLY PAYMENT THAT IS NOT RECEIVED WITHIN**

3  **TEN (10) DAYS OF ITS DUE DATE SHALL BE ASSESSED A LATE FEE IN THE**

4  **AMOUNT OF FIVE PERCENT (5%) OF SUCH PAYMENT AMOUNT, WHICH LATE FEE**

5  **MUST BE PAID WITHIN THIRTY (30) DAYS OF THE PAYMENT DUE DATE.  IF ANY**

6  **ASSESSED LATE FEE IS NOT PAID WITHIN THIRTY (30) DAYS OF THE PAYMENT**

7  **DUE DATE, THEN SAID NON-PAYMENT SHALL CONSTITUTE A DEFAULT UNDER**

8  **THIS AGREEMENT.**

9

10        H.        **RIGHT OF PRE-PAYMENT.**  Defendants G&K, GIRARDI, or any of them, may

11  elect to pay in full the balance owed under this Confession to Judgment at any time during

12  the term so long as the terms and conditions of this Confession of Judgment are not in

13  default.  The right to prepayment is without penalty.

14

15

16        I.        CAL will not enforce its rights to possession of the Collateral so long as there

17  is not a default in the payments as described below.

18

19        J.        Defendants G&K, GIRARDI shall be enjoined from selling, hypothecating,

20  concealing or otherwise disposing of the Collateral, or any portions thereof, or removing

21  same from the premises where it is now located, without prior written consent of CAL.

22  Defendants G&K, GIRARDI represent that the Collateral is now located at 1126 Wilshire

23

24  Blvd., Los Angeles CA 90017 ("**G&K's Address**").

25

26        K.        In the event that there is a default in payment, this Confession to Judgment

27  may be filed and judgment entered after seven (7) days written notice of the default (by e-

28  mail only), and of the right to cure same, has been provided by CAL to Defendants G&K and

9

---

**CONFESSION TO JUDGMENT, ETC.**

071

GIRARDI and their attorney (also by via email only).  Within the said seven (7) day cure period, Defendants G&K and GIRARDI shall have the right to cure the default by paying the delinquent installment(s), late charges and interest accrued thereon and by paying any expenses incurred by CAL as a result of the default including, but not limited to, reasonable attorneys' fees, by certified, bank or cashier's check only.

K.      GIRARDI shall be entitled to notice and cure no more than four (4) times and any subsequent failure to timely pay an installment shall constitute any immediate, non-curable default.

L.      In the event of a non-curable default or a default that is not cured, then CAL shall be entitled to file Confession to Judgment, along with a Declaration setting forth the amount of advances that have been made and payments that have been received prior to the default and judgment shall be entered for the balance owing as provided in Paragraphs D and E hereof, after debiting advances and crediting payments received prior to default, as well as for judgment for possession of the Collateral.

M.      In the event of a non-curable default or a default in payment is not cured, then this Confession to Judgment may be filed with the Clerk of the Los Angeles Superior Court, along with a Declaration setting forth the amount of payments that have been received prior to the default as well as advances made prior to the Amortization Period and a Judgment may be entered pursuant to this Confession to Judgment by any Judge or Court Commissioner upon Ex Parte Application without notice or hearing.  The judgment shall include all unpaid legal expenses incurred by CAL subsequent to November 8, 2019 as well

10

CONFESSION TO JUDGMENT, ETC.

1  as any court costs incurred by CAL.  Defendants G&K and GIRARDI specifically waive the

2  requirement of notice and/or hearing pursuant to the principal set forth in the case entitled

3  Peter Rooney, et al. vs. Vermont Investment Company, 10 Cal.3d 351, 515 P.2d 297.

4

5

6        N.    The parties acknowledge that they have been represented in the preparation

7  of this Confession to Judgment or have had the opportunity to consult an attorney of their

8  choice regarding this Confession to Judgment.

9

10  ///

11

12

13  ///

14

15  ///

16

17  ///

18

19

20  ///

21

22  ///

23

24  ///

25

26

27

28

**CONFESSION TO JUDGMENT, ETC.**

1    O.    In the event a judgment is entered, then CAL is entitled to add post-judgment

2   legal expenses pursuant to the provisions of Code of Civil Procedure §685.040 et seq. to the

3   amount of any judgment that may be entered.

4                              **END OF STIPULATION**

5   DATED: November *13*, 2019          RICHARD W. LABOWE,
6
7                                        A Professional Corporation,
8                          By:    _____
9                                 RICHARD W. LABOWE, Esq.
                                  Attorneys for Plaintiff
10                                CALIFORNIA ATTORNEY LENDING II, INC.

11
12  DATED: November *12*, 2019          BAKER, KEENER & NAHRA, LLP
13
14                         By:    _____
                                  ROBERT BAKER, Esq.
15                                Attorney for Defendants
                                  GIRARDI & KEESE,
16                                A CALIFORNIA GENERAL PARTNERSHIP and
                                  THOMAS V. GIRARDI
17

18  DATED: November *12*, 2019          GIRARDI & KEESE,
19                                       A CALIFORNIA GENERAL PARTNERSHIP
20
21                         By:    _____
                                  THOMAS V. GIRARDI, General Partner
22
23  DATED: November *12*, 2019    _____
24                                THOMAS V. GIRARDI, Individually

25

26

27

28

                              12

**CERTIFICATION OF DEFENDANTS' ATTORNEY**

I, ROBERT BAKER, declare, certify and state:

1.     I am duly licensed to practice law within the State of California.  I have personal and firsthand knowledge of the facts set forth in this declaration and could and would competently testify thereto if called on as a witness herein.  This Declaration is filed pursuant to California Code of Civil Procedure § 1132(b).

2.     I am the independently retained attorney of record for Defendants GIRARDI & KEESE, A CALIFORNIA GENERAL PARTNERSHIP and THOMAS V. GIRARDI with regard to the proposed Confession to Judgment to which this certification is attached.

3.     I have examined the proposed Confession to Judgment set forth above to which this certification is attached.

4.     I have advised the Defendants GIRARDI & KEESE, A CALIFORNIA GENERAL PARTNERSHIP and THOMAS V. GIRARDI with respect to the waiver of rights and defenses under the confession of judgment procedure.

5.     I have further advised the Defendants GIRARDI & KEESE, A CALIFORNIA GENERAL PARTNERSHIP and THOMAS V. GIRARDI to utilize the confession of judgment procedure.

I DECLARE UNDER PENALTY OF PERJURY, UNDER THE LAWS OF THE STATE OF CALIFORNIA, THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this _12_ day of November, 2019 at Los Angeles, California.

_____
ROBERT BAKER, Declarant

13

**CONFESSION TO JUDGMENT, ETC.**

075

## STATEMENT AUTHORIZING CONFESSION OF JUDGMENT

I, THOMAS V. GIRARDI, declare and state:

1.    I am over the age of 18 and a party to the above-entitled proceedings. I am also a licensed attorney in the State of California and a general partner of GIRARDI & KEESE, A CALIFORNIA GENERAL PARTNERSHIP. I have personal and firsthand knowledge of the facts set forth in this declaration and could and would competently testify thereto if called upon as a witness herein. This statement is made pursuant to the provisions of California Code of Civil Procedure §1133.

2.    I have reviewed the Recitals as well as the terms and conditions set forth in the Confession to Judgment to which this Statement is attached and know the contents thereof to be true and correct.

3.    Without any reservation, and after consulting with an independent attorney of my choice, I hereby confess judgment (both personally and on behalf of GIRARDI & KEESE, A CALIFORNIA GENERAL PARTNERSHIP) in favor of Plaintiff CALIFORNIA ATTORNEY LENDING II LLC in the principal sum of $ 7,184,642.72 plus interest as set forth in paragraph 3 of the Recitals and legal expenses incurred by CAL subsequent to November 8, 2019 (plus advances received by G&K subsequent to November 11, 2019 and less payments made pursuant to the terms of the Confession to Judgment above) and also judgment against Defendants G&K and GIRARDI for possession of the Collateral.

4.    This confession of judgment is for a debt justly due from GIRARDI & KEESE, A CALIFORNIA GENERAL PARTNERSHIP, as guaranteed by me, to CAL. The debt arises from the facts set forth in the Recitals above.

I DECLARE UNDER PENALTY OF PERJURY, UNDER THE LAWS OF THE STATE OF CALIFORNIA, THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this _12_ day of November, 2019 at Los Angeles, California.

THOMAS V. GIRARDI, Declarant

14

---

**EXHIBIT "3"**

# EXHIBIT 3

# EXHIBIT 3



## GIRARDI | KEESE
### LAWYERS

Via E-Mail: JDinardo@counselfinancial.com

October 25, 2019

Joe DiNardo
Counsel Financial
6400 Main Street, Suite 120
Williamsville, NY 14221
(800) 820-4430; (716) 568-0070

*Re:*   ***Loan - PERSONAL & CONFIDENTIAL – Attorney-Client Privilege***

Dear Joe:

This will confirm that we have paid Law Finance Group the entire obligation. It maybe take a day or two for the wire transfers. I did this by putting in a large sum of my own money.

We would request from Counsel Financial that our current loan be extended. A new loan for $2.5 million be paid to compensate my personal out-of-pocket expense (in part). It is also requested that Counsel Financial pay the $4 million obligation or perhaps one-half of it, if that is agreeable, provided Counsel Financial has a first lien ahead of everyone. Maybe, it may become easier to simply borrow the $4 million and pay them off totally.

This letter also confirms that the law firm currently has more than four thousand individual cases. These cases came from more than 150 lawyers across the country.

Clearly, the largest case we have is the Porter Ranch litigation. Our law firm has approximately 8,000 individual cases and 1700 homes.

There's no question that the homes have been devalued due to the massive Porter Ranch problems, which still remain. They have still not replaced the ancient pipes that have blown up. Our experts evaluate the loss of 28%. The property damage cases alone of our clients are in the $600 million evaluation. We also have personal injury cases. Some of which are very serious.

1126 Wilshire Boulevard • Los Angeles, California • 90017-1904
Telephone: 213-977-0211 • Facsimile: 213-481-1554
www.girardikeese.com

**079**

October 25, 2019
Page 2

A very reasonable settlement would be in the $900 million area.  Trial is scheduled for June 2020.  There's no way the defendant will let the case go to trial since the punitive damages undoubted would be awarded.  This letter also confirms that I will sign the stipulation for judgment in favor of Counsel Financial.

With kind regards,

THOMAS V. GIRARDI
TVG:kc

# EXHIBIT "4"

# EXHIBIT 4

# EXHIBIT 4



GIRARDI | KEESE
LAWYERS

November 8, 2019

Mack Schultz
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-6724
(MShultz@PerkinsCoie.com)

       Re:    Legal Fees and Cost Reimbursement

Dear Mr. Schultz:

    With respect to any distribution of proceeds to Girardi | Keese, a general partnership organized under California law, with respect to any and all Lion Air Crash cases which have already been settled, we hereby direct you that such payments (the "Payments") must be paid directly to California Attorney Lending II Inc. ("CAL") in accordance with that certain Fourth Amended and Restated Promissory Note executed and delivered by Girardi | Keese in favor of CAL dated November 8, 2019, until CAL has received Payments in the total aggregate amount of $3,500,000 or CAL advises you that such payments should no longer be made directly to CAL. All payments shall be made as follows:

                  **By wire transfer to:**

                  **Bank:**                **Bank of America**
                                          767 5th Avenue, Floor 12A
                                          New York, NY 10153

                  **ABA Number:**        **026009593**

                  **Name of Account:**    **California Attorney Lending II, Inc.**
                                            6400 Main Street, Suite 120
                                          Williamsville, NY 14221

                  **Checking Account No.**    **483015795707**

    This Letter of Authorization may not be revoked without the prior written consent of CAL.

    Please direct all inquiries with respect to transfers of funds to Megan Payne, Chief Operating Officer, California Attorney Lending II Inc., 6400 Main Street, Suite 120, Williamsville, NY 14221 (716) 568-0070.

                              Sincerely yours,

                              Thomas V. Girardi

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554
WWW.GIRARDIKEESE.COM

083

Agreed to and acknowledged as of the
date first written above.

By _____
Name:   Thomas V. Girardi
Title:

# EXHIBIT "5"

# EXHIBIT 5

# EXHIBIT 5



GIRARDI | KEESE
LAWYERS

Via E-Mail: jdinardo@counselfinancial.com

July 20, 2020

Joseph DiNardo, Esq.
Counsel Financial/Plainfiff Support
Founder

Dear Joe:

The firm has never been more successful.  I am enclosing a list of our active cases (920 of them).  We also represent the disaster that occurred at Porter Ranch where we represent 8,003 clients.  Porter Ranch is a clear liability case.  A majority of our clients were forced to leave their homes, some for many months due to the toxins in the air caused by the defendants.  Settlement negotiations on this case are beginning.

Our costs for properly handling all of our cases go up every day.  When I last looked, the law firm owes me $103 million for money I put up for costs.  We have over 200 law firms across the country referring us their major cases.

It is not my policy to talk about myself, but I received a terrific award from the International Association of Top Professionals.  I am enclosing a copy of the first few pages that just came out.  There is one other thing I have to offer.  I get calls almost daily for advice as to what companies good lawyers should go to help them fund their litigation.

With kind regards,

THOMAS V. GIRARDI

Enclosures

P.S.  We will settle one of the large cases for a billion dollars.  That has already been discussed with the other side.  This is very private, however.

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554
WWW.GIRARDIKEESE.COM

087

# G | K

## *Alphabetical Case List*

### Total number of cases: 834

*Note: If a case appears on this list you know to be CLOSED or an OPEN case is omitted, please inform Luis Jimenez, ext. 510*

*Note2: If you do not find the case here, try the attached Case List Addendum for alternate spellings, etc.*

| Case Number | Case Name | Attorney |
|---|---|---|
| 2017143 | A.G., a mionr by and through her GAL., Juana Hernandez v. LAUSD | DRL/ATS |
| 29269 | Aarts, Beverly, et al. v. Riverside Cement | TVG/RWF |
| 29259 | Abadie, Carl, et al. v. Riverside Cement | TVG/RWF |
| 2013211 | ABB, Inc. Henry's Knob Site, Clover, SC | KDG |
| 2013164 | Abdulhaqq, Shakora v Urban Outfiters | AS |
| 2017213 | Abikzer v. City of Los Angeles | KDG |
| 29261 | Abril, Felia, et al. v. Riverside Cement | TVG/RWF |
| 29255 | Acana, Malia, et al. v. Riverside Cement | TVG/RWF |
| 29407 | Accutane | KDG/TVG |
| 2019068 | Aceves, Amria Elena v. Johnson & Johnson (TALC Case) | KDG/CTA |
| 29256 | Aceves, Casey, et al. v. Riverside Cement | TVG/RWF |
| 29264 | Acosta, Jesus, et al., v. Riverside Cement | TVG/RWF |
| 2012000 | Actos General File | CAT |
| 29365 | Adams v. Riverside Cement Holdings Co. | TVG/RWF |
| 2010022 | Adams, Eric v. I-Flow | JKC |
| 2015073 | Adinolfe, Joseph et al. v. United Technologies Corporation (re: Palm Beach Pollution) | TVG |
| 2017177 | Adkinsson, Lisa v. Hemenway, Brian | AS |
| 2019119 | Aeroflot Crash (May 2019) | KDG |
| 29262 | Aguayo, Janice, et al. v. Riverside Cement | TVG/RWF |
| 2018195 | Aguilera, Andrew v. Centers for Family Health | ALM |
| 29263 | Aguirre, Zeyda, et al. v. Riverside Cement | TVG/RWF |
| 2018103 | Ahmed, Waseem & Tajwar v. City of LA & Port of LA | TVG |
| 2010233 | Air India Express Air Crash aka Mangalore India Air Crash | KDG/TVG |
| 2011121 | Airblue Flight 202 (Pakistan) | KDG |
| 2018236 | Alamdari, Sara v. Calvert, Griffin | CTA |
| 2018004 | Alarcon, Guillermo v. CR Laurence Co., Inc. | KDG |
| 29272 | Alcantar, Anna G., et al. v. Riverside Cement | TVG/RWF |
| 2012210 | Alexander, Maxine v. DePuy | JGO |
| 2010280 | Allai, William v. McGaughy, Mel | AS |
| 29266 | Allshouse, James, et al. v. Riverside Cement | TVG/RWF |
| 2018224 | Altuna, Jeffrey v. Holguin, Jose | JAG/KVF |
| 29258 | Alvarez, Fernandez, et al. v. Riverside Cement | TVG/RWF |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2019136 | Alvarez, Maria v. Rady Pac Produce, Inc. | KDG |
| 2019147 | America Shengjia Inc. Bus Crash 9/29/19 | DRL |
| 2018199 | American Guard Services, Inc. adv. Kunga, Daryl | KVF/TVG |
| 29171 | Amidon, Donna v. Seroquel | TVG |
| 2018012 | Amigon, Anthony v. Honda | KDG |
| 2015109 | Amtrak Train 1888 Derailment (Piras, Giuseppe dec'd) | KDG |
| 2018028 | Anaya, Troy v. | JAG |
| 29271 | Anderson, Brittany L., et al. v. Riverside Cement | TVG/RWF |
| 2019023 | Anderson, David v. MTA | KDG |
| 2020041 | Andrews, Stephanie v. Lands' End, Inc., et al. | TVG |
| 2019098 | Andrie, Roxann v. Rogers, M.D., Tiffany | KDG |
| 2016026 | Angel, Olivia v. Pet Extreme, Inc. | AS |
| 2019082 | Anggraeni, Erizvina Marisa | DRL |
| 2015058 | Anthen Data Breach Class Action | KDG |
| 2013041 | Antonio, Virginia v. Western Merchandice | CTA/TVG |
| 2018051 | Apple, Inc. Device Performance Litigation, JPMDL 2827 | TVG/ATS |
| 2018256 | Aragon, Frank and Rivera, Katelyn v. Stout Burgers and Beer | CTA |
| 29267 | Archer, Timothy, et al. v. Riverside Cement | TVG/RWF |
| 29260 | Armstrong, Kathryn, et al. v. Riverside Cement | TVG/RWF |
| 2020035 | Asbestos - San Diego | TVG/AFG |
| 2018283 | Atkinson, Richard et al. v. Elliston, Cheryl Lynn Graham | DRL |
| 2017071 | Ausserladscheider, Anna v. Cool Sculpting | TVG |
| 27133 | Avandia | KDG |
| 2018035 | Avila, Patrcia and Thomas v. Wildfire Defendants | ALM |
| 29257 | Avila, Victor M., et al.  v. Riverside Cement | TVG/RWF |
| 2020012 | Ayon, Jose v. San Bernardino Sheriff's Department | KDG |
| 2019081 | Ayorbaba, Ningsi et al. v. Lion Air | DRL |
| 2018029 | Babij, Christopher and Jenny v. MGM Grand | JAG |
| 2016058 | Baburchak v 21ST Century Oncology | TVG/ATS |
| 29270 | Baez, Raymond, et al. v. Riverside Cement | TVG/RWF |
| 29367 | Bagwell v. Riverside Cement Holdings Co. | TVG/RWF |
| 2019129 | Bahnuik, Randall v. Kline, Kelly Brian | CTA |
| 2019108 | Baker, Mercedes v. City of L.A. | CTA |
| 2018229 | Baker, Olga and Robert v. Southern California Edison Company | DNB |
| 2020056 | Baker, Stephen B. v. GHS Interactive Security LLC, et al. | TVG/CWK |
| 2020038 | Bakhtiar, Ebby v. FCA US, LLC | KDG |
| 2018135 | Bakhtiar, Parvin v. Providence St. John's Medical Center | KDG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 29225 | Baldwin, Frank N. v. Reglan | TVG |
| 2016130 | Balurdi, Frank et al v. Muzak LLC, et al. | AS |
| 29137 | Ban, Michael A. v. Avandia | TVG |
| 2020031 | Banegas, Wilson Noel v. Homeowner | KDG |
| 2018273 | Bao, Xuezhong v. Metropolitan Transit Authority | TVG/CWK |
| 2016097 | Barajas, Magalena v. El Dorado Savings Bank | AS |
| 2017135 | Barbu, Edward v. Aguilar, Amber Nicole | JAG |
| 2013233 | Barenborg, Carson v. USC | ALM |
| 2019130 | Baroni, Michael v. Palace Entertainment | KDG |
| 2017052 | Barrios, Rafael N. v. Night Star Towing | CTA |
| 2012110 | Barron, Maria v. DePuy | SKG/JKC/CAT |
| 2017138 | Barron, Mario Esteban v. Live Nation | CTA |
| 2016030 | Barton, Jayshawn v. The Standard Hotel | TVG/RWF |
| 2020009 | Baskaran, Sunitha v. Coastal Pulmonary Association | ALM |
| 23163 | Basquez v. Shell Oil (Hobbs #2) | DRL |
| 29274 | Baylis, Hurriah et al. v. Riverside Cement | TVG/RWF |
| 2017130 | Bazrganian, Hagop et al. v. Mercedes-Benz | CTA |
| 2018104 | Beck, Melody v. 21ST Century Insurance | KVF/TVG |
| 29172 | Been, Kewonna v. Seroquel | TVG |
| 2017191 | Bell, Nicole v. Nerium International, LLC | TVG/CU |
| 2011017 | Benham, Kathlyn v. DePuy | SKG/JKC/CAT |
| 2015134 | Berkeley Balcony Case | CTA/TVG |
| 2016133 | Berrios, Oscar v. Wong, Marisa & Raymond; Uber Technologies Inc. | CTA |
| 2018270 | Berry-Mitchell, Ramona v. City/County of Los Angeles | CTA |
| 2015211 | Betance, Eric v. DFT, Inc. | AS |
| 2019173 | Beulah, Rosalyn v. San Bernardino County | KDG |
| 2017168 | Bilgin, Patricia v. City of Los Angeles | JAG |
| 2013217 | Biomet General File | DNB |
| 2016089 | Blackmon/Palma v. Kaiser | JAG/SKG |
| 2017048 | Blackmore, Heather v. Memorial Hospital of Gardena | SKG/CAT |
| 2018128 | Blalack v. Doyle, Michael | TVG |
| 2017009 | Blanco, Jonathan v. California Hospital Medical Center | CTA |
| 2018263 | Blandin, Nelson v. Specialized Bicycle Components | DRL |
| 2018203 | Bloom, Leonard v. Shell Oil Company | TVG |
| 2016177 | Blue, Rolando v. Farmers Insurance Exchange | CTA |
| 2020043 | Bob Finnerty (Theft) | TVG |
| 2018251 | Boeing Lion Air Crash - Jakarta | TVG/KDG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 29265 | Bohannon, Joshua, et al. v. Riverside Cement | TVG/RWF |
| 2010220 | Bojuk-Gellman v. DePuy | JGO |
| 2017170 | Boland, John v. Hoag Memorial Hospital | DNB |
| 2018126 | Bonas, Jodi v. Tejon Ranch Company | TVG |
| 2015112 | Bondeson, Teresa Lynn v. Depuy (Pinnacle) | DNB |
| 2018150 | Bonomi, Jianna v. Cook | CTA |
| 2017067 | Booe, Kenneth v. Douglas, Deonte; Kroger Logistics, Inc. | TVG |
| 2019142 | Borel, Lisa v. Congress Medical Associates, Inc. et al. | TVG |
| 2018179 | Boris, George M.D. adv. Hughes, Kenneth M.D. | TVG |
| 2016216 | Botanica Tres M's v. Nar Siu Chor | CTA |
| 2016085 | Bowman v. Darger, Charles, et al. | CTA |
| 2016173 | Boyd, Jarrell v. State of California Dept. of Transportation | JAG |
| 27195 | Bradbury, Teresa v. Lockheed | TVG/RWF |
| 2015123 | Bragg, Lori v. Driven Motor Sports, et al. | ALM |
| 2015011 | Bran, Destiny (a minor) by and through her mother & GAL Maria Hernandez v. Ding, Jie Ci | ALM/DRL |
| 2020044 | Branek, Alyssa v. MGM Grand | JAG |
| 29427 | Bridgeport Litigation (Seal Beach) | CTA/TVG |
| 2018208 | Briones, Kevin v. Zalava, Dora | TVG |
| 2019010 | Broecker, JoAnn v. NCAA | KDG |
| 2019084 | Brooke, Laurie v. Calvert, M.D., Jay, USC et al. | TVG |
| 2015219 | Brown, Jontyl C. v. Volkswagen Group of America, Inc; et al. (Georgia Case) | TVG/ATS |
| 2019125 | Bullock, Jerry v. Capacete, Oscar | TVG |
| 2019062 | Burke, Marisa v. Huntington Beach Police Department | TVG |
| 29268 | Butler, Bridget, et al. v. Riverside Cement | TVG/RWF |
| 28379 | Byetta | AS/TVG |
| 29401 | Caldwell, Jacari v. Riverside Cement Holdings Co. | TVG/RWF |
| 2015100 | California Rural Water Association, Hardwick, Dustin v. Crystal Geyser, Olancha Water Bottling | TVG |
| 2019055 | Callahan, James v. Chandler Signs | KDG |
| 2018167 | Callaway, Daniel v. Hughes, Dianne M. | AS |
| 2018230 | Camp Fire General File | JGO |
| 2015157 | Campas, Jesus et al. v. Exide Technologies, Inc. | TVG/RWF |
| 2019158 | Canavan, Susan Maddie v. Ventura Transit System, Inc. | AFG/TVG |
| 2019112 | Canavan, Susan v. Ventura Transit System Inc. | AFG |
| 2015213 | Cannon, Christina v. Provident Savings Bank | AS |
| 2018101 | Carag v B&N | AS |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2010227 | Carlsson, Andreas v. Dandy | TVG |
| 2013155 | Carpenter v. AMS | TVG |
| 2019006 | Carrillo, Rodolfo v. General Motors | CTA |
| 29357 | Carson, CA v. Shell | CTA |
| 2019090 | Carter, Corey v. James River Insurance Company | CTA |
| 2015057 | Carter/Brown v. Whole Foods Market | AS/LFJ |
| 29366 | Casas v. Riverside Cement Holdings Co. | TVG/RWF |
| 2018081 | Castellanos, Eddie v. ABC, Inc. | KDG |
| 2018136 | Castellon, Alicia v. Beemak Plastics, LLC | KDG |
| 2020049 | Castillo, Hector v. Santa Monica Police Activities League | JAG |
| 2018151 | Castleberry, Sherry A. v. Corgan, et al. | AS |
| 2017206 | Chadha, Jaideep v. Uber Technologies, Inc. (Data Breach Class Action) | CTA |
| 2018110 | Chambers, Gilma v. USA Holiday | DRL |
| 28387 | Chantix | TVG |
| 2019152 | Che, Hangxiao v. America Shengjia Inc. | DRL |
| 2011198 | Chesapeake Fly Ash | TVG |
| 29148 | Childs-Poor, Damon v. Seroquel | TVG |
| 2017001 | Chocek v. Harry's Café | CTA |
| 2018037 | Christensen, Kennth v. Doshi, Rahul M.D., et al. | DNB |
| 2020025 | Chung, Norbert v. Gallagher, Arthur | KDG |
| 2018219 | Cipollo, Loren v. Arkelian Enterprises, Inc. | ALM/TVG |
| 2020024 | Cisneros, Crispin v. Goodyear Tire & Rubber, Co., et al. | KDG |
| 2016008 | City of Carson/Acosta et al. v. Gibson, Dunn & Crutcher | TVG |
| 2011146 | Clark, Ethel v. I-Flow | JKC |
| 2019079 | Clark, Maria Isabel v. County of Los Angeles | JAG |
| 2018060 | Clark, Theresa v. Martinez-Estrada, Alma | JKC |
| 2018010 | Clauson, Alf v. Twentieth Century Fox Television | KDG/AFG |
| 2013148 | Clavsilla v. Ethicon | TVG |
| 29224 | Clay, Dorothy v. Reglan | TVG |
| 2019128 | Co, Joaquim Lim and Co, Virginia Lee v. Meredes | DRL |
| 2019074 | Cohen, Robert & Beltran, Ashley v. FedEx Office & Print Services, Inc. | JKC/KRAM |
| 29186 | Coleman, Jean v. Riverside Cement Co. | TVG/RWF |
| 2017200 | Colin, Margaret v. Rashkin, Dr. Alan | KSR |
| 2018261 | Commerce Casino, et al. adv. Rincon/Indian Reservation, CA, et al. | TVG |
| 2016013 | Commick, Marie v. Prometheus Real Estate Group | AS |
| 2018156 | Commonwealth of Puerto Rico v. Au Optronics et al. | JAG |
| 29169 | Compton, Susie v. Avandia | TVG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2018027 | Conner, Cindy & Witten, Lisa v. Kingsley, Amaechi Ofomata | JKC |
| 2018098 | Connor, Ashley v. Lewis, Mario & Stephanie | AS |
| 2018118 | Constantine, Raymond v. Hoyos, Luis | JGO |
| 2011120 | Conviasa Flight 2350 (Venezuela) | KDG |
| 2019121 | Corcoran, Sara v. Hughes, Dr. Kenneth | TVG/CWK |
| 2017157 | Corral Ricarte, Lorena v. Victor Valley Medical Center, et al. | JAG |
| 2015234 | Crabtree, David v. Foster Farms, et al. | CTA |
| 2020059 | Crisp, Karen v. Imperial Valley Press | JAG |
| 2019156 | Cristobal, Nery Coc v. | KDG |
| 2017154 | Cuevas, Maricela v. Equifax, Inc. (Class Action) | CTA |
| 2012211 | Curtis, Evelyn v. DePuy | JGO |
| 2018119 | Cutler, Andre v. Ralphs Grocery Co. | KDG |
| 2015210 | Cymbalta Litigation | KDG |
| 2020053 | Dairy, Nicole v. Vincent, Joshua, et al. | TVG/CWK |
| 2018057 | Davila, Evelia v. ABM Industries, Inc. | KDG |
| 2015029 | Davis, Greg v. Loandepot.com, LLC | AS |
| 2016111 | Davis, Michael v. Superior Med Surgical, Inc. | AS |
| 2019127 | Davis, Samantha, et al. v. Uber | DRL |
| 2016164 | Dawson v. HITCO Carbon Composites, Inc. et al. | AS |
| 2019009 | De La Parra, Natalia v. | DRL |
| 2019024 | Degani, Farzaneh v. Hsiao, Evangeline et al. | DRL |
| 2013150 | Dekalb v. Bard | TVG |
| 2014210 | Del Castillo, Benjamin v. CIM Group, Inc. | AS |
| 2013218 | Dempsey-Loid, Elizabeth v. DePuy/Pinnacle | DNB |
| 29397 | Depace, Aaron v. Riverside Cement Holdings, Co. | TVG/RWF |
| 2010201 | DePuy Hip Implant Cases - General File | SKG/JKC/CAT |
| 2019067 | Desilu Studios, Inc. v. CBS Studios, Inc., et al. | TVG |
| 2019155 | Desmet, Casey v. Roy, Cristian Gene | DRL |
| 2019122 | DeVeau, Jim and Lisa v Budget Rent-A-Car; Avis Rent-A-Car | TVG |
| 2019110 | Dhanidina, Sonali (a minor) v. | TVG |
| 2019042 | Diaz, Ana v. | KDG |
| 2018246 | Diercksmeier Thomas v County of Los Angeles (Sheriff's) | CTA |
| 2017021 | Difuentes, Alice v. Solberg, Brian M.D. | TVG |
| 2017102 | Dodds, Rudy v. Vipul R. Dev M.D., et al. | SKG/TVG |
| 29405 | Dodson, Charles v. Wilderness Energy and Gomier Manufacturing | DNB/TVG |
| 2019185 | Doe, Jane (Lawrence, Jan) v. Roe, Jane & John | TVG |
| 2020003 | Dorado, Soriana (Moises) v. Brown | KDG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2017019 | Dow, Kristina v. Loews Hotel-Hollywood | ALM |
| 2018015 | Dow, Lawrence v. Goldberg, Todd | AS |
| 2017018 | Duboc, Catherine, et al. v. The Irvine Company | DNB/JKC |
| 2018016 | Duncan, Miriam v. Landaverry, Mariano, et al. | AS |
| 2014076 | Duncan, Robin v. Browne & Co. | JKC |
| 2019086 | Duran, Melia (a minor) et al. v. Harder, Corie Grace, et al. | AS |
| 2018260 | Duran, Richard v. Fruiti Fresca, Inc. et al. | AS |
| 2010230 | Ecuador 737 Air Crash | KDG/TVG |
| 2017175 | Eddleman, Roy adv. Guzman, Silvino | TVG |
| 2015224 | Eddleman, Roy v. Crawford & Company | TVG |
| 2014124 | Edgar v. Boston Scientific (Texas TVM) | DNB |
| 2018155 | Edwards, Robin v. Heartland Payment System | AS |
| 2016114 | Egyptair Flight MS804 Air Crash of May 19, 2016 | KDG |
| 2018267 | Elbeih, Abdalla v. Mercury Insurance Company | CTA |
| 2015198 | Elmore, Matt v. Samsung | DRL/ATS |
| 2013149 | Elton v. AMS | TVG |
| 2015151 | Erikson, Hailee v. Silver Star Construction Engineering, Inc. | CTA |
| 2018146 | Estate of Adrian Quesada v. Sportsman Lounge & Mendoza, John | SKG |
| 2014089 | Estepp, Jodi v. State of California | JAG |
| 2015060 | Esterson, Ester v. Peddler's Fork | ALM |
| 2016108 | Estrin, Laurence H. v. Kaiser | JKC |
| 2019037 | Ethiopian Airlines Flight 302 | KDG |
| 2013114 | Exide Technologies, Inc. (Lead and Arsenic Contamination) | TVG/RWF |
| 2015163 | Fahey, Michael v. Safeway | TVG |
| 2015169 | Fahey, Michael v. UPS | TVG |
| 2019013 | Fang, Loretta, et al. v. Bernstein, Zachary, et al. | AS |
| 2019014 | Fang, Te Fang v. Pleasure Ocean Restaurant Inc., et al. | AS |
| 2018124 | Faubert v. South Bundy Townhomes LLC | CTA |
| 2019153 | Feng, Wan Yun v. America Shengjia Inc. | DRL |
| 2020011 | Fernandez, Desiree v. Charlotte L. Lipson Trust | KDG |
| 2014289 | Fernandez, Desiree v. Sasson | KDG |
| 2015216 | Fidler, Mike & Pearlman, Richard v. Volkswagen Group of America, Inc., et al. | TVG/ATS |
| 2020010 | Figueroa, Mario v. Davis, Daseian Javon; Uber, et al. | CTA |
| 2018201 | Fillett, Stephen v. Bonaventure Hotel | DRL |
| 2018164 | Fisher, Eric v. Hilton Worldwide Holdings, Inc. et al. | AFG |
| 2013033 | Flextronics International, LTD. Litigation | KDG/TVG |
| 29368 | Flores v. Riverside Cement Holdings Co. | TVG/RWF |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2019065 | Flores, Milton v. LA Dodgers | DRL |
| 2018093 | Flowers, Marlene v. Federal Express | JAG |
| 2016064 | FlyDubai Aircrash | KDG |
| 2012168 | Fracking Cases | TVG |
| 2019050 | Franks, Laura v. City of Santa Ana | JAG |
| 2018148 | Frazier Patricia v. Farmers & Merchants Bank | JAG |
| 29189 | Freeman, Patricia v. Reglan | TVG |
| 2019124 | Friedman, Cathryn v. Morley, Joanna August | JKC |
| 2016006 | FTR International v. LA Community College District | TVG |
| 2013037 | FTR International/Nizar Katbi | DRL |
| 2019033 | Fuentes-Ortega, Paola v. City of Tustin | JKC |
| 2016009 | Fulton, Christina v. Uber | TVG |
| 2018121 | Gallaway, Patrick v. BET | CTA |
| 2019169 | Garcia, Desiree v. Motor Coach Industries, Inc. | DRL |
| 2019105 | Garcia, Esteban v. Ramos, William et al. | CTA |
| 2018005 | Garcia, Gerber v. Ortiz, Jorge | KDG |
| 2019106 | Garcia, Hector v. The Roman Catholic Archdiocese of Los Angeles, et al. | DNB |
| 2014139 | Garcia, Polo v. Wal-Mart Stores, Inc. | AS |
| 2018268 | Garcia, Sandra v. Kosol, Pittaya | CTA |
| 29156 | Garcia, Terri Kay v. Seroquel | TVG |
| 2019123 | Garwood, Matthew v. Alexandra, Dr. Christopher | TVG |
| 2016005 | Gateway Science & Engineering Inc. v. LAUSD | TVG |
| 2012094 | Georges, Adrian v. Novartis Pharmaceutical | AS/TVG |
| 2019180 | Gerate, Gilberto v. Calderon | KDG |
| 2015094 | Germanwings Flight 4U-9525 | KDG |
| 2017133 | Ghafouri, Niloufar v. Daftary, Susan (Daftary Family Trust) | TVG |
| 2018276 | Ghobrial, Youssef v. Rau, M.D., Richard | KSR/SKG |
| 2017211 | Gibbons, Jane v. Sandow | TVG |
| 2011100 | Gilbert, Joel & Sue v. DLG | DNB |
| 2010043 | Gill, Jim & Jennifer v. DLG | TVG |
| 29141 | Gilmore, Brian Paul v. Seroquel | TVG |
| 2012089 | Girardi & Keese adv. Dydzak, Daniel D. | TVG/RWF |
| 2016034 | Girardi & Keese adv. Kranich, Paul | TVG/RWF |
| 2019107 | Girardi & Keese adv. Stillwell Madison LLC | TVG |
| 2016050 | Girardi & Keese et al. adv. Gruber & Gruber, et al. | TVG |
| 2012173 | Girardi & Keese, et al. adv. Britton, Angela | TVG |
| 2019012 | Girardi & Keese, et al. adv. Law Finance Group, LLC | TVG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2018202 | Girardi & Keese, Partnership aka Girardi Keese adv. L.A. Arena Funding, LLC | TVG |
| 2019164 | Girardi Keese adv. JJ Jackson Consulting, Inc. | TVG |
| 2019063 | Girardi Keese adv. KCC | TVG |
| 2020057 | Girardi, Karen v. Girardi, Tom | TVG |
| 2017117 | GK adv. Fair, Richard | TVG/RWF |
| 2020054 | Glaspie, Alyssa v. Black, David | JAG |
| 2018078 | Glassman, Andrew M.D. v. Uber | ALM/SKG |
| 2017162 | Glouner, Gary v. Facebook, Inc. | KDG |
| 2018225 | Godinez, Carlos v. Country Villa Rehabilitation Center | JAG |
| 2016207 | Goldhammer, Tina v. Los Robles Hospital | CTA |
| 2019182 | Gomez, Miguel & Ramos, Maria v. USA Holiday | DRL |
| 2014155 | Gonzalez v. City of Norwalk | TVG/ATS |
| 2019093 | Gonzalez, Edilia v. Roundup | CTA |
| 2019183 | Gonzalez, Martha Estela v. B.J.N., LLC/Neumiller | KDG |
| 2017132 | Gonzalez, Reina v. Caltrans, et al. | AS |
| 2016182 | Gordon, Marvin et al. v. Cedar-Sinai Medical Center, et al. | CU |
| 2018223 | Gordon, Sarah v. | KDG/RH |
| 2015034 | Gorski, Lisa v. Sakaguchi, Cooper Jeffrey a minor | JKC |
| 2020047 | Gourmet Wines & Spirits Wine Bar adv. Shahbaz, Egal | JAG |
| 2019007 | Graef, Shaun v. Monsanto (Roundup) | CTA |
| 2013098 | Graf, Rex (a minor) & Austin, Shannon v. | TVG |
| 2018077 | Grajeda, Clara et al. v. City of Los Angeles, et al. | TVG |
| 2012086 | Granger, Kathy v. DePuy | DNB |
| 2012166 | Granuflo Litigation | KDG |
| 29170 | Green, Martha v. Avandia | TVG |
| 2010241 | Greg Abrams Seafood, Inc. v. B.P. | TVG |
| 2018109 | Gregg, Johnathon v. Uber Technologies, Inc. | DRL/TVG |
| 2018025 | Gregorio, Alana Joy a minor, through her GAL Evan Gregorio v. Cano, Juan | CTA |
| 2020027 | Gregory, Barbara v. Dromy International | KDG |
| 2019100 | Gregory, Barbara v. Dromy International Investments Corp | KDG |
| 2018125 | Grossman, Rebecca adv. West Coast Coupon, Inc. | SKG |
| 2020063 | Guijosa, Ana v. El Super Bodega | CTA |
| 2019001 | Guo, Chunying et al. v. A&F Bus Company, et al. | DRL |
| 2020045 | Gurule, Alizica v. Antioch School District | JAG |
| 28468 | Gutierrez, Luis v. Girardi & Keese | TVG |
| 2019176 | H.X.I.A. Investments v. XY Auttun LLC | DRL |
| 2018257 | Haag, Ellen v. LA Boss Limo Service | AS |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2018264 | Hagy, Kaleb v. Lyft. Inc., et al. | CTA |
| 2015003 | Hall, Saundra v. Cushman & Wakerfield Inc., et al. | AS |
| 2018043 | Halversen, George v. ADT Security Services, et al. | SKG/TVG |
| 2020037 | Hanley, Amber v. Alexander, Scott | CTA |
| 2018062 | Hargis, Staci v. Hudson Chiropractic | KDG |
| 2020033 | Harrell, Clarence v. City of Pasadena | KDG |
| 2018183 | Harris, Samuel v. Wells Fargo | KDG |
| 2020018 | Hastings, Pat v. Kennel Club of Beverly Hills | DRL |
| 2019131 | Hatcher, Amelia v. Burnstine, M.D. | KDG |
| 29157 | Hatton, Frances v. Avandia | TVG |
| 2020020 | Hayashi, Steven v. Ziljstra et al. | AFG |
| 2019051 | Heider, Heather v. City of Santa Ana | JAG |
| 2019048 | Henry, Cynthia v. Port of Los Angeles | TVG |
| 2018265 | Herman, Gerry v. Harris, Devon et al. | CTA |
| 2020013 | Hernandez (Cabrera), Melvin v. Trash Truck | KDG |
| 2016060 | Hernandez, Ana, et al. v. Rabobank, N.A., et al. | AS |
| 2014183 | Hernandez, Arnulfo v. U.S. | TVG/NFD |
| 2020062 | Hernandez, Jose v. Steel City | CTA |
| 2020042 | Hernandez, Juan  et al. v. C.R. Laurence Co. Inc. | KDG/AFG |
| 2019070 | Hernandez, Juan Ramon Fuentes v. Puga, Manuel Dejesus | CTA |
| 2018006 | Hernandez, Juan v. Legends Burgers | KDG |
| 2019184 | Herrera, Jorge v. Pope | KDG |
| 2017040 | Herrera-Sandoval v. Pinnpack | CTA |
| 2018193 | Hester, Dwight v. CT Motorcycle Tires | JAG |
| 2015247 | Hickman Mechanical, Inc v. FTR International, Inc | TVG |
| 2019179 | Hill, Jacob v. The Canyon Lake Property Owners Association, et al. | AS |
| 2011078 | Hinkley Litigation | TVG/RWF |
| 2019101 | Hishmeh v. CSE Insurance | RWF |
| 29219 | Hoard, Shirley v. Reglan | TVG |
| 99149 | Hobbs-New Mexico Toxic (aka Acosta v. Shell; Westgate) | DRL/TVG |
| 2015212 | Hoff, Dax v. Integrated Resource Management, Inc. | CTA |
| 2016069 | Hoffman, William J. v. City National Bank, et al. | TVG/RWF |
| 2016078 | Holden, Nate v. Essex | CTA |
| 29167 | Holliday, Dawn v. Reglan | TVG |
| 2017002 | Holloway v. Marvici | CTA |
| 2017054 | Holmes, Benjamin adv. Campion, Olivia | JGO |
| 2020036 | Holmes, Robert v. | JAG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2017158 | Horn, Daneisha v. TGIF | JAG |
| 2015127 | Horton, Shane v. City of Santa Maria | TVG |
| 2015088 | Hostetler, Rebecca v. First Group America et al. | CTA |
| 27112 | Hot Fuel Litigation | TVG |
| 2013152 | Howe v. Coloplast | TVG |
| 2011191 | Hughi, Aileen v. DePuy | JGO |
| 2018172 | Humphreys, Mark v. Zelaya-Ortiz, Wilfredo | JAG |
| 2018163 | Hunter, Denise, et al. v. County of Kern, et al. | TVG/SKG |
| 2018031 | Hyatt, Dee Ann v. | JAG |
| 2017118 | Iglesias, Vilma v. Capital Guardian Trust Company | KDG |
| 2018232 | In Re Prowler | KDG/AFG |
| 2019072 | In Re: PG&E Corp. (Bankruptcy) | TVG |
| 2014175 | Incretin MDL (RE; Byetta) | AS |
| 2017164 | Insulet General File | JGO |
| 2015197 | Invokana | KDG |
| 2016197 | IREF v. Pfizer | TVG |
| 2017023 | Irvine Company Litigation | TVG |
| 2018013 | Ishkanian Thomas v. Lawner, M.D. Pablo M. | SKG/TVG |
| 29316 | It Global Media v. Frost, William | CTA |
| 2015241 | IVC Filter Litigation Cases | KDG |
| 2018266 | Jack, Rose et al. v. Gouett, Laurie et al. | CTA |
| 2017183 | Jackson, Dolores v. Harris Farms, Inc. | KSR/TVG |
| 2015035 | Jean-Francois, Adelcia, et al. v. Hanken Conon Assad & Co., Inc. | JKC |
| 2019095 | Jelks, Brittany v. LACMTA | ARS |
| 2017043 | Jerue, John v. Drummond Company (In Re: Florida Phosphate) | TVG |
| 2019149 | Jiang, Bingdong v. America Shengjia Inc. | DRL |
| 2011044 | Johnson, Sheldon et al. v. Schlumberger, Dowell | CTA |
| 2017085 | Joiner, Lee v. Mashcole Property Management, Inc. | CTA |
| 2019146 | Jones, Aaliyah v. Barstow Unified School District | CTA |
| 2012212 | Jones, Robert v. DePuy | JGO |
| 2018144 | Jordahl, Maranda (a minor) v. Simi Valley Unified School District | TVG |
| 2016165 | Jordan, Ursula v. Disneyland | CTA |
| 2018153 | Jordan-Benel, Douglas v. Universal City Studios, LLC et al. | TVG |
| 2018188 | Juarez v. Angel Stadium | CTA |
| 2018108 | Juarez, Andrea v. USC | DRL |
| 2019052 | Kaplan, Alan v. Peets Coffee & Tea, Inc. | JAG |
| 2017217 | Katsenis, Kristiana v. Nasch Properties, LLC | AS |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2016218 | Keizer, Jan E. v. Taye, Getachew T. | TVG/KSR |
| 2017128 | Kemper, Albert v. J.P. Morgan Chase | JKC/CWK |
| 2018063 | Kennedy, Irelyn (a minor) v. Jo-Ann Stores, LLC | KVF/JAG |
| 2019154 | Kennedy, Nancy Becker v. | TVG |
| 2011130 | Kennison, Claudia v. DePuy | JGO |
| 2018281 | Khazaie, Behrooz v. Corazza, James S., et al. | DRL |
| 2017205 | Khouzam, Mtanous v. VTS Tractor Service and Valley Bobcat | CTA |
| 2015005 | Kielman, Bjorn & Susan v. Estevez, Enrique Espinoza; Golden Step Contractor | JKC |
| 2016001 | Kim, Daniel et al. v. National Park Service | AS |
| 2017153 | Kim, Kyeong Wook v. Gallegos, Juan Antonio | CTA |
| 2013039 | Kingsbury, Mark v. DePuy | JGO |
| 2011147 | Kivett, Gary v. I-Flow | JKC |
| 2015244 | Kogalymavia (Metrojet) Flight 9268 Air Crash of October 31, 2015 | KDG |
| 2019080 | Komar, Epi Samsul v. Lion Air | DRL |
| 2019041 | Koshofer, Warren v. City of LA | AS |
| 2019053 | Koutris, Anthony v. City of Los Angeles | JAG |
| 2017166 | Kovacs, William & April v. Orange County Pathology Medical Group, Inc. | DNB/CU |
| 2017017 | Kramer, Arlene v. Lonstein, Sharon | CTA |
| 2019020 | Krauss, Jason v. City of Rohnert Park | JAG |
| 2019083 | Kropp, Stephanie Rachel v. United Airlines | TVG/AFG |
| 2015249 | La Fuente, Elizabeth v. Cott Beverages, Inc. | AS |
| 2011015 | Lafond, Denise v. DePuy | JGO |
| 2018206 | Lainez, Henry v. USA Holiday | DRL |
| 2014050 | LAM Flight TM-470 Air Crash in Namibia | KDG |
| 2015194 | Landingham, Justin, minor, GAL Chad Landingham | JAG |
| 2013174 | Landingham, Richard v. DePuy | JKC |
| 2013160 | Lange v. Mentor Worldwide | TVG |
| 2017212 | Lara Vanessa Daniel, a minor throught GAL, Erica Chaides v. John's Incredible Pizza Co., INC. | CTA |
| 2015207 | Lara, Alberto v. Sonoco Products Company | AS |
| 2017034 | Larios, Jessie, et al. v. Kroger, et al. | CTA |
| 2014169 | Lawrence, Lilly v. Hart, Watter & Carter | ALM |
| 2020034 | Lawrence, Tiffany v. Zhang, Zequn, et al. | TVG/BYF |
| 2018142 | Lawson, Kalethia v. California Bank & Trust | AS |
| 2018262 | Layton, Thomas v. Uber, Inc. | CTA |
| 2019085 | Lestari, Puji v. Lion Air | DRL |
| 28465 | Levaquin | JGO |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2011162 | Levi, Simon v. | TVG |
| 2019015 | Li, Aiju v. Los Angeles County Metropolitan Transportation Authority | AS |
| 2019166 | Li, Hanxi (a minor) v. Sniff, Dustin Steven ; Christian High School | TVG |
| 2010041 | Li, Lu v. Toyota Motor North America Inc. | KDG/TVG |
| 2018204 | Licea, Luis v. Facebook, Inc. | KDG |
| 2019140 | Lien, Yung-Yu v. Irwin, Jonathan | CTA |
| 2019137 | Linehan, Maureen v. Uber Technologies, et al. | TVG |
| 2014081 | Lipitor General File | JGO |
| 2019099 | Lista, Larry v. Monsanto/Bayer | KDG |
| 2019094 | Liyanah v. Lion Air | DRL |
| 2017121 | Lizaola, Rogelio v. Pacific West Trucking | CTA |
| 2015180 | Lizardi, Michael v. Jensen, Jeffrey | TVG |
| 2019091 | Lockhart v. Columbia Sportswear | AS |
| 2012214 | Logan, Theresa v. DePuy | SKG/JKC |
| 2016203 | Lombardo v. | KDG/TVG |
| 29220 | Long, Dianne P. v. Reglan | TVG |
| 2018200 | Lopez (Ramos), Jorge v. USA Holiday | DRL |
| 2019021 | Lopez, Adi Ake, et al. v. County of LA/City of LA | AS |
| 2016014 | Lopez, Joe v. Licht | KDG |
| 2018214 | Lopez, Lizet v. Foster Poultry Farms | CTA |
| 2016145 | Lorenz, Joaquin v. Plastipak Packaging, Inc. | AS |
| 2011200 | Los Angeles Dodgers Bankruptcy | CTA/TVG |
| 2019168 | Love, Cristina N. v. McInerney, Robert et al. | AS |
| 2016150 | Loveless, Bryan v Liberstein, Darryl | CTA |
| 2013029 | Lujan, Priscilla v. Allied | JKC |
| 2018105 | Lujan, Victor v. Baxalta US, Inc. | KDG |
| 2017005 | Lunberg, James v. RM Parks Inc. | CTA |
| 2014094 | Lu's Dumplings, et al v. City of Monterey Park, et al | CTA/TVG |
| 2018269 | Lynks, Uriah (a minor) by his guardian, Shaffon Souder Lynks v. NV Real Properties, LLC et al. | CTA |
| 2018252 | MacKenzie-Schmidt, Dorothy v. NCAA | KDG/AFG |
| 2016056 | Madero, Elosia v. Guy, John, et al. | CTA |
| 2017215 | Madole, Robert v. SCG | TVG |
| 2018064 | Magrath, Tina v. Medtronic Mini Med | AS |
| 2018168 | Major, Martha v. City of Anaheim | SKG/TVG |
| 2019135 | Maloney, Harper v. CHAMPS (Charter High School of Arts Association) | KVF |
| 2017020 | Manning, Timothy v. Klein, Robert; Kemper Specialty | TVG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2013144 | Marentes, Rene v. Key Energy Services CA, Inc. | AS |
| 2018250 | Marquez, Jose Jesus (Silva Marquez) v. E.M..E., Inc. | KDG |
| 2016118 | Marquez, Santos Eufemia Alegria v. Genie A Terex Brand | AS |
| 2018087 | Marroquin, Iris v. Spears Manufacturing Co. | KDG |
| 2018065 | Martella, Edward v. Depuy-Pinnacle | DNB |
| 2017103 | Martella, Timothy v. | DNB/CU |
| 2016161 | Martinez v Brinks | CTA |
| 2016051 | Martinez, Arturo et al. v. Quikrete Cali LLC, et al. | AS |
| 2018210 | Martinez, Lucia v. USA Holiday | DRL |
| 2018173 | Martinez, Sophia v. Los Alamitos Unified School District, et al. | TVG |
| 2019172 | Martinsek, Zack v. Dave, Inc. | JAG |
| 2013157 | Mauck v. Boston Scientific | TVG |
| 2017060 | Maurer, Mary v, Griffith Park, et al. | AS |
| 2011211 | Maxwell, Vernon, et al.  v. NFL | TVG/CTA |
| 2019039 | McCarthy, Marlene v. TJX, Inc., et al. | CTA |
| 2018117 | McDaniels, James v. Ford Motor Company | TVG |
| 2020048 | McDonald, Thomas J. v. City of West Sacramento | JAG |
| 2018194 | McElyea, John v. Daneshvar, Alireza | TVG |
| 2018235 | McElyea, Rosemarie v. Merck Pharmaceuticals | KDG |
| 2017010 | McLean, Scott v. City of Los Angeles, et al. | AS |
| 2019078 | Meena, Mike & Meena, Don v. The Mattress Firm | JAG |
| 2019031 | Mehrdad, Safahi v. Southern California Edison | DRL |
| 2015014 | Melrose, Rita v. Sovereign Lending Group Inc. | AS/LFJ |
| 2019058 | Mendoza, Romey v. 24 Hour Fitness | KSR |
| 2017095 | Menzies, Kathy v. State of CA, et al. | JAG |
| 2018211 | Merino, Maria v. USA Holiday | DRL |
| 2017007 | Merrick, Beth v. Mercury Insurance Company | TVG |
| 2018184 | Mestas Carlos Lopez v. Wells Fargo | CTA |
| 2010231 | Mexico - Veracruz Air Crash | KDG/TVG |
| 2014108 | Meyer, Carol A. v. Biomet Hip Implant | DNB |
| 2013046 | Meyers, Jerry & Lillian v. DePuy | JGO |
| 2020008 | Mezheritsky, Anna v. Klein, Dorothy Kovich | TVG/CWK |
| 2012004 | Micek, Matthew v. DePuy | JGO |
| 2012215 | Michaels, Jason v. DePuy | JGO |
| 2018139 | Michelson, Lillian v. CVS | KDG |
| 2020051 | Milanesi, Gena v. | JAG |
| 2017119 | Millan, Ramon A. v. Southern California Edison Co. | KDG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2013147 | Miller v. Ethicon | TVG |
| 2019045 | Mills, Johnny v. Anheuser-Busch | KDG |
| 2012229 | Mirena - Pharmaceutical Mass Tort | KDG |
| 10220 | Miscellaneous Case Cost for 2020 | |
| 2011021 | Mohr, Dylan v. DePuy | JGO |
| 2017151 | Molla, Jacob, et al. v. Canyon lake, et al. | AS |
| 2018002 | Montoya, Miguel v. Ameron International Corp. | AS |
| 2020017 | Monzon, Wilzon, a minor, GAL Jacquelyn v. LAUSD | KVF |
| 2016104 | Moore, Deborah v. Wisnieski M&J Family Trust | ALM/TVG |
| 2015248 | Mora, Josefa v. WET Enterprises, Inc. | TVG |
| 2014223 | Morales, Carlos v. First Republic Bank | AS |
| 2017147 | Moscatel, Harry, et al. v. Best Buy, et al. | KSR |
| 2013159 | Moses v. Ethicon | TVG |
| 2013156 | Muller v. Boston Scientific | TVG |
| 2017187 | Munoz, Monica Vanessa v. Bright Futures Academy, LLC, et al. | DRL |
| 2019002 | Munoz, Sergio v. Sandoval, Leonardo Quezada | DRL |
| 2020060 | Murillo, Julie v. Kaiser | TVG |
| 2018073 | Murray, Rebecca Elizabeth v. Under Armour, Inc. | KDG |
| 2018254 | Napolitano, John v. LA County Trans Authority, et al. | AS |
| 2018207 | Navaho Tour, Inc et al. v. Temsa North America, Inc. | TVG |
| 2020052 | Neufeld, Susanne v. Alanous | DRL |
| 2016129 | Newman, Gerald v. Liquid Genomics, et al. | TVG |
| 2012087 | Nexium General File | KDG/TVG |
| 2015031 | NHL Concussion Cases | CTA/RWF/TVG |
| 2019141 | Nicolas, Margarita Anne v. Alki David | KDG |
| 2015159 | Norooz, Al v. Medtronic | KDG |
| 2019171 | Novikov, Alexie v. Cerda, Rafael Molina | CTA |
| 2012230 | Nuvaring - Pharmaceutical Mass Tort | KDG |
| 2010012 | Ocella | CU |
| 2016024 | Oehler, Sonja v. The State Bar of California | ALM |
| 2020004 | Olander, Scott et al. v. Toyota of Huntington Beach | JAG |
| 2018112 | Olmos, Danny A. v. Rapp, Kenneth W. | KVF |
| 2018066 | Opioid General File | JGO |
| 2010023 | Optical Disc Drive | TVG/RWF |
| 2019029 | Ornelas, Carol v. Southern California Edison | DRL |
| 2012039 | O'Rourke, Thomas & Diane v. DePuy | JGO |
| 2018021 | Orwasher, Phyllis v. Pelot, M.D. Michele, et al. | SKG/TVG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2019144 | Ott, Andrew v. James River Insurance (Arbitration) | CTA |
| 2018088 | Owens, Amber v. Savings Bank of Mendocino County | AS |
| 2019117 | Pacheco, Bryan Estrela v. O Entertainment of California | CTA |
| 29194 | Pacheco, Victor v. Avandia | TVG |
| 2018222 | Padilla, Vanessa v. Macedo, Rachelle Briseno | KDG |
| 2019174 | Palacios v. Juul Labs, Inc. | CTA |
| 2012182 | Panteleone, Louis et al v. EEC | TVG |
| 2018058 | Pantoja, Sergio v. Onni Contracting (California), Inc. | CTA |
| 2019044 | Paquette, Shane v. Edison | TVG |
| 2017029 | Paramount Class Action (Minors involved) | TVG/RWF |
| 2018001 | Paredes, Carmen v. Garfias-Mendoza | DRL |
| 2019160 | Paschall, Jerry Allen v. METRO | DRL |
| 2013151 | Pate v. Boston Scientific | TVG |
| 2017203 | PBMS Inc. v. Patriot Insurance Inc., et al. | CTA |
| 2017178 | Peck, Garnett Emer v. Noebel Enterprises, LLC, et al. | AS |
| 2017053 | Pederssen, Daniel v. VA Greater L.A. | JAG |
| 2018175 | Penny, Gerald v. Chiau Chi Kung | JAG |
| 91142 | People v. Lockheed | TVG |
| 2013153 | Peregrin v. Caldera | TVG |
| 29222 | Perez, Cynthia v. Reglan | TVG |
| 2016181 | Perez, et al. v. City of Long Beach | CTA |
| 2014122 | Perez, Nick v. Saks & Company | AS |
| 29193 | Perrone, Anthony v. Avandia | TVG |
| 2015077 | Perry, Jessica v. Metrolink | DRL |
| 2015217 | Peterson, Michael J. v. Volkswagen Group of America, Inc; et al. (Florida Case) | TVG/ATS |
| 2019018 | Phelps v. Madden, Steve | AS |
| 2017093 | Phillips, Kenneth M., et al, v. Josephson, M.D. David, et al. | SKG/TVG |
| 2018127 | Phillips, Rickey v. American Achievement Corporation | TVG |
| 2016214 | Physiomesh | JGO |
| 2012159 | Pinnacle Hip Cases - General File | DNB |
| 2018041 | Pisano, Frank v. Webco Aircraft | KDG |
| 2017112 | Pitts, Perrie v. Custom Hotel, et al. | JAG |
| 2017099 | Pointer, Steven and Christine v. 311 S. Sunrise Apartments | CTA |
| 2014188 | Polk, Laurie v. Community Housing Partnership | AS |
| 2012216 | Pope, Maya v. DePuy | JGO |
| 2020005 | Porras, Roberto: Alex v. Archdiocese of Los Angeles | JAG |
| 2015242 | Porter Ranch Gas Leak (General) | JKC |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2018009 | Porter, Laurel v. Cal State University Fullerton | CTA |
| 2012245 | Powell, Anthony v. Fairfield Residential Company, LLC | AS |
| 2016018 | Powers Grossman, Polly & Grossman, Howard v. Rogers, M.D., Leif, Leif L. Rogers, M.D. Professional Corp., Allergan Inc. | TVG |
| 2020039 | Powers, Michael v. | CTA |
| 2012228 | Pradaxa - Pharmaceutical Mass Tort | KDG |
| 2019088 | Pramidita, Neeza Auli v. Lion Air | DRL |
| 2019071 | Preston, Alton Jr. v. Hide-A-While Lounge | DRL |
| 2019134 | Prinz McMillan, Sheryll v. Christian Counseling Service | JAG |
| 2017140 | Puente, Kimberly et al. v. Golshirazian, Youseph | AS |
| 2019148 | Qi, Chenduo v. America Shengjia Inc. | DRL |
| 2017076 | Quemada, John v. Cordoba Corporation | KDG |
| 2018169 | Quintana, Pierre v. Hayward, Ivan M.D., Barrett, Steven M.D. | SKG/TVG |
| 2018053 | Rabrenovich, George v. State of California | AR |
| 2019046 | Ramirez Blanca v. Jack-In-The-Box | KDG |
| 2018197 | Ramirez, et al. v. Rio Hondo Subacute and Nurcing Center | JAG |
| 2017056 | Ramirez, Israel v. Propulsion Control Engineering, et al. | AS |
| 2018106 | Rao, Tara v. Bashen, Drew Alec | AS |
| 2018141 | Rapoport, Frederick v. SCE; Emil Lim Co. | BYF |
| 2019003 | Rasnick, Rick v. NCAA | KDG |
| 2019027 | Redclay, Jeremiah v. Southern California Edison | DRL |
| 2019087 | Reddish, et al. v. Westamerica Bank | AS |
| 2012121 | Redondo Beach Edison Substation Cases | JAG |
| 2019162 | Reese, Lani v. Princess Cruise Lines LTD | CTA |
| 2010253 | Reeve, Jerry v. Valerio, Niccolo | TVG |
| 2017108 | Regan, John (a minor) v. Nutribullet, LLC | JAG |
| 2010238 | Regional Materials Recovery, Inc. v. Pacific Clay Products, Inc. | TVG |
| 2016025 | Reid, Josephine v. Vista Grande Resorts, Inc. et al. | TVG |
| 2014197 | REV 973, LLC v. Mouren-Laurens, John, et al (our client Terrence Sato dba Terry's Service) | JKC |
| 2013163 | Reyes, Marcos v. Halliburton Energy Services, Inc. | AS |
| 2019057 | Reyna, Rafael et al. v. LA Dodgers, et al. | DRL |
| 2018123 | Reynolds, Michael v. | CTA |
| 2018083 | Richan Emily v. Family Dog and Puppy Resue Inc. | AS |
| 2012067 | Richmond, Doris v. SCE | JAG |
| 2014019 | Risperdal | AS |
| 2018154 | Ritenour, Candice v. Carringtone Mortgage | AS |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2018100 | Rivera, Lydia v PCH Beach Resort, LLC | AS |
| 2012219 | Rivera, Melzabet v. DePuy | JGO |
| 2015066 | Rivera, Renee v. Farmers and Merchants Bank of Long Beach | AS |
| 2019011 | Roach, Tamara v. Hunter, David Martin | DRL |
| 29218 | Roberts, Mary v. Reglan | TVG |
| 2014125 | Robinson v. Johnson & Johnson (Texas TVM) | DNB |
| 2014294 | Robinson v. Live Nation, et al. | CTA |
| 2020046 | Robinson, Emily v. Presto, Jonathan | JAG |
| 2016032 | Robles, Anthony v. JIB Holdings, LLC | AS |
| 2010079 | Roche, et al. v. Philip Morris USA, Inc. | JKC |
| 2011020 | Rocklin, Michele v. DePuy | JGO |
| 2014035 | Rockwell Industries | TVG |
| 2018076 | Rodriguez, Francisco v. Los Angeles Dodgers | CTA |
| 2019138 | Rodriguez, Matthew Gilbert v. Lee, John | DRL |
| 2018089 | Rodriguez-Baron, Edgar v. Newline Electric | JAG/KVF |
| 2020061 | Rohrbach, Takierma v. LA County Sheriff | CTA |
| 2015102 | Rosker, Kimberly v. Leidos, Inc. | AS |
| 2015185 | Ross, Patricia v. Russell, David; Twentieth Century Fox Corp., et al. | TVG |
| 2014284 | Rossell, Kimberly v. Western Federal Credit Union | AS |
| 2019104 | Rothberg, Gerald v. Country Villa Convalescent Hospital | JAG |
| 2018048 | Route 91 Las Vegas Shooting | JAG |
| 2010225 | Ruigomez, James & Kathleen v. PG&E (San Bruno, CA) | TVG/RWF |
| 2020040 | Ruigomez, Joseph v. Girardi, Thomas | TVG/Baker |
| 2013158 | Ruiz v. Ethicon | TVG |
| 2013145 | Runflat | AS |
| 2019075 | Rush, Herman v. Southern California Edison | JAG |
| 2018178 | Russo, Ambrogio and Michelle v. Mandalay Bay, LLC | JKC |
| 2014283 | S.C., a minor v. Ontario Police Department | ALM/TVG |
| 2018107 | Sabourin, Isabelle v. Chodos, Adam | CTA |
| 2017114 | Sada, Cynthia v. Gloria's Flower Shop | CTA |
| 2018099 | Saeteurn, Stephanie v. Bay Area Community Resources | AS |
| 2012233 | Saipan Air Crash Case | KDG |
| 2015243 | Saldana, Erika (GAL for Alberto Martinez, a minor) v. Garcia, Ralph R. | CTA |
| 2019132 | Saldivar, Veronica v. NCAA | KDG |
| 29185 | Samaniego, Jaime v. TXI Riverside, Inc. | TVG/RWF |
| 2010240 | San Bruno Gas Pipeline Explosion (General) | TVG/RWF |
| 2018042 | San Juan, Kevin v. Coyle M.D., Denise. Et al. | CU |

| Case Number | Case Name | Attorney |
|---|---|---|
| 99322 | San Pedro Litigation | TVG |
| 2018131 | Sanchez, Feliciom v. | KDG |
| 2018171 | Sandoval, Annette v. Norm Reeves, Inc. | AFG |
| 2019145 | Santa Barbara Boat Dive Boat Fire | CTA |
| 2018032 | Sarmiento, Delia v. City of Los Angeles | JAG |
| 2019092 | Saroinsong, Johan Harry v. Lion Air | DRL |
| 2018279 | Saspe Daniela v. Chuc, Kathy | DRL |
| 2019143 | Saspe, Daniela v Gutierrez, Kathy | DRL |
| 2015218 | Saturn Southwest Florida, LLC v. Volkswagen Group of America, Inc; et al. (Florida Case) | TVG/ATS |
| 2018132 | Schilling, Anna v. Samsung | TVG |
| 2018067 | Schneyder, Steven v. Stryker LFIT V40 | DNB |
| 2020065 | Schwartz, Karen v. Poblete, Tess, et al. | JAG |
| 2020065 | Schwartz, Karen v. Poblete, Tess, et al. | JAG |
| 2015215 | Scoggins, Amy Campion v. Volkswagen Group of America, Inc., et al. | TVG/ATS |
| 2016166 | Scott v. Airport Management Services, et al. | AS |
| 2018255 | Sedano, Elias v. Mitchell Rubber Products LLC | KDG |
| 2012220 | Seguin, Mariano v. DePuy | DNB |
| 2019181 | Segura, Lizbeth v. First Student, Inc. | CTA |
| 2019167 | Sekine, Remi v. Memorial Care Orange Coast, et al. | TVG/ARS |
| 2018095 | Selberg, Judy v. O'Donoghue | AFG/TVG |
| 2018234 | Serna v. Mitchell International | AS/LFJ |
| 29110 | Seroquel Litigation (AstraZaneca) | JGO |
| 2019163 | Sertic, Eric v. | CTA |
| 2020028 | Seven, Chuck v. Chen MD, Mark et al. | DNB |
| 2020030 | Sharpnack, Robert v. City of Costa Mesa | JAG |
| 2018130 | Shaw, James v. Loma Linda University Medical Center | AS |
| 2017171 | Shelton, Dave v. | JGO |
| 2018198 | Sherwood, Letitia Howard v. Lutsuk, M.D. | JAG |
| 2019115 | Shilling, David v. Simranpreet Singh Sidhu; S&S Express LLC | CTA |
| 2017055 | Shird, Jessica v. Valero, Jess Trejo | CTA |
| 29142 | Shirley, Michael v. Seroquel | TVG |
| 2011293 | Shore, Irwin v. DePuy | JGO |
| 2019032 | Shores, Rebecca et al. adv. Delaporte, Triina | TVG |
| 2020050 | Sierra-Ortega, Angel Jesus v. Academic Avance Charter | JAG |
| 2019126 | Silva, Sonia v. State of California Caltrans | JAG |
| 2018247 | Silver, Sean/Baca, Aline v. Marriott Intertional | KDG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2017113 | Silvers, Adam and Halley v. Kroeger, Susan Flynn | CTA |
| 2016106 | Sinderbrand, Richard v. Virella, Anthony M.D. | TVG |
| 2018277 | Smelser, Barbara v. Cardenas, Daniel | AFG/KDG |
| 2019025 | Smith, Ana v. Southern California Edison | DRL |
| 2016029 | Smith, Brian v. Hub Construction Specialties, Inc. | AS |
| 2019000 | Smith, Diane v. Hyatt | JAG |
| 2015016 | Smith, Jonathan v. Zelac, Daniel | TVG |
| 2012025 | Smith, Michelle & Zachary v. Pfizer | KDG |
| 2017131 | Soares, Patricia v. Western General (Bad Faith) | DRL |
| 2013219 | Solomon, Amy v. DePuy/Pinnacle | DNB |
| 2015087 | Solorzano, Paola J., et al.  v. Figueroa, George, et al. | AS |
| 2018180 | Sotelo, Albert v. | CTA |
| 2019022 | Spett, Ame L. and Spett, Lyla (a minor) v. Nonaka, Nolan T. | DRL |
| 2013016 | Spitzer, Sherry v. DePuy | JGO |
| 28004 | Sprint Fidelis/Medtronic Leads | JGO |
| 2020002 | SSL v. Shoolin | KDG |
| 2018133 | St. Louis v. Fenstad, Erik; Hertz | TVG |
| 2015093 | Stallings-Steinbrugger, Danielle v. Mountain West Financial, Inc. | AS |
| 2011317 | Stanley, Lillian v. DePuy | JGO |
| 2017185 | Stanley, Susan v. The Irvine Company, LLC | DNB/JKC |
| 2015209 | Steele, Travis v. Metrolink | CTA |
| 2018024 | Stegfried v. City of Newport Beach | AS/CU |
| 2018253 | Stensrud, Diantha v. NCAA | KDG |
| 2011262 | Stewart, Brian Kelly v. DePuy | JGO |
| 2019034 | Stiel, Laurie v. Crawford, Robert | JKC |
| 2010025 | Stilley, Larry v. DLG | TVG |
| 2014126 | Straughan v. American Medical Systems (Texas TVM) | DNB |
| 2016213 | Stryker LFIT v. 40 | DNB |
| 2017188 | Swanson, David v. Mercury Insurance | TVG |
| 2017202 | Swendsen, Tomoyoshi v. Mandalay Bay Hotel and Casino | JKC |
| 2016180 | SynCardia General File | KDG/SKG |
| 2019049 | Tabello, Daniel v. | KDG |
| 2017058 | Taite, Ashley v. De La Vega, Roberto Rivera | JKC |
| 2016035 | Talcum Litigation | KDG |
| 2020064 | Tan, Joshua v. Hydraulics International, et al. | JAG |
| 2020015 | Tang, Julie v. Arrowhead Regional Medical Center, et al. | JAG |
| 2013154 | Tanguay v. AMS | TVG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2014017 | Tararstan Flight U9363 Air Crash on November 17, 2013 | KDG |
| 2019187 | Tauber, Jacob, et al. v. Southern California Edison, et al. | JAG |
| 29223 | Taylor, Victoria v. Reglan | TVG |
| 2018181 | Tellez, Roberto v. Harvest Container Co., Inc. | AS |
| 2019004 | Terterian, Gevork v. Los Angeles Unified School District | CTA |
| 27125 | TFT- (Flat Panel) Antitrust Lit. (EMW, Inc. v. LG Phillips LCD Co.) | TVG/RWF |
| 2018011 | Thackray, Gail v. | JAG |
| 2014133 | Thomas, Adrian v. DePuy | JGO |
| 2019111 | Thomas, Carla v. Shelley's House | CTA |
| 2017152 | Thomas, Katherine Woodward v. Schwarz, Jacob Dustin, et al. | TVG |
| 2012221 | Thompson, James v. DePuy | JGO |
| 2019118 | Thompson, Patrick et al. v. | TVG |
| 2018186 | Thorburn, Charlene v. Zargarian, Srboui | AFG/TVG |
| 2018138 | Thornhill as Trustee v. City of Los Angeles | JGO |
| 2018162 | Thumbtzen, Stephanie v. Ubisoft, Inc. and Optimum Productions, et al. | TVG |
| 2019159 | Tin, Michael v. BMW | CTA |
| 2011158 | Tonawanda, NY Toxic Tort | DNB/TVG |
| 2015132 | Toral, Jonathan v. Interstate Hotels & Resorts | AS |
| 2019177 | Torres v. De La Torre | DRL |
| 2018019 | Torres, Sergio v. Sun Plastic, Inc. | KDG |
| 2010044 | Toyota General File | TVG |
| 28402 | Troll v. Potter | TVG |
| 2019089 | Turner v. Corinthian | AS |
| 2018036 | Tuttle, Derrick v. CentriPedal | CTA |
| 2013162 | TVM Class Action (Trans Vaginal Mesh) | DNB |
| 29129 | TVTS General | DNB |
| 29007 | TXI (Davenport) | TVG |
| 28127 | TXI (Riverside) Litigation- | TVG/RWF |
| 2015061 | Tylenol Litigation | KDG |
| 2019097 | U.S. Legal Support v. Korbin, Jordana | DRL |
| 2017080 | Uber Class Action | TVG/ATS |
| 2018080 | Uber ERISA | TVG/ATS |
| 2018050 | Uber Technologies, Inc. Data Security Breach Litigation, JPMDL 2826 | TVG/ATS |
| 2014187 | UUT - Yarber, Sharon v. City of Rancho Palos Verdes | TVG/ATS |
| 2014226 | UUT- Staats v. City of Palo Alto | JAG |
| 2019047 | Valdez Calderon, Juan Ramon | KDG |
| 2018238 | Van As, Cody v. Free to Be Programs | ALM/TVG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2017044 | Van Norton, Glynn et al. v. Associated Ready Mixed Concrete Inc., et al. | AS |
| 2020021 | Van Zandt, Casey v. Lyft, Inc. | DRL |
| 2020022 | Van Zandt, Casey v. The Victorian | DRL |
| 2020019 | Vanegas, Lidia Jimenez v. Carl's Jr. Restaurants, LLC, et al. | KDG |
| 2020000 | Vaneri, Alex v. Citizens Business Bank | TVG |
| 2016019 | Varga, Linda Moravec v. Wells Fargo Home Mortgage | SKG/TVG |
| 2019036 | Vargas, Celene v. Sharuk, Daniel | SKG |
| 2018082 | Vargas, Priscilla v. CDCR | DNB |
| 2019030 | Varley, Judy v. Southern California Edison | DRL |
| 2020032 | Vasquez, Laura v. Del Monte Produce Inc. | KDG |
| 2020055 | Vence, Orlando, et al. v. Greyhound Transportation Co. | JAG |
| 2019016 | Venegas, Connie v. Sanchez, Leticia et al. | AS |
| 2018215 | Venturini, Jeffrey & Karoline v. Velasquez | CTA |
| 2017149 | Vertuccio, Jon Paul v. 10831 Fruitland Venture LP | CTA |
| 2017050 | Vides, Dialessandro, a minor v. LAUSD, et al. | KSR/TVG |
| 2020029 | Volfoff, Alex, a minor v. Kiefer | JAG |
| 2018033 | Von Tillow, Mary Jo v. | JAG |
| 2017028 | Walter, Michelle v. Browning, Brian | RWF |
| 2018147 | Walton v. Marlin | TVG |
| 2019186 | Wank, Michael v. Cantors | TVG |
| 2012132 | Warrick, Deanna v. Henry Mayo Newhall Memorial Hospital | TVG |
| 2017096 | Washuta Family | SKG/TVG |
| 2010242 | Water Street Seafood, Inc. v. B.P. | TVG |
| 2017000 | Wavelength Recovery, LLC v. HealthNet, Inc, et al. | CTA |
| 2018160 | Weatherup, Roy v. Cheesecake Factory | TVG |
| 2013271 | Wedron v. | TVG |
| 2016126 | Weintraub, Lloyd & Sherry v. Porter Ranch | TVG |
| 2012104 | Weissman, Asher v. DePuy | JGO |
| 2014127 | Weist v. C.R. Bard (Texas TVM) | DNB |
| 2019165 | Werner, Ryann v. USC | DRL |
| 2017194 | White, Amanda Janaye v. Equifax, Inc. | CTA/RWF/TVG |
| 2019188 | White, Gary v. Kajima, USA | KDG |
| 29190 | White, Rachel Fawn v. Reglan | TVG |
| 2015135 | Wilkins, Joan v. Cargill, Inc. et al. | AS |
| 2018149 | Willard, Velia v. Beverly Hospital | JAG |
| 2016074 | Williams, Takeese v. The Kassity Organization | AS |
| 2020026 | Williams, Troy v. Ralphs Grocery Company | KDG |

| Case Number | Case Name | Attorney |
|---|---|---|
| 2018056 | Wilson, et al. v. Harbor Rail Services of California, Inc. | AS |
| 2010006 | Wilson, William G. v. Altschuld, Bruce | TVG |
| 2019028 | Winter, Shannon v. Southern California Edison | DRL |
| 2018157 | Wong, Ka Lee v. USC | DRL |
| 29221 | Woodard, Veda E. v. Reglan | TVG |
| 2018228 | Woolsey Fire Cases | DNB |
| 2019066 | Worker's Comp. - Death of Jim O'Callahan | DRL |
| 2014222 | Wright Hip System Cases - General File | CAT |
| 2017110 | Wu, Guangzhou (Alan) v. A&F Bus Company, Forest River | TVG |
| 2015009 | Xarelto Litigation | KDG |
| 2019073 | Yagy v. Barrows | AS |
| 2012190 | Yarbrough, Rickie v. Jenan, Pouglas | CTA |
| 29037 | Yasmin | BYF |
| 29076 | YAZ Litigation | BYF |
| 2015229 | Yazdi, Kevin v. Volkswagen Group of America, Inc., et al. | TVG/ATS |
| 2010232 | Yemenia Air Airbus aka Moroni, Comoros Air Crash | KDG/TVG |
| 2016153 | Yoshinoya America Litigation | KDG |
| 2016220 | Young, Allyson v. City of Burbank | CTA |
| 2019026 | Young, Sandra v. Southern California Edison | DRL |
| 2018177 | Yrigoyen, Robert v. Arthrex, Inc. and Glenn J. Huber, M.D. | JKC |
| 2018205 | Zarrabian, Sahand v. Tech Rabbit, LLC | KDG |
| 2017186 | Zeesman, Jacob & Johnson, Hayden (minors) v. Caltrans | CTA |
| 2018278 | Zeff, Rick v. SoCal Edison | DNB |
| 2020023 | Zeng v. Starbucks | DRL |
| 2011117 | Zimmer Cementless Nex Gen Knee | JGO |
| 2020016 | Zimmerle v. LA84 Foundation, et al. | KDG |
| 2019150 | Ziu, Jiaqi v. America Shengjia Inc. | DRL |
| 2015117 | Zofran Litigation | KDG |
| 2011217 | Zoloft Litigation (General) | KDG |
| 2017192 | Zotea, Nathan (a minor) v. Calvary Chapel High School, et al. | CTA/TVG |
| 2019151 | Zu, Qin v. America Shengjia Inc. | DRL |
| 2017179 | Zuno, et al. v. Farmer Bros. Co. | AS |

# *Caselist Addendum*

| Case Name | Attorney |
|---|---|
| Acosta v. Shell Western (see Hobbs-New Mexico Toxic, case #99149) | DRL/TVG |
| Auceluzzo, Robert v. Dirk Adams et al. (see DLG General File, case #29303) | DNB/TVG |
| Columbia - San Andres Air Crash (see Aires Airline Crash, case #2010234) | KDG/TVG |
| Comoros - Moroni Air Crash (see Yemenia Air Airbus, case #2010232) | KDG/TVG |
| Dohner-Osaki (Osaki, Alana, case #2014158) | RWF |
| Freeman, Abby v. West Valley Imaging Ctr (see Larsen v. Cotter, #2014021) | AFS |
| Grandchamps, Emilie v. Ng, Chor (see Botanica Tres M's, case #216216) | CTA |
| Hassanati, Mmadi Mlatamou (see Yemenia Air Airbus, case #2010232) | KDG/TVG |
| Herbal, Sherry v. Mentor Corp. (see TVTS General, case #29129) | AFS |
| Hickman Mechanical, Inc (see FTR International v. LA Community College | TVG |
| Hobbs II (see Basquez, case #23163) | DRL |
| Hoppe, Cathy v. American Med. Systems (see TVTS General, case #29129) | AFS |
| India - Mangalore Air Crash (see Air India Express, case #2010233) | KDG/TVG |
| Lack, Walter (ELL) adv. Prakashpalan (see GK adv. Britton 2012173) | TVG |
| Lebanon - Beirut Air Crash (see Ethiopia Airlines Crash, case #2010229) | KDG/TVG |
| Lockheed (see People v. Lockheed, case #91142) | RWF/TVG |
| Malibu Fire cases (see Woolsey Fire Cases, case #2018228 | JGO |
| NFL Concussions (see Maxwell, Vernon, case #2011211) | TVG/RWF/CTA |
| Schwarez (San Bernadino case) | AR |
| Stepanian, Anahit v. General Growth (see Glendale Galleria Forklift #201117 | RWF/TVG |
| Walker v. PG&E (see Hinkley Litigation, case #2011078) | RWF |

# T . I . P

## TOP INDUSTRY PROFESSIONALS

*Magazine*



**IAOTP**

June 2020

*International*
*Legendary Lawyer*

# THOMAS GIRARDI

## Top Legal Expert Of The Year

LAS VEGAS GALA PHOTOS

112

# GIRARDI | KEESE
### LAWYERS



# Take Action Today
# 800-401-4530

## Girardi | Keese

1126 Wilshire Boulevard
Los Angeles, CA 90017
Phone: 213-977-0211
Fax: 213-481-1554

## San Bernardino Office

155 West Hospitality Lane
Suite 260
San Bernardino, CA 92408
Phone: 909-381-1551
Fax: 909-381-2566

113

# Contents



**Cover Feature**

## THOMAS GIRARDI

pg. 52

*International Legendary Lawyer*
*Top Legal Expert of the Year*

# Contents



**24. Dr. Dennis Sivers**
*Top Physicist of the Year*
*Lifetime Achievement Award*

*28. Dr. William Lester Jr.*
*Top Chemist Educator of the Year*
*Lifetime Achievement Award*

**32. Members in Times Square**

**34. Dr. Arden Bement**
*Top Educational Director of the Year*
*Lifetime Achievement Award*

**40. Kannan Soundararajan**
*Top Director of the Year in Maritime Industry*
*Lifetime Achievement Award*

**42. Theodora Uniken Venema**
*Top Broker of the Year*
*Woman of the Year*

**46.  Dr. Daniel B. Botkin**
*Top Environmental Scientist of The Year*



**8 Dr.  Bonnie McLean**
*Top Doctor of the Year in Oriental*
*Medicine and Acupuncture*

**10. Dr. Marshall Goldsmith**
*Top Author of the Year*
*Lifetime Achievement Award*
*Business Innovator of the Year*

**14 Dr. Shahnoz Rustamova**
*Most Inspirational Member of the*
*Year*
*Top Non Profit of the Year*

**18 Dr. John Demartini**
*Top Human Behaviour Specialist of*
*the Year*

**52. Thomas Girardi**
*Top National Consumer Trial Attorney*
*of the Year/ Lawyer of the Decade/*
*Man of the Year/Citizen of the Year*
*Lifetime Achievement Award*
*Top Legal Expert of the Year*
*International Legendary Lawyer*

**60. Dr. Mark Stengler**
*Top Doctor of the Year*

**64. Lucetta Zaytoun**
*Top International Speaker of the Year*

**70. Christine Rose**
**Top Business Coach of the Year**

**74. Photos from the 2019 Annual**
**Awards Gala Bellagio Hotel Las Vegas**



**78. Michael Rikon**
*Top Attorney Of The Year*
*Lifetime Achievement Award*

**82. Bruce Nagel**
*Top Architect of the Year*

**92. Steve Mariotti**
*Top Entrepreneur of the Year*

**96. IAOTP Wine Country Weekend**

**IAOTP New Members on 86**



# EXHIBIT "6"

# EXHIBIT 6

# EXHIBIT 6



GIRARDI | KEESE
LAWYERS

Via E-Mail: jdinardo@counselfinancial.com

August 3, 2020

Joe DiNardo, Esq.
Counsel Financial/ Plaintiff Support
(716) 568-0070

*Re:*     *Case list*

Dear Joe:

I am in desperate need of funds to put together all of the data on the 8,003 clients on Porter
Ranch. All of them had to move their homes even though their homes are still infected. We
have experts going into the attics showing that the toxic materials are still present. We have
hired experts to individually calculate the financial loss to the property. Even in those cases
where the property is relatively clean, the financial effects approximately 23% dropped in value.
Further, we have experts in the field putting together a report showing massive amounts of toxic
material in the lawns and the areas surrounding the homes. It appears that the homes, even if
everything is properly cleaned, will have a 23% loss of value. We are also having 200 of our
clients get medically examined to determine if their medical claims are related. This is a $4
million cost project for us. However, the settlement conference is in December. They are very
serious about settling the matter and they know the settlement cost will be in millions of dollars.
We have 8,003 clients.

I am enclosing cases that Keith Griffin is handling. It would be wonderful to get this done.

With kind regards,

THOMAS V. GIRARDI
TVG:kc

Enclosures

| | | | |
|---|---|---|---|
| 1. | ABIKZER vs. CITY OF HERMOSA BEACH | 2017213 | BC706830 |
| 2. | ACCUTANE | 29407 | 271 |
| 3. | AEROFLOT CRASH (May 2019) | 2019119 | |
| 4. | ALARCON v. C.L. LAURENCE | 2018004 | BC679440                    (Ebby) |
| 5. | ALVAREZ  v. READY PAC PRODUCE, INC. | 2019136 | 19STCV32389            (Ebby) |
| 6. | AMIGON v. HONDA | 2018012 | 20STCV01259            (Ebby) |
| 7. | ANDERSON v. MTA | 2019023 | 19STCV26757            (Ebby) |
| 8. | ANTHEM DATA BREACH LIT. | 2015058 | |
| | 1. New v. Anthem, Inc. | | 2:15-cv-04787 |
| 9. | AVANDIA LITIGATION | 27133 | JCCP  4578 |
| 10. | AYON v. SAN BERNARDINO SHERIFF'S DEPT. | 2020012 | (Ebby) |
| 11. | BAKHTIAR v. FCA US, LLC | 2020038 | |
| 12. | BANEGAS  v. "HOMEOWNER" | 2020031 | (Ebby) |
| 13. | BOEING LION AIR CRASH – JAKARTA | 2018251 | |
| 14. | BONAS/ORTIZ v. TEJON RANCH | 2018126 | BCV-16-100294 |
| 15. | CALLAHAN v. CHANDLER SIGNS | 2019055 | 19STCV20777            (Ebby) |
| 16. | CANAVAN  v. VENTURA TRANSIT SYSTEM INC. | 2019158 | 56-2018-00520783-CU-PA-VTA |
| 17. | CASTELLON v. BEEMARK PLASTICS, LLC | 2018136 | BC708872 |
| 18. | CHUNG v. GALLAGHER | 2020025 | |
| 19. | CISNEROS v. GOODYEAR TIRE & RUBBER CO. | 2020024 | 20STCV04676            (Ebby) |
| 20. | CLAUSEN v. 20TH CENTURY FOX | 2018010 | 19STCV27373            (Ebby) |
| 21. | CRISTOBAL v. | 2019156 | (Ebby) |
| 22. | CUTLER v. RALPHS GROCERY CO. | 2018119 | 19STCV21856            (Ebby) |
| 23. | CYMBALTA LITIGATION | 2015210 | |
| 24. | DAVILA v. ABM INDUSTRIES, INC. | 2018057 | 2:18-cv-03919 USDC CA     (Ebby) BC699176 |
| 25. | DORADO v. BROWN | 2020003 | |
| 26. | ETHIOPIAN AIRLINES FLT 302 (3/10/2019) | 2019037 | |
| 27. | FERNANDEZ v. CHARLOTTE L. LIPSON TRUST | 2020011 | 19STCV39392 |
| 28. | FLYDUBAI AIR CRASH | 2016064 | |
| 29. | GARATE v. CALDERON | 2019180 | (Ebby) |
| 30. | GARCIA v. ORTIZ | 2018005 | BC702646                    (Ebby) |
| 31. | GERMANWINGS FLIGHT 4U-9525 | 2015094 | |
| 32. | GLOUNER v. FACEBOOK, INC. | 2017162 | BC677017                    (Ebby) |
| 33. | GONZALEZ v. B.J.N., LLC (NEUMILLER | 2019183 | (Ebby) |
| 34. | GRANUFLO LITIGATION | 2012166 | JCCP 4749 |
| 35. | GREGORY v. DROMY INT'L INVESTMENTS (EMLPLOY) | 2019100 | 19STCV22036            (Ebby) |
| 36. | GREGORY v. (1991 INVEST) DROMY INT'L INVESTMENTS | 2020027 | (Ebby) |
| 37. | GRUBER v. G|K | 2016050 | BC615458 |
| 38. | HARGIS v. HUDSON CHIROPRACTIC | 2018062 | 30-2018-01025866-CU-WT-CJC |
| 39. | HARRIS v. WELLS FARGO | 2018183 | Business Lit (Ranchor's dad) |
| 40. | HATCHER v. BURNSTEIN | 2019131 | |
| 41. | HERNANDEZ (CABRERA) v. "TRASH TRUCK" | | 2020013                      (Ebby) |
| 42. | HERNANDEZ v. LEGENDS BURGERS | 2017006 | |
| 43. | HERRERA v. POPE | 2019184 | (Ebby) |
| 44. | IGLESIAS v. CAPITAL GUARDIAN TRUST COMPANY | 2017118 | BC634921                    (Ebby) |
| 45. | IVC FILTER LITIGATION | 2015241 | MDL 2570 – USDC Indianapolis |
| 46. | KOGALYMAVIA (Metrojet) FLIGHT 9268 A/C OF 10/31/15 | 2015244 | |
| 47. | LAM FLIGHT TM-470 AIR CRASH IN NAMBIA | 2014050 | |
| | 1. Dos Reis v. AIR LEASE CORPORATION | | BC602516 |
| 48. | LICEA v. FACEBOOK, INC. | 2018204 | 18STCV01331            (Ebby) |
| 49. | LUJAN v. BAXALTA US, INC. | 2018105 | BC703989                    (Ebby) |
| 50. | MARROQUIN v. SPEARS MANUFACTURING | 2018087 | BC702792                    (Ebby) |
| 51. | MARQUEZ/BACA v. E.M.E., INC. | 2018250 | 18STCV00917            (Ebby) |
| 52. | McELYEA v. MERCK PHARMACEUTICALS | 2018235 | 56-2019-00525571-CU |
| 53. | MILLAN v. SOUTHERN CALIFORNIA EDISON CO. | 2017119 | BC627840                    (Ebby) |

| 54. MILLS v. ANHEUSER-BUSCH | 2019045 | 19STCV08471 (Ebby) |
|---|---|---|
| 55. MIRENA LITIGATION | 2012229 | MDL 2434 – USDC So NY |
|     1. Murphy v. Bayer Healthcare Pharmaceuticals | | CGC-13-530965 |
| 56. MURRAY v. UNDER ARMOUR, INC. | 2018073 | 2:18-cv-04032 USDC CA |
| | | BC700750 |
| 57. NEXIUM LITIGATION | 2012087 | |
| 58. NICHOLAS v. ALKI | 2019141 | (Ebby) |
| 59. PADILLA v MACEDO | 2018222 | (Ebby) |
| 60. PHILLIPS v. AMERICAN ACHIEVEMENTS CORP | 2018127 | |
| 61. PISANO v. WEBCO AIRCRAFT | 2018041 | 30-2019-01077112-CU-PO-CJC |
| 62. QUEMADA v. CORDOBA CORPORATION | 2017076 | BC621735 (Ebby) |
| 63. RAMIREZ v. JACK-IN-THE-BOX | 2019046 | BC593619 (Ebby) |
| 64. SEDANO v. MITCHELL RUBBER PRODUCTS | 2018255 | 18STCV08010 (Ebby) |
| 65. SILVER/BACA v. MARRIOTT INTERNATIONAL, INC. | 2018247 | 18STCV06982 (Ebby) |
| 66. SSL v. SHOOLIN | 2020002 | (Ebby) |
| 67. TALC LITIGATION | 2016035 | JCCP 4872 – all cases coordinated |
| 68. TATARSTAN FLIGHT U9363 AIR CRASH | 2014017 | |
| 69. VALDEZ CALDERON v. MTA | 2019047 | 19STCV31520 (Ebby) |
| 70. VANEGAS v. CARL'S JR. RESTAURANTS | 2020019 | 19STCV39287 (Ebby) |
| 71. VASQUEZ v. DEL MONTE PRODUCE, INC. | 2020032 | BC501496 (Ebby) |
| 72. WHITE v. KAJIMA, USA | 2019188 | (Ebby) |
| 73. WILLIAMS v. RALPHS GROCERY COMPANY | 2020026 | (Ebby) |
| 74. XARELTO LITIGTION | 2015009 | MDL 2592 |
| 75. YOSHINOYA LITIGATION | 2016153 | (Ebby) |
|     Ho, et al. v. Yoshinoya America, Inc. | | BC634207 |
|     Allen, et al. v. Yoshinoya America, Inc. | | BC668749 |
| 76. ZARRABIAN v. TECH RABBIT, LLC | 2018205 | 18STCV01352 (Ebby) |
| 77. ZIMMERLE v. LA84 FOUNDATION | 2020016 | (Ebby) |
| 78. ZOFRAN LIT. | 2015117 | JCCP 4905 – all cases coordinated |
| 79. ZOLOFT/PAXIL LIT. | 2011217 | JCCP 4771 – Orange Co Superior Court |

UPDATED 5/21/2020

# EXHIBIT "7"

# EXHIBIT 7

# EXHIBIT 7

**123**



GIRARDI | KEESE
LAWYERS

August 6, 2020

*Via Email:* *jdinardo@counselfinancial.com*

Joseph DiNardo, Esq.
COUNSEL FINANCIAL SERVICES
6400 Main St., Ste. 120
Williamsville, NY   14221

**Re: Porter Ranch and Abikzer**

Dear Joe:

Porter Ranch is a clear liability case. This is a very wealthy neighborhood. All of the homes are in the seven-figure area. There was a massive gas leak that covered the property with toxic chemicals for months. The gas leak went on for several months before it was finally stopped. Interestingly enough, a friend of mine from a government source showed me a request by PG&E two months before the blow up. It stated that their pipes were rotten they could explode. It would cost $9 million to replace them and they wanted an approval of a rate increase. The answer was, "this is your obligation, not the people who live there. You must cure the problem without a rate increase". They did nothing.

Five thousand people were forced to leave the area (1,760 families). They were forced to rent whatever they could find. Their children were now far away from school, etc. PG&E has privately acknowledged their liability and are anxious to get Brian Panish and me out of litigation. There's a settlement conference scheduled in December. I believe a very conservative estimate as to the settlement for our clients would be in the $900 million area. Experts have given their opinions that the individual homes have lost 23% in value. Many of the people in the area have severe breathing problems. The doctors have confirmed it is related to the toxins that were released. Lawyers for Porter Ranch have reached out and indicated that they are very anxious to put together a settlement on my cases. Judge Meisinger is the settlement judge who is one of the best. The defendants privately indicated to me that they are trying to get rid of several other lawyers who have cases before they deal with us.

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554
WWW.GIRARDIKEESE.COM

**124**

Joseph DiNardo, Esq.
August 6, 2020
Page 2


The Abikzer case is a very serious personal injury case.  This man, in his mid-forty's, had to help his wife take their young daughter to school.  She had trouble with the car and pulled over in a very small residential street.  She called her husband who came down, gave her his car and then waited for the other car.  He wanted to get his daughter's stuff out of the back so he lifted up the trunk to get her materials.  Down this little residential street came a very large truck.  A car behind the truck decided to pass the truck, pulled into the parking lane and struck our client.  He lost both of his legs.  He is in his mid-forty's.  He is the sole support of the family.  He has two children. One just dropped out of college for financial reasons.  The other side has admitted negligence and also admitted course in scope of employment of the person who caused the accident.  They have agreed to pay $90 million as soon as the courts reopen.

With kind regards,

THOMAS V. GIRARDI

TVG:sf

**125**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

GOODMAN LAW OFFICES, A PROFESSIONAL CORPORATION, 30700 RUSSELL RANCH ROAD, SUITE 250, WESTLAKE VILLAGE, CA. 91362

A true and correct copy of the foregoing document entitled (*specify*): DECLARATION OF PAUL CODY IN SUPPORT O EMERGENCY MOTION FOR APPOINTMENT OF INTERIM TRUSTEE PURSUANT TO 11 USC 303(g); MEMORANDUM OF POINTS AUTHORITIES

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) 12/24/2020     , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)    12/24/2020     , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)    12/24/2020     , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Leonard Pena (lpena@penalaw.com)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/24/2020 | Andrew Goodman | /s/ Andrew Goodman |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**2:20-bk-21020-BR - Notice will be electronically mailed to:**

Eric D Goldberg on behalf of Creditor Stillwell Madison, LLC  -
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Andrew Goodman on behalf of Petitioning Creditor Erika Saldana
agoodman@andyglaw.com

Andrew Goodman on behalf of Petitioning Creditor Jill O'Callahan
agoodman@andyglaw.com

Andrew Goodman on behalf of Petitioning Creditor John Abassian
agoodman@andyglaw.com

Andrew Goodman on behalf of Petitioning Creditor Kimberly Archie
agoodman@andyglaw.com

Andrew Goodman on behalf of Petitioning Creditor Robert M. Keese
agoodman@andyglaw.com

Andrew Goodman on behalf of Petitioning Creditor Virginia Antonio
agoodman@andyglaw.com

M. Jonathan Hayes on behalf of Interested Party Courtesy NEF
jhayes@rhmfirm.com, roksana@rhmfirm.com; matt@rhmfirm.com;
janita@rhmfirm.com; susie@rhmfirm.com; priscilla@rhmfirm.com;
pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com;
sloan@rhmfirm.com

Lewis R Landau on behalf of Interested Party Courtesy NEF
Lew@Landaunet.com

Aram Ordubegian on behalf of Interested Party Courtesy NEF
ordubegian.aram@arentfox.com

Matthew D. Resnik on behalf of Interested Party Courtesy NEF
matt@rhmfirm.com, Roksana@rhmfirm.com; janita@rhmfirm.com;
susie@rhmfirm.com;max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com;
russ@rhmfirm.com;rebeca@rhmfirm.com; david@rhmfirm.com; sloan@rhmfirm.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, morani@ronaldrichards.com, justin@ronaldrichards.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

## THE FOLLOWING PARTIES WILL BE SERVED VIA UNITED STATES MAIL

**Thomas Girardi**
**1126 Wilshire Boulevard**
**Los Angeles, CA. 90017**

**Girardi Keese**
**1126 Wilshire Boulevard**
**Los Angeles, CA. 90017**

**Leonard Pena, Esq.**
**PENA & SOMA, APC**
**402 S. Marengo Avenue, Suite B**
**Pasadena, CA. 91101**