# EXHIBIT A

CONFIDENTIAL

transmit to Secured Party in the exact form received by such Debtor (except for such assignments and endorsements as may be required by Secured Party), all cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral; and/or (iii) establish and maintain at Secured Party a "Repayment Account," which shall be under the exclusive control and subject to the sole order of Secured Party and which shall be subject to the imposition of such customary charges as are imposed by Secured Party from time to time upon such accounts, for the deposit of cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral from which Secured Party may, in its sole discretion, at any time and from time to time, withdraw all or any part. Secured Party's collection and enforcement of Collateral against Account Debtors and other persons obligated thereon shall be deemed to be commercially reasonable if Secured Party exercises due care and follows the procedures that Secured Party generally applies to the collection of obligations owed to Secured Party. All cash and non-cash proceeds of the Collateral may be applied by Secured Party upon Secured Party's actual receipt of cash proceeds against such of the Obligations, matured or unmatured, as Secured Party shall determine in its sole discretion. Secured Party may defer the application of non-cash proceeds of Collateral, including, but not limited to, non-cash proceeds collected from Account Debtors and other persons obligated on Collateral, to the Obligations until cash proceeds are actually received by Secured Party.

e.    **Care of Collateral.** Each Debtor shall have all risk of loss of the Collateral. Secured Party shall have no liability or duty, either before or after an Event of Default, to collect or enforce any of its rights against the Collateral, to collect any income accruing on the Collateral, or to preserve rights against Account Debtors or other parties with any prior interest in the Collateral. If Secured Party actually receives any notices requiring action with respect to Collateral of a Debtor in Secured Party's possession, Secured Party shall take reasonable steps to forward such notices to such Debtor. Each Debtor is responsible for responding to notices concerning the Collateral, voting the Collateral, and exercising rights and options, calls and conversions of the Collateral. Secured Party's sole responsibility is to take such action as is reasonably required by such Debtor in writing, provided, however, Secured Party is not required to take any action that, in Secured Party's sole judgment, would adversely affect the value of the Collateral as security for the Obligations. While Secured Party is not required to take certain actions, if action is needed, in Secured Party's sole discretion, to preserve and maintain the Collateral, each Debtor authorizes Secured Party to take such actions, but Secured Party is not obligated to do so.

5.    **POWER OF ATTORNEY.** Upon the occurrence or existence of any Event of Default, each Debtor irrevocably and unconditionally appoints Secured Party as the attorney-in-fact of such Debtor, with full power of substitution and revocation, to take, in the name and on behalf of such Debtor or otherwise, each action relating to any of the Collateral that such Debtor could take (subject to the limitations contained in Section 12(j) of this Agreement), provided such appointment and power does not violate any code of professional conduct and the ethical rules thereunder applicable to the legal profession. The power of attorney given pursuant to the preceding sentence is coupled with an interest in favor of Secured Party.

6.    **CERTAIN RIGHTS, REMEDIES AND DUTIES.**

a.    **Rights and Remedies Pursuant to Applicable Law.** With respect to the Collateral, Secured Party shall have each applicable right and remedy pursuant to applicable law (including, but not limited to, the Uniform Commercial Code) or this Agreement.

b.    **Additional Rights Without Event of Default.** Secured Party shall have the right to (i) file in any public office each financing statement or amendment of any financing statement relating to any of the Collateral that Secured Party desires to file (which may describe the collateral as "all assets" or "all personal property and fixtures" of a Debtor or using other supergeneric terms) and (ii) verify any of the Collateral in any manner or through any medium, whether directly with any Person (including, but not limited to, any Account Debtor) obligated with respect thereto or otherwise or in the name of any Debtor or otherwise.

Initials

CONFIDENTIAL

# GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY** ("Guaranty") from **THOMAS V. GIRARDI**, individually, with a principal address at 100 Los Altos Drive, Pasadena, CA 91105 (the "Guarantor") to **CALIFORNIA ATTORNEY LENDING II, INC.**, a New York corporation with a place of business at 6400 Main Street, Suite 120, Williamsville, NY 14221 ("Lender").

### W I T N E S S E T H:

**WHEREAS**, Girardi Keese ("Borrower") on the date hereof, has executed and delivered to Lender that certain Third Amended and Restated Revolving Promissory Note in the principal amount of $6,000,000 as the same may be amended, renewed, increased or replaced from time to time ("Note") pursuant to which Lender is extending certain credit facilities (collectively, the "Credit Facilities") to Borrower; and

**WHEREAS**, Lender is unwilling to extend the Credit Facilities to Borrower unless it receives this Guaranty; and

**WHEREAS**, each Guarantor is willing to execute and deliver this Guaranty to Lender in order to induce Lender to extend the Credit Facilities and each Guarantor has approved the form and substance of each and all of the documents relating to the Credit Facilities including the Note, the Security Agreement (as defined in the Note) and all certifications, agreements, letters and other documents executed with respect to the Credit Facilities.

**NOW, THEREFORE**, in order to induce Lender to extend the Credit Facilities to Borrower and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Guarantor agrees as follows with Lender:

## ARTICLE 1
## REPRESENTATIONS AND WARRANTIES OF GUARANTORS

Each Guarantor hereby represents and warrants to Lender (with respect to himself, herself or itself and not any other Guarantor) that:

**Section 1.1** **Capacity of Guarantors**. Such Guarantor:

(A) has the capacity to enter into this Guaranty; and

(B) has his or her principal residence or its primary office at the address set forth in the first paragraph of this Guaranty.

**Section 1.2** **No Violation of Restrictions**. Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereby nor the fulfillment of or compliance with the provisions of this Guaranty will conflict with or result in a breach of any of the terms, covenants, conditions or provisions of any agreement, judgment or order to which such Guarantor is a party or by which such Guarantor is bound, or will constitute a default under any of the foregoing, or result in the creation or imposition of any lien of any nature whatsoever.

**Section 1.3** **Compliance with Law**. Such Guarantor is not in violation of any law, ordinance, governmental rule, regulation, order or judgment to which such Guarantor may be subject which is likely to materially affect the financial condition of such Guarantor.

**Section 1.4** **Financial Statements and Other Information**. The financial statements and any other information submitted by such Guarantor to Lender fairly represent the financial condition as of the date of each statement and there has been no material adverse change in the financial condition of such Guarantor since the date of the respective

18

Initials

184

CONFIDENTIAL

c.  **Additional Rights Upon or After Event of Default.** Upon or at any time after any occurrence or existence of any Event of Default, Secured Party, for the purpose of preserving or enhancing the value of any of the Collateral or exercising any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement, shall have the right to (i) perform each obligation of any Debtor pursuant to this Agreement and (ii) revoke any prior authorization given to any Debtor to use amounts held in trust by such Debtor pursuant to the Fiduciary Obligations, require such Debtor to forthwith remit to Secured Party all such amounts and take control of all Proceeds and other proceeds thereof.

d.  **Application of Proceeds.** Secured Party shall apply all proceeds received by Secured Party from any collection, sale or other disposition of or other recovery upon or otherwise on account of any of the Collateral (including, but not limited to, as money payable pursuant to any insurance on any of the Collateral) first to liabilities, costs and expenses described in Section 7 of this Agreement and then to the remainder of the Obligations, whether due or not due, in any order determined by Secured Party.

e.  **Notice of Disposition.** Debtor agrees with Secured Party that commercial reasonableness and good faith require Secured Party to give each Debtor no more than ten days' prior written notice of the time and place of any public disposition of Collateral or of the time after which any private disposition or other intended disposition is to be made. Debtor also agrees with Secured Party that it is commercially reasonable for Secured Party to disclaim all warranties which arise with respect to the disposition of the Collateral.

7.  **EXPENSES; INDEMNIFICATION.**

a.  **Expenses.** Each Debtor shall pay to Secured Party on demand each cost and expense (including, but not limited to, if Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter incurred by Secured Party in (i) searching for, filing or recording or obtaining any information relating to any financing statement, amendment of any financing statement or other Record relating to any of the Collateral or otherwise obtaining any information relating to any Debtor or any of the Collateral or (ii) endeavoring to (A) enforce any obligation of any Debtor pursuant to this Agreement or preserve or exercise any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or (B) preserve or exercise any right or remedy relating to or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral. After such demand for the payment of any cost or expense incurred by Secured Party in performing any obligation of any Debtor pursuant to this Agreement, Debtors shall pay interest at an annual rate equal to the lesser of 24.9% or the highest rate permitted by applicable law on the portion of such cost or expense remaining unpaid.

b.  **Indemnification.** Each Debtor shall indemnify and defend Secured Party and each officer, employee, accountant, attorney, banker or lender and other agent of Secured Party on demand, without any limitation as to amount, against each liability, cost and expense (including, but not limited to, if Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter imposed on, incurred by or asserted against Secured Party or such officer, employee, accountant, attorney or other agent as a result of any claim (including, but not limited to, any claim involving any allegation of any violation of applicable law (including, but not limited to, any criminal statute)), however asserted and whether now existing or hereafter arising or accruing, arising out of any collection, sale or other disposition of any of the Collateral or any breach by any Debtor of any representation or warranty or any covenant or other agreement contained in, or any other fact or circumstance relating to, this Agreement, except to the extent any such liability, cost or expense is determined in a final, non-appealable judgment of a court of competent jurisdiction to have been caused by the gross negligence, bad faith or willful misconduct of Secured Party or such officer, employee, accountant, banker, lender, attorney or other agent.

8.  **TERMINATION.** This Agreement shall remain in full force and effect until and shall terminate only upon the final and indefeasible payment in full of the Obligations and the termination of the Loan Documents, irrespective of any interruptions in the business relationships of any Debtor with Secured Party.

32

Initials

199

CONFIDENTIAL

9. **REPRESENTATIONS, WARRANTIES AND ADDITIONAL COVENANTS.** Each Debtor represents, warrants and covenants with and to Secured Party as follows:

   a. **Authority.** The execution, delivery to Secured Party and performance of this Agreement and the grant or other creation of each Security Interest by such Debtor (i) do not and will not violate applicable law, any judgment or order of any court, agency or other governmental body by which such Debtor is bound or, if such Debtor is not an individual, any certificate or articles of incorporation or organization, by-laws, operating or partnership agreement or other charter, organizational or other governing document of such Debtor or any resolution or other action of record of any shareholders, members, partners, directors or managers of such Debtor, (ii) do not and will not violate or constitute any default under any agreement, instrument or other Record by which such Debtor is bound or to which such Debtor's property is subject, (iii) if such Debtor is not an individual, are and will be in furtherance of the purposes and within the power and authority of such Debtor and (iv) do not and will not require any authorization of, notice to or other act by or relating to any Person (including, but not limited to, any Account Debtor or, if any Debtor is not an individual, any shareholder, member, partner, director or manager of such Debtor) that has not been duly obtained, given or done and is not in full force and effect.

   b. **Enforceability.** This Agreement is enforceable in accordance with its terms against each Debtor. All of each Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, General intangibles, Instruments, Investment Property, Letter-of-Credit Rights and other liens, contracts, leases and agreements constituting the Collateral are and shall be valid, genuine and legally enforceable obligations and rights belonging to such Debtor and not subject to any claim, defense, set-off, or counterclaim of any kind.

   c. **Ownership.** Debtors are and shall remain the owners of the Collateral.

   d. **Questionnaire.** Each answer contained in any questionnaire submitted by or on behalf of any Debtor to Secured Party in connection with this Agreement (including, but not limited to, the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement) is complete and accurate.

   e. **Rights and Obligations with Respect to Collateral.** Except as heretofore disclosed by any Debtor to Secured Party in writing, there exists (i) no security interest in or other lien on any of the Collateral other than Permitted Liens, (ii) no presently effective financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than Secured Party as a secured party other than those relating solely to Permitted Liens, (iii) no contractual or other restriction on the grant or other creation of any security interest in or assignment, pledge or hypothecation of any of the Collateral, and (iv) no demand, claim, counterclaim, setoff or defense, no action or other legal proceeding, and no outstanding judgment or order of any court, agency or other governmental body, relating to any of the Collateral. Each Debtor (i) shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein; (ii) shall cooperate with Secured Party in obtaining and maintaining control with respect to all Deposit Accounts, Investment Property, Letter-of-Credit Rights and electronic chattel paper constituting the Collateral; (iii) shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissolution without Secured Party's prior written consent; (iv) shall not change its state of organization without first notifying Secured Party in writing; (v) shall immediately advise Lender in writing of any change in address of any Debtor or the Collateral; and (vi) shall provide Secured Party with possession of all Chattel Paper, Documents, Instruments and Investment Property constituting the Collateral that are embodied in a tangible document, instrument or certificate.

   f. **Actions with Respect to Collateral.** Except as heretofore disclosed by any Debtor to Secured Party in writing, no Debtor has (i) sold or otherwise disposed of any of the Collateral or any interest or right in any of the Collateral or (ii) extended, renewed, refinanced or otherwise modified or replaced, compromised, canceled, discharged, subordinated, accelerated, waived, forborne from exercising any right or remedy relating to or adversely affected any obligation of

33

Initials

200

CONFIDENTIAL

any Person (including, but not limited to, any Account Debtor) relating to any of the Collateral.

g.   **Accounts and General Intangibles.** Each Account and General Intangible included in the Collateral is or, if not now existing, will be genuine, in all respects what it purports to be and enforceable in accordance with its terms against each Person (including, but not limited to, any Account Debtor) obligated with respect thereto, subject to no demand, claim, counterclaim, setoff or defense.

h.   **Incorrect or Misleading Information.** Each Debtor has not provided to Secured Party or permitted to be provided to Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect.

i.   **Taxes.** Each Debtor has duly filed all applicable income or other tax returns and has paid all income or other taxes when due, and there are no outstanding tax liens against the assets of any Debtor.

10.  **CERTAIN CONSENTS AND WAIVERS.**

a.   **Consents.** Except to the extent expressly provided in this Agreement, this Agreement shall not be modified or terminated, no Security Interest, no obligation of any Debtor pursuant to this Agreement and no right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be impaired or otherwise adversely affected, and no such right or remedy shall be waived, by any act, omission or other thing, whether heretofore occurred or hereafter occurring. Each Debtor knowingly, voluntarily, intentionally and irrevocably consents, without any notice, to each act, omission and other thing, whether heretofore occurred or hereafter occurring, that would or might, but for such consent, modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest or any such obligation, right or remedy or operate as a waiver of any such right or remedy.

b.   **Waivers.** Each Debtor knowingly, voluntarily, intentionally and irrevocably waives, without any notice, each act and other thing upon which, but for such waiver, any Security Interest, any obligation of such Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement would or might be conditioned.

11.  **NOTICES.** Any notice required or permitted to be given hereunder must be in writing and must be delivered or transmitted to a party at the address or any fax number for such party set forth at the beginning of this Agreement or on the Signature Page to this Agreement, or to such other address or fax number as such party may designate in writing as provided herein for the purpose of receiving notices hereunder. Any such notice to a party is effective if by personal delivery, upon such delivery; if by nationally recognized overnight courier, on the next business day after delivery to such nationally recognized overnight courier; if by fax transmission, upon receipt by the sender of an electronic confirmation of a successful transmission; and otherwise upon receipt of such notice by such party. Each requirement under applicable law of reasonable notice of any event by Secured Party to any Debtor shall be deemed to have been met if a notice of such event is given by Secured Party to such Debtor at least 10 days before the date on or after which such event is to occur.

12.  **MISCELLANEOUS.**

a.   **Reliance by Other Persons.** Each Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral may accept without any question any exercise by Secured Party of any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

b.   **Limitation on Security Interest.** The payment of the Obligations shall not be secured by any Security Interest to the extent of any amount in excess of the maximum amount the payment of which can be so secured without rendering

34

_____
Initials

201

CONFIDENTIAL

such Security Interest unenforceable under applicable law as a fraudulent conveyance or transfer.

    c.    **Obligations Relating to Collateral.** The grant or other creation of any Security Interest shall not constitute an assignment by any Debtor to Secured Party of any obligation of such Debtor relating to any of the Collateral. Each Debtor shall remain obligated to perform each such obligation, and Secured Party shall not be obligated to perform any such obligation, whether or not Secured Party exercises any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement. The only obligations of Secured Party relating to the Collateral shall be, to the extent required by applicable law, to act in a commercially reasonable manner in exercising with respect to any of the Collateral any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement.

    d.    **Liability.** If more than one Person executes this Agreement, (i) each of them shall be jointly and severally liable pursuant to this Agreement, and (ii) this Agreement shall be construed, interpreted and enforced, whether in any action or other legal proceeding or otherwise, as to each of them as though each of them had executed and delivered to Secured Party a separate agreement identical to this Agreement.

    e.    **Assignment or Grant of Participation.** In conjunction with any assignment or other transfer of or grant of any participation in any of the Obligations by Secured Party, Secured Party shall have the right to assign or otherwise transfer or grant any participation in this Agreement, any Security Interest, any obligation of any Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

    f.    **Binding Effect.** This Agreement shall be binding upon each Debtor and each direct or indirect legal representative, successor and assignee of each Debtor and shall inure to the benefit of and be enforceable by Secured Party and each direct or indirect successor and assignee of Secured Party.

    g.    **Entire Agreement, Modifications and Waivers.** This Agreement contains the entire agreement between Secured Party and each Debtor with respect to the subject matter of this Agreement and supersedes each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral, written or other agreement and representation heretofore made, by or on behalf of Secured Party with respect thereto. No action heretofore or hereafter taken or not taken, no course of conduct heretofore or hereafter pursued, accepted or acquiesced in, no oral, written or other agreement or representation heretofore made, and no agreement or representation hereafter made other than in writing, by or on behalf of Secured Party shall modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest, any obligation of any Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or operate as a waiver of any such right or remedy. No modification of this Agreement or waiver of any such right or remedy shall be effective unless made in a writing duly executed by Secured Party and specifically referring to such modification or waiver.

    h.    **Rights and Remedies Cumulative.** All rights and remedies of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be cumulative, and no such right or remedy shall be exclusive of any other such right or remedy.

    i.    **Extent of Consents and Waivers.** Each consent and waiver of any Debtor contained in this Agreement shall be deemed to have been given to the extent permitted by applicable law.

    j.    **Exercise of Rights; Requests.** Except as expressly provided in this Agreement, each right and remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement may be exercised (i) at any time and from time to time, (ii) in the sole discretion of Secured Party, (iii) without any notice or demand of any kind and (iv) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed, but Secured Party shall not be obligated to exercise

35

Initials

202

CONFIDENTIAL

any such right or remedy. Each such right and remedy may be exercised only to the extent that the exercise thereof does not (i) violate applicable law or (ii) if requiring any Debtor to take any action, require any Debtor to violate any ethical or disciplinary rule, regulation or law governing non-disclosure of confidential information by an attorney or prohibiting the unauthorized practice of law. Each request by Secured Party pursuant to this Agreement may be made (i) at any time and from time to time, (ii) in the sole discretion of Secured Party and (iii) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed.

k. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

l. **Governing Law.** This Agreement shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the law of any other jurisdiction.

m. **Headings.** In this Agreement, headings of sections are for convenience of reference only and have no substantive effect.

n. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a \".pdf\" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or \".pdf\" signature page were an original thereof.

13. **CONSENTS AND WAIVERS RELATING TO LEGAL PROCEEDINGS.**

a. JURISDICTIONAL CONSENTS AND WAIVERS. EACH DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY CONSENTS AND AGREES THAT ANY ACTION OR OTHER LEGAL PROCEEDING COMMENCED BY SECURED PARTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF SUCH ACTION; PROVIDED, HOWEVER, SECURED PARTY MAY, AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN POSSESSION OR FORECLOSURE UPON ANY COLLATERAL, TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY SECURED PARTY AGAINST DEBTOR OR WITH RESPECT TO ANY COLLATERAL, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS AGREEMENT OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY SECURED PARTY. DEBTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO PERSONAL JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND DEBTOR HEREBY WAIVES ANY OBJECTIONS WHICH DEBTOR MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK COURT.

b. WAIVER OF TRIAL BY JURY. EACH DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT SUCH DEBTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR OTHER LEGAL PROCEEDING, WHETHER BASED ON ANY

_Initials_

203

CONFIDENTIAL

CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE, ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY OF THE COLLATERAL OR ANY OTHER COLLATERAL.

c.   **SERVICE OF PROCESS.** PROCESS ON DEBTORS IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT WILL BE DEEMED TO HAVE BEEN GIVEN TO A DEBTOR WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (I) PERSONALLY DELIVERED, (II) TWO (2) BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (III) FOUR (4) BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO SUCH DEBTOR AT THE APPLICABLE ADDRESS SET FORTH IN THIS AGREEMENT. Such service on any Debtor shall be deemed in every respect effective service of process upon and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon such Debtor. Nothing in this Section shall affect Secured Party's right to serve process in any other manner permitted by law. Each Debtor may add additional addresses or change the address for purposes of service of process by giving 10 days' prior written notice of such change to Secured Party.

Dated: July 11, 2017

Girardi Keese

By: _____
Thomas V. Girardi, Partner
Facsimile No.

_____
Thomas V. Girardi, individually
Facsimile No.

37

Initials

204

CONFIDENTIAL

# EXHIBIT A

## QUESTIONNAIRE

1. What is Borrower's legal name?

   Girardi Keese

2. What is Borrower's jurisdiction of organization and business structure:

   General partnership under the laws of California

3. What is Borrower's Federal Employer Identification Number or Social Security Number?

   _____

4. What is the address (including state, county and zip code) of a business office of Borrower?

   1126 Wilshire Blvd., Los Angeles, CA 90017

5. What is the address (including state, county and zip code) of each location at which any Record included in the Collateral is or will be kept other than the locations the addresses of which are indicated in the answers to question 4?

   1126 Wilshire Blvd., Los Angeles, CA 90017
   100 Los Altos Drive, Pasadena, CA 91105

6. **Deposit Accounts owned by each Debtor**

   For each deposit account of each Debtor, what is the name and address of the bank maintaining such account, what type of account is such account (include each trust account but indicate its status as a trust account) and what is the account number of each such account?

| Debtor Name | Name & Address of Depository Bank | Type of Account | Account Number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

7. **Existing Liens**

   In the case of any security interest or other lien covering any of the Collateral and existing on the date of this Agreement in favor of any Person other than Secured Party, what are the complete name and address of each such Person in whose favor such security interest or other lien exists, and what is the nature of such security interest or other lien and the debt secured thereby?

38

Initials

205

CONFIDENTIAL

| Debtor Name | Name & Address of the Secured Party holding the Permitted Lien | Description of Collateral and Debt Secured Including Principal Amount of such Debt |
|---|---|---|
| Comerica Bank | 75 East Trimble Road San Jose, CA 95131 | blanket lien, as well as various specific security interests in certain accounts, contracts and deposits |
| Key Equipment Finance Inc. | 1000 So. McCaslin Blvd. Superior, CO 80027 | specific leased equipment |
| Ikon Financial Svcs. | 1738 Bass Rd. Macon, GA 31210 | specific leased equipment |
| Comerica Bank-California | 333 W. Santa Clara St. San Jose, CA 95113 | as to Thomas V. Girardi, certain specified shares of stock in Coast Resorts, Inc. |
| Torrey Pine Bank | 9295 Farnham Street, Suite 200 San Diego, CA 92123 | Real property located at 100 Los Altos Drive, in the City of Pasadena, County of Los Angeles, State of California and all furniture, fixtures, improvements, accounts and records related thereto |

8. What is the legal name and principal residence address of each Debtor other than Borrower?

Thomas V. Girardi - 100 Los Altos Drive, Pasadena, CA 91105

9. Description of any Commercial Tort Claims owned by any Debtor

In the case of any Commercial Tort Claim existing on the date of this Agreement, which Debtor is the owner of such claim and what is the description of such claim?

| Debtor Name | Description of Commercial Tort Claim |
|---|---|
|  |  |

39

Initials

206

CONFIDENTIAL

## ACKNOWLEDGEMENT (SECURITY AGREEMENT)

STATE OF CALIFORNIA
COUNTY OF
On the _____ day of July in the year 2017 before me, the undersigned, a notary public in and for said state, personally appeared Thomas V. Girardi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Partner of Girardi Keese and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

_See attached Acknowledgement_
Notary Public

STATE OF CALIFORNIA
COUNTY OF
On the _____ day of July in the year 2017 before me, the undersigned, a notary public in and for said state, personally appeared Thomas V. Girardi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

_See attached Acknowledgement_
Notary Public

40

Initials

207

## ACKNOWLEDGEMENT BY NOTARY PUBLIC

## ACKNOWLEDGEMENT SECURITY AGREEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF LOS ANGELES          )

On <u>July 11, 2017,</u> before me <u>Shirleen H. Fujimoto,</u> Notary Public in and for said state, personally appeared <u>THOMAS V. GIRARDI,</u> who proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same, and that by his signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Notary Seal: SHIRLEEN H. FUJIMOTO, COMM. # 2107442, NOTARY PUBLIC • CALIFORNIA, LOS ANGELES COUNTY, Comm. Exp. MAY 15, 2019]

_Shirleen H. Fujimoto_
[Signature of Officer]

## ACKNOWLEDGEMENT BY NOTARY PUBLIC

## ACKNOWLEDGEMENT SECURITY AGREEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF LOS ANGELES          )

On <u>July 11, 2017</u>, before me <u>Shirleen H. Fujimoto,</u> Notary Public in and for said state, personally appeared <u>THOMAS V. GIRARDI</u>, who proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same, and that by his capacity as Partner of Girardi|Keese, and that by his signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHIRLEEN H. FUJIMOTO
COMM. # 2107442
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. MAY 15, 2019

_____
[*Signature of Officer*]

209