TIMOTHY J. YOO (State Bar No. 155531)
tjy@lnbyb.com
CARMELA T. PAGAY (State Bar No. 195603)
ctp@lnbyb.com
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Jason Rund
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>THOMAS VINCENT GIRARDI,<br><br>               Debtor. | Case No. 2:20-bk-21020-BR<br><br>Chapter 7<br><br>**MOTION TO APPROVE COMPROMISE WITH G&L AVIATION, LEE LIPSCOMB, 1122 WILSHIRE BUILDING PARTNERSHIP AND WALTER LACK; DECLARATIONS OF JASON M. RUND AND ANDREW W. ZEPEDA IN SUPPORT THEREOF**<br><br>Date:   April 27, 2021<br>Time:  10:00 a.m.<br>Place:  Courtroom 1668<br>          U.S. Bankruptcy Court<br>          255 E. Temple Street<br>          Los Angeles, California |

1

## TABLE OF CONTENTS

2
**Page**

**I.    INTRODUCTION** ...................................................................................................**1**

**II.    FACTUAL BACKGROUND** ..................................................................................**2**

    A.    Commencement of the Bankruptcy Case................................................................2

    B.    The State Court Action..........................................................................................2

        1.    The Parties .................................................................................................2

        2.    The 1122 Property .....................................................................................3

        3.    The Litigation ............................................................................................4

**III.    THE COMPROMISE SHOULD BE APPROVED** .................................................**7**

    A.    The Bankruptcy Rules Allow the Court to Approve Compromises

        of Controversies .....................................................................................................7

    B.    Case Law Supports Approval of the Agreement.....................................................7

        1.    The Probability of Success on the Claims in the State Court Action is

            Uncertain, at Best.......................................................................................8

        2.    There Are No Impediments to Collection .................................................11

        3.    The Complexity of Issues and Trial Preference Would Result in Significant

            Fees and Expense for the Estate ...............................................................12

        4.    The Agreement Benefits the Estate's Creditors .......................................12

**IV.    CONCLUSION** ...................................................................................................**14**

**DECLARATION OF JASON RUND**.....................................................................................**15**

**DECLARATION OF ANDREW W. ZEPEDA** ......................................................................**16**

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

Hendrickson v. Cal Talc Co.,
  55 Cal. App. 2d 467 (1942) .................................................................................. 10

In re A & C Properties,
  784 F.2d 1377 (9th Cir. 1986) ............................................................................ 7, 8

In re Blair,
  538 F.2d 849 (9th Cir. 1976) .................................................................................. 7

In re Carson,
  82 B.R. 847 (Bankr. S.D. Ohio 1987) .................................................................... 7

In re General Store of Beverly Hills,
  11 B.R. 539 (B.A.P. 9th Cir. 1981) ........................................................................ 7

In re Heissenger Resources, Ltd.,
  67 B.R. 378 (C.D. Ill. 1986) .............................................................................. 7, 8

In re Hydronic Enterprise, Inc.,
  58 B.R. 363 (Bankr. D.R.I. 1986) .......................................................................... 7

In re Marriage of Vomacka,
  36 Cal. 3d. 459 (1984) ........................................................................................... 9

In re Mobile Air Drilling Co., Inc.,
  53 B.R. 605 (Bankr. N.D. Ohio 1985) .................................................................... 7

In re Woodson,
  839 F.2d 610 (9th Cir. 1988) .................................................................................. 7

Knowles v. Putterbaugh (In re Hallet),
  33 B.R. 564 (Bankr. D. Me. 1983) ......................................................................... 7

Langnes v. Green,
  282 U.S. 531 (1931) ............................................................................................... 7

Lin v. Jeng,
  203 Cal. App. 4th 1008 (2012) ............................................................................. 13

Utility Audit Co., Inc. v. City of Los Angeles,
  112 Cal. App. 4th 950 (2003) ................................................................................. 9

**Statutes**

Cal. Civ. Proc. Code § 437c(n) ................................................................................... 9

Cal. Civ. Proc. Code § 872.710(b) .............................................................................. 9

Cal. Civ. Proc. Code § 874.040 ................................................................................. 13

**Rules**

Fed. R. Bankr. P. 9019(a) ............................................................................................ 7

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE**:

Jason M. Rund, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Thomas Vincent Girardi (the "Debtor"), hereby moves this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve a settlement of the state court action between Lee Lipscomb, Walter Lack, G&L Aviation and 1122 Wilshire Partnership (collectively the "1122 Wilshire Parties") and the Trustee in accordance with the *Settlement Agreement* dated April 2, 2021 (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit 1 and is incorporated herein by reference.

## I.

## INTRODUCTION

The Trustee, after numerous discussions with the 1122 Wilshire Parties, negotiated an agreement by which all of the issues and claims between the estate and the 1122 Wilshire Parties with respect to the office building located at 1122 Wilshire Boulevard, Los Angeles, California (the "1122 Property") will be resolved. In short, settlement will afford the Trustee the opportunity to: (a) obtain for the estate a guaranteed $1 million from the sale of the 1122 Wilshire Property in which the Debtor held an indirect 37.5% interest; (b) settle the claims against G&L Aviation for breach of fiduciary of duty and for attorney's fees incurred during nearly seven years of litigation wherein Lee Lipscomb, who owns 25% of the 1122 Property, sought its partition by sale and damages for breach of fiduciary duty against G&L Aviation for its obstruction of the collection of nearly a decade of rents; and (c) avoid a lengthy trial (and possible appeals) in a pending state court action.

The 1122 Property has equity, but the estate's indirect rights therein are threatened by litigation that could very well wipe out any equity for the benefit of the estate. The equitable claims in the state court action have already been through an 11-day trial, an appeal, a retrial and a declaration of mistrial with respect to the re-trial. The prior findings of the first judge on issues not affected by the appeal may well pre-determine the decision of the remaining claims to the disadvantage of the estate. The claims have been hotly contested and subject to extensive

1  and protracted litigation.  The state court action is subject to a trial preference and is presently

2  set for trial in matter of weeks (in fact, before the hearing date on this Motion).  More

3  importantly, after what will inevitably involve years of litigation and accrual of significant

4  administrative expenses, there is absolutely no guaranty that the estate will succeed.  To lose,

5  on the other hand, would be catastrophic to the estate.

6       The Agreement guaranties $1,000,000 to the estate and wipes out the 1122 Wilshire

7  Parties' claims against the estate.  Thus, the Trustee believes that the Agreement is in the best

8  interest of the estate and that it should be approved.

9  <div align="center">**II.**</div>

10  <div align="center">**FACTUAL BACKGROUND**</div>

11  **A.**    **Commencement of the Bankruptcy Case**

12       An Involuntary Petition was filed against the Debtor on December 18, 2020, by

13  petitioning creditors Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio and

14  Kimberly Archie (the "Petitioning Creditors").  Shortly thereafter, on December 24, 2020, the

15  Petitioning Creditors filed an emergency motion for appointment of an interim trustee [Doc 13],

16  which was granted by this Court on January 5, 2021 [Doc 39].  On January 6, 2021, the United

17  States Trustee appointed the Trustee, who was reappointed when the Order for Relief was

18  entered on January 13, 2021 [Doc 64].

19       Among the Debtor's assets is a 50% general partnership interest in G&L Aviation.

20  Among G&L Aviation's assets is an undivided 75% tenancy-in-common interest in the 1122

21  Property.

22  **B.**    **The State Court Action**

23       1.    The Parties

24       **Lee Lipscomb** ("Lipscomb") is a retired lawyer who had been a founding partner of

25  Engstrom, Lipscomb & Lack ("ELL") with Walter Lack ("Lack"), who remains a partner at

26  ELL.

27       **G&L Aviation** is a general partnership formed in 1994 and is comprised of two 50-50

28  general partners, the Debtor and Lack.

<div align="center">2</div>

1  **1122 Wilshire Partnership**, sometimes referred to as the 1122 Wilshire Building

2  Partnership ("1122 Wilshire Partnership") is a general partnership consisting of G&L Aviation

3  as 75% general partner and Lipscomb as 25% general partner.

4  **Girardi & Keese** ("GK") is a California general partnership comprised of

5  partners including at least the Debtor and Robert Keese.  The Petitioning Creditors also

6  filed a Chapter 7 Involuntary Petition against GK, commencing Case No. 2:20-bk-21022-BR

7  (the "Girardi Keese Case").

8  2.  The 1122 Property

9  On or about December 30, 1998, Lipscomb, the Debtor, and Lack orally agreed together

10  to purchase the 1122 Property together with an adjoining parking lot parcel on the south side of

11  the alley behind the 1122 Property.  Lipscomb agreed to contribute 25% of the purchase price

12  and acquisition costs and to hold an undivided 25% tenancy-in-common interest in fee simple

13  title to the 1122 Property.  The Debtor and Lack agreed to contribute 75% of the purchase price

14  and acquisition costs and hold an undivided 75% tenancy-in common-interest through G&L

15  Aviation, of which they were both general partners.

16  The Debtor proposed that GK would commence paying rent for the 1122 Property at

17  $10,000 per month on a triple net   basis and, therefore, also be responsible for payment of all

18  taxes, utilities, insurance and maintenance associated with the 1122 Property.  The monthly

19  rent to be paid by G&K was substantially under market.

20  Although no written lease agreement was ever executed by Lipscomb and G&L

21  Aviation (*i.e.*, the 1122 Wilshire Partnership) and GK for the lease of the 1122 Property, in or

22  about 2000, GK commenced to pay rent of $10,000 per month to the 1122 Wilshire Partnership

23  and to pay all real estate taxes, insurance, utilities and maintenance expenses.  GK continued

24  making those rental payments for more than a decade.

25  1122 Wilshire Parties assert that in or about June 2012, GK ceased paying rent for the

26  1122 Property.

27  ///

28  ///

3.      The Litigation

a.      The Pleadings

After a failed mediation, Lipscomb filed the action entitled <u>Lipscomb v. Girardi, et al.</u>, Los Angeles Superior Court Case No. BC547290 (the "State Court Action") in June 2014 seeking: (1) partition of the 1122 Property; (2) the dissolution of the 1122 Wilshire Partnership; (3) declaratory relief; and (4) damages for breach of fiduciary duty against G&L Aviation and the Debtor, its partner, for failing to collect rent from its affiliate, GK, the tenant (the "Complaint").  On July 24, 2014, Defendants (sometimes referred to as the "Girardi Parties") filed an answer to the Complaint and a Cross-Complaint against Lipscomb for: (1) breach of contract; (2) breach of fiduciary duty; (3) bad faith; (4) declaratory relief; (5) quiet title to the 1122 Property; (6) slander of title (referred to as a claim to "remove cloud"); and (7) accounting (the "Cross-Complaint").

b.      The Summary Adjudication Ruling

On December 18, 2015, the Court granted Lipscomb's Motion for Summary Adjudication.  Specifically, the Court found: "[T[he undisputed evidence reflects that Lipscomb owns a 25% tenancy in common interest in the real property located at 1122 Wilshire Blvd. … [¶] There is no disputed evidence as to Lipscomb's ownership interest." By this ruling, it was conclusively adjudicated that, among other things, Lipscomb holds a 25% undivided tenancy in common interest in the subject property located at the 1122 Property.  <u>See</u> Cal. Civ. Proc. Code § 437c(n)(1).  The court also dismissed the cross-claims for slander of title and bad faith.

The Court also granted summary adjudication in favor of Lipscomb as to the cross-claims for breach of contract, breach of fiduciary duty and accounting as to Cross-Complainants GK and the 1126 Partnership because it was undisputed that neither of those Cross-Complainants were partners in the 1122 Wilshire Partnership or parties to that partnership agreement.  Thus, following this Court's December 18, 2015 ruling on Lipscomb's motion for summary adjudication, neither GK nor the 1126 Partnership are parties to the First, Second or Seventh Causes of Action.

4

c.      The Trial of the Equitable Claims

The equitable claims were first tried before Judge Hiroshige in spring 2016.  After post-trial briefing, the court entered its Statement of Decision on September 30, 2016, a copy of which is attached as Exhibit 2.  Interlocutory Judgment was entered on January 3, 2017, a copy of which is attached as Exhibit 3.  Judge Hiroshige ordered partition of the 1122 Property by sale and awarded Lipscomb a credit in the amount of the unpaid rents and other relief from G&L Aviation's portion of the proceeds of the partition sale; ordered the dissolution of the 1122 Wilshire Partnership; and denied the remaining Cross-Complainants' accounting cross-claims with respect to the 1122 Wilshire Partnership wherein they sought to adjust the capital accounts in favor of the Debtor because of Lipscomb's alleged failure to contribute to the cost of the certain leasehold improvements to the 1122 Property undertaken by tenant GK.  Judge Hiroshige ordered that the costs of partition incurred by Lipscomb, including reasonable attorneys' fees, be apportioned among the co-owners proportionate to their ownership interests, *i.e.*, 75% to G&L Aviation and 25% to Lipscomb.  The amount of the fees and costs was to have been determined by post-trial motion.

d.      The Interlocutory Appeal

The Girardi Parties then filed an interlocutory appeal of the partition ruling only, since that was the only relief afforded as to which an interlocutory appeal could be taken.  On March 1, 2018, the Court of Appeal reversed and remanded the portion of the Interlocutory Judgment granting partition, finding that the trial judge had erred in his legal analysis of the Girardi Parties' defense of waiver to the right to partition and further finding that the trial court erred by adjudicating a claim of fiduciary duty as part of the accounting relating to the partition.  The Court of Appeal did not question the summary adjudication holding that Lipscomb owned an undivided 25% interest in the 1122 Property and that G&L Aviation owned the remaining undivided 75% interest.  Nor did the Court of Appeal question the summary adjudication ruling dismissing GK's cross-claims for damages and accounting.

Following remand, Lipscomb moved for leave to amend his Complaint to add a claim for breach of lease against GK, which has paid no rent for its occupancy of the 1122 Property

1   since June 2012.  Judge Kalin, sitting by special assignment, denied the motion.

2                  e.      The Remanded Trial

3         On November 27, 2018, Judge Kalin began to hear the trial of the one remanded issue:

4   whether Lipscomb had waived his right to partition.  The re-trial was concluded on December

5   4, 2018.  Judge Kalin issued a Statement of Decision on December 31, 2018, purporting to find

6   by clear and convincing evidence that the Girardi Parties had established that Lipscomb had

7   expressly waived his right to partition based on an unsigned draft of a partnership agreement

8   which Lipscomb had never seen.  Lipscomb timely objected to the Statement of Decision, but

9   the Court did not address those objections and Judge Kalin's temporary assignment ended in or

10  about March 2018.  Judge Kalin's Statement of Decision was never entered as an interlocutory

11  judgment.

12        On June 10, 2019, after Judge Kalin's temporary assignment ended, Judge Doyle

13  granted Lipscomb's renewed motion for leave to amend his complaint to include a cause of

14  action against GK for breach of its obligation to pay rent.  The court also overruled the Girardi

15  Parties' demurrers to the First Amended Complaint and the Girardi Parties filed a verified

16  answer to the First Amended Complaint in fall 2019.

17                 f.      The Mistrial

18        On December 15, 2020, the court granted Lipscomb's motion for mistrial.  The mistrial

19  has the effect of invalidating the remanded trial of the Girardi Parties' defense of waiver of the

20  right to partition.  In light of the mistrial, that remanded issue (the waiver defense to the

21  partition claim) would have to be retried, but for the instant motion to approve a settlement

22  agreement by which these claims will be resolved.

23        On August 20, 2020, the court granted Lipscomb's motion for preferential trial setting

24  based on his age (81) and his health conditions (Parkinson's).  Under state procedural law, a

25  party entitled to a trial preference must be afforded a trial within 120 days.  As of the date of

26  the filing of this Motion, the trial is set for April 12, 2021.  However, the parties have agreed to

27  apply to the state court for a continuance of the trial date until summer 2021 to allow for

28  resolution of this Motion to approve the settlement.

III.

**THE COMPROMISE SHOULD BE APPROVED**

A.    **The Bankruptcy Rules Allow the Court to Approve Compromises of**
**Controversies**

Rule 9019(a) states that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the Court.  In re Carson, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987); In re Hydronic Enterprise, Inc., 58 B.R. 363, 365 (Bankr. D.R.I. 1986); In re Mobile Air Drilling Co., Inc., 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); Knowles v. Putterbaugh (In re Hallet), 33 B.R. 564, 565 (Bankr. D. Me. 1983).  For the reasons set forth below, the Court should approve the Agreement.

Sound discretion is judicial power exercised fairly and equitably. As the Supreme Court noted, the term "discretion" denotes the absence of a hard and fast rule:

> When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reasonableness and conscience of the judge to a just result.

Langnes v. Green, 282 U.S. 531, 541 (1931).

Correspondingly, the Ninth Circuit has recognized that "the bankruptcy court has great latitude in approving settlements."  In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988).

B.    **Case Law Supports Approval of the Agreement**

It is well-established that, as a matter of public policy, settlements are favored over continued litigation.  See, e.g., In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976); In re Heissenger Resources, Ltd., 67 B.R. 378, 382 (C.D. Ill. 1986).

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case.  See In re General Store of Beverly Hills, 11 B.R. 539 (B.A.P. 9th Cir. 1981).  It is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but

1  rather to "canvas the issues and see whether the settlement falls below the lowest point of the

2  range of reasonableness." Heissenger Resources, 67 B.R. at 383.

3         Among the factors to be considered in determining whether a settlement is fair,

4  equitable and reasonable are the following:

5              (a)    the probability of success in the litigation;

6              (b)    any impediments to collection;

7              (c)    the complexity, expense, inconvenience, and delay of litigation; and

8              (d)    the interest of creditors with deference to their reasonable opinions.

9  See A & C Properties, 784 F.2d at 1381.

10        From an analysis of the foregoing factors in this case, the Court should conclude that

11 the terms of the Agreement are fair and equitable and well within the range of

12 reasonableness.

13              1.    The probability of success on the claims in the State Court Action is

14                    uncertain, at best.

15        The procedural posture of the State Court Action is daunting.  The matter has been

16 pending for nearly seven years.  The matter is subject to trial preference based upon Lipscomb's

17 age (81), and his physical condition (Parkinson's disease).  There have already been two

18 separate trials, and a third trial is scheduled to commence on April 12, 2021, before the hearing

19 date on this Motion.[1]  There are numerous witnesses, thousands of pages of exhibits, and neither

20 the Trustee nor his counsel have had, or will have, adequate time to prepare for a trial of this

21 magnitude.  Conversely, Lipscomb's counsel has been involved with the case since its filing,

22 attended all depositions, is familiar with all exhibits, and has actually tried this case twice.  To

23 the extent that preparation is the key to success, the Trustee is unlikely to ever be as prepared as

24 Lipscomb and his counsel.  Even if the Trustee could seek a continuance of the trial date, the

25 matter is subject to statutory trial preference and must proceed to trial; any continuance will be a

26 short one.  Further, the claims being settled (which would otherwise have to be tried) actually

27 _____

28        [1] In light of this settlement, the parties have agreed to apply to the state court to continue the trial until summer 2021 to allow this motion to be heard and any order granting this motion to become final.

pertain to a non-debtor, G&L Aviation, to which the bankruptcy stay does not apply and in which Debtor has a partial interest.

Notwithstanding the inadequacy of time to prepare for trial, the Trustee and his counsel have evaluated the claims at issue.  Lipscomb asserts two primary rights: (1) partition of the 1122 Property; and (2) damages for G&L Aviation's interference, through the Debtor, of Lipscomb's right to nearly a decade of rents.  Regarding the former, partition is generally a matter of right.  "[P]artition as to concurrent interests in the property **shall be of right** unless barred by a valid waiver."  Cal. Civ. Proc. Code § 872.710(b).  Thus, Lipscomb need not show anything other than his ownership interest, which has already been conclusively adjudicated in connection with his prior summary adjudication motion.  In that ruling, the state court court found "There is no disputed evidence as to Lipscomb's ownership interest" of a 25% undivided tenancy in common interest in the subject property.  See Cal. Civ. Proc. Code § 437c(n)(1).

While Lipscomb commences trial having already met his evidentiary burden, the Trustee would have to show Lipscomb's absolute right to partition is barred by a "valid waiver."  "The burden is on the party claiming a waiver of a right to prove it by **clear and convincing evidence** that does not leave the matter to speculation, and doubtful cases will be decided against a waiver."  Utility Audit Co., Inc. v. City of Los Angeles, 112 Cal. App. 4th 950, 959 (2003) (emphasis added); see also In re Marriage of Vomacka, 36 Cal. 3d. 459, 469 (1984).

Lipscomb emphatically disputes that there was any waiver, express or implied, of the right to partition the 1122 Property.  The only "evidence" of which the Trustee is aware is that relied upon by Judge Kalin in the remanded trial on the waiver issue.  That "evidence", however, was an unsigned partnership agreement that did not address waiver at all, and which Lipscomb testified – and was never contradicted – that he had never seen, never signed, and never discussed with either the Debtor or Lack.  Given the limited evidence of any right to waiver, and the heightened burden of proof, a resolution of this matter would be prudent under the circumstances.  **Further, the Trustee does not contest the partition and sale of the 1122**

1   **Property.  To the contrary, Lipscomb's intentions are now perfectly aligned with the**

2   **Trustee's.**

3       The second claim that Lipscomb asserts is against G&L Aviation for breach of its

4 fiduciary duty for, among other things, G&L Aviation's refusal to assist in collecting rent from

5 GK and its obstruction of Mr. Lipscomb's efforts to do so.  Lipscomb contends that tenants in

6 common owe a fiduciary duty to each other.  See Hendrickson v. Cal Talc Co., 55 Cal. App. 2d

7 467, 473 (1942) ("[A] fiduciary relationship exists between tenants in common and … one co-

8 tenant may not gain a present advantage by acting adversely to his fellow tenants…").  As his

9 partner in 1122 Wilshire Partnership, Lipscomb contends that G&L Aviation also owed a

10 fiduciary duty to Lipscomb not to deprive him of the benefits of his real estate investment, the

11 revenue from a rent-paying tenant.

12       The Trustee cannot reasonably dispute that partners and co-tenants generally owe each

13 other fiduciary duties.  The Trustee is aware of no evidence to dispute the fact that Lipscomb

14 has not received payments of rent since 2012 (and that there were missed rental obligations

15 arising even before that date).  The Debtor has contended from the beginning of the State Court

16 Action that he controlled G&L Aviation and, in fact, the Debtor and his firm, GK, have

17 defended G&L Aviation and mightily resisted the partition Lipscomb sought and contended

18 that GK owed no rent and could remain in possession indefinitely without paying rent.  On the

19 other hand, G&L Aviation's other partner, Lack, did not oppose or resist Lipscomb's efforts to

20 partition or collect rent from GK.

21       Following the first trial heard over 11 days during spring 2016, Judge Hiroshige

22 ultimately ruled in his detailed Statement of Decision that a credit was due to Lipscomb in

23 excess of $300,000 for rents and that such sums should be surcharged against G&L Aviation's

24 portion of the sale proceeds of the 1122 Property.  He also found Lipscomb was entitled to a

25 $92,000 credit to be surcharged against G&L Aviation's interest for "in kind" consideration

26 enjoyed only by GK, to wit, a ten-year license for parking of 28 vehicles that was part

27 consideration for the 2006 sale of a parking lot behind the 1122 Property.  Those findings were

28 reflected in an Interlocutory Judgment.  While that portion of the Interlocutory Judgment was

1    reversed, the Trustee believes that a jury could reasonably reach the same conclusion except

2    that, with the passage of nearly five more years, Lipscomb now claims damages in excess of

3    $1.2 million

4         The only defense that the Girardi Defendants have previously espoused, as far as the

5    Trustee can ascertain, is that the rent was not due because it was offset by improvements made

6    to the 1122 Property.  This defense, however, was adjudicated adversely to the Debtor and the

7    Girardi Parties following the first trial in the September 30, 2016 Statement of Decision.

8    California law provides that the first trier of fact binds the second trier of fact when issues are

9    bifurcated or trial has been severed as was the case here.  Consequently, the findings in the

10   Statement of Decision on the equitable claims heard by Judge Hiroshige and incorporated into

11   the Interlocutory Judgment dated January 3, 2017 appear to predetermine the liability–creating

12   facts in favor of  Lipscomb's claim for breach of fiduciary duty and adversely to the cross-

13   claims asserted by the Girardi Parties.  It may well eventuate that a further trial would be largely

14   a prove-up by Mr. Lipscomb of his damage claim with no cross-claims extant and no

15   meaningful offsets or other defenses available to the estate, the Debtor, or the Girardi Parties.

16   Without a doubt, litigation will be extremely complex, hotly contested, and extensive – both in

17   time and costs.

18        More importantly, after years of litigation and accrual of significant administrative

19   expenses, there is absolutely no guaranty that the estate will succeed.  The witnesses the

20   Trustee would need to call, *i.e.*, the Debtor and his former controller are not cooperative.

21        Through the Agreement, the Trustee is able to avoid these uncertainties and ensure

22   that the estate receives a recovery for distribution to allowed claimants.  Therefore, the

23   Trustee believes that the Agreement is in the best interest of the estate.

24            2.   There are no impediments to collection.

25        The monies to be paid to the estate will come from the sale of the 1122 Property, which

26   is unencumbered and is valued at approximately $7 million. Accordingly, other than the cost,

27   risk, and delay resulting from litigation, collection is not an issue.

28   ///

3. <u>The complexity of issues and trial preference would result in significant</u>
<u>fees and expense for the estate.</u>

The legal and factual issues involved are complex.  In light of the present procedural posture of the State Court Action, there remain both legal and equitable issues to be tried. Further, the matter is entitled to statutory trial preference pursuant to Code of Civil Procedure Section 36.  Thus, not only will there be a complex and lengthy trial – that trial will proceed in a matter of weeks, with virtually no time for the Trustee or his counsel to review more than half a decade of litigation history and prepare for trial.

In addition, proceeding with the State Court Action, and possibly an appeal from rulings made therein, would be expensive, inconvenient and would delay the resolution of these claims for years, with uncertain results.  Given that Lipscomb estimates that he has already incurred aggregate attorneys' fees and related legal expenses in excess of $1.7 million due to the protracted and contentious litigation and obstruction of the Girardi Parties, the Trustee's estimated legal expenses for trial and a likely appeal would almost certainly exceed $200,000.  As a result, litigation expenses would continue to accrue and payments to creditors would be significantly delayed or non-existent.  The Agreement will therefore further judicial economy and conserve estate resources.  Further, the Agreement will ease the burden on the State Court and the State Court of Appeals, as well as parties who would otherwise need to expend significant time and expense in preparing for trial and any appeals.  Finally, given that the Trustee's interests and those of Lipscomb are aligned in selling the 1122 Property, the largest impediment to resolution of the State Court Action has been removed.

4. <u>The Agreement benefits the estate's creditors.</u>

Lipscomb's damages claim for breach of fiduciary duty ***exceeds $1.2 million***, which represents only Lipscomb's 25% of the damages caused by G&L Aviation's (through the Debtor) obstruction and breach and fiduciary duty.  But for this settlement agreement, Lack may likewise have claims against the Debtor for the same conduct, which would further jeopardize the estate.

1    Likewise, Lipscomb will almost certainly be entitled to an award of "costs of partition,"

2    which include attorneys' fees.  The Trustee could seek to defend against Lipscomb's partition

3    claim (the outcome of which, as explained above, is dubious), but such a defense would: (a)

4    only drive up the legal fees, and concomitantly the attorneys' fees to which Lipscomb would be

5    entitled, if he was successful, and (b) be entirely impractical, as the Trustee wishes to sell the

6    1122 Property to recover any equity the estate may have therein for the benefit of its creditors.

7    Under California's partition statutes, if Lipscomb is successful with his partition claim, "the

8    court **shall** apportion the costs of partition among the parties in proportion to their interests or

9    make such other apportionment as may be equitable."  Cal. Civ. Proc. Code § 874.040

10    (emphasis added).

11    Lipscomb has incurred at least **$1,439,753.95** in "costs of partition" that should be

12    allocated between the two owners of the 1122 Property, *i.e.*, between Lipscomb and G&L

13    Aviation.  Under ordinary circumstances, 25% of those costs would be borne by Lipscomb and

14    75% by G&L Aviation, which would translate to $359,933.99 to be borne by Lipscomb and

15    **$1,079,815.46** borne by G&L Aviation.  Lipscomb, however contends that the Debtor, who

16    purported to litigate on behalf of G&L Aviation, engaged in scorched earth, bad faith, frivolous

17    and dilatory tactics, and asserted wholly unsupportable defenses and claims to obstruct the

18    progress of the partition claim which should never have been opposed or even necessary.

19    Therefore, if this matter is not resolved, Lipscomb will ask the court to allocate as much as

20    100% of the "costs of partition" to be borne by G&L Aviation.  See, e.g., Lin v. Jeng, 203 Cal.

21    App. 4th 1008, 1025-1026 (2012) (finding that plaintiff's attempt to "use her experience in real

22    estate to control title to the property in order to prevent her siblings from obtaining their

23    interests" justified an allocation of all of the attorneys' fees to plaintiff/cross-defendant who

24    resisted the partition among all her siblings).

25    If this matter is not resolved, it is possible that **all** of the Debtor's interest in G&L

26    Aviation will be taken by Lipscomb as damages and attorneys' fees, paid to legal expenses, or

27    both.  The Agreement avoids the risk and expense of further litigation and provides the estate

28    with a sum certain, *i.e.*, $1,000,000, that will be used to pay the timely filed, allowed claims in

1  the case.  The Trustee took into consideration the cost of advocating the Debtor's positions and

2  contesting the other parties' positions in agreeing on the consideration to be given and received

3  under the terms of the Agreement.

4    In light of the risk that the estate would receive less than the consideration guaranteed by

5  the Agreement, or perhaps nothing at all after the investment of consider legal expenses, if the

6  State Court Action proceeded to trial and appeal, the Trustee exercised his business judgment

7  and entered into the Agreement before additional fees and expenses were incurred in proceeding

8  with the extensive pending litigation.  Accordingly, the Trustee submits that the Agreement is

9  fair, reasonable, and in the best interest of the estate and its creditors, and should therefore be

10  approved by the Court.

11  <div align="center">**IV.**</div>

12  <div align="center">**<u>CONCLUSION</u>**</div>

13    Based on the foregoing, the Trustee respectfully requests that the Court enter an order:

14    1.  Granting the Motion;

15    2.  Approving the Agreement;

16    3.  Authorizing and directing the Trustee and the 1122 Wilshire Parties to take any

17  and all steps necessary to effectuate the Agreement; and

18    4.  Providing such other and further relief as is just and proper.

19

20  DATED: April 2, 2021     LEVENE, NEALE, BENDER, YOO &
             BRILL L.L.P.

21            By:_____*/s/ Timothy J. Yoo*_____

22              TIMOTHY J. YOO
            CARMELA T. PAGAY

23            Attorneys for Jason Rund
           Chapter 7 Trustee

24

25

26

27

28

<div align="center">14</div>

## DECLARATION OF JASON RUND

I, Jason Rund, declare as follows:

1.      I am the duly-appointed, qualified, and acting Trustee for the bankruptcy estate of Thomas Vincent Girardi. I have personal knowledge of the matters set forth herein and if called as a witness could and would testify competently thereto.  I submit this Declaration in support of the accompanying Motion to Approve Compromise with G&L Aviation, Lee Lipscomb, 1122 Wilshire Building Partnership and Walter Lack (the "Motion"). Unless the context indicates otherwise, capitalized terms herein shall have the meaning as defined in the Motion.

2.      I am requesting authority to enter into and consummate the Agreement that I entered into with the 1122 Wilshire Parties, which guarantees a payment of $1 million to the estate.  A true and correct copy of the Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference.

3.      In light of the risk that the estate would receive less than the consideration guaranteed by the Agreement, or perhaps nothing at all after the investment of consider legal expenses if the State Court Action proceeded to trial and appeal (which I estimate to be not less than $200,000), I believe that the terms of the Agreement are fair and equitable and well-within the range of reasonableness.

4.      Therefore, I believe that I have exercised sound business judgment in entering into the Agreement and respectfully request that it be approved by this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on April 2, 2021 at El Segundo, California.

JASON M. RUND

## **<u>DECLARATION OF ANDREW W. ZEPEDA</u>**

I, ANDREW W. ZEPEDA, declare as follows:

1.     I am an attorney duly admitted to practice and have practiced before all courts of this state and before this Bankruptcy Court, all the U.S. District Courts of California, the Ninth Circuit and the U.S. Supreme Court.  I am a shareholder of Lurie, Zepeda, Schmalz, Hogan & Martin, attorneys of record for Plaintiff and Cross-Defendant Lee Lipscomb ("Lipscomb") in the matter entitled <u>Lipscomb v. Girardi, et al.</u>, Los Angeles Superior Court Case No. BC547290 (the "State Court Action").  I have personal knowledge of the following facts and, if called as a witness, could and would competently testify thereto.

2.     I make this Declaration in support of the Motion to Approve Compromise With G&L Aviation, Lee Lipscomb, 1122 Wilshire Building Partnership and Walter Lack (the "Motion") filed by Jason Rund, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Thomas Vincent Girardi (the "Debtor").

3.     On or about June 2, 2014, I filed an action on behalf of Lipscomb entitled <u>Lipscomb v. Girardi, et al.</u>, Los Angeles Superior Court Case No. BC547290 (the "State Court Action") against the Debtor and others asserting the following causes of action: (1) partition of the property located at, and commonly known as, 1122 Wilshire Boulevard, Los Angeles, California (the "1122 Property"); (2) the dissolution of the 1122 Wilshire Partnership; (3) declaratory relief; and (4) damages for breach of fiduciary duty against G&L Aviation and the Debtor, its partner, for failing to collect rent from its affiliate, G&K, the tenant (the "Complaint").

4.     In the Complaint, Lipscomb alleged, among other things:

a.     On or about December 30, 1998, Lipscomb, the Debtor, and Walter Lack orally agreed together to purchase the 1122 Property together with an adjoining parking lot parcel on the south side of the alley behind the 1122 Property.  Lipscomb agreed to contribute 25% of the purchase price and acquisition costs and to hold an undivided 25% tenancy-in-common interest in fee simple title to the 1122 Property.  The Debtor and Lack agreed to contribute 75% of the purchase price and acquisition costs and

1                         hold an undivided 75% tenancy-in common-interest through G&L

2                         Aviation, of which they were both equal general partners.

3           b.      The Debtor proposed that his law firm, Girardi & Keese ("G&K") would

4                         commence paying rent for the 1122 Property at $10,000 per month on a

5                         Net-Net-Net basis and therefore also be responsible for payment of all

6                         taxes, utilities, insurance and maintenance associated with the 1122

7                         Property.  The monthly rent to be paid by G&K was substantially under

8                         market.

9           c.      Although no written lease agreement was ever executed by Lipscomb

10                    and G&L Aviation (i.e., the 1122 Wilshire Partnership) and G&K for the

11                    lease of the 1122 Property, in or about 2000, G&K commenced to pay

12                    rent of $10,000 per month to the 1122 Partnership and to pay all real

13                    estate taxes, insurance, utilities and maintenance expenses.  G&K

14                    continued paying that rent and other NNN obligations for more than a

15                    decade.

16           d.      In or about June 2012, G&K ceased paying rent for the 1122 Property, at

17                    which time G&K was already delinquent on eight months of rent in 2010

18                    and 2011.  There were unsuccessful efforts made to resolve the disputes.

19     5.      On July 24, 2014, the Defendants in the State Court Action (sometimes referred

20 to as the "Girardi Parties") filed an answer to the Complaint and a Cross-Complaint against

21 Lipscomb for: (1) breach of contract; (2) breach of fiduciary duty; (3) bad faith; (4) declaratory

22 relief; (5) quiet title to the 1122 Property; (6) slander of title (referred to as a claim to "remove

23 cloud"); and (7) accounting (the "Cross-Complaint").

24     6.      On or about June 30, 2015, I filed a Motion for Summary Adjudication on behalf

25 of Lipscomb.  On December 18, 2015, the Court granted that Motion in part.  Specifically, the

26 Court found: "[T]he undisputed evidence reflects that Lipscomb owns a 25% tenancy in

27 common interest in the real property located at 1122 Wilshire Blvd. … [¶] There is no disputed

28 evidence as to Lipscomb's ownership interest." By this ruling, it was conclusively adjudicated

that, among other things, Lipscomb holds a 25% undivided tenancy in common interest in the subject property located at the 1122 Property. See Cal. Civ. Proc. Code § 437c(n)(1). The court also dismissed the Girardi Parties' cross-claims for slander of title and bad faith.

7.    In its December 18, 2015 ruling, the Court also granted summary adjudication in favor of Lipscomb as to Girardi Parties' cross-claims for breach of contract, breach of fiduciary duty and accounting as to Cross-Complainants G&K and the 1126 Partnership because it was undisputed that neither of those Cross-Complainants were partners in the 1122 Wilshire Partnership or parties to that partnership agreement. Thus, following the Court's December 18, 2015 ruling on Lipscomb's motion for summary adjudication, neither G&K nor the 1126 Partnership are parties to the First, Second or Seventh Causes of Action.

8.    The equitable claims in the State Court Action were first tried before Judge Hiroshige in spring 2016. I appeared at that trial on behalf of Lipscomb. After post-trial briefing, the Court entered its Statement of Decision on September 30, 2016, a true and correct copy of which is attached as Exhibit 2. Interlocutory Judgment was entered on January 3, 2017, a copy of which is attached as Exhibit 3.

9.    By way of his September 30, 2016 Statement of Decision and January 3, 2017 Interlocutory Judgment, Judge Hiroshige ordered partition of the 1122 Property by sale and awarded Lipscomb a credit in the amount of the unpaid rents and other relief from G&L Aviation's portion of the proceeds of the partition sale; ordered the dissolution of the 1122 Wilshire Partnership; and denied the remaining Cross-Complainants' accounting cross-claims with respect to the 1122 Wilshire Partnership wherein they sought to adjust the capital accounts in favor of the Debtor because of Lipscomb's alleged failure to contribute to the cost of the certain leasehold improvements to the 1122 Property undertaken by tenant G&K. Judge Hiroshige further ordered that the costs of partition incurred by Lipscomb, including reasonable attorneys' fees, be apportioned among the co-owners proportionate to their ownership interests, i.e., 75% to G&L Aviation and 25% to Lipscomb. The amount of the fees and costs was to have been determined by post-trial motion.

///

10.    On or about December 6, 2016, the Girardi Parties filed an interlocutory appeal of the partition ruling only, since that was the only relief afforded as to which an interlocutory appeal could be taken.  On March 1, 2018, after the appeal had been fully briefed and argued, the Court of Appeal reversed and remanded the portion of the Interlocutory Judgment granting partition, finding that the trial judge had erred in his legal analysis of the Girardi Parties' defense of waiver to the right to partition and further finding that the trial court erred by adjudicating a claim of fiduciary duty as part of the accounting relating to the partition.  The Court of Appeal did not question the summary adjudication holding that Lipscomb owned an undivided 25% interest in the 1122 Property and that G&L Aviation owned the remaining undivided 75% interest.  Nor did the Court of Appeal question the summary adjudication ruling dismissing G&K's cross-claims for damages and accounting.  Nor did the Court of Appeal comment on or question parts of the Statement of Decision or Interlocutory Judgment that did not concern the partition cause of action or the credits afforded in connection with the partition claim.

11.    Following remand, I filed a motion for leave to amend the Complaint to add a claim for breach of lease against G&K, which has paid no rent for its occupancy of the 1122 Property since June 2012.  Judge Kalin, sitting by special assignment, denied the motion.

12.    On November 27, 2018, Judge Kalin began to hear the trial of the one remanded issue: whether Lipscomb had waived his right to partition.  I personally attended every day of, and was lead trial counsel at, the re-trial, which was concluded on December 4, 2018.  Judge Kalin issued a Statement of Decision on December 31, 2018, purporting to find by clear and convincing evidence that the Girardi Parties had established that Lipscomb had expressly waived his right to partition based on an unsigned draft of a partnership agreement which Lipscomb had never seen.  I filed timely objections to the Statement of Decision, but Judge Kalin never addressed those objections and Judge Kalin's temporary assignment ended in or about March 2018.  Judge Kalin's Statement of Decision was never entered as an interlocutory judgment.

13.     In 2019, I filed a renewed motion for leave to amend the Complaint.  On June 10, 2019, after Judge Kalin's temporary assignment ended, Judge Doyle granted the renewed motion for leave to amend the Complaint to include a cause of action against G&K for breach of its obligation to pay rent.  The court also overruled the Girardi Parties' demurrers to the First Amended Complaint and the Girardi Parties filed a verified answer to the First Amended Complaint in fall 2019.

14.     On or about August 3, 2020, I filed a motion for mistrial on the ground that Judge Kalin never completed the statement of decision process required by the California Rules of Court before his temporary assignment ended, which required a retrial of the remanded issue of the Girardi Parties' defense of waiver.  On December 15, 2020, the court granted the motion for mistrial.  The mistrial has the effect of invalidating the remanded trial of the Girardi Parties' defense of waiver of the right to partition.  In light of the mistrial, that remanded issue (the waiver defense to the partition claim) would have to be retried, but for the instant motion to approve a settlement agreement by which these claims will be resolved.

15.     On or about July 21, 2020, I filed a motion for trial preference based on Lipscomb's age (81) and his health conditions (Parkinson's).  On August 20, 2020, that motion was granted.  Under state procedural law, a party entitled to a trial preference must be afforded a trial within 120 days.

16.     As of the date of the filing of this Motion, the trial in the State Court Action is set for April 12, 2021.  However, the parties have agreed to apply to the state court for a continuance of the trial date until summer 2021 to allow for resolution of this motion to approve the settlement.

I have personal knowledge of the foregoing facts and, if called upon as a witness, could and would competently testify thereto.

Executed on this 2nd day of April, 2021, at San Marino, California.

Andrew W. Zepeda

# Exhibit 1

000021

# SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into by and among Jason M. Rund, the chapter 7 trustee (the "**Trustee**") for the estate of Thomas Vincent Girardi (the "**Debtor**"), G&L Aviation, a California general partnership ("**G&L**"), Lee Lipscomb, an individual and as Trustee of the Lipscomb Family Trust ("**Lipscomb**"), 1122 Wilshire Building Partnership, a California general partnership ("**1122 Partnership**"), and Walter Lack, an individual ("**Lack**"). Together, the Trustee, G&L, Lipscomb, 1122 Partnership and Lack are referred to as the "**Parties**."

## RECITALS

A.      According to that certain Individual Grant Deed recorded on December 30, 1998 as Document No. 98 2364772, the title to real property located at 1122 Wilshire Boulevard, Los Angeles, California (the "**Property**"), was acquired by "G & L AVIATION, a California General Partnership, as to an undivided 75.0000 % interest and LEE G. LIPSCOMB and LAURA LIPSCOMB, Husband and Wife as Community Property, as to an undivided 25.0000 % interest."

B.      Laura Lipscomb transferred her interest in the Property to Lipscomb pursuant to that certain Interspousal Transfer Deed recorded on October 15, 2001, as Document No. 01-1958333.

C.      In or about 1999, 1122 Partnership was formed to maintain and operate the Property.  1122 Partnership's only partners were and remain Lipscomb (25%) and G&L (75%).

D.      On December 1, 1994, the Debtor and Lack formed G&L with equal partnership interests.  In 2014, all assets of G&L were either liquidated or partitioned between the Debtor and Lack with the exception of the Property.

E.      On June 2, 2014, Lipscomb filed a complaint against the Debtor, G&L, Girardi & Keese, a California general partnership ("**GK**") (collectively, the "**Girardi Parties**") and others (including 1122 Partnership and 1126 Wilshire Partnership) with the Los Angeles Superior Court seeking partition of the Property, dissolution of 1122 Partnership, declaratory relief, and damages for breach of fiduciary duty, initiating LASC Case No. BC547290 (the "**Superior Court Action**").

F.      On July 24, 2014, the Debtor, G&L, 1122 Partnership, and GK filed a cross-complaint in the Superior Court Action, asserting causes of action seeking damages for breach of partnership agreement, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, declaratory relief, quiet title, slander of title, and an accounting with respect to the 1122 Partnership.  On December 18, 2015, the court granted Lipscomb's summary adjudication motion (a) as to the quiet title and slander of title cross-claims, finding that it undisputed that Lipscomb and G&L owned undivided 25% and 75% tenancy in common interests in the Property, respectively, and (b) dismissing any cross-claims by GK or by 1126 Wilshire Partnership for damages and further dismissing the cross-claim for breach of the implied covenant.

G.    Following trial of the equitable claims and cross-claims in spring 2016, the court entered its Statement of Decision on September 30, 2016 followed by the entry of an Interlocutory Judgment on January 3, 2017, which afforded partition of the Property by sale, ruled that G&L's portion of the sales proceeds would be charged with credits due to Lipscomb for unpaid rents and other charges and further ordering attorney's fees incurred by Lipscomb in prosecuting the partition claim to be apportioned proportionate to ownership interests and the amount of which to be determined by post-trial motion; entered a decree for dissolution of 1122 Partnership; denied the claims asserted by G&L and Debtor in the accounting for 1122 Partnership; and denied declaratory relief sought by cross-complainants.

H.    The Girardi Parties appealed the portion of the Interlocutory Judgment granting partition and the ancillary accounting. In March 2018, the Court of Appeal affirmed in part and reversed in part, finding that the trial court had not properly evaluated the waiver defense to the partition claim. Consequently, the partition order and the ancillary accounting and the waiver defense were remanded for retrial. No other rulings were affected by the appeal.

I.    Upon remand, the waiver defense to the partition claim was tried before Judge Joseph Kalin, sitting by special assignment beginning in November 2018. On December 30, 2018, Judge Kalin issued a tentative decision finding a waiver of the right to partition. However, a final statement of decision was never entered before Judge Kalin's assignment expired. On December 15, 2020, the court granted Lipscomb' motion for mistrial with respect to the trial before Judge Kalin. In August 2020, Lipscomb's motion for preferential trial setting was granted and trial set for January 2021. The remaining issues to be tried were (i) the damage claims asserted by Lipscomb against G&L for breach of fiduciary duty; (ii) G&L's cross-claims against Lipscomb for damages; and (iii) the waiver defense to the partition claim. Lipscomb's claim against GK for breach of rental agreement was and remains subject to the automatic stay.

J.    On December 18, 2020 (the "**Petition Date**"), an Involuntary Petition was filed against the Debtor under chapter 7 of title 11 of the United States Code (the "**Code**"). The Order for Relief was entered on January 13, 2021, and the Debtor's bankruptcy case (the "**Case**") is pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**") as Case No. 2:20-bk-21020-BR.

K.    On the Petition Date, an Involuntary Petition was also filed against GK under chapter 7 of the Code. The Order for Relief was entered in that case on January 13, 2021, and the case is pending before the Bankruptcy Court as Case No. 2:20-bk-21022-BR (the "**GK Case**").

L.    Lipscomb asserts that, due to the actions/inactions of G&L which was controlled and directed by the Debtor, he is entitled to "costs of partition" consisting of legal fees and costs incurred in the prosecution of the partition claims and other claims inextricably intertwined therewith, in excess of $1,439,753.95 and uncollected rents and other damages and credits in excess of $1,204,955, which amounts should all be allocated to the Debtor through G&L (the "**Lipscomb Claims**"). The Trustee denies the Lipscomb Claims.

M.    The non-jury trial of the remaining legal and equitable claims involving parties other than the Debtor and GK in the Superior Court Action is scheduled for April 12, 2021. With respect to the remaining claims in the Superior Court Action, the five years within which an action

must be brought to trial as provided by Code of Civil Procedure § 583.310 (the "**Five-Year Statute**") shall expire on April 24, 2021 as to claims involving non-debtors.

N.    The Parties agree to settle the Superior Court Action on the terms set forth herein.

<center>TERMS AND CONDITIONS</center>

Based on the mutual promises contained herein and for other good and valuable consideration, the receipt of which is acknowledged, the Parties agree as follows:

1.    Recitals Acknowledged.  Each of the Parties acknowledges that, to the best of the Party's knowledge, each of the above recitals is true and correct in every material respect.

2.    Conditions and Effective Date.

a.    This Agreement is subject to approval by the Bankruptcy Court.  A hearing date was reserved with the Bankruptcy Court for April 27, 2021 at 10 am.  Upon execution of this Agreement by the Parties, the Trustee shall file a motion in the Case for entry of an order approving this Agreement and the terms hereof (the "**Order**"), and the Parties shall seek continuance of the trial in the Superior Court Action to a date no earlier than June 5, 2021 and no later than September 24, 2021, and shall agree to an extension of the Five-Year Statute to October 24, 2021. If the Order is issued but the Effective Date defined *infra* at 2.b. is delayed beyond September 24, 2021, the parties shall stipulate to a further extension of the Five-Year Statute another six (6) months beyond October 24, 2021, and shall continue the trial date to a date no later than 30 days before the terminus of the extended Five-Year Statute and do so thereafter again, if necessary because the Effective Date has yet to occur.

b.    The "**Effective Date**" of this Agreement shall be the date on which the Order is entered unless there is a stay of enforcement of the Order.  If there is a stay of enforcement of the Order, the Effective Date of this Agreement shall be the first business day after the expiration or lifting of the stay.

c.    If this Agreement is not approved by the Bankruptcy Court, this agreement shall be void and the Superior Court Action shall not have been settled.

3.    Sale of Property and Administration of Sale Proceeds.

a.    Lipscomb and/or G&L (through its general partner Lack) is/are authorized to list the Property for sale with a licensed real estate broker of his/their choice and shall not be obligated to sell the Property conjointly with the sale of any adjacent property in which the Trustee may have an interest direct or indirect.  The Parties shall provide copies of all purchase offers received and escrow documents to the Trustee. Lipscomb and/or G&L (through its general partner Lack) may authorize the closing of the doorways between the Property and the building located at 1126 Wilshire Boulevard.  The Parties shall attempt to secure the agreement of the Trustee of the GK bankruptcy estate to vacate the Property as soon as possible and, if unable to do so, the Parties shall cooperate in efforts to remove the Trustee of the GK estate from the Property.

b.      After payment of any liens, documentary transfer taxes arising from the sale, and ordinary costs of sale (including broker commissions, escrow, etc.), the balance (the "**Net Proceeds**") shall first be allocated based on the percentage of ownership of the Property (*i.e.*, 25% to Lipscomb (the "**Lipscomb Share**") and 75% to G&L (the "**G&L Share**")).  Half of the balance earmarked for G&L shall be allocated to Lack ("**Lack's Share**") without offset except as provided herein.

c.      The Lipscomb Claims shall be satisfied by payment without offset to Lipscomb of the remainder of the G&L Share not allocated to Lack's Share, subject to SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000) of those proceeds being paid to the Trustee.  In addition, should the sale price of the Property exceed $7,500,000, the Trustee shall be paid half (50%) of the G&L Share of the Net Proceeds of every dollar from a sale of the Property above $7,500,000, and Lipscomb shall have no claim to any part of the G&L Share attributable to a sale price in excess of $7,500,000. In addition, Lack shall pay the Trustee the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) from Lack's Share.  The foregoing payments shall be made directly from escrow upon closing of the sale of the Property and after the Effective Date. For purposes of illustration only, hypothetically assuming a $7.5 million sales price and further hypothetically assuming costs of sale totaling $100,000, the net proceeds of sale would be $7.4 million. Of this amount, G&L would receive a gross amount of 75% ($5.55 million). Lack would be entitled to half that sum ($2,775,000) and would then transfer $250,000 to the Trustee for a net payment to Lack of $2,525,000. Lipscomb would receive 25% ($1,850,000) plus the other half of the G&L interest of $2,775,000 less $750,000 to be paid to the Trustee for a net of $3,850,000 ($1.850 million plus $2,775,000 less $750,000). The Trustee would receive a total of $1 million of the sales proceeds.

d.      In addition to the payments described in Section 3c, above, the Trustee shall be paid fifty percent (50%) of G&L's share of any rents collected after the Petition Date from the GK Case to the extent the Trustee in the GK Case makes payment of any part thereof. Nothing herein shall prevent Lipscomb or G&L Aviation from pursuing claims against the GK bankruptcy estate for post-petition rents or other post-petition obligations of the GK bankruptcy estate, but neither of them shall be obligated to pursue such claims.  Nothing herein shall diminish, alter or waive 1122 Partnership, G&L, or Lipscomb's claim for any rents due after the Petition Date from the GK Case or administrative claims in that proceeding, including without limitation, any sums any of them has advanced or may advance for real property taxes, insurance, utilities, or maintenance of the Property after the Petition Date. Upon the Effective Date, 1122 Wilshire Partnership shall be deemed dissolved but shall be permitted as part of its winding up to pursue claims for post-petition rent and other administrative claims in the GK bankruptcy case.

e.      All distributions to the Trustee shall be payable by check to "Jason M. Rund, Chapter 7 Trustee" and delivered to his counsel, Levene Neale Bender Yoo & Brill, LLP, 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.  Lipscomb intends to devote some or all of his share of the sale proceeds to an Internal Revenue Code section 1031 tax-deferred exchange and the parties hereto will cooperate with the same provided that such cooperation does not require them to expend any sums. All distributions to Lipscomb not involved in a 1031 tax deferred exchange shall be payable by check or wire to "Lurie, Zepeda, Schmalz, Hogan & Martin Client Trust Account" and delivered to his counsel at Lurie, Zepeda, Schmalz, Hogan & Martin, 1875 Century Park East, Ste. 2100, Los Angeles, CA  90067.

4.    <u>Dismissal of the Superior Court Action</u>. Within 10 days following the Effective Date and distribution of the sales proceeds as provided in Paragraph 3, above, the Parties shall dismiss the Superior Court Action, including the cross-claims, with prejudice.

5.    <u>Trustee as Representative of a Bankruptcy Estate</u>.  The Parties acknowledge that the Trustee is a trustee appointed to administer a bankruptcy estate.  The Parties acknowledge and agree that this Agreement is being made by the Trustee solely in his capacity as the chapter 7 trustee of the Debtor's estate, and not in a personal capacity, and no liability or obligations shall accrue to the Trustee personally.

6.    <u>Successors and Assigns</u>.  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns, including any successor trustees.

7.    <u>Severability</u>.  If any portion of this Agreement is found to be void, voidable or unenforceable at law, the remaining terms and conditions of this Agreement may be enforced.

8.    <u>Governing Law and Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles of the State of California.  The Bankruptcy Court shall retain exclusive jurisdiction to resolve any and all disputes pertaining to this Agreement, including without limitation the enforcement and interpretation of any of its terms, and the Parties agree to submit to the jurisdiction of the Bankruptcy Court for the purpose of resolving such disputes.

9.    <u>Further Assurances</u>.  Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

10.    <u>Modification</u>.  This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

11.    <u>Attorneys' Fees and Costs</u>.  Each Party shall bear his, her or its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.  If any of the Parties takes action in court to enforce or interpret this Agreement, the prevailing party therein shall be entitled to his or its reasonable attorney's fees paid or incurred in connection therewith.

12.    <u>Interpretation</u>.  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement.  Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

13.    <u>Authority to Sign</u>.  The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

14.   Counterparts.  Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

Dated:  April 2, 2021

_____
Jason M. Rund, Chapter 7 Trustee for the
estate of Thomas Vincent Girardi

Dated:  April 2, 2021

_____
Lee Lipscomb
An Individual and As Trustee of The Lipscomb
Family Trust

Dated:  April 2, 2021

_____
Walter Lack
An Individual

Dated:  April 2, 2021

G & L AVIATION


By _____
    Walter Lack
    Its General Partner

Dated:  April 2, 2021

1122 WILSHIRE BUILDING PARTNERSHIP


By _____
    Lee Lipscomb
    Its General Partner


G&L AVIATION


By:_____
    Walter Lack
    Its Partner

000027

14.  Counterparts.  Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

Dated:  April 2, 2021

_____
Jason M. Rund, Chapter 7 Trustee for the
estate of Thomas Vincent Girardi

Dated:  April 2, 2021

_____
Lee Lipscomb
An Individual and As Trustee of The Lipscomb
Family Trust

Dated:  April 2, 2021

_____
Walter Lack
An Individual

Dated:  April 2, 2021

G & L AVIATION

By _____
Walter Lack
Its General Partner

Dated:  April 2, 2021

1122 WILSHIRE BUILDING PARTNERSHIP

By _____
Lee Lipscomb
Its General Partner

G&L AVIATION

By:_____
Walter Lack
Its Partner

{00632840.DOCX
}

6

14.    Counterparts.    Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

Dated:  April 2, 2021

_____
Jason M. Rund, Chapter 7 Trustee for the estate of Thomas Vincent Girardi

Dated:  April 2, 2021

_____
Lee Lipscomb
An Individual and As Trustee of The Lipscomb Family Trust

Dated:  April 2, 2021

*Walter Lack*
_____
Walter Lack
An Individual

Dated:  April 2, 2021

G & L AVIATION

*Walter Lack*
By _____
Walter Lack
Its General Partner

Dated:  April 2, 2021

1122 WILSHIRE BUILDING PARTNERSHIP

By _____
Lee Lipscomb
Its General Partner

G&L AVIATION

*Walter Lack*
By:_____
Walter Lack
Its Partner

# Exhibit 2

000030

1  LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
   A Professional Corporation
2  ANDREW W. ZEPEDA, State Bar No. 106509
   azepeda@lurie-zepeda.com
3  PAYTON E. GAROFALO, State Bar No. 274135
   pgarofalo@lurie-zepeda.com
4  1875 Century Park East, Suite 2100
   Los Angeles, California 90067-2574
5  PH: (310) 274-8700  FAX: (310) 274-2798

6  Attorneys for Plaintiff and Cross-Defendant
   Lee Lipscomb

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10 LEE LIPSCOMB, an individual, and as Trustee       Case No.: BC547290
   of the Lipscomb Family Trust,
11                                                   (Assigned for all purposes to the Hon. Ernest
                   Plaintiffs,                       Hiroshige, Dept. 54)
12
           vs.                                                                    BY FAX
13
   THOMAS GIRARDI, an individual; G&L
14 AVIATION, a California general partnership;        PLAINTIFF AND CROSS-DEFENDANT
   1122 WILSHIRE PARTNERSHIP, a California            LEE LIPSCOMB'S PROPOSED
15 general partnership; 1126 WILSHIRE                 STATEMENT OF DECISION FOR TRIAL
   PARTNERSHIP, a California general                  OF EQUITABLE CLAIMS HELD ON
16 partnership; GIRARDI & KEESE, a California         MARCH 14 – 17, 21 -25, APRIL 22, 26-27
   general partnership; and DOES 1 through 50; and    AND MAY 2-3, 2016
17 all persons unknown claiming an interest in that
   certain real property commonly known as 1122
18 Wilshire Boulevard, Los Angeles, California and
   legally described in Exhibit A hereto,
19
20                 Defendants.                        Action Filed:   June 2, 2014
                                                      Trial Date:     March 9, 2016
21 ─────────────────────────────────

22 AND RELATED CROSS-ACTION.

23

24         Plaintiff and Cross-Defendant Lee Lipscomb submits his proposed Statement of Decision

25 pursuant to the Court's July 29, 2016 Interim Order as to the concluded trial of his equitable claims and

26 the equitable claims asserted by Defendants and Cross-Complainants Thomas Girardi ("**Girardi**"),

27 G&L Aviation ("**G&L**"), 1122 Wilshire Partnership ("**1122 Partnership**"), 1126 Wilshire Partnership

28 and Girardi & Keese ("**G&K**") (collectively "**Defendants**") in the first phase of this case.

{00306554.DOCX}

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

COURTESY COPY

FILED
Superior Court of California
County of Los Angeles
SEP 30 2016
Sherri R. Carter, Executive Officer/Clerk
By _____ Steve Temblador, Deputy

**STATEMENT OF DECISION**

Plaintiff filed his Complaint for partition, dissolution of partnership, accounting, etc. on June 2, 2014. Defendants cross-complained seeking damages for breach of fiduciary duty and contract, accounting, quiet title, etc. On December 18, 2015, the court granted summary adjudication in favor of Plaintiff on Defendants' quiet title claims and against Defendant G&K on its claims for damages and accounting. Trial of equitable claims began March 14 and ended May 3, 2016.

## I.    FACTS AND CONCLUSIONS OF LAW

The following facts and conclusions are undisputed or are supported by credible testimony[1]:

A.  <u>The Co-Owners First Agreed To Buy 1122 Wilshire, Later Agreed To Allow G&K To Construct TIs At Its Expense And to Rent The Entirety At Below Market NNN Rent.</u>

When Girardi brought the 1122 Wilshire property ("**1122 Wilshire**") and adjacent parking lot (the "**Parking Lot**") to his business partner Walter Lack's attention, he wished to expand his firm G&K's law offices at 1126 Wilshire into 1122 Wilshire. Lack was considering locating part of his law firm ("**ELL**") in the space. Lack and Girardi agreed that their 50-50 partnership, G&L, would buy a 75% interest and Girardi agreed, at Lack's suggestion, to allow Lack's law partner Lipscomb to buy a 25% interest. RT March 14, 2016 ("3/14") 31:24-33:15. Lipscomb agreed, but had no interest in locating ELL there. 3/16, 90:10-28, 61:13-17, 3/21 68:23-69:3; TE 27. The price was $1.1 million and a $1 million bank loan was procured. 3/14, 33:16-34:7. When applying for the loan, Lack reported an intent that ELL occupy with G&K but how much space was undetermined. TE 15. **There was no discussion before closing about tenant improvements ("TIs") or about a TI budget.** 3/14, 37:24-38:3; TE 156, p. 19. The down payment, mortgage, and other expenses were paid by G&L and Lipscomb proportionate to ownership interests. 3/14, 41:15-23; 3/16 92:18-93:6; 5/2, 17:19-18:5.

After the closing, Girardi told Lack that architect Kudrave estimated over $1 million to renovate. Per Lack, ELL "passed" because G&K was taking "the whole thing." 3/14, 41:24-43:10. That only G&K would occupy is evident from Kudrave's December 8, 1998 proposal to renovate consistent with "long term image and use by" G&K. TE 25, p.5. Defendants admitted RFA No. 9 that "LACK never agreed to pay any portion of the costs incurred in the renovation. . ." TE 155-B, pp.26-27, TE 155-C, pp.27-28.

Girardi's testimony contradicts Defendants' claim that the co-owners had agreed to fund the TIs but later reneged. Per Girardi, the first discussion of the costs of the TIs occurred **after** the December 30, 1998 closing, from which one can only infer that there was no prior understanding that the co-owners

---

[1] Girardi was impeached repeatedly from his own deposition testimony, repeatedly gave non-responsive answers, and manifested a cavalier attitude regarding truthfulness. G&K's controller Kamon was either not forthcoming or woefully ignorant. Besides his scanty credentials to opine on partnership accounting, Defendants' "expert" Fitzpatrick (developer/banker) was unfamiliar with the accounts and betrayed bias due to long friendship with Girardi. 4/26, 73:19-78:13.

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

{00306554.DOCX}                    1

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

1  would pay for the TIs. His language is revealing: he speaks of Lack and Lipscomb **choosing** not to pay

2  for the Tis - not that Lack and Lipscomb expressly **promised** to contribute to the TI costs:

3  "G&L had nothing to do with building the building. They chose not to." TE 156, pg. 11
   Q. "Mr. Girardi, did Mr. Lipscomb ever say to you I want to renovate this building

4  with you?
   A. **No.** Lack said he didn't want to do it. TE 156, p.17:

5  Q. Were there any numbers discussed about how much was going to be spent to improve
   the building in the initial discussion with Walter Lack?

6  A. No. It was just let's just go ahead and buy it and then we'll talk later to see how
   we develop it." TE 156, p. 19.

7  "This project that was going to be really our law firm." 4/27, 67:8-17. See TE 156 p 20- 21.

8  **In the absence of agreement by G&L and Lipscomb to contribute to the costs of the TIs, there can**

   **be no claim for breach.** Civ. Code § 1549. There being no agreement, Defendants never asked G&L

9  or Lipscomb to reimburse any TI costs. 3/14 44:21-45:5; 3/16 94:24-27; TE 156 p. 15.[2]

10  Shortly after G&K moved in[3], Lack proposed $9,000 rent for the 1122 Wilshire building and the

11  Parking Lot, which figure Girardi rounded to $10,000. TE 58, 3/14, 49:2-50:5; 3/15, 84:27-85:13. They

12  did not discuss the rent arrangement's duration. 3/14, 50:10-13. Girardi agreed that utilities be registered

13  to G&K. TE 55, 3/14, 46:17-27; 48:6-12. It was agreed G&K would pay taxes, utilities and insurance.

14  3/14, 50:14-23. Defendants admitted RFAs that, from and after 2000, G&K paid all taxes, utilities,

15  insurance, and maintenance like a NNN tenant (TE 155-A pp.11-19, 155-B pp.8-15, 155-C pp.10-18)

16  leaving the co-owners to pay only the mortgage and for tax preparation (3/14, 54:8-14).

17  The parties' conduct before any dispute is always evidence of their contractual intent. West v. J.P.

    Morgan Chase Bank, N.A., 214 Cal. App. 4th 780, 799 (2013). The books and records maintained by

18  Lack for the co-owners showed that G&K paid $10,000 in monthly rent and issued 1099s at year end to

19  1122 Partnership for all rents paid each year. TE 145; 3/15, 6:27-7:9, TE 80. The 1099s allowed G&K

20  to deduct its rent expenditures. G&K also depreciated the "Leasehold Improvements" from 1999 through

21  2015 on its federal and state tax returns. TE 12, 155-A pp.19-20, 155-B p.16, 155-C p.18. G&K's 1099s

22  for its rent and its depreciation of TIs preclude treatment of those expenditures as capital contributions.

    1122 Partnership's tax returns never included any of G&K's TI expenditures as capital contributions.

23  After the mortgage was paid off in June 2005, 1122 Partnership always distributed revenue at year end to

24  G&L (75%) and Lipscomb (25%). TE 103, 106, 107. For the 12 years of rent payments, the capital

25  accounts remained: 75% G&L and 25% Lipscomb. TE 136, 145.

26

27  [2] Consistent with G&K funding TIs itself, Lack and Lipscomb had no role in selecting the architect, contractor, or interior decorator, did not review plans, never saw estimates.

28  [3] G&K provided an office for Lack's use but admitted "he was never there" and it was apparent that office was to accommodate Lack in his capacity as business partner with Girardi. 4/27, 63:8-27. In any event, Lipscomb was not benefited by that office and any claim about it is between the G&L partners, Lack and Girardi, and not before this court.

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

{00306554.DOCX}                                    2

**B.**    Any Oral Partnership Terms Were Identical With The Agreement Between Co-Owners.

Defendants admitted RFAs that there was no written partnership agreement. TE 155-A pp.21-22, 155-B pp.28-29, 155-C pp.29-30. Lipscomb and Lack agreed. 3/14, 78:2-6; 3/15 20:9-12; 3/21, 50:22-24. So did Girardi until late in trial when he contended that TE 22, an unsigned partnership agreement, had been signed and sent to an unnamed bank. 4/27, 109:18-110:12. No signed partnership agreement was ever produced. His contradictory testimony cannot overcome his RFA response. C.C.P. § 2033.410. An unsigned draft agreement (TE 22), was located in the files but none of its terms were discussed. (3/14, 78:7-79:8. 3/15, 26:2-19; 3/17, 67:16-23, 3/21, 64:4-13; TE 156 pp. 1-5, 8-10; TE 155-B p. 28, TE 155-C p. 29. No meetings were held. 3/14, 80:11-16, TE 156 p. 6. Defendants admitted RFAs that Girardi and Lipscomb never spoke about 1122 Wilshire. TE 155-A pp.5-6, 155-B pp.5-6, 155-C pp. 6-7. Hence, Defendants had to prove Lack was authorized to bind Lipscomb. Lack disclaimed authority to do so.

In a conclusory manner, Lack admitted a partnership had been formed. 5/2, 102:9-15. A bank account was opened for "1122 Wilshire **Building** Partnership" and partnership tax returns were filed from 1999 through 2015. TE 145, 255. But, there being no discussion of the terms of that partnership, its terms could not be other than the understanding between the co-owners, to wit, that (a) G&L and Lipscomb would buy and hold title; (b) the co-owners would pay *pro rata* all expenses until G&K occupied; (c) G&K would pay for its own TIs, and (d) G&K would pay $10,000 rent on a NNN basis.

**C.**    G&K and G&L Were And Remain Separate And Distinct Entities From Girardi.

Girardi's claim to a capital account in 1122 Partnership fails because (1) all expenses he claims as capital contributions were paid by G&K, not himself; and (2) he was never a partner in 1122 Partnership.[4] To make G&K's expenditures his own, Girardi claims "**I am G&K**". To make himself a partner in 1122 Partnership, he claims to own 100% of G&L. **Both fail as a matter of law and fact**.

1. G&K And Girardi Are Not One And The Same.

Under the 1994 Uniform Partnership Act ("UPA"), "[a] **partnership is an entity distinct from its partners**." Corp. Code § 16201. Moreover, "[a] partner is not a coowner of partnership property and has no interest in partnership property . . . ." Corp. Code § 16501. One "may become a partner only with the consent of all of the partners." Corp. Code § 16401(i).

Girardi has admitted in his response to RFA No. 10 (which requested that he admit he paid for the TIs for which he now seeks credits) that he did not pay for the TIs because "**Girardi and G&K are**

---

[4] A statement signed by Girardi and Lack states that the only partners are G&L and Lipscomb. TE 141. Girardi was never a partner in 1122 Partnership since he admitted he was never Lipscomb's partner. TE 156, pp. 1, 2 and 5. The K-1's issued every year by 1122 Partnership to G&L and Lipscomb identified G&L and Lipscomb as the only partners with capital accounts. TE 145; 3/15, 3:19-4:4.

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

000034

1  separate and distinct entities." TE 155-A, p.31 (admitted without objection, 3/23 39:17-40:5). This is

2  a binding admission. C.C.P. § 2033.410. Defendants have consistently admitted in RFA responses that

3  all such TIs were paid by G&K. TE 155-A, pp.7-8, 155-B, p. 7, 155-C, p.8. Defendants admit in

4  paragraph 5 of their Cross-Complaint that G&K is a partnership, a judicial admission conclusively

   established against Defendants. Myers v. Trendwest Resorts, Inc., 178 Cal. App. 4th 735, 746 (2009).

5  G&K's tax returns identify G&K as a partnership and G&K's K-1s name only two general partners,

6  Girardi and Robert Keese, from 1998 through 2014. TE 234, p. 4; TE 235, p. 3; TE 236, p. 3, 7, 10, 12,

7  14, 16, 18, 20, 21, 24, 25, 28, 29. Girardi admitted at least three times that Keese owns 1% of G&K.

8  3/15, 86:8-10, 87:10-14; 3/16, 24:22-24, 4/27; 81:9-18.[5]

9      2.    G&L Is Not The Same As Girardi Because It Is Owned 50-50 By Lack And Girardi.

10     Defendants claim that Lack gave up his 50% interest in G&L in December 2013, leaving Girardi

11 owner of 100% of G&L. This contention contradicts paragraph 2 of the July 24, 2014 Cross-Complaint

12 which admits that "G&L **is** a general partnership whereby Thomas Girardi and Lack **are** each general

   partners with a fifty-percent (50%) interest." This judicial admission is conclusive. Myers, supra.

13     Defendants' counsel attempted to get Lack to admit that a handwritten agreement he flourished

14 in his hand, but would not show to Lack, included language whereby Lack abandoned his interest in

15 G&L. 3/15, 10:2-10, 16:17-18:17. On rebuttal, Lack authenticated the agreement as his own handwriting

16 memorializing an agreement reached in December 2013 providing for G&L's dissolution following

17 determination of the value of Lack's interest in 1122 Partnership. TE 178, pp. 3-4 ("**Not resolved in**

   **this writing or in the December 9, 2013 arbitration are WJL [Walter J. Lack] claims relating to**

18 **1122 Wilshire Blvd.**"). The unsigned agreement corroborates Lack's claim that he is still an equal

19 partner in G&L and maintains his indirect interest in 1122 Wilshire. 3/14, 27:22-25. Lack remains the

20 tax matters partner for G&L to this day. 5/2, 91:13-15. In contrast, Girardi's testimony was not credible.

21 Initially, he testified that Lack gave up his interest in G&L by a December 2013 writing. 3/16, 10:9-16.

22 When confronted with the December 2013 agreement, Girardi claimed not to recognize it and then, after

23 seeing its arbitration provision, claimed Lack had lost his interest in 1122 Wilshire by not timely filing

   for arbitration even though no deadline was specified. 4/27, 89:28-90:23, 91:22-27, 92:8-18; TE 178.

24

25

26 [5] Girardi admitted that his eight "non-equity" law partners were partners who shared in the income and decision-making of

27 G&K. 4/27, 87:7-88:8. The UPA provides "[a] person who receives a share of the profits of a business is presumed to be a
   partner in the business". Corp. Code § 16202(c)(3). Thus, these eight 'non-equity' partners meet the definition of partner.
   The distinction of "equity" versus "non-equity" partners may apply among those partners but, as to third party creditors, there

28 is no distinction between a "non-equity" partner and an "equity" partner. Corp. Code § 16308; Foote v. Posey, 164 Cal. App.
   2d 210, 216 (1958). Because G&K holds itself out as a partnership to the public, the courts, and the IRS, it is estopped from
   denying it is a partnership. Corp. Code § 16308(a) and (b).

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

000035

**D.**     <u>Under Either Partition Or Dissolution of 1122 Partnership, The Results Are The Same.</u>

    Plaintiff has an absolute right to partition as the owner of 25% tenancy in common interest. Defendants have admitted in RFA responses that the two titleholders, Lipscomb and G&L, **did not hold title on behalf of that partnership**. TE 155-A, pp.24, 32-33, 155-B, p.18, 155-C, pp.19-20. Because it does not hold title to 1122 Wilshire, 1122 Partnership would have a claim only to the proceeds of the sale by partition and then dissolution of 1122 Partnership with its concomitant accounting would follow. Moreover the court may apply the partition procedures to accomplish dissolution of partnership where the rights of creditors would not be prejudiced. C.C.P. § 872.730. Thus, even though the Court finds there was an oral partnership, partition remains an appropriate remedy given that no one contends or has shown that any creditors would be harmed. The accounting under either partition or dissolution would result in the same findings specified below.

**E.**     <u>The Evidence Requires The Partition Of 1122 Wilshire By Sale.</u>

    "It is well settled that in the absence of a waiver a joint tenant is entitled **as a matter of right** to have his interest severed from that of his cotenant." <u>Lazzarevich v. Lazzarevich</u>, 39 Cal.2d 48, 50 (1952)(emphasis added); <u>see also</u> C.C.P. § 872.710. The Court granted Lipscomb summary adjudication as to the Cross-Complaint's quiet title causes of action, holding that "the undisputed evidence reflects that Lipscomb owns a 25% undivided tenancy in common interest in the real property located at 1122 Wilshire Blvd." MSA Ruling, p. 9. In addition, all the deeds recorded after the purchase of 1122 Wilshire in 1998 state that Lipscomb or his revocable trust owns an undivided 25% interest. TE 27, 83, 108. There is no written agreement altering Lipscomb's undivided 25% interest. Absent a valid waiver, Lipscomb is entitled to partition **as a matter of right regardless of any financial loss to any cotenants**. <u>Am. Med. Int'l, Inc. v. Feller</u>, 59 Cal. App. 3d 1008, 1013 (1976)("[I]n no event is a partition to be denied because it will result in financial loss to the co-tenants.").[6]

    1.   <u>G&L Is Deadlocked And Cannot Oppose Partition.</u> Lack still holds a 50% partnership interest in G&L. <u>See</u> Section C.2 <u>supra</u>. Girardi admittedly lacked Lack's authorization to have G&L oppose partition. 3/16, 27:28-29:23. Lack did not oppose partition. 3/14, 81:1-11. G&L is deadlocked –50% unopposed and 50% opposed – and lacks standing to oppose partition. Corp. Code § 16301; <u>Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.</u>, 12 Cal. App. 4th 74, 93-97 (1993).

    2.   <u>The Statute Of Frauds Precludes Any Alteration Of Lipscomb's Ownership Interest.</u> By seeking to diminish Lipscomb's capital accounts in 1122 Partnership, Defendants seek to alter the

---

[6] A buyer at such sale would take 1122 Wilshire subject to any lease. Because G&K had no written lease for a term of years, it enjoys only a month to month tenancy subject to termination on 30 days' notice, Civ. Code §§1944, 1946. G&K was afforded the opportunity to negotiate a long term lease (presumably at market rents) and declined. TE 156, p.27.

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

{00306554.DOCX}      5

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

ownership interests in 1122 Wilshire indirectly.  However, any transfer of an interest in real property lasting longer than one year requires a writing to satisfy the Statute of Frauds. Civ. Code § 1624(a)(3); Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners, 52 Cal. App. 4th 867, 873-875 (1997). This remains true even where there is an alleged partnership with respect to the real property at issue.  Kaljian v. Menezes, 36 Cal. App. 4th 573, 586 (1995). There being no written partnership agreement, there is no writing permitting changes in the partners' ownership interests.

3.  Defendants Presented No Evidence That Lipscomb Waived Partition.  Defendants argued that Lipscomb waived partition because Girardi executed covenants in favor of the City allowing G&K to open doorways between 1122 and 1126.  Girardi signed and recorded these covenants without Lack's or Lipscomb's permission. 3/14, 84:7-27; 3/17, 68:24-27; 3/16, 31:16-26.  Moreover, the covenants permit openings based upon common tenancy of the two properties, not common ownership. TE 40, 74. See testimony of Kudrave and Defendants' expert, Harris. The covenants do not manifest a waiver. Waiver of partition is limited to situations where the property was bought to guarantee a stream of monthly income through **a written lease for a term of years**, and partition would be incompatible with that purpose. Pine v. Tiedt, 232 Cal. App. 2d 733, 738 (1965). When waiver is implied due to a written lease, the waiver is temporary and lasts only as long as the term of years. Id. at 738. Because there was no written lease for a term of years (leaving G&K with a month-to-month tenancy (Civ. Code §§ 1624(a)(3), 1945)) and the owners are receiving no income, Lipscomb did not waive partition.

4.  Defendants Presented No Evidence Of Laches.  Laches requires a showing of (1) unreasonable delay (2) causing substantial prejudice. Zakaessian v. Zakaessian, 70 Cal. App. 2d 721, 725-26 (1945)(16 year delay insufficient). Defendants have proved neither. In summer 2000, G&K began paying $10,000 per month NNN rent, thus providing Lipscomb with a return on his investment, albeit modest, and no reason to seek partition.  In summer 2012, G&K stopped paying rent. Lipscomb then took timely and reasonable steps to protect his interest.  In summer 2013, in the face of Girardi's friend Fitzpatrick's biased minimization of Lipscomb's interest (TE 110), he procured an appraisal of 1122 Wilshire as a basis for buyout of his 25% interest.  TE 112, 113.  He then attended an unsuccessful mediation in December 2013.  3/17, 63:26-64:19.  In spring 2014 – less than two years after G&K stopped paying rent, he sued. Lipscomb's conduct was not dilatory, let alone prejudicial.

5.  Partition By Sale Should Be Accomplished Through Appointment of a Referee.  If partition is to be granted, Defendants urge the court to divide 1122 Wilshire in kind, an absurd and illegal contention because 1122 Wilshire consists of one legal parcel which cannot be subdivided. The court should appoint a referee to conduct the sale as the referee recommends. C.C.P. §§ 873.010 et seq.

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

**F.    Defendants Are Not Entitled To Any Credits In The Accounting Following Sale.**

1.  In A Landlord –Tenant Relationship, Tenant's Improvements Cannot be Claimed in Partition Even If Tenant Was Also A Co-Owner.

>    "Where, in addition to being tenants in common, the relation of the parties to partition is, in fact that of landlord and tenant, no improvement of all or any part of the common property, made by the tenant in possession in the character of an ordinary tenant, can, in the absence of a covenant covering the construction and cost of such improvement, constitute the basis of an enforceable claim for contribution on partition."

Wallace v. Daley, 220 Cal. App. 3d 1028, 1039 (1990).   Tenant G&K lacked such a covenant.

2.  G&K's Rent Payments Of $10,000 Per Month Cannot Be Contributions.  It cannot be credibly claimed that G&K's monthly payments were anything other than rent.  G&K's 1099's for twelve years identified those payments as **rent**. TE 145.  1122 Partnership's tax returns identified the same payments as rental income. TE 145.  G&K's CPA identified the payments as rent.  TE 189.  The rental income was distributed to the co-owners, G&L and Lipscomb, as revenue and not the return of capital. TE 136, 145, 103,106, and 107.  Letters identify G&K as "tenant".  TE 58, 80, 103, 106, 107.  Lack's June 8, 2005 memo urges Girardi to buyout G&L and Lipscomb to "get us out of the landlord business" or agree upon a fair market rent.  TE 98, 3/14, 62:13-65:19.

3.  G&K's TIs Were Not Capital Contributions And Did Not Enhance Value.  Girardi contends he is entitled to a credit to his "capital account" in 1122 Partnership of $2.6 million for the TIs made by G&K in 1999 and 2000.  The schedule (TE 61) listing this $2.6 million includes $396,000 for furniture.  Per Kudrave (3/16, 72:25-73:5), G&K's controller (3/23, 37:19-38:8) and "expert" Fitzpatrick (4/26, 65:25-66:17), furniture is not a TI.  Thus, the TIs totaled $2.2 million ($2.6 million less $396,000).

G&K paid for the TIs as tenant and was never a partner in 1122 Partnership.  G&K depreciated the expenses as "Leasehold Improvements" on its 1999-2014 tax returns thus (a) asserting ownership of the TIs and (b) expensing the TI costs, a treatment inconsistent with investment. 3/22, 9:9-11:5, TE 12.  Further, the 1999-2015 tax returns for 1122 Partnership show that the TIs were never treated as capital contributions.  Per 1122 Partnership's tax returns, G&L and Lipscomb's capital accounts in 2012 were $571,536 and $189,052 respectively (TE 145, pp 175, 177), a 75%-25% ratio that has remained the same throughout. 3/14, 33:12-15, 85:2-9, TE 27, 83, 108, 145.  1122 Partnership never agreed that G&K's TIs would be treated as capital contributions. 3/14, 37:18-38:3.  Girardi conceded that "it would be up to . . . Eppich", the accountant for both G&K and 1122 Partnership, how to treat rents. 5/2, 18:6-19:28.

Defendants' expert Harris testified that the renovations were ordinary TIs. 3/24, 65:1-16, 67:5-17.  Kudrave stated the TIs were not structural and did not improve the shell of the building save for the steel framework to support a rooftop HVAC unit, the value of which was never identified. 3/16, 54:28-

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

000038

1    55:5, 62:4-26. No one testified that the TIs enhanced the current value of the property. In fact, the TIs

2    are dated. Broker expert Anthony opined that the TIs were "woefully obsolete in today's market…a big

3    shift away from the old-school crown moulding wood improvements…into open collaborative creative

4    space with slab floors…the long hall way in 1122…completely unusable . . .", that office sizes have

5    "shrunk", and the market has "gotten away from large perimeter offices all together." 3/22, 64:7-65:16.

      4. <u>The Two-Year Statute Of Limitations Bars Any Credit For TIs Made 14 Years Ago</u>. The two

6    year limitations governing oral contracts bars Defendants' recovery of expenses incurred before June 2,

7    2012. C.C.P. § 339(1); <u>Jefferson v. J.E. French Co.</u>, 54 Cal. 2d 717, 718-19 (1960)(accounting claim

8    could not avoid effect of limitations). The UPA provides "[a] right to an accounting upon a dissolution

9    and winding up does not revive a claim barred by law." Corp. Code § 16405(c). TE 61 dates the $2.2

10    million for TIs before December 6, 2000, <u>**over 14 years before the filing of this lawsuit**</u>, leaving the

11    claims hopelessly time-barred. Nor can there be any claim of delayed discovery of Lipscomb's claim to

12    title. The title documents (TE 27, 83, 108) specify Lipscomb's 25%, as to which Defendants are charged

13    with constructive knowledge. <u>In re Marriage of Cloney</u>, 91 Cal. App. 4th 431, 442 (2001). Lipscomb's

14    title was asserted in 2005-06 when Girardi promised to have 1122 Wilshire appraised to allow a buyout

     of Lipscomb's interest. TE 98, 101, 102, 103, 106, 107; 3/14, 67:23-68:1.

15      5. <u>Girardi's Claimed Contributions Would Be Entirely Offset By The Benefit To G&K Of 16</u>

16    <u>Years Of Occupancy Worth At Least $4.5 Million</u>. Girardi's claimed contributions for the TIs and rents

17    G&K paid must be offset by the fair rental value of 1122 Wilshire that the co-owners allowed G&K to

18    use for the past sixteen years. C.C.P. §872.140. Where "a cotenant who has been in possession . . . of

19    the premises seeks to obtain contribution respecting improvements made . . , the court . . . may charge

20    the claimant. . . with at least a part of the reasonable value of his occupancy. . ." <u>Hunter  v. Schultz</u>, 240

21    Cal. App. 2d 24, 31 (1966). The appraisers and broker agreed the fair rental value of 1122 Wilshire is

22    $1.75 per s.f. on a NNN basis. 3/17, 35:15-21; 3/22, 52:4-27, TE 134. Defendants' appraiser Voltz

23    contended that a 20% discount should be applied due to a "market expectation" in Los Angeles County

24    of four parking spaces per 1,000 square feet of office space. 3/17, 35:4-36:1, 47:6-48:15, 53:9-24. His

25    testimony on this "market expectation" is not credible as explained below (Section G.1). Removing

26    Voltz's 20% discount, the experts agreed the fair market rent for G&K's 16 year occupancy is $4.5

27    million. TE 134. If actual rents paid ($1.37 million) and G&K's $2.2 million TIs were credited to

     Girardi, they would be offset by the $4.5 million benefit of 16 year's occupancy.

**G.**     <u>Credits in Favor Of Lipscomb In The Accounting Following Sale By Partition.</u>

28      1. <u>Lipscomb Is Entitled To 25% Of The Unpaid Fair Rental Value Since July 2012</u>. When G&K

     repudiated its rent obligations after July 2012, the co-owners and 1122 Partnership were entitled to the

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

000039

fair rental value of G&K's occupancy to be assessed against Girardi as partner of co-owner-partner G&L. Enea v. Superior Court, 132 Cal.App.4th 1559, 1563 (2005). All experts agreed that the current fair rental rate is $1.75 per square foot NNN. Defendants' expert Voltz discounted that rate by $.35 per square foot due to his opinion that 1122 Wilshire suffered from inadequate parking due to a "market expectation" of four parking spaces per 1,000 square feet ("s.f."). Therefore, the 15,346 rentable s.f. "needed" 61 parking spaces but with only 11 spaces on site, according to Voltz, 1122 Wilshire was 50 spaces short. 3/17, 37:11-20. The 35¢ per square foot discount amounts to a 20% discount from $1.75 per s.f.[7] Voltz was never able to confirm his "market expectation" with downtown LA brokers. 3/17, 38:11-39:11. His opinion was based only on his "general overall experience" since he had made no market study regarding parking in the vicinity. 3/17, 39:12-18.

Voltz agreed that from June 2000 through early June 2005, 1122 Wilshire had available to it 39 parking spaces which was in excess of two spaces per 1000 s.f. He admitted that from June 2005 to June 2015, between 11 spaces onsite and the 20 space license, 1122 Wilshire had at least 31 parking spaces - over two spaces per 1000 s.f. 3/17, 41:27-45:10. Voltz relied on county-wide data, including data from Valencia, Antelope Valley, and the San Fernando Valley in determining "market expectations" for parking in downtown Los Angeles. 3/17, 56:20-59:20. Voltz provided historic rents for 1122 Wilshire from 2000 to present, all subject to a 20% discount for "inadequate" parking. TE 312

Lipscomb's appraiser Abergel disputed Voltz's 20% discount for 'inadequate parking' and testified that from 2000 to 2015, 1122 Wilshire was blessed with adequate parking. 3/21 105:7-106:5; 107:2-108:2. He adjusted out Voltz' 20% discount as set forth in TE 134 (3/21, 110:27-112:26). Abergel demonstrated that most of Voltz's "comparables" involved properties with parking ratios between 1 and 2 spaces per 1000 s.f. and only one provided 4 spaces per 1000 s.f. (3/21, 109:20-28).

Lipscomb's broker Anthony criticized Voltz' reliance on county-wide data as "irresponsible." 3/22, 65:17-66:3. He scheduled historic rents based on a survey of 16 comparable local properties, seven of which he was personally familiar. TE 133, p. 3; 3/22, 53:2-54:7; 54:18-55:2; 55:11-56:4; 72:10-73:4; 73:28-74:6; 74:26-75:26. His historical rent data yield **a total unpaid fair rental value of $1,204,661** from August 1, 2012 through June 30, 2016. Lipscomb's 5/26/16 Closing Brief, TE 133, p.3. **Lipscomb's 25% share of that sum is $301,165.25 with a per diem thereafter of $220.73.**[8]

2. Lipscomb Is Entitled To 25% Of The Value Of The Parking License. The ten-year 20 space

---

[7] Initially, Voltz held that four spaces per 1000 s.f. was legally required but he later agreed that new construction required two spaces per 1000 s.f. 3/17, 37:21-38:10; 46:14-25.

[8] Abergel's re-computation of Voltz's historical rent data since 2012, corroborates Anthony's valuation of the uncompensated occupancy of 1122 Wilshire from August 2012 through June 2016 with a total unpaid fair rental value of $1,189,690 yielding $297,422.50 for Lipscomb's 25%. TE 134.

{00306554.DOCX}    9

**PLAINTIFF LEE LIPSCOMB'S PROPOSED STATEMENT OF DECISION**

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

000040

parking license ("**Parking License**") which was part of the purchase price for the Parking Lot benefited only G&K. 4/27, 94:7-13. Voltz valued the Parking License at $264,000 by valuing each space at $100 per month for the first 5 years and $120 per month for the next 5 years. 3/17, 50:3-15. But, in fact, in lieu of the 20 spaces provided in the License, the Parking Lot buyer afforded G&K the entire Parking Lot consisting of **28 spaces**. TE 151. Recalculating the value of those 28 spaces with Voltz's per space values results in a value for the Parking License of $369,600 made up of $168,000 for years 1-5 and $201,600 for years 6-10. **Lipscomb's 25% interest is worth $92,400.** G&K used all spaces available since, after the license expired, G&K leased all 28 spaces. TE 148, pp. 9, 11-12, 18.

3.  75% Of Lipscomb's Attorneys' Fees Must Be Allocated To G&L's Interest. "[T]he court shall apportion the costs of partition among the parties in proportion to their interests or make such other apportionment as may be equitable." C.C.P. §874.040. "[C]osts of partition . . . include . . . attorney's fees, necessarily incurred by a party for the common benefit in prosecuting or defending other actions . . . for the protection, confirmation, or perfection of title...." C.C.P. § 874.020. Whether the legal services provided a common benefit and their reasonable value is to be decided at litigation's end. Williams v. Wells Fargo Bank, 56 Cal. App. 2d 645, 652 (1943); C.C.P. § 1033.5(c)(5).

## II.    DISPOSITION

The Court orders that 1122 Wilshire be partitioned by sale conducted by a referee appointed by the court after nominations submitted by the parties within 45 days (which should afford the parties time for a voluntary settlement conference) and that the proceeds be split 75% to G&L and 25% to Lipscomb, and Lipscomb afforded the following credits against G&L's interest:

(1) $301,165.25 for fair rental value of 1122 Wilshire from August 1, 2012 through June 30, 2016 and a per diem of $220.73 thereafter until the sale of 1122 Wilshire;

(2) $92,400 for Lipscomb's share of the value of the ten-year parking license; and

(3) 75% of Lipscomb's attorney's fees and interest thereon as determined by post-trial motion.

1122 Partnership is ordered dissolved and its liquidation accomplished by the same partition sale and Lipscomb shall be afforded the same credits. C.C.P. § 872.730. The declaratory relief claims have either been disposed of by the MSA, are duplicative of other claims, or have been withdrawn.

Dated: *9-30*, 2016

By _____
Honorable Ernest Hiroshige, Judge of the Superior Court

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

1

## PROOF OF SERVICE

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        I am employed in the County of Los Angeles, State of California.  I am over the age of
4    eighteen (18) years and not a party to the within action.  My business address is 1875 Century Park
East, Suite 2100, Los Angeles, California 90067-2574.

5        On the date below, I served ☐ the original ☒ a true copy of the within document(s), described
6    as **PLAINTIFF AND CROSS-DEFENDANT LEE LIPSCOMB'S PROPOSED STATEMENT
OF DECISION FOR TRIAL OF EQUITABLE CLAIMS HELD ON MARCH 14 – 17, 21 -25,
7    APRIL 22, 26-27 AND MAY 2-3, 2016** on all interested parties in this action.

8    ☐    **(BY MAIL)** by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.
9    I am readily familiar with the firm's practice of collection and processing correspondence for
mailing.  Under that practice it would be deposited with the U.S. postal service on that same day
10    with postage thereon fully prepaid at 1875 Century Park East, Suite 2100, Los Angeles,
California in the ordinary course of business.  I am aware on motion of the party served, service
11    is presumed invalid if postal cancellation date or postage meter date is more than one day after
date of deposit for mailing in affidavit.

12
| | |
|---|---|
| Marina Pacheco, Esq.<br>Robert W. Finnerty, Esq.<br>Girardi & Keese<br>1126 Wilshire Boulevard<br>Los Angeles, California  90017-1904 | *Attorneys for Defendants and Cross-Complainants Thomas Girardi, G&L Aviation, 1122 Wilshire Partnership, 1126 Wilshire Partnership; and Girardi & Keese<br>PH:  (213) 977-0211 / Fax (213) 481-1554<br>E-Mail:  mpacheco@girardikeese.com<br>rfinnerty@girardikeese.com* |

13

14

15

16

17    ☐    **(BY FEDEX)** I enclosed the documents in an envelope or package provided by FedEx and
addressed to the person[s] on the attached service list.  I placed the envelope or package for
18    collection and overnight delivery at an office or a regularly utilized drop box of the overnight
delivery carrier.

19    ☐    **(BY FACSIMILE)** I sent such document from facsimile machine on the above date, to the
20    facsimile number to the attention of the individual set forth below. I certify that said transmission
was completed and that all pages were received and that a report was generated by the facsimile
21    machine which confirms said transmission and receipt.

22    ☒    **(VIA ELECTRONIC MAIL)** by transmitting via electronic mail a true copy of the above
listed document(s) to the email addresses set forth above on this date before 12:00 p.m.
23    *mpacheco@girardikeese.com,  rfinnerty@girardikeese.com*

24    ☒    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

25        Executed on **August 19, 2016**, at Los Angeles, California.

26

27    Mary Ann Markwell

28    (Type or Print Name)                    Signature

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

{00306554.DOCX}

000042

# Exhibit 3

000043

COPY

1    LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
     A Professional Corporation
2    ANDREW W. ZEPEDA, State Bar No. 106509
     azepeda@lurie-zepeda.com
3    PAYTON E. GAROFALO, State Bar No. 274135
     pgarofalo@lurie-zepeda.com
4    1875 Century Park East, Suite 2100
     Los Angeles, California 90067-2574
5    PH: (310) 274-8700   FAX: (310) 274-2798

6    Attorneys for Plaintiff Lee Lipscomb

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JAN 09 2017

Sherri R. Carter, Executive Officer/Clerk
By Steve Temblador, Deputy

7

         SUPERIOR COURT OF THE STATE OF CALIFORNIA

8      FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

9

| | |
|---|---|
| 10   LEE LIPSCOMB, an individual, and as Trustee of the Lipscomb Family Trust, | Case No.: BC547290 (Assigned for all purposes to the Hon. Ernest Hiroshige, Dept. 54) |
| 11            Plaintiffs, | |
| 12        vs. | |
| 13   THOMAS GIRARDI, an individual; G&L AVIATION, a California general partnership; 1122 WILSHIRE PARTNERSHIP, a California general partnership; 1126 WILSHIRE PARTNERSHIP, a California general partnership; GIRARDI & KEESE, a California general partnership; and DOES 1 through 50; and all persons unknown claiming an interest in that certain real property commonly known as 1122 Wilshire Boulevard, Los Angeles, California and legally described in Exhibit A hereto, | [PROPOSED] INTERLOCUTORY JUDGMENT RE PARTITION AND ACCOUNTING |
| 20            Defendants. | |
| 21   AND RELATED CROSS-ACTION. | Action Filed:   June 2, 2014 Trial Date:    March 9, 2016 |

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

23        The Court having entered its Statement of Decision regarding the trial of the equitable claims

24 including partition and having granting partial summary adjudication of issues in favor of Plaintiff

25 Lee Lipscomb with respect to Defendants and Cross-Complainants Thomas Girardi, G&L Aviation,

26 1122 Wilshire Partnership, 1126 Wilshire Partnership, and Girardi & Keese's ("**Defendants**") Cross-

27 Complaint by order dated December 18, 2015,

28

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

1.     Pursuant to Code of Civil Procedure § 872.720(a), Plaintiff Lee Lipscomb, as an individual and as Trustee of the Lipscomb Family Trust, (collectively "**Plaintiff**") owns a twenty five percent (25%) undivided tenancy in common interest and Defendant G&L Aviation, a California general partnership, ("**G&L**") owns a seventy five percent (75%) undivided tenancy in common interest in the real property commonly known as 1122 Wilshire Boulevard, Los Angeles, California, 90017, APN 5143-22-4 (the "**Property**") and legally described as follows:

> Lot 47 of the subdivision of that part of lot 1 in block 37 of Hancock's survey, lying South of Orange Street and Westerly from Bixel (formerly Williams Street), in the City of Los Angeles, in the County of Los Angeles, State of California, as per map recorded in book 9, page 95 of miscellaneous records, in the office of the County Recorder of said County.

2.     Plaintiff is entitled to partition by sale of the Property and an accounting. Plaintiff's prayer for dissolution of 1122 Wilshire Partnership is granted and the 1122 Wilshire Partnership shall be dissolved and its liquidation accomplished pursuant to the provisions of the Code of Civil Procedure governing the partition of real property, i.e., Code of Civil Procedure §§ 872.010 *et seq.*,  The Property shall be sold by a referee to be appointed by the court as specified below and the proceeds of the sale of the Property, net of the costs of sale and the referee's fees, shall be distributed twenty five percent (25%) to Plaintiff and seventy five percent (75%) to G&L after deduction of the following sums charged against G&L's interest in the Property in favor of Plaintiff:

    a.     $301,165.25 for the fair rental value of the Property from August 1, 2012 through June 30, 2016 and a per diem of $220.73 for the fair rental value of the Property thereafter until the sale of the Property;

    b.     $92,400 for Plaintiff's share of the value of the ten-year parking license; and

    c.     75% of Plaintiff's reasonable attorneys' fees and other costs of partition and interest thereon as determined by post-trial motion;

    d.     Interest on all sums above from and after the date of entry of this judgment at

LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

1       the legal rate, to wit, ten percent (10%) per annum.

2   Plaintiff shall have a lien on G&L's interest in the Property in the amount of such credits and interest

3   accruing thereon.  Upon receipt of the Parties' nominations following the entry of this judgment, the

4   Court will appoint a referee to supervise and administer the sale of the Property and prepare an

5   accounting and Final Report for approval by the Court.

6       3.      Defendants shall take nothing by way of the equitable claims asserted in their Cross-

7   Complaint including all claims asserted in their Fourth Cause of Action for Declaratory Relief, Fifth

8   Cause of Action for Quiet Title, Sixth Cause of Action to Remove Cloud, and Seventh Cause of

9   Action for an Accounting.

10      JAN 0 3 2017

11  Dated: _____, 2016

12                                      By:  Ernest M. Hiroshige

13                                      Ernest Hiroshige, Judge of the Superior Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="writing-mode: vertical">LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574</div>

{00319514.DOCX}                                                                 000046

**[PROPOSED] INTERLOCUTORY JUDGMENT RE PARTITION AND ACCOUNTING**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action. My business address is 1875 Century Park East, Suite 2100, Los Angeles, California 90067-2574.

     On the date below, I served ☐ the original ☒ a true copy of the within document(s), described as **[PROPOSED] INTERLOCUTORY JUDGMENT RE PARTITION AND ACCOUNTING** on all interested parties in this action.

☒  **(BY MAIL)** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at 1875 Century Park East, Suite 2100, Los Angeles, California in the ordinary course of business. I am aware on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Marina Pacheco, Esq.<br>Robert W. Finnerty, Esq.<br>Girardi & Keese<br>1126 Wilshire Boulevard<br>Los Angeles, California 90017-1904 | *Attorneys for Defendants and Cross-Complainants Thomas Girardi, G&L Aviation, 1122 Wilshire Partnership, 1126 Wilshire Partnership; and Girardi & Keese*<br>*PH: (213) 977-0211 / Fax (213) 481-1554*<br>*E-Mail:  mpacheco@girardikeese.com*<br>*rfinnerty@girardikeese.com* |

☐  **(BY FEDEX)** I enclosed the documents in an envelope or package provided by FedEx and addressed to the person[s] on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐  **(BY FACSIMILE)** I sent such document from facsimile machine on the above date, to the facsimile number to the attention of the individual set forth below. I certify that said transmission was completed and that all pages were received and that a report was generated by the facsimile machine which confirms said transmission and receipt.

☐  **(VIA ELECTRONIC MAIL)** by transmitting via electronic mail a true copy of the above listed  document(s) to the email addresses set forth below on this date before 5:00 p.m.

☒  **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐  **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

     Executed on October 31, 2016, Los Angeles, California.

Ayesha Rector

_____
(Type or Print Name)

_____
Signature

*LURIE, ZEPEDA, SCHMALZ, HOGAN & MARTIN*
1875 Century Park East, Suite 2100
Los Angeles, California 90067-2574

{00319514.DOCX}

000047

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **MOTION TO APPROVE COMPROMISE WITH G&L AVIATION, LEE LIPSCOMB, 1122 WILSHIRE BUILDING PARTNERSHIP AND WALTER LACK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_April 5, 2021_**, I checked the CM/ECF docket for this bankruptcy case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE ATTACHED NEF SERVICE LIST.

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **_April 5, 2021_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
USBC – Central District of CA
255 E. Temple St
Suite 1660 / Ctrm 1668
Los Angeles, CA 90012

Debtor
Thomas Vincent Girardi
1126 Wilshire Boulevard
Los Angeles, CA 90017

Debtor
Thomas Vincent Girardi
100 Los Altos Drive
Pasadena, CA 91105.

Robert Girardi
3662 Aquarius Drive
Huntington Beach, CA  92649

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 5, 2021   Megan Wertz | /s/ Megan Wertz |
|---|---|
| *Date Printed*          *Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Rafey Balabanian    , docket@edelson.com
- Ori S Blumenfeld    Ori@MarguliesFaithLaw.com,
  Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- Sandor Theodore Boxer    tedb@tedboxer.com
- Richard D Buckley    richard.buckley@arentfox.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-
  christiansen-4166@ecf.pacerpro.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Ashleigh A Danker    Ashleigh.danker@dinsmore.com,
  SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
- Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-
  7586@ecf.pacerpro.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Richard W Esterkin    richard.esterkin@morganlewis.com
- Timothy W Evanston    tevanston@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Jeremy Faith    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- James J Finsten    , jimfinsten@hotmail.com
- James J Finsten    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-
  lawyers.net,addy.flores@flpllp.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- M. Jonathan Hayes    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfir
  m.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rh
  mfirm.com
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Lewis R Landau    Lew@Landaunet.com
- Craig G Margulies    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Peter J Mastan    peter.mastan@dinsmore.com,
  SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R. Matthai    ematthai@romalaw.com, lrobie@romalaw.com
- Elissa Miller    emiller@sulmeyerlaw.com,
  emillersk@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- Scott H Olson    solson@vedderprice.com, scott-olson-
  2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Carmela Pagay    ctp@lnbyb.com
- Ambrish B Patel    apatelEI@americaninfosource.com
- Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**

- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- Matthew D. Resnik    matt@rhmfirm.com, roksana@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- Kevin C Ronk    Kevin@portilloronk.com, Attorneys@portilloronk.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- Gary A Starre    gastarre@gmail.com, mmoonniiee@gmail.com
- Richard P Steelman    rps@lnbyb.com, john@lnbyb.com
- Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**