1   TIMOTHY J. YOO (State Bar No. 155531)
    tjy@lnbyb.com
2   CARMELA T. PAGAY (State Bar No. 195603)
    ctp@lnbyb.com
3   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
    10250 Constellation Boulevard, Ste. 1700
4   Los Angeles, California 90067
    Telephone: (310) 229-1234
5   Facsimile: (310) 229-1244

6
    Attorneys for Jason M. Rund
7   Chapter 7 Trustee

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                       LOS ANGELES DIVISION

11

12  In re                              Case No. 2:20-bk-21020-BR

13  THOMAS VINCENT GIRARDI,            Chapter 7

14                   Debtor.           **CHAPTER 7 TRUSTEE'S MOTION TO
                                       APPROVE COMPROMISE UNDER FRBP
15                                     9019 WITH CALIFORNIA ATTORNEY
                                       LENDING II, INC.; MEMORANDUM OF
16                                     POINTS AND AUTHORITIES AND
                                       DECLARATIONS IN SUPPORT
17                                     THEREOF**

18                                     [No Hearing Required]

19

20  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

21  **JUDGE:**

22          Jason M. Rund, the Chapter 7 Trustee (the "Trustee") for the estate of Thomas Vincent

23  Girardi, debtor herein ("Debtor"), hereby moves this Court for an order pursuant to Rule 9019

24  of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013-1(o), approving

25  the Settlement Agreement (the "Agreement") by and between the Trustee, on the one hand, and

26  California Attorney Lending II, Inc., a New York corporation ("CAL II"), on the other hand,

27  concerning the allowance of CAL II's claim in this case and the sale of certain assets of the

28  estate that are subject to CAL II's senior lien ("CAL II's Lien").

                                       1

The Agreement provides, in pertinent part, as follows:

1.    CAL II shall be allowed a claim ("CAL II's Claim") in the amount of $6,499,761.78 as of the date of commencement of the bankruptcy case (the "Petition Date"), with a perfected lien in all of the Debtor's personal property that existed on the Petition Date with the exception of cash and bank accounts ("CAL II's Collateral").  Further, CAL II shall reserve its right to seek post-petition interest under 11 U.S.C. § 506(b).

2.    CAL II consents to the Trustee's sale and disposition of CAL II's Collateral free and clear of CAL II's Lien.

3.    For each CAL II's Collateral that is administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to CAL II's Lien, if any, allowed claim of exemption, taxes arising from the sale, and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the reasonable, necessary administrative fees and costs of the bankruptcy estate assembling, acquiring and disposing of said collateral; (c) 80% of the balance to CAL II to be applied towards CAL II's Claim; and (d) the remainder (*i.e.*, 20%) of the balance to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  Once CAL II is paid in full from this Case and the Girardi Keese bankruptcy case, the sale proceeds shall be distributed in accordance with the Settlement Agreement previously approved by the Bankruptcy Court between the Trustee and the Ruigomez Creditors [Doc 173].

4.    The Trustee releases and waives all claims against CAL II including, without limitation, claims related to Section 510 of the Code arising out of the Case, and CAL II releases and waives all claims against the Trustee and the Debtor's bankruptcy estate arising out of the Case.

This Motion is made pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure on the grounds that the Trustee, in the exercise of his business judgment, has determined that the Agreement is in the best interests of the estate.  The Agreement allows the Trustee to sell overencumbered assets and retain a portion of net proceeds from such sales for the benefit of the estate.  Accordingly, the Trustee submits that the compromise is fair and reasonable and should, therefore, be approved by the Court.

1         In support of this Motion, the Trustee will rely on these moving papers, the

2    Memorandum of Points and Authorities and Declarations of Jason M. Rund and Paul Cody

3    attached hereto, the pleadings and orders on file in this bankruptcy case, and such other and

4    further evidence and argument as may be made.

5         Accordingly, the Trustee respectfully requests that the Court enter an order:

6    1.    Granting the Motion;

7    2.    Approving the Agreement;

8    3.    Authorizing and directing the Trustee and CAL II to take any other steps

9    necessary to effectuate the Agreement;

10    4.    Authorizing the Trustee to make interim distributions to CAL II as described in

11    the Agreement; and

12    5.    Providing such other and further relief as is just and proper.

13    DATED: May 19, 2021                    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

14                    By: */s/ Timothy J. Yoo*
                          TIMOTHY J. YOO
15                        CARMELA T. PAGAY
                          Attorneys for Jason M. Rund
16                        Chapter 7 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

3

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.**

## **STATEMENT OF FACTS**

An Involuntary Petition was filed against Thomas Vincent Girardi, debtor herein ("Debtor"), on December 18, 2020 (the "Petition Date"), by petitioning creditors Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio and Kimberly Archie (the "Petitioning Creditors"). On the same date, the Petitioning Creditors also filed a Chapter 7 Involuntary Petition against the Debtor's law firm, Girardi Keese ("GK"), commencing Case No. 2:20-bk-21022-BR (the "Girardi Keese Case").

On December 24, 2020, the Petitioning Creditors filed an emergency motion for appointment of an interim trustee [Doc 13], which was granted by this Court on January 5, 2021 [Doc 39]. On January 6, 2021, the United States Trustee appointed Jason M. Rund ("Trustee") as the interim Chapter 7 Trustee for this bankruptcy case.

On January 13, 2021, the Order for Relief was entered [Doc 64], and the Trustee was reappointed.

In or around July 5, 2011, GK and CAL II entered into a loan transaction (as amended, the "Loan") pursuant to which GK borrowed the principal amount of $3,500,000.00 to fund its operations. The Loan was secured against, among other things, GK's rights to payment for its representation of clients in various contingency fee cases. CAL II perfected its security interest by filing a UCC Financing Statement with the California Secretary of State on July 6, 2011 as Inst. No. 11-7275806299 (the "UCC Financing Statement"). A true and correct copy of the UCC Financing Statement is attached as Exhibit 1.

Between 2011 and 2019, CAL II and GK entered into several iterations of the credit arrangement in which GK increased the principal amount of the debt up to $8,000,000.00. CAL II filed several continuations and amendments to the UCC Financing Statement to maintain its perfected security interests in GK's assets. The Debtor guaranteed the Loan by executing that certain Guaranty of Payment and Performance dated August 12, 2011 and subsequent guaranties in connection with each amendment to the Loan.

4

1    On July 11, 2017, the Debtor executed that certain Third Amended and Restated

2    Security Agreement, granting a security interest in substantially all of the Debtor's personal

3    property (the "Collateral").  In its attempt to perfect its security interest in the Collateral, CAL II

4    filed a UCC Amendment with the California Secretary of State on July 19, 2017 as Inst. No.

5    1775969950, which added the Debtor to the UCC Financing Statement (the "TVG Financing

6    Statement").  True and correct copies of the Third Amended and Restated Security Agreement

7    and the TVG Financing Statement are attached as <u>Exhibits 2 and 3</u>, respectively.

8    As part of the consideration given to CAL II, GK and the Debtor executed and delivered

9    to CAL II certain Confessions of Judgment dated November 12, 2019, and agreed to entry of

10   judgment without trial if, after GK's default under the Loan and notice thereof, GK or the

11   Debtor did not cure the default.

12    After default, on October 27, 2020, CAL II obtained judgment against GK and the

13   Debtor in the sum of $6,250,589.59 plus post-judgment interest and reasonable attorneys' fees

14   and costs incurred in collecting the judgment from the Los Angeles Superior Court, in LASC

15   Case No. 20STCP03546 (the "Judgment").  CAL II filed a Notice of Judgment Lien with the

16   California Secretary of State on November 2, 2020 as Inst. No. U200033578428. CAL II also

17   recorded Abstracts of Judgment, including Document No. 20201435462 on November 12, 2020

18   with the Los Angeles County Recorder's Office (the "Los Angeles Abstract"), and executed a

19   levy on Morgan Stanley on November 24, 2020.  The levied funds at the time of the execution

20   totaled approximately $118,000 (the "Levied Funds").  True and correct copies of the Judgment,

21   Los Angeles Abstract are attached as <u>Exhibit 4 and 5</u>, respectively.

22    CAL II asserts that, as of the Petition Date, the total sum of $6,668,484.21 was due and

23   owing under the Judgment, comprised of (1) the Judgment balance of $6,250,589.59, (2) interest

24   at the 10% California judgment interest rate of $89,049.50, (3) a deferred closing fee of

25   $62,574.40, and (4) legal fees of $266,270.75 ("CAL II's Claim").  Of the $266,270.75 in legal

26   fees, the amount of $168,722.46 is attributable to GK and the amount of $97,548.29 is

27   attributable to the Debtor ("Debtor Legal Fees").

28

1    The Trustee contends that, because the TVG Financing Statement fails to describe any

2    collateral, CAL II does not have a perfected security interest in the Collateral. The Trustee also

3    contends that the Levied Funds should be returned to the bankruptcy estate as an avoidable

4    preferential transfer under section 547 of the Code.  CAL II strenuously disputes these

5    contentions.  Rather than litigate the foregoing issues, the Parties agree that Trustee's

6    administration of assets of the bankruptcy estate on the terms set forth herein is in the best

7    interest of CAL II and the bankruptcy estate.

8    Following numerous discussions, the Trustee and CAL II entered into a Settlement

9    Agreement (the "Agreement") concerning the Trustee's administration of the Debtor's assets.

10    The Agreement provides, in pertinent part, as follows: [1]

11    1.    CAL II's Claim shall be allowed in the amount of $6,402,213.49 plus the Debtor

12    Legal Fees[2] as of the Petition Date, with a perfected interest in all of the Debtor's personal

13    property that existed on the Petition Date with the exception of cash and bank accounts ("CAL

14    II's Collateral"). Further, CAL II shall reserve its right to seek post-petition interest under

15    section 506(b) of the Code.

16    2.    CAL II shall be allowed to retain the Levied Funds.  If CAL II has not received

17    the Levied Funds, the Trustee shall instruct Morgan Stanley to release the Levied Funds to CAL

18    II within 14 calendar days after the Effective Date.

19    3.    Within 14 calendar days after the Effective Date, CAL II shall provide the

20    Trustee with a release of the Los Angeles Abstract in recordable form.  Further, if there are

21    other Abstracts of Judgment recorded with 90 days of the Petition Date, CAL II shall provide

22    releases of those Abstracts in recordable form at the request of the Trustee.

23

24    _____

25    [1] The Trustee understands that the trustee in the Girardi Keese Case has negotiated a separate
26    agreement with CAL II and will specifically state in the Order that the Girardi Keese estate preserves all
of her estate's rights.

27    [2] It is anticipated that CAL II's Claim will be paid in full from this Case and the Girardi Keese
28    Case.  Notwithstanding anything to the contrary, it is understood that the Debtor Legal Fees is a separate
obligation of the Debtor's bankruptcy estate and must be paid to CAL II irrespective of the sum paid to
CAL II from the Girardi Keese Case.

6

4.      CAL II consents to the Trustee's sale and disposition of CAL II's Collateral pursuant to section 363 of the Code free and clear of CAL II's Liens.

5.      For each CAL II's Collateral that is administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to CAL II's Lien, if any, allowed claim of exemption, taxes arising from the sale, and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the reasonable, necessary administrative fees and costs of the bankruptcy estate assembling, acquiring and disposing of said collateral; (c) 80% of the balance to CAL II to be applied towards CAL II's Claim; and (d) the remainder (*i.e.*, 20%) of the balance to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  Once CAL II is paid in full from this Case and the Girardi Keese Case, the sale proceeds shall be distributed in accordance with the Settlement Agreement previously approved by the Bankruptcy Court between the Trustee and the Ruigomez Creditors [Doc 173].

6.      The distributions to CAL II under the Agreement shall take place no less than 120 calendar days apart, and for each distribution, the Trustee shall estimate the administrative fees and costs in good faith to determine the amount to be withheld by the bankruptcy estate.

7.      CAL II shall continue its best efforts to prosecute its claims in the Girardi Keese Case, and shall not withdraw or reduce their claims in that case without the written consent of the Trustee.

A true and correct copy of the Agreement is attached to the Declaration of Jason M. Rund as Exhibit 6 and is incorporated herein by this reference.

## II.

## THE COMPROMISE SHOULD BE APPROVED

### A.      The Bankruptcy Rules Allow The Court To Approve Compromises Of Controversies.

Rule 9019 states that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The "may" language of Rule 9019 indicates that the approval or disapproval of a proposed settlement lies within the sound discretion of the Court.  For the reasons set forth below, the Court should approve the proposed Agreement.

**B.**    **Case Law Supports Approval Of The Proposed Settlement.**

It is well-established that, as a matter of public policy, settlements are favored over continued litigation.  See, e.g., In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976); In re Heissenger Resources, Ltd., 67 B.R. 378, 382 (C.D. Ill. 1986).

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case.  See In re General Store of Beverly Hills, 11 B.R. 539 (9th Cir. BAP 1981).  It is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but rather to "canvas the issues and see whether the settlement falls below the lowest point of the range of reasonableness."  Heissenger Resources, supra, 67 B.R. at 383.

Among the factors to be considered in determining whether a settlement is fair, equitable and reasonable are the following:

(a)    the probability of success in the litigation;

(b)    any impediments to collection;

(c)    the complexity, expense, inconvenience and
       delay of litigation; and

(d)    the interest of creditors with deference to
       their reasonable opinions.

See A & C Properties, supra, 784 F.2d at 1381.

From an analysis of the foregoing factors, the Court should conclude that the terms of the Agreement are fair and equitable and well within the range of reasonableness.

1.    The Probability Of Success Is Uncertain

The Judgment is not on appeal and is final.  Further, CAL II's Liens do not appear to be subject to dispute or avoidance. Pursuant to California Commercial Code 9601, if a secured party has reduced its claim to judgment, the lien of any levy that may be made upon the collateral [that is covered by a security interest] by virtue of an execution based upon the judgment relates back to the earliest of the date of perfection of the security interest in the

1  collateral, or the date of filing a financing statement covering the collateral.  In this Case, the

2  perfection date would be July 19, 2017 when the TGV Financing Statement was filed with

3  the California Secretary of State.  This UCC Amendment adding the Debtor should be found

4  to be effective.  The filing of an amended financing statement was authorized in the Third

5  Amended and Restated Security Agreement.  Further, the TGV Financing Statement

6  referenced the original UCC Financing Statement filed in 2011 and should be sufficient to

7  provide notice. *See*, *In re PA Record Outlet, Inc.,* 92 B.R. 139, 140–41 (Bankr. W.D. Pa.

8  1988), *subsequently aff'd sub nom. PA Record Outlet, Inc. v. Mellon Bank, N.A*., 894 F.2d

9  631 (3d Cir. 1990) (filed financing statement amendment changing name of debtor gave

10  notice of collateral description in publicly filed original financing statement).

11      As such, there is no reason for the Trustee to litigate with CAL II concerning its lien

12  against estate assets.  Rather, this is a settlement of how best to liquidate the estate assets for

13  the benefit of not only CAL II but also to guarantee a distribution to the other allowed

14  unsecured claimants in this case.

15          2.      Impediments to Collection

16      There is no impediment to collection.  Rather, the Agreement provides the mechanism

17  by which the estate shall retain funds from the administration of CAL II's Collateral for the

18  benefit of the allowed unsecured claimants.

19          3.      Complexity of Issues And Proceeding With Administration Would

20                  Result In Additional Fees And Expense For The Estate And Would Be

21                  Inconvenient

22      There are no open issues since CAL II has a valid lien that is not subject to avoidance

23  claims.  The Agreement takes into consideration the fees and costs to liquidate the estate's

24  assets and makes sure that there would be funds available to be distributed to the allowed

25  unsecured claimants.

26          4.      Interest of Creditors

27      Depending on the success of the Girardi Keese Case, CAL II' sizeable secured claim

28  could render the personal property assets of this estate to be of no value to the Debtor's

1   unsecured creditors.  In contrast, through the Agreement, the Trustee is able to administer the

2   assets of this estate with a portion of net proceeds specifically reserved for allowed unsecured

3   claimants of the bankruptcy estate.  Stated in another way, the Agreement only benefits the

4   estate – with no downside.

5        For these reasons, the Trustee has exercised sound business judgment in entering into the

6   Agreement with CAL II.  The Trustee respectfully submits that the Agreement is in the best

7   interest of the estate and should be approved by this Court.

8                              **III.**

9                       **<u>CONCLUSION</u>**

10      Based upon the foregoing, the Trustee respectfully that the Court enter an order:

11     1.     Granting the Motion;

12     2.     Approving the Agreement;

13     3.     Authorizing and directing the Trustee and CAL II to take any other steps

14            necessary to effectuate the Agreement;

15     4.     Authorizing the Trustee to make interim distributions to CAL II as described in

16            the Agreement; and

17     5.     Providing such other and further relief as is just and proper.

18   DATED: May 19, 2021          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

19

20                       By: *<u>/s/ Timothy J. Yoo</u>*
                            TIMOTHY J. YOO

21                             CARMELA T. PAGAY
                            Attorneys for Jason M. Rund

22                             Chapter 7 Trustee

23

24

25

26

27

28

## DECLARATION OF JASON M. RUND

I, Jason M. Rund, declare as follows:

1.    I am the Chapter 7 Trustee for the bankruptcy estate of Thomas Vincent Girardi. This Declaration is made in support of the foregoing "Chapter 7 Trustee's Motion to Approve Compromise of Controversy" (the "Motion"). I have personal knowledge of the matters set forth herein and if called as a witness could and would testify competently thereto. Unless the context indicates otherwise, capitalized terms herein shall have the meaning as defined in the Motion.

2.    I am requesting authority to enter into and consummate the Agreement that I entered into with CAL II, which allows the estate to administer assets that are subject to CAL II's Lien.

3.    A true and correct copy of the Agreement is attached hereto as <u>Exhibit 6</u> and is incorporated herein by reference.

4.    I believe that the terms of the Agreement are fair and equitable and well-within the range of reasonableness. Depending on the success of the Girardi Keese Case, CAL II's sizeable secured claim could render the assets of this estate to be of no value to the Debtor's other creditors. In contrast, through the Agreement, I am able to administer the assets of this estate with a portion of net proceeds specifically reserved for allowed unsecured claimants of the bankruptcy estate. Stated in another way, the Agreement only benefits the estate – with no downside.

5.    Therefore, I believe that I have exercised sound business judgment in entering into the Agreement and respectfully request that it be approved by this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May *10*, 2021, at El Segundo, California.

JASON M. RUND

11

1

2
## DECLARATION OF PAUL CODY

3
I, Paul Cody, declare as follows:

4
1.      This Declaration is made in support of the foregoing "Chapter 7 Trustee's

5
Motion to Approve Compromise of Controversy" (the "Motion").  I am the Chief Executive

6
Officer of California Attorney Lending II, Inc. ("CAL II") and have personal knowledge of

7
the matters set forth herein and if called as a witness could and would testify competently

8
thereto.  Unless the context indicates otherwise, capitalized terms herein shall have the

9
meaning as defined in the Motion.

10
2.      In or around July 5, 2011, GK and CAL II entered into a loan transaction (as

11
amended, the "Loan") pursuant to which GK borrowed the principal amount of $3,500,000.00

12
to fund its operations.  The Loan was secured against, among other things, GK's rights to

13
payment for its representation of clients in various contingency fee cases.  CAL II perfected

14
its security interest by filing a UCC Financing Statement with the California Secretary of

15
State on July 6, 2011 as Inst. No. 11-7275806299 (the "UCC Financing Statement").  A true

16
and correct copy of the UCC Financing Statement is attached as Exhibit 1.

17
3.      Between 2011 and 2019, CAL II and GK entered into several iterations of the

18
credit arrangement in which GK increased the principal amount of the debt up to

19
$8,000,000.00.  CAL II filed several continuations and amendments to the UCC Financing

20
Statement to maintain its perfected security interests in GK's assets.  The Debtor guaranteed

21
the Loan by executing that certain Guaranty of Payment and Performance dated August 12,

22
2011 and subsequent guaranties in connection with each amendment to the Loan.

23
4.      On July 11, 2017, the Debtor executed that certain Third Amended and

24
Restated Security Agreement, granting a security interest in substantially all of the Debtor's

25
personal property (the "Collateral").  In its attempt to perfect its security interest in the

26
Collateral, CAL II filed a UCC Amendment with the California Secretary of State on July 19,

27
2017 as Inst. No. 1775969950, which added the Debtor to the UCC Financing Statement (the

28
"TVG Financing Statement").  True and correct copies of the Third Amended and Restated

Security Agreement and the TVG Financing Statement are attached as <u>Exhibits 2 and 3</u>, respectively.

5.      As part of the consideration given to CAL II, GK and the Debtor executed and delivered to CAL II certain Confessions of Judgment dated November 12, 2019, and agreed to entry of judgment without trial if, after GK's default under the Loan and notice thereof, GK or the Debtor did not cure the default.  After default, on October 27, 2020, CAL II obtained judgment against GK and the Debtor in the sum of $6,250,589.59 plus post-judgment interest and reasonable attorneys' fees and costs incurred in collecting the judgment from the Los Angeles Superior Court, in LASC Case No. 20STCP03546 (the "Judgment").  CAL II filed a Notice of Judgment Lien with the California Secretary of State on November 2, 2020 as Inst. No. U200033578428. CAL II also recorded Abstracts of Judgment, including Document No. 20201435462 on November 12, 2020 with the Los Angeles County Recorder's Office (the "Los Angeles Abstract"), and executed a levy on Morgan Stanley on November 24, 2020. The levied funds at the time of the execution totaled approximately $118,000 (the "Levied Funds").  True and correct copies of the Judgment, Los Angeles Abstract are attached as <u>Exhibit 4 and 5</u>, respectively.

6.      As of the Petition Date, the total sum of $6,668,484.21 was due and owing under the Judgment, comprised of (1) the Judgment balance of $6,250,589.59, (2) interest at the 10% California judgment interest rate of $89,049.50, (3) a deferred closing fee of $62,574.40, and (4) legal fees of $266,270.75.

7.      Besides for the lending relationship described above, CAL II has no other relationship with GK or the Debtor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May __, 2021, in Williamsville, New York.

_____
PAUL CODY

# EXHIBIT "1"

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Timothy C Cashmore
716-858-3883

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Damon Morey LLP
The Avant Building - Suite 1200
200 Delaware Avenue
Buffalo, NY 14202
USA

DOCUMENT NUMBER: 29534010002
FILING NUMBER: 11-7275806299
FILING DATE: 07/06/2011 09:08
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | 1a. ORGANIZATION'S NAME |
|---|---|
| OR | Girardi Keese |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1126 Wilshire Blvd. | Los Angeles | CA | 90017 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATION ID#, if any |
|---|---|---|---|---|
| | | general partnership | CA | ☑NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | 2a. ORGANIZATION'S NAME |
|---|---|
| OR | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATION ID#, if any |
|---|---|---|---|---|
| | | | | ☐NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | 3a. ORGANIZATION'S NAME |
|---|---|
| OR | California Attorney Lending II, Inc. |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6400 Main Street, Suite 120 | Williamsville | NY | 14221 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Debtor's present and future right, title and interest in and to any and all accounts, choses in action, causes of action, settlement proceeds, attorneys' liens, attorneys' fees, general intangibles, contract rights, deposit and other bank accounts and instruments, instruments, documents, chattel paper and obligations in any form in each case arising out of or related to the rendition of services by Debtor whether earned by performance or otherwise in connection with the following: (i) all matters with respect to which the Borrower is representing one or more individuals or estates against SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Glaxo Wellcome UK Ltd., GlaxoSmithKline UK Limited Brentford, McKesson Corporation and others, or any of them, in connection with the prescription drug Rosiglitazone, marketed under the trade names Avandia, Avandamet and Avandaryl; and (ii) all matters with respect to which the Borrower is representing one or more individuals or estates against Zimmer Inc., Zimmer Holdings Inc. and others, or any of them, in connection with the so-called "Zimmer Hip" litigation; all of Debtor's books related to the foregoing;

**5. ALT DESIGNATION:** ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

| ☐6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
Girardi Keese

FILING OFFICE COPY

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | 9a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| | Girardi Keese | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
| | | | |

**10. MISCELLANEOUS:**

DOCUMENT NUMBER: 29534010002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names**

| | 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. <u>SEE</u> INSTRUCTIONS | ADD'L DEBTOR INFO | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only <u>one</u> name (12a or 12b)**

| | 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.**

**14. Description of real estate:**

**16. Additional collateral description:**

and all cash and non-cash proceeds of any of the foregoing, in whatever form, including without limitation all proceeds of proceeds, all insurance policies covering same and all interest or dividends thereon.

**15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**17. Check <u>only</u> if applicable and check <u>only</u> one box.**
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18. Check <u>only</u> if applicable and check <u>only</u> one box.**
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY

# UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Timothy C. Cashmore
716-858-3883

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Damon Morey LLP
The Avant Building - Suite 1200
200 Delaware Avenue
Buffalo, NY 14202
USA

**DOCUMENT NUMBER:** 30040950002
**FILING NUMBER:** 11-72814762
**FILING DATE:** 08/18/2011 08:35
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
11-7275806299

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | |
|---|---|
| **6a. ORGANIZATION'S NAME** | |

OR

| **6b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | |
|---|---|
| **7a. ORGANIZATION'S NAME** | |

OR

| **7b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **7c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **7d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID#, if any** |
|---|---|---|---|---|
| | | | | ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☑ restated collateral description, or describe collateral ☐ assigned.

All Debtor's present and future right, title and interest in and to any and all accounts, choses in action, causes of action, settlement proceeds, attorneys' liens, attorneys' fees, general intangibles, contract rights, deposit and other bank accounts and instruments, instruments, documents, chattel paper and obligations in any form in each case arising out of or related to the rendition of services by Debtor whether earned by performance or otherwise in connection with the following: (i) all matters with respect to which the Borrower is representing one or more individuals or estates against SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline PLC, Glaxo Wellcome UK Ltd., GlaxoSmithKline UK Limited Brentford, McKesson Corporation and others, or any of them, in connection with the prescription drug Rosiglitazone, marketed under the trade names Avandia, Avandamet and Avandaryl; (ii) all matters with respect to which the Borrower is representing one or more individuals or estates against Zimmer Inc., Zimmer Holdings Inc. and others, or any of them, in connection with the so-called "Zimmer Hip" litigation; and (iii) all matters with respect to which the

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☑ and enter name of DEBTOR authorizing this amendment.

| | |
|---|---|
| **a. ORGANIZATION'S NAME** | |
| Girardi Keese | |

OR

| **b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**
Girardi Keese

**EXHIBIT "2"**

### THIRD AMENDED AND RESTATED
### SECURITY AGREEMENT
### CALIFORNIA ATTORNEY LENDING II, INC.

In consideration of **California Attorney Lending II, Inc.,** a New York corporation having its chief executive office at 6400 Main Street, Suite 120, Williamsville, NY 14221 ("Secured Party") heretofore or hereafter (1) extending or agreeing to extend any credit or other financial accommodation to or relying on any guaranty, endorsement or other assurance of payment of Girardi Keese, a California general partnership having an office at 1126 Wilshire Blvd., Los Angeles, CA 90017 ("Borrower") or (2) agreeing to any direct or indirect extension, renewal, refinancing or other modification or replacement of or waiving or forbearing from exercising any right or remedy relating to any obligation heretofore or hereafter arising or accruing as a result of any such credit or other financial accommodation to Borrower, and for other valuable consideration, the receipt and adequacy of which is acknowledged, **Borrower and Thomas V. Girardi, individually,** having his or her principal residence address at 100 Los Altos Drive, Pasadena, CA 91105 (Borrower and each such individual being, a "Debtor" and collectively the "Debtors"), agrees with Secured Party as follows:

Introductory Statement: Secured Party and some or each or all of the Debtors are parties to that certain Security Agreement dated July 5, 2011 as amended and/or restated on August 12, 2011 and August 1, 2013 (collectively, "Security Agreement") in reliance upon which Secured Party has made certain loans and financial accommodations available to Borrower. Borrower as of the date of this Third Amended and Restated Security Agreement has executed a Third Amended and Restated Revolving Promissory Note to Secured Party in the principal amount of $6,000,000. The parties now desire to consolidate, amend and restate the Security Agreement in all respects as hereinafter set forth.

**1.      DEFINITIONS.** In this Security Agreement (the "Agreement"):

**a.      Account Debtor.** "Account Debtor" means any person or entity with an obligation to pay or transfer cash, property or proceeds to any Debtor on an Account, Chattel Paper, General Intangible regardless whether such obligation arises from business or personal matters or assets of such Debtor.

**b.      Collateral.** "Collateral" means collectively the following:

All of each Debtor's right, title and interest in all Goods (including, Equipment, Fixtures and Inventory), Money, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing. Each Debtor is prohibited from granting additional security interest in the Collateral or the Proceeds of the Collateral. (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note), whether or not yet earned by performance, and the proceeds thereof, including Net Fees and Expenses (as defined in the Note).

**c.      Event of Default.** An "Event of Default" occurs or exists if:

(i)      there occurs or exists any event or condition of default under any Revolving Promissory Note or other instrument (A) now or hereafter evidencing any of the Obligations, hereinafter defined, or (B) the payment of which is now or hereafter guaranteed by any Debtor (including, but not limited to, that certain Note, dated the date of this Agreement, issued by Borrower to Secured Party, or any direct or indirect extension, renewal, refinance or other modification or

27

Initials

CONFIDENTIAL

replacement of such Note); or

(ii)    there occurs or exists any event or condition of default under any guaranty of the Obligations; or

(iii)    Secured Party deems itself insecure with respect to the Obligations or is of the opinion that the Collateral is or may not be sufficient or has decreased or may decrease in value, whether or not Secured Party has sought any Other Collateral from any Debtor or any Guarantor.

**d.    Fiduciary Obligations.** "Fiduciary Obligations" means the fiduciary obligations of any Debtor, as set forth in the Note.

**e.    Guarantor.** "Guarantor" means any Person, including Thomas V. Girardi, who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Obligations.

**f    Loan Documents**. "Loan Documents" shall have the same meaning as set forth in the Note.

**g.    Note.** "Note" means the Third Amended and Restated Revolving Promissory Note, dated on or about the date hereof, from Borrower to Secured Party as amended, increased, extended, amended and restated or replaced from time to time.

**h    Obligations.** "Obligations" means collectively all obligations that are now owing or in the future owing by each Debtor (including, any direct or indirect successor of any Debtor or any direct or indirect assignee or other transferee of all or substantially all of the assets of any Debtor) to Secured Party for the payment of any money or the performance of any other obligation under the Loan Documents, regardless of type, class or form, whether direct or indirect, absolute or contingent (whether pursuant to any guaranty, endorsement or other assurance of payment or otherwise), whether for any business or commercial purpose or otherwise, including without limitation any such present and future obligations owing under the Loan Documents, (i) for the payment of any principal, interest, fee, charge, cost or expense, whether or not any such amounts arise or accrue after the commencement of any bankruptcy or other insolvency proceeding and whether or not allowed in any such proceeding, (ii) by such Debtor alone or with others, and (iii) whether owing from inception to Secured Party or acquired by assignment or other transfer to Secured Party.

**i.    Other Collateral.** "Other Collateral" means, other than the Collateral, any collateral, subordination, guaranty, endorsement or other security or assurance of payment, whether now existing or hereafter arising or accruing, that now or hereafter secures the payment of or is otherwise applicable to any of the Obligations.

**j.    Permitted Liens.** "Permitted Liens" means (i) any security interest in or other lien on any of the Collateral in favor of Secured Party or (ii) any security interest in or other lien on any of the Collateral existing on this date that is (A) fully and accurately described in the response to question 7 contained in the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement but only to the extent  such security interest or other lien secures the indebtedness described in such response or (B) consented to in writing by Secured Party.

**k.    Person.** "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust, unincorporated association, government or political subdivision, (ii) any court, agency or other governmental body or (iii) any other entity, body, organization or group.

**l.    Record.** "Record" means any information that is now or hereafter (i) inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in perceivable form, except to the extent constituting confidential information (whether contained in any client file of any Debtor or otherwise) that any Debtor is not permitted to disclose to Secured Party by reason of any ethical or disciplinary rule, regulation or law governing such Debtor's conduct.

28

_____
Initials

CONFIDENTIAL

**m.** **Security Interest.** "Security Interest" means any security interest or other lien granted or otherwise created pursuant to the first sentence of Section 2 of this Agreement.

**n.** **Uniform Commercial Code.** "Uniform Commercial Code" or "UCC" means the Uniform Commercial Code in effect at any time in the State of New York.

**o.** **Other Terms.** All capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Uniform Commercial Code.

**2.** **GRANT OF SECURITY INTEREST.** To secure the payment and performance of the Obligations, each Debtor grants to Secured Party a security interest in and assigns, pledges and hypothecates to Secured Party the Collateral. Each Security Interest is a continuing, absolute and unconditional security interest or other lien.

**3.** **REINSTATEMENT OF OBLIGATIONS.** Each portion of the Obligations heretofore or hereafter paid or satisfied by any of the Collateral, or any money or Other Collateral, heretofore or hereafter received, applied or retained by Secured Party and later recovered from Secured Party as a result of any claim (including, but not limited to, any claim involving preference or fraudulent conveyance or any allegation that any money received by Secured Party constituted trust funds), however asserted and whether now existing or hereafter arising or accruing, shall be reinstated as part of the Obligations for purposes of this Agreement as of the date it originally arose or accrued.

**4.** **COVENANTS.**

**a.** **Affirmative Covenants.** Each Debtor shall (i) maintain complete and accurate Records relating to the Collateral, (ii) before the end of any applicable grace period, pay each tax, assessment, fee and charge imposed by any government or political subdivision upon any of the Collateral, this Agreement or any agreement, instrument or other Record evidencing any of the Collateral or any of the Obligations, (iii) defend the Collateral against each demand, claim, counterclaim, setoff and defense asserted by any Person (including, but not limited to, any Account Debtor) other than Secured Party and (iv) promptly notify Secured Party of (A) any threat or commencement of any action or other legal proceeding, any entry of any judgment or order of any court, agency or other governmental body, or any assertion by any Person (including, but not limited to, any Account Debtor) other than Secured Party of any demand, claim, counterclaim, setoff or defense, relating to any of the Collateral, (B) any occurrence or existence of any Event of Default, any event or condition that, after notice, lapse of time or both notice and lapse of time, would constitute any Event of Default or any event or condition that has or will or might have any material adverse effect on (I) any of the Collateral, (II) any Debtor, (III) any Guarantor or (IV) the business, operations, assets, affairs or condition (financial or other) of any Debtor or any Guarantor and (C) any change in the location of the chief executive office or principal place of business of any Debtor or the residence of any Debtor that is an individual.

**b.** **Negative Covenants.** Without the prior written consent of Secured Party, no Debtor shall (i) sell or otherwise dispose of any of the Collateral or any interest or right in any of the Collateral except in the ordinary course of business and in compliance with any Fiduciary Obligations relating thereto, or (ii) provide to Secured Party or permit to be provided to Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect, or (iii) permit to be filed or remain on file in any public office any financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than Secured Party as a secured party, except for any financing statement or amendment of any financing statement heretofore consented to by Secured Party in writing or relating solely to any Permitted Liens, or (iv) upon or at any time after any occurrence or existence of any Event of Default, (A) enforce, extend, renew, refinance or otherwise modify or replace, request, demand, accept, collect or otherwise realize upon, compromise, cancel, discharge, subordinate, accelerate, give any receipt, release or discharge relating to, commence,

29



Initials

CONFIDENTIAL

prosecute or settle any action or other legal proceeding relating to, waive or forbear from exercising any right or remedy relating to or adversely affect any obligation of any Person (including, but not limited to, any Account Debtor obligated with respect to any of the Collateral) relating to any of the Collateral, or (B) agree or otherwise incur any obligation to do anything described in clause (iv)(A) of this sentence, or (v) without giving Secured Party at least 30 days' prior written notice (A) change its location for purposes of Article 9 of the Uniform Commercial Code (including, but not limited to, its jurisdiction of organization if it is a Registered Organization), (B) make any change in its name, identity or structure or (C) participate in any merger, consolidation or other absorption, or (vi) grant or otherwise create, permit to exist or agree or otherwise incur any obligation to grant or otherwise create or permit to exist any security interest in or other lien on any of the Collateral other than Permitted Liens, or (vii) use any money of Borrower, funds in any Deposit Account of Borrower or funds represented by any certificate of deposit of Borrower in partial or complete satisfaction of any obligation of Borrower except for obligations incurred in the ordinary course of the business of Borrower and in full compliance with the Fiduciary Obligations, or (viii) create, incur, assume or have any indebtedness or other obligation (A) arising from the borrowing of any money or (B) pursuant to any guaranty or other contingent obligation, except for indebtedness and other obligations (I) to Secured Party, (II) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of its business or for any Debtor that is an individual, ordinary consumer debt, (III) arising from the endorsement in the ordinary course of its business of any check or other negotiable instrument for deposit or collection or (IV) fully and accurately described in the response to question 7 contained in the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement.

**c.    Additional Covenants Triggered by Request of Secured Party.** Promptly upon the request of Secured Party, each Debtor shall (i) deliver to Secured Party each financing statement, amendment of any financing statement and other Record, and take each other action (including, but not limited to, making any endorsement), requested by Secured Party to perfect, maintain the validity, perfection or priority of, or enforce, any Security Interest, otherwise protect the interest of Secured Party in or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral, whether under applicable law or otherwise, verify any of the Collateral or otherwise accomplish any purpose of this Agreement, (ii) deliver to Secured Party each Record included in the Collateral, together with each endorsement, instrument of assignment and other Record that Secured Party requests to accomplish the assignment or other transfer of such Record to Secured Party, and, until such delivery, hold such Record in trust for Secured Party, (iii) cause each Instrument representing Proceeds or other proceeds of any of the Collateral to be made payable, as requested by Secured Party, to Secured Party alone or Secured Party and any one or more of Debtors jointly, (iv) provide to Secured Party all information requested by Secured Party and relating to (A) any of the Collateral, (B) any Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral, (C) any Debtor, (D) any Guarantor or (E) the business, operations, assets, affairs or condition (financial or other) of any Debtor or any Guarantor (including, but not limited to, financial statements prepared in a form satisfactory to Secured Party and, if requested by Secured Party, audited, reviewed or compiled by an independent certified public accountant satisfactory to Secured Party) and (v) permit each officer, employee, accountant, attorney and other agent of Secured Party to inspect the Collateral and audit, copy and extract each Record included in the Collateral.

**d.    Collateral Collections.** After an Event of Default shall have occurred, Secured Party shall have the right at any and all times to enforce any Debtor's rights against Account Debtors and other parties obligated on Collateral, including, but not limited to, the right to: (i) notify and/or require any Debtor to notify any or all Account Debtors and other parties obligated on Collateral to make payments directly to Secured Party or in the care of a post office lock box under the sole control of Secured Party established at Debtors' expense subject to Secured Party's customary arrangements and charges therefor, and to take any or all action with respect to Collateral as Secured Party shall determine in its sole discretion, including, without limitation, the right to demand, collect, sue for and receive any money or property at any time due, payable or receivable on account thereof, compromise and settle with any person liable thereon, and extend the time of payment or otherwise change the terms thereof, without incurring liability or responsibility to any Debtor; (ii) revoke any prior authorization given to any Debtor to use amounts held in trust by such Debtor pursuant to the Fiduciary Obligations and require any Debtor to also segregate and hold in trust for Secured Party any other Collateral not subject to the Fiduciary Obligations, and, on the day of such Debtor's receipt thereof,

Initials

CONFIDENTIAL

transmit to Secured Party in the exact form received by such Debtor (except for such assignments and endorsements as may be required by Secured Party), all cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral; and/or (iii) establish and maintain at Secured Party a "Repayment Account," which shall be under the exclusive control and subject to the sole order of Secured Party and which shall be subject to the imposition of such customary charges as are imposed by Secured Party from time to time upon such accounts, for the deposit of cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral from which Secured Party may, in its sole discretion, at any time and from time to time, withdraw all or any part. Secured Party's collection and enforcement of Collateral against Account Debtors and other persons obligated thereon shall be deemed to be commercially reasonable if Secured Party exercises due care and follows the procedures that Secured Party generally applies to the collection of obligations owed to Secured Party. All cash and non-cash proceeds of the Collateral may be applied by Secured Party upon Secured Party's actual receipt of cash proceeds against such of the Obligations, matured or unmatured, as Secured Party shall determine in its sole discretion. Secured Party may defer the application of non-cash proceeds of Collateral, including, but not limited to, non-cash proceeds collected from Account Debtors and other persons obligated on Collateral, to the Obligations until cash proceeds are actually received by Secured Party.

**e.**    **Care of Collateral.** Each Debtor shall have all risk of loss of the Collateral. Secured Party shall have no liability or duty, either before or after an Event of Default, to collect or enforce any of its rights against the Collateral, to collect any income accruing on the Collateral, or to preserve rights against Account Debtors or other parties with any prior interest in the Collateral. If Secured Party actually receives any notices requiring action with respect to Collateral of a Debtor in Secured Party's possession, Secured Party shall take reasonable steps to forward such notices to such Debtor. Each Debtor is responsible for responding to notices concerning the Collateral, voting the Collateral, and exercising rights and options, calls and conversions of the Collateral. Secured Party's sole responsibility is to take such action as is reasonably required by such Debtor in writing, provided, however, Secured Party is not required to take any action that, in Secured Party's sole judgment, would adversely affect the value of the Collateral as security for the Obligations. While Secured Party is not required to take certain actions, if action is needed, in Secured Party's sole discretion, to preserve and maintain the Collateral, each Debtor authorizes Secured Party to take such actions, but Secured Party is not obligated to do so.

**5.    POWER OF ATTORNEY.** Upon the occurrence or existence of any Event of Default, each Debtor irrevocably and unconditionally appoints Secured Party as the attorney-in-fact of such Debtor, with full power of substitution and revocation, to take, in the name and on behalf of such Debtor or otherwise, each action relating to any of the Collateral that such Debtor could take (subject to the limitations contained in Section 12(j) of this Agreement), provided such appointment and power does not violate any code of professional conduct and the ethical rules thereunder applicable to the legal profession. The power of attorney given pursuant to the preceding sentence is coupled with an interest in favor of Secured Party.

**6.    CERTAIN RIGHTS, REMEDIES AND DUTIES.**

**a.    Rights and Remedies Pursuant to Applicable Law.** With respect to the Collateral, Secured Party shall have each applicable right and remedy pursuant to applicable law (including, but not limited to, the Uniform Commercial Code) or this Agreement.

**b.    Additional Rights Without Event of Default.** Secured Party shall have the right to (i) file in any public office each financing statement or amendment of any financing statement relating to any of the Collateral that Secured Party desires to file (which may describe the collateral as "all assets" or "all personal property and fixtures" of a Debtor or using other supergeneric terms) and (ii) verify any of the Collateral in any manner or through any medium, whether directly with any Person (including, but not limited to, any Account Debtor) obligated with respect thereto or otherwise or in the name of any Debtor or otherwise.

31



Initials

CONFIDENTIAL

**c.    Additional Rights Upon or After Event of Default.** Upon or at any time after any occurrence or existence of any Event of Default, Secured Party, for the purpose of preserving or enhancing the value of any of the Collateral or exercising any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement, shall have the right to (i) perform each obligation of any Debtor pursuant to this Agreement and (ii) revoke any prior authorization given to any Debtor to use amounts held in trust by such Debtor pursuant to the Fiduciary Obligations, require such Debtor to forthwith remit to Secured Party all such amounts and take control of all Proceeds and other proceeds thereof.

**d.    Application of Proceeds.** Secured Party shall apply all proceeds received by Secured Party from any collection, sale or other disposition of or other recovery upon or on account of any of the Collateral including, but not limited to, as money payable pursuant to any insurance on any of the Collateral) first to liabilities, costs and expenses described in Section 7 of this Agreement and then to the remainder of the Obligations, whether due or not due, in any order determined by Secured Party.

**e.    Notice of Disposition.** Debtor agrees with Secured Party that commercial reasonableness and good faith require Secured Party to give each Debtor no more than ten days' prior written notice of the time and place of any public disposition of Collateral or of the time after which any private disposition or other intended disposition is to be made. Debtor also agrees with Secured Party that it is commercially reasonable for Secured Party to disclaim all warranties which arise with respect to the disposition of the Collateral.

**7.    EXPENSES; INDEMNIFICATION.**

**a.    Expenses.** Each Debtor shall pay to Secured Party on demand each cost and expense (including, but not limited to, if Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter incurred by Secured Party in (i) searching for, filing or recording or obtaining any information relating to any financing statement, amendment of any financing statement or other Record relating to any of the Collateral or otherwise obtaining any information relating to any Debtor or any of the Collateral or (ii) endeavoring to (A) enforce any obligation of any Debtor pursuant to this Agreement or preserve or exercise any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or (B) preserve or exercise any right or remedy relating to or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral. After such demand for the payment of any cost or expense incurred by Secured Party in performing any obligation of any Debtor pursuant to this Agreement, Debtors shall pay interest at an annual rate equal to the lesser of 24.9% or the highest rate permitted by applicable law on the portion of such cost or expense remaining unpaid.

**b.    Indemnification.** Each Debtor shall indemnify and defend Secured Party and each officer, employee, accountant, attorney, banker or lender and other agent of Secured Party on demand, without any limitation as to amount, against each liability, cost and expense (including, but not limited to, if Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter imposed on, incurred by or asserted against Secured Party or such officer, employee, accountant, attorney or other agent as a result of any claim (including, but not limited to, any claim involving any allegation of any violation of applicable law (including, but not limited to, any criminal statute)), however asserted and whether now existing or hereafter arising or accruing, arising out of any collection, sale or other disposition of any of the Collateral or any breach by any Debtor of any representation or warranty or any covenant or other agreement contained in, or any other fact or circumstance relating to, this Agreement, except to the extent any such liability, cost or expense is determined in a final, non-appealable judgment of a court of competent jurisdiction to have been caused by the gross negligence, bad faith or willful misconduct of Secured Party or such officer, employee, accountant, banker, lender, attorney or other agent.

**8.    TERMINATION.** This Agreement shall remain in full force and effect until and shall terminate only upon the final and indefeasible payment in full of the Obligations and the termination of the Loan Documents, irrespective of any interruptions in the business relationships of any Debtor with Secured Party.



Initials

CONFIDENTIAL

**9.    REPRESENTATIONS, WARRANTIES AND ADDITIONAL COVENANTS.** Each Debtor represents, warrants and covenants with and to Secured Party as follows:

**a.    Authority.** The execution, delivery to Secured Party and performance of this Agreement and the grant or other creation of each Security Interest by such Debtor (i) do not and will not violate applicable law, any judgment or order of any court, agency or other governmental body by which such Debtor is bound or, if such Debtor is not an individual, any certificate or articles of incorporation or organization, by-laws, operating or partnership agreement or other charter, organizational or other governing document of such Debtor or any resolution or other action of record of any shareholders, members, partners, directors or managers of such Debtor, (ii) do not and will not violate or constitute any default under any agreement, instrument or other Record by which such Debtor is bound or to which such Debtor's property is subject, (iii) if such Debtor is not an individual, are and will be in furtherance of the purposes and within the power and authority of such Debtor and (iv) do not and will not require any authorization of, notice to or other act by or relating to any Person (including, but not limited to, any Account Debtor or, if any Debtor is not an individual, any shareholder, member, partner, director or manager of such Debtor) that has not been duly obtained, given or done and is not in full force and effect.

**b.    Enforceability.** This Agreement is enforceable in accordance with its terms against each Debtor.  All of each Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, General intangibles, Instruments, Investment Property, Letter-of-Credit Rights and other liens, contracts, leases and agreements constituting the Collateral are and shall be valid, genuine and legally enforceable obligations and rights belonging to such Debtor and not subject to any claim, defense, set-off, or counterclaim of any kind.

**c.    Ownership.** Debtors are and shall remain the owners of the Collateral.

**d.    Questionnaire.** Each answer contained in any questionnaire submitted by or on behalf of any Debtor to Secured Party in connection with this Agreement (including, but not limited to, the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement) is complete and accurate.

**e.    Rights and Obligations with Respect to Collateral.** Except as heretofore disclosed by any Debtor to Secured Party in writing, there exists (i) no security interest in or other lien on any of the Collateral other than Permitted Liens, (ii) no presently effective financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than Secured Party as a secured party other than those relating solely to Permitted Liens, (iii) no contractual or other restriction on the grant or other creation of any security interest in or assignment, pledge or hypothecation of any of the Collateral, and (iv) no demand, claim, counterclaim, setoff or defense, no action or other legal proceeding, and no outstanding judgment or order of any court, agency or other governmental body, relating to any of the Collateral. Each Debtor (i) shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein; (ii) shall cooperate with Secured Party in obtaining and maintaining control with respect to all Deposit Accounts, Investment Property, Letter-of-Credit Rights and electronic chattel paper constituting the Collateral; (iii) shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissolution without Secured Party's prior written consent; (iv) shall not change its state of organization without first notifying Secured Party in writing; (v) shall immediately advise Lender in writing of any change in address of any Debtor or the Collateral; and (vi) shall provide Secured Party with possession of all Chattel Paper, Documents, Instruments and Investment Property constituting the Collateral that are embodied in a tangible document, instrument or certificate.

**f.    Actions with Respect to Collateral.** Except as heretofore disclosed by any Debtor to Secured Party in writing, no Debtor has (i) sold or otherwise disposed of any of the Collateral or any interest or right in any of the Collateral or (ii) extended, renewed, refinanced or otherwise modified or replaced, compromised, canceled, discharged, subordinated, accelerated, waived, forborne from exercising any right or remedy relating to or adversely affected any obligation of

33


Initials

CONFIDENTIAL

any Person (including, but not limited to, any Account Debtor) relating to any of the Collateral.

**g.    Accounts and General Intangibles.** Each Account and General Intangible included in the Collateral is or, if not now existing, will be genuine, in all respects what it purports to be and enforceable in accordance with its terms against each Person (including, but not limited to, any Account Debtor) obligated with respect thereto, subject to no demand, claim, counterclaim, setoff or defense.

**h.    Incorrect or Misleading Information.** Each Debtor has not provided to Secured Party or permitted to be provided to Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect.

**i.    Taxes.** Each Debtor has duly filed all applicable income or other tax returns and has paid all income or other taxes when due, and there are no outstanding tax liens against the assets of any Debtor.

## 10.    CERTAIN CONSENTS AND WAIVERS.

**a.    Consents.** Except to the extent expressly provided in this Agreement, this Agreement shall not be modified or terminated, no Security Interest, no obligation of any Debtor pursuant to this Agreement and no right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be impaired or otherwise adversely affected, and no such right or remedy shall be waived, by any act, omission or other thing, whether heretofore occurred or hereafter occurring. Each Debtor knowingly, voluntarily, intentionally and irrevocably consents, without any notice, to each act, omission and other thing, whether heretofore occurred or hereafter occurring, that would or might, but for such consent, modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest or any such obligation, right or remedy or operate as a waiver of any such right or remedy.

**b.    Waivers.** Each Debtor knowingly, voluntarily, intentionally and irrevocably waives, without any notice, each act and other thing upon which, but for such waiver, any Security Interest, any obligation of such Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement would or might be conditioned.

**11.    NOTICES.** Any notice required or permitted to be given hereunder must be in writing and must be delivered or transmitted to a party at the address or any fax number for such party set forth at the beginning of this Agreement or on the Signature Page to this Agreement, or to such other address or fax number as such party may designate in writing as provided herein for the purpose of receiving notices hereunder. Any such notice to a party is effective if by personal delivery, upon such delivery; if by nationally recognized overnight courier, on the next business day after delivery to such nationally recognized overnight courier; if by fax transmission, upon receipt by the sender of an electronic confirmation of a successful transmission; and otherwise upon receipt of such notice by such party. Each requirement under applicable law of reasonable notice of any event by Secured Party to any Debtor shall be deemed to have been met if a notice of such event is given by Secured Party to such Debtor at least 10 days before the date on or after which such event is to occur.

## 12.    MISCELLANEOUS.

**a.    Reliance by Other Persons.** Each Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral may accept without any question any exercise by Secured Party of any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

**b.    Limitation on Security Interest.** The payment of the Obligations shall not be secured by any Security Interest to the extent of any amount in excess of the maximum amount the payment of which can be so secured without rendering

34



Initials

CONFIDENTIAL

such Security Interest unenforceable under applicable law as a fraudulent conveyance or transfer.

**c.    Obligations Relating to Collateral.** The grant or other creation of any Security Interest shall not constitute an assignment by any Debtor to Secured Party of any obligation of such Debtor relating to any of the Collateral. Each Debtor shall remain obligated to perform each such obligation, and Secured Party shall not be obligated to perform any such obligation, whether or not Secured Party exercises any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement. The only obligations of Secured Party relating to the Collateral shall be, to the extent required by applicable law, to act in a commercially reasonable manner in exercising with respect to any of the Collateral any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement.

**d.    Liability.** If more than one Person executes this Agreement, (i) each of them shall be jointly and severally liable pursuant to this Agreement, and (ii) this Agreement shall be construed, interpreted and enforced, whether in any action or other legal proceeding or otherwise, as to each of them as though each of them had executed and delivered to Secured Party a separate agreement identical to this Agreement.

**e.    Assignment or Grant of Participation.** In conjunction with any assignment or other transfer of or grant of any participation in any of the Obligations by Secured Party, Secured Party shall have the right to assign or otherwise transfer or grant any participation in this Agreement, any Security Interest, any obligation of any Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

**f.    Binding Effect.** This Agreement shall be binding upon each Debtor and each direct or indirect legal representative, successor and assignee of each Debtor and shall inure to the benefit of and be enforceable by Secured Party and each direct or indirect successor and assignee of Secured Party.

**g.    Entire Agreement, Modifications and Waivers.** This Agreement contains the entire agreement between Secured Party and each Debtor with respect to the subject matter of this Agreement and supersedes each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral, written or other agreement and representation heretofore made, by or on behalf of Secured Party with respect thereto. No action heretofore or hereafter taken or not taken, no course of conduct heretofore or hereafter pursued, accepted or acquiesced in, no oral, written or other agreement or representation heretofore made, and no agreement or representation hereafter made other than in writing, by or on behalf of Secured Party shall modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest, any obligation of any Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or operate as a waiver of any such right or remedy. No modification of this Agreement or waiver of any such right or remedy shall be effective unless made in a writing duly executed by Secured Party and specifically referring to such modification or waiver.

**h.    Rights and Remedies Cumulative.** All rights and remedies of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be cumulative, and no such right or remedy shall be exclusive of any other such right or remedy.

**i.    Extent of Consents and Waivers.** Each consent and waiver of any Debtor contained in this Agreement shall be deemed to have been given to the extent permitted by applicable law.

**j.    Exercise of Rights; Requests.** Except as expressly provided in this Agreement, each right and remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement may be exercised (i) at any time and from time to time, (ii) in the sole discretion of Secured Party, (iii) without any notice or demand of any kind and (iv) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed, but Secured Party shall not be obligated to exercise

35

Initials

CONFIDENTIAL

any such right or remedy. Each such right and remedy may be exercised only to the extent that the exercise thereof does not (i) violate applicable law or (ii) if requiring any Debtor to take any action, require any Debtor to violate any ethical or disciplinary rule, regulation or law governing non-disclosure of confidential information by an attorney or prohibiting the unauthorized practice of law. Each request by Secured Party pursuant to this Agreement may be made (i) at any time and from time to time, (ii) in the sole discretion of Secured Party and (iii) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed.

**k.    Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

**1.    Governing Law.** This Agreement shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the law of any other jurisdiction.

**m.    Headings.** In this Agreement, headings of sections are for convenience of reference only and have no substantive effect.

**n.    Counterparts**. This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a \".pdf\" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or \".pdf\" signature page were an original thereof.

**13.    CONSENTS AND WAIVERS RELATING TO LEGAL PROCEEDINGS.**

**a.    JURISDICTIONAL CONSENTS AND WAIVERS. EACH DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY CONSENTS AND AGREES THAT ANY ACTION OR OTHER LEGAL PROCEEDING COMMENCED BY SECURED PARTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF SUCH ACTION; PROVIDED, HOWEVER, SECURED PARTY MAY, AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN POSSESSION OR FORECLOSURE UPON ANY COLLATERAL, TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY SECURED PARTY AGAINST DEBTOR OR WITH RESPECT TO ANY COLLATERAL, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS AGREEMENT OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY SECURED PARTY. DEBTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO PERSONAL JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND DEBTOR HEREBY WAIVES ANY OBJECTIONS WHICH DEBTOR MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK COURT.**

**b.    WAIVER OF TRIAL BY JURY. EACH DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT SUCH DEBTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR OTHER LEGAL PROCEEDING, WHETHER BASED ON ANY**

36

Initials

CONFIDENTIAL

**CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE, ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY OF THE COLLATERAL OR ANY OTHER COLLATERAL.**

c.    **SERVICE OF PROCESS**. PROCESS ON DEBTORS IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT WILL BE DEEMED TO HAVE BEEN GIVEN TO A DEBTOR WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (I) PERSONALLY DELIVERED, (II) TWO (2) BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (III) FOUR (4) BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO SUCH DEBTOR AT THE APPLICABLE ADDRESS SET FORTH IN THIS AGREEMENT. Such service on any Debtor shall be deemed in every respect effective service of process upon and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon such Debtor. Nothing in this Section shall affect Secured Party's right to serve process in any other manner permitted by law. Each Debtor may add additional addresses or change the address for purposes of service of process by giving 10 days' prior written notice of such change to Secured Party.

Dated:  July $\underline{11}$, 2017

Girardi Keese

By:_____
Thomas V. Girardi, Partner
Facsimile No.

_____

Thomas V. Girardi, individually
Facsimile No.

Initials

**EXHIBIT "3"**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Jillian E. Deck, Esq.   716-853-5100

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**
⌐ CT Fulfillment
  555 Capitol Mall, Suite 1000
  Sacramento, CA 95814
  59857865-1
  Account 60574850 ⌐

1775969950
07/19/2017 14:47

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

62796840002   UCC 3 FILING

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
11-7275806299

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:     **AND** Check **one** of these three boxes to:

This change affects ☑ Debtor **or** ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c     ☑ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME<br>Girardi | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME<br>Thomas | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)<br>V. | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 100 Los Altos Drive | Pasadena | CA | 91105 | USA |

**8.** ☐ **COLLATERAL CHANGE:**  Also check **one** of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME<br>California Attorney Lending II, Inc. | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
CASOS          #4384.78          JK-59857865-1

International Association of Commercial Administrators (IACA)

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)**

**EXHIBIT "4"**

Electronically FILED by Superior Court of California, County of Los Angeles on 10/27/2020 03:19 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Rose, Deputy Clerk

20STCP03546

SNELL & WILMER L.L.P.
Clifford S. Davidson, Bar No. 246119
csdavidson@swlaw.com
Keith M. Gregory, Bar No. 117837
kgregory@swlaw.com
Marshall J. Hogan, Bar No. 286147
mhogan@swlaw.com
350 South Grand Avenue
Suite 3100
City National 2CAL
Los Angeles, California 90071
Telephone:    213.929.2500
Facsimile:    213.929.2525

Attorneys for California Attorney Lending II, Inc.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

California Attorney Lending II, Inc.,

        Plaintiff,

        v.

Girardi & Keese, A California General
Partnership, Thomas V. Girardi, Individually,

        Defendants.

Case No.  20STCP03546

**JUDGMENT BY CONFESSION**

**[Code Civ. Proc. §§ 1132 et seq.]**

Pursuant to the provisions of Code Civ. Proc., §§ 1132 et seq., it is hereby adjudged that

judgment be entered in favor of plaintiff, California Attorney Lending II, Inc., a California

corporation ("Lender"), and against defendants Girardi & Keese, a California General Partnership

("Borrower"), and Thomas V. Girardi, an individual ("Guarantor"), as follows:

    1.     Lender shall recover from Borrower and Guarantor the sum of $6,250,589.59

composed of the following:

| | |
|---|---|
| Principal: | $6,170,906.09 |
| Interest and Fees: | $78,683.50 |
| **Total:** | **$6,250,589.59** |

Electronically Received 10/27/2020 03:19 PM

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

4826-1437-2815

1    Lender shall also recover against Borrower and Guarantor $2,840.20 in interest for each

2    day between October 27, 2020 and the date of entry of this Judgment.

3    2.    Lender is entitled to add to the amounts set forth in paragraph 1 above post-

4    judgment legal expenses pursuant to the provisions of Code of Civil Procedure § 685.040 et seq.

5    3.    Lender shall have the immediate right to possession of all personal property of

6    Borrower including, without limitations, goods, inventory, equipment, accounts, contract rights,

7    deposit account, chattel paper, investment property, general intangibles, commercial tort claim,

8    and any right to payment for client representation or referral and for costs and expenses, whether

9    or not yet earned by performance, and the proceeds thereof, as well as all other rights to payment

10    by Borrower of every type and description, whether then existing or thereafter arising and all

11    proceeds thereof.

12

13    Dated:    10/27/2020                     N. Rose   - Clerk of The Superior Court

14                                            Clerk
                                            XXXXX of the Superior Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     Submitted By:

2     Dated: October 27, 2020                          SNELL & WILMER L.L.P.

3

4                                                       By: _____
                                                          Clifford S. Davidson
5                                                         Keith M. Gregory
                                                          Marshall J. Hogan
6
                                                        Attorneys for California Attorney Lending II,
7                                                       Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "5"**

 

**This page is part of your document - DO NOT DISCARD**



## 20201435462



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/12/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |





**L E A D S H E E T**



202011121010013

00019292435

011427085

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

TS



*E629179*

Doc: CALOSA:2020 01435462~06037

RECORDING REQUESTED BY:

FIRST AMERICAN TITLE COMPANY
NATIONAL COMMERCIAL SERVICES

AND WHEN RECORDED MAIL TO:
First American Title
4380 La Jolla Village Drive, 110
San Diego, CA  92122

_____ Space Above This Line for Recorder's Use Only _____

## Abstract of Judgment

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, State Bar number, and telephone number)*:
Recording requested by and return to:
Clifford S. Davidson  246119
Keith M. Gregory,117837/ Marshall Hogan, 286147
Snell & Wilmer L.L.P.
350 S. Grand Ave., Suite 3100 Los Angeles, CA 90071
TEL NO. 213.929.2500    FAX NO. (Optional): 213.929.2525
E-MAIL ADDRESS (Optional): mhogan@swlaw.com
☒ ATTORNEY   ☒ JUDGMENT   ☐ ASSIGNEE OF
   FOR          CREDITOR        RECORD

FOR RECORDER'S USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N  Hill Street
MAILING ADDRESS
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk

PLAINTIFF: California Attorney Lending II, Inc

DEFENDANT: Girardi & Keese et al.

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS    ☐ Amended

CASE NUMBER:
20STCP03546

FOR COURT USE ONLY

1  The  ☒ judgment creditor  ☐ assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's .
      Name and last known address
   ┌─────────────────────────────────────┐
   │ Girardi & Keese, a California general│
   │ partnership                          │
   │ 1126 Wilshire Blvd.                  │
   │ Los Angeles, CA 90017                │
   └─────────────────────────────────────┘
b. Driver's license no. [last 4 digits] and state: N/A    ☒ Unknown
c  Social security no. [last 4 digits]: N/A               ☒ Unknown
d  Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address):
   Notice of Entry of Judgment by Confession mailed to: Girardi & Keese,
   1126 Wilshire Blvd., Los Angeles, CA 90017

2. ☒ Information on additional judgment debtors is       4. ☐ Information on additional judgment creditors is
   shown on page 2.                                         shown on page 2.
3. Judgment creditor (name and address):                 5. ☐ Original abstract recorded in this county:
   California Attorney Lending II, Inc., a California
   corporation                                              a  Date:
                                                            b. Instrument No.:

Date: 10/29/2020
Marshall J. Hogan
      (TYPE OR PRINT NAME)        ▶  Marshall J. Hogan
                                      (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:   10. ☐ An ☐ execution lien ☐ attachment lien
   $6,250,589.59                                              is endorsed on the judgment as follows:
                                                              a. Amount: $
7. All judgment creditors and debtors are listed on this abstract.   b. in favor of (name and address):

8 a. Judgment entered on (date): 10/27/20
   b. Renewal entered on (date):

9. ☐ This judgment is an installment judgment.           11  A stay of enforcement has
                                                            a. ☒ not been ordered by the court.
[SEAL]                                                      b  ☐ been ordered by the court effective until
                                                                 (date):
               Sherri R. Carter Executive Officer / Clerk of Court   12. a ☒ I certify that this is a true and correct abstract of,
                                                                            the judgment entered in this action.
               This abstract issued on (date)               b  ☐ A certified copy of the judgment is attached.

               11/04/2020                                  Clerk, by ___A. Barron_____, Deputy

Form Adapted for Mandatory Use          ABSTRACT OF JUDGMENT—CIVIL                        Page 1 of 2
Judicial Council of California                AND SMALL CLAIMS                  Code of Civil Procedure, §§ 488.480,
EJ-001 [Rev July 1, 2014]                                                              674, 700 190

Doc: CALOSA:2020 01435462~06037

| PLAINTIFF: California Attorney Lending II, Inc. | COURT CASE NO.: |
|---|---|
| DEFENDANT: Girardi & Keese et al. | 20STCP03546 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*          14. Judgment creditor *(name and address)*

15. ☐ Continued on Attachment 15

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.          Name and last known address          17.          Name and last known address

Thomas V. Girardi
100 Los Altos Drive
Pasadena, CA 91105

Driver's license no. [last 4 digits] and state:          Driver's license no. [last 4 digits] and state:
9964 / CA (EXP. 632015)          ☐ Unknown          ☐ Unknown

Social security no. [last 4 digits]: 5134    ☐ Unknown          Social security no. [last 4 digits]:          ☐ Unknown

Summons was personally served at or mailed to *(address):*          Summons was personally served at or mailed to *(address):*
Notice of Entry of Judgment by Confession mailed to:
Thomas V. Girardi
100 Los Altos Drive
Pasadena, CA 91105

18.          Name and last known address          19.          Name and last known address

Driver's license no. [last 4 digits] and state:          Driver's license no. [last 4 digits] and state:
☐ Unknown          ☐ Unknown

Social security no. [last 4 digits]:    ☐ Unknown          Social security no. [last 4 digits]:    ☐ Unknown

Summons was personally served at or mailed to *(address):*          Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. January 1, 2014]          **ABSTRACT OF JUDGMENT—CIVIL**          Page 2 of 2
**AND SMALL CLAIMS**

American LegalNet, Inc.
www.FormsWorkFlow.com

Doc: CALOSA:2020 01435462~06037

**EXHIBIT "6"**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into by and between Jason M. Rund, the chapter 7 trustee (the "**Trustee**") for the estate of Thomas Vincent Girardi (the "**Debtor**"), on the one hand, and California Attorney Lending II, Inc., a New York corporation ("**CAL II**"), on the other hand.  Together, the Trustee and CAL II are referred to as the "**Parties**."

## RECITALS

A.      In or around July 5, 2011, Girardi Keese ("**GK**") and CAL II entered into a loan transaction (as amended, the "Loan") pursuant to which GK borrowed the principal amount of $3,500,000.00 to fund its operations.  The Loan was secured against, among other things, GK's rights to payment for its representation of clients in various contingency fee cases.  CAL II perfected its security interest by filing a UCC Financing Statement with the California Secretary of State on July 6, 2011 as Inst. No. 11-7275806299 (the "**UCC Financing Statement**").

B.      Between 2011 and 2019, CAL II and GK entered into several iterations of the credit arrangement in which GK increased the principal amount of the debt up to $8,000,000.00.  CAL II filed several continuations and amendments to the UCC Financing Statement to maintain its perfected security interests in GK's assets.  The Debtor guaranteed the Loan by executing that certain Guaranty of Payment and Performance dated August 12, 2011, and subsequent guaranties in connection with each amendment to the Loan.

C.      On July 11, 2017, the Debtor executed that certain Third Amended and Restated Security Agreement, granting a security interest in substantially all of the Debtor's personal property (the "**Collateral**").  In its attempt to perfect its security interest in the Collateral, CAL II filed a UCC Amendment with the California Secretary of State on July 19, 2017 as Inst. No. 1775969950, which added Thomas V. Girardi to the UCC Financing Statement (the "**TVG Financing Statement**").

D.      As part of the consideration given to CAL II, GK and the Debtor executed and delivered to CAL II certain Confessions of Judgment dated November 12, 2019, and agreed to entry of judgment without trial if, after GK's default under the Loan and notice thereof, GK or the Debtor did not cure the default.

E.      After default, on October 27, 2020, CAL II obtained judgment against GK and the Debtor in the sum of $6,250,589.59 plus post-judgment interest and reasonable attorneys' fees and costs incurred in collecting the judgment from the Los Angeles Superior Court, in LASC Case No. 20STCP03546 (the "**Judgment**").  CAL II filed a Notice of Judgment Lien with the California Secretary of State on November 2, 2020 as Inst. No. U200033578428. CAL II also recorded Abstracts of Judgment, including Document No. 20201435462 on November 12, 2020 with the Los Angeles County Recorder's Office (the "**Los Angeles Abstract**"), and executed a levy on Morgan Stanley on November 24, 2020.  The levied funds at the time of the execution totaled approximately $118,000 (the "**Levied Funds**").

G.      On December 18, 2020 (the "**Petition Date**"), an Involuntary Petition was filed against the Debtor under chapter 7 of title 11 of the United States Code (the "**Code**").  The Order

for Relief was entered on January 13, 2021, and the Debtor's bankruptcy case (the "**Case**") is pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**") as Case No. 2:20-bk-21020-BR.

H.    On the Petition Date, an Involuntary Petition was also filed against GK under chapter 7 of the Code. The Order for Relief was entered in that case on January 13, 2021, and the case is pending before the Bankruptcy Court as Case No. 2:20-bk-21022-BR (the "**Girardi Keese Case**").

I.    CAL II assert that, as of the Petition Date, the total sum of $6,668,484.21 was due and owing under the Judgment, comprised of (1) the Judgment balance of $6,250,589.59, (2) interest at the 10% California judgment interest rate of $89,049.50, (3) a deferred closing fee of $62,574.40, and (4) legal fees of $266,270.75 ("**CAL II's Claim**"). Of the $266,270.75 in legal fees, the amount of $168,722.46 is attributable to GK and the amount of $97,548.29 is attributable to the Debtor ("**Debtor Legal Fees**").

J.    The Trustee contends that, because the TVG Financing Statement fails to describe any collateral, CAL II does not have a perfected security interest in the Collateral. The Trustee also contends that the Levied Funds should be returned to the bankruptcy estate as an avoidable preferential transfer under section 547 of the Code. CAL II strenuously disputes these contentions. Rather than litigate the foregoing issues, the Parties agree that Trustee's administration of assets of the bankruptcy estate on the terms set forth herein is in the best interest of CAL II and the bankruptcy estate.

TERMS AND CONDITIONS

Based on the mutual promises contained herein and for other good and valuable consideration, the receipt of which is acknowledged, the Parties agree as follows:

1.    Recitals Acknowledged.  Each of the Parties acknowledges that, to the best of the Party's knowledge, each of the above recitals is true and correct in every material respect.

2.    Conditions and Effective Date.

a.    This Agreement is subject to approval by the Bankruptcy Court.  Within a reasonable time after execution of this Agreement by the Parties, the Trustee shall file a motion in the Case for entry of an order approving this Agreement and the terms hereof (the "**Order**").  Once it has been filed, the Trustee shall not withdraw the motion without the written consent of CAL II.

b.    The "**Effective Date**" of this Agreement shall be the date on which the Order is entered unless there is a stay of enforcement of the Order.  If there is a stay of enforcement of the Order, the Effective Date of this Agreement shall be the first business day after the expiration or lifting of the stay.

3.    Allowance of CAL II's Claim.  CAL II shall be allowed a claim in the amount of $6,402,213.49 plus the Debtor Legal Fees as of the Petition Date with a perfected security interest in all of the Debtor's personal property <u>with the exception of cash and bank accounts</u> ("**CAL II's Collateral**"). It is anticipated that CAL II's Claim will be paid in full from this Case and the Girardi

Keese Case.  As such, CAL II reserves its right to seek post-petition interest under Section 506(b) of the Code.  Notwithstanding anything to the contrary, it is understood that the Debtor Legal Fees is a separate obligation of the Debtor's bankruptcy estate and must be paid to CAL II irrespective of the sum paid to CAL II from the Girardi Keese Case.

4.      Release of Levied Funds.  CAL II shall be allowed to retain the Levied Funds.  If CAL II has not received the Levied Funds, the Trustee shall instruct Morgan Stanley to release the Levied Funds to CAL II within 14 calendar days after the Effective Date.

5.      Release of Los Angeles Abstract.  Within 14 calendar days after the Effective Date, CAL II shall provide the Trustee with a release of the Los Angeles Abstract in recordable form. Further, if there are other Abstracts of Judgment recorded with 90 days of the Petition Date, CAL II shall provide releases of those Abstracts in recordable form at the request of the Trustee.

6.      Administration of CAL II's Collateral.

a.      CAL II consents to the Trustee's sale and disposition of CAL II's Collateral consistent with Section 363 of the Code free and clear of CAL II's liens.

b.      For each CAL II's Collateral being administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to CAL II's liens (if any), *allowed* claim of exemption, taxes arising from the sale (including transfer and income taxes), and *ordinary* costs of sale (including broker commissions, escrow, etc.); (2) the reasonable, necessary administrative fees and costs of the bankruptcy estate assembling, acquiring and disposing of said Collateral; (3) 80% of the balance to CAL II to be applied towards CAL II's Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  To be clear, CAL II will continue to receive the foregoing 80% distributions until CAL II's Claim if paid in full.  Once CAL II has been paid in full from this Case and the Girardi Keese Case, the sale proceeds shall be distributed in accordance with the Settlement Agreement previously approved by the Bankruptcy Court between the Trustee and the Ruigomez Creditors.

c.      The distributions to CAL II contemplated herein shall take place no less than 120 calendar days apart, and for each distribution, the Trustee will estimate the administrative fees and costs in good faith to determine the amount to be withheld by the bankruptcy estate.  All distributions to CAL II shall be payable by check to "California Attorney Lending II, Inc." and delivered to P.O. Box 843758, Dallas, Texas 75284-3758.

7.      Releases.  Subject to the terms and conditions of this Agreement, the Trustee releases and waives all claims against CAL II including, without limitation, related to Section 510 of the Code arising out of the Case, and CAL II releases and waives all claims against the Trustee and the Debtor's bankruptcy estate arising out of the Case.

8.      Continued Prosecution of CAL II's Claim in Girardi Keese Case.  Based on the Judgment, CAL II also has a claim in the Girardi Keese Case.  It is entirely possible that its recovery from the Debtor's Case and the Girardi Keese Case will satisfy CAL II's Claim in full. Hence, the amount recovered from the Girardi Keese Case directly impacts the Debtor's Case, and

CAL II shall use its best efforts to prosecute its claims in that case and shall not withdraw or reduce its claims in that case without the written consent of the Trustee.

9.    <u>Trustee as Representative of a Bankruptcy Estate</u>.  The Parties acknowledge that the Trustee is a trustee appointed to administer a bankruptcy estate.  The Parties acknowledge and agree that this Agreement is being made by the Trustee solely in his capacity as the chapter 7 trustee of the Debtor's estate, and not in a personal capacity, and no liability or obligations shall accrue to the Trustee personally.

10.    <u>Successors and Assigns</u>.  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns, including any successor trustees.

11.    <u>Severability</u>.  If any portion of this Agreement is found to be void, voidable or unenforceable at law, the remaining terms and conditions of this Agreement may be enforced.

12.    <u>Governing Law and Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles of the State of California.  The Bankruptcy Court shall retain exclusive jurisdiction to resolve any and all disputes pertaining to this Agreement, including without limitation the enforcement and interpretation of any of its terms, and the Parties agree to submit to the jurisdiction of the Bankruptcy Court for the purpose of resolving such disputes.

13.    <u>Further Assurances</u>.  Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

14.    <u>Modification</u>.  This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

15.    <u>Attorneys' Fees and Costs</u>.  Each Party shall bear his, her or its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.

16.    <u>Interpretation</u>.  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement.  Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

17.    <u>Authority to Sign</u>.  The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

18.    <u>Counterparts</u>.    Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

Dated:  May 3, 2021

_____
Jason M. Rund, Chapter 7 Trustee for the
estate of Thomas Vincent Girardi

Dated:  May 3, 2021

CALIFORNIA ATTORNEY LENDING II, INC.,
A New York Corporation

By _____
Paul Cody
Its Chief Executive Officer

18.    <u>Counterparts</u>.    Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

Dated:  May 3, 2021

Jason M. Rund, Chapter 7 Trustee for the
estate of Thomas Vincent Girardi

Dated:  May 3, 2021

CALIFORNIA ATTORNEY LENDING II, INC.,
A New York Corporation

By _____
       Paul Cody
       Its Chief Executive Officer

5

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE UNDER FRBP 9019 WITH CALIFORNIA ATTORNEY LENDING II, INC.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 19, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert D Bass    bob.bass47@icloud.com**
- **William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com**
- **Daren Brinkman    office@brinkmanlaw.com, 7764052420@filings.docketbird.com**
- **Joseph P Buchman    jbuchman@bwslaw.com, dwetters@bwslaw.com**
- **Debra E Cardarelli    dcardarelli@lesnickprince.com, jmack@lesnickprince.com**
- **Jamie P Dreher    jdreher@downeybrand.com,
  mfrazier@downeybrand.com;courtfilings@downeybrand.com**
- **Brian D Fittipaldi    brian.fittipaldi@usdoj.gov**
- **Moriah Douglas Flahaut (TR)    douglas.flahaut@arentfox.com, C194@ecfcbis.com**
- **Brian S Healy    brian@tw2law.com**
- **Eve H Karasik    ehk@lnbyb.com**
- **Paul J Laurin    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com**
- **Matthew A Lesnick    matt@lesnickprince.com,
  matt@ecf.inforuptcy.com;jmack@lesnickprince.com**
- **Gordon G May    hpc@ggb-law.com**
- **Randall P Mroczynski    randym@cookseylaw.com**
- **Lisa J Nilmeier    lnilmeier@milano-ri.com, lisanilmeier@gmail.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Juliet Y Oh    jyo@lnbyb.com, jyo@lnbrb.com**
- **Brian A Paino    bpaino@mcglinchey.com, irvineECF@mcglinchey.com**
- **Laura J Portillo    Attorneys@portilloronk.com**
- **Christopher E Prince    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com**
- **Jonathan C Sandler    jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com**
- **Summer M Shaw    ss@shaw.law,
  shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com**
- **David B Shemano    dshemano@shemanolaw.com**
- **Felicia A Torres    torres@g-tlaw.com**
- **United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov**
- **Beth Ann R Young    bry@lnbyb.com**
- **Christian J Younger    christian@youngerlawsb.com,
  youngercr88474@notify.bestcase.com**
- **Ryan D Zick    rzick@ppplaw.com, bnesbitt@ppplaw.com**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1

2  **2. SERVED BY UNITED STATES MAIL**: On **May 19, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

3

4

5  *Debtor*                                          *Debtor*
   Thomas Vincent Girardi                            Thomas Vincent Girardi
6  1126 Wilshire Boulevard                           100 Los Altos Drive
   Los Angeles, CA 90017                             Pasadena, CA 91105

7

8  Robert Girardi
   3662 Aquarius Drive
   Huntington Beach, CA 92649

9
                                              ☐ *Service information continued on attached page*

10

11  **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 19, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

12

13

14  None.

15

16  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

17   May 19, 2021              Stephanie Reichert                  */s/ Stephanie Reichert*

18   *Date*                    *Type Name*                          *Signature*

19

20

21

22

23

24

25

26

27

28

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**