1  Jason M. Rund
   Chapter 7 Trustee
2  840 Apollo Street, Suite 351
   El Segundo, CA 90245
3  Telephone:  310-640-1200
   Facsimile:  310-640-0200
4  jrund@srlawyers.com

5  Chapter 7 Trustee

6

7

8                 **UNITED STATES BANKRUPTCY COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11

12  In re:                              Case No. 2:20-bk-21020-BR

13  THOMAS VINCENT GIRARDI,             Chapter 7

14           Debtor.                    **CHAPTER 7 TRUSTEE'S APPLICATION
                                        TO EMPLOY COLDWELL BANKER AND**
15                                      **DESERT SANDS REALTY AS REAL
                                        ESTATE BROKERS AND TO ENTER**
16                                      **INTO EXCLUSIVE LISTING
                                        AGREEMENT REGARDING 81-775 DEER**
17                                      **PARK, LA QUINTA, CALIFORNIA;
                                        DECLARATIONS OF WILLIAM**
18                                      **FRIEDMAN AND STEVE ENLOW IN
                                        SUPPORT THEREOF**
19
                                        [No Hearing Required]
20

21

22       **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

23  **JUDGE, THE DEBTOR, THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-**

24  **INTEREST HEREIN:**

25       Jason M. Rund, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the

26  "Bankruptcy Estate") of Debtor Thomas Vincent Girardi (the "Debtor"), hereby submits his

27  application (the "Application") for entry of an order authorizing the employment of Coldwell

28  Banker, through its agent William "Bill" Friedman ("CB") and Desert Sands Realty, through its

1

1    agent Steve Enlow ("Desert Sands") as real estate brokers, (collectively, the "Real Estate

2    Brokers"), at the expense of the estate, to list and aid the Trustee in marketing and selling the

3    residential real property of the estate commonly known as 81-775 Brown Deer Park, La Quinta,

4    California 92253 (the "Brown Deer Property" or the "Property").  The Trustee also seeks an order

5    approving a proposed Residential Listing Agreement (Exclusive Authorization and Right to Sell)

6    and that certain Addendum to Residential Listing Agreement (collectively, the "Listing

7    Agreement") entered into between the Trustee and the Real Estate Brokers for the purpose of

8    listing and selling  the Brown Deer Property and authorizing the Trustee to extend, modify

9    (except as to commission) and terminate the Listing Agreement in his sole discretion without

10   further notice or Court order.  In support of his Application, the Trustee respectfully represents as

11   follows.

12   **I.    JURISDICTION AND VENUE**

13          The Court has jurisdiction over this bankruptcy case, the Bankruptcy Estate, and this

14   Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the

15   meaning of 28 U.S.C. § 157(b)(2).  The venue of this case and this Application is proper pursuant

16   to 28 U.S.C. §§ 1408 and 1409.  The Trustee consents to the entry of a final judgment or order

17   with respect to the Application, if it is determined that the Court, absent consent of the parties,

18   cannot enter a final order or judgment consistent with Article III of the United States

19   Constitution.  The statutory predicates for the relief requested herein are sections 327, 328 and

20   330 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and

21   Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each, a

22   "Bankruptcy Rule").

23   **II.    FACTUAL BACKGROUND**

24          **A.    Commencement of the Bankruptcy Case**

25          An Involuntary Petition was filed against Thomas Vincent Girardi on December 18, 2020

26   (the "Petition Date"), by petitioning creditors Robert M. Keese, John Abassian, Erika Saldana,

27   Virginia Antonio and Kimberly Archie (the "Petitioning Creditors").  On the same date, the

28   Petitioning Creditors also filed a Chapter 7 Involuntary Petition against the Debtor's law firm,

Girardi Keese ("GK"), commencing Case No. 2:20-bk-21022-BR (the "Girardi Keese Case").

On December 24, 2020, the Petitioning Creditors filed an emergency motion for appointment of an interim trustee [Doc 13], which was granted by this Court on January 5, 2021 [Doc 39]. On January 6, 2021, the United States Trustee appointed Jason M. Rund as the interim Chapter 7 Trustee for this bankruptcy case. On January 13, 2021, the Order for Relief was entered [Doc 64], and the Trustee was reappointed.

### B.    The Brown Deer Property

The Brown Deer Property is a residence consisting of approximately 3,700 square feet located within the PGA West Fairways Association community in La Quinta, California.

### C.    The Listing Agreement

In connection with the sale of the Brown Deer Property, the Trustee and the Real Estate Brokers have entered into a Residential Listing Agreement (Exclusive Authorization and Right to Sell) and an Addendum to Residential Listing Agreement (as defined above, collectively, the "Listing Agreement") designating the Real Estate Brokers as the exclusive broker to market and sell the Brown Deer Property. A copy of the Listing Agreement is attached to the accompanying declaration of William "Bill" Friedman (the "Friedman Declaration") as Exhibit 1.

Pursuant to the terms of the Listing Agreement, the Real Estate Brokers will list the Property for sale for the initial Listing Price of $1,250,000.00 and the sale will be "as-is" and subject to Bankruptcy Court approval. The term of the Listing Agreement is six (6) months, subject to extension from time to time as contained therein. By this Application, the Trustee seeks authority to extend, modify (except as to commission) and terminate the Listing Agreement in his discretion without further notice or order of the Court.

The Trustee proposes to hire Broker for a total commission of five percent (5%) of the selling price for the Property (payable only upon close of sale) to be shared as follows: two and one-half percent (2.5%) to buyer's broker, if any, and the other two and one-half percent (2.5%) shared between the Real Estate Brokers. If the buyer does not have a broker, then the Real Estate Brokers would be entitled to the entire five percent (5%) commission.

III.    **DISCUSSION**

A.    **The Legal Standard**

A trustee may employ professional persons under section 327(a) of the Bankruptcy Code to assist the trustee in carrying out their duties to the estate. *See* 11 U.S.C. § 327(a). Bankruptcy Rule 2014 provides that employment of a professional may be authorized upon application, which provides (i) specific facts showing the necessity for employment; (ii) the name of the person to be employed; (iii) the services to be rendered; (iv) any proposed arrangement for compensation; and (v) to the best of the applicant's knowledge, all of the person's "connections" with the debtor, creditors, any other party in interest, the respective attorneys and accountants, the U.S. Trustee or any person employed in the Office of the U.S. Trustee. *See also In re Park-Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995). Further, section 328 of the Bankruptcy Code provides, in relevant part, that a trustee, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

B.    **Employment of CB and Desert Sands Should Be Approved**

1.    *The Name of Person to Be Employed*

The Trustee seeks to employ Coldwell Banker through its agent William "Bill" Friedman and Desert Sands Realty through it agent Steve Enlow, respectively, with contact details of (for Mr. Friedman) 1608 Montana Avenue, Santa Monica, California 90403, telephone number (310) 458-0091, email: billfried@earthlink.net and (for Mr. Enlow) 78000 Fred Waring Drive, Suite 202, Palm Desert, California 92111, telephone number (760) 636-5280, email: enlowhomes@yahoo.com.

2.    *The Necessity for Employment*

The Trustee has selected the Real Estate Brokers for the reason that they are established real estate agencies with access to appropriate prospective buyers in southern California who are likely to be interested in the Property. The employment of real estate brokers with such experience is essential to the Trustee to appropriately market the Property and obtaining the

1    highest and best price for the Property.  A true and correct copy of the resumes of Mr. Friedman

2    and Mr. Enlow are attached to the Friedman Declaration and the Declaration of Steve Enlow (the

3    "Enlow Declaration") as Exhibits 2 and 3, respectively.  The Trustee believes the CB, Desert

4    Sands, Mr. Friedman and Mr. Enlow are well qualified and experienced in marketing homes like

5    the Brown Deer Property, and, consequently, their employment as real estate broker is in the best

6    interest of the estate.

7                           *3.*       *Services to Be Rendered*

8            The professional services to be rendered by CB and Desert Sands shall include, but are not

9    necessarily limited to:

10                           a.      ordering, analyzing and preparing the documentation

11                           necessary to place the Property in a proper position to be listed and

12                           advertised for sale;

13                           b.      listing the Property according to the most propitious

14                           listing services and marketing avenues available, responding to

15                           inquiries of purchase, and soliciting reasonable offers of purchase;

16                           c.      conveying all reasonable offers of purchase to the

17                           Trustee, and subject to the Trustee's approval, confirming

18                           acceptance of the best offer; and

19                           d.      causing to be prepared on behalf of the Applicant

20                           and submitted to escrow any and all documents requiring the

21                           endorsement of the Applicant to consummate the sale of the Brown

22                           Deer Property.

23           For further details regarding the services to be performed by the Real Estate Brokers

24    please see the Listing Agreement attached as Exhibit 1 to the Friedman Declaration.  Additional

25    details regarding the scope of services are set forth in the Friedman Declaration and Enlow

26    Declaration.

27                           *4.*       *Compensation*

28           The Trustee proposes to hire Broker for a total commission of five percent (5%) of the

selling price for the Property (payable only upon close of sale) to be shared as follows:  two and one-half percent (2.5%) to buyer's broker, if any, and the other two and one-half percent (2.5%) shared between the Real Estate Brokers.  If the buyer does not have a broker, then the Real Estate Brokers would be entitled to the entire five percent (5%) commission.  Such compensation is customary in the local market for the sale of single family home properties similar to the Brown Deer Property.  Furthermore, the Trustee believes that the provision of such a commission is essential to incentivize Broker's work in this matter.

5.      *No Adverse Interest/Disinterestedness*

Paragraphs 12 of the Friedman Declaration and Paragraph 9 of the Enlow Declaration explain that CB, Desert Sands,  Mr. Friedman and Mr. Enlow (i) have no affiliation or association with the Debtor, his creditors, or any other party in interest (including the U.S. Trustee) or their respective attorneys or accountants, and (ii) do not hold any interest adverse to the Debtor or the estate, except that CB and Mr. Friedman have been retained by the Trustee in the past in other bankruptcy cases, but all of those matters have been wholly unrelated to the Debtor's bankruptcy cases.  Based upon such disclosures, and to the best of the Trustee's knowledge, the Trustee believes that Compass is disinterested pursuant to section 101(14) of the Bankruptcy Code.

## IV.   **CONCLUSION**

Based on the foregoing, the Trustee respectfully requests entry of an order (1) authorizing the employment of the Real Estate Brokers in accordance with the Listing Agreement for the purpose of listing and selling the Brown Deer Property; (2) approving the Listing Agreement as requested herein, and (3) granting such other and further relief as the Court deems just and proper.

DATED:  May 25, 2021

By: */s/ Jason M. Rund*
      Jason M. Rund
      Chapter 7 Trustee

## DECLARATION OF WILLIAM "BILL" FRIEDMAN

I, William Friedman, declare:

1.       I am personally familiar with the following facts and if called upon to testify as a witness thereto, I could and would competently do so.

2.       I am employed as an agent for Coldwell Banker, one of the real estate brokers which Jason M. Rund, Chapter 7 Trustee ("Trustee") of the bankruptcy estate Thomas Vincent Girardi (the "Debtor") desires to employ for the purpose of listing and selling the residential real property commonly known as 81-775 Brown Deer Park, LaQuinta, California 92253 (the "Brown Deer Property" or the "Property").

3.       Attached as Exhibit 1 hereto and incorporated herein by this reference is a true and correct copy of the Residential Listing Agreement (Exclusive Authorization and Right to Sell) and that certain Addendum to Residential Listing Agreement (collectively, as amended, the "Listing Agreement") concerning the sale of the Brown Deer Property.

4.       I am a California licensed real estate agent, and I am experienced in selling residential properties such as the Brown Deer Property.  My office address and contact details are 1608 Montana Avenue, Santa Monica, California 90403, telephone number (310) 458-0091, email: billfried@earthlink.net.  Attached as Exhibit 2 hereto and incorporated herein by this reference is a true and correct copy of my current resume.

5.       Since at least 1985, I have been employed by more than 30 bankruptcy trustees in the Central District of California.  In dealing with the trustees, I have evaluated thousands of properties, and I have listed and co-listed hundreds of properties for sale on behalf of trustees for the benefit of the estate.

6.       In the majority of cases, the trustees come to me and request my assistance because of my familiarity with sales through bankruptcy and my resources and contacts in the local areas through Coldwell Banker.  When a trustee is first appointed and wishes to evaluate real property, I am called upon to value the property, obtain lien and title information, as well as the tax basis of the property to assist the trustee in determining the potential tax consequences from a sale.  In many instances, after I advise the trustee about the value of the property, the

trustee determines it to be unworthy of administration.  However, once the trustee determines that there is sufficient equity in the property to justify its sale, trustees then ask me to handle the listing and marketing.  I then evaluate whether Coldwell Banker's presence in the locality justifies working through a local Coldwell Banker agent or if it is in the best interest of the estate that I locate a different broker in the immediate area where the property is located and arrange for the co-listing of the property between the two brokers.  More than half the time, I recommend that the property be co-listed, even though, in that event, Coldwell Bankers's commission, which is subject to Court approval, would be less.

7.  In the present case, I have identified Steve Enlow who is an agent with Desert Sands Realty.  Mr. Enlow is an experienced real estate agent in the greater Palm Desert area were the Property is located.

8.  When I list properties with another agent, services I typically perform include the following:

a.  I interview numerous agents inside and outside Coldwell Banker, and advise the trustee as to who I would recommend to co-list the property.  The agent who I recommend must be familiar with the area and a top producer in that area.  Generally, the co-listing agent has no familiarity with the bankruptcy process.  I also get multiple opinions of value on the property, with which the local brokers oftentimes already have some familiarity with because the property may have been marketed previously by the debtor(s).

b.  I prepare the listing agreement and assist in the preparation of the employment application, including my declaration regarding disinterestedness to be submitted to the Bankruptcy Court.  I discuss the bankruptcy employment, sale, lien, and compensation issues with my co-agents and obtain their resume for the employment application.

c.  I list the property in camoves.com.  If the co-agent is with a different broker, they will list and advertise the property in their own media, thereby giving double exposure to the property.

d.  I often times spend many hours interfacing with debtor's counsel to arrange for access to caravans and inspections of the property.

8

e.    I confer with the trustee's office to follow up on potential buyers that may have contacted the trustee's office directly.

f.    I interface with the buyer's real estate broker and explain the process and procedures involved with purchasing property through bankruptcy, including the overbid process.

g.    When offers are written, they are forwarded by the buyer's agent to me, and I forward those offers to the trustee and/or counsel with my recommendation on how to respond. In the event of multiple offers, I recommend a strategy to attempt to maximize the price in light of the subsequent over-bid process.

h.    I interface with the trustee and counsel and prepare lengthy and detailed counter-offers that are specifically customized to protect the trustee and the bankruptcy estate.

i.    I answer numerous questions by prospective buyers and overbidders regarding the bankruptcy process, including issues with respect to the overbid process and removal of liens.

j.    I interface with the escrow officers, title officers, and attorneys for the title companies to open escrow, order preliminary title reports, and obtain beneficiary statements so that liens and loans can be paid off promptly.

k.    I advise the co-listing agent on the procedures for advertising the properties once an offer is accepted, pending the approval of the sale subject to overbid and appropriate notations in the multiple listing service.

l.    I assist the trustee in conducting the overbid auctions if requested to do so.

m.    Once the sale is approved by the Bankruptcy Court, I follow up with the title company and handle non-legal issues that arise to do my best to ensure that the sales close smoothly as possible.

n.    During this process, trustees often ask me to sign declarations to present evidence on valuations and the status of marketing efforts in support of cash collateral motions and/or to oppose motions for relief from stay and/or to compel abandonment, as the estates often do not have the money to pay for an outside appraisal.  I do not ask for compensation for these extra services.

9.    The co-listing agent performs the following services:

a.   list the property in their local multiple listing service;

b.   shows the property to prospective purchasers and brokers and makes himself/herself available for all home inspections and appraisals;

c.   arrange for local advertising;

d.   provides specialized market based knowledge regarding the specific sub- market where the property is located.

9.      The Trustee proposes to hire the brokers for a total commission of five percent (5%) of the selling price for the Property (payable only upon close of sale) to be shared as follows:  two and one-half percent (2.5%) to buyer's broker, if any, and the other two and one-half percent (2.5%) shared between the Real Estate Brokers.  If the buyer does not have a broker, then the Real Estate Brokers would be entitled to the entire five percent (5%) commission.

10.      Services which Coldwell Banker will provide under the Listing Agreement include:

a.      Ordering, analyzing and preparing the documentation necessary to place the Brown Deer Property in a proper position to be listed and advertised for sale;

b.      Listing the Property according to the most propitious listing services and marketing avenues available, responding to inquiries of purchase, and soliciting reasonable offers of purchase;

c.      Conveying all reasonable offers of purchase to the Trustee, and subject to the Trustee's approval, confirming acceptance of the best offer; and

d.      Causing to be prepared on behalf of the Trustee and submitted to escrow any and all documents requiring the endorsement of the Trustee to consummate the sale of the Property.

11.      I have read the foregoing Application of the Trustee seeking authority to employ Coldwell Banker and Desert Sands Realty and I believe the statements set forth therein to be true and correct.

12.      I and Coldwell Banker are disinterested persons as defined in 11 U.S.C. § 101(14). I am not associated or affiliated with the Debtor, his affiliates, his creditors, or any other party in

1   interest or their respective attorneys or accountants, except that I or my firm have been retained

2   by the Trustee in the past in other bankruptcy cases, but all of those matters have been wholly

3   unrelated to the Debtor's bankruptcy case.  Neither I nor Coldwell Banker has a pre-petition

4   claim against the Debtor.  I am not a relative or employee of the United States Trustee or a

5   bankruptcy judge.

6          13.    No retainer has been received for the services to be provided under the Listing

7   Agreement.

8          14.    I am generally familiar with the Bankruptcy Code, Bankruptcy Rules and Local

9   Bankruptcy Rules as they relate to real estate agents, and will comply with them.

10         I declare under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct.

12         Executed this _25_ day of May, 2021, at Santa Monica, California.

13

14                                         WILLIAM "BILL" FRIEDMAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF STEVE ENLOW

I, Steve Enlow, declare:

1.      I am personally familiar with the following facts and if called upon to testify as a witness thereto, I could and would competently do so.

2.      I am employed as a broker for Desert Sands Realty, one of the real estate broker which Jason M. Rund, Chapter 7 Trustee ("Trustee") of the bankruptcy estate Debtor Thomas Vincent Girardi (the "Debtor") desires to employ for the purpose of listing and selling the residential real property commonly known as 81-775 Brown Deer Park, LaQuinta, California 92253 (the "Brown Deer Property" or the "Property").

3.      I am a California licensed real estate broker, and I am experienced in selling residential properties such as the Brown Deer Proeprty.  My office address and contact details are 78000 Fred Waring Drive, Suite 202, Palm Desert, California 92111, telephone number (760) 636-5280, email: enlowhomes@yahoo.com.  Attached as <u>Exhibit 3</u> hereto and incorporated herein by this reference is a true and correct copy of my current resume.

4.      I have over 18 years of experience as a real estate agent/broker.  I specialize in the marketing and sales of resident properties in the greater Palm Desert area.

5.      I have read the foregoing Application of the Trustee seeking authority to employ Compass and I believe the statements set forth therein to be true and correct.

6.      As the co-listing agent, I will perform the following services:

   a.  list the property in the local multiple listing service;

   b.  show the property to prospective purchasers and brokers and make myself available for all inspections and appraisa1s;

   c.  expose the property to buyers that I am familiar with who are interested in acquiring a property similar to the Property as well as other agents who have potential buyers for the property; and

7.      William Friedman of Coldwell Banker  and I have agreed to accept as our compensation a collective five percent (5%) of the purchase price as a commission to be shared

1  with the buyer's broker, if any, and understand that the Court has the power to fix some other

2  amount of compensation under 11 U.S.C. § 328(a).

3       8.     No retainer has been received for the services to be provided under the Listing

4  Agreement.

5       9.     I and Desert Sands are disinterested persons as defined in 11 U.S.C. § 101(14).  I

6  am not associated or affiliated with the Debtor, his affiliates, his creditors, or any other party in

7  interest or their respective attorneys or accountants.  Neither I nor Desert Sands has a pre-petition

8  claim against the Debtor.  I am not a relative or employee of the United States Trustee or a

9  bankruptcy judge.

10       10.     I am generally familiar with the Bankruptcy Code, Bankruptcy Rules and Local

11  Bankruptcy Rules as they relate to real estate agents, and will comply with them.

12       I declare under penalty of perjury under the laws of the United States of America that the

13  foregoing is true and correct.

14       Executed this  25th  day of May 2021, at Rancho Mirage, California.

15

16                                                              STEVE ENLOW

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-146A639B92C0



## RESIDENTIAL LISTING AGREEMENT
### (Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/20)



Date Prepared: _05/24/2021_

1. **EXCLUSIVE RIGHT TO SELL:** _Jason Rund, Chapter 7 Trustee_ ("Seller")
hereby employs and grants _Coldwell Banker Realty/Desert Sands Realty_ ("Broker")
beginning (date) _May 27, 2021_ and ending at 11:59 P.M. on (date) _October 27, 2021_ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _81775 Brown Deer Park_
_____, situated in _La Quinta_ (City),
_Riverside_ (County), California, _92253_ (Zip Code), Assessor's Parcel No. _780-250-014_ ("Property").
☐ This Property is a manufactured (mobile) home. See Manufactured Home Listing Addendum (C.A.R. form MHLA) for additional terms.
☐ This Property is being sold as part of a probate, conservatorship, guardianship, or receivership. See Probate Listing Addendum and Advisory (C.A.R. form PLA) for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _One Million, Two Hundred Fifty Thousand_
   _____ Dollars ($ _1,250,000.00_ ).
   B. Listing Terms: _Subject to bankruptcy court approval and overbid; property sold "as-is". Addendum is attached._

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker:
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a _____ Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2020, California Association of REALTORS®, Inc.

**RLA REVISED 6/20 (PAGE 1 OF 5)**

Seller's Initials ( _____ ) ( _____ )

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-748A6599B8C9

Property Address: _81775 Brown Deer Park_ , La Quinta, _92253_ _____ Date: _05/24/2021_

**4. A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____
ADDITIONAL ITEMS INCLUDED: _____.
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B. (1) LEASED OR NOT OWNED ITEMS:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other _____
**(2) LIENED ITEMS:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5. MULTIPLE LISTING SERVICE:**
**A. WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. As set forth in **paragraph 7**, participants and subscribers conducting public marketing of a property listing must submit their information to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.
**B. WHAT INFORMATION IS PROVIDED TO THE MLS:** All terms of the transaction, including sales price and financing, if applicable, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
**C. WHAT IS BROKER'S MLS?** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. When required by paragraph 7 or by the MLS, Property will be listed with the MLS(s) specified above.

**6. BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS**
**A. EXPOSURE TO BUYERS THROUGH MLS:** Listing Property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.
**B. IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (i) Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; (ii) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (iii) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings and; (iv) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.
**C. REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.
**D. NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

| Seller's Initials (_____)(_____) | Broker's/Agent's Initials ( _BT_ )( _B.3._ ) |
|---|---|

**7. PUBLIC MARKETING OF PROPERTY:**
**A. CLEAR COOPERATION POLICY:** MLS rules require (☐ Do NOT require – see 7F) that residential real property with one to four units and vacant lot listings be submitted to the MLS within 1 business day of any public marketing.
**B. PUBLIC MARKETING WITHIN CLEAR COOPERATION: (i) Public marketing** includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public. **(ii)** Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.
**C. "COMING SOON" STATUS IMPACT ON MARKETING:** Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS. Seller does (☐ does not) authorize Broker to utilize Coming Soon status, if any.

RLA REVISED 6/20 (PAGE 2 OF 5)                    Seller's Initials    (_____) (_____)

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-746A039B92CB

Property Address: *81775 Brown Deer Park , La Quinta,  92253*

    D.  **Seller Instructs Broker:** (MLS may require C.A.R. Form SELM or local equivalent form)

        (1)  Seller instructs Broker to market the Property to the public, and to start marketing on the beginning date of this Agreement or ☐ _____ (date).

  OR (2)  ☐ Seller instructs Broker NOT to market the Property to the public. Seller understands that no public marketing will occur and the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients.

    E.  **Whether 7D(1) or 7D(2) is selected,** Seller understands and agrees that should any public marketing of the Property occur, the Property listing will be submitted to the MLS within 1 business day.

    F.  ☐  **CLEAR COOPERATION POLICY DOES NOT APPLY:** Paragraphs 7A (other than the language in the parenthetical), 7B, 7D and 7E do not apply to this listing. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

8.  **MLS DATA ON THE INTERNET:** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

    A.  **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet (C.A.R. Form SELI). Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

    B.  **FEATURE OPT-OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below (C.A.R. Form SELI). Seller understands **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

        (1)  **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

        (2)  **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

        ☐ Seller elects to opt-out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

9.  **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any ~~Notice of Default record~~ the Property: **(ii)** any delinquent amounts due under any loan secured ~~other obligation~~ affecting, the Property; **(iii)** any bankruptcy, ~~or similar proceeding~~ Property; **(iv)** any litigation, arbitration, administrative action, government investigation or ~~pending~~ action that affects or may affect the Property or Seller's ability to transfer ~~(v) any~~ current, pending or proposed special assessment ~~the Property. Seller shall~~ ~~notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension~~

10.  **BROKER'S AND SELLER'S DUTIES:**

    A.  Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in 10D as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

    B.  Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

    C.  Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

    D.  Investigations and Reports: Seller agrees, within 5 (or ___ ) **Days** of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____

        If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

    E.  ~~indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments,~~ attorney fees and costs arising from ~~any~~ ~~or from any material facts~~ th~~at Seller knows but fails to disclose including dangerous or hidden conditions on the Property.~~

11.  **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

12.  **AGENCY RELATIONSHIPS:**

    A.  **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

    B.  **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

    C.  **POSSIBLE DUAL AGENCY WITH BUYER:** Depending upon the circumstances, it may be necessary or appropriate for Broker

**RLA REVISED 6/20 (PAGE 3 OF 5)**        Seller's Initials  ( _____ )  ( _____ )

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-MA0548968

Property Address: 81775 Brown Deer Park , La Quinta,  92253

to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D.  **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E.  **POTENTIALLY COMPETING SELLERS AND BUYERS:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

13. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

14. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

A.  In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post sale and for Broker/Agent's business in the future.

B.  Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked) ☐ Seller instructs Broker to publish in the MLS that usage of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

15. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

16. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

17. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

18. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 22A.

19. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____
_____
_____
_____

RLA REVISED 6/20 (PAGE 4 OF 5)                                    Seller's Initials  (_____)  (_____)



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com          81-775 Brown

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-...

Property Address: **81775 Brown Deer Park , La Quinta,  92253**

20. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

21. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

22. **DISPUTE RESOLUTION:**
    **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to ... compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 22B.
    B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.
    **ARBITRATION ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form A...).

23. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

24. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller **(i)** represents that the entity for which the individual is signing already exists and **(ii)** shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____  Date _____
    *Jason Rund, Chapter 7 Trustee*

Address _____  City _____  State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____  Date _____

Address _____  City _____  State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Coldwelll Banker Realty/Desert Sands Realty* _____ DRE Lic. # **00616212**
Address **1608 Montana Ave.** _____ City **Santa Monica** _____ State **CA** Zip **90405**
By ~~Bill Friedman~~ _____ Tel. **(310)829-3939** E-mail **billfried@earthlink.net** DRE Lic.# **00672015/013** Date **5-25-21**
   Bill Friedman /
By ~~Steve Enlow~~ _____ Tel. **760-880-3675** E-mail **EnlowHomes@yahoo.com** DRE Lic.# **01368794** Date **5-25-21**
   Steve Enlow

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2020 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**RLA REVISED 6/20 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com          81-775 Brown

## ADDENDUM TO EXCLUSIVE AUTHORIZATION AND RIGHT TO SALE

Jason Rund, solely in the capacity as the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Thomas Vincent Girardi ("Debtor") in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Central District of California, agrees to grant Coldwell Banker and Desert Sands Realty ("Broker") the exclusive right to negotiate a sale of the real property commonly described as 81775 Brown Deer Park, La Quinta, California ("Property") upon the terms and conditions of the Exclusive Authorization and Right to Sell Property ("Exclusive Authorization"), as amended by the following terms and conditions:

1.    Addendum.    This Addendum applies to the Exclusive Authorization. Notwithstanding any contrary terms and conditions in the Exclusive Authorization, this Addendum shall apply.

2.    No Liability.    The Trustee is listing the Property for sale with the Broker in the capacity as Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of such listing.

3.    Termination.    The Trustee may terminate the Exclusive Authorization at the Trustee's option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in the capacity as Trustee, as a result of any such termination.

4.    Abandonment.    The Trustee reserves the right, in the Trustee's sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of the Trustee's intention to abandon the Property upon the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest.  In the event of any such abandonment, the Exclusive Authorization and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or the capacity as Trustee, as a result of any such abandonment and termination.

5.    Conditions of Sale.    The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

124805.1    9937176A

a.   The Trustee is selling the Property in the capacity as the Trustee and not in the Trustee's personal capacity, and no liability or obligations shall accrue to the Trustee personally as a result of any sale.

b.   If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

c.   The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

d.   The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtor, the Debtor's counsel, the United States Trustee, all creditors, and all parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.   The sale is subject to overbids.

f.   The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property.  The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

g.   The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

h.   All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

i.   The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law.  The Trustee is not required to deliver

to the purchaser a written statement of compliance with any applicable state and local law.

        j.   The purchaser shall, at purchaser's sole expense, obtain any and all pest control inspection repairs that purchaser deems appropriate.

        k.   If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

        l.   Any sale is subject to the following conditions being satisfied before the close of escrow:

        (1)  the Trustee must prevail with respect to any objections to the proposed sale; and

        (2)  the Trustee reserves the right to reject any and all offers which in his/her judgment are insufficient.

        m.   The Property is being sold subject to:

        (1)  All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

        (2)  Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property. Title, however, is to be transferred free of secured claims of record.

      6.   <u>Payment of Commission</u>. The commission to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  The payment of the commission is subject to prior approval of the Bankruptcy Court.

      7.   <u>Reduction of Listing Price and Extension of Term of Listing Agreement</u>. The Trustee may, in the Trustee's sole discretion and business judgment and without further Court order, modify the Exclusive Authorization by reducing the listing price and/or extending the term of the Exclusive Authorization.

8.    <u>Entire Agreement</u>. This Addendum and the Exclusive Authorization, to the extent that such Exclusive Authorization is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this agreement.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this Addendum and the Exclusive Authorization constitute the complete, final and exclusive statement of the terms of the agreement and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this Addendum and the Exclusive Authorization.

9.    <u>Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court, sitting without a jury which is expressly waived, shall have exclusive jurisdiction to resolve any and all disputes relating to this Addendum and the Exclusive Authorization.  This Addendum and the Exclusive Authorization and any disputes related thereto shall be governed by California law.

124805.1    9937176A                          4

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-746A05B0BDC0

CALIFORNIA
ASSOCIATION
OF REALTORS®

**LISTING AGREEMENT
CORONAVIRUS ADDENDUM OR AMENDMENT**
(C.A.R. Form RLA-CAA, 5/21)

CB
COLDWELL BANKER
REALTY

The following terms and conditions are hereby incorporated in and made a part of the Listing Agreement OR ☐ Other _____
("Listing Agreement") dated
_05/24/2021_ on property known as _____ 81775 Brown Deer Park , La Quinta,  92253 _____ ("Property")
in which _____ Coldwelll Banker Realty/Desert Sands Realty _____ is referred to as Broker
and _____ Jason Rund, Chapter 7 Trustee _____ is referred to as Seller
OR ☐ This is an amendment to the already existing Listing Agreement between Seller and Broker.

The current worldwide Coronavirus (COVID-19) pandemic has had unprecedented impacts on the real estate industry, affecting: Solicitation and marketing; Pre-contract showings, negotiations and inspections; Contract formation and expectations; Post-acceptance inspections and repairs; Loan applications, appraisals and approvals; and Closings. Local, State and Federal states of emergency, "Stay Home" orders, and Health Official and other Government mandates and recommendations (collectively, "COVID-19 Directives") have changed the way sellers and real estate licensees need to approach otherwise allowable or acceptable business practices. Seller and Broker acknowledge that there are mutual benefits in addressing the effects of the COVID-19 pandemic on the sale of the Property. In consideration for the mutual benefits contained herein, Seller and Broker agree as follows: This Addendum or Amendment shall remain in force until the earlier of either **(i)** the termination of all government orders, including local, State, and Federal, impacting the Property due to the COVID-19 pandemic or **(ii)** the mutual written termination of this Addendum or Amendment by Seller and Broker. **Brokers and Agents (i) will comply with COVID-19 Directives, notwithstanding any Party's instructions and (ii) will obey all Fair Housing laws while pursuing safe COVID-19 practices. Nothing contained in this Addendum or Amendment shall be construed to allow an activity that is otherwise prohibited by any law.**

1. **PROPERTY SHOWINGS:**
   A. Seller has been advised of the potential for visitors to the Property to be carriers of the COVID-19 virus. Broker has provided Seller with a ☒ **Coronavirus Property Entry Advisory and Declaration (C.A.R. Form PEAD-ALL)**, and ☒ C.A.R. Best Practices Guidelines and Prevention Plan (C.A.R. Document BPPP), or substantially equivalent forms approved by Broker. Seller and Broker agree to abide by the protocols set forth in those documents and this form. Seller agrees to allow showings, as specified under 1B, as follows:
      (1) ☒ To allow prospective purchasers to enter the Property for all showings (including open houses);
      OR (2) ☐ To allow Broker to only hold open houses;
      OR (3) ☐ To allow showings, but no open houses;
      OR (4) ☐ DOES NOT agree to allow any showings or open houses.
   B. Prospective purchasers and other visitors will not be given permission to enter the Property until and unless:
      (1) They register at the Property by way of a sign-in sheet or digital sign-in, or provide Broker with a Coronavirus Property Entry Advisory and Declaration (C.A.R. Form PEAD-ALL), either in advance or at the time of entry. The sign-in or PEAD-ALL shall contain the entrant's agreement to follow the Broker's Prevention Plan and abide by the Posted Rules for Entry, as well as a statement that the entrant does not have COVID-19 or been in contact with someone with COVID-19 in the last 10 days, and that they do not have any symptoms of COVID-19.
      (2) ☐ They provide verification that they are financially able to purchase the Property, such as **(i)** verification of an all-cash purchase or **(ii)** a prequalification or preapproval from a lender or loan broker.
      (3) ☐ They represent that they have previously viewed the Property online.

2. **MARKETING ACTIVITIES:** In furtherance of the goal of selling the Property, and provided Broker and others follow the same requirement specified in paragraph 1B for prospective purchasers and other visitors, Seller agrees (☐ DOES NOT agree - see paragraph 4) to give permission to Broker and other authorized persons, to access the inside and outside of the Property in order to engage in ALL MARKETING ACTIVITY, including but not limited to those listed below, **OR**, _only_ (see paragraph 4) those checked below:
   ☐ Install signage
   ☐ Provide landscape services
   ☐ Paint
   ☐ Prepare and remove staging
   ☐ Prepare an agent's visual inspection and disclosure
   ☐ Prepare a virtual tour or take photographs

3. **POST-ACCEPTANCE AND OTHER NECESSARY SALE ACTIVITIES:** In furtherance of the goal of completing the sale of the Property, and provided Broker and others follow the same requirement specified in paragraph 1B for prospective purchasers and other visitors, Seller agrees (☐ DOES NOT agree - see paragraph 4) to give permission to Broker and other authorized persons, to access the inside and outside of the Property in order to engage in all necessary real estate activities to facilitate the sale of the property, including but not limited to those below:
   ► Conduct a Homeowner's Association site inspection
   ► Prepare an appraisal or buyer insurance inspection
   ► Obtain county or other municipal or government inspections or permit approvals
   ► Prepare an agent's visual inspection and disclosure
   ► Put up or remove fumigation tents
   ► Conduct a final verification (walk-through)
   ► Pack and move Seller's furniture or belongings
   ► Prepare a home inspection, and necessary follow-up inspections, on behalf of the buyer
   ► Perform repairs agreed to in the purchase agreement, or improvements necessary to get the Property ready for sale, or prepare bids or estimates

© 2020, California Association of REALTORS®, Inc.

**RLA-CAA 5/21 (PAGE 1 OF 2)**      Broker's Initials _B____      Seller's Initials ( _____ ) ( _____ )

EQUAL HOUSING
OPPORTUNITY

**LISTING AGREEMENT CORONAVIRUS ADDENDUM OR AMENDMENT (RLA-CAA PAGE 1 OF 2)**

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-[...]

4. **SELLER PROHIBITING OR LIMITING ACCESS TO PROPERTY:** If, pursuant to paragraph 1, 2 or 3, Seller instructs Broker that no, or limited, access to the Property will be permitted for marketing, showings, inspections or other purposes relating to the Property's sale, Seller understands that:

A. Broker, other brokers, and prospective buyers may not be able to perform many activities typically conducted in, or in preparation for, a real estate transaction, such as, performing an agent's diligent, visual inspection, or a buyer conducting contractual inspections, including a final verification, of the Property. Any of those restrictions may limit the value or desirability of the Property.

B. **It may be necessary to modify any real estate agreement entered into between Seller and a buyer to take into account the restricted access to the Property. Seller and Brokers are advised to seek the advice of a qualified California real estate attorney to draft applicable language intended to contractually prohibit or limit access by a buyer, Broker or other brokers as otherwise allowed by contract or law.**

5. **PROPERTY SHOWING AND ACCESS RULES:**

A. (1) **SHOWING REQUIREMENTS:** **(i)** Properties must be equipped with proper sanitizing products, including hand sanitizer and disinfecting wipes, and face coverings; **(ii)** Purchasers, real estate licensees, inspectors and other entrants must use face covers, they shall follow social distancing guidelines between themselves and other who are not a member of that visitor's party, and they shall wash or sanitize hands prior to entry into the Property; **(iii)** During a showing, fresh outside air shall be introduced into the Property, for example by opening doors/windows, weather permitting, and operating ventilation systems. Real estate licensees or sellers must open doorways or other areas of ingress and egress prior to in-person property showings to minimize clients touching surfaces.

(2) **SHOWING REQUIREMENT COSTS:** ☐ Seller agrees to pay for necessary supplies of face coverings, and sanitizing products for hands and surfaces and

B. (1) **CLEANING AND SANITIZING:** Commonly touched surfaces and areas shall be cleaned and disinfected. More information on cleaning and disinfecting can be found in the Mandatory Government Showing Requirements, including Best Practices Guidelines and Prevention Plan (C.A.R. Document BPPP).

(2) **CLEANING AND SANITIZING COSTS:** ☐ Broker and agent are authorized to hire, in Seller's name, a service to clean and disinfect the Property, as required above. Seller agrees to pay the service directly or reimburse Broker or agent for any such activities directly billed to Broker or agent by the service provider.

6. **BROKER MARKETING PLAN:** If Broker's Listing Agreement included a marketing plan, that plan is modified to comport with safety guidelines and best practices established by Broker or the local Association of REALTORS® or ☐ in the attached addendum.

7. ☐ **TEMPORARY WITHDRAWAL OF PROPERTY FROM MARKET:** Broker agrees to pause marketing of the Property, including changing to an appropriate status on the MLS, and not to conduct any showings of the Property while this Addendum or Amendment is in effect. The Listing Agreement shall remain in effect during the temporary withdrawal and Broker shall immediately begin all appropriate marketing efforts upon termination of this Addendum or Amendment. The termination date of the Listing Agreement shall (☐ shall NOT) be extended by the same amount of time that the temporary withdrawal is in effect but in no event shall the termination date be extended beyond _____ (date).

8. **SCOPE OF BROKER DUTY:** Seller understands and agrees that Broker will abide by the terms of this Addendum or Amendment and use Broker's best efforts to obtain compliance by others. Broker will provide Seller with a copy of all PEAD-ALL forms signed by and received from any broker or other person entering the Property. Broker cannot and will not verify the representations of others nor guarantee their compliance with Seller's and Broker's instructions. Broker cannot and will not physically prevent entrance to the Property by others who do not agree to the instructions. If Broker becomes aware of such person's failure to comply with the instructions, Broker will promptly inform Seller and take efforts to prevent such person's future access to the property. Seller wants the potential benefits, and ASSUMES THE RISK, of allowing others to enter the Property. Seller releases Broker and its agents, from any loss, liability, expense, claim or cause of action that may arise from allowing entry upon the Property or are related in any manner to this Addendum or Amendment.

9. **ADDITIONAL TERMS:** _____
_____

**By signing below Seller and Broker acknowledge that each has read, understands, has received a copy of, and agrees to the terms of this Listing Agreement Coronavirus Addendum or Amendment.**

Seller _____ *Jason Rund, Chapter 7 Trustee*  Date _____

Seller _____  Date _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Coldwell Banker Realty/Desert Sands Realty*

By _____ DRE Lic# *00672015/01368794* Date 5-25-21
*Bill Friedman/Steve Enlow*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA-CAA 5/21 (PAGE 2 OF 2)

**LISTING AGREEMENT CORONAVIRUS ADDENDUM OR AMENDMENT (RLA-CAA PAGE 2 OF 2)**

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-746A059BBBCD



**CORONAVIRUS
PROPERTY ENTRY ADVISORY AND DECLARATION
– ALL OCCUPANTS AND VISITORS**
(C.A.R. Form PEAD-ALL, 5/21)

This form is for use by all persons entering or allowing access to a property ("Principal"). It applies to all persons allowing access to a property (whether a seller, landlord, tenant, other resident, property manager, broker or agent, or other resident) and all "visitors" (whether a prospective buyer, prospective tenant, inspector, repair person, appraiser, notary, stager, broker or agent, or other person accompanying the visitor to a property). **A visitor does not need to sign a separate form for each property or every entry but instead may provide a copy of a signed PEAD-ALL to the occupant or broker or agent representing the occupant. This form should not be used if circumstances change and the representations are no longer accurate.**

1. **PRINCIPAL ACKNOWLEDGMENTS AND AUTHORIZATIONS:**
   A. Principal is voluntarily entering, or allowing others to enter, a property;
   B. A set of rules, including pictograms, for Principals will be posted at the entrance of the Property and be clearly visible (C.A.R. document PRE). Principal will abide by the Posted Rules of Entry.
   C. Principal has been provided with a ☒ Best Practices Guidelines and Prevention Plan (C.A.R. document BPPP or substantially equivalent document approved by Broker), and will comply with the terms of the BPPP;

2. **PRINCIPAL REPRESENTATIONS:**
   A. To the best of your knowledge: **(i)** You are not currently afflicted with COVID-19, and **(ii)** You have not knowingly, within the last 10 days, been in contact with someone afflicted with, COVID-19;
   B. You are not experiencing COVID-19 symptoms, which may include a fever, or signs of respiratory illness such as cough, shortness of breath or difficulty breathing;
   C. **You will inform Broker if, after the date this document is signed, there is a change in your health condition or knowledge that potentially puts others at risk or invalidates the representations made in this document, in which case you will cease using this PEAD-ALL as a representation to any other person.**

3. **ACCOMPANYING MINORS:** By signing below, adult Principals acknowledge and agree that all property entrant rules, and Principal acknowledgments and representations apply equally to any accompanying minors as they do to Principal. Principal is responsible for the care, safety, and conduct of minors in the Property. Any accompanying minors shall be identified in paragraph 4.

4. **EXCEPTIONS TO REPRESENTATIONS, IDENTIFICATION OF MINORS, AND ADDITIONAL TERMS:** _____
   _____
   _____
   _____
   _____

5. **AGREEMENT, DECLARATION AND ASSUMPTION OF RISK:** By signing below, Principal is declaring the foregoing is true, and that Principal assumes the risk, as applicable, of entering the Property, or allowing someone to enter the Property. **Principal understands and agrees that no one, including but not limited to broker and agents, can guarantee that you will not be exposed to or contract COVID-19.**

**By signing below, Principal acknowledges that Principal has read, understands, and voluntarily agrees to the foregoing and will adhere to the Posted Rules For Entry, and has received a copy of this Coronavirus Property Entry Advisory and Declaration.**

_____          _____     Date _____
(print name)                                              (signature)

_____          _____     Date _____
(print name)                                              (signature)

(For record keeping purposes only)

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS SIGNED PEAD-All FORM. (The initials below are not required but can be used as evidence that the initialing party has received the completed form.)**

Broker/Agent for Buyer/Tenant/Lessee _____ / _____          Broker/Agent for Seller/Landlord/Lessor _____ / _____

                                                                 Seller/Landlord/Lessor _____ / _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

DocuSign Envelope ID: 174239DC-FAAD-45F0-B412-748A0596BBCD



**CALIFORNIA ASSOCIATION OF REALTORS®**

**Mandatory Government Showing Requirements, including
Best Practices Guidelines and Prevention Plan**
(C.A.R. Document BPPP, 5/21)

# ⚠️Check Your City or County for More Restrictive Local Showing Rules

#### More restrictive rules regarding showings by a County or City must be followed.

## Prevention Plan

Unless otherwise specified, this entire document known as the "Mandatory Government Showing Requirements, including Best Practices Guidelines and Prevention Plan" is hereby adopted as Broker's "Prevention Plan." The "Prevention Plan" to be followed by agents who show properties. Brokerages must regularly evaluate compliance with the plan and document and correct deficiencies identified.

## Showing Rules for Listing and Buyer's Agents

1. Agents conducting the showing should meet clients at the property and not drive the client to the property.
2. The listing agent must post the Posted Rules for Entry (C.A.R. Document PRE) at the entrance of the property. These Posted Rules for Entry or a link to them should be part of any online public and MLS listings.
3. Real estate licensees should remind clients to maintain physical distancing during showings and to refrain from touching handles, switches, pulls, etc.
4. During a showing, introduce fresh outside air, for example by opening doors/windows, weather permitting, and operating ventilation systems.
5. Follow the California guidance on gatherings, which requires showings to be kept short, and outlines the number of people that may be present at a showing based on the Tier level of the county in which the property is located.

## Cleaning and Disinfecting the Property and Sanitation Products

1. It is recommended that shown properties have proper sanitation products, including hand sanitizer, face coverings and disinfecting wipes, for use by visitors as needed. No showing should take place if these products are not available to those entering the property.
2. Shown properties should have commonly used surface areas cleaned in accordance with the more recent CDC guidelines, which indicates daily cleaning except in some circumstances. https://www.cdc.gov/coronavirus/2019-ncov/community/disinfecting-building-facility.html

## Rules for Visitors

1. Prior to entering a property, all persons must use the sign in process implemented for showing the property OR have already signed a Coronavirus Property Entry Advisory and Declaration form (C.A.R. Form PEAD) and delivered a copy of that signed form to the listing agent.
2. By signing the PEAD or signing in, the visitor is agreeing to both the Posted Rules of Entry (C.A.R. Document PRE) and this Prevention Plan or other plan adopted by Broker.
3. All visitors must maintain six feet of physical distance between unrelated persons.
4. All visitors must wear face coverings. For individuals with disabilities who cannot wear a face covering or face shield, the showing agent will engage in the interactive process with the individual to discuss any available reasonable accommodations.
5. All visitors must use hand sanitizer or wash their hands immediately upon entry.
6. All visitors should avoid touching knobs, faucets, toilets and toilet handles, light switches, garage door opener buttons, handles and pulls, alarm system controls, fan pulls, remotes, thermostats, switchboxes, gates and gate latches, window locks and sashes, pool coverings, and other such items.

## Rules for Sellers and Occupants

If current occupants are present and/or participate during the showings, in accordance with their legal rights, they should adhere to the same standards regarding physical distancing and property cleaning and disinfecting protocols and promote a safe environment for all persons present.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

© 2021, California Association of REALTORS®, Inc. Not subject to the C.A.R. User Protection Agreement.



BPPP 5/21 (PAGE 1 OF 1)

**BEST PRACTICES GUIDELINES AND PREVENTION PLAN (BPPP PAGE 1 OF 1)**



Coldwell Banker Realty - Westlake Village, 883 S Westlake Blvd Westlake Village CA 91361       Phone: (818)879-3244       Fax: (805)495-2218       81-775 Brown
Lisa Cataldo                                                   Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

EXHIBIT 2



**COLDWELL BANKER** 🟦

RESIDENTIAL BROKERAGE

2444 WILSHIRE BLVD. #102
SANTA MONICA, CA 90403
BUS. (310) 829-3939
FAX (310) 829-7010

## William Friedman

William Friedman is a licensed real estate agent engaged in real estate sales transactions for over 40 years. Mr. Friedman is a top producer for Coldwell Banker. He was previously appointed Designated Area Real Estate Salesperson with Federal Home Loan Mortgage Corporation.

In addition to directly assisting individual homeowners and buyers, he has represented major lending institutions, receivers and bankruptcy trustees, including:

**Trustees:**
Peter Mastan
Elissa D. Miller
David Seror
Bradley D. Sharp
Rosendo Gonzalez
Diane Weil
Richard M. Pachulski
Steve Schwaber
Byron Z. Moldo
James I. Stang
Dennis McGoldrich
David L. Ray
Peter Mastan
Alfred H. Siegel
James Leonard Brown
Lawrence Diamant
Samuel R. Biggs
Carolyn A. Dye
Nancy Knupfer
Edward M. Wolkowitz
F. Wayne Elggren
Richard K. Diamond
R. Todd Neilson
David A. Gill
Helen Ryan Frazer
Heide Kurtz
Howard Ehrenberg
Alberta Stahl
David K. Gottlieb
Brad D. Krasnoff
Michael Kogan
Amy L. Goldman
Jeffrey I. Golden
Ronald L. Durkin
Jeffrey Coyne
Linda Chu
Christopher Barclay
Sam Leslie
Jason Rund
Barry Schwartz
David L. Hahn
Jeremy Faith
Thomas P. Jeremiassen
Thomas Casey

**Lenders:**
Countrywide Home Loans
Federal Home Loan Mortgage Corp
Lincoln Service Corporation
Bank of America
 Cal-Fed Enterprises
 Union Federal Savings
California Federal Bank
 Southern California Savings
 Union Federal Bank
 Residential Funding Corporation/GMAC
Coast Federal Bank

**Receivers:**
 Adrian Stern
 Samuel R. Biggs
 David L. Ray

EXHIBIT 3

# STEVE ENLOW

Palm Desert, CA 92211

(760) 880-3675 - enlowhomes@yahoo.com

## PROFESSIONAL SUMMARY

Accomplished Broker adept at growing business through deep knowledge of the Real Estate Industry and strong relationship-building abilities. Leveraging over 2 decades of experience to build a quality brokerage with quality agents.

## SKILLS

- Senior Real Estate Specialist Designation
- Certified Residential Specialist
- Certified Short Sale and Foreclosure Specialist
- Certified Probate and Trust Specialist
- Accredited Buyer Representative Certified (ABR)
- Certified Completions of my NMLS #2069123
- Certified Mentor for Buffini and Company

## WORK HISTORY

06/2016 to Current     **Broker of Record**

**Desert Sands Realty** – Palm Desert, CA

- 2016- Opened up Desert Sands Realty
- 2017- Grew DSR to 21 Agents
- 2018- Grew DSR to 33 Agents
- 2019-Grew DRS to 35 Agents
- 2020-Grew DSR to 41 agents
- 2021-Grew DSR to one of the top Real Estate Offices in Coachella Valley

06/2014 to 06/2016     **Brokers Associate/Sales Manager**

**Re/Max Consultants** – La Quinta, CA

- Expanded the company in Coachella Valley by recruiting qualified agents.
- Increased sales volume in the La Quinta offices by more than 400%.
- Coached Sales Associates in successful selling methods and encouraged them in marketing strategies that worked.
- Organized promotional events and interacted with community to increase sales volume and agent count.
- 2014-2016- I did not allow for the company of recognize my sales as I felt is was wrong since I was in Management.

10/2007 to 06/2014    **Sales Associate**

**Keller Williams Realty** – La Quinta, CA

- 2008-#1 Listing Agent in My Office.
- 2008-#1 Producing Agent in My Office.
- 2008-#1 Sales Agent in Units Sold.
- 2008-Obtained Broker License.
- 2009-#1 Listing Agent in My Office.
- 2009-#1 Producing Agent in My Office.
- 2009-#1 Sales Agent in Units Sold.
- 2010-#1 Listing Agent in My Office.
- 2010- #1 Producing Agent in My Office.
- 2010-#1 Sales Agent in Units Sold.
- 2011-#1 Listing Agent in My Office.
- 2011-#1 Producing Agent in My Office.
- 2011-#1 Sales Agent in Units Sold.
- 2012-#1 Listing Agent in My Office.
- 2012- #1 Producing Agent in My Office.
- 2012- #1 Sales Agent in Units Sold.
- 2013-#1 Listing Agent in My Office.
- 2013- #1 Producing Agent in My Office.
- 2013- #1 Sales Agent in Units Sold.
- 2014- Left to take on a management position

02/2003 to 10/2007    **Sales Associate**

**Prudential California Realty** – Palm Desert, CA

- Engaged with customers to effectively build rapport and lasting relationships.
- Treated clients like they were my only customer.
- 2003- Chairman Circle Award Winner.
- 2004- Chairman Circle Award Winner.
- 2004- #1 Producing Agent in My Office.
- 2004- #1 Listing Agent in My Office.
- 2005- Chairman Circle Award Winner.
- 2005- #1 Producing Agent in My Office.
- 2005- #1 Listing Agent in My Office.
- 2006- Chairman Circle Award Winner.
- 2006- #1 Producing Agent in My Office.
- 2007- #1 Producing Agent in My Office.

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

SHERIDAN & RUND
840 Apollo Street, Suite 351
El Segundo, CA  90245

A true and correct copy of the foregoing document entitled (*specify*): **Chapter 7 Trustee's Application to Employ Coldwell Banker and Desert Sands Realty as Real Estate Brokers and to Enter into Exclusive Listing Agreement Regarding 81-775 Deer Park, La Quinta, California; Declarations of William Friedman and Steve Enlow in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On May 25, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov
Counsel For Trustee: Levene, Neale, Bender, Yoo & Brill, tjy@lnbyb.com, ctp@lnbyb.com, rps@lnbyb.com
Counsel for Petitioning Creditors: Andrew Goodman, agoodman@andyglaw.com
Counsel for Conservator, Robert Girardi: Leonard Pena, lpena@penalaw.com, penasomaecf@gmail.com, penalr72746@notify.bestcase.com

☒ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL:**
On May 25, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor: Thomas Vincent Girardi, 1126 Wilshire Blvd, Los Angeles, CA 90017
Debtor: Thomas Vincent Girardi, 100 Los Altos Drive, Pasadena, CA 91105

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 25, 2021 | Laura Gitnick | /s/ Laura Gitnick |
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Rafey Balabanian, docket@edelson.com
Ori S Blumenfeld, Ori@MarguliesFaithLaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
Richard D Buckley    richard.buckley@arentfox.com
Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-
4166@ecf.pacerpro.com
Jennifer Witherell Crastz    jcrastz@hrhlaw.com
Ashleigh A Danker    Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;Katrice.ortiz@dinsmore.com
Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
Lei Lei Wang Ekvall    lekvall@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
Richard W Esterkin    richard.esterkin@morganlewis.com
Timothy W Evanston    tevanston@swelawfirm.com,
gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
Jeremy Faith    Jeremy@MarguliesFaithlaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
James J Finsten    , jimfinsten@hotmail.com
James J Finsten    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-
lawyers.net,addy.flores@flpllp.com,laura.rucker@flpllp.com
Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
M. Jonathan Hayes    jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfi
rm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
Razmig Izakelian    razmigizakelian@quinnemanuel.com
Lewis R Landau    Lew@Landaunet.com
Craig G Margulies    Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
Peter J Mastan    peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
Edith R Matthai    ematthai@romalaw.com
Elissa Miller    emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
Scott H Olson    solson@vedderprice.com, scott-olson-
2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
Carmela Pagay    ctp@lnbyb.com
Ambrish B Patel    apatelEI@americaninfosource.com
Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
Matthew D. Resnik    matt@rhmfirm.com,
roksana@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfi
rm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com,justin@ronaldrichards.com
Kevin C Ronk    Kevin@portillooronk.com, Attorneys@portillooronk.com
Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
Gary A Starre    gastarre@gmail.com, mmoonniiee@gmail.com
Richard P Steelman    rps@lnbyb.com, john@lnbyb.com
Philip E Strok    pstrok@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com