| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Rafey S. Balabanian (SBN 315962) rbalabanian@edelson.com EDELSON PC 150 California Street, 18th Floor San Francisco, California 94111 Tel: 415.234.9300/Fax: 415.373.9435 | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* Edelson PC

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>**Thomas Vincent Girardi**<br><br><br>Debtor(s). | CASE NO.: 20-bk-21020-BR<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE:  TBD<br>TIME:  TBD<br>COURTROOM: 1668 |

**Movant**: Edelson PC

1. **Hearing Location:**
   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 1                    **F 4001-1.RFS.NONBK.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  10/04/2021

Edelson PC
_____
Printed name of law firm (if applicable)

Rafey S. Balabanian
_____
Printed name of individual Movant or attorney for Movant

/s/ Rafey S. Balabanian
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                Page 2                **F 4001-1.RFS.NONBK.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☒ Plaintiff

   b. ☐ Defendant

   c. ☐ Other (*specify*):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: Edelson PC v. Girardi

   b. *Docket number*: 20-cv-07115

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:
   Northern District of Illinois

   d. Causes of action or claims for relief (Claims):
   Unjust Enrichment (Constructive Trust)
   Accounting

3. **Bankruptcy Case History:**

   a. ☐ A voluntary  ☒ An involuntary  petition under chapter  ☒ 7  ☐ 11  ☐ 12  ☐ 13
   was filed on (*date*)  12/18/2020  .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11 ☐ 12  ☐ 13
   was entered on (*date*) _____ .

   c. ☐ A plan was confirmed on (*date*) _____ .

4. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☒ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                        Page 3                                **F 4001-1.RFS.NONBK.MOTION**

f. ☐ The bankruptcy case was filed in bad faith.

    (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

    (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

    (4) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☐ Other (*specify*):


5. ~~**Grounds for Annulment of Stay.** Movant took postpetition actions against the Debtor.~~

    a. ☐ ~~The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.~~

    b. ☐ ~~Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____ .~~

    c. ☐ ~~Other (*specify*):~~


6. **Evidence in Support of Motion: (*Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

    a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

    b. ☐ Supplemental declaration(s).

    c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____ .

    d. ☐ Other evidence (*specify*):


7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☒ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                          **F 4001-1.RFS.NONBK.MOTION**

4.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5.  ☐  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6.  ☐  The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7.  ☐  The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8.  ☒  Other relief requested.


Date:  10/04/2021

Edelson PC
Printed name of law firm (*if applicable*)

Rafey S. Balabanian
Printed name of individual Movant or attorney for Movant


/s/ Rafey S. Balabanian
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                          F 4001-1.RFS.NONBK.MOTION

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.234.9300/Fax: 415.373.9435

*Counsel for Interested Party Edelson PC*

# UNITED STATES BANKRUPCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>THOMAS VINCENT GIRARDI,<br><br>*Debtor*. | Case No. 2:20-bk-21020-BR<br><br>[Chapter 7]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CLARIFY SCOPE OF AUTOMATIC STAY**<br><br>Hon. Barry Russell<br><br>Date:  TBD<br>Time: TBD<br>Place: Courtroom 1668<br>          Roybal Federal Building<br>          255 E. Temple Street<br>          Los Angeles, CA 90012 |

1    Creditor Edelson PC, pursuant to Bankruptcy Rule 4001, has filed a motion to

2    clarify the absence of the automatic stay as to Erika Girardi, and submits this

3    memorandum of points and authorities in support. Edelson PC expects that the

4    Trustee will file a conditional non-opposition to the motion. In support of the motion,

5    Edelson PC states:

6    1.    On December 2, 2020, Edelson PC filed an action against Thomas

7    Girardi, Girardi Keese, and Erika Girardi, among other persons and entities, seeking

8    to recover client settlement funds owed to clients that Edelson PC and Girardi Keese

9    had jointly represented in the *Lion Air* litigation, as well as Edelson PC's attorneys'

10    fees. *See Edelson PC v. Girardi*, No. 20-cv-07115 (N.D. Ill.) ("the Edelson Action").

11    The complaint alleges that Thomas Girardi has for years embezzled from clients and

12    taken on debt to fund a lavish lifestyle for both himself and his wife, Erika Girardi.[1]

13    2.    Those revelations led to this bankruptcy, as well as the parallel

14    bankruptcy of Girardi Keese.

15    3.    Due to the pending bankruptcies, Edelson PC's case is stayed as against

16    Tom and Girardi Keese. However, Edelson PC does not believe that the automatic

17    stay in this action prevents it from proceeding as against Erika, and it now seeks an

18    order clarifying that it is permitted to do so.

19    4.    First, the automatic stay does not apply to Erika. *See Chugach Timber*

20    *Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Products,*

21    *Inc.),* 23 F.3d 241, 246 (9th Cir. 1994) ("As a general rule, 'the automatic stay of

22    section 362(a) protects only the debtor.... It does not protect non-debtor parties.'"); *In*

23    *re Metro. Mortg. & Sec. Co., Inc.*, 325 B.R. 851, 856 (Bankr. E.D. Wash. 2005) ("It

24    is the general rule that the automatic stay of § 362(a)(1) and (a)(3) is available only to

25

26    ─────────────────

[1]    Thomas Girardi is referred to as "Tom," and Erika Girardi as "Erika," for

27    clarity in this motion.

1   debtors and not to third-party defendants or co-defendants."). There is no "co-debtor"

2   stay in a Chapter 7 bankruptcy. *See In re Fadel*, 492 B.R. 1, 15 (B.A.P. 9th Cir. 2013)

3   (describing co-debtor Chapter 13 stay).

4          5.     Further, Edelson does not seek to obtain assets that ever belonged to

5   estate. Instead, it seeks its own, traceable assets that were embezzled by Tom and

6   potentially given to Erika. The automatic stay provides no protection to a third party

7   in this circumstance. *See In re N. Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1576

8   (9th Cir.), *amended,* 774 F.2d 1390 (9th Cir. 1985) ("Bankruptcy trustees have been

9   held to have no interest in property acquired by fraud of bankrupts, as against the

10   rightful owners of the property."); *see also In re Newpower*, 233 F.3d 922, 931 (6th

11   Cir. 2000) ("Thus, we hold that the bankruptcy court erred in concluding that money

12   which debtor embezzled from NPI was part of debtor's bankruptcy estate.

13   Consequently, we also hold that the debtor's bankruptcy estate has no property

14   interest in such embezzled funds which are now in the hands of third parties.").

15          6.     Second, and as we've explained in the Edelson Action, we firmly believe

16   that the clients need to be paid first. The firm's interests accordingly are aligned with

17   the Trustee here: if client funds are located in the firm's pursuit of Erika in the

18   Edelson Action, they will go to the clients.

19          7.     If there are other assets located in Erika's possession that should

20   properly be apportioned by this Court that we discover while pursuing the Edelson

21   Action, Edelson will work with the Trustee to make sure that occurs, at which point

22   those assets will become subject to the jurisdiction of this Court. *See Rajala v.

23   Gardner*, 709 F.3d 1031, 1038 (10th Cir. 2013) ("In other words, pursuant to

24   § 541(a)(3), the automatic stay does not apply to fraudulently transferred property

25   until the transfer is avoided under § 548, and the property is recovered under § 550.").

26

27

1   Prior to that happening, there is no basis to prevent Edelson PC from pursuing Erika

2   in the Edelson Action.

3       WHEREFORE, Edelson PC respectfully requests that this Court enter an Order

4   that it may proceed under applicable non-bankruptcy law to enforce its remedies and

5   proceed to a final judgment in *Edelson PC v. Girardi*, No. 20-cv-07115 (N.D. Ill.)

6   against Erika Girardi, provided that the stay remains in effect with respect to

7   enforcement of any property of the Debtor's bankruptcy estate, and that the Court

8   grant any further or alternative relief as may be appropriate and just.

9

10                   Respectfully submitted,

11                   EDELSON PC,

12

13   Dated: October 4, 2021       By: /s/Rafey S. Balabanian

14                   Rafey S. Balabanian (SBN 315962)

15                   rbalabanian@edelson.com
                  EDELSON PC

16                   150 California Street, 18th Floor
                  San Francisco, California 94111

17                   Tel: 415.234.9300/Fax: 415.373.9435

18

19

20

21

22

23

24

25

26

27

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*)  J. Eli Wade-Scott                                                                    , declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

    ☐  I am the Movant.
    ☒  I am Movant's attorney of record in the Nonbankruptcy Action.
    ☐  I am employed by Movant as (*title and capacity*):
    ☐  Other (*specify*):

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3.  In the Nonbankruptcy Action, Movant is:

    ☒  Plaintiff
    ☐  Defendant
    ☐  Other (*specify):*

4.  The Nonbankruptcy Action is pending as:

    a.  *Name of Nonbankruptcy Action*: Edelson PC v. Girardi
    b.  *Docket number*: 20-cv-07115
    c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
        Northern District of Illinois

5.  **Procedural Status of Nonbankruptcy Action**:

    a.  The Claims are:
        Unjust Enrichment (Constructive Trust)
        Accounting


    b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit  A    .

    c.  The Nonbankruptcy Action was filed on (*date*)  12/02/2021   .

    d.  ~~Trial or hearing began/is scheduled to begin on (*date*)~~ _____.

    e.  ~~The trial or hearing is estimated to require _____ days (*specify*)~~.

    f.  Other plaintiffs in the Nonbankruptcy Action are (*specify*):
        None.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                          **F 4001-1.RFS.NONBK.MOTION**

g.  Other defendants in the Nonbankruptcy Action are (*specify*):

Thomas Girardi, Girardi Keese, Erika Girardi, EJ Global LLC, Girardi Financial, Inc., David Lira, Keith Griffin

6.  **Grounds for relief from stay:**

a.  ☒  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.  ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.  ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):


d.  ☐  The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

(1)  ☐  It is currently set for trial on (*date*) _____.

(2)  ☐  It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____. The basis for this belief is (*specify*):


(3)  ☐  The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

(1)  ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(2)  ☐  The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):


(3)  ☐  Multiple bankruptcy cases affecting the Property include:

(A)  Case name:
Case number:                                    Chapter:
Date filed:              Date discharged:              Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 7                                    **F 4001-1.RFS.NONBK.MOTION**

(B) Case name:

    Case number:                    Chapter:

    Date filed:           Date discharged:         Date dismissed:

    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

(C) Case name:

    Case number:                    Chapter:

    Date filed:           Date discharged:         Date dismissed:

    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f. ☐ See attached continuation page for other facts justifying relief from stay.

7. ☐ ~~Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).~~

    a. ☐ ~~These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.~~

    b. ☐ ~~Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____~~

    c. ☐ ~~For other facts justifying annulment, see attached continuation page.~~

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/04/2021 | J. Eli Wade-Scott | /s/ J. Eli Wade-Scott |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 8                    **F 4001-1.RFS.NONBK.MOTION**

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No.: |
| *Plaintiff,* | |
| *v.* | |
| THOMAS GIRARDI, an individual, GIRARDI KEESE, a California general partnership, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL LLC, a California limited liability company, GIRARDI FINANCIAL, INC., a Nevada corporation, DAVID LIRA, an individual, KEITH GRIFFIN, an individual, JOHNSTON HUTCHINSON & LIRA LLP, a California limited liability partnership, ROBERT FINNERTY, an individual, ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation, STILLWELL MADISON, LLC, a Delaware limited liability company, and JOHN DOE 1-10, | |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Edelson PC ("Edelson") brings this lawsuit against Defendants Thomas Girardi,

Girardi Keese, Erika Girardi (a/k/a Erika Jayne), EJ Global LLC, Girardi Financial, Inc., David

Lira, Keith Griffin, Johnston Hutchinson & Lira LLP, Robert Finnerty, Abir Cohen Treyzon

Salo, LLP, California Attorney Lending II, Inc., Stillwell Madison, LLC, and John Doe 1-10 to

recover monies due and owing to itself, as well as to seek the disgorgement of all monies due and owing to all clients of Girardi Keese in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1.     Tom Girardi ("Tom" or "Girardi") and his law firm Girardi Keese ("GK") are on the verge of financial collapse and locked in a downward spiral of mounting debts and dwindling funds. They presently owe tens of millions of dollars to clients, lenders, co-counsel, settlement administrators, and experts, to name only a few, and have tried in vain to forestall the payment of these debts with hollow promises, excuses, misdirection, and outright fraud.

2.     At the heart of this deception is Defendant Girardi and his need to fund outrageous lifestyles for himself and his soon-to-be ex-wife, Erika Jayne ("Erika" or "Jayne"). Tom and Erika have reached celebrity status in the glitz-and-glam world of Hollywood and Beverly Hills. Tom is a well-known and powerful personal injury attorney. Erika is a performer who is perhaps better known for her years-long presence on *The Real Housewives of Beverly Hills*, a show centered on the larger-than-life extravagances of its cast members. To keep up their celebrity status, Tom and Erika must project a public image of obscene wealth at all times, and at whatever the cost.

3.     As a result, and most egregiously, Tom has resorted to embezzling the proceeds of settlements that should have been directed to his clients—including, as the basis for this Complaint, the widows and orphans who lost loved ones in the tragic crash of Lion Air Flight 610—in order to continue funding his and Erika's lavish Beverly Hills lifestyles.

4.     While Erika publicly filed for divorce this month, on information and belief, that

"divorce" is simply a sham attempt to fraudulently protect Tom's and Erika's money from those that seek to collect on debts owed by Tom and his law firm GK. This would not be the first attempt by Tom to hide and divert assets. Indeed, in a likely violation of the California Uniform Fraudulent Transfer Act (Cal. Civ. Code § 3439), Defendant Jayne's company, Defendant EJ Global, has allegedly received *tens of millions* in "loans" directly from Defendant GK, of which Tom is the sole equity shareholder.

5.      Tom's downward spiral appears to have finally bottomed out. On information and belief, Tom's mounting loans and debt have piled up to such an extent that GK can no longer meet its financial obligations and it is likely that GK will soon not be a going concern. But Tom's litigation financers and other creditors (including Erika) are not the ones who stand to lose the most from the fall of GK. Instead, it's the Lion Air clients (and potentially other clients) who stand to lose everything. That's because, on information and belief, Tom has embezzled and redirected the funds that were due the Lion Air clients (and of lesser importance, Plaintiff Edelson) to his family members, friends, and his and GK's lenders and other creditors.

6.      These family members, friends, lenders and other creditors of Defendants Girardi and GK have not simply been passively receiving funds that could plausibly be construed as valid repayments for loans made or obligations owed. Instead, with Defendants Girardi's and GK's financial woes in full view, these people and entities—including Defendants Lira, California Attorney Lending, and Stillwell Madison—have, on information and belief, with the agreement of Defendants Girardi and GK, structured an inter-creditor agreement amongst themselves that redirects to them any monies received into the bank accounts of Defendant GK. Pursuant to that agreement, on information and belief, Defendants Lira, California Attorney Lending, and Does 1-10 have knowingly demanded and received embezzled funds belonging to

the Lion Air clients and Plaintiff Edelson, despite all the while knowing that those funds belong to the Lion Air clients represented by Defendant GK and Plaintiff Edelson PC (itself counsel of record in the Lion Air litigation).

7.    Girardi's and GK's embezzlement and wrongful transfers to third parties of client funds simply cannot go unchecked. And while the present Complaint is brought in part to enforce Plaintiff's fee agreement with GK, those fees are not the primary focus of this Complaint; rather, this Complaint also seeks to force GK, a firm that pushes the slogan "*We Treat Our Clients Like Family*," to uphold its fiduciary duty to the surviving families of the victims of Lion Air Flight 610 that it agreed to represent.

8.    In October 2018, Lion Air Flight 610 crashed, killing all 189 individuals on board. Litigation against Boeing followed, and nearly a dozen families, including widows and minor children, retained GK to represent them in seeking to recover for the tragic loss of their loved ones. Plaintiff Edelson PC was later brought in as local counsel to assist in the litigation and settlement process. The litigation was individually settled for those clients in early 2020 for a substantial, but confidential, sum. The proceeds of those settlements were allegedly transferred thereafter from Boeing to GK.

9.    Yet, on information and belief, Girardi, with cover for his actions provided by his former partner David Lira ("Lira") and current partner Keith Griffin ("Griffin"), prevented a significant portion of that money, and potentially all of it, from ever reaching the victims of this horrific crash. Girardi has instead kept it for his own purposes and doled it out to his friends and family, all the while evading attempts by the clients to gain access to it.[1] On information and

---

[1]    As described herein, Edelson only recently learned of the true nature of this situation, and concurrent with the filing of this Complaint, is also filing a Motion for Rule to Show Cause with the Court in *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

belief, the Lion Air settlement proceeds are not the only client funds Girardi has withheld and misappropriated for personal use.

10.    In addition to embezzling his clients' funds, Girardi has also taken massive litigation loans for the stated purposes of funding the successful operation of his law firm (utilizing ongoing cases and his own personal guarantee as collateral). Contrary to that purpose, on information and belief, these loans appear to have been utilized to fund Girardi's and Jayne's personal spending habits. Indeed, the timing of new litigation loans have allegedly corresponded with new "loans" from GK to his wife's company, Defendant EJ Global. As a result of this misuse, millions of dollars in loans have fallen into default, resulting in litigation against Tom, his wife, and his firm.

11.    In a Madoff-inspired attempt to protect his own wealth and appease his aggressive and well-heeled lenders, on information and belief, Girardi has in fact used client settlement funds, including money owed to the families of the victims of Lion Air Flight 610, to pay down loans, leaving the clients with little, if anything.

12.    Defendant California Attorney Lending is one such lender. On information and belief, it has knowingly received embezzled client money from the Lion Air settlements. Similarly, Defendant Stillwell Madison, a lender that recently had a writ of attachment for $5,847,411 placed against GK for a defaulted loan, and that is presently seeking to recover those funds (and potentially has recovered some already), may also be receiving the proceeds of the embezzled client money.[2]

13.    But these two lenders are hardly alone. Numerous other lenders and creditors

---

[2]    Importantly, the Defendants named here are only those that are publicly known. On information and belief, others, included here as Does 1-10, have also improperly received Lion Air client settlement funds and will be identified through discovery and the accounting process. This includes other lenders, co-counsel, referring counsel, and vendors, among others.

have collected or are seeking to collect from Girardi. Yet, on information and belief, Girardi continues to embezzle funds owed to clients into his own personal and firm bank accounts. In turn, he continues to use that money to fund his and Erika's lavish lifestyle, release personal guarantees, pay down loans, route the money to friends and family, and satisfy other outstanding debts.

14.    By receiving Tom's money, creditors are accepting ill-gotten gains, which they know or should know was money collected by Girardi through criminal embezzlement of client funds.

15.    Secondary to the concerns regarding client funds, Defendants GK, Girardi, Griffin, and Lira have breached enforceable co-counsel agreements with Plaintiff Edelson for the litigation of cases centralized in *In Re: Lion Air Flight JT 610 Crash*. On information and belief, the money Plaintiff Edelson is owed is also being misappropriated by Defendants, including by Defendant California Attorney Lending. California Attorney Lending has accepted illegally gotten gains it knew or should have known were not the property of GK, but instead belonged to Edelson PC, such that California Attorney Lending tortiously interfered with the fee contract between Edelson and GK.[3]

16.    As such, this lawsuit requests that the Court order (1) an accounting of all funds transferred from Boeing that were intended for any GK client (inclusive of any transfers to third parties associated with, or transfers made for the benefit of, GK) related to settlements in *In Re: Lion Air Flight JT 610 Crash*, and a full accounting of what subsequently became of those funds; (2) the disgorgement of all such funds from any Defendant (or any non-party) who is improperly

---

[3]    For the sake of clarity, Plaintiff Edelson *will not* accept any attorneys' fees for its work in *In Re: Lion Air Flight JT 610 Crash* until a full, court-supervised accounting has been performed that confirms each and every relevant client has first been paid in full.

in receipt of those funds; (3) the transfer of those funds to the appropriate client recipients; and,

*only after those steps have been accomplished* (and any other remedial steps the Court deems

warranted), (4) the payment of the contractually required attorneys' fees to Edelson PC.

## PARTIES

17.    Plaintiff Edelson PC is an Illinois professional corporation operating as a law

firm, with its principal place of business located at 350 North LaSalle, 14th Floor, Chicago,

Illinois 60654. Edelson PC also has offices located at 123 Townsend Street, Suite 100, San

Francisco, California 94107.

18.    Defendant Thomas Girardi is a natural person and resident of the State of

California. Thomas Girardi is the sole equity partner of Defendant GK.

19.    Defendant GK is a general partnership formed under the laws of the State of

California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles,

California 90017. GK does business in the State of Illinois and in this District.

20.     Defendant Erika Girardi, also known as Erika Jayne, is a natural person and

resident of the State of California. Jayne is the wife of Defendant Girardi. On information and

belief, Jayne has a legal and financial interest in a community property interest in GK and the

actions of her husband, Girardi, taken for the benefit of their marital community property. Jayne

is also a principal owner of Defendants EJ Global and Girardi Financial.

21.    Defendant EJ Global LLC is a limited liability company existing under the laws

of the State of California, with its principal place of business located at 1126 Wilshire

Boulevard, Los Angeles, California 90017. EJ Global LLC does business in the State of Illinois

and in this District.

22.    Defendant Girardi Financial, Inc. is a corporation existing under the laws of the

7

State of Nevada, with its principal place of business located at 1126 Wilshire Boulevard, Los

Angeles, California 90017. The President of Girardi Financial is Defendant Girardi, the

Secretary is Defendant Jayne, and the Treasurer and Director is Defendant Lira. Girardi

Financial does business in the State of Illinois and in this District. Plaintiff is including Girardi

Financial purely as a defendant to Count II, which seeks an accounting.

23.    Defendant Lira is a natural person and resident of the State of California. Lira is

formerly a partner at Defendant GK (as of May 2020) and a current partner at Defendant

Johnston Hutchinson & Lira LLP. Lira is also Defendant Girardi's son-in-law.

24.    Defendant Griffin is a natural person and a resident of the State of California.

Griffin is currently a partner at Defendant GK.

25.    Defendant Johnston Hutchinson & Lira LLP is a California limited liability

partnership with its principal place of business located at Two California Plaza, 350 South Grand

Avenue, Suite 2220, Los Angeles, California 90071. Johnston Hutchinson & Lira LLP does

business in the State of Illinois and in this District.

26.    Robert Finnerty ("Finnerty") is a natural person and resident of the State of

California. Finnerty is formerly a partner at Defendant GK (as of May 2020) and currently a

partner at Defendant Abir Cohen Treyzon Salo. Plaintiff is including Finnerty purely as a

defendant to Count II, which seeks an accounting.

27.    Defendant Abir Cohen Treyzon Salo, LLP, is a California limited liability

partnership with its principal place of business located at 16001 Ventura Boulevard, Suite 200,

Encino, California 91436. Abir Cohen Treyzon Salo does business in the State of Illinois and in

this District. Plaintiff is including Abir Cohen Treyzon Salo purely as a defendant to Count II,

which seeks an accounting.

28.    Defendant California Attorney Lending II, Inc. is a corporation existing under the laws of the State of New York with its principal place of business located at 6400 Main Street, Suite 120, Williamsville, New York 14221. California Attorney Lending II does business in the State of Illinois and in this District.

29.    Defendant Stillwell Madison, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 36600 North Pima Road, Suite 202B, Carefree, Arizona 85377. Stillwell Madison does business in the State of Illinois and in this District. Plaintiff is including Stillwell Madison purely as a defendant to Count II, which seeks an accounting.

30.    Defendants John Doe 1-10 ("John Doe 1-10" or "Doe Defendants") are yet to be identified entities and individuals who have improperly received and retained *Lion Air* client settlement funds. The Doe Defendants will be identified by and through discovery and the accounting process, and likely include lenders, co-counsel, referring counsel, and vendors, among others.

## JURISDICTION AND VENUE

31.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the jurisdictional amount exceeds $75,000 and the Plaintiff does not share a state of citizenship with any Defendant.

32.    The Court has personal jurisdiction over Defendants because they conduct business in this District and because they have committed tortious acts purposefully directed at Illinois, and such conduct was designed to create an injury in Illinois and this District.

33.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants have committed tortious acts purposefully in this District and the underlying litigation giving rise to

this Action (*In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.)) is ongoing in this District before the Honorable Thomas M. Durkin.

<u>**FACTUAL ALLEGATIONS**</u>

**The Crash of Lion Air Flight 610 and Subsequent Litigation**

34.     On the morning of October 29, 2018, Lion Air Flight 610, flying on a Boeing 737 Max 8 model aircraft, departed Jakarta, Indonesia. Shortly after takeoff, the flight crew contacted air traffic control and requested to return to Jakarta, but the flight never made it.

35.     After a series of chaotic maneuvers resulting from a fundamental system failure, Flight 610 plummeted into the ocean. All 189 souls on board, who would have experienced unthinkable terror in their final moments, were killed on impact.

36.     Following this tragic accident, government investigations determined that the aircraft's anti-stall system—the maneuvering characteristics augmentation system—caused the aircraft's nose to suddenly, and without warning, drop and dive steeply.

37.     Following the revelations regarding Boeing's design defects and other failures, litigation ensued on behalf of those that had lost loved ones—in some cases entire families and minors who lost both parents. More than a dozen of those families directly or indirectly retained GK and expected that Girardi and other lawyers at his firm would represent their best interests and deliver the proceeds of any successful outcome to them.

38.     In the months that followed, litigation took place in this District, with the assistance of Plaintiff Edelson, before the Honorable Thomas M. Durkin, eventually leading to a series of mediations. In the end, Boeing reached individual settlements with each of the clients and families represented by GK and Edelson. The principle terms of the settlements were reached in early 2020 and finalized thereafter.

10

**The Failure of Defendants Girardi, GK, Griffin, and Lira to Transfer
Proceeds of the Settlements to the Victims' Families**

39.     Throughout the pendency of the Lion Air litigation and the post-settlement

process, GK attorneys maintained total and exclusive control over communications with the

clients.

40.     In February 2020, Edelson attorney Ari Scharg was notified by GK attorney

Griffin that he was beginning to receive executed settlement agreements from the clients. As was

the plan, Edelson, in turn, began preparing motions seeking court approval for each settlement

providing for an allocation of settlement proceeds to minor heirs of the decedents, the first of

which, was filed on February 21, 2020. (Dkt. 379.)[4] That motion was granted by the Court on

February 24, 2020 and the case was dismissed. (Dkt. 384.)

41.     Soon after the order dismissing the case was entered on February 24, 2020, Mr.

Scharg inquired with Defendant Griffin as to when he expected Boeing to fund the settlements.

Griffin stated that Boeing was waiting to receive all of the executed settlement agreements from

each of GK's and Edelson's collective clients. Griffin further stated that he was still waiting on

several releases to be executed and returned but expected to receive them shortly.

42.     The following week, Edelson secured approval of three more settlement

agreements involving allocations to minors that were returned executed, and those cases were

also dismissed. (Dkts. 419, 424, 427.) Meanwhile, Defendant Griffin and his then partner at GK,

Defendant Lira, continued to represent that they expected the remaining settlement agreements to

be executed by the clients shortly, at which time Boeing would fund the settlements. As it turned

out, though, it would take several more months for the remaining settlement agreements to be

executed by the clients.

---

[4]     All "Dkt." cites are to *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

43.     Beginning in April 2020, Edelson attorneys began reaching out to Defendants Griffin and Lira, almost on a weekly basis, to get an update on the status of getting the settlement agreements executed and the settlements funded—the thought being that the clients who had executed the settlement agreements shouldn't have to continue to wait for the others to do the same. Defendants Griffin and Lira would respond periodically with little more than a statement that they were still waiting on executed settlement agreements from the clients, and that nothing could be done to move Boeing off its position that it needed all of the clients to sign and return the settlement agreements before it would release the settlement proceeds.

44.     On May 11, 2020, Jay Edelson sent Defendant Lira an email expressing concern about the delay in finalizing the settlements (particularly in light of Boeing's public pronouncements at the time that it was considering whether to file for bankruptcy) and the need to get them funded for the sake of the clients. Defendant Lira responded by email, providing a more detailed explanation of where things stood on specific releases, why it was taking so long for them to be translated and executed by the clients, and repeating that Boeing would release the settlement funds when they received the signed releases. He assured Edelson that the funds were paid by insurance and secure in an escrow account, so there was no risk posed by a potential bankruptcy. Lira's explanation was not completely satisfying, but Lira and the other lawyers at GK were the only ones in contact with the clients and Lira's explanation of why it was taking longer for certain of them to execute and return the settlement agreements seemed plausible.

45.     But several more weeks passed without any further updates regarding the status of the outstanding settlement agreements. Then, on June 11, 2020, Defendant Lira sent an email to Edelson asking to set up a call to discuss the status of the cases. On that call, which occurred on June 16, 2020, Defendant Lira informed Edelson that he had recently resigned from GK and

explained that the settlements had finally been funded and that the bulk of the funds were received and held by GK. Though Defendant Lira was intent on discussing which firm he believed should be held responsible for paying Edelson's share of attorneys' fees (GK or his new firm), the attorneys at Edelson were instead focused on the more fundamental question that they had been asking for several months: Have the clients received their proceeds from the settlements?

46.     Defendant Lira, now a partner at Defendant Johnston Hutchinson & Lira, failed to provide a coherent answer to this question, and instead, on July 6, 2020, sent a letter to Edelson that, without detail, claimed that certain Lion Air clients had received their settlement proceeds by Boeing, certain clients had not, and that a check to Edelson for some portion of the attorneys' fees owed to them was included with the letter as "partial payment." Edelson did not then, and has not since, cashed that check.

47.     A few days later, Edelson responded with a letter to Defendants Girardi and Lira, which stated, among other things, that "in response to David's cover letter that encloses a check to our firm for some portion of the fees owed on three of the Lion Air cases, we decline to accept any monies until we are given adequate assurances that each and every one of our collective clients who are entitled to settlement monies have, in fact, received the entirety of the monies owed." The letter also requested, again, information about the status of the settlement proceeds owed to the clients.

48.     Several days later, Defendant Lira responded, but again did not say with any clarity which of the clients had received full settlement payments and whether any were still owed money. Lira also took the position that because he left GK, he no longer had any ongoing involvement in the cases and any further questions regarding the status of the settlement

13

proceeds owed to the clients and the fees owed to Edelson should be directed to Defendants Girardi and Griffin, since GK was the law firm that had been engaged by and had the relationship with the clients.

49.     Edelson attorneys continued to press Defendants Girardi and Griffin as to the status of the settlement proceeds and whether any clients were yet to be paid. Starting in July 2020, Edelson's managing partner, Rafey Balabanian, took the lead in communicating with Girardi and Griffin. In a series of phone calls that took place over the course of the latter half of July 2020, Defendant Griffin indicated that despite Boeing fully funding the settlements, he understood from Defendant Girardi that the clients had not received the full amount owed to them and were still owed about half of what was due to them. Griffin could not elaborate on why such an amount was still owed to certain clients or the status of the remaining settlement proceeds because Girardi is the sole equity owner of GK with sole and exclusive control over the firm's bank accounts, including its client trust accounts. As a result, Griffin said those questions could only be answered by Girardi. Griffin also claimed that part of the difficulty in speaking with and delay in getting answers from Girardi was attributable to Girardi being unavailable in recent weeks due to a serious illness that caused him to be hospitalized and for which he sought treatment.

50.     Balabanian ultimately got an opportunity to speak with Defendant Girardi in late July. Girardi's explanation regarding the status of the settlement proceeds was extremely convoluted and meandering, and he couched everything in terms of him recovering from the illness that he was being treated for, so Balabanian would have to bear with his inability to give a long and detailed explanation of why payment of the settlement proceeds to the clients (and of lesser importance, payment of Edelson's portion of fees) had been delayed. Girardi claimed that

14

his illness, which caused him to be away from his firm for several weeks, is what ultimately

caused the—in his words—"mistake" of not getting certain clients paid in full, and that he

planned to immediately remedy the issue by getting the remaining amount that was owed wired

out[5] within a few days. Girardi said that he or Griffin would follow up once that occurred.

51.     Despite his assurances, Girardi did not follow back up with Balabanian. Instead,

Balabanian made several more attempts over the course of the following weeks to reach Girardi

to confirm that payment had been made to the clients. They finally spoke again in late August

2020, at which point the conversation quickly became contentious after Girardi stated that he

didn't need to explain himself to Balabanian when it came to clients of GK and that, as he

promised a few weeks ago, arrangements had been made for them to receive the remaining

monies owed to them, as well as the attorneys' fees owed to Edelson. Girardi then advised that

Griffin would follow up and quickly ended the call.

52.     In what started to feel like a recurring theme, though, Balabanian was the one who

would need to follow up to confirm Girardi had made good on his promises. Eventually, though,

on or about September 3, 2020, Griffin advised Balabanian that a wire for half of the outstanding

amount owed to the clients had been initiated, with the other half set to be initiated the following

Monday. While Griffin said he could send proof of the wired funds, he ultimately never did.

53.     With the payments to the clients seemingly out of the way, the conversation

shifted to the fees owed to Edelson on account of the settlements. As Edelson had made clear

---

[5]     Consistent with what Defendants Griffin and Lira were initially saying, Girardi also
attributed the delay in paying out the settlement proceeds to the clients to Boeing's refusal to
fund the settlement without all of the executed settlement agreements in hand. Girardi also
mentioned something about working on and even retaining lawyers for the benefit of the clients
to assist with some sort of tax issue affecting the tax treatment of proceeds recovered on account
of wrongful death claims and that getting a determination from the IRS was also holding up
finalizing and getting the settlements funded. In all honesty, the conversation with Girardi was
strained and he didn't make a whole lot of sense when it came to this point.

from the outset, the timing of payment of their fees wasn't of particular concern and that since the clients had been paid, payment of the fees could be made at any time before the end of the year. To that end, Balabanian requested, and Griffin agreed to provide, a final statement showing the settlement proceeds disbursed, and the amount of fees owed to Edelson, and when they would likely be paid.

54.     Then, in November 2020, Plaintiff Edelson received another letter from Defendant Lira regarding the settlement proceeds paid to certain other Lion Air clients and how said proceeds were being distributed. Among other things, the letter stated that GK's 50% interest (which included Edelson portion) in the gross attorneys' fees generated from the settlements of certain of the clients' cases had been directly transferred to Defendant California Attorney Lending at the direction of Girardi. Lira also included a check to Edelson as another partial payment of the attorneys' fees owed to them. Edelson did not then, and has not since, cashed this check. This letter makes clear Lira had knowledge of and cooperated with Girardi's misappropriation and conversion of settlement proceeds, since at least a portion of said proceeds were being transferred to (and accepted by) lenders of Girardi instead of Edelson who are rightfully entitled to them.

55.     Though Edelson was under the impression that the settlement proceeds owed to the clients had finally been paid, Lira's letter once again raised concerns, particularly with regard to the part referencing Girardi directing the attorneys' fee portion of the settlement proceeds that, in part, belonged to Edelson, to a litigation funder. As a result, Balabanian reached back out to Griffin to inquire about whether he could provide any more insight into when Edelson could expect payment of its fees.

16

56.     Defendant Griffin responded that there had been some "positive developments," but that Girardi was undergoing another medical procedure, so Griffin needed a couple more days to speak with him and report back. After several more days passed, Balabanian again followed up with Griffin and inquired about what Griffin characterized as "positive developments." Griffin advised that the positive developments were that certain of the Lion Air clients had demanded a call with Girardi to gain an understanding of when they would be paid the balance of the settlement proceeds owed to them. Balabanian responded that his understanding from Girardi and Griffin was that the clients had been paid, and that the only outstanding obligation on the Lion Air Litigation was Edelson's attorneys' fees. But Griffin advised that that understanding was mistaken, and that Girardi hadn't actually paid the clients as previously represented. Griffin further stated that he was skeptical that Girardi or GK had the financial means to satisfy GK's obligations to those certain Lion Air clients that are still owed settlement proceeds and Edelson.

57.     In the week following this letter, and after attempts by Edelson to elicit additional information from Defendant Griffin, Girardi called Balabanian numerous times (including over Thanksgiving weekend) to plead his case and presumably ward off this Complaint. Two voicemails from Girardi can be found [here](#)[6] and [here](#).[7]

58.     The first voicemail states, in part:

> We're doing good on this thing, getting things squared away and shit. Don't be mean to me, be nice to me. I'm doing good. It was because of me that we got this by the way. … I'll be in touch, don't worry about everything, we're friends, things are going to work out good.

The second voicemail states, in part:

> We screwed up here a little bit. … We had three different air crashes and they got a little

---

[6]     https://edelson.com/wp-content/uploads/voicemail-2101.mp3
[7]     https://edelson.com/wp-content/uploads/voicemail-2099.mp3

screwed up. I'll get everything worked out by Thursday. I'm so sorry, this never happened before, anyway, everything will be smoothed over on Thursday.

59.     Just before the filing of this Complaint, Jay Edelson and Rafey Balabanian reached out to and spoke with Defendant Griffin. During that call, Defendant Griffin informed them that they should get in touch with Defendant Robert Finnerty, who would be serving as a receiver charged with overseeing the wind up of Defendant GK.

60.     Shortly thereafter, Edelson and Balabanian reached out to Defendant Finnerty. Defendant Finnerty explained that he and his (apparently new) firm, Defendant Abir Cohen Treyzon Salo, represent a creditor of Girardi and GK and that they, along with Girardi's lenders and certain other creditors, have more or less agreed that he and his firm would act as receiver, which meant his firm would essentially be taking over GK for the purpose of liquidating its assets, including litigating to settlement or judgment, as necessary, any ongoing cases, and winding up its affairs, including payment of debts owed to creditors, which would presumably include the Lion Air clients and Plaintiff Edelson.

61.     Following the call, Plaintiff Edelson came learn that Defendant Finnerty had been a decades-long partner at GK, who only recently left GK in May 2020, and who has on numerous occasions represented Girardi and the firm against actions by clients claiming their money had been mishandled. At no time during this call, or the call with Defendant Griffin, was any of this disclosed to Edelson or Balabanian.

62.     Despite the initial representations of Defendant Griffin (and later ones by Defendants Lira and Girardi), on information and belief, upon the dismissal of each case, Boeing transferred the settlement proceeds to GK in accordance with the terms of the settlement agreements, for the purpose of GK distributing said proceeds to GK's Lion Air clients.

18

63. On further information and belief, Girardi, who exercises *exclusive and total control* of all bank accounts for GK, embezzled the settlement proceeds transferred by Boeing for his own personal use, with the knowledge and cooperation of Defendants Lira and Griffin.

**The Opulent, and Expensive, Life of Girardi and Jayne**

64. By all accounts, Girardi keeps engaging in fraud and deception in order to support a never-ending spending spree by himself and Jayne.

65. Girardi and Jayne lead notoriously lavish lifestyles.

66. Erika reportedly spends *$40,000 per month* on her "look."[8] Erika even performs a song called "Exxpen$ive," featuring the hook "it's expensive to be me."[9]

67. Tom, for his part, has a daily standing reservation and exclusive table at Morton's Steak House in Los Angeles, routinely flies on private jets, and owns multiple homes across the country. In other words, he too maintains a significant monthly tab.

68. When asked why she and Tom required two private planes, Erika responded "Because one is small and one is big!"[10] Erika also bragged that the most expensive thing she owns is a singular piece of jewelry but would not say how much it was worth (which would

---

[8] Lindsey Cronin, *RHOBH Star Erika Jayne Reveals She Spends $40,000 A Month On Her Appearance! Says Being Rich AF Gets 'Boring'*, REALITY BLURB, https://realityblurb.com/2018/03/21/rhobh-erika-jayne-spends-40000-a-month-on-her-appearance-says-being-rich-af-gets-boring/.

[9] *Erika Jayne - XXpen$ive – Expensive*, YOUTUBE, https://www.youtube.com/watch?v=D26WFPl2ROQ.

[10] Marenah Dobin, *The Craziest Thing Erika Girardi Owns*, BUSTLE, https://www.bustle.com/articles/149204-the-craziest-thing-erika-girardi-owns-truly-sets-the-real-housewives-of-beverly-hills-star-apart.

presumably mean it's more expensive than her $250,000 Lamborghini).[11] And she bought Tom a $5,000 toilet as a gift.[12]

69.     Funding this lifestyle requires large sums of cash.

70.     On information and belief, Girardi and Jayne siphoned significant sums of money from lenders and clients and moved it out of GK's bank accounts for personal use. This exact scheme was described in a sworn declaration by Alan Zimmerman, CEO of Law Finance, in its litigation against Girardi:

> [Girardi's] claim [that Law Finance Group] included an unwarranted attack in their complaint by claiming that Mr. Girardi was using LFG's money to support his lavish lifestyle, but even if that were somehow relevant here, LFG's allegations are true. As explained above, LFG has obtained financial records that demonstrate that Girardi has been using Girardi Keese funds to "loan" over $20 million dollars to his wife's company, EJ Global. LFG even tried previously to redact the name of the recipient of these funds from the prior filings, in order to save Mr. Girardi the embarrassment.[13]

71.     Now that Tom and Erika are facing increasing pressure to actually pay down their debts, as well as Tom living up to his fiduciary duty by transferring settlement funds to clients who are otherwise prepared to sue him, they are searching for new methods to protect their money.

72.     On information and belief, Tom's and Erika's divorce is a sham proceeding, designed to further the scheme described by Mr. Zimmerman above: place assets outside of Tom's and his law firm's name to shield it from the collection efforts of his creditors.

---

[11]    Jocelyn Vena, *What Is the Most Expensive Thing Erika Girardi Owns?* THE DAILY DISH, https://www.bravotv.com/the-daily-dish/the-most-expensive-thing-erika-girardi-owns.

[12]    Marenah Dobin, *Erika Girardi Gave Her Husband Tom Girardi A $5,000 Toilet As A Gift*, REALITY TEA, https://www.realitytea.com/2017/12/29/erika-girardi-gave-husband-tom-girardi-5000-toilet-gift/.

[13]    *Law Finance Group, LLC v. Girardi Keese, et al.*, No. 19STCV01455 (Cal. Sup. Ct.) (#Bl-63).

**Girardi and GK Have Consistently Defrauded and Failed to Pay Clients, Lenders, and Others, For Their Own Benefit**

73.    A 2017 article noted that "Girardi Keese has been sued for malpractice, fraud or breach of contract at least 22 times since 1995…"[14] And numerous lawsuits have been filed since.

74.    Based only upon publicly available information, these prior lawsuits were brought by clients, consultants, vendors, and lenders, among others, and amount to tens of millions of dollars improperly withheld and embezzled by Girardi and his firm.

75.    Most recently, GK has been sued by multiple financial firms that loaned the firm over twenty million dollars collectively.

76.    Law Finance Group sued GK and Girardi personally in January 2019 after they defaulted on a $16 million note.[15] Defendant Stillwell Madison likewise filed suit a month later to recover on a $5 million defaulted loan.[16]

77.    As alleged in those complaints, Girardi failed to make payments and quickly defaulted on these loans; however, he managed to negotiate forbearance agreements with both lenders within weeks of each other (without either lender having knowledge of the other), that obligated his firm to make millions of dollars in payments just in the following few months. As it turns out, the forbearance agreements were simply stalling tactics, as Girardi and his firm then failed to make any of those payments as well.

78.    Eventually, under court order in 2019, GK paid Law Finance Group $16 million dollars to clear the loan. The source of this money is unknown. By contrast, Stillwell Madison

---

[14]    Sandy Mazza, *Famed attorney Thomas Girardi accused of hoarding settlement funds for Carson's Carousel residents*, DAILY BREEZE, https://www.dailybreeze.com/2017/07/01/famed-attorney-thomas-girardi-accused-of-hoarding-settlement-funds-for-carsons-carousel-residents/.
[15]    *Law Finance Group, LLC, v. Girardi Keese*, No. 19STCV01455 (Cal. Sup. Ct.).
[16]    *Stillwell Madison, LLC, v. Girardi Keese*, No. 20STCV07853 (Cal. Sup. Ct.).

sought and received a writ of attachment for nearly $6 million in October 2020, and on

information and belief, is proceeding with collection efforts.

79.     On information and belief, to stave off collection efforts, Girardi and his lenders

and other creditors have entered into a series of inter-creditor agreements, which provide that any

monies received into Defendant GK's bank accounts be directed to those lenders and creditors.

But because of Girardi's now widely-known financial troubles, these lenders and other creditors

knew or should have known that monies being redirected by Defendant Girardi are likely

embezzled client funds and co-counsel fees and thus, were illegally obtained by Defendant

Girardi in the first instance. As a result, by knowingly accepting these embezzled funds, the

lenders, including Defendants California Attorney Lending, and Defendant Girardi's other

creditors are furthering his illegality.

80.     Indeed, on information and belief, Girardi and GK have directed Lion Air client

funds, and money otherwise owed to third parties like Edelson, to lenders including Defendant

California Attorney Lending in order to stave off these creditors.

81.     For its part, on information and belief, Defendant California Attorney Lending,

through its due diligence process, would be aware (1) if client settlement funds had been

received in the Lion Air cases and if and when they were paid out to the client; (2) of the amount

of fees held back from those funds under the client contract; (3) of any obligations imposed on

those fees by a third party, such as Edelson; and (4) that Edelson had appearances on file in the

Lion Air cases and was a primary participant in the litigation. By entering into an agreement with

GK that requires 50% of gross attorneys' fees to be directed to itself, California Attorney

Lending cannot avoid the knowledge that it is accepting embezzled funds that are contractually

owed to the victims' families and of lesser importance, to Edelson. This is both unethical and an unlawful interference with enforceable contracts.

82.     On information and belief, Defendants Girardi, Jayne, EJ Global, GK, Lira, Griffin, and Johnston Hutchinson & Lira LLP, California Attorney Lending, and other Doe Defendants yet to be identified, have wrongfully transferred, misappropriated, and retained settlement funds owed to the victims of Lion Air Flight 610, as well as attorneys' fees owed to Edelson and other third parties.

## COUNT I
### UNJUST ENRICHMENT – CONSTRUCTIVE TRUST
**(As Against Defendants Girardi, GK, Jayne, EJ Global,
Lira, Griffin, Johnston Hutchinson & Lira, California Attorney Lending II)**

83.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

84.     Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to the plaintiff's detriment, and where such retention violates fundamental principles of equity, justice, and good conscience.

85.     On information and belief, Defendants Girardi, GK, Jayne, EJ Global, Lira, Griffin, Johnston Hutchinson & Lira, and California Attorney Lending II are each holding funds that properly belong to the victims of Lion Air Flight 610 and to Plaintiff Edelson.

86.     A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

87.     Plaintiff Edelson has contractually created property rights to specific percentages of the attorneys' fees generated by those settlement funds.

23

88.     However, on information and belief, the funds owed to Plaintiff Edelson are now commingled with the funds owed to the Lion Air clients and have been distributed among the Defendants and other unknown entities. Nevertheless, the funds are identifiable, and there is a direct chain from the Boeing payments to the current persons in possession of the money.

89.     On information and belief, Defendants Jayne and EJ Global have received and retained a portion of the funds transferred by Boeing to GK. Specifically, a portion of those funds have, on information and belief, been unlawfully transferred to Defendants Jayne and EJ Global for their personal use as well as to shield the money, for the benefit of Defendant Girardi, from their creditors, including Plaintiff.

90.     On information and belief, funds transferred by Boeing to GK that properly belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant California Attorney Lending.

91.     On information and belief, funds transferred by Boeing to GK that properly belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant Johnston Hutchinson & Lira.

92.     Defendants Girardi, Griffin, and Lira represent or represented the Lion Air clients and owe them a fiduciary duty as counsel. On information and belief, Defendants Girardi, Griffin, and Lira breached their fiduciary duties to the Lion Air clients by causing, permitting, facilitating, or otherwise allowing the Lion Air clients' money to be commingled with funds belonging to Plaintiff Edelson and distributed to the other Defendants and/or retained for their own personal benefit.

93.      Under principles of equity and good conscience, Defendants should not be permitted to retain any of the funds transferred from Boeing to GK.

94.      However, principles of equity and good conscience, as well as the Rules of Professional Conduct, prevent Plaintiff Edelson from taking possession of any of these commingled funds unless and until the Lion Air clients receive their share of the settlement money paid by Boeing.

95.      Plaintiff seeks the imposition of a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff, if sufficient funds remain in trust. In the alternative, Plaintiff requests that all such sums should be disgorged.

<u>COUNT II</u>
ACCOUNTING
**(As Against Defendants Girardi, GK, Jayne, EJ Global, Girardi Financial, Lira, Griffin,
Johnston Hutchinson & Lira, Finnerty, Abir Cohen Treyzon Salo,
California Attorney Lending II, Stillwell Madison, and John Doe 1-10)**

96.      Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

97.      A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of the Lion Air clients represented by GK, minus agreed upon attorneys' fees.

98.      Presently, the whereabouts, distribution, allocation, or transfer of those funds is not known to Plaintiff.

99.      Any information on the current status and location of that money is within the exclusive knowledge of Defendants. As such, Plaintiff has an inadequate legal remedy in that it cannot determine what party is responsible, in what amount, for its damages.

100.    Plaintiff therefore seeks an order requiring all Defendants to provide a full and

complete accounting of all transactions or records relating to the Lion Air settlement money.

### COUNT III
### BREACH OF CONTRACT
### (As Against Defendants GK, Girardi, Griffin, and Lira)
### (*In the Alternative to Counts I and II*)

101.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein,

excluding paragraphs 83-100.

102.    Plaintiff entered into two enforceable contracts with GK. The first contract,

presented and executed by Defendant Griffin, provided that Edelson would receive 50% of total

attorneys' fees recovered for a specific set of Lion Air clients in the matter of *In Re: Lion Air

Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By the terms of the contract, Edelson was

expected to act as local counsel, as well as participate directly in the litigation and settlement

process.

103.    The second contract, presented and executed by Defendant Lira, provided that

Edelson would receive 20% of total attorneys' fees recovered for a separate set of specific Lion

Air clients in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By

the terms of the contract, Edelson was expected to act as local counsel, as well as participate

directly in the litigation and settlement process.

104.    These contract terms were negotiated and agreed to both verbally and in writing.

105.    Edelson fully performed its obligations under the contracts by acting as local

counsel and assisting in the litigation and settlement of the Lion Air cases.

106.    Defendants GK, Girardi, Griffin, and Lira breached their contractual obligations

by not paying Edelson its share of attorneys' fees.

107.   As a direct, foreseeable, and proximate result of Defendants' breaches, Plaintiff

has been damaged in amount to be proven at trial.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(As Against Defendant California Attorney Lending)**
**(*In the Alternative to Counts I and II*)**

108.   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein,

excluding paragraphs 83-100.

109.   Certain victims of Lion Air Flight 610 entered into enforceable contracts for

representation of their interests by GK as it related to the crash. Plaintiff Edelson also entered

into enforceable contracts with GK governing the allocation of attorneys' fees resulting from

resolution of the claims of specific clients in the matter of *In Re: Lion Air Flight JT 610 Crash*,

No. 18-cv-07686 (N.D. Ill.).

110.   On information and belief, Defendant California Attorney Lending had

knowledge of those contracts and the obligations they placed on GK to pay certain victims of the

Lion Air Flight 610 plane crash the proceeds of any settlement reached with Boeing, as well as

pay Edelson a portion of any attorneys' fees recovered on account of such settlements.

111.   Defendant California Attorney Lending intentionally and without justification

induced the breach of those contracts by demanding, accepting, and retaining monies that

Defendant Girardi and GK embezzled, which rightfully belonged to the clients of GK who lost

loved ones in the Lion Air Flight 610 crash, as well as Plaintiff Edelson.

112.   Based upon Defendant California Attorney Lending's wrongful conduct, by

failing to pay their Lion Air clients, as well as the attorneys' fees owed to Plaintiff Edelson, and

instead directing that such funds be transferred to Defendant California Attorney Lending,

27

Defendants GK, Girardi, Griffin, and Lira did subsequently breach their engagement agreements with their Lion Air clients, as well as their fee allocation agreement with Edelson.

113.    As a direct, foreseeable, and proximate result of Defendant California Attorney Lending's tortious interference with Plaintiff's contracts, Plaintiff has been damaged in amount to be proven at trial.

**COUNT V**
**CONVERSION**
**(As Against Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira)**
**(*In the Alternative to Counts I and II*)**

114.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

115.    A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

116.    Plaintiff Edelson has contractually created property right to specific percentages of the attorneys' fees generated by those settlement funds.

117.    Under those contracts, Plaintiff Edelson has an absolute and unconditional right to the immediate possession of the attorneys' fees, once the appropriate settlement funds have been transferred to the Lion Air clients.

118.    Plaintiff has made numerous demands on Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira for an accounting and payment of attorneys' fees, to no avail.

119.    Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira have wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to Plaintiff.

120.    As a direct, foreseeable, and proximate result of the conversion of Plaintiff's share of attorneys' fees by Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira, Plaintiff has been damaged in amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Edelson PC respectfully requests that this Court enter judgment in its favor and enter an order:

A.  Creating a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff Edelson if sufficient funds remain in trust. In the alternative, an order requiring the disgorgement of all Lion Air client funds from any Defendant (or any non-party) who is improperly in receipt of those funds;

B.  Requiring all Defendants to provide a full and complete accounting of all funds transferred from Boeing that were intended for any GK client (inclusive of any transfers to third parties associated with, or transfers made for the benefit of, GK) related to settlements in *In Re: Lion Air Flight JT 610 Crash*, and a full accounting of what subsequently became of those funds;

C.  Finding that Defendants GK's, Girardi's, Griffin's, and Lira's conduct constitutes a breach of contract;

D.  Finding that Defendant California Attorney Lending's conduct constitutes tortious interference with contract;

E.  Finding that Defendants GK's, Girardi's, Griffin's, Lira's, and Johnston Hutchinson & Lira's conduct constitutes conversion;

F.   Requiring the transfer of all Lion Air client funds to the appropriate client recipients;

G.  Requiring the payment of all contractually required attorneys' fees to Edelson PC, only

after the Court confirms the full and complete payment to the Lion Air clients;

H.  Awarding Plaintiff its costs and expenses in this litigation, including reasonable

attorneys' fees; and

I.  Awarding such other and further relief as the Court deems equitable and just.

### **REQUEST FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**EDELSON PC**

Dated: December 2, 2020

/s/Jay Edelson
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Alexander Tievsky
atievsky@edelson.com
EDELSON PC
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
150 California Street, 18th Floor, San Francisco, California 94111

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __10/04/2021__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov; Counsel For Trustee: Levene, Neale, Bender, Yoo & Brill, tjy@lnbyb.com, ctp@lnbyb.com, rps@lnbyb.com; Counsel for Petitioning Creditors: Andrew Goodman, agoodman@andyglaw.com; Counsel for Conservator, Robert Girardi: Leonard Pena, lpena@penalaw.com, penasomaecf@gmail.com, penalr72746@notify.bestcase.com

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) __10/04/2021__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor: Thomas Vincent Girardi  1126 Wilshire Boulevard  Los Angeles, CA 90017
Purchaser: Jeffrey D. Stratton & Leah J. Stratton c/o Lisa Blodgett 47-100 Washington Street, Suite 204 La Quinta, California 92253
Ruigomez Creditors: c/o ABIR COHEN TREYZON SALO, LLP 16001 Ventura Blvd., Suite 200 Encino, CA 91436

☒ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/04/2021 | J. Eli Wade-Scott | /s/J. Eli Wade-Scott |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 9                                   F 4001-1.RFS.NONBK.MOTION

1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):</u>

Ori S Blumenfeld,
Ori@MarguliesFaithLaw.com, Helen@MarguliesFaithLaw.com,
Angela@MarguliesFaithLaw.com, Vicky@MarguliesFaithLaw.com
Richard D Buckley
richard.buckley@arentfox.com
Marie E Christiansen
mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-
4166@ecf.pacerpro.com
Jennifer Witherell
Crastzjcrastz@hrhlaw.com
Ashleigh A. Danker
Ashleigh.danker@dinsmore.com, SDCMLFiles@DINSMORE.COM;
Katrice.ortiz@dinsmore.com
Clifford S Davidson
csdavidson@swlaw.com, jlanglois@swlaw.com; cliff-davidson-7586@ecf.pacerpro.com
Lei Lei Wang
Ekvalllekvall@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com;
jchujc@swelawfirm.com
Richard W Esterkin
richard.esterkin@morganlewis.com
Timothy W Evanston
tevanston@swelawfirm.com, gcruz@swelawfirm.com; lgarrett@swelawfirm.com;
jchung@swelawfirm.com
Jeremy Faith
Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;
Angela@MarguliesFaithlaw.com; Vicky@MarguliesFaithlaw.com
James J Finsten ,
jimfinsten@hotmail.com
James J Finsten
jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
Alan W Forsley
alan.forsley@flpllp.com, awf@fkllawfirm.com, awf@fl-lawyers.net,
addy.flores@flpllp.com, laura.rucker@flpllp.com
Eric D Goldberg
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
Andrew Goodman
agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.comM.
Jonathan Hayes
jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;
janita@rhmfirm.com;susie@rhmfirm.com; priscilla@rhmfirm.com;pardis@rhmfi
rm.com; russ@rhmfirm.com;rebeca@rhmfirm.com;
david@rhmfirm.com;sloan@rhmfirm.com
Marshall J Hogan
mhogan@swlaw.com, knestuk@swlaw.com

Razmig Izakelian
razmigizakelian@quinnemanuel.com
Lewis R Landau
Lew@Landaunet.com
Craig G Margulies
Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;
Helen@MarguliesFaithlaw.com; Angela@MarguliesFaithlaw.com
Peter J Mastan
peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;
Katrice.ortiz@dinsmore.com
Edith R Matthai
ematthai@romalaw.com
Elissa Miller
emiller@sulmeyerlaw.com, emillersk@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
Eric A Mitnick
MitnickLaw@aol.com, mitnicklaw@gmail.com
Scott H Olson
solson@vedderprice.com, scott-olson-2161@ecf.pacerpro.com,
ecfsfdocket@vedderprice.com, nortega@vedderprice.com Carmela Pagay
ctp@lnbyb.com
Ambrish B Patel
apatelEI@americaninfosource.com
Michael J Quinn
mquinn@vedderprice.com, ecfladocket@vedderprice.com, michael-quinn-
2870@ecf.pacerpro.com
Matthew D. Resnik
matt@rhmfirm.com, roksana@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com;
max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfi
rm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.
com
Ronald N Richards
ron@ronaldrichards.com, morani@ronaldrichards.com, justin@ronaldrichards.com
Kevin C Ronk
Kevin@portilloronk.com, Attorneys@portilloronk.com
Jason M Rund
(TR)trustee@srlawyers.com, jrund@ecf.axosfs.com
Gary A Starregastarre@gmail.com, mmoonniiee@gmail.com
Richard P Steelman
rps@lnbyb.com, john@lnbyb.com
Philip E Strok
pstrok@swelawfirm.com, gcruz@swelawfirm.com; 1garrett@swelawfirm.com;
jchung@swelawfirm.com
Christopher K.S. Wong
christopher.wong@arentfox.com, yvonne.li@arentfox.com
Evan C. Borges, Esq.
EBorges@GGTrialLaw.com

2.    <u>TO BE SERVED VIA U.S. MAIL:</u>

Broker: William Friedman 1608 Montana Avenue Santa Monica, CA 90403 Broker Steve
Enslow 78000 Fred Waring Drive Suite 202

Broker: Steve Enslow 78000 Fred Waring Drive Suite 202 Palm Desert, CA 92211

Courtesy Copy: Honorable Barry Russell United States Bankruptcy Court 255 E. Temple
St., Suite 1660 Los Angeles, CA 90012