TIMOTHY J. YOO (State Bar No. 155531)
tjy@lnbyg.com
CARMELA T. PAGAY (State Bar No. 195603)
ctp@lnbyg.com
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Jason M. Rund
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re

THOMAS VINCENT GIRARDI,

Debtor.

Case No. 2:20-bk-21020-BR

Chapter 7

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:**
**(1) AUTHORIZING EMPLOYMENT OF JOHN MORAN AUCTIONEERS, INC. AS AUCTIONEER; (2) AUTHORIZING SALE OF CERTAIN PERSONAL PROPERTY OF THE ESTATE; AND (3) AUTHORIZING ABANDONMENT OR DESTRUCTION OF CERTAIN PERSONAL PROPERTY OF THE ESTATE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JASON M. RUND AND JEFFREY J. MORAN IN SUPPORT THEREOF**

Hearing:
 DATE:    July 12, 2022
 TIME:    10:00 a.m.
 PLACE:   Courtroom 1668
          Roybal Federal Building
          255 E. Temple Street
          Los Angeles, CA 90012

1

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER INTERESTED PARTIES:**

Jason M. Rund, the Chapter 7 Trustee (the "Trustee") for the estate of Thomas Vincent Girardi, the debtor herein (the "Debtor"), respectfully moves this Court for an order: (1) approving the Trustee's employment of John Moran Auctioneers, Inc. (the "Auctioneer") as auctioneer; (2) authorizing the Trustee, through the Auctioneer, to auction and sell certain personal property (the "Personal Property") of the estate from the Debtor's residence located at 100 N. Los Altos Drive, Pasadena, California 91105 (the "Residence"); and (3) authorizing the Trustee to abandon or destroy any Personal Property, pursuant to 11 U.S.C. § 554, without further order of this Court, if it cannot be sold by the Auctioneer (the "Motion").

The Debtor's Personal Property that the Trustee will seek to auction and sell includes the following: a Steinway piano, furniture, art, religious icons, statues, lamps, rugs, ceramics and glassware, clothing and shoes, and sports memorabilia.

The Trustee seeks to employ the Auctioneer to sell the Personal Property at an auction. The Trustee seeks to employ the Auctioneer pursuant to 11 U.S.C. § 327(a) and to compensate the Auctioneer pursuant to 11 U.S.C. § 328 and LBR 6007-1(h).

The Auctioneer will be charging a 6% commission plus a 25% buyer's premium.  Also, for each lot, there will be a 1% charge for insurance, $50 photography fee, merchant credit card fees that are paid by the buyers and potential fees for webhosts.[1]  The estate shall reimburse the Auctioneer's expenses in connection with the drayage and transport of the Personal Property, not to exceed $7,000, which will be deducted from the auction proceeds.  The Auctioneer will seek no additional compensation from the estate.  Upon completion of the sale of the Auction Personal Property, and completion of the Auctioneer's Report of Sale, the Trustee will file a declaration seeking Court approval for the Report of Sale and authority to pay the Auctioneer its

---

[1] Details of the costs can be found on johnmoran.com/conditions-of-sale/.

fee.  The Auctioneer has been advised of and has agreed to accept the proposed employment subject to the provisions of 11 U.S.C. § 328(a).

The Personal Property will be moved from the Residence to the Auctioneer's business premises at 145 East Walnut Avenue, Monrovia, California 91016.  The auction, which will be live online via internet and telephone, will take place on September 21, 2022.  The marketing plan for the auction includes:

. Dedicated press-release with nationwide distribution about the collection.

. In-house email to John Moran Auctioneers full database of clients.

. Posting of Girardi Collection on John Moran Auctioneers social media accounts (Facebook, Instagram, LinkedIn).

. Hosting and sale of the property through John Moran Auctioneers.com, LiveAuctioneers.com, and Invaluable.com/AuctionZip.com.  (LiveAuctioneers and Invaluable/AuctionZip are the largest third-party auction host platforms available to auction houses with hundreds of thousands of users.)

. Supplementary paid marketing on LiveAuctioneers and Invaluable, which would consist of items such as, but not limited to homepage features and email marketing to their user databases.

. Targeted ads on Facebook/Instagram/Google.

The Auctioneer estimates that the Personal Property has a combined auction value of approximately $191,300 to $280,700.

Additionally, pursuant to 11 U.S.C. § 554, the Trustee seeks authority to abandon any Personal Property that was not sold by the Auctioneer, without further order of the Court. Further, should there be any records containing "personally identifiable information" as defined in section 101(41A), the Trustee seeks authority to destroy them and pay for the costs from estate funds.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order:

1.    Approving the Trustee's employment of the Auctioneer on the terms set forth herein;

3

2.      Authorizing the Trustee, through the Auctioneer, to auction and sell the Personal Property for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 363;

3.      Authorizing the Trustee to pay the Auctioneer's commission, buyer's premium and expenses upon receipt and approval by the Trustee of the Report of Auctioneer;

4.      Providing that the Trustee is authorized and empowered to execute and deliver on behalf of the estate any and all documents as reasonably may be necessary to implement the terms of the proposed sale;

5.      Authorizing the Trustee to (a) abandon or donate any Personal Property that cannot be sold by the Auctioneer, without further order of the Court and (b) to the extent there are records containing "personally identifiable information" as defined in section 101(41A), authorizing the Trustee to destroy them and pay for the costs from estate funds;

6.      Providing that the notice given by the Trustee in connection with the Motion, which was filed concurrently herewith, is adequate, sufficient, proper and complies with all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

7.      Waiving the 14-day stay provided by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

8.      Granting such other and further relief as is just and appropriate.

DATED: June 21, 2022

LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.

By: /s/ Carmela T. Pagay
CARMELA T. PAGAY
Attorneys for Jason M. Rund
Chapter 7 Trustee

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### BACKGROUND FACTS

1.      An Involuntary Petition was filed against Thomas Vincent Girardi, debtor herein ("Debtor"), on December 18, 2020. The petitioning creditors filed an emergency motion for appointment of an interim trustee on December 24, 2020 [Doc 13], which was granted by the Court on January 5, 2021 [Doc 39].  On January 6, 2021, the United States Trustee appointed Jason M. Rund ("Trustee") as the Chapter 7 trustee.

2.      The Debtor is on title to the real property located at 100 N. Los Altos Drive, Pasadena, California 91105 (the "Residence").  Located at the Residence are various items of personal property (the "Personal Property") of the Debtor that the Trustee will seek to auction and sell including the following: a Steinway piano, furniture, art, religious icons, statues, lamps, rugs, ceramics and glassware, clothing and shoes, and sports memorabilia.

3.      One purpose of this Motion is to obtain Court authority to employ John Moran Auctioneers, Inc. (the "Auctioneer") to move and secure the Personal Property at its place of business located at 145 East Walnut Avenue, Monrovia, California 91016 and sell the Personal Property live online via internet and telephone on September 21, 2022.  Items that are burdensome or of inconsequential value will be left at the Residence and will be deemed abandoned after the Auction.

4.      The Auctioneer estimates that the Personal Property has a combined auction value of approximately $191,300 to $280,700.

5.      A UCC search report for liens against the Debtor's personal property, inclusive of the Personal Property located at the Residence that is to be sold at the proposed auction, is attached hereto as **Exhibit "1."**  The UCC search report indicates that California Attorney Lending II, Inc., a New York corporation ("CAL II") has a blanket lien on the Debtor's assets, including the Personal Property.  However, the Trustee and CAL II have reached a settlement concerning the Trustee's sale of certain assets of the estate that are subject to CAL II's lien.  Such settlement was approved by Court order entered on June 22, 2021 [Doc 224].  Under the

5

settlement, 80% of the net proceeds from the sale of the Personal Property (after payment of administrative expenses) will be paid to CAL II and 20% will be paid to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.

6.    Another purpose of this Motion is to obtain Court authority to abandon or donate to a non-profit organization any Personal Property that could not be sold by the Auctioneer, without further order of the Court.  Further, should there be any records containing "personally identifiable information" as defined in Section 101(41A), the Trustee seeks authority to destroy them and pay for the costs from estate funds.

## II.

## APPLICATION TO EMPLOY AUCTIONEER

### A.    Terms of Employment of Auctioneer and Auction.

The Trustee seeks to employ the Auctioneer to auction and sell the Personal Property on his behalf.  The Auctioneer has extensive experience and background in conducting sales and auctions of the sort contemplated herein and is well-qualified to conduct the sale and auction for the Trustee.  Attached hereto as **Exhibit "2"** is a copy of the Auctioneer's Proposal and résumé outlining its extensive background and experience.  In accordance with the *Revised Supervisory Instruction #10* concerning employment of auctioneer promulgated by the Office of the United States Trustee ("OUST"), Region 16, the Trustee proposes to employ the Auctioneer to pursue the auction and sales in accordance with the following terms and conditions set forth in the Auctioneer's proposal:

1.    The Auctioneer will be charging a 6% commission plus a 25% buyer's premium.  Also, for each lot, there will be a 1% charge for insurance, $50 photography fee, merchant credit card fees that are paid by the buyers and potential fees for webhosts.[2]  The estate shall reimburse the Auctioneer's expenses in connection with the drayage and transport of the Personal Property, not to exceed $7,000, which will be deducted from the auction proceeds.  The Auctioneer will seek no additional compensation from the estate.  Upon completion of the sale

---

[2] Details of the costs can be found on johnmoran.com/conditions-of-sale/.

of the Personal Property, and completion of the Auctioneer's Report of Sale, the Trustee will file a declaration seeking Court approval for the Report of Sale and authority to pay the Auctioneer its fee.  The Auctioneer has been advised of and has agreed to accept the proposed employment subject to the provisions of 11 U.S.C. § 328(a).

2.      The auction, which will be live online via internet and telephone, will take place on September 21, 2022.  Notice of the date and time of the auction will be provided to all creditors and parties in interest.  The marketing plan for the auction includes:

- Dedicated press-release with nationwide distribution about the collection.
- In-house email to John Moran Auctioneers full database of clients.
- Posting of Girardi Collection on John Moran Auctioneers social media accounts (Facebook, Instagram, LinkedIn)
- Hosting and sale of the property through John Moran Auctioneers.com, LiveAuctioneers.com, and Invaluable.com/AuctionZip.com.  (LiveAuctioneers and Invaluable/AuctionZip are the largest third-party auction host platforms available to auction houses with hundreds of thousands of users.)
- Supplementary paid marketing on LiveAuctioneers and Invaluable, which would consist of items such as, but not limited to homepage features and email marketing to their user databases.
- Targeted ads on Facebook/Instagram/Google.

3.      Prospective purchasers can inspect the Personal Property between 12 to 4 pm on September 16, 17, 18 and 19 of 2022 with additional private views by appointment.

4.      The Trustee will personally monitor the auction, and will respond to any complaints regarding the auction.

5.      The Personal Property shall be sold without reserve on an "as is" and "where is" and without any representations or warranties, express or implied.

6.      All purchases shall be paid in full, by credit cards, cashier or business checks or wire transfers.

7.      Following the auction and sale, the Auctioneer shall turn over any and all gross

proceeds from the auction, including the buyer's premium, to the Trustee within 7 days after any auction of estate property.  In addition, no later than 21 days after the auction, the Auctioneer shall prepare and submit to the Trustee a "Report of Auctioneer" (the "<u>Auction Report</u>"), which will include the following information: the date of the sale; each item sold; the sale price; the name, address and telephone number of the purchaser; in the case of lots, a brief description of each lot sold as well as the sale price and purchaser; the gross proceeds from the sale; a statement that the gross proceeds have been turned over to the Trustee; and a descriptive list of the items that were not sold but which were returned to the Trustee. Within 7 days of the Trustee's receipt of the Auction Report, the Trustee shall file the Auction Report with the Court, together with a brief declaration stating that (a) the Trustee has compared the Auction Report to the list of items/lots sold, (b) the Auction Report is satisfactory, (c) the Auctioneer has been compensated pursuant to the Auction Report, (d) the gross funds have been turned over to the Trustee, and (d) the Trustee is requesting that the Court exonerate the Auctioneer's bond.

8.    The Trustee has verified that the Auctioneer has complied with all applicable bonding requirements. The Auctioneer's blanket bond, in favor of the United States of America and in the amount of $25,000, is on file with the Clerk of the Bankruptcy Court for the Central District of California.  In addition, an individual bond in an amount sufficient to protect the value of the Personal Property to be auctioned has also been provided.  Copies of the bonds are attached hereto as **"Exhibit 3."**

9.    The Trustee believes that the employment of the Auctioneer in accordance with the above terms is in the best interest of this estate.  The Auctioneer estimates that the sale and auction of the Personal Property will yield the estate between $135,000 and $207,000, after payment of the Auctioneer's commission and expenses.

**B.    <u>The Auctioneer Does Not Hold Or Represent An Interest Adverse To The Estate And Is A Disinterested Person.</u>**

The Auctioneer has read and understands the provisions of sections 327 and 328 of the Bankruptcy Code, which require, among other things, Bankruptcy Court approval of the Auctioneer's employment and court authorization of all fees and costs that the Auctioneer may

be entitled to receive from the estate.

The Trustee is informed and believes, and based thereon alleges, that other than as disclosed herein, the Auctioneer has no connection with the Trustee, the Debtor, his creditors, the OUST, or any employees of the OUST, bankruptcy judges or any other party in interest, and hence, that it neither represents nor holds an interest adverse to the estate and is a disinterested person as that term is used in the Bankruptcy Code.  Based upon the Declaration of Jeffrey J. Moran ("Moran Decl."), the Auctioneer holds no pre-petition claims against the estate.

To the best of Trustee's knowledge and based upon the Moran Decl., neither the Auctioneer nor any of its associates or employees represent any interest adverse to that of the Trustee or the estate in the matters on which it is to be retained, and its principals, licensees, agents, associates and employees are disinterested persons under § 101(14) of the Bankruptcy Code.

The conclusion that the Auctioneer is disinterested is based upon the fact that to the best of the Trustee's knowledge, based upon the Moran Decl., the Auctioneer:

1.     Is not a creditor, an equity security holder or an insider of the Debtor;

2.     Is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

3.     Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or in, the Debtor or for any other reason.

Consequently, the Trustee asks the Court to find that the Auctioneer is "disinterested" under § 101(14) of the Bankruptcy Code.

**III.**

**MOTION FOR AUTHORITY TO SELL PERSONAL PROPERTY OF THE ESTATE**

**A.     Section 363(b)(1) of the Bankruptcy Code Permits the Trustee to Sell Property of the Estate Other than in the Ordinary Course of Business.**

Section 363 of the Bankruptcy Code provides as follows:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . .

1  11 U.S.C. § 363(b)(1).

2      The trustee's application of his or her sound business judgment in the use, sale, or lease

3  of such property is subject to great judicial deference.  *See In re Moore*, 110 B.R. 924 (Bankr.

4  C.D. Cal. 1990); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

5      In determining whether any sale of assets out of the ordinary course of business should

6  be approved, bankruptcy courts usually consider the following factors:

7          1.      Whether a sufficient business reason exists for the sale;

8          2.      Whether the proposed sale is in the best interests of the estate, which in turn

9  consists of the following factors:

10              a.   That terms of the sale are fair and reasonable;

11              b.   That the proposed sale has been adequately marketed;

12              c.   That the proposed sale terms have been properly negotiated and proposed in good

13  faith; and

14              d.   That the purchaser is involved in an "arms-length" transaction with the seller.

15          3.      Was notice of the sale sufficient.

16  *See generally In re Walter*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988) ("there must be some

17  articulated business justification for using, selling, or leasing the property outside the ordinary

18  course of business . . . As the Second Circuit held in *Lionel* [*In re Lionel Corp.*, 722 F.2d 1063

19  (2d Cir.1983)], the bankruptcy judge should consider all salient factors pertaining to the

20  proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and

21  equity holders, alike . . .").

22      The proposed auction and sale in this case clearly meets these standards.  The sale of the

23  Personal Property will provide funds from which unsecured creditors may be paid. The Personal

24  Property has been inspected by an experienced auctioneer, who opines that the auction value of

25  the Auction Personal Property is between $191,300 to $280,700.  Accordingly, after payment of

26  the Auctioneer's commissions and expenses, the estate should receive net proceeds between

27  $135,000 and $207,000.  Other costs include the fees of the Trustee (approximately $7,500 per

28  section 326 of the Bankruptcy Code), the estate's counsel (approximately $8,000 for fees

10

associated with the auction) and accountant (approximately $3,500).  As discussed above, pursuant to the settlement with CAL II, 20% of the net proceeds from the sale of the Personal Property (after payment of administrative expenses) will be paid to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  Without the settlement, there would be no auction.

Based upon the foregoing, the Trustee submits that the proposed sale and auction of the Personal Property satisfies the standards for approval of a sale of assets out of the ordinary course of business pursuant to § 363(b) of the Bankruptcy Code.

**B.**    **Abandonment of Certain Personal Property Is Appropriate Under Section 554 of the Bankruptcy Code If They Cannot Be Sold.**

Section 554(a) of the Bankruptcy Code provides as follows:

> After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. § 554(a).

A bankruptcy trustee may abandon an estate's interest in property if the costs of administration of the property would exceed the benefit or value of the property to the estate, making it burdensome to the estate and of inconsequential value and benefit to the estate.  *See In re Alsberg*, 161 B.R. 680, 683 (B.A.P. 9th Cir. 1993).

Should the Auctioneer be unable to sell any of the Personal Property, it would be of inconsequential value and benefit to the estate considering.  Indeed, the failure to secure a buyer for any particular Personal Property asset the after a well-publicized auction demonstrates that such item of Personal Property is of inconsequential value and benefit to the estate.

Based on the foregoing, pursuant to section 554(a) of the Bankruptcy Code, without further order of the Court, any unsold Personal Property (including those left at the Residence) should be deemed abandoned.  Further, should there be any records containing "personally identifiable information" as defined in section 101(41A), the Trustee seeks authority to destroy them and pay for the costs from estate funds.

///

11

**D.** **The Trustee Requests That The Court Waive The 14-day Stay Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.**

Bankruptcy Rule 6004(h) provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  In the instant case, the Trustee respectfully requests that the Court waive the stay provided by Rule 6004(h), to ensure that the sale can proceed when noticed by the Trustee and as marketed by the Auctioneer.

**IV.**

**CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order:

1.      Approving the Trustee's employment of the Auctioneer on the terms set forth herein;

2.      Authorizing the Trustee, through the Auctioneer, to auction and sell the Personal Property for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 363;

3.      Authorizing the Trustee to pay the Auctioneer's commission, buyer's premium and expenses upon receipt and approval by the Trustee of the Report of Auctioneer;

4.      Providing that the Trustee is authorized and empowered to execute and deliver on behalf of the estate any and all documents as reasonably may be necessary to implement the terms of the proposed sale;

5.      Authorizing the Trustee to (a) abandon or donate to a non-profit organization any Personal Property that cannot be sold by the Auctioneer, without further order of the Court and (b) to the extent there are records containing "personally identifiable information" as defined in section 101(41A), authorizing the Trustee to destroy them and pay for the costs from estate funds;

6.      Providing that the notice given by the Trustee in connection with the Motion, which was filed concurrently herewith, is adequate, sufficient, proper and complies with all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

7.  Waiving the 14-day stay provided by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

8.  Granting such other and further relief as is just and appropriate.

DATED: June 16, 2022

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: */s/ Carmela T. Pagay*
    CARMELA T. PAGAY
    Attorneys for Jason M. Rund
    Chapter 7 Trustee

1          **<u>DECLARATION OF JASON M. RUND</u>**

2          I, Jason M. Rund, declare as follows:

3          1.      I am over 18 years of age. Except where otherwise stated, I have personal

4    knowledge of the matters set forth herein and, if called as a witness, could and would testify

5    competently thereto.

6          2.      I am the duly-appointed, qualified, and acting Chapter 7 Trustee for the

7    bankruptcy estate of Thomas Vincent Girardi, the debtor herein (the "<u>Debtor</u>").  I make this

8    declaration in support of the motion to which this declaration is attached (the "<u>Motion</u>").

9          3.      The Debtor is on title to the real property located at 100 N. Los Altos Drive,

10   Pasadena, California 91105 (the "<u>Residence</u>").  Located at the Residence are various items of

11   personal property (the "<u>Personal Property</u>") of the Debtor that the Trustee will seek to auction

12   and sell including the following: a Steinway piano, furniture, art, religious icons, statues, lamps,

13   rugs, ceramics and glassware, clothing and shoes, and sports memorabilia.

14         4.      On February 24, 2021, Jeffrey J. Moran of John Moran Auctioneers, Inc. (the

15   "<u>Auctioneer</u>") went to the Residence to view the Personal Property.

16         5.      The Auctioneer estimates that the Personal Property at the Residence has a

17   combined auction value of approximately $191,300 to $280,700.  Accordingly, after payment of

18   the Auctioneer's commissions and expenses the estate should receive net proceeds between

19   $135,000 and $207,000.  Other costs include my fees (approximately $7,500 per section 326),

20   the estate's counsel (approximately $8,000 for fees associated with the auction) and accountant

21   (approximately $3,500).

22         6.      Based on the net proceeds available for the benefit of the estate as discussed in

23   the Motion, I believe it is appropriate to liquidate the Personal Property pursuant to § 363 of the

24   Bankruptcy Code.

25         7.      Based on the foregoing regarding the Personal Property, I seek authority to

26   abandon or donate to a non-profit organization any Personal Property that could not be sold by

27   the Auctioneer.  Further, should there be any records containing "personally identifiable

28   information" as defined in section 101(41A), I seek authority to destroy them and pay for the

14

costs from estate funds.

8.      A UCC search report for liens against the Debtor's personal property, inclusive of the Personal Property located at the Residence that is to be sold at the proposed auction, is attached hereto as **Exhibit "1."**  The UCC search report indicates that California Attorney Lending II, Inc., a New York corporation ("CAL II") has a blanket lien on the Debtor's assets, including the Personal Property.  However, CAL II and I have reached a settlement concerning my sale of certain assets of the estate that are subject to CAL II's lien.  Such settlement was approved by Court order entered on June 22, 2021 [Doc 224].  Under the settlement, 80% of the net proceeds from the sale of the Personal Property (after payment of administrative expenses) will be paid to CAL II, and 20% will be paid to me to be held in trust for the allowed unsecured claimants of the bankruptcy estate.

9.      I seek to employ the Auctioneer to undertake auctions and sales of the Personal Property on behalf of the Chapter 7 estate.  The Auctioneer has extensive experience and background in conducting sales auctions of the sort contemplated herein, and is well-qualified to conduct the auction for the estate.  The auction will take place at the auctioneer's business premises on September 21, 2022.  I will personally monitor the auction and address any complaints regarding the auction.

10.     I have informed the Auctioneer that he shall turn over any and all gross proceeds from the auction, including the buyer's premium, to me within 7 days after any auction of estate property.  In addition, I have informed the Auctioneer that no later than 21 days after the auction, the Auctioneer shall prepare and submit to me a "Report of Auctioneer" (the "Auction Report"), which will include the following information: the date of the sale; each item sold; the sale price; the name, address and telephone number of the purchaser; in the case of lots, a brief description of each lot sold as well as the sale price and purchaser; the gross proceeds from the sale; a statement that the gross proceeds have been turned over to the estate; and a descriptive list of the items that were not sold but which were returned to the estate.

11.     Within 7 calendar days of my receipt of the Auction Report, I will file the Auction Report with the Court, together with a brief declaration stating that (a) I have compared

1  the Auction Report to the list of items/lots sold, (b) the Auction Report is satisfactory, (c) the

2  Auctioneer has been compensated pursuant to the terms previously approved by the Court, and

3  (d) I am requesting that the Court exonerate the Auctioneer's bond.

4      12.    I propose to employ the Auctioneer to pursue the auctions and sales in

5  accordance with the procedures set forth in the preceding Motion.

6      13.    Based upon the forgoing, the proposed auction and sale of the Personal Property

7  will provide for a source of funds with which unsecured creditors may be paid.

8      I declare under penalty of perjury under the laws of the United States of America that

9  the foregoing is true and correct and that this declaration was executed on June 20, 2022, at El

10  Segundo, California.

11

12                  JASON M. RUND

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

## DECLARATION OF JEFFREY J. MORAN

I, Jeffrey J. Moran, do hereby declare:

1.     I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the matters set forth herein and, if called as a witness, could and would testify competently thereto.

2.     I make this declaration in support of the Motion to which this declaration is attached.  Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

3.     I am the president of the Auctioneer, which the Trustee seeks to employ by the Motion.  Attached hereto as **"Exhibit 2"** and incorporated herein is a copy of the Proposal and my résumé, more fully setting forth my expertise.

4.     The other agents, and support staff who will handle this matter, including myself, are experienced in marketing and auctioning of similar kind and condition as that of the Auction Personal Property and are thus well qualified to assist in the promotion and auction of the Personal Property.  As indicated in the résumé attached hereto, I specialize in the listing, promotion, negotiation, and auctions of personal property similar to the Personal Property.

5.     To the best of my knowledge, and except as disclosed in this declaration, the Auctioneer and I are not connected with the Trustee, the Debtor, any creditor or other person in interest, or their respective attorneys, the United States Trustee or employees of the United States Trustee, bankruptcy judges, or with the Debtor's bankruptcy estate in the matters on which the Auctioneer is to be employed.

6.     I am informed and believe that my firm and its agents, associates, and employees are disinterested persons as the term is defined in 11 U.S.C. § 101(14), and I:

      a.     Am not a creditor, an equity security holder or an insider of the Debtor;

      b.     Am not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the Debtor;

      c.     Am not and was not an investment banker for any outstanding security of the Debtor;

d.    Am not and have not been within 3 years before the date of the filing of the petition, an investment banker for a security of the Debtor, or an attorney for such an investment bank in connection with the offer, sale or issuance of any security of the Debtor; and

e.    Do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or in, the Debtor or for any other reason.

7.    The Auctioneer is not a pre-petition creditor of this estate.

8.    The Auctioneer has been advised of and have agreed to accept the proposed employment subject to the provisions of 11 U.S.C. § 328(a).  The Auctioneer understands that the Bankruptcy Court may allow compensation different from the compensation set forth herein if the Court subsequently determines that such agreed upon terms are improvident in light of developments that could not have been anticipated at the time the Motion was approved.

9.    The Auctioneer has complied with all applicable bonding requirements.  The Auctioneer has obtained a blanket bond in the amount of $25,000 in favor of the United States of America.  A copy of the bond has been sent to the Office of the United States Trustee and the original bond has been sent for filing with the Clerk of the Bankruptcy Court (Los Angeles Division).  In addition, an individual bond in an amount sufficient to protect the value of the Personal Property to be auctioned has also been provided.  True and correct copies of the bonds are attached hereto as **"Exhibit 3"** and are incorporated herein by reference.

10.    At the Trustee's request, on February 22, 2021, I went to the Debtor's Residence and inspected the Personal Property.  I estimate that the Personal Property has a combined auction value of approximately $191,300 to $280,700.

11.    The auction of the Personal Property will be conducted live on September 21, 2022 at the business premises of the Auctioneer. Buyers will bid via internet and telephone. Prospective purchasers can inspect the Personal Property between 12 to 4 pm on September 16, 17, 18 and 19 of 2022 with additional private views by appointment.

12.    The Auctioneer will be charging a 6% commission plus a 25% buyer's premium. Also, for each lot, there will be a 1% charge for insurance, $50 photography fee, merchant credit

18

1  card fees that are paid by the buyers and potential fees for webhosts.[3] The estate shall reimburse

2  the Auctioneer's expenses in connection with the drayage and transport of the Personal

3  Property, not to exceed $7,000, which will be deducted from the auction proceeds.  The

4  Auctioneer will seek no additional compensation from the estate.

5       13.     The Auctioneer will turn over the gross proceeds from the auction no later than 7

6  days after the auction.  In addition, no later than 21 days after the auction, the Auctioneer will

7  prepare and submit to the Trustee an Auction Report, which will include the following

8  information: the date of the sale; each item sold; the sale price; the name, address and telephone

9  number of the purchaser; in the case of lots, a brief description of each lot sold as well as the

10 sale price and purchaser; the gross proceeds from the sale; a statement that the gross proceeds

11 have been turned over to the Trustee; and a descriptive list of the items that were not sold but

12 which were returned to the Trustee.

13      I declare under penalty of perjury pursuant to the laws of the United States of America

14 that the foregoing is true and correct and that this Declaration was executed June 16, 2022, at

15 Monrovia, California.

16

17                                    _____
                                      JEFFREY J. MORAN
18

19

20

21

22

23

24

25

26

27  _____

28
        [3] Details of the costs can be found on johnmoran.com/conditions-of-sale/.

**EXHIBIT "1"**

| Uniform Commercial Code Report |
|:---:|

THIS DATA IS FOR INFORMATION PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE SACRAMENTO OFFICE OF THE CALIFORNIA SECRETARY OF STATE.

## Source Information

| | |
|---|---|
| Information Current Through: | 07/14/2020 |
| Database Last Updated: | 07/15/2020 |
| Update Frequency: | SUSPENDED |
| Current Date: | 01/06/2021 |
| Source: | CA SECRETARY OF STATE |

## Filing Information

| | |
|---|---|
| Filing Number: | 117275806299 |
| Filing Date: | 07/06/2011 |
| Expiration Date: | 07/06/2021 |
| Total Number of Pages: | 8 |
| Filing Type: | FINANCING STATEMENT |

## Debtor Information

| | |
|---|---|
| Debtor(s): | GIRARDI KEESE 1126 WILSHIRE BLVD. LOS ANGELES, CA 90017 |
| Debtor(s): | THOMAS V. GIRARDI 100 LOS ALTOS DRIVE PASADENA, CA 91105 |

## Secured Party or Creditor Information

| | |
|---|---|
| Secured Party(s): | CALIFORNIA ATTORNEY LENDING II, INC. 6400 MAIN STREET, SUITE 120 WILLIAMSVILLE, NY 14221 |

## Collateral Information

| | |
|---|---|
| Collateral Type: | ALL DEBTOR'S PRESENT AND FUTURE RIGHT, TITLE AND INTEREST IN AND TO ANY AND ALL |
| Collateral Type: | ACCOUNTS, CHOSES IN ACTION, CAUSES OF ACTION, SETTLEMENT PROCEEDS, ATTORNEYS' |
| Collateral Type: | LIENS, ATTORNEYS' FEES, GENERAL INTANGIBLES, CONTRACT RIGHTS, DEPOSIT AND OTHER |
| Collateral Type: | BANK ACCOUNTS AND INSTRUMENTS, INSTRUMENTS, DOCUMENTS, CHATTEL PAPER AND |
| Collateral Type: | OBLIGATIONS IN ANY FORM IN EACH CASE ARISING OUT OF OR RELATED TO THE RENDITION |
| Collateral Type: | OF SERVICES BY DEBTOR WHETHER EARNED BY PERFORMANCE OR OTHERWISE IN CONNECTION |

| | |
|---|---|
| **Collateral Type:** | WITH THE FOLLOWING: (I) ALL MATTERS WITH RESPECT TO WHICH THE BORROWER IS |
| **Collateral Type:** | REPRESENTING ONE OR MORE INDIVIDUALS OR ESTATES AGAINST SMITHKLINE BEECHAM |
| **Collateral Type:** | CORPORATION D/B/A GLAXOSMITHKLINE, GLAXOSMITHKLINE PLC, GLAXO WELLCOME UK LTD., |
| **Collateral Type:** | GLAXOSMITHKLINE UK LIMITED BRENTFORD, MCKESSON CORPORATION AND OTHERS, OR ANY OF |
| **Collateral Type:** | THEM, IN CONNECTION WITH THE PRESCRIPTION DRUG ROSIGLITAZONE, MARKETED UNDER THE |
| **Collateral Type:** | TRADE NAMES AVANDIA, AVANDAMET AND AVANDARYL; AND (II) ALL MATTERS WITH RESPECT |
| **Collateral Type:** | TO WHICH THE BORROWER IS REPRESENTING ONE OR MORE INDIVIDUALS OR ESTATES AGAINST |
| **Collateral Type:** | ZIMMER INC., ZIMMER HOLDINGS INC. AND OTHERS, OR ANY OF THEM, IN CONNECTION WITH |
| **Collateral Type:** | THE SO-CALLED "ZIMMER HIP" LITIGATION; ALL OF DEBTOR'S BOOKS RELATED TO THE |
| **Collateral Type:** | FOREGOING; AND ALL CASH AND NON-CASH PROCEEDS OF ANY OF THE FOREGOING, IN |
| **Collateral Type:** | WHATEVER FORM, INCLUDING WITHOUT LIMITATION ALL PROCEEDS OF PROCEEDS, ALL |
| **Collateral Type:** | INSURANCE POLICIES COVERING SAME AND ALL INTEREST OR DIVIDENDS THEREON. |
| **Collateral Type:** | ALL DEBTOR'S PRESENT AND FUTURE RIGHT, TITLE AND INTEREST IN AND TO ANY AND ALL |
| **Collateral Type:** | ACCOUNTS, CHOSES IN ACTION, CAUSES OF |

Uniform Commercial Code Report: GIRARDI KEESE

| | |
|---|---|
| Collateral Type: | ACTION, SETTLEMENT PROCEEDS, ATTORNEYS' LIENS, ATTORNEYS' FEES, GENERAL INTANGIBLES, CONTRACT RIGHTS, DEPOSIT AND OTHER |
| Collateral Type: | BANK ACCOUNTS AND INSTRUMENTS, INSTRUMENTS, DOCUMENTS, CHATTEL PAPER AND |
| Collateral Type: | OBLIGATIONS IN ANY FORM IN EACH CASE ARISING OUT OF OR RELATED TO THE RENDITION |
| Collateral Type: | OF SERVICES BY DEBTOR WHETHER EARNED BY PERFORMANCE OR OTHERWISE IN CONNECTION |
| Collateral Type: | WITH THE FOLLOWING: (I) ALL MATTERS WITH RESPECT TO WHICH THE BORROWER IS |
| Collateral Type: | REPRESENTING ONE OR MORE INDIVIDUALS OR ESTATES AGAINST SMITHKLINE BEECHAM |
| Collateral Type: | CORPORATION D/B/A GLAXOSMITHKLINE, GLAXOSMITHKLINE PLC, GLAXO WELLCOME UK LTD., |
| Collateral Type: | GLAXOSMITHKLINE UK LIMITED BRENTFORD, MCKESSON CORPORATION AND OTHERS, OR ANY OF |
| Collateral Type: | THEM, IN CONNECTION WITH THE PRESCRIPTION DRUG ROSIGLITAZONE, MARKETED UNDER THE |
| Collateral Type: | TRADE NAMES AVANDIA, AVANDAMET AND AVANDARYL; (II) ALL MATTERS WITH RESPECT TO |
| Collateral Type: | WHICH THE BORROWER IS REPRESENTING ONE OR MORE INDIVIDUALS OR ESTATES AGAINST |
| Collateral Type: | ZIMMER INC., ZIMMER HOLDINGS INC. AND OTHERS, OR ANY OF THEM, IN CONNECTION WITH |
| Collateral Type: | THE SO-CALLED "ZIMMER HIP" LITIGATION; AND |

| | |
|---|---|
| **Collateral Type:** | (III) ALL MATTERS WITH RESPECT TO WHICH THE BORROWER IS REPRESENTING ONE OR MORE INDIVIDUALS OR ESTATES AGAINST |
| **Collateral Type:** | SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY D/B/A METROLINK, CONNEX RAILROAD, |
| **Collateral Type:** | LLC AND OTHER DEFENDANTS IN THE SO-CALLED "CHATSWORTH METROLINK COLLISION CASES" |
| **Collateral Type:** | RELATED TO THE LEAD CASE CAPTIONED AND STYLED MAGDALENO V. SOUTHERN CALIFORNIA |
| **Collateral Type:** | REGIONAL RAIL AUTHORITY DBA METROLINK, LOS ANGELES COUNTY SUPERIOR COURT, CASE |
| **Collateral Type:** | NO. PC043703; ALL OF DEBTOR'S BOOKS RELATED TO THE FOREGOING; AND ALL CASH AND |
| **Collateral Type:** | NON-CASH PROCEEDS OF ANY OF THE FOREGOING, IN WHATEVER FORM, INCLUDING WITHOUT |
| **Collateral Type:** | LIMITATION ALL PROCEEDS OF PROCEEDS, ALL INSURANCE POLICIES COVERING SAME AND |
| **Collateral Type:** | ALL INTEREST OR DIVIDENDS THEREON. |

## Related Filing Information

| | |
|---|---|
| **Related Filing Number:** | 1172814762 |
| **Related Filing Date:** | 08/18/2011 |
| **Related Filing Time:** | 0835 |
| **Related Filing Type:** | AMENDMENT |
| **Related Filing Number:** | 1373755925 |
| **Related Filing Date:** | 08/28/2013 |
| **Related Filing Time:** | 1441 |
| **Related Filing Type:** | AMENDMENT |
| **Related Filing Number:** | 1675306737 |
| **Related Filing Date:** | 06/10/2016 |
| **Related Filing Time:** | 1245 |
| **Related Filing Type:** | CONTINUATION |
| **Related Filing Number:** | 1775969950 |

| | |
|---|---|
| **Related Filing Date:** | 07/19/2017 |
| **Related Filing Time:** | 1447 |
| **Related Filing Type:** | AMENDMENT |

The public record items reported above may have been
paid, terminated, vacated or released prior to today's date.

## Order Documents

Call Westlaw CourtExpress at 1-877-DOC-RETR
(1-877-362-7387) for on-site manual retrieval of documents
related to this or other matters. Additional charges apply.

*Thomson Reuters Legal is not a consumer reporting agency and none of its services or the data contained therein
constitute a 'consumer report' as such term is defined in the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. sec.
1681 et seq. The data provided to you may not be used as a factor in consumer debt collection decisioning, establishing
a consumer's eligibility for credit, insurance, employment, government benefits, or housing, or for any other purpose
authorized under the FCRA. By accessing one of our services, you agree not to use the service or data for any purpose
authorized under the FCRA or in relation to taking an adverse action relating to a consumer application.*

**End of Document**                                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT "2"**

# JOHN MORAN

SINCE 1969

## A U C T I O N E E R S

| CONSIGNMENT AGREEMENT |
| --- |

**Customer Number: 141573**

| | |
| --- | --- |
| **Consignor:** | Jason M. Rund, Chapter 7 trustee for the bankruptcy estate of Thomas Vincent Girardi ("Trustee"), Case No. 2:20-bk-21020-BR ("Bankruptcy Case") |
| **Payable to: (if other)** | |
| **Address:** | 840 Apollo Street, Suite 351, El Segundo, CA  90245 |
| **Phone/Cell:** | (310) 640-1200 |
| **Fax/Email:** | jrund@srlawyers.com |

1. THANK YOU, Jason M. Rund, Chapter 7 trustee for the bankruptcy estate of Thomas Vincent Girardi, Case No. 2:20-bk-21020-BR (the "Consignor") for consigning property (the "Property") to John Moran Auctioneers, Inc. ("Moran") for sale at auction. The Consignor hereby consigns to Moran, as their exclusive agent of sale, the Property identified on the subsequent Inventory Receipts (the "Receipt"). Unless specified on the Receipt, the following terms and conditions apply to all consignments made under this Consignment Agreement (the "Agreement").  This Agreement is subject to the approval of the United State Bankruptcy Court, Central District of California, Los Angeles Division, Case Number 2:20-bk-210210-BR ("Bankruptcy Court").

2. THE CONSIGNOR'S REPRESENTATIONS AND WARRANTIES. The Consignor represents and warrants as follows:

   a. the Consignor is authorized to consign and sell the Property pursuant to an order to be obtained from Bankruptcy Court.

   b. the Property will be sold free and clear of any and all encumbrances, liens, and claims other than those recognized by the Bankruptcy Court;

   c. the Consignor has no information in its possession, custody or control that would lead to a reasonable conclusion that any of the Property is inauthentic or counterfeit;

   d. the Consignor  is authorized to sell the Property pursuant to an order to be obtained from the Bankruptcy Court;

   e. title to the Property will pass to the buyer pursuant to the order to be obtained from the Bankruptcy Court; and

   f. the Property is sold "as is" without representations or warranties.

3. CONSIGNMENT PROCESS. At the time of consignment, Moran will place a pre-auction estimate on the Property. These estimates are intended as guides for prospective bidders and are in no way a representation or warranty by

Moran as to the anticipated selling price. Estimates are preliminary and Moran shall have absolute discretion to revise them. By consigning the Property, the Consignor gives Moran sole discretion in researching (including third-party consultations), grouping the Property into lots, cataloguing, sale and lot placement, illustration, condition reporting, and marketing pertaining to the Property. Moran makes no warranties with respect to the authenticity, genuineness, or overall description of the Property and shall not be responsible for any errors or omissions in describing the Property in the catalogue or advertising. A transportation fee not to exceed $7,000 to cover the cost of moving the receipted property from its present location to Moran's location will be remitted to Moran upon final settlement. The Consignor agrees to pay a $50 photography fee. Moran shall retain copyright to any visual, audio or printed media of the Property produced by them. The Consignor authorizes Moran to charge the buyer for Moran's account a commission on each lot sold (the "Buyer's Premium"), as identified in Moran's Conditions of Sale then in effect at the time of sale, a copy of which the Consignor acknowledges it has reviewed, and which is incorporated herein by reference. Applicable sales tax will be added to the Hammer Price, as defined in Section 4 of this Agreement, plus Buyer's Premium and will be paid by the buyer. The Consignor agrees that none of the buyers' rights, or Moran's rights or obligations, under the Conditions of Sale apply to the Consignor's benefit. In some instances, Moran may pay out of its commissions a fee to any third-party introducing Property or consignors to them.

4.  SALE CONDUCT AND RESERVES. It is mutually agreed that all Property will be sold (unless agreed to be sold privately or in a marketplace setting) via the highest bid attainable by public auction (the "Hammer Price") pursuant to the terms noted on the Receipt. Unless otherwise agreed, all Property shall be offered at auction <u>without reserve</u>. Should the Consignor wish to place a reserve on any lot above 50% of the low estimate and that lot fails to sell, it is subject to a $100 handling fee. Reserves are not permitted for Property estimated at $500 and below. All bids to protect the reserve, if any, will be made by Moran's representative on the Consignor's behalf.

Moran may sell any Property below its reserve, provided the Consignor receives payment, subject to the terms stated on the Receipt, which the Consignor would have received had that Property been sold at the reserve. In either case, once the Property is sold, the Consignor will net the amount if sold at the reserve unless agreed to otherwise in writing. The Consignor expressly agrees that email or facsimile communication shall be binding as to establishing or reducing reserves or estimates. Moran makes no guarantee with respect to the ultimate sale price, nor is Moran liable for the failure of any lot to reach an agreed reserve or sell within its estimated range.

Should the Property remain unsold, Moran may elect to reoffer the Property in a future sale with a reduced estimate and reserve. Upon notification in writing (including e-mail) to the Consignor, the Consignor will have two weeks to respond to the re-offer notice. If no response is received, the Consignor will be deemed to have agreed to the revised estimate and reserve.

Consignors, their agents, or their representatives are forbidden from bidding on Property they have consigned. If the Consignor violates this term and subsequently become the successful bidder, Moran will return or re-offer the Property only after any fees due (including Buyer's Premium and Seller's Commission) have been paid.

5.  INSURANCE. The Property will be insured at the Consignor's expense (unless otherwise agreed in writing) while on Moran's premises or otherwise under Moran's care and control at the cost of 1% of:

    a.  the mean pre-sale estimate (as indicated on the Receipt);

    b.  the final bid price if sold; or

    c.  the reserve if offered on the marketplace or unsold (or if no reserve then ½ the low estimate);



less the amount of any commissions and fees due to Moran. This fee applies whether or not Moran chooses to self-insure.

Moran is not liable for loss or damage to the Property, including, but not limited to, frames and picture glass, resulting from:

    a.   third parties retained by the Consignor, regardless of recommendation;

    b.   conservators, restorers, testers, framers, or other independent contractors employed with the Consignor's consent;

    c.   normal wear and tear or inherent defects in the Property; or

    d.   events beyond Moran's control including, but not limited to, earthquake, flood, fire, government action, riot, power failure, and acts of war or terrorism—including radioactive, chemical, or biological contamination.

In an event resulting in partial loss or damage, and where Moran has accepted responsibility, Moran's liability is limited to the amount of depreciation of the Property. Moran has the sole discretion to determine the diminution of value of the Property. In no event shall Moran be liable for incidental, indirect, special or consequential damages of any nature including, but not limited to, lost profits.

6.    WITHDRAWALS. No Property may be withdrawn without Moran's consent. Should Moran consent to a withdrawal, before the Property is released, the Consignor shall compensate Moran in an amount equal to twenty percent (20%) of the mean estimate in consideration of forfeited commissions and Buyer's Premium, applicable insurance and illustrations fees, as well as any out-of-pocket expenses incurred by Moran. Moran reserves the right to withdraw any Property from any auction at any time.

7.    RESCISSION. All property will be sold "as-is" and "where-is" without any representations or warranties. The Consignor agrees that each lot will be offered will include the following notice:

"…sold 'as-is, where-is' without any representations or warranties.  All sales are final"

Additionally, each lot will be identified as being sold by the bankruptcy estate of Thomas Vincent Girardi and that assets will be sold to help pay off creditors.

8.    UNSOLD PROPERTY. Any unsold Property that has not been re-consigned for a future auction must be picked up with within sixty (60) days of the last auction. Unsold Property remaining onsite and not consigned to a future auction will incur a $100 administration fee and a ten dollar ($10) per lot, per day storage fee. The Consignor agrees that Moran is not liable for any loss or damage to the Property after the sixty (60) day grace period has ended. Ninety days (90) after the last auction, Moran may elect to sell the Property in accord with provisions of California state law and the UCC unless otherwise agreed. Any sale under this Section 10 shall be without regard to the reserve, and shall be subject to Moran's standard commission rates, unpaid charges, and fees incurred to the Consignor's account. The net proceeds of such a sale shall be then applied to the costs of storage and sale of the Property (including reasonable expenses and attorney fees) and the excess, if any, will be remitted to the Consignor, or, in the event that Moran is not able to locate or contact the Consignor, disposed of as required by law.

Unless otherwise agreed to in writing, the Consignor is r0esponsible for the cost of the return of any unsold property.

9.    SELLER'S COMMISSION. For Moran's services, the Consignor agrees to pay to Moran a "Seller's Commission" of 6%.

Matn °



10. SALE SETTLEMENT. Upon payment by the buyer, Moran shall release to the Consignor the gross proceeds of sale (being the Hammer Price, Buyer's Premium and any applicable taxes) for sold Property seven (7) days from each respective auction date. Sums of additional proceeds collected after the initial remittance, will be remitted to the Consignor every 7 days thereafter. Payments made by wire transfer may incur additional bank fees. Moran assumes no responsibility for and is under no obligation to sue or otherwise enforce, payment by any buyer. No later than 21 days after the auction, Moran shall prepare and submit to the Consignor an auction report which will include: The lot number and description of each item sold, the date of sale, sale price, name, address and telephone number of purchaser; the gross proceeds from the sale, a statement that the gross proceeds have been turned over to the Consignor, and a descriptive list of the items that were not sold but which are to be returned to the Consignor. All proceeds of the sale, including the buyer's premium shall be remitted to the Trustee. Upon receipt and review of the auction report, Trustee shall pay Moran for any fees and expenses required and provided for within this Agreement in accordance with the authorization of the US Bankruptcy Court.

11. ENDANGERED SPECIES. Any Property made of or incorporating endangered or protected species or wildlife that is in violation of federal or state laws may not be publicly sold. The Consignor is aware of such restrictions and agrees that Moran is not liable if such Property is withdrawn by Moran or is otherwise confiscated by state or federal agencies.

12. ENTIRE AGREEMENT. This Agreement constitutes the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

13. GOVERNING LAW. The rights and obligations of the parties with respect to this Agreement and the conduct of the auction shall be governed and interpreted by the laws of the State of California.

14. DISPUTES.  The Bankruptcy Court for the Bankruptcy Case shall have sole jurisdiction to resolve all disputes relating to this Agreement and the sale of any Property.

15. SEVERABILITY. Should any of these conditions be deemed unenforceable, invalid, or illegal in any court having jurisdiction, that part shall be severed from this Agreement and shall have no effect on the enforceability of the remaining provisions contained herein, which shall remain valid to the fullest extent permitted by law.

16. SUCCESSORS AND ASSIGNS. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns. The Consignor may not assign its rights or obligations hereunder without the prior written consent of Moran.

17. AMENDMENT AND MODIFICATION. This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto.

18. WAIVER. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

19. INTERPRETATION; HEADINGS. This Agreement will be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement.

Matn



20. SIGNATORY / LEGAL REPRESENTATIVE. Please indicate by initialing the appropriate section below if you are either the legal representative of an estate, trust, or corporation or acting as an agent for the Consignor and write the legal name of the principal.

I am acting on behalf of an estate, trust, or corporation: _____ (initial)
Name and type of entity: _____
I am an agent for the Consignor: _____ (initial)
Consignor's name: _____

21. USE OF NAME AND/OR TITLE. The Consignor authorizes Moran to use the following name(s) for promotional purposes.


Name: _____

I have read and agree to this Agreement and acknowledge receiving of a copy of the accompanying Receipt.

_____            _____
Consignor's Name                                              Date



_____            _____
First and Last Name, Title                                   Date
John Moran Auctioneers, Inc.

Matn ˝

JOHN MORAN
AUCTIONEERS
SINCE 1969

# Jeffrey John Moran

145 East Walnut Ave., Monrovia, CA 91016    jeff@johnmoran.com    mobile: 626-485-0197

## Experience

**John Moran Auctioneers, Incorporated, Monrovia, CA**　　　　　　June 1986 - Present
*President & Auctioneer – Over 100 million in sales in last five years.*

Manage daily operations of a 50-year-old, family-owned auction company.
Nurture existing client relationships and develop new client contacts.
Negotiate commission sales of fine art and antiques.
Develop and implement cost-effective marketing strategies to counter competition.
Expand and embrace new technology in the marketing and sale of old-world objects.
Provide market valuations and inventories for client property.
Maintain a challenging, yet positive work environment for my staff.
Develop and implement an enriching internship program.
Collaborate with art conservators and historians to preserve research and exhibit American art.
Reduce operating expenses while increasing company's net profitability.

**Los Angeles County Sheriff's Department**　　　　　　October 1989 – Present
*Training Officer/Reserve Deputy Sheriff – Over 1000 career operations.*

Altadena Mountain Rescue Team – Responsible for coordinating searches and rescues in the San Gabriel Mountains and assists to other operations in areas within Los Angeles County.  Integrate with multi-agency responses to major accidents. Training Officer:  Schedule weekly and monthly trainings for 25 team members.  Prepare Team for annual accreditation in technical peer evaluation.  Test and evaluate each team member for proficiency on annual basis.
Rescue systems analysis/test new equipment and procedures to increase safety and efficiency.

Emergency Operations Bureau – Diplomatic Protection Unit:  Provide protection for visiting dignitaries for State Department. Work aside US Secret Service for highest-level government officials and visiting dignitaries.  Counter-Terrorism Unit:  Participate in undercover details and trainings, provide security & emergency medical care during in-depth surveillance operations.

**Pasadena Museum of California Art**　　　　　　April 2005 – January 2017
*Board Member*

Support PMCA Museum Director and Staff in fulfilling immediate and future goals.  Implement and adhere to newly developed strategic plan. Work with Museum Director and other museums in developing/identifying future exhibits.  Headed search committee to interview candidates for position of Museum Director.  Developed performance-based goals for new Museum Director.  Currently working with City of Pasadena to mitigate existing building code and fire zone issues.

## Education

**Claremont Graduate University - Peter F. Drucker and Masatoshi Ito School of Management,** Executive Management Program, MBA Honors Graduate, Claremont, CA, 2011 – 2013.

**United States Naval Hospital** (Uniformed Services University), *Emergency Medical Course/Live Tissue Program*, Deployment Medicine International, Dr. John Hagmann. Bethesda, MD, August 2009.

**New Mexico Tech** (Department of Homeland Security), Energetic Materials Research and Testing Center, Technical Instructors Course, *ITRB*, Socorro, NM, December 2007

**American Society of Appraisers**, *Uniform Standards of Professional Appraisal Practice* (USPAP), CA 2006 (Renewed 2021)

**Sotheby Institute for Art/NYU**, *Appraisal Certificate Program*, New York, NY, 1996.

**University of California, Santa Cruz** (Sierra Institute), *Sustainability, Philosophy, and Religion,* Santa Cruz, CA, 1992.

**Los Angeles County Sheriff's Academy**, *Reserve Deputy Sheriff*, Los Angeles, CA, June 1990

**Pasadena City College**, *Emergency Medical Technician*, Pasadena, CA, June 1990.

## Achievements/Awards

Los Angeles County Sheriff's Department, 30-year service award, November 2020
Mountaineer of the Year Award, Altadena Mountain Rescue Team, 2004
Recognition for Outstanding Service in Search and Rescue, California State Assembly, 1998
Outstanding Development of a Training Program, Mountain Rescue Association, 1998
One of seven authors to rewrite training guidelines for Los Angeles County Search and Rescue
Program, 1998.

## Presentations/Lectures *(partial list)*

Morgan Stanley, Doolin Group, *Gardeners, Gifts and Garbage*, January 2019
Morgan Stanley, Doolin Group, *Fakes, Frauds & Forgeries*, Pasadena, January 2018
Wells Fargo Private Client Group, *Fakes, Frauds & Forgeries*, Pasadena, CA 2017
Huntington Library, *Gardeners, Gifts and Garbage,* San Marino, CA November 2016
U.S. Trust, Private Client Group, *Gardeners, Gifts and Garbage*, Irvine, CA October 2015
U.S. Trust, Private Client Group, *Fakes, Frauds & Forgeries*, Irvine, CA March 2015
Morgan Stanley/Doolin Group, *Gardeners, Gifts and Garbage*, Pasadena, 2015
Keck School of Medicine, University of Southern CA, Physician's Family and Friends Group,
*Gardeners, Gifts and Garbage*, Los Angeles, CA, November 2012
U.S. Trust, Private Client Group, *Gardeners, Gifts and Garbage*, Pasadena, CA, August 2012
Pasadena Museum of History, *Gardeners, Gifts and Garbage*, Pasadena, CA, May 2012

The Questers, *Gardeners, Gifts and Garbage*, Altadena, CA, May 2012
Pasadena Bar Association, Women's Focus Group, *Gardeners, Gifts and Garbage*, April 2012
La Canada Women's Club, *Recognizing Value*, Altadena, CA, April 2012
San Gabriel Valley Fiduciary Roundtable, *Recognizing Value,* University Club, Pasadena, CA
December 2012

## Professional Organizations

National Auctioneers Association
Huntington Library, Society of Fellows
Pasadena Museum of History, Founders Circle
Mountain Rescue Association
Wilderness Medical Association

**EXHIBIT "3"**

BOND NO. <u>602-135930-7</u>                                                    <u>**$25,000.00**</u>

**SURETY BOND**

KNOW ALL MEN BY THESE PRESENTS, THAT, <u>**JOHN MORAN AUCTIONEERS, INC.**</u>
_____herein after called the Principal
(Auctioneer), and _____**UNITED STATES FIRE INSURANCE COMPANY**_____
herein after called Surety, are held and firmly bound unto the United States of America and/or the
United States Trustee hereinafter called the Obligee in the aggregate sum of _____
_____Twenty-five Thousand Dollars And Zero Cents_____Dollars ($25,000.00____)
for the payment whereof to the Obligee, the Principal and Surety hereby bind themselves, their
successors and assigns, jointly and severally, firmly by these presents.

       WHEREAS, the Principal and Obligee will from time to time conduct auctions on behalf
of the United States Trustee and/or the United States Bankruptcy Court, and as a condition to
perform such auctions the United States Trustee requires that a surety bond be posted to secure
the <u>faithful performance</u> of such auctions.

       NOW, THEREFORE, the condition of this obligation is such that if the above bound
Principal shall <u>faithfully perform</u> the duties of an auctioneer and account for all monies received
and in all things comply with the requirements of the United States Trustee and/or the United
States Bankruptcy Court, then this obligation shall be null and void.

       PROVIDED, HOWEVER, that the Surety or Principal may cancel this bond by giving
thirty (30) days prior notice in writing to the Obligee such notice to be given by certified mail.
Such cancellation shall not affect any liability incurred under this bond prior to the effective date
of such cancellation.

LIABILITY UNDER THIS BOND SHALL COMMENCE ON THE ___25th___ DAY OF
<u>February, 2022.</u>

SIGNED, SEALED AND DATED THIS <u>25th</u> DAY OF <u>February, 2022.</u>.

<u>**JOHN MORAN AUCTIONEERS, INC.**</u>_____
Principal (Auctioneer)

By:_____

<u>**UNITED STATES FIRE INSURANCE COMPANY**</u>
Surety

By:_____
Catherine Kehoe - Attorney in Fact

## POWER OF ATTORNEY
## UNITED STATES FIRE INSURANCE COMPANY
### PRINCIPAL OFFICE - MORRISTOWN, NEW JERSEY

**KNOW ALL MEN BY THESE PRESENTS:** That United States Fire Insurance Company, a corporation duly organized and existing under the laws of the state of Delaware, has made, constituted and appointed, and does hereby make, constitute and appoint: **Clark Fitz-Hugh; Conway C. Marshall; Elizabeth W. Kearney; Sara S. DeJarnette; Linda C. Sheffield; Catherine C. Kehoe; Stephen Beahm; Kristine Donovan; Jessica Palmeri; Elizabeth Schott; David C. Joseph; Roxanne Craven; Andrea Becker; Kelli Cross;Amanda Riedl of International Sureties, Ltd.**
each, its true and lawful Attorney(s)-In-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver: Any and all bonds and undertakings of surety and other documents that the ordinary course of surety business may require, and to bind United States Fire Insurance Company thereby as fully and to the same extent as if such bonds or undertakings had been duly executed and acknowledged by the regularly elected officers of United States Fire Insurance Company at its principal office, in amounts or penalties not exceeding: **One Hundred Twenty Five Million Eight Hundred Dollars ($125,800,000)**

This Power of Attorney limits the act of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind United States Fire Insurance Company except in the manner and to the extent therein stated.

This Power of Attorney revokes all previous Powers of Attorney issued on behalf of the Attorneys-In-Fact named above and expires on January 1, 2023.

This Power of Attorney is granted pursuant to Article IV of the By-Laws of United States Fire Insurance Company as now in full force and effect, and consistent with Article III thereof, which Articles provide, in pertinent part:

Article IV, Execution of Instruments - Except as the Board of Directors may authorize by resolution, the Chairman of the Board, President, any Vice-President, any Assistant Vice President, the Secretary, or any Assistant Secretary shall have power on behalf of the Corporation:

(a) to execute, affix the corporate seal manually or by facsimile to, acknowledge, verify and deliver any contracts, obligations, instruments and documents whatsoever in connection with its business including, without limiting the foregoing, any bonds, guarantees, undertakings, recognizances, powers of attorney or revocations of any powers of attorney, stipulations, policies of insurance, deeds, leases, mortgages, releases, satisfactions and agency agreements;
(b) to appoint, in writing, one or more persons for any or all of the purposes mentioned in the preceding paragraph (a), including affixing the seal of the Corporation.

Article III, Officers, Section 3.11, Facsimile Signatures. The signature of any officer authorized by the Corporation to sign any bonds, guarantees, undertakings, recognizances, stipulations, powers of attorney or revocations of any powers of attorney and policies of insurance issued by the Corporation may be printed, facsimile, lithographed or otherwise produced. In addition, if and as authorized by the Board of Directors, dividend warrants or checks, or other numerous instruments similar to one another in form, may be signed by the facsimile signature or signatures, lithographed or otherwise produced, of such officer or officers of the Corporation as from time to time may be authorized to sign such instruments on behalf of the Corporation. The Corporation may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Corporation, notwithstanding the fact that he may have ceased to be such at the time when such instruments shall be issued.

**IN WITNESS WHEREOF,** United States Fire Insurance Company has caused these presents to be signed and attested by its appropriate officer and its corporate seal hereunto affixed this 10th day of March, 2016.



**UNITED STATES FIRE INSURANCE COMPANY**

_____
Anthony R. Slimowicz, Executive Vice President

State of New Jersey }
County of Morris   }

On this 10th day of March 2016, before me, a Notary public of the State of New Jersey, came the above named officer of United States Fire Insurance Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of United States Fire Insurance Company thereto by the authority of his office.

**SONIA SCALA**
**NOTARY PUBLIC OF NEW JERSEY**
**MY COMMISSION EXPIRES 3/25/2024**
**No. 2163686**

_____
Sonia Scala, (Notary Public)

I, the undersigned officer of United States Fire Insurance Company, a Delaware corporation, do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the corporate seal of United States Fire Insurance Company on the 25 day of   FEBRUARY   2022

**UNITED STATES FIRE INSURANCE COMPANY**

_____
Daniel Sussman, Senior Vice President

*For verification of the authenticity of the Power of Attorney, please contact 860-956-3424 or email: patricia.taber @amyntagroup.com

Bond Number: 0817240

## AUCTIONEER BOND

**KNOW ALL MEN BY THESE PRESENTS** that we, JOHN MORAN AUCTIONEERS, INC. (hereinafter called Principal), as Principal, and the HARCO NATIONAL INSURANCE COMPANY, its home office in Raleigh, Nc 27605 (hereinafter called Surety), as Surety, are held and firmly bound unto the UNITED STATES OF AMERICA (hereinafter called Obligee), in the full and just sum of TWO HUNDRED EIGHTY THOUSAND SEVEN HUNDRED AND NO/100 ($280,700.00) Dollars, for the payment of which, well and truly to be made, the Principal and Surety hereby bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**NOW THEREFORE**, the condition of this obligation is such that if the said Principal shall faithfully account for all money, assets and effects of bankruptcy case, THOMAS VINCENT GIRARDI; CASE #2:20-BK-21020-BR, in which the Principal is serving as auctioneer, then this obligation to be void; otherwise to remain in full force in effect.

The liability of the Surety hereunder shall not exceed the aggregate sum of TWO HUNDRED EIGHTY THOUSAND SEVEN HUNDRED AND NO/100 ($280,700.00) Dollars, for all claims asserted against this bond.

This bond shall remain in full force and effect from JUNE 17, 2022 to JUNE 17, 2023.

**SIGNED AND SEALED THIS 17TH day of JUNE, 2022.**

JOHN MORAN AUCTIONEERS, INC.

By:

HARCO NATIONAL INSURANCE COMPANY

By:

CATHERINE C. KEHOE, ATTORNEY-IN-FACT

Bond # _____

# POWER OF ATTORNEY
## HARCO NATIONAL INSURANCE COMPANY
## INTERNATIONAL FIDELITY INSURANCE COMPANY
Member companies of IAT Insurance Group, Headquartered: 702 Oberlin Road, Raleigh, North Carolina 27605

**KNOW ALL MEN BY THESE PRESENTS**: That **HARCO NATIONAL INSURANCE COMPANY**, a corporation organized and existing under the laws of the State of Illinois, and **INTERNATIONAL FIDELITY INSURANCE COMPANY**, a corporation organized and existing under the laws of the State of New Jersey, and having their principal offices located respectively in the cities of Rolling Meadows, Illinois and Newark, New Jersey, do hereby constitute and appoint

LINDA C. SHEFFIELD, CONWAY C. MARSHALL, STEPHEN BEAHM, DAVID C. JOSEPH, JESSICA PALMERI, ROXANNE CRAVEN, ANDREA BECKER, CLARK P. FITZ-HUGH, DARLENE A. BORNT, CATHERINE C. KEHOE, KRISTINE DONOVAN, ELIZABETH W. KEARNEY

New Orleans, LA

their true and lawful attorney(s)-in-fact to execute, seal and deliver for and on its behalf as surety, any and all bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof, which are or may be allowed, required or permitted by law, statute, rule, regulation, contract or otherwise, and the execution of such instrument(s) in pursuance of these presents, shall be as binding upon the said **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY**, as fully and amply, to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal offices.

This Power of Attorney is executed, and may be revoked, pursuant to and by authority of the By-Laws of **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY** and is granted under and by authority of the following resolution adopted by the Board of Directors of **INTERNATIONAL FIDELITY INSURANCE COMPANY** at a meeting duly held on the 13th day of  December, 2018     and by the Board of Directors of **HARCO NATIONAL INSURANCE COMPANY** at a meeting held on the 13th day of December, 2018.

"**RESOLVED**, that (1) the Chief Executive Officer, President, Executive Vice President, Senior Vice President, Vice President, or Secretary of the Corporation shall have the power to appoint, and to revoke the appointments of, Attorneys-in-Fact or agents with power and authority as defined or limited in their respective powers of attorney, and to execute on behalf of the Corporation and affix the Corporation's seal thereto, bonds, undertakings, recognizances, contracts of indemnity and other written obligations in the nature thereof or related thereto; and (2) any such Officers of the Corporation may appoint and revoke the appointments of joint-control custodians, agents for acceptance of process, and Attorneys-in-fact with authority to execute waivers and consents on behalf of the Corporation; and (3) the signature of any such Officer of the Corporation and the Corporation's seal may be affixed by facsimile to any power of attorney or certification given for the execution of any bond, undertaking, recognizance, contract of indemnity or other written obligation in the nature thereof or related thereto, such signature and seals when so used whether heretofore or hereafter, being hereby adopted by the Corporation as the original signature of such officer and the original seal of the Corporation, to be valid and binding upon the Corporation with the same force and effect as though manually affixed."

IN WITNESS WHEREOF, **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY** have each executed and attested these presents on this   31st   day of    December, 2018



STATE OF NEW JERSEY
County of Essex

STATE OF ILLINOIS
County of Cook

Kenneth Chapman
Executive Vice President, Harco National Insurance Company
and International Fidelity Insurance Company

On this  31st  day of  December, 2018        , before me came the individual who executed the preceding instrument, to me personally known, and, being by me duly sworn, said he is the  therein described and authorized officer of **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY**; that the seals affixed to said instrument are the Corporate Seals of said Companies; that the said Corporate Seals and his signature were duly affixed by order of the Boards of Directors of said Companies.



IN TESTIMONY WHEREOF, I have hereunto set my hand affixed my Official Seal, at the City of Newark, New Jersey the day and year first above written.

Shirelle A. Outley   a Notary Public of New Jersey
My Commission Expires  April 4, 2023

## CERTIFICATION

I, the undersigned officer of **HARCO NATIONAL INSURANCE COMPANY** and **INTERNATIONAL FIDELITY INSURANCE COMPANY**  do hereby certify that I have compared the foregoing copy of the Power of Attorney and affidavit, and the copy of the Sections of the By-Laws of said Companies as set forth in said Power of Attorney, with the originals on file in the home office of said companies, and that the same are correct transcripts thereof, and of the whole of the said originals, and that the said Power  of Attorney has not been revoked and is now in full force and effect.

IN TESTIMONY WHEREOF, I have hereunto set my hand on this day,     06/17/2022

Irene Martins, Assistant Secretary

A00586

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING EMPLOYMENT OF JOHN MORAN AUCTIONEERS, INC. AS AUCTIONEER; (2) AUTHORIZING SALE OF CERTAIN PERSONAL PROPERTY OF THE ESTATE; AND (3) AUTHORIZING ABANDONMENT OR DESTRUCTION OF CERTAIN PERSONAL PROPERTY OF THE ESTATE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 21, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Rafey Balabanian**    rbalabanian@edelson.com, docket@edelson.com
- **Shraddha Bharatia**    notices@becket-lee.com
- **Ori S Blumenfeld**    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **Richard D Buckley**    richard.buckley@arentfox.com
- **Indira J. Cameron-Banks**    indira@cameron-banks.com, tiffany@cameronbankslaw.com
- **Marie E Christiansen**    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com
- **Ashleigh A Danker**    adanker731@gmail.com
- **Clifford S Davidson**    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- **Joseph C Delmotte**    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
- **Lei Lei Wang Ekvall - DECEASED -**    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Timothy W Evanston**    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **James J Finsten**    , jimfinsten@hotmail.com
- **James J Finsten**    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Andrew Goodman**    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- **Suzanne C Grandt**    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov;vanessa.holton@calbar.ca.gov;robert.retana@calbar.ca.gov
- **M. Jonathan Hayes**    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Marshall J Hogan**    mhogan@swlaw.com, knestuk@swlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

1
- **Bradford G Hughes**   bhughes@Clarkhill.com, mdelosreyes@clarkhill.com
- **Razmig Izakelian**   razmigizakelian@quinnemanuel.com

2
- **Lewis R Landau**   Lew@Landaunet.com
- **Craig G Margulies**   Craig@MarguliesFaithlaw.com,

3
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithla
w.com

4
- **Peter J Mastan**   peter.mastan@dinsmore.com,
SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com

5
- **Edith R. Matthai**   ematthai@romalaw.com, lrobie@romalaw.com
- **Daniel J McCarthy**   dmccarthy@hillfarrer.com,
spadilla@hillfarrer.com;nchacon@hfbllp.com

6
- **Jack Meyer**   jmeyer@ggtriallaw.com
- **Elissa Miller**   emiller@sulmeyerlaw.com,

7
emillersk@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- **Eric A Mitnick**   MitnickLaw@aol.com, mitnicklaw@gmail.com

8
- **Scott Olson**   scott.olson@bclplaw.com, scott-olson-
2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com

9
- **Carmela Pagay**   ctp@lnbyg.com
- **Carmela Pagay**   ctp@lnbyb.com

10
- **Ambrish B Patel**   apatelEl@americaninfosource.com
- **Leonard Pena**   lpena@penalaw.com,

11
penasomaecf@gmail.com;penalr72746@notify.bestcase.com

12
- **Michael J Quinn**   mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-
quinn-2870@ecf.pacerpro.com

13
- **Matthew D. Resnik**   matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;pri

14
scilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;davi
d@rhmfirm.com;sloan@rhmfirm.com

15
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Kevin C Ronk**   Kevin@portilloronk.com, Attorneys@portilloronk.com

16
- **Jason M Rund (TR)**   trustee@srlawyers.com, jrund@ecf.axosfs.com
- **William F Savino**   wsavino@woodsoviatt.com, lherald@woodsoviatt.com

17
- **Najah J Shariff**   najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- **Gary A Starre**   gastarre@gmail.com, mmoonniiee@gmail.com

18
- **Richard P Steelman**   rps@lnbyg.com, john@lnbyb.com
- **Philip E Strok**   pstrok@swelawfirm.com,

19
gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- **Terrence Swinson**   terrenceswinson@gmail.com

20
- **Boris Treyzon**   btreyzon@actslaw.com, sgonzales@actslaw.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

21
- **Christopher K.S. Wong**   christopher.wong@arentfox.com, yvonne.li@arentfox.com
- **Timothy J Yoo**   tjy@lnbyb.com

22

23
**2.  <u>SERVED BY UNITED STATES MAIL</u>**: On **June 21, 2022**, I served the following persons and/or
entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true

24
and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u>
<u>completed</u> no later than 24 hours after the document is filed.

25

26
Thomas Vincent Girardi                                    Thomas Vincent Girardi
1126 Wilshire Boulevard                               Belmont Village Senior Living

27
Los Angeles, CA 90017                                 455 East Angeleno Avenue
Burbank, CA 91501

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

Thomas Vincent Girardi
100 N. Los Altos Drive
Pasadena, CA 91105

Honorable Barry Russell
U.S. Bankruptcy Court
255 E. Temple St., Suite 1660
Los Angeles, CA 90012

John Moran Auctioneers, Inc.
145 East Walnut Ave.
Monrovia, CA 91016

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 21, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 21, 2022 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**