TIMOTHY J. YOO (State Bar No. 155531)
tjy@lnbyg.com
CARMELA T. PAGAY (State Bar No. 195603)
ctp@lnbyg.com
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Jason M. Rund
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | Case No. 2:20-bk-21020-BR |
|---|---|
| THOMAS VINCENT GIRARDI, | Chapter 7 |

In re

THOMAS VINCENT GIRARDI,

Debtor.

Case No. 2:20-bk-21020-BR
Chapter 7

**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF ESTATE'S RIGHT, TITLE AND INTEREST IN REAL PROPERTY FREE AND CLEAR OF LIENS OF KAREN GIRARDI, ALT FINANCIAL NETWORK, INC., STILLWELL MADISON, LLC, KCC CLASS ACTION SERVICES, LLC, LAW FINANCE GROUP, LLC, JOSEPH RUIGOMEZ, KATHLEEN RUIGOMEZ, AND JAIME RUIGOMEZ, AND LOS ANGELES COUNTY TAX COLLECTOR; (2) APPROVING OVERBID PROCEDURE; (3) APPROVING PAYMENT OF COMMISSIONS AND ADVANCED EXPENSES; (4) FINDING PURCHASERS ARE GOOD FAITH PURCHASERS; AND (5) WAIVING STAY UNDER RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**

[100 N. Los Altos Drive, Pasadena, California 91105]

Date:   October 18, 2022
Time:  10:00 a.m.
Place:  Courtroom 1668
         Roybal Federal Building
         255 E. Temple Street
         Los Angeles, CA 90012

1

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** ....................................................**4**

**I.    STATEMENT OF FACTS AND OVERBID PROCEDURES**.............................**4**

    **A.    Background on Case and Settlement with Judgment Lienholder** .............**4**

    **B.    Employment of Broker, Payment of Expenses During Marketing** ...........**4**

    **C.    The Proposed Sale** .................................................................................**5**

    **D.    The Proposed Overbid Procedures**.......................................................**5**

    **E.    Liens and Interests**................................................................................**6**

    **F.    Distribution To The Estate**....................................................................**8**

    **G.    Notice To Creditors** ..............................................................................**9**

**II.    ARGUMENT** .......................................................................................................**9**

    **A.    The Proposed Sale Is In The Best Interest Of The Estate** .......................**9**

    **B.    The Court Should Approve The Sale Free And Clear Of The Liens
    Of Karen, Alt, Stillwell, KCC, Law Finance, Ruigomez Creditors,
    And LACTC**........................................................................................**10**

    **C.    The Court Should Find That The Purchasers Are Purchasers In
    "Good Faith" In Accordance With Bankruptcy Code Section 363(m)**.....**13**

    **D.    Reimbursement Of Expenses Paid By The Trustee And The Broker
    To Preserve The Property During Marketing Is Appropriate In This
    Case**...................................................................................................**14**

    **E.    Waiver Of The Fourteen-Day Waiting Period Set Forth In
    Bankruptcy Rule 6004(h) Is Appropriate In This Case**............................**14**

**III.    CONCLUSION** ..................................................................................................**14**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot),
    94 B.R. 343 (Bankr. E.D. Pa. 1988) ...............................................................11

In re Coastal Indus., Inc.,
    63 B.R. 361 (Bankr. N.D. Ohio 1986) ..........................................................10

In re Ewell,
    958 F.2d 276 (9th Cir. 1992) ........................................................................13

In re Gerwer,
    898 F.2d 730 (9th Cir. 1990) ........................................................................10

In re Lionel Corp.,
    722 F.2d 1063 (2d Cir. 1983) ......................................................................10

In re Mann,
    907 F.2d 923 (9th Cir. 1990) ........................................................................13

Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak
    Farms, Inc.),
    36 B.R. 856 (Bankr. W.D. Mo. 1984) ..........................................................11

In re Onouli-Kona Land Co.,
    846 F.2d 1170 (9th Cir. 1988) ......................................................................13

In re Walter,
    83 B.R. 14 (9th Cir. BAP 1988) ..................................................................10

**Federal Statutes**

11 U.S.C. § 105(a) ................................................................................................1, 14

11 U.S.C. § 363 ........................................................................................................10

11 U.S.C. § 363(b) ..........................................................................................1, 9, 10

11 U.S.C. § 363(f) ........................................................................................1, 10, 11

11 U.S.C. § 363(m) ..........................................................................3, 2, 13, 15

11 U.S.C. § 547 ........................................................................................................12

11 U.S.C. § 549.................................................................................................. 12

**California Statutes**

California Code of Civil Procedure § 493.030(b) ............................................. 12

California Code of Civil Procedure § 493.040(b) ............................................. 12

California Code of Civil Procedure § 704.720(b) ............................................... 9

**Other State Statutes**

Madison, LLC, KCC Class Action Services, LLC, Law................................... 1, 2

**Federal Rules**

Fed. R. Bankr. P. 2002(a)(2) ............................................................................. 9

Fed. R. Bankr. P. 6004(a) ............................................................................. 1, 9

Fed. R. Bankr. P. 6004(h)........................................................... 1, 3, 14, 15

Fed. R. Bankr. P. 6007.................................................................................... 1

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE**:

Jason M. Rund, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Thomas Vincent Girardi (the "Debtor"), respectfully moves this Court, pursuant to 11 U.S.C. §§ 105(a), 363(b), (f), and (m), and Rules 6004(a) and 6007 of the Federal Rules of Bankruptcy Procedure, for an order (1) authorizing the Trustee to sell the estate's right, title, and interest in that certain real property located 100 N. Los Altos Drive, Pasadena, California 91105 (the "Property") free and clear of the liens of Karen Girardi, Alt Financial Network, Inc. Stillwell Madison, LLC, KCC Class Action Services, LLC, Law Finance Group, LLC, Joseph Ruigomez, Kathleen Ruigomez, and Jaime Ruigomez, and Los Angeles County Tax Collector; (2) approving the overbid procedure set forth in this motion; (3) approving the payment of the real estate broker's commissions and the expenses advanced by the Trustee and his real estate broker as detailed herein; (4) finding that the proposed purchasers are good faith purchasers; and (5) waiving the stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Motion").

The Trustee received an offer to purchase the Property from Jun Tao and Peng Tao (the "Purchasers") for $7,500,000 (the "Purchase Price"). This Motion is brought to authorize the sale of the Property to the Purchasers. Furthermore, the Trustee moves the Court for an order authorizing the following overbid procedures: (1) any person interested in submitting an overbid on the Property must attend the hearing on the Motion or be represented by an individual with authority to participate in the overbid process; (2) an overbid will be defined as an initial overbid of $7,525,000, with each additional bid in $5,000 increments; (3) overbidders (except for the Purchasers) must deliver a deposit to the Trustee's counsel by way of cashier's check made payable to "Jason M. Rund, Chapter 7 Trustee," in the amount of $375,000 (the "Deposit") <u>and</u> proof of ability to close escrow unconditionally in a form acceptable to the Trustee at least seven calendar days prior to the hearing on the Motion; (4) overbidders must purchase the Property **on the same terms and conditions as the Purchasers** (*i.e.*, no contingencies of any kind); (5) the Deposit of the successful overbidder shall be forfeited if such

1  party is thereafter unable to complete the purchase of the Property within 15 calendar days of

2  entry of an order confirming the sale; and (6) in the event the successful overbidder cannot

3  timely complete the purchase of the Property, the Trustee shall be authorized to proceed with the

4  sale to the next highest overbidder.

5      In support of this Motion, the Trustee will rely on the Memorandum of Points and

6  Authorities and Declarations of Jason M. Rund, Ted Clark, Jun Tao, and Peng Tao attached

7  hereto, the other pleadings and orders already on file in this case, and on such other argument

8  and evidence as may be presented by counsel at the time of the hearing.

9      Accordingly, the Trustee respectfully requests that this Court enter an order:

10     1.    Approving the above sale of the Property to the Purchasers or the successful

11  overbidder free and clear of the liens of Karen Girardi, Alt Financial Network, Inc., Stillwell

12  Madison, LLC, KCC Class Action Services, LLC, Law Finance Group, LLC, Joseph

13  Ruigomez, Kathleen Ruigomez, and Jaime Ruigomez, and Los Angeles County Tax

14  Collector;

15     2.    Finding that the Purchasers or the successful overbidder purchased the

16  Property in "good faith," as defined in 11 U.S.C. § 363(m);

17     3.    Providing that the Trustee is authorized and empowered to execute and deliver

18  on behalf of the estate any and all documents as reasonably may be necessary to implement the

19  terms of the proposed sale;

20     4.    Providing that the notice given by the Trustee in connection with the sale and

21  the hearing thereon is adequate, sufficient, proper and complies with all applicable provisions of

22  the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

23     5.    Approving the overbid procedure described herein;

24     6.    Authorizing the payment of unpaid property taxes, valid liens of Chase Bank

25  and Arsani Sidarous, homeowner's association fees, the real estate broker's commissions,

26

27

28

expenses advanced by the Trustee and the real estate broker, [1]  and related sale costs directly from escrow;

7.      Waiving the 14-day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

8.      Granting such other and further relief as is just and appropriate.

DATED: September 23, 2022                    LEVENE, NEALE, BENDER, YOO &
                                            GOLUBCHIK L.L.P.


                                            By:/s/ Carmela T. Pagay
                                                CARMELA T. PAGAY
                                            Attorneys for Jason M. Rund
                                                Chapter 7 Trustee

---

[1]     Plus any other Property expenses, including insurance premiums, that come due prior to closing of the sale.

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS AND OVERBID PROCEDURES

**A.    Background on Case and Settlement with Judgment Lienholder**

An Involuntary Petition was filed against Thomas Vincent Girardi, debtor herein ("Debtor"), on December 18, 2020 (the "Petition Date").  The petitioning creditors filed an emergency motion for appointment of an interim trustee on December 24, 2020 [Doc 13], which was granted by the Court on January 5, 2021 [Doc 39].  On January 6, 2021, the United States Trustee appointed Jason M. Rund ("Trustee") as the chapter 7 trustee.

On January 13, 2021, the Order for Relief was entered [Doc 64], and the Trustee was reappointed.  Among the assets of the Debtor is the real property located at 100 N. Los Altos Drive, Pasadena, California 91105 (the "Property").

Prior to the Petition Date, Joseph Ruigomez, Kathleen Ruigomez and Jaime Ruigomez ("Ruigomez Creditors") commenced an action against the Debtor and his law firm, Girardi Keese ("GK"), in the Los Angeles Superior Court (the "Superior Court"), as Case No. 19STCV22296.  On April 20, 2020, the Superior Court entered a *Judgment* for $11,000,000 in favor of the Ruigomez Creditors and against the Debtor and GK (the "Judgment").

On July 28, 2020, the Ruigomez Creditors recorded an Abstract of Judgment with the Riverside County Recorder's Office as Inst. No. 2020-0337298, which encumbers the Property. See Exhibit 1 hereto.

Following months of discussions, the Trustee and the Ruigomez Creditors entered into a Settlement Agreement allowing the Trustee to administer the Property.  See Exhibit 2 hereto. The Trustee's motion seeking approval of the Settlement Agreement was filed on March 12, 2021 [Doc 132], and was granted by Court order entered on April 20, 2021 [Doc 173].

**B.    Employment of Broker, Payment of Expenses During Marketing**

On March 15, 2021, the Trustee filed his application to employ Compass ("Broker") to market and sell the Property [Doc 135].  The application was approved by Court order entered on April 13, 2021 [Doc 166].

4

In order to maximize the price of the Property, Broker took it upon itself to cover out of pocket expenses for repair, gardening, pool maintenance, and a minimal amount of housekeeping - totaling $50,223.92.  See Exhibit 3 hereto.  Also, the Trustee paid out of pocket the insurance premiums that came due on the Property totaling $13,600.89.[2]

### C.    The Proposed Sale

After extensive marketing by the Broker as detailed in the Declaration of Ted Clark attached hereto, the Broker presented an acceptable offer to the Trustee.  Subject to Court approval, the Trustee proposes to sell the Property, pursuant to the terms of the California Residential Purchase Agreement and the Counter-Offer between the parties, true and correct copies of which are attached hereto as Exhibit 4 and incorporated herein by reference.

The essential terms of the proposed sale are as follows:

·    Purchasers: Jun Tao and Peng Tao ("Purchasers");

·    Purchase Price: $7,500,000 ("Purchase Price");

·    Condition of Property: Property purchased "as-is" without any representations or warranties of any kind; and

·    Broker's Commissions: Four percent (4%).

### D.    The Proposed Overbid Procedures

While the Trustee is prepared to consummate the sale with the Purchasers, he is also interested in obtaining the maximum price for the Property.  Therefore, the Trustee seeks approval of the following overbid procedures: (1) any person interested in submitting an overbid on the Property must attend the hearing on the Motion or be represented by an individual with authority to participate in the overbid process; (2) an overbid will be defined as an initial overbid of $7,525,000, with each additional bid in $5,000 increments; (3) overbidders (except for the Purchasers) must deliver a deposit to the Trustee's counsel by way of cashier's check

---

[2]    Should the sale close after November 8, 2022, the Trustee will have to pay an additional $4,181.02 in premiums to ensure that the insurance coverage does not lapse.

5

made payable to "Jason M. Rund, Chapter 7 Trustee," in the amount of $375,000 (the "Deposit") and proof of ability to close escrow unconditionally in a form acceptable to the Trustee at least seven calendar days prior to the hearing on the Motion; (4) overbidders must purchase the Property **on the same terms and conditions as the Purchasers** (i.e., no contingencies of any kind); (5) the Deposit of the successful overbidder shall be forfeited if such party is thereafter unable to complete the purchase of the Property within 15 calendar days of entry of an order confirming the sale; and (6) in the event the successful overbidder cannot timely complete the purchase of the Property, the Trustee shall be authorized to proceed with the sale to the next highest overbidder.

The Trustee believes that the proposed overbid procedure, notice of which has been given to all creditors and interested parties, will maximize the price ultimately obtained for the Property as well as protect the estate from parties who may wish to participate in the overbid procedure, but who are ultimately unable to consummate the sale transaction. Accordingly, the Trustee requests that the Court authorize the overbid procedure discussed above.

**E.    Liens and Interests**

A preliminary title report on the Property (the "Title Report"), a true and correct copy of which is attached hereto as Exhibit 5 and incorporated herein by reference, has been obtained from Fidelity National Title Company.  The Title Report indicates that the following liens have been recorded against the Property:

| Item No. on Title Report | Lienholder | Nature and Amount of Lien |
|---|---|---|
| 1 | County Assessor's Office | Real property taxes for 2022-2023, which are not yet due and payable. |
| 2 | County Assessor's Office | Real property taxes for 2020-2021. |
| 3 | County Assessor's Office | Real property taxes for 2021-2022. |
| 4 | County Assessor's Office | Real property taxes for 2020-2021. |

6

| 5 | County Assessor's Office | Real property taxes for 2021-2022. |
|---|---|---|
| 6 | Pasadena Department of Finance | Improvement district assessment (collected with property taxes). |
| 7 | County Assessor's Office | Supplemental assessments of property taxes. |
| 15 | Karen Girardi ("Karen") | Judgment for spousal support recorded on 10/16/89. |
| 16 | JPMorgan Chase Bank, National Association ("Chase") | Deed of Trust recorded on 05/05/14 in favor of Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Directors Financial Group. The assignment of the beneficial interest under said trust deed to Chase was recorded on 02/09/21. The Trustee is informed that an obligation of approximately $2,615,187 is secured by this lien and the amount owed will be paid from escrow. |
| 17 | Arsani Sidarous ("Arsani") | Deed of Trust recorded on 10/07/19 in favor of Alt Financial Network, Inc., a California corporation ("Alt"). The assignment of the beneficial interest under said trust deed to Arsani was recorded on 10/25/19. The Trustee is informed that an obligation of approximately $3,236,871 is secured by this lien and the amount owed will be paid from escrow. |
| 18 | Alt | Financing statement recorded on 10/25/19. |
| 20 | Stillwell Madison, LLC ("Stillwell") | Writ of execution recorded on 11/02/20. |
| 21 | KCC Class Action Services, LLC ("KCC") | Writ of execution recorded on 11/24/20. |
| 23 | Alta San Rafael Association | Notice of delinquent assessments recorded on 05/21/21. |
| 24 | Law Finance Group, LLC ("Law Finance") | Abstract of judgment recorded on 08/08/19. |
| 25 | Ruigomez Creditors | Abstract of judgment recorded on 07/13/20. |
| 26 | Ruigomez Creditors | Abstract of judgment recorded on 07/30/20. |

| 27 | Los Angeles County Tax Collector ("LACTC") | Property tax lien recorded on 11/24/20. |
| 28 | LACTC | Property tax lien recorded on 11/24/21. |

**F.**    **Distribution To The Estate**

The Trustee estimates that the proposed sale will generate net proceeds as follows:

| | |
|---|---|
| Proposed Sales Price | $7,500,000 |
| Real Property Taxes | <$40,000> |
| Karen Deed | <$285,000>[3] |
| Chase Deed | <$2,615,187> |
| Arsani Deed | <$3,395,042> |
| Alt Financing Statement | <$0>[4] |
| Stillwell Writ | <$0>[5] |
| KCC Writ | <$0>[6] |
| Law Finance Abstract | <$0>[7] |
| Ruigomez Abstracts | <$0>[8] |
| LACTC Tax Liens | <$0>[9] |
| Homestead Exemption | <$175,000>[10] |

---

[3]    Such amount could be less for the reasons stated in Section II.B., infra for seeking to sell the Property free and clear of this lien.

[4]    The Trustee seeks to sell the Property free and clear of this lien. See Section II.B., infra.

[5]    The Trustee seeks to sell the Property free and clear of this lien. See Section II.B., infra.

[6]    The Trustee seeks to sell the Property free and clear of this lien. See Section II.B., infra.

[7]    The Trustee seeks to sell the Property free and clear of this lien. See Section II.B., infra.

[8]    The Trustee seeks to sell the Property free and clear of this lien. See Section II.B., infra.

[9]    The Trustee seeks to sell the Property free and clear of these liens. See Section II.B., infra.

| | |
|---|---|
| Expenses Advanced by Trustee | <$13,601> |
| Expenses Advanced by Broker | <$50,224> |
| Closing Costs (estimated at 5% including 4% broker commission) | <$375,000> |
| Net Proceeds (Subject to Settlement Agreement) | $550,946 |

Pursuant to the Settlement Agreement, 80% of the net proceeds after payment of liens senior to the Ruigomez Abstracts, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.) and the administrative fees and costs of the bankruptcy estate would be paid to the Ruigomez Creditors, and 20% would be paid to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate. Since the Property is being sold free and clear of certain liens with those liens attaching to the proceeds, the exact 80%-20% split cannot be determined at this time. The Trustee will provide an accounting to the Ruigomez Creditors as soon as possible once the liens attaching to the sale proceeds have been resolved.

**G.      Notice To Creditors**

Notice of this Motion has been transmitted to all creditors in accordance with Fed. R. Bankr. P. 2002(a)(2), 6004(a), and is being filed concurrently herewith.

**II.**

**ARGUMENT**

**A.      The Proposed Sale Is In The Best Interest Of The Estate**

Section 363(b)(1) of the Bankruptcy Code provides that:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

---

[10] Based on his medical and financial condition, it is highly doubtful that the Debtor will be able to reinvest the exemption funds within 6 months as required under Section 704.720(b) of the California Code of Civil Procedure. As such, the Trustee will seek an order from the Court after the close of escrow to protect the estate from Debtor's use of funds that would violate the statute.

11 U.S.C. § 363(b)(1). The standard of review used in determining approval of a proposed sale of property is whether sound business reasons support the sale outside the ordinary course of business. In re Walter, 83 B.R. 14, 19 (9th Cir. BAP 1988); In re Lionel Corp., 722 F.2d 1063, 1066 (2d Cir. 1983). In order for a sale to be approved under section 363 of the Bankruptcy Code, the purchase price must be fair and reasonable. In re Coastal Indus., Inc., 63 B.R. 361 (Bankr. N.D. Ohio 1986).

In the present case, the Trustee believes that the sale of the Property under the terms and conditions set forth above is supported by sound business reasons and is in the best interest of the estate. Based upon the current real estate market and the other sale transactions in the area, the Trustee believes that the sale price represents the fair market value of the Property. Further, from the net sale proceeds of the Property, the estate is expected to receive 20% of the net proceeds following payment of liens senior to the Ruigomez Abstracts, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.) and the administrative fees and costs of the bankruptcy estate, pursuant to the terms of the Settlement Agreement, to be held in trust for the allowed unsecured claimants of the bankruptcy estate.

Thus, the proposed sale of the otherwise overencumbered property (*i.e.*, there is insufficient equity in the Property to pay off the significant Judgment obtained by the Ruigomez Creditors) represents a sound exercise of the Trustee's business judgment. Accordingly, the Trustee should be authorized to sell the Property.

**B.    The Court Should Approve The Sale Free And Clear Of The Liens Of Karen, Alt, Stillwell, KCC, Law Finance, Ruigomez Creditors, And LACTC**

The Bankruptcy Court has the power to authorize the sale of property free and clear of liens or interests. See 11 U.S.C. § 363(f); In re Gerwer, 898 F.2d 730, 733 (9th Cir. 1990). Section 363(f) of the Bankruptcy Code permits a sale of property "free and clear of any interest in such property of an entity other than the estate" if any one of the following five conditions is met:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of liens.  See e.g., Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988); Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.), 36 B.R. 856, 858 (Bankr. W.D. Mo. 1984).

In the instant case, the liens asserted by Karen, Alt, Stillwell, KCC, Law Finance, and LACTC are all in dispute, thereby satisfying section 363(f)(4) as follows:

1)    Karen: The amount currently owing on Karen's lien is subject to dispute.  The amount being sought by Karen is based on the Marital Settlement Agreement ("MSA") that she entered into with the Debtor in 1989, which was made part of a Judgment entered by the Los Angeles Superior Court on or about September 8, 1989 in LASC Case No. D 102 485.  See Exhibit 6 hereto.  However, the parties specifically agreed in such MSA (see Section XI., C-D) that the support amount is modifiable, and can take into consideration the Debtor's ability to pay the monthly support to Karen.  Notably, the Debtor requested that these payments be terminated even prior to the Petition Date given his financial situation at that time.  See Exhibit 7 hereto. Such financial situation became even more dire when the Illinois District Court issued a civil contempt order on December 14, 2020 that froze all of the assets of the Debtor and his firm. See Exhibit 8 hereto.  Hence, the Debtor has had absolutely no income since that time nor any assets to pay Karen the support previously agreed upon back in 1989.  Section 363(f)(3) is also

11

satisfied since the Purchase Price exceeds all liens asserted against the Property, including Karen's lien.

2)      Alt: The financing statement recorded in favor of Alt (Item No. 18 on the Title Report) secures the same debt that was assigned to Arsani, which will be paid through escrow.

3)      Stillwell: Section 493.040(b) of the California Code of Civil Procedure provides as follows: "The filing of a petition commencing a voluntary or involuntary case under Title 11 of the United States Code (Bankruptcy) terminates a lien of a temporary protective order or of attachment if the lien was created within 90 days prior to the filing of the petition."  Cal. C.C.P. § 493.030(b).  Stillwell's writ of execution was recorded on November 2, 2020, 46 days prior to the Petition Date.  Hence, Stillwell's lien has been terminated pursuant to section 493.040(b) of the California Code of Civil Procedure.

4)      KCC: KCC's writ of execution was recorded on November 24, 2020, 24 days prior to the Petition Date.  Hence, KCC's lien has been terminated pursuant to section 493.040(b) of the California Code of Civil Procedure.

5)      Law Finance: Law Finance's judgment has been fully satisfied.  See Exhibit 9 hereto.

6)      LACTC: Item No. 27 on the Title Report is a tax lien recorded by the LACTC on November 24, 2020, which is within the 90-day preference period preceding the Petition Date.  Accordingly, the lien is avoidable under 11 U.S.C. § 547.

7)      LACTC: Item No. 28 on the Title Report is a tax lien recorded by the LACTC on November 24, 2021, after the Petition Date.  Accordingly, the lien is avoidable under 11 U.S.C. § 549.

With regard to the Ruigomez Creditors' liens, the Settlement Agreement reflects the Ruigomez Creditors' consent to the Trustee's sale of the Property, thereby satisfying section 363(f)(2).  See Exhibit 3 hereto.

Accordingly, it is appropriate in the instant case to allow the Trustee to sell the Property free and clear of the liens of Karen, Ruigomez Creditors, and LACTC, with their liens to attach

1    to proceeds.  The Trustee should also be allowed to sell the Property free and clear of the liens of

2    Alt, Stillwell, KCC and Law Finance, with their liens to **not** attach to proceeds. True and correct

3    copies of all of the foregoing liens are collectively attached hereto as <u>Exhibit 10</u>.

4        **C.    <u>The Court Should Find That The Purchasers Are Purchasers In "Good</u>**

5             **<u>Faith" In Accordance With Bankruptcy Code Section 363(m)</u>**

6        As noted above, the Trustee requests as part of the approval of the proposed sale

7    transaction that the Court find that the Purchasers are "good faith" purchasers within the

8    meaning of section 363(m) of the Bankruptcy Code.  As set forth in the Declarations of Jun Tao

9    and Peng Tao attached hereto, there is no affiliation between the Purchasers and the Trustee, the

10   Debtor, or the estate.

11       Section 363(m) provides that "[t]he reversal or modification on appeal of an

12   authorization under subsection (b) or (c) of this section of a sale or lease of property does not

13   affect the validity of a sale or lease under such authorization to an entity that purchased or

14   leased such property in good faith . . . ."  11 U.S.C. § 363(m).  Under section 363(m) of the

15   Bankruptcy Code, "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale]

16   generally cannot affect the rights of a good faith Purchasers of the foreclosed property, unless

17   the Debtor [or other complaining party] stays the foreclosure [or other] sale pending an appeal."

18   <u>In re Mann</u>, 907 F.2d 923, 926 (9th Cir. 1990).  "[T]he primary goal of the mootness rule

19   [embodied in section 363(m)] 'is to protect the interest of a good faith Purchasers . . . of the

20   property,' thereby assuring finality of sales." <u>In re Onouli-Kona Land Co.</u>, 846 F.2d 1170, 1173

21   (9th Cir. 1988) (quoting <u>In re Suchy</u>, 786 F.2d 900, 901-02 (9th Cir. 1985) ); <u>In re Ewell</u>, 958

22   F.2d 276, 280 (9th Cir. 1992).  That goal is important in this case because the Purchasers need

23   assurance that the purchase of the Property will not be subject to future attack by objecting

24   creditors or a frivolous appeal.

25   ///

26   ///

27   ///

28   ///

**D.      Reimbursement Of Expenses Paid By The Trustee And The Broker To Preserve The Property During Marketing Is Appropriate In This Case**.

Section 105(a) of the Bankruptcy Court provides as follows: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Here, the expenses paid by the Trustee and the Broker out of pocket were necessary and essential for the Property's upkeep and continuation of insurance coverage, which protected and maximized the price at which the Property was sold.   Therefore, it is appropriate for such expenses to be reimbursed from escrow at the closing of the sale of the Property.

**E.      Waiver Of The Fourteen-Day Waiting Period Set Forth In Bankruptcy Rule 6004(h) Is Appropriate In This Case.**

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides, among other things, that an order authorizing the sale of property is stayed until the expiration of fourteen days after entry of the order, unless the Court orders otherwise.   Here, all parties with a potential lien, claim or interest in the Property have been served with notice of the sale and an opportunity to object and the fourteen-day waiting period could only operate to delay the closing of escrow and receipt by the estate of the estimated net proceeds as detailed above. Under these circumstances, the Court should waive the fourteen-day stay of Bankruptcy Rule 6004(h) to permit the Purchasers to proceed with the close of escrow on the sale as soon as possible.

**III**.

**CONCLUSION**

In light of the foregoing, the Trustee respectfully requests that the Court enter an order as follows:

1.      Approving the above sale of the Property to the Purchasers or the successful overbidder free and clear of the liens of Karen, Ruigomez Creditors, and LACTC, with their liens to attach to proceeds, and free and clear of the liens of Alt, Stillwell, KCC and Law Finance, with their liens to **not** attach to proceeds;

14

2.      Finding that the Purchasers or the successful overbidder purchased the Property in "good faith," as defined in 11 U.S.C. § 363(m);

3.      Providing that the Trustee is authorized and empowered to execute and deliver on behalf of the estate any and all documents as reasonably may be necessary to implement the terms of the proposed sale;

4.      Providing that the notice given by the Trustee in connection with the sale and the hearing thereon is adequate, sufficient, proper and complies with all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

5.      Approving the overbid procedure described herein;

6.      Authorizing the payment of unpaid property taxes, valid liens, homeowner's association fees, expenses advanced by the Trustee and the Broker,[11] the real estate broker's commissions, and related sale costs directly from escrow;

7.      Waiving the 14-day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

8.      Granting such other and further relief as is just and appropriate.

DATED: September 23, 2022          LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: /s/ Carmela T. Pagay
CARMELA T. PAGAY
Attorneys for Jason M. Rund
Chapter 7 Trustee

---

[11]    Plus any other Property expenses, including insurance premiums, that come due prior to closing of the sale.

15

## <u>DECLARATION OF JASON M. RUND</u>

I, Jason M. Rund, declare as follows:

1.      I am the duly-appointed, qualified, and acting chapter 7 trustee for the bankruptcy estate of Thomas Vincent Girardi (the "Debtor"). I make this declaration in support of the foregoing motion (the "Motion"). Each of the following facts is of my own knowledge, and if called upon and sworn as a witness, I could and would competently testify thereto. Capitalized terms will have the same meanings as stated in the Motion.

2.      An Involuntary Petition was filed against the Debtor on December 18, 2020. The petitioning creditors filed an emergency motion for appointment of an interim trustee on December 24, 2020 [Doc 13], which was granted by the Court on January 5, 2021 [Doc 39]. On January 6, 2021, the United States Trustee appointed me as the chapter 7 trustee.

3.      On January 13, 2021, the Order for Relief was entered [Doc 64], and I was reappointed.

4.      Among the assets of the Debtor is the real property located at 100 N. Los Altos Drive, Pasadena, California 91105 (the "Property").

5.      Prior to the Petition Date, the Ruigomez Creditors commenced the State Court Action against the Debtor and GK. On April 20, 2020, the Superior Court entered the Judgment against the Debtor and GK.

6.      Attached hereto as <u>Exhibit 1</u> and incorporated herein by reference is a true and correct copy of the Abstract recorded by the Ruigomez Creditors.

7.      Following discussions, the Ruigomez Creditors and I entered into a Settlement Agreement concerning our disputes. A true and correct copy of the Settlement Agreement is attached hereto as <u>Exhibit 2</u> and incorporated herein by reference.  My motion seeking approval of the Settlement Agreement was filed on March 12, 2021 [Doc 132] and was granted by Court order entered on April 20, 2021 [Doc 173].

8.      On March 15, 2021, my application to employ Broker to market and sell the Property [Doc 135]. The application was approved by Court order entered on April 13, 2021 [Doc 166].

9.      In order to maximize the price at which the Property was sold, Broker took it upon itself to cover out of pocket the expenses upkeep that needed to be taken care of while the Broker was marketing the Property.  Such items are discussed in the Declaration of Ted Clark appended to the Motion.  I also paid out of pocket the insurance premiums that came due on the Property totaling $13,600.89.[12]

10.     After extensive marketing by the Broker, the Broker presented an acceptable offer to me.

11.     I propose to sell the estate's interest in the Property to Jun Tao and Peng Tao for $7,500,000 pursuant to the terms of the California Residential Purchase Agreement and the Counter-Offer thereto, true and correct copies of which are attached hereto as Exhibit 4 and incorporated herein by reference.

12.     I believe that the overbid procedure proposed in the Motion, notice of which has been given to all creditors and interested parties, will maximize the price ultimately obtained for the Property as well as protect the estate from parties who may wish to participate in the overbid procedure, but who are ultimately unable to consummate the sale transaction.

13.     The Title Report on the Property was obtained from Fidelity National Title Company.  A true and correct copy of the Title Report is attached hereto as Exhibit 5 and incorporated herein by reference.

14.     A true and correct copy of the MSA, which was made part of a Judgment entered by the Los Angeles Superior Court on or about September 8, 1989 in LASC Case No. D 102 485, is attached hereto as Exhibit 6 and is incorporated herein by reference.

15.     A true and correct copy of the Debtor's October 13, 2020 letter to Michael Abrams regarding his inability to keep paying support to Karen is attached hereto as Exhibit 7 and incorporated herein by reference.

---

[12]   Should the sale close after November 8, 2022, I will have to pay an additional $4,181.02 in premiums to ensure that the insurance coverage does not lapse.

16.    A true and correct copy of the Illinois District Court's civil contempt order issued on December 14, 2020 that froze all of the assets of the Debtor and his firm is attached as Exhibit 8 and incorporated herein by reference.

17.    A true and correct copy of the Acknowledgment of Full Satisfaction of Judgment filed by Law Finance on November 27, 2019 in Case No. 19STCV01455 pending in the Los Angeles Superior Court firm is attached as Exhibit 9 and incorporated herein by reference.

18.    I propose to sell the Property free and clear of Karen, Alt, Stillwell, KCC, Law Finance, Ruigomez Creditors, and LACTC.  True and correct copies of such liens are collectively attached hereto as Exhibit 10 and incorporated herein by reference.

19.    As detailed in the Motion, pursuant to the Settlement Agreement, 80% of the net proceeds after payment of liens senior to the Ruigomez Abstracts, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.) and the administrative fees and costs of the bankruptcy estate would be paid to the Ruigomez Creditors, and 20% would be paid to the estate to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  Since the Property is being sold free and clear of certain liens, the exact 80%-20% split cannot be determined at this time.

20.    In light of the anticipated retention by the estate of certain sums from the sale of the otherwise overencumbered Property, I believe that the proposed sale is in the best interest of the estate.

I declare under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on September 23, 2022, at El Segundo, California.

JASON M. RUND

18

## **DECLARATION OF TED CLARK**

I, Ted Clark, declare:

1.    I am a California-licensed real estate agent with Compass ("Broker"), the real estate broker employed by Jason M. Rund, chapter 7 trustee for the bankruptcy estate of Thomas Vincent Girardi, to market and sell the real property located 100 N. Los Altos Drive, Pasadena, California 91105 (the "Property").  I make this declaration in support of the foregoing motion.  Each of the following facts is of my own knowledge, and if called upon and sworn as a witness, I could and would competently testify thereto.

2.    I am informed and believe that on April 13, 2021, the order authorizing the employment of the Broker by the estate was entered.

3.    Since approval of Broker's employment, my partner and I have actively marketed the Property.  The following websites received information about the Property:

- CRMLS
- Realtor.com
- Zillow.com
- Compass.com
- 100LosAltos.com - we created a dedicated website
- All major real estate companies that have property search feature available.

4.    The Property has also been advertised numerous times in the following print publications:

- Los Angeles Times - all editions across LA county, numerous ads
- Pasadena Outlook Newspaper -  a direct mailing to homes of private school families and most affluent postal routes in Pasadena area. This is also made available at high end retail pick up locations in Pasadena.
- Westside MLS Guide - magazine style guide for Westside and Valley agents & buyers. 16,000+ agents in THE MLS network. Publication gets 500,000+ online views and also 4,500+ weekly printed magazines for brokers and agents

5.    We also produced a video of the Property and shared it on our YouTube channel. The video received over 10,000 views.  Additionally, we hired a house biographer to write a history about the house and we shared it with all visitors of the Property and via our dedicated 100LosAltos.com website.

6.      The Property has been promoted multiple times on the following Social Media channels:

- @tedclarkandheatherlillard Instagram Account
- Ted Clark and Heather Lillard Facebook account
- @compassscalifornia

7.      We ran several Digital Ad campaigns.  The purchase ads appeared on targeted websites such as HGTV, Forbes, Curbed, Travel and Leisure, Realtor.com, etc.  The digital ad was linked to our dedicated 100LosAltos.com website.

8.      We sent several e-blast emails to over 400 Pasadena area residents, over 900 local Pasadena agents and over 600 Westside agents.

9.      Our own company's public relations team garnered coverage in the following publications:

- https://www.realtor.com/news/celebrity-real-estate/tom-and-erika-girardi-selling-pasadena-mansion/
- https://www.usmagazine.com/celebrity-news/pictures/erika-jaynes-mansion-listed-for-13-million-amid-tom-girardi-divorce- see-inside-photos/
- https://nypost.com/2021/05/07/rhobh-star-erika-jaynes-mansion-listed-for-13m-in-bankruptcy-sale/
- https://www.celebritynetworth.com/articles/celebrity-homes/embattled-reality-stars-erika-jayne-and-tom-girardi-list-palatial- pasadena-palace-for-13-million/
- https://www.msn.com/en-us/tv/celebrity/erika-jayne-and-tom-girardis-mansion-listed-for-dollar13-million-see-pics/ss- BB1gsXQf
- https://www.realitytea.com/2021/05/07/erika-jayne-market/
- https://mix108.com/erika-jayne-mansion-for-sale-photos/
- https://kisselpaso.com/erika-jayne-mansion-for-sale-photos/
- https://mix957gr.com/erika-jayne-mansion-for-sale-photos/

10.      The Property has been promoted internationally in the following channels:

- MansionGlobal
- WSJ Asia
- Compass China Site
- Chinese social media (Weibo)

11.      To date, Broker had received approximately 300 inquiries about the Property. Broker had approximately 120 showings.

12.      The Property's listing price had to be adjusted a few times due to lack of offers and buyer and agent feedback.

20

13.    Ultimately, Broker's efforts resulted in 12 offers, including the offer for the Property from Jun Tao and Peng Tao in the amount of $7,500,000, which is being submitted for the Court's approval.

14.    As stated in the Motion, in order to maximize the price at which the Property was sold, my partner and I took it upon ourselves to cover out of pocket the expenses for repair, gardening, pool maintenance, and a minimal amount of housekeeping totaling $50,223.92 that needed to be taken care of while we were marketing the Property. See Exhibit 3 hereto.

15.    We will continue to market the Property through the hearing date so as to maximize the price ultimately received by the estate from the sale of the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on September __, 2022, at Pasadena, California.

_____
TED CLARK

21

1

## DECLARATION OF JUN TAO

2      I, Jun Tao, declare:

3      1.     I am one of the proposed purchasers for that certain real property located 100 N.

4 Los Altos Drive, Pasadena, California 91105 (the "Property"). Each of the following facts is of

5 my own knowledge, and if called upon and sworn as a witness, I could and would competently

6 testify thereto.

7      2.     I have no affiliation with Thomas Vincent Girardi (the "Debtor"), his bankruptcy

8 estate, or Jason M. Rund, the chapter 7 trustee of the Debtor's bankruptcy estate. Prior to

9 submission of the offer to purchase the Property, the other purchaser and I were working with

10 our real estate agent to search for real property to purchase. The proposed sale transaction is the

11 product of arm's-length, good faith negotiations between and among the Trustee, the Trustee's

12 real estate broker, and the estate, on the one hand, and myself, the other purchaser, and our agent

13 on the other.

14      I declare under penalty of perjury under the laws of the United States of America that the

15 foregoing is true and correct and that this Declaration was executed on September 23, 2022, at

16 _Pasadena_ , California.

17

18                                 _Jun Tao_

19                                     JUN TAO

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF PENG TAO

2      I, Peng Tao, declare:

3      1.      I am one of the proposed purchasers for that certain real property located 100 N.

4  Los Altos Drive, Pasadena, California 91105 (the "Property").  Each of the following facts is of

5  my own knowledge, and if called upon and sworn as a witness, I could and would competently

6  testify thereto.

7      2.      I have no affiliation with Thomas Vincent Girardi (the "Debtor"), his bankruptcy

8  estate, or Jason M. Rund, the chapter 7 trustee of the Debtor's bankruptcy estate.  Prior to

9  submission of the offer to purchase the Property, the other purchaser and I were working with

10  our real estate agent to search for real property to purchase.  The proposed sale transaction is the

11  product of arm's-length, good faith negotiations between and among the Trustee, the Trustee's

12  real estate broker, and the estate, on the one hand, and myself, the other purchaser, and our agent

13  on the other.

14      I declare under penalty of perjury under the laws of the United States of America that the

15  foregoing is true and correct and that this Declaration was executed on September 23 2022, at

16  _____Pasadena__, California.

17

18                    _Peng Tao_____

                                PENG TAO

19

20

21

22

23

24

25

26

27

28

23

# EXHIBIT "1"

RECORDING REQUESTED BY

NAME: Abir Cohen Treyzon Salo, LLP

**WHEN RECORDED SEND TO:**

NAME:    Abir Cohen Treyzon Salo, LLP

ADDRESS:   16001 Ventura Blvd., Suite 200

CITY / STATE / ZIP:  Encino, CA 91436

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

**DOC # 2020-0337298**
07/28/2020 04:34 PM Fees: $111.00
Page 1 of 5
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARIA VICTORIA #411

(SPACE ABOVE FOR RECORDER'S USE)

Abstract of Judgement
**(DOCUMENT TITLE)**

**EJ-001**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*
After recording, return to:
Boris Treyzon, Esq. (SBN 188893)
ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, CA 91436

TEL NO.: **(424) 288-4367**    FAX NO. (optional): **(424) 288-4368**
E-MAIL ADDRESS *(Optional):* btreyzon@actslaw.com

[ **x** ] ATTORNEY  [ **x** ] JUDGMENT  [  ] ASSIGNEE
FOR         CREDITOR       OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

*FOR RECORDER'S USE ONLY*

| PLAINTIFF:  Joseph Ruigomez, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT:  Thomas V. Girardi, et al. | 19STCV22296 |

| ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS    [  ] Amended | *FOR COURT USE ONLY* |
|---|---|

1. The [ **x** ] judgment creditor  [  ] assignee of record
applies for an abstract of judgment and represents the following:
   a.  Judgment debtor's
       Name and last known address

       Thomas V. Girardi, an individual,
       c/o BAKER, KEENER & NAHRA, LLP
       633 W. Fifth Street, Suite 5500
       Los Angeles, California 90071-2005

   b.  Driver's license no. [last 4 digits] and state:     [ **x** ] Unknown
   c.  Social security no. [last 4 digits]:                [ **x** ] Unknown
   d.  Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address):*

       Thomas V. Girardi, 1126 Wilshire Blvd., Los Angeles, California 90017

2. [ **x** ] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor *(name and address):*
   Joseph Ruigomez, an individual,
   c/o ABIR COHEN TREYZON SALO, LLP
   16001 Ventura Blvd., Suite 200, Encino, California 91436
   Date: April 22, 2020
   Boris Treyzon, Esq.
   _____
   (TYPE OR PRINT NAME)

4. [ **x** ] Information on additional judgment creditors is shown on page 2.

5. [  ] Original abstract recorded in this county:
   a.  Date:
   b.  Instrument No.:

   ► _____
   (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $11,000,000.00

7. All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on *(date):*  April 20, 2020
   b.  Renewal entered on *(date):*

9. [  ] This judgment is an installment judgment.

[SEAL]

This abstract issued on *(date):*
04/27/2020

10. [  ] An [  ] execution lien [  ] attachment lien
    is endorsed on the judgment as follows:
    a.  Amount: $
    b.  In favor of *(name and address):*

11. A stay of enforcement has
    a.  [ **x** ] not been ordered by the court.
    b.  [  ] been ordered by the court effective until *(date):*

12. a.  [ **x** ] I certify that this is a true and correct abstract of the judgment entered in this action.
    b.  [  ] A certified copy of the judgment is attached.
    Sherri R. Carter Executive Officer / Clerk of Court
    Clerk, by        V. Ortega        , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190

DOC #2020-0337298  Page 3 of 5

| PLAINTIFF:  Joseph Ruigomez, et al. | COURT CASE NO.: |
|---|---|
| DEFENDANT:  Thomas V. Girardi, et al. | 19STCV22296 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*
Kathleen Ruigomez, an individual,
c/o ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, California 91436

14. Judgment creditor *(name and address):*
Jamie Ruigomez, an individual,
c/o ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, California 91436

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.           Name and last known address
Girardi & Keese
c/o BAKER, KEENER & NAHRA, LLP
633 W. Fifth Street, Suite 5500
Los Angeles, California 90071-2005

Driver's license no. [last 4 digits] and state:    ☒ Unknown

Social security no. [last 4 digits]:    ☒ Unknown

Summons was personally served at or mailed to *(address):*
Thomas V. Girardi
Authorized Agent for Service of Process for Girardi &
Keese
1126 Wilshire Blvd., Los Angeles, California 90017

17.           Name and last known address

Driver's license no. [last 4 digits] and state:    ☐ Unknown

Social security no. [last 4 digits]:    ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.           Name and last known address

Driver's license no. [last 4 digits] and state:    ☐ Unknown

Social security no. [last 4 digits]:    ☐ Unknown

Summons was personally served at or mailed to *(address):*

19.           Name and last known address

Driver's license no. [last 4 digits] and state:    ☐ Unknown

Social security no. [last 4 digits]:    ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA** )
**COUNTY OF LOS ANGELES** ) ss:

3

4    I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action; my business address is:  16001 Ventura Blvd., Suite 200,
5    Encino, California 91436.

6    On April 22, 2020, I served the foregoing document described as:

7    **1.  ABSTRACT OF JUDGMENT**

8    the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed
as follows:
9

| | |
|---|---|
| Phillip A. Baker, Esq.<br>Robert Baker, Esq.<br>BAKER, KEENER & NAHRA, LLP<br>633 W. Fifth Street, Suite 5500<br>Los Angeles, California 90071-2005<br>Facsimile: (213) 241-0990<br>E-mail: pbaker@bknlawyers.com<br>E-mail: rbaker@bknlawyers.com | *Attorneys for Defendants*<br>**THOMAS V. GIRARDI**<br>**GIRARDI | KEESE** |

10

11

12

13

14

15

16    ☐  **BY MAIL:**  By placing a true and correct copy of the above-described document(s) in
envelope(s), addressed as set forth above, with first class postage pre-paid for delivery to the
17    above-named persons at the above-listed addresses and depositing such envelopes in a US mail
collection box.
18

19    ☐  **BY OVER NIGHT DELIVERY, VIA GOLDEN STATE OVERNIGHT:**  I gave the
document(s) to our overnight courier service for its daily pick-up for delivery to the offices of the
20    addressee, addressed as set forth above.

21    ☐  **BY PERSONAL SERVICE** *(Ex Parte)***:**  I personally delivered by hand to the attorney in
attendance on behalf of the above-named counsel at the hearing of _____, in
22    Department_____of_____the_____Courthouse,_____,
California.
23

24    ☒  **BY ELECTRONIC MAIL BY AGREEMENT:**  Per agreement between counsels, I
transmitted said document(s) to the person(s) shown above by electronic mail to the email
25    address shown above.

26    ☐  **BY FACSIMILE:**  I faxed said document(s) to the addressee, at the specified fax numbers
shown above.
27

28

_____

1
PROOF OF SERVICE

1

☐ **COURTESY COPY BY ELECTRONIC MAIL:** I transmitted courtesy copies of said document(s) to the person(s) shown above by electronic mail to the email address shown above.

2

3

☒ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

4

☐ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

5

6

Executed on April 22, 2020, at Los Angeles, California.

7

8

_____

9

GINA ESFANDI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
PROOF OF SERVICE

# EXHIBIT "2"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into by and between Jason M. Rund, the chapter 7 trustee (the "**Trustee**") for the estate of Thomas Vincent Girardi (the "**Debtor**"), on the one hand, and Joseph Ruigomez, Kathleen Ruigomez and Jaime Ruigomez ("**Ruigomez Creditors**"), on the other hand.  Together, the Trustee and Ruigomez Creditors are referred to as the "**Parties**."

## RECITALS

A.    On April 20, 2020, the Los Angeles Superior Court (the "**Superior Court**") entered a *Judgment* for $11,000,000 in favor of the Ruigomez Creditors, and against the Debtor and Girardi & Keese, in LASC Case No. 19STCV22296.

B.    On April 22, 2020, the Superior Court issued an *Order to Appear for Examination* (the "**ORAP**"), requiring the Debtor to appear and testify at a judgment debtor examination on August 19, 2020, at 8:30 a.m.  The ORAP was served on the Debtor on May 20, 2020.

C.    On July 28, 2020, the Ruigomez Creditors recorded an Abstract of Judgment with the Riverside County Recorder's Office as Inst. No. 2020-0337298 (the "**Riverside Abstract**").

D.    On July 28, 2020, the Ruigomez Creditors recorded an Abstract of Judgment with the San Bernardino County Recorder's Office as Inst. No. 2020-0258746 (the "**San Bernardino Abstract**").

E.    On July 28, 2020, the Ruigomez Creditors recorded an Abstract of Judgment with the Monterey County Recorder's Office as Inst. No. 2020037202 (the "**Monterey Abstract**").

F.    On July 30, 2020, the Ruigomez Creditors recorded an Abstract of Judgment with the Los Angeles County Recorder's Office as Inst. No. 2020-864175 (the "**Los Angeles Abstract**").

G.    On December 18, 2020 (the "**Petition Date**"), an Involuntary Petition was filed against the Debtor under chapter 7 of title 11 of the United States Code (the "**Code**").  The Order for Relief was entered on January 13, 2021, and the Debtor's bankruptcy case (the "**Case**") is pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**") as Case No. 2:20-bk-21020-BR.

H.    On the Petition Date, an Involuntary Petition was also filed against the Debtor's law firm, Girardi Keese and/or Girardi & Keese, under chapter 7 of the Code. The Order for Relief was entered in that case on January 13, 2021, and the case is pending before the Bankruptcy Court as Case No. 2:20-bk-21022-BR (the "**Girardi Keese Case**").

I.    The Ruigomez Creditors assert that, as of the Petition Date, the total sum of $11,747,245.95 was due and owing under the Judgment, including $729,315.06 in interest and $17,930.99 in collection costs (the "**Ruigomez Claim**").

J.    The Ruigomez Creditors contend that, by virtue of their service of the ORAP on the Debtor, the Ruigomez Claim is secured by a lien on all personal property of the Debtor that existed on the Petition Date.  Further, the Ruigomez Creditors contend that, by virtue of the Riverside Abstract and the Los Angeles Abstract, the Ruigomez Claim is secured by a lien on all real property of the Debtor in Riverside and Los Angeles Counties that existed on the Petition Date.  The liens created by the service of the ORAP, the Riverside Abstract, San Bernardo Abstract, Monterey Abstract and the Los Angeles Abstract are hereinafter referred to as the "**Ruigomez Liens**."

K.    The Parties agree that Trustee's administration of assets of the bankruptcy estate on the terms set forth herein is in the best interest of the Ruigomez Creditors and the bankruptcy estate.

<u>TERMS AND CONDITIONS</u>

Based on the mutual promises contained herein and for other good and valuable consideration, the receipt of which is acknowledged, the Parties agree as follows:

1.    <u>Recitals Acknowledged</u>.  Each of the Parties acknowledges that, to the best of the Party's knowledge, each of the above recitals is true and correct in every material respect.

2.    <u>Conditions and Effective Date</u>.

a.    This Agreement is subject to approval by the Bankruptcy Court.  Within a reasonable time after execution of this Agreement by the Parties, the Trustee shall file a motion in the Case for entry of an order approving this Agreement and the terms hereof (the "**Order**").

b.    The "**Effective Date**" of this Agreement shall be the date on which the Order is entered unless there is a stay of enforcement of the Order.  If there is a stay of enforcement of the Order, the Effective Date of this Agreement shall be the first business day after the expiration or lifting of the stay.

3.    <u>Allowance of the Ruigomez Claim</u>.  The Ruigomez Creditors shall be allowed a claim in the amount of $11,747,245.95 as of the Petition Date with a perfected security interest in all of the Debtor's personal property and all real of the Debtor in Riverside and Los Angeles Counties that existed on the Petition Date (the "**Ruigomez Collateral**"). Further, the Ruigomez Creditors reserve their right to seek post-petition interest under 11 U.S.C. § 506(b).

4.    <u>Administration of Ruigomez Collateral</u>.

a.    The Ruigomez Creditors consent to the Trustee's administration of the Ruigomez Collateral consistent with 363 of the Code, free and clear of the Ruigomez Liens.

b.    For each Ruigomez Collateral being administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to Ruigomez Liens, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the administrative fees and costs of the bankruptcy estate; (3) 80% of the balance to the Ruigomez Creditors to be applied towards the Ruigomez Claim; and (4) the

remainder (*i.e.*, 20%) to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.

        c.     The distributions to the Ruigomez Creditors contemplated herein shall take place no less than 120 calendar days apart, and for each distribution, the Trustee will estimate the administrative fees and costs in good faith to determine the amount to be withheld by the bankruptcy estate. All distributions to the Ruigomez Creditors shall be payable by check to "Abir Cohen Treyzon Salo IOLTA" and delivered to their counsel, Boris Treyzon, at Abir Cohen Treyzon Salo, LLP, 16001 Ventura Boulevard, Suite 200, Encino, California 91436.

       5.    <u>Releases</u>. Subject to the terms and conditions of this Agreement, the Trustee releases and waives all claims against the Ruigomez Creditors arising out of the Case, and the Ruigomez Creditors release and waive all claims against the Trustee and the Debtor's bankruptcy estate arising out of the Case.

       6.    <u>Continued Prosecution of Ruigomez Claim in Girardi Keese Case</u>. Based on the *Judgment* in the State Court, the Ruigomez Creditors also have a claim in the Girardi Keese Case. It is entirely possible that their recovery from the Debtor's Case and the Girardi Keese Case will satisfy the Ruigomez Claim in full. Hence, the amount recovered from the Girardi Keese Case directly impacts the Debtor's Case, and the Ruigomez Creditors shall use their best efforts to prosecute their claims in that case and shall not withdraw or reduce their claims without the written consent of the Trustee.

       7.    <u>Trustee as Representative of a Bankruptcy Estate</u>. The Parties acknowledge that the Trustee is a trustee appointed to administer a bankruptcy estate. The Parties acknowledge and agree that this Agreement is being made by the Trustee solely in his capacity as the chapter 7 trustee of the Debtor's estate, and not in a personal capacity, and no liability or obligations shall accrue to the Trustee personally.

       8.    <u>Successors and Assigns</u>. This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns, including any successor trustees.

       9.    <u>Severability</u>. If any portion of this Agreement is found to be void, voidable or unenforceable at law, the remaining terms and conditions of this Agreement may be enforced.

      10.    <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles of the State of California. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any and all disputes pertaining to this Agreement, including without limitation the enforcement and interpretation of any of its terms, and the Parties agree to submit to the jurisdiction of the Bankruptcy Court for the purpose of resolving such disputes.

      11.    <u>Further Assurances</u>. Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

12.    <u>Modification</u>.  This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

13.    <u>Attorneys' Fees and Costs</u>.  Each Party shall bear his, her or its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.

14.    <u>Interpretation</u>.  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement.  Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

15.    <u>Authority to Sign</u>.  The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

16.    <u>Counterparts</u>.  Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

Dated: February 17, 2021

_____
Jason M. Rund, Chapter 7 Trustee for the estate of Thomas Vincent Girardi

Dated: February ___, 2021

_____
Joseph Ruigomez
An Individual

Dated: February ___, 2021

_____
Kathleen Ruigomez
An Individual

Dated: February ___, 2021

_____
Jaime Ruigomez
An Individual

4

12.  <u>Modification</u>.  This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

13.  <u>Attorneys' Fees and Costs</u>.  Each Party shall bear his, her or its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.

14.  <u>Interpretation</u>.  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement.  Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

15.  <u>Authority to Sign</u>.  The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

16.  <u>Counterparts</u>.  Each Party may sign a facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.


Dated:  February ___, 2021

_____
Jason M. Rund, Chapter 7 Trustee for the estate of Thomas Vincent Girardi


Dated:  February ___, 2021

_____
Joseph Ruigomez
An Individual


Dated:  February ___, 2021

_____
Kathleen Ruigomez
An Individual


Dated:  February ___, 2021

_____
Jaime Ruigomez
An Individual

4

# EXHIBIT "3"

# **Peaceful Pool Guy**

# INVOICE

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

| | |
|---|---|
| **Invoice#** | 000047 |
| **Invoice Date** | 08/04/2022 |
| **Due Date** | 08/10/2022 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos | 4 | 250 | 1000.00 |
| | | Subtotal | 1000.00 |

| | |
|---|---|
| TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.

8/9/2022
1148
1,000
TC + P - Joint

Powered by  Invoice



*Windows Washed

*Walls Washed

*Carpets Furniture

*Floors

# Unique

## Cleaning Service

### Residential & Commercial
401 W. Laxford St. * Glendora, CA 91740
Phone: (626) 335-4961

Date   08/02/2022

To:                     Ted Clark

Address:                100 Los Altos
                        Pasadena, CA

| Cleaning service rendered: |
|---|
|  |
|  |
| Total: $250 |

We Honor the Golden Rule: 2% Back for Cash

8/9/2022
1149
250
TC+P-J

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|---|---|
| 04/02/21 | 1735 |

**Bill To:**

Ted Clark
100 Altos Dr.
Pasadena, CA

**Ship To**

| Terms | Other |
|---|---|
| | |

| Item | Description | Amount |
|---|---|---|
| | General Clean up | 0.00 |
| PROJECT | | 3,370.00 |
| JOB | Clean up the grounds of leaf and green debris. | |
| | Dead head roses and hydrangeas. | |
| | Time and Materials | |
| DUMPSTER RENTAL | 20 cubic yard size. 1 dumpster estimated. Cost per load is $600. | 600.00 |
| DIAGNOSTIC | Check irrigation system. | 0.00 |
| | 2 Rainmaster controllers. Total of 60 stations. Several stations not working. Further work required. | |
| | Initial Diagnostic included. | |
| | | 0.00 |
| NOTES | 3-30 Progress payment #1116 $2000. | 0.00 |
| NOTES | 4-2 Phase 1 work completed, balance due $1,970. | 0.00 |
| | Thank you! | |

*[Handwritten notes:]*
2ND PAYMENT
4/3/2021
1,970
C/K - 1118
TC+P - PERSONAL

1st PAYMENT
1116
3/30/2021
$2,000.00
TC+P-PERSONAL

| | Total | $3,970.00 |
|---|---|---|

# Invoice

**demeir** landscape
lic 808316

**4850 toland way**
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 04/26/21 | 1742 |

Bill To:

100 Altos Dr.
Pasadena, CA

Ship To

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | April Garden Care | 1,000.00 |

*4/28/2021*
*1,000 —*
*1125*
*TC & P - Personal*

| | Total | $1,000.00 |
|--|-------|-----------|



1124

DATE 4/29/2021

TO BIG BABY POOL SERVICE

FOR 100 LOS ALTOS

BAL. BRO'T FOR'D

DEPOSITS

TOTAL

THIS CHECK 3,523.92

OTHER

TAX DEDUCTIBLE

BALANCE

6 K

**Backyard Pool & Spa Repair Inc**

3016 E Colorado Blvd. #5762
Pasadena, CA  91107 US
+1 8007945840
backyard.pools@yahoo.com
www.bypcal.com



**Backyard Pool
& Spa Repair, Inc**

## Estimate

**ADDRESS**
Ted Clark

| | | ESTIMATE | 1181 |
| | | DATE | 03/25/2021 |

| DATE | SERVICE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| | | 100 Los Altos Pasadena Ca : Pool equipment bid. | |
| | Sales | Jandy IQ904PS electrical controller and panel to control the pool pumps and water feature pumps in side the pool equipment room. | 2,450.00 |
| | Sales | One touch controller for  programming and controls | 650.00 |
| | Sales | Service labor for the initial trouble shooting | 150.00 |
| | | The above prices include tax and labor. | |
| | Sales | Pentair LED pool light includes tax and installation | 959.00 |
| | Sales | Pentair Spa size light for the water feature pond includes tax and installation. | 939.00 |
| | Sales | Additional labor to secure other loose lights. and additional time for running new electrical from one panel to the other | 235.00 |

**TOTAL**                    **$5,383.00**

Accepted By

Accepted Date



1020

**TED CLARK AND PARTNERS INC.**

90-7162/3222

DATE 5/8/2021

PAY TO THE ORDER OF **BACKYARD POOL & SPA REPAIR**            $5,383.00

**Five Thousand Three Hundred Eighty-Three + 00/100**            DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR #1181 - 100 Los Altos / Pasadena

⑈0010 20⑈ ⑆32227 1627⑆    695657095⑈



*Windows Washed

*Walls Washed

# Unique
## Cleaning Service
### Residential & Commercial
401 W. Laxford St. * Glendora, CA 91740
Phone: (626) 335-4961

*Carpets Furniture

*Floors

Date   12/21/2021

To:                     Ted Clark

Address:                100 Los Altos
                        Pasadena, CA

| Cleaning service rendered: |
| --- |
| Basement clean up |

| Total: $250 |
| --- |

We Honor the Golden Rule: 2% Back for Cash

12/28/2021
250
1080
TC + P - Joulet

# Unique

*Windows Washed

*Walls Washed

*Carpets Furniture

*Floors

## Cleaning Service
### Residential & Commercial
401 W. Laxford St. * Glendora, CA 91740
Phone: (626) 335-4961

Date  09/14/2021

To:  **Ted Clark**

Address:  **100 Los Altos**
**Pasadena, CA**

| Cleaning service rendered: |
|---|
|  |
|  |
| **Total: $525** |

We Honor the Golden Rule: 2% Back for Cash

9/20/2021
1055
525.00
TC + P - Joiner

**Al Glass and Mirror**
Lic #819127
1844 E. New York Drive
Altadena, CA 91001
1-800-644-5434

**INVOICE    12592**

| | |
|---|---|
| ☐ Date  9/21/22 | ☐ Table Top |
| ☐ Window Repair R.T. | ☐ Mirror Doors |
| ☐ Shower Door | ☐ Entrance Doors |
| ☐ Bronze or Gray | ☐ Shelves |
| ☐ Store Front | ☐ Beveled   G. M. |
| ☐ Tempered Safety | ☐ Tinted Windows |
| ☐ Mirrors | ☐ Patio Door |

Name  Heather Lillard

Address  100 Los Altos
Pasadena

Phone # _____

Job Site # _____

| Quantity | Description | Unit Price | Amount |
|---|---|---|---|
| 1 | Dual Glaze Unit replacement | | 400 |
| | 1/8" clear temp. glass over | | |
| | 1/8" low E temp glass | | |
| | w/ clear spacer | | |
| | 1.5 ft x 3 ft | | |
| | | | |
| | Job completed on 9/21/22 | | |

| | |
|---|---|
| Deposit $_____ | Paid $_____ |
| ☐ Cash, Check #_____ | ☐ Cash, Check #_____ |
| Balance Due $_____ | Rec'd By_____ Date_____ |

Signature _____

Signature at the time of completion acknowledges satisfaction with the repair, service and merchandise listed above on this invoice.

| | |
|---|---|
| Sub Total | |
| Tax | |
| Labor | |
| Total | 400 |

# Peaceful Pool Guy

# INVOICE

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

| | | |
|---|---|---|
| **Invoice#** | | 00014 |
| **Invoice Date** | | July 7, 2022 |
| **Due Date** | | July 15, 2022 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| **Weekly Pool service at 100 Los Altos** | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.





# INVOICE

## Peaceful Pool Guy

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

| | |
|---|---|
| **Invoice#** | 00013 |
| **Invoice Date** | 06/09/2022 |
| **Due Date** | 06/16/2022 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos for June 2022 | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.



Powered by ZOHO Invoice

# INVOICE

## Peaceful Pool Guy

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

**Invoice#**  0008

**Invoice Date**  05/03/2022

**Due Date**  05/10/2022

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos  for April 2022 | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.



Powered by ZOHO Invoice

# INVOICE

**Peaceful Pool Guy**

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

| | |
|---|---|
| **Invoice#** | 00009 |
| **Invoice Date** | March 01, 2022 |
| **Due Date** | March 15, 2022 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.

PAID
3/13/2022

Powered by Zoho Invoice

# Peaceful Pool Guy

David Stanford

(make check payable to David Stanford)

1920 Hillhurst Ave. #254

Los Angeles, CA 90027

United States

**Invoice#** 000012

**Invoice Date** 01/01/2022 to 01/31/2022

**Due Date** 02/10/2022

**Bill To**

Ted Clark and Partners

Regarding 100 Los Altos

Pasadena

United States

# INVOICE

Weekly Pool service at 100 Los Altos (4x250) 1000.00

Subtotal **1000.00**

TOTAL **$1000.00**

**Notes**

Pool service for the month of January

It is a pleasure to service your pool.

**TED CLARK AND PARTNERS INC.**

DATE 2/10/2022                    90-7162/3222

PAY TO THE ORDER OF _DAVID STANFORD_                    $ 1,000.00

ONE THOUSAND + 00/00                                      DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

FOR 100 LOS ALTOS / POOL

⑈001090⑈ ⑊322271627⑊ 695657045⑈

# INVOICE

**Peaceful Pool Guy**

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

| | |
|---|---|
| **Invoice#** | 0007 |
| **Invoice Date** | 01/01/2021 |
| **Due Date** | 01/10/2021 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos  for December | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.



Powered by **Zoho** Invoice

# INVOICE

**Peaceful Pool Guy**

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

**Invoice#**   0007

**Invoice Date**     12/01/2021

**Due Date**      12/10/2021

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos  for December | 4 | 250 | 1000.00 |
|  |  | Subtotal | **1000.00** |
|  |  | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.



Powered by **Zoho** Invoice

# INVOICE

**Peaceful Pool Guy**

David Stanford (make check payable to David
Stanford)
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena
United States

| | |
|---|---|
| **Invoice#** | 00006 |
| **Invoice Date** | Nov 1, 2021 |
| **Due Date** | Nov 10, 2021 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly Pool service at 100 Los Altos | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

It is a pleasure to service your pool.

Powered by **Zoho Invoice**

# INVOICE

## Peaceful Pool Guy

David Stanford
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

POOL MAINTENANCE
Regarding 100 Los Altos, Pasadena, Ca.
United States

| | |
|---|---|
| **Invoice#** | 0012003 |
| **Invoice Date** | Oct 1, 2021 |
| **Due Date** | Oct 10, 2021 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Maintenance and care for pool and fountains located at 100 Los Altos, Pasadena, Ca. $250- weekly rate billed monthly. | 4 | 250 | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

Thank you for your business it has been a pleasure working together.



Powered by **Zoho Invoice**

# INVOICE

## Peaceful Pool Guy

David Stanford
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

POOL MAINTENANCE
Regarding 100 Los Altos, Pasadena, Ca.
United States

**Invoice#**

| **Invoice Date** | Sep 1, 2021 |
| **Due Date** | Sep 10, 2021 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Clean and maintain pool including equipment on a weekly basis | 4 | 250. | 1000.00 |
| | | Subtotal | **1000.00** |
| | | TOTAL | **$1000.00** |

**Notes**

Thank you for your business it has been a pleasure working together.



Powered by **Zoho Invoice**

**David Stanford**
California
U.S.A

# INVOICE

# INV-000002

**Balance Due**
**$1,000.00**

| | |
|---|---|
| Invoice Date : | 03 Aug 2021 |
| Terms : | Due on Receipt |
| Due Date : | 03 Aug 2021 |

Bill To
**100 Los Altos, Pasadena, CA**

Subject :
Monthly Pool service @$250.00 a week

| # | Item & Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 1 | Weekly Pool Service and Maintenenace | 4.00 | 250.00 | 1,000.00 |

| | | |
|---|---|---|
| Sub Total | | 1,000.00 |
| **Total** | | **$1,000.00** |
| **Balance Due** | | **$1,000.00** |

Notes

Thanks for your business.

# INVOICE

## Peaceful Pool Guy Service

David Stanford
1920 Hillhurst Ave. #254
Los Angeles, CA 90027
United States

**Bill To**

Ted Clark and Partners
Regarding 100 Los Altos
Pasadena, Ca.
United States

| | |
|---|---|
| **Invoice#** | June 1-30th, 2021 |
| **Invoice Date** | Jul 1, 2021 |
| **Due Date** | Jul 2, 2021 |

| Item Name and Description | Qty | Rate | Amount |
|---|---|---|---|
| Weekly pool service and cleaning. | 4 | 250 | 1000 |
| Pressure Gauge replacement | 1 | 69.00 | 69 |
| | | Subtotal | **1069** |
| | | TOTAL | **$1069** |

**Notes**

Thank you for your business.

*7/5/2021*
*1,069.00*
*1036*
*TC & P - Joint*

Powered by ZOHO

# Invoice

**demeir** landscape
lic 808316

**4850 toland way**
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 07/27/22 | 1900 |

**Bill To:**
Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | July Garden Care | 1,000.00 |

7/28/2022
1143
1,000
TC & P - Joint

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

**4850 toland way**
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 06/26/22 | 1892 |

| Bill To: |
|----------|
| Los Altos |

| Ship To |
|---------|
| |

| Terms | Other |
|-------|-------|
| | |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | June Garden Care | 1,000.00 |

6/29/2022
1,000
1133
TC + P - Joinet

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

**4850 toland way**
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 05/28/22 | 1880 |

Bill To:

Los Altos

Ship To

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | May Garden Care | 1,000.00 |
| | | |

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 04/26/22 | 1864 |

Bill To:
Ted Clark
100 Los Altos

Ship To

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | April Garden Care | 1,000.00 |
|  |  |  |
|  |  |  |
| | Total | $1,000.00 |

*4/28/2022*
*1,000*
*1115*
*TC+P - Jones*

# Invoice

**demeir landscape**
lic 808316

**4850 toland way**
**los angeles, ca 90042**
**office: 323 255-0552**
**mobile: 323 270-4072**

| Date | Invoice No. |
|------|-------------|
| 03/31/22 | 1856 |

**Bill To:**
100 Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | March Garden Care | 1,000.00 |



| | Total | $1,000.00 |

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 03/01/22 | 1845 |

**Bill To:**
100 Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | February Garden Care | 1,000.00 |
| NOTES | Carry over from last billing: Remove fallen tree branches to refuse collection | 235.00 |

3/1/2022
1,235.00
1000
TC+P-Joant

| | Total | $1,235.00 |
|---|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 01/24/22 | 1830 |

**Bill To:**
Ted Clark
100 Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | January Garden Care | 1,000.00 |
| Prune | remove fallen tree branches: front of property and along the west pathway.  Haul to dump | 235.00 |

1/27/2022
1087
1,000.00
TC + P - JOINT

| | Total | $1,235.00 |

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 12/27/21 | 1819 |

**Bill To:**
Ted Clark
Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | December Garden Care | 1,000.00 |

*(handwritten: 12/29/2021  1,000 TC+P - Joiner  1879)*

| | Total | $1,000.00 |

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 11/26/21 | 1814 |

Bill To:

Ted Clark
100 Los Altos

Ship To

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | November Garden Care | 1,000.00 |

*(handwritten: 11/29/2021  1073/  1,000/  XC & P - Jordan)*

| | Total | $1,000.00 |

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 10/25/21 | 1807 |

**Bill To:**
Ted Clark
100 Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | October Garden Care | 1,000.00 |

*(handwritten: 11/2/2021  1,000  LO67  T C + P - Joint)*

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 09/26/21 | 1800 |

**Bill To:**
100 Los Altos

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | September Garden Care | 1,000.00 |

*9/29/2021*
*1056*
*1,000 —*
*TC + P — JOINT*

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 08/26/21 | 1788 |

**Bill To:**
100 Altos Dr.
Pasadena, CA

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | August Garden Care | 1,000.00 |

*(handwritten: 9/2/2021  1,000  1048  TC+P - Joint)*

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

4850 toland way
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 07/26/21 | 1780 |

**Bill To:**
100 Altos Dr.
Pasadena, CA

**Ship To**

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | July Garden Care | 1,000.00 |

*8/6/2021*
*1,000*
*1041*

| | Total | $1,000.00 |
|--|-------|-----------|

# Invoice

**demeir** landscape
lic 808316

**4850 toland way**
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 06/28/21 | 1769 |

Bill To:

100 Altos Dr.
Pasadena, CA

Ship To:

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | June Garden Care | 1,000.00 |

*7/1/2021*
*1,000 —*
*1034*
*TC+P — done*

| | Total | $1,000.00 |
|---|---|---|

# Invoice

**demeir** landscape
lic 808316

**4850 toland way**
los angeles, ca 90042
office: 323 255-0552
mobile: 323 270-4072

| Date | Invoice No. |
|------|-------------|
| 05/25/21 | 1757 |

Bill To:
100 Altos Dr.
Pasadena, CA

Ship To

| Terms | Other |
|-------|-------|
|       |       |

| Item | Description | Amount |
|------|-------------|--------|
| MAINTENANCE | May Garden Care | 1,000.00 |

*(handwritten: 5/27/2021  1,000  1025  TC + P-Joint)*

| | Total | $1,000.00 |
|--|-------|-----------|

# EXHIBIT "4"

DocuSign Envelope ID: 9E4380CA-61A3-4F9A-86C2B-765A0A9C5F46

# COUNTER-OFFER

This agreement ("Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to Jun Tao and Peng Tao (together, the "Buyer") from Jason M. Rund, solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of Thomas Vincent Girardi (the "Seller"), of the real property commonly known as 100 Los Altos Drive, Pasadena, California (the "Property"). When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety the California Residential Purchase Agreement and Joint Escrow Instructions dated September 16, 2022 (the "Offer"), and any oral or written negotiations since then.

PURCHASE PRICE; DEPOSIT; ESCROW. The purchase price for the Property shall be $7,500,000.00 ("Purchase Price"). Buyer shall make an initial deposit of $225,000.00 (the "Deposit") in the form of a wire transfer initiated and made payable and delivered to A&A Escrow Services, Inc., 15250 Ventura Boulevard, Suite 715, Sherman Oaks, CA 91403 ("Escrow Holder") concurrently with Buyer's acceptance of this Counter-Offer.

Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions. Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale. Buyer shall be free to assign this Agreement to another person or entity ("Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in its sole discretion), but Buyer shall remain liable hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder.

1.      BUYER'S DUE DILIGENCE AND FINANCING; CANCELLATION RIGHT. Buyer has completed its inspections, investigations, tests and reviews of reports, and all due diligence which the Buyer desires for this Sale of the Property. By entering into Agreement, Buyer is hereby removing all contingencies with the exception of the Bankruptcy Court approval of this Agreement set forth in Paragraph 6.

2.      TITLE; TITLE INSURANCE. Within five (5) business days after acceptance of this Counter Offer Fidelity National Title Company (the "Title Company") or title company of Seller's choice will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. At the close of the sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary report, free and clear of all monetary liens, subject to the terms of the within contract. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

3.      COURT CONFIRMATION; CLOSING; DELIVERY OF POSSESSION. Seller shall file a motion with the Bankruptcy Court to confirm this sale. Buyer shall be unconditionally obligated to proceed with the sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the sale to Buyer, the closing shall take place as soon

DocuSign Envelope ID: 9E4380CA-61A2-4E0A-86C2B-765A0A9C5F46

as practicable after entry of the order approving the sale, but no later than the first business day after fourteen (14) calendar days following the entry of court order approving sale.  The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located.  Occupancy shall be delivered to Buyer upon Escrow Holder's confirmation of recording.

4.      BANKRUPTCY SALE.  Buyer acknowledges that Seller is a Trustee appointed to administer the above referenced bankruptcy estate, and is a party to this Agreement solely in that capacity.  Seller and Brokers and agents have not and will not determine the condition or fitness for use of the Property for any particular purpose.  The sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Brokers or agents herein.  Transfer of the Property shall be by Quit Claim Deed.  All parties acknowledge that Seller is a party to this Agreement solely in the capacity as Trustee of the above referenced bankruptcy estate and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against the Seller, Trustee or the estate in connection with this transaction, the Trustee shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of such estate.

5.      TAXES; PRORATIONS; COSTS OF SALE.  All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer.  The sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the sale.  Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located.  Seller shall pay any real property transfer tax.  Seller shall pay the cost of a Natural Hazard Disclosure Report, from a vendor selected by Seller, to be furnished to Buyer through escrow.  Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements.  Buyer shall pay the cost of recording the deed.  Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

6.      BANKRUPTCY COURT APPROVAL; OVERBIDDING.  The sale is subject to notice to creditors, approval by the Bankruptcy Court, and higher and better bids received by Seller through and including the Bankruptcy Court hearing to confirm the sale.  Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court.  Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so.

7.      BROKERS.  Seller is represented by Ted Clark and Heather Lillard of Compass ("Trustee's Agent").  Buyer is represented by John (Qiang) Zhang of Harvest Realty Development, Inc. ("Buyer's Agent").  Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 4% of net sales price of the Property to the Brokers as follows: 2% to Trustee's Agent and 2% to Buyer's Agent in connection with the closing of

DocuSign Envelope ID: 9E4880CA-61A2-4F0A-862B-765A0A9C5F46

this sale.  All such Brokers and agents are collectively referred to herein as the "Brokers."  No commission or compensation shall be due or payable to Brokers in connection with this Agreement or sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer.  Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder or other person entitled to any fee, commission or other compensation in connection with the Sale and Buyer shall indemnify, defend and protect and hold Seller and the related bankruptcy estate harmless of, from and against any claims, demands, actions, causes of action, losses, liabilities and costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions or other compensation of any kind are hereafter asserted.

8.      MATERIAL CHANGE OF CONDITION.  In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (a) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the full Deposit shall be refunded to Buyer; or (b) make required repairs at the bankruptcy estate's expense; or (c) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the sale; or (d) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart 8(b), (c) or (d), Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property.

9.      REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.  Buyer's sole remedy in the event that the sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Deposit (plus any increase thereof by Buyer).  In the event Buyer fails to close the sale for any reason other than Seller's default, Buyer's Deposit (plus any increase, thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action.  If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than three percent of the Purchase Price.  This provision shall apply equally to the Deposit (and any increase, thereof by Buyer).

_____ _____[Buyer's Initials]

10.     BANKRUPTCY COURT JURISDICTION.  The U.S. Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction. This Agreement shall be interpreted and enforced pursuant to the laws of the United States of America including the Bankruptcy Code, Title 11, United States Code.

11.     "AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.  Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement.  **Furthermore, no personal property is being sold as part of this Agreement including any statue or statuette**.  Seller and Brokers and agents herein have not made, do not

make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written,  concerning or respecting (i) value of the Property; (ii) income to be derived from the Property; (iii) suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) manner, quality, state of repair, or lack of repair of the Property; (vi) nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S. Code §§9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S. Code §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S. Code §§6901, et seq.), the Toxic Substance Control Act (15 U.S. Code §2601, et seq.), the Clean Water Act (33 U.S. Code §1251, et seq.), California Health and Safety Code §25117 or 25316), or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any Due Diligence materials or Preliminary Report regarding Title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter.  Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Broker, has provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Broker shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

12.    BROKERS.  Brokers and agents herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein.  Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third-party professionals selected and compensated by Buyer.  In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Brokers or agents herein, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

13.    OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.  Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property.  In deciding to proceed with the sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller.  Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor the Brokers and agents herein nor any other person has made or makes any representations as to the accuracy or completeness of such information.  Buyer hereby fully and irrevocably releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Brokers or agents from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation.  NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER.  Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

14.    COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.  Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person.  Buyer further acknowledges and agrees Seller has no obligations to make repairs, replacements or improvements except as may otherwise be expressly stated herein.  Without limiting any other provision hereof, Buyer represents, warrants and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

15.    ATTORNEYS' FEES.  In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

EXPIRATION OF COUNTER-OFFER. This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller **along with confirmation of receipt of the Deposit by the Escrow Holder** on or before 1:00 p.m. (PST) September 19, 2022.

AGREED AND ACCEPTED:

"BUYER"

Dated: September 17 , 2022

By: _____
Jun Tao

By: _____
Peng Tao

"SELLER"

Dated: September 17, 2022

By: _____
Jason M. Rund, solely in his capacity as
Chapter 7 Trustee for the bankruptcy estate of
Thomas Vincent Girardi



# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP

**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/21)**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

## SELLER AND BUYER RESPONSIBILITIES

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. **Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.**

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ *Jun Tao* Date 9/16/2022
☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ *Peng Tao* Date 9/16/2022
Agent *Harvest Realty Development, Inc* DRE Lic. # *01964500*
        Real Estate Broker (Firm)
By *John Zhang ( Qiang Zhang )* *John (Qiang) Zhang* DRE Lic. # *01403183* Date 9/16/2022
    (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. (b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: (c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/21 (PAGE 2 OF 2)

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

DocuSign Envelope ID: 80918CB2-CE60-4DD5-9B7C-F7E14F318602
Case 2:20-bk-21020-BR     Filed 09/23/22    Entered 09/23/22 16:34:49    Desc
Main Document    Page 88 of 238

**FAIR HOUSING & DISCRIMINATION ADVISORY**
(C.A.R. Form FHDA, 6/22)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7.; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in **monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|------|-------|----------|-----------------|----------|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC § 10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2022, California Association of REALTORS®, Inc.
**FHDA REVISED 6/22 (PAGE 1 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

E. Creating a zoned/graduated density pattern, such as listing tenant applicant availability or vacancy for prospective purchasers if they have children or are planning to have children;

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheelchair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

   (i)   Failing to allow that person to keep the service animal or emotional support animal in rental property,

   (ii)  Charging that person higher rent or increased security deposit, or

   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://www.dfeh.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | |
|---|---|---|
| Buyer/Tenant | *Jun Tao* | Date 9/16/2022 |
| Buyer/Tenant | *Peng Tao* | Date 9/16/2022 |
| Seller/Landlord | *Girardi Thomas V* | Date |
| Seller/Landlord | | Date |

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**FHDA REVISED 6/22 (PAGE 2 OF 2)**

DocuSign Envelope ID: 80910CB3-CE60-4DD5-9B7C-F7E145338602



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller | _____ | *Girardi Thomas V* Date _____ |
| Seller | _____ | Date _____ |
| Buyer | _____ | *Jun Tao* Date *9/16/2022* |
| Buyer | _____ | *Peng Tao* Date *9/16/2022* |

Buyer's Brokerage Firm *Harvest Realty Development, Inc*   DRE Lic # *01964500*   Date _____
By _____ *John Zhang ( Qiang Zhang )*   DRE Lic # *01403183*   Date *9/16/2022*
*John (Qiang) Zhang*
Seller's Brokerage Firm *COMPASS*   DRE Lic # *01991628*   Date _____
By _____   DRE Lic # *01074290*   Date _____
*Ted Clark*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS REVISED 12/21 (PAGE 1 OF 1)**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)



# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
**(C.A.R. Form WFA, Revised 12/21)**

Property Address: *100 Los Altos Dr, Pasadena, CA  91105-1240* _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts.  Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

## NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.

Buyer/Tenant _____ *Jun Tao* Date 9/16/2022

Buyer/Tenant _____ *Peng Tao* Date 9/16/2022

Seller/Landlord _____ *Girardi Thomas V* Date _____

Seller/Landlord _____ Date _____

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/21 (PAGE 1 OF 1)**

| | |
|---|---|
| Harvest Realty Development Inc, 8 N. 1st Ave Arcadia CA 91006 | Phone: 6262032877   Fax:   100 Los Altos Dr |
| John (Qiang) Zhang | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com |

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 6/22)

Date Prepared: _September 16, 2022_

**1. OFFER:**

  **A. THIS IS AN OFFER FROM** _____ _Jun Tao, Peng Tao_ _____ ("Buyer").

  **B. THE PROPERTY** to be acquired is _____ _100 Los Altos Dr_ _____, situated
    in ___ _Pasadena_ ___ (City), ___ _LOS ANGELES_ ___ (County), California, _91105-1240_ (Zip Code),
    Assessor's Parcel No(s). ___ _5708025009_ ___ ("Property").
    **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**

  **C. THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**

  **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**

  **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.

  **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.

    **Seller's Brokerage Firm** _____ _COMPASS_ _____ License Number _01991628_
    Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
    **Seller's Agent** _____ _Ted Clark_ _____ License Number _01074290_
    Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
    **Buyer's Brokerage Firm** _____ _Harvest Realty Development, Inc_ _____ License Number _01964500_
    Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
    **Buyer's Agent** _____ _John (Qiang) Zhang_ _____ License Number _01403183_
    Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).

  **C.** More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).

  **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Acceptance of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $ _7,500,000.00_ | [X] All Cash |
| **B** | | **Close of Escrow (COE)** | [X] _30_ Days after Acceptance OR on _____ (date) | |
| **C** | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or [ ] _____ [ ] AM/[ ] PM | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** | $ _225,000.00_ ( _3.0_ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____) business days after Acceptance by wire transfer **OR** [ ] _____ |
| **D(2)** | 5A(2) | [ ] **Increased Deposit** (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies **OR** [ ] _____ (date) **OR** [ ] _____ |
| **E(1)** | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed _____% Buyer to pay zero points or up to _____% of the loan amount _____ If FHA or VA checked, Deliver list of lender required repairs — 17 (or _____) Days after Acceptance | Conventional or, if checked, [ ] FHA [ ] VA (CAR Forms FVAC, HID attached) [ ] Seller Financing [ ] Other: _____ |
| **E(2)** | 5C(2) | **Additional Financed Amount** / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed _____% Buyer to pay zero points or up to _____% of the loan amount | Conventional or, if checked, [ ] Seller Financing [ ] Other: _____ |
| **E(3)** | 7A | **Occupancy Type** | Primary or, if checked, [ ] Secondary [ ] Investment | |
| **F** | 5D | **Balance of Down Payment** | $ _7,275,000.00_ | |
| | | **PURCHASE PRICE TOTAL** | $ _7,500,000.00_ | |

© 2022, California Association of REALTORS®, Inc.

**RPA Revised 6/22 (PAGE 1 OF 16)**

Buyer's Initials  J / PT     Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

| | Paragraph # | Paragraph Title or Contract Term | | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | **Seller Credit, if any, to Buyer** | ☐ $ _____ (_____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| G(2) | | **ADDITIONAL FINANCE TERMS:** _____ _____ | | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| **I** | | **Intentionally Left Blank** | | |
| J | 16 | **Final Verification of Condition** | 5 (or _____ ) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____ ) Days after Acceptance | |
| **L** | **8** | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | **Loan(s)** | 17 (or _____ ) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____ ) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or _____ ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____ ) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the |
| L(4) | 8D, 14A | **Review of Seller Documents** | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | applicable box above or attaching a Contingency Removal (C.A.R. Form CR) and checking the applicable |
| L(5) | 8E, 13A | **Preliminary ("Title") Report** | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | box therein. Removal or Waiver at time of offer is per Agent advice. |
| L(6) | 8F, 11K | **Common Interest Disclosures** required by Civil Code § 4525 or this Agreement | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | See **paragraph 8H.** |
| L(7) | 8G, 9B(6) | **Review of leased or liened items** (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | ☒ **CR attached** |
| L(8) | 8J | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| **M** | | **Possession** | **Time for Performance** | **Additional Terms** |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or _____ ☐ AM/☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7C | **Seller Occupied or Vacant units** | COE date or, if checked below, _____ days after COE (29 or fewer days) _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | **Tenant Occupied units** | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| **N** | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____ ) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____ ) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or _____ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____ ) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| **O** | | **Intentionally Left Blank** | | |

**RPA Revised 6/22 (PAGE 2 OF 16)**

Buyer's Initials  / _____   Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com                100 Los Altos Dr

DocuSign Envelope ID: 80918CB3-CE60-4DD5-9B7C-F7E14E318602
Property Address: 227 De Anza Dr, Pasadena, CA 91765-1452    Date: September 10, 2022
Main Document    Page 94 of 238    Filed 09/23/22   Entered 09/23/22 16:34:49

| P | Items Included and Excluded | |
|---|---|---|
| **P(1)** | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** |

Items Included:
- ☒ Stove(s), oven(s), stove/oven combo(s);
- ☒ Refrigerator(s);
- ☐ Wine Refrigerator(s);
- ☒ Washer(s);
- ☒ Dryer(s);
- ☒ Dishwasher(s);
- ☒ Microwave(s);
- ☐ Video doorbell(s);
- ☐ Security camera equipment;
- ☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
- ☐ Smart home control devices;
- ☐ Wall mounted brackets for video or audio equipment;
- ☐ Above-ground pool(s) / ☐ spa(s);
- ☒ Bathroom mirrors, unless excluded below;
- ☐ Electric car charging systems and stations;
- ☒ Potted trees/shrubs;

**Additional Items included:** ☐ _____. ☐ _____. ☐ _____.

| **P(2)** | 9 | **Excluded Items:** |

☐ _____; ☐ _____; ☐ _____;

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ _____ ☐ Provided by: _____ | ☒ Environmental ☐ Other _____ |
| **Q(2)** | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(3)** | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(5)** | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(6)** | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(7)** | 19B | Escrow Fees | ☐ Buyer ☐ Seller ☐ Both _____ ☒ Each to pay their own fees | Escrow Holder: *Seller to choose* |
| **Q(8)** | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (If different from Escrow Holder): *Seller to choose* |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender**.** |
| **Q(10)** | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(11)** | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(12)** | 11K(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | ☐ Buyer ☒ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both _____ | |
| **Q(16)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(17)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(18)** | 10C | Home warranty plan: _____ | ☐ Buyer ☒ Seller ☐ Both _____ ☐ Buyer waives home warranty plan Issued by: *Buyer to choose* | Cost not to exceed $ _2,000.00_ . |

| R | **OTHER TERMS:** *Seller to pay termite inspection and section 1 clearance* |
|---|---|
| | Buyer would like to have the dinner table and the big statue in the upstairs small room |

**RPA Revised 6/22 (PAGE 3 OF 16)**    Buyer's Initials  ___/___    Seller's Initials ___/___ 

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    100 Los Altos Dr

DocuSign Envelope ID: 80918CB3-CE60-4DD5-9B7C-F7E14E318602

Property Address: 202 Los Altos Dr, Pasadena, CA 91105, USA    September 09, 2022    Filed 09/23/22    Entered 09/23/22 16:34:49    Page 95 of 238

**4. PROPERTY ADDENDA AND ADVISORIES:** (Check all that apply)

**A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Other _____

**B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # _____ (C.A.R. Form ADM)     ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)     ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)     ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other _____     ☐ Other _____

**C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)     ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)     ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
  (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)     ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)     ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ REO Advisory (C.A.R. Form REO)     ☐ Probate Advisory (C.A.R. Form PA)
- ☐ Other _____     ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. DEPOSIT:**
- (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
- (2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
- (3) **RETENTION OF DEPOSIT:** Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

**B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C. LOAN(S):**
- (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
- (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
- (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
- (4) **FHA/VA:** If FHA or VA is checked in **paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

**A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

---

RPA Revised 6/22 (PAGE 4 OF 16)     Buyer's Initials J T / P T     Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com     100 Los Altos Dr

C. **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7. CLOSING AND POSSESSION:**

A. **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

B. **CONDITION OF PROPERTY ON CLOSING:**
   (1) Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, **all** items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.
   (2) **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

C. **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

E. Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

A. **LOAN(S):**
   (1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
   (2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.
   (3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.
   (4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
   (5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

B. **APPRAISAL:**
   (1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
   (2) NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
   (3) [X] Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

C. **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.

D. REVIEW OF SELLER DOCUMENTS: This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A**.

RPA Revised 6/22 (PAGE 5 OF 16)          Buyer's Initials  J T / P T          Seller's Initials  _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          100 Los Altos Dr

**E. TITLE:**

(1) This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.

(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11K** ("CI Disclosures").

**G. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency. If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I. REMOVAL OF CONTINGENCY OR CANCELLATION:**

(1) **For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**

Note: If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.

(3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

(4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

(5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.

(6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**RPA Revised 6/22 (PAGE 6 OF 16)**

Buyer's Initials  /      Seller's Initials _____ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

**C.** **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10.** **ALLOCATION OF COSTS:**
  **A.** **INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs 3Q(1), (2), (3), and (5) only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report.** Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).
  **B.** **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
    **(1)** **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
    **(2)** **POINT OF SALE REQUIREMENTS:**
      **(A)** Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6).** Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
      **(B)** Buyer shall be provided, within the time specified in **paragraph 3N(1),** unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
    **(3)** **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
    **(4)** **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.
  **C.** **HOME WARRANTY:**
    **(1)** Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
    **(2)** **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11.** **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
  **A.** **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**
    **(1)** Seller shall, within the time specified in **paragraph 3N(1),** Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).
    **(2)** The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.
    **(3)** Seller shall, within the time specified in **paragraph 3N(1),** provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.
    **(4)** In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**RPA Revised 6/22 (PAGE 7 OF 16)**        Buyer's Initials  J T  /  P T        Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

**B. LEAD DISCLOSURES:**
   (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
   (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C**, and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A, B, C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
   (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C**, or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
   (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
   **(1)** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
   **(2)** If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

---

**RPA Revised 6/22 (PAGE 8 OF 16)**    Buyer's Initials [ J T ] / [ P T ]    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

**M.   KNOWN MATERIAL FACTS:** Seller, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (**C.A.R. Form ARC**), and make any and all other disclosures required by Law.

**12.   BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.**   Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.**   Buyer Investigations include, but are not limited to:

   (1)   Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
      (A)   A general home inspection.
      (B)   An inspection for lead-based paint and other lead-based paint hazards.
      (C)   An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
      (D)   Any other specific inspections of the physical condition of the land and improvements.
   (2)   All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.
   (3)   A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3, 10, 11**, and **14A.**

**C.**   Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.**   Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E.**   **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Buyer harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction.  Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13.   TITLE AND VESTING:**

**A.**   Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.**   Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.**   Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.**   Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.**   If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**F.**   Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**RPA Revised 6/22 (PAGE 9 OF 16)**          Buyer's Initials  J T / P T          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          100 Los Altos Dr



**G.** Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance". If applicable to the type of property and Buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 13A, and 13D.**

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and approve applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11.**

(2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G.**

(4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1).**

**C.** **SELLER RIGHT TO CANCEL:**

(1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D.** **BUYER RIGHT TO CANCEL:**

(1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**RPA Revised 6/22 (PAGE 10 OF 16)**   Buyer's Initials [JT] / [PT]   Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   100 Los Altos Dr

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F. EFFECT OF REMOVAL OF CONTINGENCIES:**
  **(1) REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
  **(2) REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds** (Civil Code § 1057.3). **Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B; (ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS AND AGENTS:**
  **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
  **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

---

RPA Revised 6/22 (PAGE 11 OF 16)    Buyer's Initials _J T_ / _P T_    Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:** Page 103 of 238

- **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any other related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33,** and **paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

- **B.** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

- **C.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H.**

- **D.** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

- **E.** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

- **F.** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2).** Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

- **G.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted, and upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23. ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25. DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

- **A.** "Acceptance" means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

Buyer's Initials ___ / ___    Seller's Initials ___ / ___

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

**B.** **"Agent"** means the Broker, salesperson, or real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

**C.** **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

**D.** **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

**E.** **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

**F.** **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

**G.** **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

**H.** **"Copy"** means copy by any means including photocopy, facsimile and electronic.

**I.** **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

**J.** **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**K.** **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

**L.** **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

**M.** **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

**N.** **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33**.

**O.** **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

**P.** **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

**Q.** **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

**26.** **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

**27.** **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**28.** **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in **paragraph 3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**RPA Revised 6/22 (PAGE 13 OF 16)**    Buyer's Initials  J T / P T    Seller's Initials _____/_____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    100 Los Altos Dr

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages)**:**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials_____J__ / __PT__          Seller's Initials _____ / _____

**30. MEDIATION:**
   **A.** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   **B.** **ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**31. ARBITRATION OF DISPUTES:**
   **A.** **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR** ☐ _____ _____. **The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
   **B.** **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
   **C.** **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**
   **D.** **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
   **E.** **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

   **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials ___J__ / __PT__          Seller's Initials _____ / _____

RPA Revised 6/22 (PAGE 14 OF 16)          Buyer's Initials ___J__ / __PT__     Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          100 Los Altos Dr

DocuSign Envelope ID: 80918CB3-CE60-4DD5-9B7C-F7E14E318602

**32. BUYER'S OFFER**

    **A.  EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

    **B.  ☐ ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

        (1)  One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

        (2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

        (3)  The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .

        (4)  If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

        _____ .

    **C.  **The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

    **D.  BUYER SIGNATURE(S):**

(Signature) By, _____    **Date:** 9/16/2022

    Printed name of BUYER: *Jun Tao*

    ☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

(Signature) By, _____    **Date:** 9/16/2022

    Printed name of BUYER: *Peng Tao*

    ☐ Printed name of Legally Authorized Signer: _____  Title, if applicable, _____

    ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

    **A.  ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

        **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

        ☐ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)

        ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

    **B.  ☐ Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

        (1)  One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

        (2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.

        (3)  The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .

        (4)  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

        _____ .

    **C.  **The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

    **D.  SELLER SIGNATURE(S):**

(Signature) By, _____    **Date:** _____

    Printed name of SELLER: *Girardi Thomas V*

    ☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

(Signature) By, _____    **Date:** _____

    Printed name of SELLER: _____

    ☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

    ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

**OFFER NOT ACCEPTED:** _____/_____   No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
            Seller's Initials

---

**RPA Revised 6/22 (PAGE 15 OF 16)**    Buyer's Initials     Seller's Initials _____/_____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    100 Los Altos Dr

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm _Harvest Realty Development, Inc_ Lic. # _01964500_
   By _John Zhang ( Qiang Zhang)_ _John (Qiang) Zhang_ Lic. # _01403183_ Date _9/16/2022_
   By ⎯48451BB09F754A3⎯ Lic. # _____ Date _____
   ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es):**
   Email _____ Text # _____
   Alternate: _____
   ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
   Address _8 N. 1st Ave_ City _Arcadia_ State _CA_ Zip _91006_

   B. Seller's Brokerage Firm _COMPASS_ Lic. # _01991628_
   By _____ _Ted Clark_ Lic. # _01074290_ Date _____
   By _____ Lic. # _____ Date _____
   ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent):**
   Email _____ Text # _____
   Alternate: _____
   ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
   Address _____ City _____ State _____ Zip _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____), Counter
Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to
**paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _Seller to choose_ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Agent or Seller Initials

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**RPA Revised 6/22 (PAGE 16 OF 16)** Buyer's Initials _J T_ / _P T_ Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

DocuSign Envelope ID: 80918CB3-CF60-4DD5-9B7C-F7E14E318602

**BUYER'S INVESTIGATION ADVISORY**
(C.A.R. Form BIA, Revised 12/21)

Property Address **100 Los Altos Dr, Pasadena, CA  91105-1240**

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

    I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

    J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**



**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____ *Jun Tao* Date 9/16/2022

Buyer _____ *Peng Tao* Date 9/16/2022

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 12/21 (PAGE 2 OF 2)**



**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    **100 Los Altos Dr**



# FAIR APPRAISAL ACT ADDENDUM
### (C.A.R. Form FAAA, 6/22)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other
_____ ("Agreement"),
dated _____, on property known as _____**100 Los Altos Dr, Pasadena, CA  91105-1240**_____ ("Property"),
in which _____**Girardi Thomas V**_____ is referred to as ("Seller")
and _____**Jun Tao, Peng Tao**_____ is referred to as ("Buyer").

Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/ AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**By signing below, Buyer and Seller has each read, understands and acknowledges receipt of a copy of this Fair Appraisal Act Addendum.**

Buyer _____*Jun Tao*_____ Date 9/16/2022

Buyer _____*Peng Tao*_____ Date 9/16/2022

Seller _____ Date _____
       *Girardi Thomas V*

Seller _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R E L B S L C  Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020


EQUAL HOUSING
OPPORTUNITY

**FAAA 6/22 (PAGE 1 OF 1)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/21)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _Jun Tao_____ _____ Date 9/16/2022

Buyer/Seller/Landlord/Tenant _Peng Tao_____ _____ Date 9/16/2022

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

EQUAL HOUSING
OPPORTUNITY

**CCPA REVISED 12/21 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

# EXHIBIT "5"

# Fidelity National Title Company

5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone: (818) 881-7800

Issuing Policies of Fidelity National Title Insurance Company

ORDER NO.: **00357460-994-VNO-1AW**
LOAN NO.:

Title Officer: Albert Wassif
Phone: (818) 881-7800 Ext. 5718
Fax: (818) 745-5013
Email: Team.Albert@fnf.com

A & A Escrow Services Inc
15250 Ventura Blvd., Suite 715
Sherman Oaks, CA 91403

ATTN:       Antonia Delgado
YOUR REF:   105613-AA

PROPERTY:   **100 Los Altos Drive, Pasadena, CA 91105**

## AMENDED **PRELIMINARY REPORT**

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a Florida corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Countersigned by:

*Cindy Fried*

Authorized Signature

**Fidelity National Title Company**

5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone:  (818) 881-7800

## AMENDED **PRELIMINARY REPORT**

---

**EFFECTIVE DATE:**    **August 30, 2022 at 7:30 a.m., Amended: September 19, 2022, Amendment No. 1**

**ORDER NO.:  00357460-994-VNO-1AW**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Homeowner's Policy of Title Insurance (7-1-21)**
**ALTA Extended Loan Policy (7-1-21)**

1.    THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

   **A Fee**

2.    TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

   **Thamas V. Girardi, a married man as his and separate property , subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

   | | |
   |---|---|
   | **Name of Debtor:** | **Thomas Vincent Girardi** |
   | **Date of Filing:** | **December 18, 2020** |
   | **U.S. District Court:** | **Central** |
   | **Case No:** | **BK-21020-BR** |

3.    THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

   **See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT
YOUR REFERENCE:  105613-AA

Fidelity National Title Company
ORDER NO.:  00357460-994-VNO-1AW

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASADENA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 21 AND 22 OF TRACT NO. 8702, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 118, PAGES 1 AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND THAT PORTION OF LOT 23 IN SAID TRACT NO. 8702, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 23; THENCE NORTHERLY ALONG THE CURVED WESTERLY LINE OF SAID LOT 23, A DISTANCE OF 26.54 FEET; THENCE NORTH 72° 48' 10" EAST 74.50 FEET TO A POINT IN THE SOUTHEASTERLY LINE OF SAID LOT 23 DISTANT THEREON NORTH 54° 44' 10' EAST 84.15 FEET FROM THE POINT OF BEGINNING; THENCE ALONG SAID SOUTHEASTERLY LINE SOUTH 54° 44' 10" WEST 84.15 FEET TO THE POINT OF BEGINNING.

PLOTTED EASEMENTS

APN:  **5708-025-008** and **5708-025-009**

**PLOTTED EASEMENTS**

PRELIMINARY REPORT                                                     Fidelity National Title Company
YOUR REFERENCE:  105613-AA                                     ORDER NO.:  00357460-994-VNO-1AW

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2022-2023.

2.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2020-2021.

   APN No.:              5708-025-009
   Default Date:         June 30, 2021

   Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

   Amount:               $76,571.03, by September 30, 2020
   Amount:               $77,502.02, by October 31, 2022

   Affects:              Lots 22 and 23

3.    Note:  Property taxes for the current fiscal year shown below HAVE NOT BEEN PAID. (Please refer to Default/Delinquent information shown above.) For proration purposes the amounts were:

   Code Area:            07500
   Tax Identification No.: 5708-025-009
   Fiscal Year:          2021-2022
   1st Installment:      $15,835.90 Delinquent + Penalty $1,583.59
   2nd installment:      $15,835.89 Delinquent + Penalty $1,593.58
   Exemption:            $0.00
   Land:                 $603,397.00
   Improvements:         $2,225,086.00

   Affects:              Lots 22 and 23

4.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2020-2021.

   APN No.:              5708-025-008
   Default Date:         June 30, 2021

   Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

   Amount:               $8,346.49, by September 30, 2022
   Amount:               $8,447.59, by October 31, 2022

   Affects:              Lot 21

PRELIMINARY REPORT
YOUR REFERENCE:  105613-AA

Fidelity National Title Company
ORDER NO.:  00357460-994-VNO-1AW

## EXCEPTIONS
### (Continued)

5.      Note:  Property taxes for the current fiscal year shown below HAVE NOT BEEN PAID. (Please refer to Default/Delinquent information shown above.) For proration purposes the amounts were:

Tax Identification No.:    5708-025-008
Fiscal Year:              2021-2022
1st Installment:          $1,718.91
2nd Installment:          $1,718.90
Exemption:                $0.00
Land:                     $301,687.00
Improvements:             $0.00
Code Area:                07500

Affects:                  Lot 21

6.      An assessment by the improvement district shown below

Assessment (or Bond) No.:   1915 Act
Series:                     Annandale Open Space
District:                   Pasadena
For:                        Pasadena Department of Finance
Bond Issued:                November 5, 2008
Original Amount:            $0.00

Said assessment is collected with the county/city property taxes.

Please contact your title officer for updated amounts prior to the close of escrow.

7.      The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

Note: If said supplementals (if any) are not posted prior to the date of closing, this company assumes no liability for payment thereof.

8.      Water rights, claims or title to water, whether or not disclosed by the public records.

9.      Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

Granted To:        Highland Park Water Company, a Corporation
Purpose:           Underground waterpipe
Recording No:      Book 144, Page 234, of Deeds
Affects:           Said land

10.     Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording No:      Book 5585, Page 332, of Official Records

PRELIMINARY REPORT                                                         Fidelity National Title Company
YOUR REFERENCE:  105613-AA                                          ORDER NO.:  00357460-994-VNO-1AW

## EXCEPTIONS
### (Continued)

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

Recording No:          Book 14102, Page 29, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:        December 2, 1986
Recording No:          1986-1663056, of Official Records

11.   The right to use the reservoir together with all appurtenances thereto and all pipelines located on Lot 21 and also a right of way for ingress and egress over said Lot 21 for the purpose of operating, maintaining, repairing, and/or replacing said reservoir, appurtenances and/or pipelines as reserved in the deed

Recording No.:         Book 40221, Page 22, of Official Records

12.   Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

Purpose:               Pipeline
Recording No:          Book 40221, Page 22, of Official Records
Affects:               Said land

13.   Matters contained in that certain document

Entitled:              Maintenance Covenant for Standard Urban Stormwater Mitigation (SUSMP)
                       Requirements
Dated:                 September 16, 2005
Executed by:           Thomas V. Girardi and City of Pasadena
Recording Date:        September 27, 2005
Recording No.:         2005-2330622, of Official Records

Reference is hereby made to said document for full particulars

14.   Matters contained in that certain document

Entitled:              Covenant and Agreement for Accessory Structure
Dated:                 September 16, 2005
Executed by:           Thomas V. Girardi and City of Pasadena
Recording Date:        September 27, 2005
Recording No.:         2005-2330623, of Official Records

Reference is hereby made to said document for full particulars

PRELIMINARY REPORT                                                              Fidelity National Title Company
YOUR REFERENCE:  105613-AA                                                      ORDER NO.:  00357460-994-VNO-1AW

## EXCEPTIONS
### (Continued)

15.     A judgment for installment payments of spousal and/or child support, to be made by:

        Debtor:              Thomas V. Girardi
        Creditor:            Karen Girardi
        Date entered:        September 08, 1989
        County:              Los Angeles
        Court:               Superior Court
        Case No.:            D 102 485
        Recording Date:      October 16, 1989
        Recording No:        1989-1663121, Official Records

16.     A deed of trust to secure an indebtedness in the amount shown below,

        Amount:              $3,000,000.00
        Dated:               April 8, 2014
        Trustor/Grantor:     Thomas V. Girardi, a married man as his sole and separate property
        Trustee:             Title 365
        Beneficiary:         Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for
                             Directors Financial Group
        Loan No.:            200114020685
        Recording Date:      May 5, 2014
        Recording No.:       2014-464309, of Official Records

        Assignment of the beneficial interest under said deed of trust which names:

        Assignee:            JPMorgan Chase Bank, National Association
        Recording Date:      February 9, 2021
        Recording No.:       2021-222414, of Official Records

17.     A deed of trust to secure an indebtedness in  the amount shown below,

        Amount:              $2,500,000.00
        Dated:               October 7, 2019
        Trustor/Grantor:     Thomas V. Girardi
        Trustee:             Fidelity National Title Insurance Company, a Florida Corporation
        Beneficiary:         Alt Financial Network, Inc., a California Corporation
        Loan No.:            None Shown
        Recording Date:      October 25, 2019
        Recording No:        2019-1149333, of Official Records

        Assignment of the beneficial interest under said deed of trust which names:

        Assignee:            Arsani Sidarous
        Recording Date:      October 25, 2019
        Recording No.:       2019-1149334, of Official Records

        A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

        Trustee:             County Records Research, Inc.
        Recording Date:      February 9, 2021
        Recording No.:       2021-223809, of Official Records

PRELIMINARY REPORT                                                                    Fidelity National Title Company
YOUR REFERENCE:  105613-AA                                                    ORDER NO.:  00357460-994-VNO-1AW

## EXCEPTIONS
### (Continued)

This company will require the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (ie, copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust. in the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). SERVICING AGREEMENTS DO NOT CONSTITUTE APPROVAL FOR THE PURPOSES OF THIS REQUIREMENT.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust, or the current  owners if applicable.

18.    A financing statement as follows:

Debtor:                    Thomas V. Girardi
Secured Party:             Alt Financial Network, Inc., a California Corporation
Recording Date:            October 25, 2019
Recording No.:             2019-1149335, of Official Records

19.    Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording Date:            November 25, 2019
Recording No:              2019-1291078, of Official Records

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

20.    A writ of execution levied upon the interest of the judgment debtor shown below

Debtor:                    Thomas V. Girardi
Creditor:                  Stillwell Madison, LLC
Date entered:              July 14, 2020
County:                    Los Angeles
Court:                     Superior Court of California
Case No.:                  20STCV07853
Amount:                    $5,847,411.54
Recording Date:            November 2, 2020
Recording No.:             2020-1376401, of Official Records

## EXCEPTIONS
### (Continued)

21.     A writ of execution levied upon the interest of the judgment debtor shown below

|  |  |
|---|---|
| Debtor: | Thomas V. Girardi |
| Creditor: | KCC Class Action Services, LLC |
| Date entered: | October 2, 2020 |
| County: | Los Angeles |
| Court: | Superior Court of California |
| Case No.: | 19STCV38587 |
| Amount: | $7,502,000.00 |
| Recording Date: | November 24, 2020 |
| Recording No.: | 2020-1512666, of Official Records |

22.     A pending court action as disclosed by a recorded notice:

|  |  |
|---|---|
| Debtor: | Thomas Vincent Girardi |
| County: | Los Angeles |
| Court: | United States Bankruptcy Court |
| Case No.: | 2:20-bk-21020-BR |
| Nature of Action: | As provided therein |
| Recording Date: | April 14, 2021 |
| Recording No: | 2021-584292, Official Records |

23.     Notice of delinquent assessments and lien payable to the Owners' Association pursuant to the declaration herein.

|  |  |
|---|---|
| Amount: | $6,818.72 |
| Owners Association: | Alta San Rafael Association |
| Recording Date: | May 21, 2021 |
| Recording No: | 2021-823641, of Official Records |

24.     An abstract of  judgment for the amount shown below and any other amounts due:

|  |  |
|---|---|
| Amount: | $6,000,000.00 |
| Debtor: | Thomas V. Girardi, Girardi Keese, a California Law Firm |
| Creditor | Law Finance Group, LLC |
| Date Entered: | July 30, 2019 |
| County: | Los Angeles |
| Court: | Superior Court of California |
| Case No. | 19STCV01455 |
| Recording Date: | August 8, 2019 |
| Recording No: | 2019-793616, of Official Records |

## EXCEPTIONS
### (Continued)

25.    An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $11,000,000.00 |
| Debtor: | Thomas V. Girardi, an individual, Girardi and Keese |
| Creditor | Joseph Ruigomez, an individual, Kathleen Ruigomez, an individual and Jamie Ruigomez, an individual |
| Date Entered: | April 20, 2020 |
| County: | Los Angeles |
| Court: | Superior Court of California |
| Case No. | 19STCV22296 |
| Recording Date: | July 13, 2020 |
| Recording No: | 2020-770269, of Official Records |

26.    An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $11,000,000.00 |
| Debtor: | Thomas V. Girardi, an individual, and Girardi and Keese, et al. |
| Creditor | Joseph Ruigomez, an individual, Kathleen Ruigomez, an individual, Jamie Ruigomez, an individual, et al. |
| Date Entered: | April 20, 2020 |
| County: | Los Angeles |
| Court: | Superior Court of California |
| Case No. | 19STCV22296 |
| Recording Date: | July 30, 2020 |
| Recording No: | 2020-864175, of Official Records |

27.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles |
| Fiscal Year: | 2020-2021 |
| Taxpayer: | Thomas V. Girardi and Robert M. Keese, dba Girardi and Keese |
| Amount: | $24,657.23 |
| Recording Date: | November 24, 2020 |
| Recording No.: | 2020-1509047, of Official Records |

28.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles |
| Fiscal Year: | 2021-2022 |
| Taxpayer: | Thomas V. Girardi and Robert M. Keese, dba Girardi and Keese |
| Amount: | $27,713.93 |
| Recording Date: | November 24, 2021 |
| Recording No.: | 2021-1743943, of Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH
FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

**END OF EXCEPTIONS**

## REQUIREMENTS SECTION

1.      In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

        Party(s):                    All Parties

        The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

        NOTE: The Statement of Information is necessary to complete the search and examination of title under this order.  Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

### END OF REQUIREMENTS

---

# INFORMATIONAL NOTES SECTION

1.      None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

2.      The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Single Family Residential properties, known as 100 Los Altos Drive, located within the city of Pasadena, California, 91105, to an Extended Coverage Loan Policy.

3.      Note:  There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

4.      Note:  Please contact your Title Officer to obtain the current recording fees.  Fidelity National Title Company will pay Fidelity National Title Insurance Company 12% of the title premium, as disclosed on lines 1107 and 1108 of the HUD-1.

5.      Note:  The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

6.      Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

7.      Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

8.      The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act.  If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

       **To protect the private information contained in the attached form and photo ID, please return via a secured method.**

9.      The following Exclusion(s) are added to preliminary reports, commitments and will be  included as an endorsement in the following policies:

       A.      2006 ALTA Owner's Policy (06-17-06).

               6.      Defects, liens, encumbrances, adverse claims, notices, or other matters not  appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

       B.      2006 ALTA Loan Policy (06-17-06).

               8.      Defects, liens, encumbrances, adverse claims, notices, or other matters not  appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

               9.      Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the

# INFORMATIONAL NOTES
## (Continued)

Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

C.    ALTA Homeowner's Policy of Title Insurance (12-02-13) and CLTA Homeowner's Policy of Title Insurance (12-02-13).

10.    Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

D.    ALTA Expanded Coverage Residential Loan Policy - Assessments Priority (04-02-15).

12.    Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

13.    Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

E.    CLTA Standard Coverage Policy 1990 (11-09-18).

7.    Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the public records but that would be disclosed by an examination of any records maintained by or on behalf of a tribe or on behalf of its members.

8.    Any claim of invalidity, unenforceability, or lack of priority of the lien of the insured mortgage based on the application of a tribe's law resulting from the failure of the insured mortgage to specify state law as the governing law with respect to the lien of the insured mortgage.

10.    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

11.    None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

12.    Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Planned Unit Development, known as 100 Los Altos Drive, Pasadena, California to an Extended Coverage Loan Policy.

13.    Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration provision. Arbitrable matters may include, but are not limited to any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance Coverage.

14.    Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

15.    Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

PRELIMINARY REPORT
YOUR REFERENCE:  105613-AA

Fidelity National Title Company
ORDER NO.:  00357460-994-VNO-1AW

# INFORMATIONAL NOTES
## (Continued)

16.    The Company and its policy issuing agents are required by Federal law to collect additional information about certain transactions in specified geographic areas in accordance with the Bank Secrecy Act. If this transaction is required to be reported under a Geographic Targeting Order issued by FinCEN, the Company or its policy issuing agent must be supplied with a completed ALTA Information Collection Form ("ICF") prior to closing the transaction contemplated herein.

17.    Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

18.    Unless this company is in receipt of WRITTEN instructions authorizing a particular policy, Fidelity Title will AUTOMATICALLY issue the American Land Title Association Homeowner's Policy (02/03/10) for all qualifying residential 1-4 properties/transactions to insure the buyer at the close of escrow.

19.    If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

20.    Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third party service. If the above requirements cannot be met, please call the Company at the number provided in this report

21.    NOTE: Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition, an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An example of the required language is as follows:

The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00, included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the successor Trustee under the Trust Deed to be paid off in full.

In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the requirements of the revised statute.

22.    Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums, including endorsements as follows:

Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

## INFORMATIONAL NOTES
### (Continued)

Line 1108 used to record the amount of the total title insurance premium, including endorsements, that is retained by the title underwriter. Fidelity National Title Insurance Company retains 12% of the total premium and endorsements.

---

### END OF INFORMATIONAL NOTES

---

Albert Wassif/ct

WIRE SAFE ™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective August 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics
<u>Cookies</u>. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

<u>Web Beacons</u>. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

<u>Do Not Track</u>. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

<u>Links to Other Sites</u>. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information
FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information
If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.
For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent To This Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 714-2710 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer



**Fidelity National Title Company**
5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone: (818) 881-7800    ●    Fax: (818) 776-8528

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

### Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## ATTACHMENT ONE (Revised 05-06-16)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

    c.  that result in no loss to You; or

    d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:

    a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and

    b.  in streets, alleys, or waterways that touch the Land.

    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)  the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or

    (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

{Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

## {PART I

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.}

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7.  {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i)   the occupancy, use, or enjoyment of the Land;

      (ii)  the character, dimensions, or location of any improvement erected on the Land;

      (iii) the subdivision of land; or

      (iv)  environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

   (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

   (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

   (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c)  resulting in no loss or damage to the Insured Claimant;

   (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

   (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

   (a)  a fraudulent conveyance or fraudulent transfer, or

   (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

---

Attachment One – CA (Rev. 05-06-16)                                                                                                    Page 4

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

# EXHIBIT "6"

---

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

LAW OFFICES OF STEPHEN A. KOLODNY (213)475-8611
Suite 1224
10880 Wilshire Boulevard
Los Angeles, California  90024

TELEPHONE NO.

FOR COURT USE ONLY

ATTORNEY FOR (Name)  Respondent, THOMAS V. GIRARDI

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS  111 North Hill Street
MAILING ADDRESS  111 North Hill Street
CITY AND ZIP CODE  Los Angeles, California  90012
BRANCH NAME

MARRIAGE OF
PETITIONER:  KAREN GIRARDI

RESPONDENT:  THOMAS V. GIRARDI

JUDGMENT

| [X] Dissolution | [ ] Legal separation | [ ] Nullity |
| [ ] Status only | | |

[ ] Reserving jurisdiction over termination of marital status
Date marital status ends: Immediately upon filing of Judgment

CASE NUMBER

D 102 485

1. This proceeding was heard as follows: [X] default or uncontested   [ ] by declaration under Civil Code, § 4511   [ ] contested
   a. Date:  SEP 0 8 1989  Dept.:   Rm.:
   b. Judge (name): William P. Hogoboom  [X] Temporary judge   LICHTIG, ELLIS & MEYBERG
   c. [X] Petitioner present in court   [X] Attorney present in court (name): /by Gerald E. Lichtig
   d. [X] Respondent present in court   [X] Attorney present in court (name): LAW OFFICES OF STEPHEN A.*
   e. [ ] Claimant present in court (name):   [ ] Attorney present in court (name):
2. The court acquired jurisdiction of the respondent on (date): 12/7/83   *KOLODNY by Stephen A. Kolodny
   [ ] Respondent was served with process   [X] Respondent appeared

3. THE COURT ORDERS, GOOD CAUSE APPEARING:
   a. [X] Judgment of dissolution be entered. Marital status is terminated and the parties are restored to the status of unmarried persons
      (1) [X] on the following date (specify): Immediately upon filing of Judgment
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation be entered.
   c. [ ] Judgment of nullity be entered and the parties are declared to be unmarried persons on the ground of (specify):

4. THE COURT FURTHER ORDERS:
   a. Jurisdiction is reserved to make other and further orders necessary to carry out this judgment.
   b. [ ] Wife's former name be restored (specify):
   c. [ ] This judgment shall be entered nunc pro tunc as of (date):
   d. [ ] Jurisdiction is reserved over all other issues and all present orders remain in effect except as provided below.
   e. Any payment for spousal or family support contained in this judgment shall terminate upon the death of the payee unless otherwise provided.
   f. [X] is set forth in the 73 pages attached hereto.

Date:

5. Number of pages attached:  73   [X] Signature follows last attachment

JUDGE OF THE SUPERIOR COURT

— NOTICE —

1. Please review your will, insurance policies, retirement benefit plans, and other matters you may want to change in view of the dissolution or annulment of your marriage. Ending your marriage may automatically change a disposition made by your will to your former spouse.
2. A debt or obligation may be assigned to one party as part of the division of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.
3. If you fail to pay any court-ordered child support, an assignment of your wages will be obtained without further notice to you.

Form Adopted by Rule 1287
Judicial Council of California
1287 (Rev. July 1, 1985)   **1287**

JUDGMENT
(Family Law)

EXHIBIT  A , PAGE  7

1 APPROVED AS TO FORM AND CONTENT:

2

3 I do hereby confirm that I have consulted with, and advised, my
client with regard to the terms and provisions of this Judgment and
I believe that my client has voluntarily executed her/his approval
4 of the terms and provisions of this Judgment as an expression of
her/his desire for settlement of her/his claims against the other.
5 I believe that my client fully understands the terms and provisions
of this Judgment, including the provisions waiving further
6 discovery and basic non-modifiability of family support for the
first sixty (60) months.

7

8 LICHTIG, ELLIS & MEYBERG

9

10 BY: _____
GERALD E. LICHTIG
11 Attorneys for Petitioner,
KAREN GIRARDI
12
Dated: ~~August~~ SEPT 8 , 1989.
13

14 LAW OFFICES OF STEPHEN A. KOLODNY

15

16 BY: _____
STEPHEN A. KOLODNY
17 Attorneys for Respondent,
THOMAS V. GIRARDI
18
Dated: ~~August~~ Sept 8 , 1989.
19

20 THE FOREGOING, CONSISTING OF THE JUDICIAL COUNSEL APPROVED FACE

21 PAGE AND 73 CONTINUATION PAGES, INCLUDING A PAGE WHEREON THE

22 SIGNATURES OF THE PARTIES ARE NOTARIZED, AS WELL AS THIS SIGNATURE

23 PAGE, IS THE JUDGMENT OF THIS COURT.   THE CLERK IS ORDERED TO

24 FORTHWITH FILE AND ENTER THIS JUDGMENT.

25 Dated: ~~August~~ September 8 , 1989.

26
_____
27 William P. Hogoboom, Judge Pro Tem
Los Angeles Superior Court
28

LAW OFFICES
STEPHEN A. KOLODNY
A PROFESSIONAL
CORPORATION
SUITE 1224
10880 WILSHIRE BLVD.
LOS ANGELES, CA.
90024-4113
213-475-8611

IN RE THE MARRIAGE OF GIRARDI          CASE NO. D 102 485
JUDGMENT - CONTINUATION PAGES          PAGE 73
JK04029C.311   rev:080289.1615 sf    EXHIBIT _A_   PAGE _8_

TYPE OF HEARING _____

CASE NO. _____

_____ EXH. NO. _____

**ADMITTED IN EVIDENCE**

DATE _____

FRANK S. ZOLIN, COUNTY CLERK/EXECUTIVE OFFICER

BY: _____    DEPUTY

# MARITAL SETTLEMENT AGREEMENT

## December 28, 1988

## THOMAS V. GIRARDI

### and

## KAREN GIRARDI

EXHIBIT _B_ , PAGE 9

## MARITAL SETTLEMENT AGREEMENT

**I.    INTRODUCTION**

This Marital Settlement Agreement is made in Los Angeles
California, between KAREN GIRARDI (hereinafter referred to as
"Petitioner") and THOMAS V. GIRARDI (hereinafter referred to as
"Respondent").

This Marital Settlement Agreement is binding upon
execution but shall not be effective until Petitioner has
received the sum of Seven Hundred Fifty Thousand Dollars
($750,000.00) from Respondent as prescribed in Paragraph
IX.C.1.a. hereinbelow.

In the event Respondent does not pay said Seven Hundred
Fifty Thousand Dollars ($750,000.00) then, and in that event,
Petitioner shall have the right to rescind this Marital
Settlement Agreement upon the giving of written notice of
rescission to Respondent.    It is hereby agreed that such
rescission shall not require any judicial confirmation thereof
and shall restore the parties to status quo ante.

Notwithstanding the foregoing, for definition purposes,
and time triggering purposes, this Marital Settlement Agreement
shall be deemed effective as of June 30, 1988.

Continued on following pages . . .

EXHIBIT ____ B ____, PAGE _10_



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                            Page 1

II.    **RECITALS**

A.    Petitioner and Respondent were married on or about August 29, 1964, and ever since have been and now are husband and wife.

B.    The parties have two (2) adult children. There is one (1) minor child the issue of the marriage between Petitioner and Respondent, J███████ G█████, born ███████████, 1971.

C.    Irreconcilable differences between the parties caused the irremediable breakdown of the marriage, as a result of which the parties separated on or about September 12, 1983.

D.    On October 4, 1983, Petitioner filed a proceeding for the dissolution of the marriage in the Superior Court of the State of California, for the County of Los Angeles, Case No. D 102485.

E.    Petitioner and Respondent now intend by this Marital Settlement Agreement to fully and finally adjust and settle their property rights and all other rights and obligations with respect to each other arising from their marriage, including, but not limited to, a division of their community property, confirmation of separate property, payment of debts, settlement of claims against one another, and disposition of the mutual rights and obligations of support, child custody and support.

III.    **SETTLEMENT OF CLAIMS BETWEEN THE PARTIES**

Except as otherwise provided herein, the parties do hereby forever compromise, settle and resolve, by and between

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                    Page 2

EXHIBIT *B*   PAGE //

themselves, all present and future property rights of every kind and nature, whether relating to community, quasi-community, or separate property, and wheresoever said property is or may be located, and all other rights and claims either party may have or claim to have against the other, including the right t support. The provisions of this Marital Settlement Agreement shall be accepted in full satisfaction of any claims of either party against the other except as otherwise provided herein.

Whether or not approved by the Court, this Marital Settlement Agreement shall set forth the duties and obligations of the parties and the resolution of their claims against each other.

## IV.   AGREEMENT TO LIVE SEPARATE AND APART

The parties hereto have lived separate and apart from each other since on or about September 12, 1983.

Each of the parties shall be free from interference, authority, or control by the other, and each may conduct, carry on, and engage in any employment, business, or trade which to him or her shall seem advisable for his or her sole and separate use and benefit, without, and free from, any control, restraint, or interference, direct or indirect, by the other party in any respect.

The provisions of this paragraph shall not affect the right of Respondent to claim that Petitioner has, or had, the

EXHIBIT _B_ PAGE _12_

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK06178I.311                                        Page 3

ability to work and/or otherwise contribute to her own support or be fully self-supporting.

**V.    RELEASE**

Except for the benefits, rights, and obligations created by this Marital Settlement Agreement or reserved herein, and except as to any action to enforce this Marital Settlement Agreement, each party hereto releases and forever discharges the other party, his or her heirs, executors, administrators, assigns, property, and estate, from any and all rights, claims, demands, and obligations of every kind and nature as spouse of the other, including but not limited to community property, quasi-community property, probate homestead, dower, curtesy, inheritance, family allowance, letters of administration, descent (except as provided in any Will of either party executed or published after the date hereof), distribution, spousal support, and for attorneys' fees, costs of suit, or otherwise; each party is forever barred from having or asserting any such rights, claims, demands, or obligations at any time hereafter for any purpose.

Except for the benefits, rights, and obligations created by this Marital Settlement Agreement or reserved herein, and except as to any action to enforce this Marital Settlement Agreement, it is the intention of the parties that this Marital Settlement Agreement shall be, and it is, a full and final accord and satisfaction of all claims which each may have against

EXHIBIT  *8* , PAGE *13*

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                    Page 4

the other.  Each party warrants and represents to the other that he or she has not heretofore assigned any claims against the other to any third person or entity.

## VI.   SEPARATE PROPERTY OF PETITIONER

A.   Respondent hereby acknowledges that the following property is the sole and separate property of Petitioner, and Respondent hereby quitclaims to Petitioner any and all right, title, and interest which he has, had, or may claim to have had, in and to said separate property.  Respondent agrees to execute, acknowledge, and deliver to Petitioner any and all deeds, transfers, or assignments with respect to the hereinbelow described property forthwith upon demand of Petitioner. Petitioner hereby assumes all liabilities arising from or connected with the hereinbelow described property.

1.   Clothing, jewelry, and personal effects in the possession of Petitioner.

2.   Cash on deposit in the name of Petitioner at Security-Pacific Bank, West San Marino Branch.  Any community property claim of Respondent with regard to said account is waived and released by the terms and provisions of this Marital Settlement Agreement.

3.   All right to receive Social Security benefits, now or in the future, which rights arise either individually or as the former spouse of Respondent.



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                          Page 5

EXHIBIT _B__ PAGE _14_

## VII.    SEPARATE PROPERTY OF RESPONDENT

A.   Petitioner hereby acknowledges that the property described in Exhibit "A" hereto is the sole and separate property of Respondent and Petitioner hereby quitclaims to Respondent any and all right, title, and interest which she has had, or may claim to have had, in and to said separate property. Petitioner agrees to execute, acknowledge, and deliver to Respondent any and all deeds, transfers, or assignments with respect to the property described in Exhibit "A" forthwith upon demand of Respondent.  Respondent hereby assumes all liabilities arising from or connected with the property described in Exhibit "A".

## VIII.    DIVISION OF COMMUNITY PROPERTY

A.   Petitioner and Respondent do hereby compromise, settle and resolve their respective community property rights and claims, including the assumption of certain obligations, by the terms and provisions of this Marital Settlement Agreement and the division of assets, assumptions of liabilities and payment of monies in the manner hereinbelow set forth.

B.   Each party hereby acknowledges that said compromise, settlement and resolution of their property rights is not necessarily an equal division of their community property according to value.

C.   From and after this compromise, settlement and resolution of such property issues, the assets received by each

EXHIBIT B , PAGE 15



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330  REV. 120788.1427 mc
AK061781.311                              Page 6

party in this compromise, settlement and resolution, together with all rents, issues, and profits received thereafter (without any apportionment) and accretions and increases therein, and all existing and future liabilities arising therefrom, shall be and remain the recipient's separate property, or liability, respectively.

D.   Each party further agrees that the property which he/she is to receive pursuant to the terms and provisions of this Marital Settlement Agreement is not intended to be a sale or exchange of property.  Each party shall take the property which he/she is to receive pursuant to the terms and provisions of this Marital Settlement Agreement with the same income tax basis that said property had immediately prior to this division and distribution.

E.   The parties agree that the assets and liabilities which are the community property of the parties are those set forth on Exhibit "B" to this Marital Settlement Agreement.

F.   The community property is divided and allocated as follows:

1.   As a division of community property, Petitioner shall take as her sole and separate property, and Respondent hereby agrees to, and by this Marital Settlement Agreement he hereby does, transfer, assign, and convey to Petitioner as her sole and separate property, all his right, title, and interest (whether by reason of community property rights or otherwise) in

EXHIBIT _B_ PAGE _16_

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330  REV. 120788.1427 mc
AK061781.311                                    Page 7

and to the assets described in Exhibit "C" to this Marital Settlement Agreement.

2. As a division of community property, Respondent shall take as his sole and separate property, and assume as his separate obligation, and Petitioner hereby agrees to, and by thi Marital Settlement Agreement she hereby does, transfer, assign, and convey to Respondent as his sole and separate property or separate obligation, all her right, title, and interest (whether by reason of community property rights or otherwise) in and to the assets and liabilities described in Exhibit "D" to this Marital Settlement Agreement.

3. a. All policies of insurance, and any proceeds therefrom, relating to assets allocated to Petitioner and Respondent, respectively, shall be transferred to and be the separate property of the party receiving the asset on which such insurance exists or existed, including, but not limited to, the real property, furniture, furnishings and household effects, automobiles, and other tangible personal property received by either party hereunder, either as a division of the community property or as a confirmation of that party's separate property interest.

b. As soon as practical after the date of execution of this Marital Settlement Agreement, the parties shall cooperate with each other to allocate said insurance in accordance with the assets being divided between them and each

EXHIBIT B   PAGE 17

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                         Page 8

shall obtain their own insurance policy(ies) independent of the other.

IX.    **POSSESSION OF RESIDENCE/PAYMENTS TO PETITIONER/SECURITY**

A.    Petitioner presently resides at the residence located at 100 Los Altos, Pasadena, California with the minor child, Jennifer Girardi.

B.    Petitioner shall be entitled to continue to reside in said residence, along with having the use of all the contents thereof, to the exclusion of Respondent, through and including February 28, 1989.    Petitioner shall vacate said residence and surrender the premises and Respondent's share of the contents thereof (as set forth in Exhibit D to this Marital Settlement Agreement) by 11:59 o'clock p.m. on February 28, 1989.

C.    1.    Respondent shall pay to Petitioner, as part of the compromise, settlement and resolution of the property issues, the sum of One Million Four Hundred Thousand Dollars ($1,400,000.00), payable as follows:

a.    $750,000.00 on or before December 31, 1988.

b.    $400,000.00 on or before January 31, 1989.

c.    $250,000.00 on or before January 1, 1990, or, if it occurs prior to January 1, 1990, upon his receipt of monies from U. S. Housing Corporation, which monies shall be paid over to Petitioner within twenty (20) days of Respondent's receipt thereof.    To the extent that the monies received by

LAW OFFICES
PHILA & HOLLANDY
LEGAL PROFESSIONAL
CORPORATION
SUITE 1200
40 WILSHIRE BLVD
LOS ANGELES, CA
90024-4113
213-475-5651

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330    REV. 120788.1427 mc
AK06178I.311                                              Page 9

EXHIBIT __8__ PAGE __18__



Respondent from U. S. Housing Corporation are insufficient to pay the aforementioned sum, the remaining balance shall be due on January 1, 1990.

2.   Said sums of Four Hundred Thousand Dollars ($400,000.00) and Two Hundred Fifty Thousand Dollars ($250,000.00) shall bear interest at ten percent (10%) per annum on the unpaid balance only after the date on which each installment is due, if not paid on the installment date due, until the full amount thereof is paid.

3.   In the event that the installment of Four Hundred Thousand Dollars ($400,000.00) due January 11, 1989 is not paid when due, Petitioner shall have the option to declare the entire balance of Six Hundred Fifty Thousand Dollars ($650,000.00) due and payable, at which time the entire unpaid balance shall bear interest at ten percent (10%) per annum from January 2, 1989 until paid in full.

4.   The aforesaid principal payments shall not be taxable to Petitioner, nor deductible by Respondent, as alimony (as defined in the Internal Revenue Code), or otherwise.

D.   As security for the payment of said aggregate sum of Six Hundred Fifty Thousand Dollars ($650,000.00), Respondent hereby agrees to deliver to Petitioner, concurrently with the execution of this Marital Settlement Agreement, the following security:

1.   a.   A note secured by a deed of trust in the aggregate sum of Six Hundred Fifty Thousand Dollars

EXHIBIT _B_, PAGE _19_

($650,000.00). Said note shall provide for payments as set forth in __Paragraph IX.C., Subparagraphs 1.b., 1.c., 1 and 1.__ hereinabove. Said deed of trust shall encumber the property, located at 100 Los Altos Drive, Pasadena, California and shall be interior only to trust deeds in an aggregate sum of not more than One Million Four Hundred Seventy-Two Thousand Dollars ($1,472,000.00).

b.    In connection with said promissory note and deed of trust, and for so long as the debt evidencing the obligation secured by said deed of trust remains unpaid, Respondent shall obtain and pay for a CLTA Lender's standard policy of title insurance in the face amount of Six Hundred Fifty Thousand Dollars ($650,000.00) insuring Petitioner against all financial claims covered by said standard policy as any such financial claims may be asserted against said real property other than:

(1)  the existing trust deed securing a note payable to Great Western Savings in the face amount of Six Hundred Fifty Thousand Dollars ($650,000.00);

(2)  the existing trust deed securing a note (or notes) payable to Bank of Industry in the face amount of Seventy-Two Thousand Dollars ($72,000.00); and

(3)  a new trust deed to be created, which, in combination with, or as replacement for, the existing trust deed to Great Western and the other existing trust deed to Great Western and the other existing encumbrances of record, does

EXHIBIT _B_, PAGE 20

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330    REV. 120788.1427 mc
AK06178I.311                          Page 11

not exceed the aggregate total sum of One Million Four Hundred Seventy-Two Thousand Dollars ($1,472,000.00).

2.   A guarantee for the payment by Respondent of said aggregate sum of Six Hundred Fifty Thousand Dollars ($650,000.00) executed by the law partnership, Girardi, Keesø Crane, and each of the principal partners (Thomas V. Girardi and Richard Crane) thereof.

3.   A security agreement assigning Respondent's undivided interest in the three (3) unsecured promissory notes issued January 1, 1987 by U.S. Housing Corporation as described in Exhibit B to this Marital Settlement Agreement; said undivided interests of Respondent aggregate approximately Three Hundred Thousand Dollars ($300,000.00) including accrued interest.

4.   It is the intention of the parties that the security given for the payment of said obligations by Respondent to Petitioner shall be cumulative, i.e., the exhaustion or exercise of one of the above security remedies shall be independent of the others. All of the remedies may be separately pursued, provided however, that in no event shall Petitioner be entitled to receive more than the aggregate sum of Six Hundred Fifty Thousand Dollars ($650,000.00) plus accrued interest, if any, and costs and attorneys' fees, if any.

X.      PAYMENT OF LIABILITIES AND INDEMNIFICATION FROM DEBTS

A.   Except as otherwise provided in this Marital Settlement Agreement, Respondent shall pay and indemnify

EXHIBIT ___B___ PAGE 21

Petitioner against, and hold her free and harmless from, all debts, liabilities, and obligations heretofore incurred by his, or jointly by Petitioner and Respondent, or otherwise assumed by him pursuant to the terms and provisions of this Marital Settlement Agreement, and from all legal fees and costs incurred by her in defending herself against any such claim, action or demand.

B.   Except as otherwise provided in this Marital Settlement Agreement, Petitioner shall pay and indemnify Respondent against, and hold him free and harmless from, all debts, liabilities, and obligations heretofore incurred by her (except jointly with Respondent) or otherwise assumed by her pursuant to the terms and provisions of this Marital Settlement Agreement, and from all legal fees and costs incurred by him in defending himself against any such claim, action or demand.

C.   Except as otherwise provided in this Marital Settlement Agreement, Petitioner and Respondent, from and after the date hereof, shall not incur any debts, charges, or liabilities whatsoever for which the other party or his/her property or estate shall be or may become liable or answerable; if any such debts, charges, or liabilities are incurred, the party incurring such debt, charge, or liability shall indemnify and hold the other free and harmless therefrom, including free any legal fees and costs incurred in defending against any such claims, demands or actions.



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                              Page 13

## XI.   FAMILY SUPPORT/CUSTODY

A.   Respondent shall pay to Petitioner, as family support, the sum of Ten Thousand Dollars ($10,000.00) per month, commencing on the first day of March 1989 and continuing to the first day of each month thereafter until Petitioner's death, Petitioner's remarriage, Respondent's death, or further order of Court, whichever event first occurs.

B.   However, in no event shall said family support be modifiable, either upward or downward, nor shall it terminate, for a period of sixty (60) months after commencement of such payments except in the event of the death of either party or the remarriage of the Petitioner.

C.   At the expiration of said five-year period, either party shall be free to seek modification of the family support provisions hereof, without any further showing of change of circumstances, and such requirement, if any, shall be deemed satisfied. This provision for modifiability does not constitute an agreement that such family support should be modified, but shall merely express the intent of the parties that the amount of family support agreed to herein is modifiable and subject to further order of court in the future.  At such modification proceeding, if any, the court shall consider all of the then circumstances of the respective parties as then set forth in Civil Code §4801, or any successor thereto.

D.   At the time of any Order to Show Cause re Modification, the family support provisions hereof shall be

EXHIBIT _B_, PAGE 23

without prejudice of any kind or nature to the various claims and contentions of the parties regarding the issues pertaining to family support or spousal support and those issues shall be decided based on all facts pertaining to said issues including, but not limited to, the Court's determination of the reasonable needs of Petitioner, the income received by Petitioner from her invested assets and the Court's determination of the Respondent's ability to pay monies for, and on account of, the reasonable needs of the Petitioner.

E.   In addition to the foregoing, at the time of said Order to Show Cause re Modification, each party shall be free to argue whatever position he/she feels is appropriate with regard to the issues, if they (or any of them) are determined by the court to be relevant issues, of: (a) Petitioner's employment or non-employment, (b) Petitioner's employability or non-employability, (c) the reasonableness of the efforts, if any, of Petitioner to obtain gainful employment during the time preceding said Order to Show Cause re Modification, (d) whether or not it was necessary or appropriate for Petitioner to seek any kind of employment during the period of time preceding said Order to Show Cause re Modification, or any portion of said time, and (e) any other relevant issue which the he/she, his/her counsel or the Court raise regarding his/her economic condition.

F.   In connection with any such Order to Show Cause re Modification, Petitioner agrees that her income from invested assets (assets received pursuant to this Marital Settlement

EXHIBIT B PAGE 24

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                    Page 15

Agreement by way of division of property) shall be considered as income available to her and considered, to such extent as the Court then deems appropriate, in connection with her claimed expenses and with regard to the overall issue of her need for support from Respondent.

G.   Until said family support payments provided herein commence, Respondent shall pay to Petitioner the spousal and child support payments provided for in the <u>Order After Hearing on Petitioner's Order to Show Cause</u>, dated February 26, 1987, and Respondent shall comply in all other respects with said Order.  Said Order shall terminate and be of no further effect, except as to accrued payments thereunder, from and after the date the first payment is due pursuant to the provisions of <u>Sub-paragraph "A" hereinabove</u>.

H.   Petitioner shall support the minor child of the parties, Jennifer Girardi, during her minority, out of and from the aforesaid family support payments without any further claim against, or request for contribution from, Respondent.

I.   In the event of termination of said family support payments during a period of time when Respondent might otherwise be obligated by law to provide support for said child, the Court in the pending dissolution action shall retain jurisdiction to make an order for support payments for said child, the amount thereof to be set at the discretion of the Court, said discretion to be exercised in accordance with the normal principles and practices then pertaining to that issue.

EXHIBIT ___B___, PAGE _25_



J.   Subject to an order of the Court in the dissolution action, Petitioner shall have legal and physical custody of Jennifer Girardi, subject to reasonable visitation with Respondent at such times and places as are mutually convenient and agreed upon between Respondent and the minor child.

K.   As security for Petitioner's future support in the event of Respondent's death, Petitioner intends to obtain insurance on Respondent's life in the face amount of Five Hundred Thousand Dollars ($500,000.00).  Respondent hereby agrees to complete and execute any and all documents reasonably requested and necessary for Petitioner to obtain such insurance and to submit to such physical examinations and tests, at his office, as may be reasonably requested by such company or companies, until such insurance has been issued.  The obligation for payment of all premiums on said insurance shall be Petitioner's and she shall not seek contribution (either directly or as an item of her expenses in connection with any application for modification of spousal support or child support) therefor from Respondent.

L.   In the event Respondent predeceases Petitioner, Petitioner shall have no right to seek or obtain a probate homestead in any property received by Respondent pursuant to the terms and provisions of this Marital Settlement Agreement nor to any family allowance.

Continued on following pages . . .

EXHIBIT _8_, PAGE _26_



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                              Page 17

## XII.   INCOME TAXES

A.    Petitioner and Respondent have filed separate tax returns for calendar year 1984 and thereafter.  The parties shall file separate returns for 1988; each party shall report all separate income and all of the income (loss) received by that party arising from community assets from January 1, 1988 to the effective date of this Marital Settlement Agreement.  Thereafter, the party receiving such asset or liability shall report all of the income, loss or expense arising from each such asset or liability.  In the event of any tax audits, Federal or State, for the years 1988 or before, each party agrees, upon demand of the other, to cooperate with the other  party in making records available to the other party, or performing any other acts reasonably necessary to assist the other in connection with the audit.

B.    In the event of an audit of joint tax returns, or any claim for deficiency in payment of taxes, Federal or State, in connection with tax returns filed jointly by the parties, Respondent shall pay, and hold Petitioner free and harmless from, all costs of said audit, and all taxes due, including but not limited to, claims for penalties and interest, and attorneys' fees and costs in defending against such claims.  Any refunds arising from such audits shall belong exclusively to Respondent. Each party, respectively, shall hold the other free and harmless with respect to all separate returns filed for the calendar year 1984 and thereafter, including but not limited to, unpaid taxes, interest and penalties, and attorneys' fees and costs.

EXHIBIT B , PAGE 27

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330  REV. 120788.1427 mc
AK061781.311       REV. 121388.1025 sf       Page 18

C.   The obligation of Respondent to hold Petitioner free and harmless from said possible tax audit liabilities is contingent upon Petitioner not instituting, reporting or causing (directly or indirectly) said audit and, further, upon Petitioner's reasonable cooperation in connection with said audit, if reasonably necessary.

## XIII.  FURTHER INSTRUMENTS AND OTHER ACTS

A.   Each party shall, on demand, make, execute, acknowledge, and deliver to the other any and all deeds, assignments, insurance forms, waivers, or other instruments, and do any further acts that may be necessary or convenient, in order to carry out or effectuate the intent of this instrument or to execute any of the terms hereof.

B.   If either party fails or refuses to execute any document necessary to effectuate the terms of this Marital Settlement Agreement, within ten (10) days after presentation of same, it is agreed that upon application to the Superior Court of the State of California for the County Los Angeles, the County Clerk may be appointed to execute said documents, if such action is deemed appropriate by the Court.  Said application may be granted ex parte (upon 24 hours' advance notice of such application, with copies of the documents to be submitted to the Court being provided to the other party at the time said notice is given), if in the discretion of the Court such immediate order is necessary, or, if not immediately necessary, the Court shall

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330  REV. 120788.1427 mc
AK061781.311                                    Page 19

EXHIBIT _B_, PAGE _28_

set said matter for hearing upon such notice as the Court deems proper.

### XIV.    AGREEMENT BINDING ON SUCCESSORS

Each and every covenant and agreement herein contained, except as otherwise expressly provided, shall inure to the benefit of, and shall be binding upon, the heirs, legatees, devisees, assignees, administrators, executors, and successors in interest of each party hereto.

### XV.    EACH PARTY FULLY ADVISED

A.    Petitioner and Respondent hereby acknowledge, for himself/herself, to the other, and for the other to rely upon in entering into this Marital Settlement Agreement, that:

1.    he/she has been represented by counsel of his/her owning choosing;

2.    that he/she has read this Marital Settlement Agreement and has had it fully explained to him/her by his/her counsel;

3.    that he/she is fully aware of the contents of this Marital Settlement Agreement and of its legal effect upon him/her;

4.    that he/she has executed this Marital Settlement Agreement in reliance on his/her own independent judgment, and with the advice of his/her lawyer, free from coercion, duress, or undue influence of any kind whatsoever.



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330  REV. 120788.1427 mc
AK061781.311                                          Page 20

EXHIBIT _B_ PAGE _29_

B.  Petitioner and Respondent hereby acknowledge, for himself/herself, and represents to the other for the other to rely upon in entering into this Marital Settlement Agreement, that he/she has had an opportunity to examine, and to the extent that he/she has desired he/she has examined, books, records, and accounts of the other, and of the entities in which he/she, or the other, own interests, or in which he/she has had (or should have had) any reason to think that the other may have owned an interest, and that the documents which he/she has examined reflect information relating to assets, liabilities, income and expenses of either Petitioner or Respondent and of said entities.

C.  Petitioner and Respondent hereby acknowledge for himself/herself, and represents to the other for the other to rely upon in entering into this Marital Settlement Agreement, that the opportunity to examine the aforementioned books and records, and the actual examination of the portions of such books and records that he/she has heretofore conducted, constituted satisfactory disclosure by Petitioner and Respondent, each to the other, of all assets and liabilities of any nature whatsoever in which Petitioner or Respondent, or both of them, directly or indirectly, had an interest, have an interest, and/or of the sources and amounts of their respective income of every type whatsoever, and of all other facts relating to assets, liabilities, income, community property and separate property.

D.  Each of the parties acknowledges, for himself/herself, and represents to the other for the other to

EXHIBIT _B_ PAGE _30_



rely upon in entering into this Marital Settlement Agreement, that (because of their determination as to how to proceed in this litigation, and after carefully considering the advice of his/her lawyer, and not because of the conduct, statements or representations of the other) further discovery proceeding (depositions, answers to written interrogatories, production of documents, etc.) have not occurred, that he/she has been advised by his/her lawyer, and understands, that he/she is entitled to further engage in such discovery proceedings, and that he/she waives and relinquishes the right to engage in any such further discovery.

     E.   Petitioner and Respondent, for himself/herself, represents to the other, for the other to rely upon in entering into this Marital Settlement Agreement, that he/she is not relying upon any representation made by the other party, or his or her representatives, except as expressly contained herein.

     F.   Each party, for himself/herself, represents to the other, for the other to rely upon in entering into this Marital Settlement Agreement, and acknowledges, that he/she is not relying upon any fiduciary obligation from one to the other which exists, or may have existed either during marriage, during the separation of the parties or during the negotiations for this Marital Settlement Agreement.  To the extent that any such fiduciary obligation existed, one party to the other, he/she does hereby specifically waive the obligation of the other, if

EXHIBIT _B_, PAGE _31_

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                    Page 22

any existed or exists, to do anything more or provide further information or documentation.

G.    Each party, for himself/herself, hereby represents to the other, for the other to rely upon in entering into th Marital Settlement Agreement, and acknowledges, that he/she has participated in the negotiations for, and the preparation of, this Marital Settlement Agreement, and that no provision of this Marital Settlement Agreement shall be construed against the other party by virtue of the activities of said party, or his or her attorney, in the preparation of this Marital Settlement Agreement.

## XVI.    COVENANTS AND WARRANTIES

A.    Each party hereby represents and warrants to the other that he/she owned or possessed, as of the date of the execution of this Marital Settlement Agreement, no property of any kind or nature whatsoever other than the property listed and described in this Marital Settlement Agreement and the Exhibits attached hereto.

B.    Each party hereby warrants and represents to the other that he/she has not heretofore assigned, transferred, conveyed, or encumbered any interest in the property set forth in **Exhibit "B"** to this Marital Settlement Agreement, or in the separate property of the other, except as expressly set forth in this Marital Settlement Agreement.

EXHIBIT _B_ , PAGE _32_

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330    REV. 120788.1427 mc
AK061781.311                                    Page 23

C.   If it shall be hereafter determined by a Court of competent jurisdiction that either party owns, or is now possessed of, any property not set forth herein, or has transferred any non-disclosed property without consideration (other than to the other party or to the parties' children) said party hereby covenants and agrees to pay to the other on demand, at the other's election, a sum equal to one-half (1/2) of the fair market value of such property or encumbrance (a) on the date of such transfer, assignment, or encumbrance, or (b) on the effective date of this Marital Settlement Agreement, or (c) at the time of the discovery of the interest in such property or encumbrance.

D.   Any property now owned by either party not specifically set forth in the Exhibits to this Marital Settlement Agreement, and disposed of by this Marital Settlement Agreement, shall belong to the parties as tenants-in-common, and the party holding such property shall hold a one-half (1/2) interest therein, including all rents, issues, profits and increases in value thereof, as trustee for the other.

E.   This Marital Settlement Agreement is not intended to impair the availability of any other remedy arising from the undisclosed ownership of any property not listed in the Exhibits attached hereto by either of the parties as might otherwise be provided by law except that the failure to disclose the existence of an asset, or assets, regardless of the value thereof, shall not be grounds to set aside, or to seek to set aside, this

EXHIBIT _B_, PAGE _33_



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                              Page 24

Marital Settlement Agreement, or any portion thereof, nor shall that be grounds to set aside or vacate, or to seek to set aside or vacate, the Judgment, or any portion of the Judgment, based upon the terms and provisions of this Marital Settlement Agreement.

F. Any property not disclosed in the Exhibits to this Marital Settlement Agreement shall be subject to the continuing jurisdiction of the Court in the Family Law action, and that Court shall be requested to specifically reserve jurisdiction over such non-disclosed property. Either party may, by notice of motion, request the Court in the Family Law action to resolve any disputes regarding any such property not listed, or referred to, in this Marital Settlement Agreement and the Exhibits attached hereto, including, but not limited to, valuing said property and disposing of said property. The reservation of jurisdiction over said omitted, non-disclosed or undisposed property shall, subject to the limitations hereinabove specifically set forth in <u>Subparagraph E</u>, be construed in the most broad and liberal manner possible.

**XVII.   CONSTRUCTION OF AGREEMENT**

This Marital Settlement Agreement is entered into in the State of California and shall be construed and interpreted under and in accordance with the laws of the State of California in existence, and as interpreted, on the effective date of this Marital Settlement Agreement.

EXHIBIT __B__, PAGE __34__



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                Page 25

Paragraph headings in this Marital Settlement Agreement are for convenience, are not a part of the agreement of the parties and shall not be used in the construction hereof.

## XVIII.    ATTORNEYS' FEES AND COSTS

A.    Except as hereinafter provided, each party shall pay his/her own unpaid attorneys' fees, accounting fees, appraisers' fees, court costs, and all other litigation expenses. Each party shall indemnify and hold the other harmless from any claim, demand or obligation incurred for attorneys' fees, accounting fees, appraisers' fees, court costs and litigation expenses.

B.    The provisions of this Section shall apply to all legal fees and costs, accounting fees, appraisers' fees and other litigation expenses incurred by each party through and including the date Judgment in the marital dissolution proceeding is entered, as well as including all matters relating to the drafting, execution, recording, etc., of the documents referred to in this Marital Settlement Agreement.

C.    In the event that either party shall hereafter employ counsel to enforce this Marital Settlement Agreement, or the documents referred to in this Marital Settlement Agreement, or to institute or defend against any legal proceeding relating to any provision of this Marital Settlement Agreement, or any provision of any of the documents referred to in this Marital Settlement Agreement, or to the Marital Settlement Agreement as



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330    REV. 120788.1427 mc
AK061781.311                          Page 26

EXHIBIT _B_, PAGE 36

a whole, or to the Judgment to be entered based upon the terms and provisions of this Marital Settlement Agreement, or any part of said Judgment, whether in the pending Family Law action or by separate suit or otherwise, the prevailing party shall be entitled to reasonable attorneys' fees and costs of litigation, to be fixed by any court of competent jurisdiction without traditional or statutory reference to the concepts of "need or ability".

XIX.   **EFFECTIVE DATE**

A.   The effective date of this Marital Settlement Agreement is June 30, 1988.

B.   Subject to the condition precedent contained in the Introduction to this Marital Settlement Agreement, this Marital Settlement Agreement shall be binding and enforceable as of the date it is executed by Petitioner and Respondent.

C.   The executory terms of this Marital Settlement Agreement shall be requested to be embodied in, and made a part of, the Judgment of the Family Law Court having jurisdiction of the parties and the dissolution of their marriage.

XX.   **JURISDICTION**

The Court in the pending Family Law action between the parties shall retain jurisdiction to enforce the provisions of this Marital Settlement Agreement, and the Judgment which may be entered pursuant to the terms hereof.

EXHIBIT  _B_  , PAGE  _36_



IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                              Page 27

IN WITNESS WHEREOF, the parties have signed and executed this Marital Settlement Agreement effective the day and year first above written.

DATED:  December 15, 1988.

_Karen Girardi_
KAREN GIRARDI
Petitioner

DATED:  December 14, 1988.

_____
THOMAS V. GIRARDI
Respondent

**APPROVED AS TO FORM AND CONTENT:**

I do hereby confirm that I have consulted with, and advised, my client with regard to the terms and provisions of this Marital Settlement Agreement and I believe that my client has voluntarily executed this Marital Settlement Agreement as an expression of her/his desire for settlement of her/his claims against the other. I believe that my client fully understands the terms and provisions of this Marital Settlement Agreement, including the provisions waiving further discovery and basic non-modifiability of family support for the first sixty (60) months, and the meaning and effect of a Judgment which may be entered pursuant to the terms and provisions of this Agreement.

LICHTIG, ELLIS & MEYBERG

BY: _____
GERALD E. LICHTIG
Attorneys for Petitioner,
KAREN GIRARDI

Dated:  December 15, 1988.

LAW OFFICES OF STEPHEN A. KOLODNY

BY: _____
STEPHEN A. KOLODNY
Attorneys for Respondent,
THOMAS V. GIRARDI

Dated:  December 28, 1988.

IN RE THE MARRIAGE OF GIRARDI
MARITAL SETTLEMENT AGREEMENT
Originally drafted 061688.1330   REV. 120788.1427 mc
AK061781.311                                    Page 28

EXHIBIT B , PAGE 37

# EXHIBIT "7"





Via E-Mail:  mabrams@enensteinlaw.com

October 13, 2020

Michael Abrams
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA 90025

**Re:    Karen Girardi**

Dear Michael:

In December, we will pay the $40,000 that is "owing" and $10,000 for November and
$10,000 for December.  We would like for you to request the payments be terminated.  I
am not financially able to pay this money any longer.  I borrowed the last year's monthly
payments.

With kind regards,

THOMAS V. GIRARDI

TVG:sf

**Shirleen Fujimoto**

| | |
|---|---|
| **From:** | Shirleen Fujimoto |
| **Sent:** | Tuesday, October 13, 2020 6:53 PM |
| **To:** | Michael Abrams (mabrams@enensteinlaw.com) |
| **Subject:** | Message from Tom Girardi re Karen Girardi |
| **Attachments:** | Letter to Michael Abrams re Karen Girardi.pdf |

# EXHIBIT "8"

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.3.3
### Eastern Division

Welly Chandra, et al.

                                      Plaintiff,

v.                                        Case No.:
                                         1:18−cv−07686
                                         Honorable Thomas M.
                                         Durkin

BOEING INTERNATIONAL SALES
CORPORATION, a Washington State Profit
Corporation, et al.

                                      Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, December 14, 2020:

        MINUTE entry before the Honorable Thomas M. Durkin: Minute entry [848] is amended as follows. The assets of Girardi Keese and Tom Girardi are now frozen until further order of the court. Mailed notice. (ecw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT "9"

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, address, and State Bar number)*:

After recording, return to:
Christopher Frost, Esq. (SBN 200336)
EISNER, LLP
9601 Wilshire Boulevard, 7th Floor
Los Angeles, California 90210

TEL NO.: 310/855-3200          FAX NO. *(optional)*:

E-MAIL ADDRESS *(Optional)*:

[X] ATTORNEY      [X] JUDGMENT      [ ] ASSIGNEE
    FOR              CREDITOR           OF RECORD

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles

STREET ADDRESS:  111 North Hill Street

MAILING ADDRESS:  111 North Hill Street

CITY AND ZIP CODE:  Los Angeles, California 90012

BRANCH NAME:  Central District - Stanley Mosk Courthouse

*FOR RECORDER'S OR SECRETARY OF STATE'S USE ONLY*

PLAINTIFF: LAW FINANCE GROUP, LLC

DEFENDANT: GIRARDI KEESE, ET AL.

CASE NUMBER:
19STCV01455

## ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT

[X] FULL      [ ] PARTIAL      [ ] MATURED INSTALLMENT

*FOR COURT USE ONLY*

1. Satisfaction of the judgment is acknowledged as follows:
   a. [X] Full satisfaction
      (1) [X] Judgment is satisfied in full.
      (2) [ ] The judgment creditor has accepted payment or performance
              other than that specified in the judgment in full satisfaction of the
              judgment.
   b. [ ] Partial satisfaction
           The amount received in partial
           satisfaction of the judgment is $
   c. [ ] Matured installment
           All matured installments under the installment judgment have been satisfied as of *(date)*:

2. Full name and address of judgment creditor:*
   Law Finance Group, LLC, 591 Redwood Highway, Suite 1200, Mill Valley, California 94941

3. Full name and address of assignee of record, if any:
   n/a

4. Full name and address of judgment debtor being fully or partially released:*
   Thomas V. Girardi, 1126 Wilshire Boulevard, Los Angeles, California 90017
   See Attachment A (Form MC-020) for additional Judgment Debtor information

5. a. Judgment entered on *(date)*:  July 30, 2019
   b. [ ] Renewal entered on *(date)*:

6. [X] An [X] abstract of judgment [ ] certified copy of the judgment has been recorded as follows *(complete all
       information for each county where recorded)*:

| COUNTY | DATE OF RECORDING | INSTRUMENT NUMBER |
|---|---|---|
| Los Angeles | August 8, 2019 | 20190793616 |
| Orange | August 8, 2019 | 2019000292297 |
| Ventura | August 8, 2019 | 20190808-00091309-0 |
| San Bernardino | August 9, 2019 | 2019-0270960 |

7. [X] A notice of judgment lien has been filed in the office of the Secretary of State as file number *(specify)*:
       19-7741202245

**NOTICE TO JUDGMENT DEBTOR:** If this is an acknowledgment of full satisfaction of judgment, it will have to be recorded in each
county shown in item 6 above, if any, in order to release the judgment lien, and will have to be filed in the office of the Secretary of
State to terminate any judgment lien on personal property.

Date:  November 26, 2019

▶

*(SIGNATURE OF JUDGMENT CREDITOR OR ASSIGNEE OF CREDITOR OR ATTORNEY*)*
Christopher Frost, Attorney for Judgment Creditor

*The names of the judgment creditor and judgment debtor must be stated as shown in any Abstract of Judgment which was recorded and is being released by this satisfaction. ** A separate notary
acknowledgment must be attached for each signature.

Form Approved for Optional Use
Judicial Council of California
EJ-100 [Rev. July 1, 2014]

**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT**

Page 1 of 1
Code of Civil Procedure, §§ 724.060,
724.120, 724.250

| SHORT TITLE: LAW FINANCE GROUP, LLC v. GIRARDI KEESE | CASE NUMBER: |
| | 19STCV01455 |

1  Attachment A to Form EJ100

2  4. Additional Judgment Debtor:

3  Girardi Keese, a California law firm, 1126 Wilshire Boulevard, Los Angeles, California 90017

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with the court.        Page 1 of 1

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]        **ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**        CRC 201, 501

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ *Los Angeles* _____ )

On _*November 26, 2019*_ before me, _*Karen R. Wilkes, Notary Public*_
(insert name and title of the officer)

personally appeared _*Christopher Frost*_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> KAREN R. WILKES
> Notary Public - California
> Los Angeles County
> Commission # 2297344
> My Comm. Expires Jul 16, 2023

Signature _____    (Seal)

# EXHIBIT "10"



Reproduced by California Family Law Report, Inc., 107 Caledonia, Suite E, Sausalito, CA 94965

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | | FOR RECORDER'S USE ONLY |
|---|---|---|
| [XX] Recording requested by and return to: | TELEPHONE NO.: 213-473-8899 | **89-1663121** |

[XX] Recording requested by and return to:
LICHTIG, ELLIS & MEYBERG
11111 Santa Monica Blvd., Suite 930
Los Angeles, California  90025

[XX] ATTORNEY FOR [XX] JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   LOS ANGELES
STREET ADDRESS:   111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE:   Los Angeles, California  90012
BRANCH NAME:   CENTRAL DISTRICT

PETITIONER/PLAINTIFF   KAREN GIRARDI

RESPONDENT/DEFENDANT   THOMAS V. GIRARDI

| **ABSTRACT OF SUPPORT JUDGMENT** | CASE NUMBER: D 102 485 |
|---|---|

FOR COURT USE ONLY

1. The [XX] judgment creditor [ ] assignee of record
   applies for an abstract of a support judgment and represents the following:
   a. Judgment debtor's

   Name and last known address
   Thomas V. Girardi
   1126 Wilshire Boulevard
   Los Angeles, California  90017

   RECORDED IN OFFICIAL RECORDS
   RECORDER'S OFFICE
   LOS ANGELES COUNTY
   CALIFORNIA
   31 MIN.
   PAST 11am   OCT 16  1989

   b. Driver's license No. and state:
   c. Social Security number: 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
   d. Birthdate:

   [XX] unknown
   [ ] unknown
   [XX] unknown

   FEE $11   C

Date:  September 20, 1989

GERALD E. LICHTIG
(TYPE OR PRINT NAME)

► _(signature)_
(SIGNATURE OF APPLICANT OR ATTORNEY)

2. I CERTIFY that the judgment entered in this action contains
   an order for payment of spousal, family, or child support.
3. Judgment creditor *(name):*
   Karen Girardi
   whose address appears on this form above the court's name.

4. [ ] The support is ordered to be paid to the following county
   officer *(name and address):*

5. Judgment debtor *(full name as it appears in judgment):*
   Thomas V. Girardi
6. a. A judgment was entered on *(date):* Sept. 8, 1989
   b. Renewal was entered on *(date):*
   c. Renewal was entered on *(date):*

7. [ ] An execution lien is endorsed on the judgment as follows:
   a. Amount: $
   b. In favor of *(name and address):*

8. A stay of enforcement has
   a. [XX] not been ordered by the court.
   b. [ ] been ordered by the court effective until
   *(date):*
9. [XX] This is an installment judgment.

FRANK S. ZOLIN, County Clerk

This abstract issued on
*(date):*   OCT 10 1989

Clerk, by _J. G. Cook_ , Deputy
J.P. Cook

[SEAL] SUPERIOR COURT LOS ANGELES CALIFORNIA

Form Adopted by Rule 1285.80
Judicial Council of California
1285.80 (Rev. July 1, 1989)

**ABSTRACT OF SUPPORT JUDGMENT**
(Family Law)

CCP 488.480, 674,
697.320, 700.190

**ABSTRACT OF SUPPORT JUDGMENT**




**This page is part of your document - DO NOT DISCARD**



## 20191149335



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/25/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |



**L E A D S H E E T**





201910250260053

**00017352369**



010234191

**SEQ:**
**05**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

20_4760383_1

E248971

RECORDING REQUEST
BY:    " SYNRGO "

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:    (Name and Address)

ALT FINANCIAL NETWORK, INC.
18022 COWAN, SUITE 245
IRVINE, CA 92614

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| GIRARDI | THOMAS | V. | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 100 LOS ALTOS DRIVE | PASADENA | CA  91105 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR ALT FINANCIAL NETWORK, INC., A CALIFORNIA CORPORATION | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 18022 COWAN, SUITE 245 | IRVINE | CA  92614 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

ALL ASSETS OF THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ALL OF THE COLLATERAL DESCRIBED ON EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF. and Exhibit "A"

Exempt from fee per GC
27388.1 (a) (1); fee cap of
$225 reached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions ) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box. | | | 6b. Check only if applicable and check only one box | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable):    ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## FINANCING STATEMENT; EXHIBIT "A"

Attached to that certain UCC-1 Financing Statement naming **GIRARDI, THOMAS V.** as "Debtor".

### LOCATION OF PERSONAL PROPERTY COLLATERAL
### LEGAL DESCRIPTION OF PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 21 AND 22 OF TRACT NO. 8702, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 118, PAGES 1 AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND THAT PORTION OF LOT 23 IN SAID TRACT NO. 8702, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 23; THENCE NORTHERLY ALONG THE CURVED WESTERLY LINE OF SAID LOT 23, A DISTANCE OF 26.54 FEET; THENCE NORTH 72° 48' 10" EAST 74.50 FEET TO A POINT IN THE SOUTHEASTERLY LINE OF SAID LOT 23 DISTANT THEREON NORTH 54° 44' 10" EAST 84.15 FEET FROM THE POINT OF BEGINNING; THENCE ALONG SAID SOUTHEASTERLY LINE SOUTH 54° 44' 10" WEST 84.15 FEET TO THE POINT OF BEGINNING.

APN: 5708-025-009, 5708-025-008

PROPERTY ADDRESS: 100 LOS ALTOS DRIVE, PASADENA, CA 91105

UCC1 Exhibits                                                                                           Page A-1

## FINANCING STATEMENT; EXHIBIT "B"

Attached to that certain UCC-1 Financing Statement naming **GIRARDI, THOMAS V.** as "Debtor".

All assets of the Debtor, including, without limitation, all of Debtor's present and future right, title and interest in and to all of the following:

(1)    All of the following which are used now or in the future in connection with the ownership, management or operation of the real property described in Exhibit "A" and/or the improvements on such real property (the "**Property**"): machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (any of the foregoing that are so attached to the Property as to constitute fixtures under applicable law are referred to below as the "**Fixtures**");

(2)    All furniture, furnishings, equipment, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software) and other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Property or are located on the Property, and any operating agreements relating to the Property, and any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Property and all other intangible property and rights relating to the operation of, or used in connection with, the Property, including all governmental permits relating to any activities on the Property (the "**Personalty**");

(3)    All current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Property, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(4)    All proceeds paid or to be paid by any insurer of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit "B";

(5)    All awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Property, the Fixtures, the Personalty or any other item listed in this Exhibit "B", including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit "B" under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(6)    All contracts, options and other agreements for the sale of the Property, the Fixtures, the Personalty or any other item listed in this Exhibit "B" entered into by Debtor now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(7)    All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Property, or any portion of the Property (including proprietary leases or occupancy agreements if Debtor is a cooperative housing corporation), and all modifications, extensions or renewals (the "Leases");

UCC1 Exhibits                                                                                                                    Page B-1

(8)      All earnings, royalties, accounts receivable (including accounts receivable for all rents, revenues and other income of the Property, including parking fees, charges for food, health care and other services), issues and profits from the Property, or any other item listed in this Exhibit "B", and all undisbursed proceeds of the loan secured by the security interests to which this financing statement relates and, if Debtor is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

(9)      All refunds (other than real property tax refunds applicable to periods before the real property tax year in which the loan secured by the security interests to which this financing statement relates was made) or rebates of (a) water and sewer charges, (b) premiums for fire and other hazard insurance, rent loss insurance and any other insurance required by Secured Party, (c) taxes, assessments, vault rentals, and (d) other charges or expenses required by Secured Party to protect the Property, to prevent the imposition of liens on the Property, or otherwise to protect Secured Party's interests by any municipal, state or federal authority or insurance company;

(10)     All tenant security deposits which have not been forfeited by any tenant under any Lease;

(11)     All funds on deposit pursuant to any separate agreement between Debtor and Secured Party for the purpose of establishing replacement reserves for the Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Property does not increase to a level specified in that agreement, or any other agreement or agreements between Debtor and Secured Party which provide for the establishment of any other fund, reserve or account;

(12)     All names under or by which the Property or any part of it may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Property or any part of it; and

(13)     All proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds.

UCC1 Exhibits                                                                                                         Page B-2

 

**This page is part of your document - DO NOT DISCARD**



**20201376401**



**Pages:**
**0021**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/02/20 AT 10:04AM**

| | |
|---|---:|
| FEES: | 86.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 86.00 |



**L E A D S H E E T**



**202011020190011**

**00019225465**



**011387732**

**SEQ:**
**01**

**DAR - Courier (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

*E492668*

Recording requested by

ALEX VILLANUEVA, SHERIFF

After recording mail to:
L.A. COUNTY SHERIFF
Court Services Division
Real Estate Section
110 N. Grand Ave. Rm 525
Los Angeles, CA 90012

# NOTICE OF ATTACHMENT

# WRIT OF ATTACHMENT

# RIGHT TO ATTACH ORDER

COVERSHEET RECORDING ATTACHMENT

```
| Attorney or Party without Attorney For Court Use Only |                          |
| DLA PIPER LLP (US)                                     |                          |
|                                                       |                          |
| 2000 AVENUE OF THE STARS STE 400                      |                          |
| LOS ANGELES, CA 90067                                 |                          |
| TEL: 310)-595-3133                                    |                          |
|                                                       |                          |
|-------------------------------------------------------|--------------------------|
| L.A SUPERIOR COURT STANLEY MOSK  19100                | LEVYING OFFICER:         |
| CENTRAL DISTRICT                                      | SHERIFF'S DEPARTMENT      |
| 111 N HILL ST.                                       | LOS ANGELES COUNTY        |
| LOS ANGELES, CA 90012                                | 110 N. GRAND AVE RM 525   |
|-------------------------------------------------------| LOS ANGELES, CA 90012     |
| Plaintiff: STILLWELL MADISON, LLC                    | TEL: (213)-972-3930       |
| Defendant: GIRARDI, THOMAS V.                        |                          |
|-------------------------------------------------------|--------------------------|
|       NOTICE OF ATTACHMENT    COURT CASE: 20STCV07853 S               |
|                            Levy.Ofcr.File.No: 3122010150475           |
```

TO THE PERSON NOTIFIED:

GIRARDI, THOMAS V.              DEFENDANT


1. Plaintiff in this action seeks to attach property in which defendant has
   an interest. The property is described in the accompanying Writ of
   Attachment and Order for Issuance of Writ of Attachment and as follows:
   SEE ATTACHED LEGAL DESCRIPTION
   APN: 5708-025-008; 5708-025-009


2. You are notified as
     ( X ) A defendant
     (   ) A person other than defendant

3. A notice was filed with the
   A.(   ) Secretary of State under CCP 488.405
   B.(   ) Department of Motor Vehicles under CCP 488.385
   C.(   ) Department of Housing and Community Development under CCP 488.385.

     (Read Information for Defendant or Information for Person Other than
     Defendant on following pages.)

3. A notice was filed with the
   A.(   ) Secretary of State.
   B.(   ) Department of Motor Vehicles.


================================================================================
Notice of Attachment was
(   ) Mailed   on: __/__/__   (   ) Delivered on: __/__/__
(   ) Posted   on: __/__/__   (   ) Filed    on: __/__/__
(   ) Recorded on: __/__/__

                                          Alex Villanueva, Sheriff
                        By: _____
                                                        Deputy

NOTICE OF ATTACHMENT (ATTACHMENT)

1. The levying officer may be required to take custody of property described in Item 1 in your possession or under your control. You have a right to be represented by an attorney in this lawsuit.

2. You may claim any available exemption for your property. An exemption for real property may be claimed any time before the entry of judgment. If the right to attach order or writ of attachment was issued without a noticed hearing and you wish to claim an exemption for personal property, you must do so within 30 days after the levying officer serves you with the Notice of Attachment describing the property. If you do not claim an exemption, you may lose it and the property is subject to attachment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.

3. Plaintiff has filed an undertaking. You have the right to object to the undertaking and may apply for an order to substitute an undertaking for your property which has been or is subject to being attached.

4. You have a duty to release tangible personal property to the levying officer. You have the rights and duties specified in CCP 448.395 if your farm products or inventory of a going business have been or are subject to attachment.

5. If the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.

6. You may apply for a release of the attachment to the extent that the value of your interest in the property exceeds the amount necessary to satisfy the attachment.

7. You may apply to the court for an order modifying or vacating any temporary protective order in the interests of justice or for an order terminating the same upon filing an undertaking.

8. If the writ of attachment has been issued against you as a nonresident, you may have the right to attach order set aside by filing a general appearance.

9. If the writ of attachment was issued on an ex parte application, you may apply for an order that the right to attach order be set aside, the writ quashed, and any property levied upon pursuant to the writ be released.

10. If you recover judgment against plaintiff, you may apply for a release of all property attached by plaintiff under the Writ of Attachment. If judgment is recovered against you and you appeal, you have the right to obtain the release of your property by filing a sufficient undertaking.

11. You may object to the amount sought to be secured by the attachment.

12. You may recover damages for wrongful attachment.

INFORMATION FOR PERSONS OTHER THAN DEFENDANT

1. If the property attached or sought to be attached is in your possession or
   under your control and you do not claim the right to possession or a
   security interest, you must deliver the property to the levying officer.
   If you do not deny an obligation levied upon or do not claim a priority
   over the plaintiff's lien, you must pay to the levying officer the amount
   that is due and payable and that becomes due and payable during the period
   of the attachment lien. You must execute and deliver any documents needed
   to transfer the property.

2. You must complete the accompanying Memorandum of Garnishee.

3. If you claim ownership or the right to possession of real or personal
   property levied upon or if you claim a security interest in or lien on
   personal property levied upon, you may make a third-party claim and obtain
   the release of the property pursuant to CCP 720.010 - 720.800.

4. If you have an interest in the property attached or sought to be attached
   and the property is perishable or will greatly deteriorate in value, or
   for other good reason, you may apply ex parte, or if the court or court
   rule requires, by noticed motion, for an order appointing a receiver or
   directing the levying officer to take any action necessary to preserve
   the value of the property, including selling the property. The court may
   order any receiver to be paid from the proceeds of the sale of your
   property.

5. Make checks payable to the levying officer.

**AT-135**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Andrew C. Whitman (SBN 312244)<br>2000 Avenue of the Stars Suite 400, North Tower<br>Los Angeles, California<br>90067-4704<br><br>TELEPHONE NO.: 310-595-3000    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: andrew.whitman@us.dlapiper.com<br>ATTORNEY FOR *(Name):* Stillwell Madison, LLC | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles - Central District
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Central / Stanley Mosk

PLAINTIFF: Stillwell Madison, LLC

DEFENDANT: Thomas V. Girardi

| WRIT OF ATTACHMENT<br>[x] AFTER HEARING     [ ] EX PARTE | CASE NUMBER:<br>20STCV07853 |
|---|---|

1. TO THE SHERIFF OR ANY MARSHAL OR CONSTABLE OF THE COUNTY OF: Los Angeles

2. TO ANY REGISTERED PROCESS SERVER: You are only authorized to serve this writ in accord with CCP 488.080.

3. This writ is to attach property of defendant *(name and last known address):* Thomas V. Girardi
   100 Los Altos Drive
   Pasadena, California
   91105

   and the attachment is to secure:  $ 5,847,411.54

4. Name and address of plaintiff: Stillwell Madison, LLC Attn: Libby Kopff
   36600 N. Pima Road, Suite 202B
   Carefree, Arizona 85377

5. YOU ARE DIRECTED TO ATTACH the following property or so much thereof as is clearly sufficient to satisfy the amount to be
   secured by the attachment *(describe property and state its location; itemize by letter):*

   [x] This information is on an attached sheet.

6. [x] An interest in the real property described in item 5 stands upon the records of the county, in the name of the following
   person other than the defendant:

   a. Name: See Attachment 2.

   b. Mailing address, if known, as shown by the records of the office of the county tax assessor *(specify):*
   See attachment 2.

7. [ ] The real property on which the
   [ ] crops described in item 5          are growing
   [ ] timber described in item 5          to be cut is standing stands upon the records of the county in the name of
   a. Name:
   b. Address:

[SEAL]

Sherri R. Carter Executive Officer / Clerk of Court

Date: __10/05/2020__     Clerk, by _____K. Encinas_____ , Deputy

Page 1 of 1

| Form Approved for Optional Use<br>Judicial Council of California<br>AT-135 [Rev. January 1, 2003] | **WRIT OF ATTACHMENT**<br>**(Attachment)** | Code of Civ. Proc., § 488.010 |
|---|---|---|

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Stillwell Madison, LLC v. Girardi Keese, et al. | 20STCV07853 |

**ATTACHMENT** *(Number):* 1

*(This Attachment may be used with any Judicial Council form.)*

Thomas Girardi Assets

Real Estate:
100 Los Altos Dr., Pasadena, CA 91105
1122 Wilshire Blvd., Los Angeles, CA 90017
1126 Wilshire Blvd., Los Angeles, CA 90017
1136 Wilshire Blvd., Los Angeles, CA 90017
1140 Wilshire Blvd., Los Angeles, CA 90017
PacTen, Temecula, CA
PGA West Property

Cash on Hand:
Girardi Keese - Comerica Account # XXXXXX6674
All receivables from Girardi Keese
Torrey Pines Bank - Account # XXXXXX6201
Torrey Pines Bank - Account # XXXXXX6171
Preferred Bank Account # XX5464
Preferred Bank Account # XX8953
City National Bank Account # XXXXXX3073
City National Bank Account # XXXXXX2709
City National Bank Account # XXXXXX4126
City National Bank - Account Number Unknown
Pacific Western Bank Account # XXXXXX9400

Tangible Assets:
1990 Gulfstream G-IV - N711GL
1999 Beechcraft King Air 300 - N350GL

Securities:
Stock in JP Morgan

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Stillwell Madison, LLC v. Girardi Keese, et al. | 20STCV07853 |

**ATTACHMENT** *(Number):* 2

*(This Attachment may be used with any Judicial Council form.)*

Responses to Question No. 6

Property: 1122 Wilshire Blvd., Los Angeles, CA, 90017-1904
Record Owners of Property:
- Lipscomb Family Trust
  Address: 24334 Long Valley Road, Hidden Hills, California 91302-1252.
- G&L Aviation
  Address: 1226 Wilshire Blvd., Los Angeles, California 90017-1904.

Property: 1126 Wilshire Blvd., Los Angeles, CA, 90017-1904
Record Owner of Property:
- 1126 Wilshire Partnership, a California General Partnership
  Address: 1126 Wilshire Blvd., Los Angeles, CA, 90017-1904

Property: 1136 Wilshire Blvd., Los Angeles, CA, 90017-1904
Record Owner of Property:
- Eleven Fifty Condos, LLC
  Address: 1126 Wilshire Blvd., Los Angeles, CA, 90017-1904. Attention: Thomas V. Girardi.

Property: 1140 Wilshire Blvd., Los Angeles, CA, 90017-1904
Record Owner of Property:
- Eleven Fifty Condos, LLC
  Address: 1126 Wilshire Blvd., Los Angeles, CA, 90017-1904. Attention: Thomas V. Girardi.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*

**AT-120**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: DLA Piper (US) LLP | FOR COURT USE ONLY |
|---|---|

Andrew C. Whitman (SBN 312244)
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4704
TELEPHONE NO.: 310-595-3000     FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*: andrew.whitman@us.dlapiper.com
ATTORNEY FOR *(Name)*: Stillwell Madison, LLC

**FILED**
Superior Court of California
County of Los Angeles

JUL 23 2020

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Jennifer De Luna

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles - Central District
STREET ADDRESS:  111 North Hill Street
MAILING ADDRESS:  111 North Hill Street
CITY AND ZIP CODE:  Los Angeles, California 90012
BRANCH NAME:  Central / Stanley Mosk

PLAINTIFF: Stillwell Madison, LLC

DEFENDANT: Thomas V. Girardi

[✔] **RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING**
[ ] **ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT AFTER HEARING**

CASE NUMBER:
20 STCV07853

1. a. The application of plaintiff *(name)*: Stillwell Madison, LLC
   for   [✔] a right to attach order and order for issuance of writ of attachment
         [ ] an order for issuance of additional writ of attachment
   against the property of defendant *(name)*: Thomas V. Girardi
   came on for hearing as follows:
   (1) Judge *(name)*: Hon. James C. Chalfant
   (2) Hearing date: July 14, 2020     Time: 1:30 PM   [✔] Dept.: 85   [ ] Div.:   [ ] Rm.:
   b. The following persons were present at the hearing:
   (1) [ ] Plaintiff *(name)*:                     (3) [✔] Plaintiff's attorney *(name)*: Andrew C. Whitman
   (2) [ ] Defendant *(name)*:                     (4) [✔] Defendant's attorney *(name)*: Philip A. Baker

2. THE COURT FINDS
   **FINDINGS**
   a. Defendant *(specify name)*: Thomas V. Girardi   is a  [✔] natural person  [ ] partnership
      [ ] unincorporated association  [ ] corporation  [ ] other *(specify)*:
   b. The claim upon which the application is based is one upon which an attachment may be issued.
   c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
   d. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
   e. The amount to be secured by the attachment is greater than zero.
   f. [✔] Defendant failed to prove that all the property described in plaintiff's application is exempt from attachment.
   g. [ ] The following property of defendant, described in plaintiff's application
      (1) [ ] is exempt from attachment *(specify)*:

      (2) [ ] is not exempt from attachment *(specify)*:

   h. [ ] The following property, not described in plaintiff's application, claimed by defendant to be exempt,
      (1) [ ] is exempt from attachment *(specify)*:

      (2) [ ] is not exempt from attachment *(specify)*:

   i. [✔] An undertaking in the amount of: $ 10,000   is required before a writ shall issue, and plaintiff
      [ ] has  [✔] has not   filed an undertaking in that amount.
   j. A Right to Attach Order was issued on *(date)*:  July 14, 2020                 pursuant to
      [✔] Code of Civil Procedure section 484.090 (on hearing)  [ ] Code of Civil Procedure section 485.220 (ex parte)
   k. [ ] other *(specify)*:

Page 1 of 2

**RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER
FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**
Code of Civil Proc., §§ 482.030, 484.090;
Welfare & Institutions Code, § 15657.01
www.courtinfo.ca.gov

| | AT-120 |
|---|---|
| SHORT TITLE:<br>— Stillwell Madison, LLC v. Girardi & Keese, et al. | CASE NUMBER:<br>20 STCV07853 |

## ORDER

**3. THE COURT ORDERS**

a. Plaintiff has a right to attach property of defendant *(name):*  Thomas V. Girardi
   in the amount of: $ 5,847,411.54

b. [ ]  The property described in items 2g(1) and 2h(1) of the findings is exempt and shall not be attached.

c. The clerk shall issue    [✔] a writ of attachment    [ ] an additional writ of attachment    in the amount stated in item 3a
   [ ] forthwith [✔] upon the filing of an undertaking in the amount of: $    10,000

   (1) [ ]  for any property of a defendant who is **not** a natural person for which a method of levy is provided.

   (2) [✔]  for the property of a defendant who is a natural person that is subject to attachment under Code of Civil
       Procedure section 487.010 described as follows *(specify):*

> The property described in the tentative ruling issued by the Hon. James C. Chalfant on July
> 13, 2020 and adopted without modification after a hearing in Stanley Mosk Department 85 on
> July 14, 2020.

   (3) [ ]  for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of sale
       of such property, described as follows *(specify):*

   (4) [ ]  for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license
       number is *(specify):*

d. [✔]  Defendant shall transfer to the levying officer possession of

   (1) [✔]  any documentary evidence in defendant's possession of title to any property described in item 3c;

   (2) [✔]  any documentary evidence in defendant's possession of debt owed to defendant described in item 3c;

   (3) [ ]  the following property in defendant's possession *(specify):*

---

**NOTICE TO DEFENDANT: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST
AND PUNISHMENT FOR CONTEMPT OF COURT.**

---

e. [ ]  Other *(specify):*

f. Total number of boxes checked in item 3:  ___6___

Date:  7/23/20

JUDICIAL OFFICER  JAMES C. CHALFANT

AT-120 [Rev. July 1, 2010]    **RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER FOR**    Page 2 of 2
**ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**

provided the home's location as 3433 Castleman Lane, Burbank. Gunn Decl. ¶3. The answer to the second question is no. The factual circumstances surrounding the incident consist of the report of suspicious circumstances, a dog entering the open front door of the house, and BPD entering the house and discovering a drug laboratory inside. Austin already has this general information about the incident and the Property. BPD's investigation revealed that neither the person inside the house nor the person subsequently arrested for operating the drug laboratory was the homeowner. Lanza Decl. ¶¶ 4–5; Gunn Decl. ¶3. The homeowner's identity is not relevant to the illegal drug laboratory and is not part of a general description of the property. BPD is not required to disclose the name of the homeowner pursuant to section 6254(f)(2)(A).

## F. Conclusion

The Petition is denied.[5] The City's counsel is ordered to prepare a proposed judgment, serve it by email and regular mail on Austin's counsel for approval as to form, wait ten days after service for any objections, meet and confer if there are objections, and then submit the proposed judgment along with a declaration stating the existence/non-existence of any unresolved objections. An OSC re: judgment is set for August 13, 2020 at 9:30 a.m.

---

[1] The City notes that it was erroneously sued and served as the Burbank Police BPD ("BPD").

[2] All further statutory references are to the Government Code unless expressly stated otherwise.

[3] Section 6254(f) does not involve a public interest balancing test, and the courts have consistently refused to apply additional criteria to CPRA exemptions that are not explicitly provided in the statute. *See* Williams, *supra*, (1993) 5 Cal.4th 337, 354 ("The Legislature has carefully limited the exemption for law enforcement investigatory records … It is not our task to rewrite the statute.").

[4] Austin has not alleged or established that he is a victim of an incident, an insurance carrier, or a person suffering bodily injury or property damage or loss as a result of an incident such that section 6254(f) would apply. Opp. at 11-12; Gunn Decl. ¶3; Lanza Decl. ¶¶ 4-5. Nor did Austin request the name of the arrestee or the information related to an arrest or arrestee under section 6254(f)(1). Opp. at 12-13.

[5] The parties discuss defense counsel's conduct and Austin's practice of filing many CPRA lawsuits. Pet. Op. Br. at 6-8; Opp. at 13-14; Reply at 4. These matters may be relevant to other CPRA cases filed by Austin, but not this one.

---

**Case Number:** 20STCV07853    **Hearing Date:** July 14, 2020    **Dept:** 85

Stillwell Madison, LLC v. Girardi & Keese, et al., 20STCV07853

Tentative decision on applications for right to attach orders: granted

Plaintiff Stillwell Madison, LLC ("Stillwell") seeks right to attach orders against Defendants Girardi & Keese, dba Girardi Keese ("Law Firm") and Thomas V. Girardi ("Girardi") in the amount of $5,929,237.76.

The court has read and considered the moving papers,[1] opposition,[2] and reply, and renders the following tentative decision.

## A. Statement of the Case

### 1. Complaint

Plaintiff Stillwell commenced this action on February 25, 2020, alleging a cause of action for pre-award writ of attachment. The Complaint alleges in pertinent part as follows.

On April 1, 2016, Defendants borrowed $5,110,440.38 ("Loan") from Stillwell pursuant to a written loan agreement ("Loan Agreement"). As a condition to Stillwell's consent to enter the Loan Agreement and fund the Loan, Girardi executed a declaration avowing that he personally shall owe the amount which will make Stillwell whole under the terms of the Loan Agreement, plus an amount for Stillwell's attorney fees and cost[s] to obtain a judgment, interest on all amounts due subsequent to judgment and liquidated damages as provided in the Loan Agreement (the "Personal Agreement").

Defendants defaulted on the Loan Agreement and Personal Agreement. On August 28, 2018, to forestall Stillwell from enforcing its rights under the Loan Agreement and Personal Agreement as a result of these defaults, Girardi proposed a forbearance whereby Defendants would make monthly payments on the Loan principal in the amount of $500,000.00, plus interest, starting on October 1, 2018, and would pay the Loan balance in full by September 2019.

Although Stillwell agreed to Defendants' proposed forbearance, Defendants' breached the forbearance when they failed to make the first monthly payment as promised. Despite repeated demand, Defendants have failed to cure their defaults or repay the outstanding Loan balance, which includes accrued interest, liquidated damages, attorneys' fees and costs, and other expenses owed under the Loan Agreement and Personal Agreement.

On May 24, 2019, Stillwell filed a complaint against Defendants in the United States District Court for the District of Arizona asserting claims for breach of contract and fraud arising from Defendants' acts and omissions in connection with the Loan Agreement, Personal Agreement, and forbearance ("Arizona Action").

On August 7, 2019, Defendants moved to compel arbitration of Stillwell's claims. On January 13, 2020, the court in the Arizona Action denied Defendants' motion to compel without prejudice. On January 24, 2020, Defendants filed a renewed motion to compel arbitration. Although Stillwell maintains its claims were properly brought in the District of Arizona, in the interest of preserving party and judicial resources, and to advance resolution of the ultimate issues, Stillwell consented to arbitration and requested a stay of the Arizona Action on February 6, 2020.

### 2. Course of Proceedings

According to proofs of service on file, Defendants were personally served with the Summons, Complaint, and moving papers on April 10, 2020.


## B. Applicable Law

### 1. Entity Defendants

Attachment is a prejudgment remedy providing for the seizure of one or more of the defendant's assets to aid in the collection of a money demand pending the outcome of the trial of the action. *See* Whitehouse v. Six Corporation, (1995) 40 Cal.App.4th 527, 533. In 1972, and in a 1977 comprehensive revision, the Legislature enacted attachment legislation (CCP §481.010 *et seq.*) that meets the due process requirements set forth in Randone v. Appellate Department, (1971) 5 Cal.3d 536. *See* Western Steel & Ship Repair v. RMI, (12986) 176 Cal.App.3d 1108, 1115. As the attachment statutes are purely the creation of the Legislature, they are strictly construed. Vershbow v. Reiner, (1991) 231 Cal.App.3d 879, 882.

A writ of attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500). CCP §483.010(a). A claim is "readily ascertainable" where the amount due may be clearly ascertained from the contract and calculated by evidence; the fact that damages are unliquidated is not determinative. CIT Group/Equipment Financing, Inc. v. Super DVD, Inc., (2004) 115 Cal.App.4th 537, 540-41 (attachment appropriate for claim based on rent calculation for lease of commercial equipment).

All property within California of a corporation, association, or partnership is subject to attachment if there is a method of levy for the property. CCP §487.010(a), (b). While a trustee is a natural person, a trust is not. Therefore, a trust's property is subject to attachment on the same basis as a corporation or partnership. Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson, *supra*, 197 Cal.App.3d at 4.

The plaintiff may apply for a right to attach order by noticing a hearing for the order and serving the defendant with summons and complaint, notice of the application, and supporting papers any time after filing the complaint. CCP §484.010. Notice of the application must be given pursuant to CCP section 1005, sixteen court days before the hearing. *See* ibid.

The notice of the application and the application may be made on Judicial Council forms (Optional Forms AT-105, 115). The application must be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based. CCP §484.030.

Where the defendant is a corporation, a general reference to "all corporate property which is subject to attachment pursuant to subdivision (a) of Code of Civil Procedure Section 487.010" is sufficient. CCP §484.020(e). Where the defendant is a partnership or other unincorporated association, a reference to "all property of the partnership or other unincorporated association which is subject to attachment pursuant to subdivision (b) of Code of Civil Procedure Section 487.010" is sufficient. CCP §484.020(e). A specific description of property is not required for corporations and partnerships as they generally have no exempt property. Bank of America v. Salinas Nissan, Inc., ("Bank of America") (1989) 207 Cal.App.3d 260, 268.

A defendant who opposes issuance of the order must file and serve a notice of opposition and supporting affidavit as required by CCP section 484.060 not later than five court days prior to the date set for hearing. CCP §484.050(e). The notice of opposition may be made on a Judicial Council form (Optional Form AT-155).

The plaintiff may file and serve a reply two court days prior to the date set for the hearing. CCP §484.060(c).

Order: 00357460                         Page 13 of 21                    Requested By: CIFIDNA3621, Printed: 8/3/2022 12:12 PM
Doc: CALOSA:2020 01376401

At the hearing, the court determines whether the plaintiff should receive a right to attach order and whether any property which the plaintiff seeks to attach is exempt from attachment. The defendant may appear the hearing. CCP §484.050(h). The court generally will evaluate the attachment application based solely on the pleadings and supporting affidavits without taking additional evidence. Bank of America, supra, 207 Cal.App.3d at 273. A verified complaint may be used in lieu of or in addition to an affidavit if it states evidentiary facts. CCP §482.040. The plaintiff has the burden of proof, and the court is not required to accept as true any affidavit even if it is undisputed. See Bank of America, supra, at 271, 273.

The court may issue a right to attach order (Optional Form AT-120) if the plaintiff shows all of the following: (1) the claim on which the attachment is based is one on which an attachment may be issued (CCP §484.090(a)(1)); (2) the plaintiff has established the probable validity of the claim (CCP §484.090(a)(2)); (3) attachment is sought for no purpose other than the recovery on the subject claim (CCP §484.090(a)(3); and (4) the amount to be secured by the attachment is greater than zero (CCP §484.090(a)(4)).

A claim has "probable validity" where it is more likely than not that the plaintiff will recover on that claim. CCP §481.190. In determining this issue, the court must consider the relative merits of the positions of the respective parties. Kemp Bros. Construction, Inc. v. Titan Electric Corp., (2007) 146 Cal.App.4th 1474, 1484. The court does not determine whether the claim is actually valid; that determination will be made at trial and is not affected by the decision on the application for the order. CCP §484.050(b).

The amount to be secured by the attachment is the sum of (1) the amount of the defendant's indebtedness claimed by the plaintiff, and (2) any additional amount included by the court for estimate of costs and any allowable attorneys' fees under CCP section 482.110. CCP §483.015(a); Goldstein v. Barak Construction, (2008) 164 Cal.App.4th 845, 852. This amount must be reduced by the sum of (1) the amount of indebtedness that the defendant has in a money judgment against plaintiff, (2) the amount claimed in a cross-complaint or affirmative defense and shown would be subject to attachment against the plaintiff, and (3) the value of any security interest held by the plaintiff in the defendant's property, together with the amount by which the acts of the plaintiff (or a prior holder of the security interest) have decreased that security interest's value. CCP §483.015(b). A defendant claiming that the amount to be secured should be reduced because of a cross-claim or affirmative defense must make a *prima facie* showing that the claim would result in an attachment against the plaintiff.

Before the issuance of a writ of attachment, the plaintiff is required to file an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action. CCP §489.210. The undertaking ordinarily is $10,000. CCP §489.220. If the defendant objects, the court may increase the amount of undertaking to the amount determined as the probable recovery for wrongful attachment. CCP §489.220. The court also has inherent authority to increase the amount of the undertaking *sua sponte*. North Hollywood Marble Co. v. Superior Court, (1984) 157 Cal.App.3d 683, 691.


## 2. Individual Defendant


In addition to the foregoing, if the action is against a defendant who is a natural person, an attachment may be issued only on a commercial claim which arises out of the defendant's conduct of a trade, business, or profession. CCP §483.010(c). Consumer transactions cannot form a basis for attachment. CCP §483.010(c); Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson, (1987) 197 Cal.App.3d 1, 4 (action involving trust property was a commercial, not a consumer, transaction).

Where the defendant is a natural person, the description of the property must be reasonably adequate to permit the defendant to identify the specific property sought to be attached. CCP §484.020(e). Although the property must be specifically described, the plaintiff may target for attachment everything the individual defendant owns. Bank of America v. Salinas Nissan, Inc., (1989) 207 Cal.App.3d 260, 268.

## C. **Statement of Facts**

### 1. **Plaintiff's Evidence**

On April 1, 2016, Defendants borrowed $5,110,440.38 from Stillwell for the purported purpose of funding the Law Firm's operations. The terms of the Loan were memorialized in the Loan Agreement signed by Girardi. Holland Decl. ¶2, Ex. 1. As consideration for the Loan, the Law Firm and Girardi assigned Stillwell the future proceeds of the Law Firm's cases (the "Client Portfolio"). Holland Decl. ¶3, Ex. 1 at SM[3] 6, 24-73. The Law Firm and Girardi acknowledged that the Loan was an advance on the proceeds which the Law Firm anticipated receiving in connection with the Client Portfolio. Holland Decl. ¶3, Ex. 1 at SM 6. The Law Firm and Girardi also granted Stillwell a security interest in the Law Firm's general intangibles, including all payment intangibles arising from the Client Portfolio. Holland Decl. ¶3 at SM 6.

The Loan Agreement required Defendants to disclose any pre-existing interests in the Client Portfolio ("List of Secured Interests"). Holland Decl. ¶4, Ex. 1 at SM 74. Among the creditors identified on the List of Secured Interests was third-party Law Finance Group ("LFG"). Holland Decl. ¶4, Ex. 1 at SM 74.

The Loan Agreement further required Defendants to provide written notice within five business days if: (1) any creditor agreements identified in the List of Secured Interests is changed or modified; (2) the Law Firm did not pay any amount due under those agreements; or (3) the Law Firm committed an act that is a default under any of those agreements. Holland Decl. ¶5, Ex. 1 at SM 7-8. In addition, Defendants agreed to provide certain financial statements and reports detailing the status of the cases in the Client Portfolio. Holland Decl. ¶6 at SM 8-9.

As a condition to Stillwell's consent to enter the Loan Agreement, Girardi executed the Personal Agreement, making himself personally obligated to pay the amounts owed to Stillwell under the Loan Agreement. Holland Decl. ¶7, Ex. 1 at SM 88.

After the Loan funded, Stillwell contends on upon information and belief that the Law Firm received proceeds from certain cases in the Client Portfolio, but Defendants failed to remit payment to Stillwell. Holland Decl. ¶8, Ex. 1 at SM 6.

To forestall Stillwell from enforcing its rights under the Loan Agreement as a result of these defaults, Girardi sought a forbearance. Specifically, on August 28, 2018, Girardi proposed that he and the Law Firm would make monthly payments on the Loan principal in the amount of $500,000 plus interest, starting on October 1, 2018, and would pay the Loan balance in full by September 2019. Holland Decl. ¶9, Ex. 2. On August 30, 2018, Stillwell agreed to accommodate Girardi's request. Holland Decl. ¶10, Ex. 3.

Unbeknownst to Stillwell at the time, Girardi and his Law Firm had defaulted on a multi-million-dollar loan from LFG and reached a similar forbearance agreement just weeks before. Girardi and his Law Firm breached the forbearance agreement with LFG, causing LFG to file suit against Girardi and the Law Firm. Holland Decl. ¶11, Ex. 4. Defendants never provided Stillwell notice of these defaults. Holland Decl. ¶11.

On October 1, 2018, Defendants failed to make the $500,000 payment to Stillwell as promised, resulting in another default. Holland Decl. ¶12. Although Girardi made a $500,000 payment to Stillwell in December 2018, and a second payment of $250,000 in January 2019, Defendants have not made any payments to Stillwell since. Holland Decl. ¶13. To date, Defendants remain in default. Holland Decl. ¶14.

The current outstanding principal balance owed under the Loan Agreement as of February 21, 2020 is at least $3,454,804.02, plus at least $1,226,372.26 in accrued interest, which has continued to accrue at a rate of 2.0% per month per the terms of the Loan Agreement. Holland Decl. ¶15.

Additionally, per the terms of the Loan Agreement, Stillwell is entitled to liquidated damages in the amount of 20% of the amounts due under Schedule A to the Loan Agreement. Holland Decl. ¶16, Ex. 1 at SM at 12, 17. As of the date of this declaration, the amount of liquidated damages is at least $936,235.26 and continues to accrue. Holland Decl. ¶16.

Stillwell is entitled to recover all attorneys' fees, costs, and expenses to enforce the Loan Agreement and collect the amounts due. Holland Decl. ¶17, Ex. 1 at SM 12, 17. To date, Stillwell has incurred at least $230,000 in attorneys' fees, costs, and expenses in connection with Stillwell's attempts to obtain repayment of the Loan, which includes an unsuccessful mediation. Holland Decl. ¶17.

In total, the amount currently due under the Loan Agreement is at least $5,847,411.54—an amount that increases as the Loan remains unpaid and Stillwell is forced to continue enforcement efforts. Holland Decl. ¶18.

Defendants have defaulted on their obligations under agreements with other third parties. Law Finance Group ("LFG") filed suit against Defendants in Los Angeles Superior Court for defaulting on a multi-million-dollar litigation funding loan, resulting in a settlement agreement that provided for a repayment plan and stipulated judgment in the event of default. Whitman Decl. ¶2, Ex. 2. Thereafter, Defendants defaulted on the settlement agreement, and LFG filed and executed on the default judgment. Whitman Decl. ¶2.

Defendants were sued by class action administrator, KCC Class Action Services, LLC ("KCC"), which administered mass tort cases handled by the Firm from 2013 to 2019. Whitman Decl. ¶3, Ex. 3. The Firm allegedly failed to pay the fees owed to KCC totaling over $12 million, which Girardi personally guaranteed. Whitman Decl. ¶3, Ex. 3.

On July 18, 2019, Girardi sent a letter to Stillwell's counsel acknowledging that the note was due, and that Defendants had defaulted on its loan with LFG. Whitman Decl. ¶6, Ex. 4. In December 2019, the parties participated in a mediation, which was unsuccessful. Whitman Decl. ¶7.

## 2. Reply Evidence

On May 12, 2020, Girardi was sued a third time (separate from the dispute with Stillwell) by third party GS1 Group, Inc. ("GS1") for allegedly failing to pay for armed guard services as promised, in GS1, Inc. v. Thomas V. Girardi, Case No. 20GDCV00488 ("GS1 Action"). Whitman MTD Decl[4]. ¶4, Ex. 2. The GS1 and KCC actions remain pending in Los Angeles County Superior Court. Whitman MTD Decl. ¶5.

As of the date of the parties' preliminary arbitration conference held on June 30, 2020, Defendants had not paid their share of the JAMS arbitration fees, despite repeated requests from JAMS. Whitman MTD Decl. ¶6, Ex. 3. Stillwell advanced the JAMS fees on Defendants' behalf in order for JAMS to even set the preliminary arbitration conference. Stillwell has reserved the right to recover the fees advanced as part of a future arbitration award. Whitman MTD Decl. ¶7.

## D. Analysis

Plaintiff Stillwell seeks right to attach orders against Defendants Firm and Girardi in the amount of $5,929,237.76.[5] Defendants oppose.

## 1. Right to Attach

### a. The Claim Is Based on a Contract

Stillwell's claim is based on the Loan Agreement, which memorializes the Loan between the parties whereby Stillwell agreed to loan $5,110,440.38 to the Law Firm for the purported purpose of funding its operations. Holland Decl. Ex. 1. Stillwell's claim is also based on the Personal Agreement, whereby Girardi agreed he is personally obligated to pay the amounts owed to Stillwell under the Loan Agreement. Holland Decl. ¶7, Ex. 1 at SM 88.

Stillwell's claim is based on a contract.

### b. **The Amount Due is Fixed and Readily Ascertainable**

A claim is "readily ascertainable" where the amount due may be clearly ascertained from the contract and calculated by evidence. CIT Group/Equipment Financing, Inc. v. Super DVD, Inc., *supra*, 115 Cal.App.4th at 540-41.

Stillwell provides the Loan Agreement, containing the terms of payment, and asserts that the amount due, owing, and unpaid under the Loan Agreement is $5,847,411.54, which includes interest, liquidated damages, and fees and costs. Holland Decl. ¶18; Ex. 1. Stillwell fails to provide any documentary evidence or calculations of the amount it alleges is due. A recitation of conclusions without a foundation of evidentiary facts is insufficient. *See* Rodes v. Shannon, (1961) 194 Cal.App.2d 743, 749 (declaration containing conclusions inadequate for summary judgment); Schessler v. Keck, (1956) 138 Cal.App.2d 663, 669 (same). Despite this fact, Defendants do not dispute the calculations of the $5,847,411.54 amount due.

Stillwell inconsistently alleges that it has incurred at least $230,000 in attorneys' fees and costs in connection with enforcement of the Loan Agreement (Holland Decl. ¶17), and that it has incurred $311,826.22 in such fees and costs, including an estimated $45,000 associated with filing the application. Whitman Decl. ¶12, 13. Assuming that the $45,000 has not yet been incurred, Stillwell's incurred fees and costs are either $230,000 or $266,826.22 ($311,826.22 - $45,000). The court will use the lower number.[6]

The total amount due is $5,847,411.54: $3,454,804.02 (principal), $1,226,372.26 (interest), $936,235.26 (liquidated damages), and $230,000 (incurred attorneys' fees and costs). This amount is may be clearly ascertained and calculated by evidence.

### c. **Probability of Success**

Stillwell has shown a probability of success on its claim for breach of contract because it has provided evidence that Defendants signed and entered into the Loan Agreement and Personal Agreement and failed to make the required loan payments after defaulting. Holland Decl. ¶¶ 8-14.

### d. **Attachment Is Based on a Commercial Claim**

If the action is against a defendant who is a natural person, an attachment may be issued only on a commercial claim which arises out of the defendant's conduct of a trade, business, or profession. CCP §483.010(c). Consumer transactions cannot form a basis for attachment. CCP §483.010(c); Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson, (1987) 197 Cal.App.3d 1, 4 (action involving trust property was a commercial, not a consumer, transaction).

It is undisputed that Defendants entered into the Loan Agreement, and Girardi entered into the Personal Agreement, for the purpose of funding the Firm's operations, which is a commercial matter. Holland Decl. ¶2.

The claim against Girardi is commercial in nature.

### e. **Defendant's Property Is Adequately Described**

Where the defendant is a natural person, the description of the property must be reasonably adequate to permit the defendant to identify the specific property sought to be attached. CCP §484.020(e). Although the property must be specifically described, the plaintiff may target for attachment everything the individual defendant owns. Bank of America v. Salinas Nissan, Inc., (1989) 207 Cal.App.3d 260, 268.

Stillwell's application contains a description of the property to be attached as follows:

Interests in real estate: 100 Los Altos Dr., Pasadena, CA 91105; 1122 Wilshire Blvd., Los Angeles, CA 90017; 1126 Wilshire Blvd., Los Angeles, CA 90017; 1136 Wilshire Blvd., Los Angeles, CA 90017; 1140 Wilshire Blvd., Los Angeles, CA 90017; PacTen, Temecula, CA; PGA West Property.

Cash on hand: the Firm - Comerica Account # XXXXXX6674; All receivables from the Firm: Torrey Pines Bank - Account #XXXXXX6201; Torrey Pines Bank - Account #XXXXXX6171; Preferred Bank Account #XX5464; Preferred Bank Account #XX8953; City National Bank Account #XXXXXX3073; City National Bank Account #XXXXXX2709; City National Bank Account #XXXXXX4126; City National Bank - Account Number Unknown; Pacific Western Bank Account #XXXXXX9400.

Tangible assets: 1990 Gulfstream G-IV - N711GL; 1999 Beechcraft King Air 300 - N350GL.

Securities: Stock in JP Morgan.

Other than the City National Bank Account lacking an account number, the property to be attached is adequately described.

-

### 2. **CCP Section 1281.8**

CCP section 1281.8(b) ("section 1281.8") provides that a party to an arbitration agreement may apply to the court for provisional relief in connection with an arbitrable controversy, but only upon the ground that the award may be rendered ineffectual without provisional relief. The requirements of CCP section 1281.8 are in addition to the other elements of proof for provisioinal relief. See Woolley v. Embassy Suites, Inc., (1991) 227 Cal.App.3d 1520, 1529 (applying section 1281.8 to preliminary injunction). The "ineffectual" element exists to ensure that the court does not invade the province of the arbitrator; the court is empowered to grant relief only where the arbitrator's award may be inadequate to make the moving party whole. California Retail Portfolio Fund GMBH & Co. v. Hopkins Real Estate Group, (2011) 193 Cal.App.4th 849, 856 (citing Woolley). In the context of attachment, the irreparable harm requirement for ex parte attachment provides guidance on the issue of, and is similar to, ineffectual relief under section 1281.8. Id. at 859. This includes both insolvency and the inability to otherwise pay damages that might be awarded in the arbitration. Ibid.

Defendants do not dispute that Stillwell has met the requirements for a writ of attachment. They argue that Stillwell waived its rights to remedies in the Loan Agreement pursuant to an arbitration clause.[7] Defendants note that Paragraph 15(a) of the Loan Agreement states that all disputed claims relating to the Loan Agreement shall be exclusively settled by binding arbitration in Phoenix, Arizona and that the parties expressly waive their right to seek remedies in court. Holland Decl. Ex. 1 at SM 12. According to Defendants, Stillwell's application seeks recovery pursuant to the Loan Agreement arising from a purported breach and is a disputed claim relating to the Loan Agreement under Paragraph 15(a). Opp. at 2-3.

This argument fails. Although Stillwell initially filed suit in federal court, it eventually consented to arbitration. The parties are currently in arbitration and Stillwell seeks a right to attach order under section

Order: 00357460                                    Page 18 of 21                    Requested By: CIFIDNA3621, Printed: 8/3/2022 12:12 PM
Doc: CALOSA:2020 01376401

1281.8(b). Stillwell does not seek to litigate the breach of contract claim in court; it only seeks a provisional remedy of attachment during the pendency of arbitration.

As Stillwell correctly notes (Reply at 6), nothing in the parties' Loan Agreement waives Stillwell's right to seek court-ordered provisional relief during arbitration. While Paragraph 15(a) and (g) state that the parties waive their right to seek remedies in court, the language is part of an arbitration clause whereby the parties agree to arbitrate their disputes. Nothing in Paragraph 15(a) and (g) precludes statutory special proceedings in court, and in fact the paragraph specifically provides for a special proceeding to compel arbitration. Viewed as a whole, Paragraph 15(a) provides for arbitration of the parties' disputes with a waiver of court remedies for their claims, but it does not forego court-ordered provisional remedies during the arbitration process. California public policy requires clearer language if CCP section 1281.8 provisional remedies are to be waived.

Stillwell presents evidence, which Defendants fail to refute, that the award may be ineffectual if a right to attach order is not granted because Defendants have recently been the subject of multiple lawsuits resulting from their failure to pay existing debts. Reply at 7-8.

In addition to defaulting on the Loan Agreement and subsequent forbearance, Defendants have failed to pay the $5,000 required JAMS retainer in this case, requiring Stillwell to advance fees on Defendants' behalf to set an initial arbitration management conference. Whitman MTD Decl. ¶¶ 6-8, Ex. 3.

Girardi and the Law Firm defaulted on a multi-million-dollar loan from LFG, reached a forbearance agreement, breached the forbearance agreement, LFG filed suit, the parties reached a settlement, and Defendants defaulted on the settlement. Holland Decl. ¶11, Ex. 4; Whitman Decl. ¶2, Ex. 2.[8]

Defendants also have been sued by a class action administrator, KCC, which administered class action torts handled by the Law Firm until 2019. The Law Firm and Girardi failed to pay KCC fees totaling over $12 million. The parties conditionally settled in July 2019. Whitman Decl. Ex. 3.

On May 12, 2020, Girardi was named as a defendant in the GS1 Action which alleges that he failed to pay his debts. Whitman MTD Decl. Ex. 2.

The existence of these other lawsuits against Defendants and their failure to pay the JAMS fee is sufficient to establish that they are insolvent "in the sense that they are generally not paying their debts as they become due." CCP §485.010(b)(2). Defendants provide no evidence that these other lawsuits are debts that are subject to *bona fide* dispute. Id. In any event, Stillwell's section 1281.8 burden is only to show that an arbitration award "may" be ineffectual, and the irreparable harm requirement for *ex parte* attachment is only guidance on the issue of ineffectual relief. *See* California Retail Portfolio Fund GMBH & Co. v. Hopkins Real Estate Group, *supra*, 193 Cal.App.4th at 856. Stillwell has shown that an arbitration award may be ineffectual if a right to attach order is not issued.[9]


## E. Conclusion

The application for a right to attach orders against Defendants is granted. Stillwell has not filed proposed right to attach orders and is ordered to do so in the next two court days or they will be deemed waived. No writ of attachment shall issue against any Defendant until Stillwell posts a $10,000 undertaking against that Defendant.

---

[1] Stillwell improperly provided a trial notebook on double-sided paper in violation of CRC 2.102. There is a reason for the rule – double-sided paper is difficult for the court to make notes on legibly -- and Plaintiff's counsel is admonished not to do so in future filings or lodgings.

7/13/2020   www.lacourt.org/tentativeRulingNet/ui/ResultPopup.aspx

[2] Defendants failed to lodge a courtesy copy of their opposition brief in violation of the Presiding Judge's General Order Re: Mandatory Electronic Filing. Their counsel is admonished to provide courtesy copies in all future filings.

[3] Citations are to the Bates-stamped pages in Stillwell's application.

[4] In support of its reply, Stillwell cites to the Whitman declaration filed in support of Stillwell's opposition to Defendants' Motion to Dismiss.

[5] Stillwell's Judicial Council forms improperly list both Defendants in the "Defendant" field. A separate application is required for each Defendant.

[6] Defendants argue that the fees incurred are not reasonable because Stillwell was litigating in the wrong forum. Opp. at 6. This argument must be presented at trial.

[7] Defendants filed a Motion to Dismiss and Compel Arbitration on May 18, 2020, which is set to be heard in Department 12 on July 17, 2020.

[8] Defendants claim without evidence that their dispute with LFG has been completely resolved. Opp. at 6.

[9] While Paragraph 15(e) of the Loan Agreement expressly provides that Arizona substantive law shall apply to the parties' disputes (Ex. 1, SM 13), the court need not determine whether court-ordered provisional remedies during arbitration of the parties' disputes is substantive, not procedural, in nature such that Arizona provisional remedies law would apply. Defendants do suggest that Arizona law applies to the Loan Agreement, but they provide no conflict of laws analysis of provisional remedies. Therefore, the issue is waived. *See* Opp. at 4.

Order: 00357460                                           Page 20 of 21                        Requested By: CIFIDNA3621, Printed: 8/3/2022 12:12 PM
Doc: CALOSA:2020 01376401

## LEGAL DESCRIPTION

*City of Pasadena, Los Angeles County, California.*
Lots 21 and 22 of Tract No. 8702, as per Map recorded in Book 118, Pages 1 and 2 of Maps, in the Office of the County Recorder of said County, and that portion of Lot 23 in said Tract No. 8702, described as follows:
Beginning at the most southerly corner of said Lot 23; then northerly along the curved westerly line of said Lot 23, a distance of 26.54 feet; thence North 72 degrees 48 minutes 10 seconds East 74.50 feet to a point in the Southeasterly line of said Lot 23 distant thereon North 54 degrees 44 minutes 10 seconds East 84.15 feet from the point of beginning; thence along said southeasterly line South 54 degrees 44 minutes 10 seconds West 84.15 feet to the point of beginning.

APN: 5708-025-009
APN: 5708-025-008




**This page is part of your document - DO NOT DISCARD**



## 20201512666



**Pages:
0012**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/24/20 AT 09:48AM**

| | |
|---|---|
| FEES: | 59.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 59.00 |



**L E A D S H E E T**





202011240990026

**00019384398**



011479843

**SEQ:
01**

**DAR - Courier (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

E492668

Recording requested by

ALEX VILLANUEVA, SHERIFF

After recording mail to:
L.A. COUNTY SHERIFF
Court Services Division
Real Estate Section
110 N. Grand Ave. Rm 525
Los Angeles, CA 90012

# NOTICE OF ATTACHMENT

# WRIT OF ATTACHMENT

# RIGHT TO ATTACH ORDER

COVERSHEET RECORDING ATTACHMENT

```
| Attorney or Party without Attorney For Recorder's Use Only  |
| VEDDER PRICE(CA), LLP                                        |
|                                                             |
| 1925 CENTURY PARK EAST, STE 1900                            |
| LOS ANGELES, CA 90067                                       |
| TEL: 424)-204-7734                                          |
|                                                             |
|                                                             |
```

```
| L.A SUPERIOR COURT STANLEY MOSK  19100 | LEVYING OFFICER:              |
| CENTRAL DISTRICT                        | SHERIFF'S DEPARTMENT          |
| 111 N HILL ST.                          | LOS ANGELES COUNTY            |
| LOS ANGELES, CA 90012                   | 110 N. GRAND AVE RM 525       |
|                                         | LOS ANGELES, CA 90012         |
| Plaintiff: KCC CLASS ACTION SERVICES    | TEL: (213)-972-3930           |
| Defendant: GIRARDI, THOMAS V.           |                               |
```

```
|    NOTICE OF ATTACHMENT    COURT CASE: 19STCV38587 R        |
|                           Levy.Ofcr.File.No: 3122011020157  |
```

TO THE PERSON NOTIFIED: .

GIRARDI, THOMAS V.              DEFENDANT


1. Plaintiff in this action seeks to attach property in which defendant has
   an interest. The property is described in the accompanying Writ of
   Attachment and Order for Issuance of Writ of Attachment and as follows:
   SEE ATTACHED LEGAL DESCRIPTION
   APN: 5708-025-009; 5708-025-008 .



2. You are notified as
   ( X ) A defendant
   (   ) A person other than defendant

3. A notice was filed with the
   A.(   ) Secretary of State under CCP 488.405
   B.(   ) Department of Motor Vehicles under CCP 488.385
   C.(   ) Department of Housing and Community Development under CCP 488.385.

   (Read Information for Defendant or Information for Person Other than
   Defendant on following pages.)

3. A notice was filed with the
   A.(   ) Secretary of State.
   B.(   ) Department of Motor Vehicles.

=======================================================================
Notice of Attachment was
(   ) Mailed   on: __/__/__    (   ) Delivered on: __/__/__
(   ) Posted   on: __/__/__    (   ) Filed     on: __/__/__
(   ) Recorded on: __/__/__

                                        Alex Villanueva, Sheriff

                          By: _____
                                                    Deputy

NOTICE OF ATTACHMENT (ATTACHMENT)

1. The levying officer may be required to take custody of property described in Item 1 in your possession or under your control. You have a right to be represented by an attorney in this lawsuit.

2. You may claim any available exemption for your property. An exemption for real property may be claimed any time before the entry of judgment. If the right to attach order or writ of attachment was issued without a noticed hearing and you wish to claim an exemption for personal property, you must do so within 30 days after the levying officer serves you with the Notice of Attachment describing the property. If you do not claim an exemption, you may lose it and the property is subject to attachment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.

3. Plaintiff has filed an undertaking. You have the right to object to the undertaking and may apply for an order to substitute an undertaking for your property which has been or is subject to being attached.

4. You have a duty to release tangible personal property to the levying officer. You have the rights and duties specified in CCP 448.395 if your farm products or inventory of a going business have been or are subject to attachment.

5. If the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.

6. You may apply for a release of the attachment to the extent that the value of your interest in the property exceeds the amount necessary to satisfy the attachment.

7. You may apply to the court for an order modifying or vacating any temporary protective order in the interests of justice or for an order terminating the same upon filing an undertaking.

8. If the writ of attachment has been issued against you as a nonresident, you may have the right to attach order set aside by filing a general appearance.

9. If the writ of attachment was issued on an ex parte application, you may apply for an order that the right to attach order be set aside, the writ quashed, and any property levied upon pursuant to the writ be released.

10. If you recover judgment against plaintiff, you may apply for a release of all property attached by plaintiff under the Writ of Attachment. If judgment is recovered against you and you appeal, you have the right to obtain the release of your property by filing a sufficient undertaking.

11. You may object to the amount sought to be secured by the attachment.

12. You may recover damages for wrongful attachment.

1.  If the property attached or sought to be attached is in your possession or
    under your control and you do not claim the right to possession or a
    security interest, you must deliver the property to the levying officer.
    If you do not deny an obligation levied upon or do not claim a priority
    over the plaintiff's lien, you must pay to the levying officer the amount
    that is due and payable and that becomes due and payable during the period
    of the attachment lien. You must execute and deliver any documents needed
    to transfer the property.

2.  You must complete the accompanying Memorandum of Garnishee.

3.  If you claim ownership or the right to possession of real or personal
    property levied upon or if you claim a security interest in or lien on
    personal property levied upon, you may make a third-party claim and obtain
    the release of the property pursuant to CCP 720.010 - 720.800.

4.  If you have an interest in the property attached or sought to be attached
    and the property is perishable or will greatly deteriorate in value, or
    for other good reason, you may apply ex parte, or if the court or court
    rule requires, by noticed motion, for an order appointing a receiver or
    directing the levying officer to take any action necessary to preserve
    the value of the property, including selling the property. The court may
    order any receiver to be paid from the proceeds of the sale of your
    property.

5.  Make checks payable to the levying officer.

AT-135

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Michael J. Quinn (SB# 198349)<br>Vedder Price (CA), LLP<br>1925 Century Park East, Suite 1900<br>Los Angeles, CA 90067 | *FOR COURT USE ONLY*<br>L.A. COUNTY SHERIFF<br>CIVIL MGMT. BUREAU<br>LOS ANGELES OFFICE<br>2020 OCT 22 AM 9:09 |
|---|---|

TELEPHONE NO.: (424) 204-7700    FAX NO. *(Optional)*: (424) 204-7702
E-MAIL ADDRESS *(Optional)*: mquinn@vedderprice.com
ATTORNEY FOR *(Name)*: Plaintiff KCC Class Action Services, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF: KCC Class Action Services, LLC

DEFENDANT: Thomas V. Girardi

| WRIT OF ATTACHMENT<br>[X] AFTER HEARING    [ ] EX PARTE | CASE NUMBER:<br>19STCV38587 |
|---|---|

Electronically Received 10/05/2020 05:41 PM

1. TO THE SHERIFF OR ANY MARSHAL OR CONSTABLE OF THE COUNTY OF: Los Angeles

2. TO ANY REGISTERED PROCESS SERVER: You are only authorized to serve this writ in accord with CCP 488.080.

3. This writ is to attach property of defendant *(name and last known address)*: Thomas V. Girardi
   100 Los Altos Drive
   Pasadena, CA 91105

   and the attachment is to secure: $ 7,502,000

4. Name and address of plaintiff: KCC Class Action Services, LLC
   222 N. Pacific Coast Highway, Third Floor
   El Segundo, CA 90245

5. YOU ARE DIRECTED TO ATTACH the following property or so much thereof as is clearly sufficient to satisfy the amount to be
   secured by the attachment *(describe property and state its location; itemize by letter)*:
   See Exhibit A attached.

   [X] This information is on an attached sheet.

6. [ ] An interest in the real property described in item 5 stands upon the records of the county, in the name of the following
   person other than the defendant:

   a. Name:

   b. Mailing address, if known, as shown by the records of the office of the county tax assessor *(specify)*:

7. [ ] The real property on which the
   [ ] crops described in item 5          are growing
   [ ] timber described in item 5          to be cut is standing stands upon the records of the county in the name of
   a. Name:
   b. Address:

[SEAL]

Sherri R. Carter, Executive Officer / Clerk of Court

Date:    10/20/2020                Clerk, by    A. Barron                , Deputy

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
AT-135 [Rev. January 1, 2003]

WRIT OF ATTACHMENT
(Attachment)

Code of Civ. Proc., § 488.010

## EXHIBIT A

### List of Real Property – Thomas V. Girardi

Real property located at 100 Los Altos Drive, Pasadena, CA 91105

Real property located at 1122 Wilshire Blvd., Los Angeles, CA 90017

Real property located at 1126 Wilshire Blvd., Los Angeles, CA 90017

### List of Bank Accounts – Thomas V. Girardi

City National Bank #210372709

City National Bank #210414126

City National Bank MM #210413073

Preferred Bank #118935

Preferred Bank #1115464

Torrey Pines Bank #4110556171

Torrey Pines Bank #4110556201

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

AT-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Michael J. Quinn (SB# 198349), Vedder Price (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, CA 90067

TELEPHONE NO.: (424) 204-7700    FAX NO. (Optional): (424) 204-7702
E-MAIL ADDRESS (Optional): mquinn@vedderprice.com
ATTORNEY FOR (Name): Plaintiff KCC Class Action Services, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF: KCC Class Action Services, LLC

DEFENDANT: Thomas V. Girardi

**FILED**
Superior Court of California
County of Los Angeles

OCT 0 8 2020

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Fernando Becerra, Jr.

| | | CASE NUMBER: |
|---|---|---|
| [✓] | RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING | 19STCV38587 |
| [ ] | ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT AFTER HEARING | |

1. a. The application of plaintiff (name): KCC Class Action Services, LLC
   for  [✓] a right to attach order and order for issuance of writ of attachment
        [ ] an order for issuance of additional writ of attachment
   against the property of defendant (name): Thomas V. Girardi
   came on for hearing as follows:
   (1) Judge (name): Hon. Mitchell Beckloff
   (2) Hearing date: October 2, 2020        Time: 9:30 a.m    [ ] Dept 86    [ ] Div.:    [ ] Rm.:
   b. The following persons were present at the hearing:
   (1) [ ] Plaintiff (name):                     (3) [✓] Plaintiff's attorney (name): Michael J. Quinn
   (2) [ ] Defendant (name):                     (4) [✓] Defendant's attorney (name): Laurence Osborne

**FINDINGS**

2. THE COURT FINDS
   a. Defendant (specify name): Thomas V. Girardi        is a  [✓] natural person    [ ] partnership
      [ ] unincorporated association    [ ] corporation    [ ] other (specify):
   b. The claim upon which the application is based is one upon which an attachment may be issued.
   c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
   d. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
   e. The amount to be secured by the attachment is greater than zero.
   f. [✓] Defendant failed to prove that all the property described in plaintiff's application is exempt from attachment.
   g. [✓] The following property of defendant, described in plaintiff's application:
      (1) [✓] is exempt from attachment (specify): See Exhibit A attached hereto.

      (2) [✓] is not exempt from attachment (specify): See Exhibit B attached hereto.

   h. [ ] The following property, not described in plaintiff's application, claimed by defendant to be exempt:
      (1) [ ] is exempt from attachment (specify):

      (2) [ ] is not exempt from attachment (specify):

   i. [✓] An undertaking in the amount of: $ 10,000        is required before a writ shall issue, and plaintiff
      [ ] has [✓] has not    filed an undertaking in that amount.
   j. A Right to Attach Order was issued on (date):                                    pursuant to
      [ ] Code of Civil Procedure section 484.090 (on hearing)    [ ] Code of Civil Procedure section 485.220 (ex parte)
   k. [ ] other (specify):

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
AT-120 [Rev. July 1, 2010]

**RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER
FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**

Code of Civil Proc., §§ 482.030, 484.090;
Welfare & Institutions Code, § 15657.01
www.courtinfo.ca.gov

AT-120

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| KCC Class Action Services, LLC v. Girardi Keese, et al. | 19STCV38587 |

## ORDER

3. THE COURT ORDERS

a. Plaintiff has a right to attach property of defendant *(name):*  Thomas V. Girardi
in the amount of: $ 7,502,000

b. ☑ The property described in items 2g(1) and 2h(1) of the findings is exempt and shall not be attached.

c. The clerk shall issue  ☑ a writ of attachment  ☐ an additional writ of attachment  in the amount stated in item 3a
☐ forthwith  ☑ upon the filing of an undertaking in the amount of: $  10,000

   (1) ☐ for any property of a defendant who is **not** a natural person for which a method of levy is provided.

   (2) ☑ for the property of a defendant who is a natural person that is subject to attachment under Code of Civil
   Procedure section 487.010 described as follows *(specify):*

   See Exhibit B attached hereto.

   (3) ☐ for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of sale
   of such property, described as follows *(specify):*

   (4) ☐ for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license
   number is *(specify):*

d. ☑ Defendant shall transfer to the levying officer possession of

   (1) ☑ any documentary evidence in defendant's possession of title to any property described in item 3c;

   (2) ☑ any documentary evidence in defendant's possession of debt owed to defendant described in item 3c;

   (3) ☐ the following property in defendant's possession *(specify):*

---

**NOTICE TO DEFENDANT: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST
AND PUNISHMENT FOR CONTEMPT OF COURT.**

---

e. ☐ Other *(specify):*

f. Total number of boxes checked in item 3: _____

Date:    OCT 0 8 2020

JUDICIAL OFFICER  MITCHELL L. BECKLOFF, JUDGE

AT-120 [Rev. July 1, 2010]

**RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER FOR
ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**

Page 2 of 2

**EXHIBIT A**

**List of Exempt Real Property – Thomas V. Girardi**

Real property located at 1138 Wilshire Blvd., Los Angeles, CA 90017

Real property located at 1150 Wilshire Blvd., Los Angeles, CA 90017

Real property located at 81-775 Brown Deer Park, La Quinta, CA 92253

**List of Exempt Bank Accounts – Thomas V. Girardi**

Pacific Western Bank #1000219400

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

## EXHIBIT B

### List of Real Property – Thomas V. Girardi

Real property located at 100 Los Altos Drive, Pasadena, CA 91105

Real property located at 1122 Wilshire Blvd., Los Angeles, CA 90017

Real property located at 1126 Wilshire Blvd., Los Angeles, CA 90017

### List of Bank Accounts – Thomas V. Girardi

City National Bank #210372709

City National Bank #210414126

City National Bank MM #210413073

Preferred Bank #118935

Preferred Bank #1115464

Torrey Pines Bank #4110556171

Torrey Pines Bank #4110556201

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
LOS ANGELES

## Attachment

Property Address: 100 Los Altos Drive, Pasadena, CA 91105

Legal Description

All real property situated in the City of Pasadena, County of Los Angeles, State of California described as follows:

LOTS 21 AND 22 OF TRACT NO. 8702, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 118, PAGES 1 AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND THAT PORTION OF LOT 23 IN SAID TRACT NO. 8702, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERNLY CORNER OF SAID LOT 23; THENCE NORTHERNLY ALONG THE CURVED WESTERLY LINE OF SAID LOT 23, A DISTANCE OF 26.54 FEET; THENCE NORTH 72° 48' 10" EAST 74.50 FEET TO A POINT IN THE SOUTHEASTERLY LINE OF SAID LOT 23 DISTANCE THEREON NORTH 54° 44' 10" EAST 84.15 FEET FROM THE POINT OF BEGINNING; THENCE ALONG SAID SOUTHEASTERLY LINE SOUTH 54° 44' 10' WEST 84.15 FEET TO THE POINT OF BEGINNING

APN: 5708-025-009; 5708-025-008




**This page is part of your document - DO NOT DISCARD**



## 20190793616



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/08/19 AT 03:50PM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



201908083350088

**00016981684**



010029767

**SEQ:**
**01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**

E502868

**Recording Requested by and
When Recorded Mail To:**

**Christopher Frost, Esq.**
Eisner, LLP
9601 Wilshire Blvd., 7th Floor
Beverly Hills, CA 90210

## Title(s)

## Abstract of Judgment

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number)*
*After recording, return to*
Christopher Frost, Esq. (SBN 200336)
EISNER, LLP
9601 Wilshire Boulevard, 7th Floor
Beverly Hills, California 90210

TEL NO. 310/855-3200   FAX NO. *(optional)*. 310/855-3201
E-MAIL ADDRESS *(Optional)*

| [X] ATTORNEY FOR | [X] JUDGMENT CREDITOR | [ ] ASSIGNEE OF RECORD |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS  111 North Hill Street
MAILING ADDRESS  111 North Hill Street
CITY AND ZIP CODE  Los Angeles, California 90012
BRANCH NAME:  Central District / Stanley Mosk Courthouse

*FOR RECORDER'S USE ONLY*

PLAINTIFF:  LAW FINANCE GROUP, LLC

DEFENDANT:  GIRARDI KEESE, A CALIFORNIA LAW FIRM, ET AL.

CASE NUMBER
19STCV01455

## ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS   [ ] Amended

*FOR COURT USE ONLY*

1. The [X] judgment creditor   [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a.  Judgment debtor's
                  Name and last known address

   Thomas V. Girardi
   1126 Wilshire Boulevard
   Los Angeles, California 90017

   b.  Driver's license no. [last 4 digits] and state:   [X] Unknown
   c.  Social security no. [last 4 digits]:   [X] Unknown
   d.  Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address)*:

   Thomas V. Girardi, 1126 Wilshire Boulevard, Los Angeles, California 90017

2. [X] Information on additional judgment debtors is shown on page 2.
3. Judgment creditor *(name and address)*:
   Law Finance Group, LLC
   591 Redwood Highway, Suite 1200
   Mill Valley, California 94941

Date: August 6, 2019
Christopher Frost

_____
(TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.
5. [ ] Original abstract recorded in this county:
   a.  Date:
   b.  Instrument No.:

▶

_____
(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $6,000,000

7. All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on *(date)*:  July 30, 2019
   b.  Renewal entered on *(date)*:

9. [ ] This judgment is an installment judgment.

[SEAL]

Sherri R Carter Executive Officer / Clerk of Court

This abstract issued on *(date)*:
08/08/2019

10. [ ] An  [ ] execution lien  [ ] attachment lien
    is endorsed on the judgment as follows:
    a.  Amount. $
    b.  In favor of *(name and address)*:

11. A stay of enforcement has
    a.  [X] not been ordered by the court.
    b.  [ ] been ordered by the court effective until *(date)*:

12. a.  [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b.  [ ] A certified copy of the judgment is attached.

Clerk, by   Tyrone Heath   , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev July 1, 2014]

## ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674 700.190

| PLAINTIFF:  LAW FINANCE GROUP, LLC | COURT CASE NO . |
|---|---|
| DEFENDANT:  GIRARDI KEESE, A CALIFORNIA LAW FIRM, ET AL. | 19STCV01455 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*          14.  Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.             Name and last known address          17.             Name and last known address

Girardi Keese, a California law firm
1126 Wilshire Boulevard
Los Angeles, California 90017

Driver's license no. [last 4 digits] and state:          Driver's license no. [last 4 digits] and state:
                              ☒ Unknown                                          ☐ Unknown

Social security no. [last 4 digits]:   ☒ Unknown          Social security no. [last 4 digits]:   ☐ Unknown

Summons was personally served at or mailed to *(address):*          Summons was personally served at or mailed to *(address):*

Girardi Keese, a California law firm
1126 Wilshire Boulevard
Los Angeles, California 90017

18.             Name and last known address          19.             Name and last known address

Driver's license no. [last 4 digits] and state:          Driver's license no. [last 4 digits] and state:
                              ☐ Unknown                                          ☐ Unknown

Social security no. [last 4 digits].   ☐ Unknown          Social security no. [last 4 digits]:   ☐ Unknown

Summons was personally served at or mailed to *(address):*          Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

| EJ-001 [Rev July 1, 2014] | **ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS** | Page 2 of 2 |
|---|---|---|

 **This page is part of your document - DO NOT DISCARD** 



## 20200770269



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/13/20 AT 03:26PM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 104.00 |



**L E A D S H E E T**



**202007130240095**

**00018504735**



**010924095**

**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

**E13-20200709**——**20**



*E464790*

**EJ-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address and State Bar number)*<br>After recording, return to:<br>Boris Treyzon, Esq. (SBN 188893)<br>ABIR COHEN TREYZON SALO, LLP<br>16001 Ventura Blvd., Suite 200<br>Encino, CA 91436<br><br>TEL NO · (424) 288-4367    FAX NO *(optional)* (424) 288-4368<br>E-MAIL ADDRESS *(Optional)* btreyzon@actslaw.com<br>[X] ATTORNEY   [X] JUDGMENT   [ ] ASSIGNEE<br>    FOR        CREDITOR    OF RECORD | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS  111 N Hill Street

MAILING ADDRESS·  111 N Hill Street

CITY AND ZIP CODE  Los Angeles, 90012

BRANCH NAME  Stanley Mosk Courthouse

FOR RECORDER'S USE ONLY

| | |
|---|---|
| PLAINTIFF:  Joseph Ruigomez, et al.<br><br>DEFENDANT  Thomas V. Girardi, et al. | CASE NUMBER<br>19STCV22296 |

| | |
|---|---|
| **ABSTRACT OF JUDGMENT—CIVIL<br>AND SMALL CLAIMS**   [ ] Amended | FOR COURT USE ONLY |

1  The [X] judgment creditor   [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a.  Judgment debtor's
               Name and last known address
   Thomas V. Girardi, an individual,
   c/o BAKER, KEENER & NAHRA, LLP
   633 W. Fifth Street, Suite 5500
   Los Angeles, California 90071-2005

   b.  Driver's license no *[last 4 digits]* and state:  [X] Unknown
   c   Social security no *[last 4 digits]*:  [X] Unknown
   d.  Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address)*:

   Thomas V. Girardi, 1126 Wilshire Blvd , Los Angeles, California 90017

2  [X] Information on additional judgment debtors is
   shown on page 2.

3.  Judgment creditor *(name and address)*:
   Joseph Ruigomez, an individual,
   c/o ABIR COHEN TREYZON SALO, LLP
   16001 Ventura Blvd., Suite 200, Encino, California 91436
   Date: April 22, 2020
   Boris Treyzon, Esq.
            (TYPE OR PRINT NAME)

4.  [X] Information on additional judgment creditors is
   shown on page 2.
5.  [ ] Original abstract recorded in this county:
   a.  Date:
   b.  Instrument No.

   ▶ _(signature)_
           (SIGNATURE OF APPLICANT OR ATTORNEY)

6.  Total amount of judgment as entered or last renewed:
   $11,000,000.00

7.  All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on *(date)*.  April 20, 2020
   b.  Renewal entered on *(date)*:

9.  [ ] This judgment is an installment judgment.

10  [ ] An [ ] execution lien [ ] attachment lien
   is endorsed on the judgment as follows:
   a   Amount $
   b.  In favor of *(name and address)*:

11  A stay of enforcement has
   a.  [X] not been ordered by the court.
   b   [ ] been ordered by the court effective until
        *(date)*:

12.  a.  [X] I certify that this is a true and correct abstract of
   the judgment entered in this action.
   b   [ ] A certified copy of the judgment is attached.
   Sherri R  Carter Executive Officer / Clerk of Court


[SEAL]

This abstract issued on *(date)*.
04/27/2020

Clerk, by    V. Ortega   , Deputy

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>EJ-001 [Rev July 1, 2014] | **ABSTRACT OF JUDGMENT—CIVIL<br>AND SMALL CLAIMS** | Page 1 of 2<br>Code of Civil Procedure, §§ 488 480,<br>674, 700 190 |

| PLAINTIFF: Joseph Ruigomez, et al. | COURT CASE NO |
|---|---|
| DEFENDANT    Thomas V. Girardi, et al. | 19STCV22296 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)*.
Kathleen Ruigomez, an individual,
c/o ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, California 91436

14. Judgment creditor *(name and address)*:
Jamie Ruigomez, an individual,
c/o ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, California 91436

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.            Name and last known address
Girardi & Keese
c/o BAKER, KEENER & NAHRA, LLP
633 W. Fifth Street, Suite 5500
Los Angeles, California 90071-2005

Driver's license no. [last 4 digits] and state:       ☒ Unknown

Social security no. [last 4 digits]       ☒ Unknown

Summons was personally served at or mailed to *(address)*:
Thomas V. Girardi
Authorized Agent for Service of Process for Girardi &
Keese
1126 Wilshire Blvd., Los Angeles, California 90017

17.            Name and last known address

Driver's license no. [last 4 digits] and state:       ☐ Unknown

Social security no. [last 4 digits]:       ☐ Unknown

Summons was personally served at or mailed to *(address)*:

18.            Name and last known address

Driver's license no. [last 4 digits] and state:       ☐ Unknown

Social security no. [last 4 digits]:       ☐ Unknown

Summons was personally served at or mailed to *(address)*:

19.            Name and last known address

Driver's license no. [last 4 digits] and state       ☐ Unknown

Social security no. [last 4 digits]:       ☐ Unknown

Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

EJ-001 [Rev July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

## PROOF OF SERVICE

**STATE OF CALIFORNIA**                )
**COUNTY OF LOS ANGELES**       )   ss:

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 16001 Ventura Blvd., Suite 200, Encino, California 91436.

On April 22, 2020, I served the foregoing document described as:

### 1. ABSTRACT OF JUDGMENT

the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Phillip A. Baker, Esq.<br>Robert Baker, Esq.<br>BAKER, KEENER & NAHRA, LLP<br>633 W. Fifth Street, Suite 5500<br>Los Angeles, California 90071-2005<br>Facsimile: (213) 241-0990<br>E-mail: pbaker@bknlawyers.com<br>E-mail: rbaker@bknlawyers.com | *Attorneys for Defendants*<br>**THOMAS V. GIRARDI**<br>**GIRARDI | KEESE** |

☐ **BY MAIL:** By placing a true and correct copy of the above-described document(s) in envelope(s), addressed as set forth above, with first class postage pre-paid for delivery to the above-named persons at the above-listed addresses and depositing such envelopes in a US mail collection box.

☐ **BY OVER NIGHT DELIVERY, VIA GOLDEN STATE OVERNIGHT:** I gave the document(s) to our overnight courier service for its daily pick-up for delivery to the offices of the addressee, addressed as set forth above.

☐ **BY PERSONAL SERVICE *(Ex Parte)*:** I personally delivered by hand to the attorney in attendance on behalf of the above-named counsel at the hearing of _____, in Department____of_____the_____Courthouse,_____, California.

☒ **BY ELECTRONIC MAIL BY AGREEMENT:** Per agreement between counsels, I transmitted said document(s) to the person(s) shown above by electronic mail to the email address shown above.

☐ **BY FACSIMILE:** I faxed said document(s) to the addressee, at the specified fax numbers shown above.

1<br>PROOF OF SERVICE

1   ☐ **COURTESY COPY BY ELECTRONIC MAIL:** I transmitted courtesy copies of said
document(s) to the person(s) shown above by electronic mail to the email address shown above.

2

3   ☒ (State)    I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

4   ☐ (Federal) I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

5

6

7   Executed on April 22, 2020, at Los Angeles, California.

8

9                                                    _____
                                                     GINA ESFANDI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
PROOF OF SERVICE




**This page is part of your document - DO NOT DISCARD**



## 20200864175



**Pages:**
**0006**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

### 07/30/20 AT 01:18PM

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |



**L E A D S H E E T**



**202007302890033**

**00018564192**



**010962917**

**SEQ:**
**01**

**DAR - Mail (Intake)**



**THIS FORM IS NOT TO BE DUPLICATED**

*E656041*

RECORDING REQUESTED BY:

Boris Treyzon, Esq.

**WHEN RECORDED MAIL TO:**

ABIR Cohen Treyzon Salo LLP
NAME

16001 Ventura Blvd suite 200
MAILING ADDRESS

Encino, CA 91436
CITY, STATE and ZIP CODE

18564192

Batch Number: 10962917

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

Abstract of Judgment

B015 rev 20170331

EJ-001

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, address, and State Bar number):*
After recording, return to:
Boris Treyzon, Esq. (SBN 188893)
ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, CA 91436

TEL NO.: (424) 288-4367    FAX NO. (optional): (424) 288-4368
E-MAIL ADDRESS *(Optional):* btreyzon@actslaw.com

| [ X ] ATTORNEY FOR | [ X ] JUDGMENT CREDITOR | [  ] ASSIGNEE OF RECORD |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS:  111 N. Hill Street
MAILING ADDRESS:  111 N. Hill Street
CITY AND ZIP CODE:  Los Angeles, 90012
BRANCH NAME:  Stanley Mosk Courthouse

*FOR RECORDER'S USE ONLY*

PLAINTIFF:  Joseph Ruigomez, et al.

DEFENDANT:  Thomas V, Girardi, et al.

CASE NUMBER:
19STCV22296

| ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS    [  ] Amended | *FOR COURT USE ONLY* |

1. The [ X ] judgment creditor    [  ] assignee of record
   applies for an abstract of judgment and represents the following:
   a.  Judgment debtor's
         Name and last known address
   ┌─────────────────────────────┐
   │ Thomas V. Girardi, an individual, │
   │ c/o BAKER, KEENER & NAHRA, LLP │
   │ 633 W. Fifth Street, Suite 5500 │
   │ Los Angeles, California 90071-2005 │
   └─────────────────────────────┘
   b.  Driver's license no. [last 4 digits] and state:    [ X ] Unknown
   c.  Social security no. [last 4 digits]:    [ X ] Unknown
   d.  Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address):*

   Thomas V. Girardi, 1126 Wilshire Blvd., Los Angeles, California 90017

2. [ X ] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor *(name and address):*
   Joseph Ruigomez, an individual,
   c/o ABIR COHEN TREYZON SALO, LLP
   16001 Ventura Blvd., Suite 200, Encino, California 91436
   Date: April 22, 2020
   Boris Treyzon, Esq.
   _____
   (TYPE OR PRINT NAME)

4. [ X ] Information on additional judgment creditors is shown on page 2.

5. [  ] Original abstract recorded in this county:
   a.  Date:
   b.  Instrument No.:

   ▶ _____
   (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 11,000,000.00

7. All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on *(date):*  April 20, 2020
   b.  Renewal entered on *(date):*

9. [  ] This judgment is an installment judgment.

10. [  ] An [  ] execution lien [  ] attachment lien
    is endorsed on the judgment as follows:
    a.  Amount: $
    b.  In favor of *(name and address):*

11. A stay of enforcement has
    a.  [ X ] not been ordered by the court.
    b.  [  ] been ordered by the court effective until *(date):*

12. a.  [ X ] I certify that this is a true and correct abstract of the judgment entered in this action.
    b.  [  ] A certified copy of the judgment is attached.
    Sherri R. Carter Executive Officer / Clerk of Court
    Clerk, by _____V. Ortega_____, Deputy

[SEAL]

This abstract issued on *(date):*
04/27/2020

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190

| PLAINTIFF: Joseph Ruigomez, et al. | COURT CASE NO.: |
|---|---|
| DEFENDANT: Thomas V. Girardi, et al. | 19STCV22296 |

### NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13. Judgment creditor *(name and address):*
Kathleen Ruigomez, an individual,
c/o ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, California 91436

14. Judgment creditor *(name and address):*
Jamie Ruigomez, an individual,
c/o ABIR COHEN TREYZON SALO, LLP
16001 Ventura Blvd., Suite 200
Encino, California 91436

15. ☐ Continued on Attachment 15.

### INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16.            Name and last known address
Girardi & Keese
c/o BAKER, KEENER & NAHRA, LLP
633 W. Fifth Street, Suite 5500
Los Angeles, California 90071-2005

Driver's license no. [last 4 digits] and state:            ☒ Unknown

Social security no. [last 4 digits]:            ☒ Unknown

Summons was personally served at or mailed to *(address):*
Thomas V. Girardi
Authorized Agent for Service of Process for Girardi &
Keese
1126 Wilshire Blvd., Los Angeles, California 90017

17.            Name and last known address

Driver's license no. [last 4 digits] and state:            ☐ Unknown

Social security no. [last 4 digits]:            ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.            Name and last known address

Driver's license no. [last 4 digits] and state:            ☐ Unknown

Social security no. [last 4 digits]:            ☐ Unknown

Summons was personally served at or mailed to *(address):*

19.            Name and last known address

Driver's license no. [last 4 digits] and state:            ☐ Unknown

Social security no. [last 4 digits]:            ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

| EJ-001 [Rev. July 1, 2014] | **ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS** | Page 2 of 2 |

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES   )   ss:

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 16001 Ventura Blvd., Suite 200, Encino, California 91436.

On April 22, 2020, I served the foregoing document described as:

   **1. ABSTRACT OF JUDGMENT**

the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| Phillip A. Baker, Esq.<br>Robert Baker, Esq.<br>BAKER, KEENER & NAHRA, LLP<br>633 W. Fifth Street, Suite 5500<br>Los Angeles, California 90071-2005<br>Facsimile: (213) 241-0990<br>E-mail: pbaker@bknlawyers.com<br>E-mail: rbaker@bknlawyers.com | *Attorneys for Defendants*<br>**THOMAS V. GIRARDI**<br>**GIRARDI \| KEESE** |

☐ **BY MAIL:** By placing a true and correct copy of the above-described document(s) in envelope(s), addressed as set forth above, with first class postage pre-paid for delivery to the above-named persons at the above-listed addresses and depositing such envelopes in a US mail collection box.

☐ **BY OVER NIGHT DELIVERY, VIA GOLDEN STATE OVERNIGHT:** I gave the document(s) to our overnight courier service for its daily pick-up for delivery to the offices of the addressee, addressed as set forth above.

☐ **BY PERSONAL SERVICE *(Ex Parte)*:** I personally delivered by hand to the attorney in attendance on behalf of the above-named counsel at the hearing of _____, in Department_____of_____the_____Courthouse,_____, California.

☒ **BY ELECTRONIC MAIL BY AGREEMENT:** Per agreement between counsels, I transmitted said document(s) to the person(s) shown above by electronic mail to the email address shown above.

☐ **BY FACSIMILE:** I faxed said document(s) to the addressee, at the specified fax numbers shown above.

1
PROOF OF SERVICE

Order: 00357460
Doc: CALOSA:2020 00864175
Page 5 of 6
Requested By: CIFIDNA3621, Printed: 8/3/2022 12:23 PM

1    ☐ **COURTESY COPY BY ELECTRONIC MAIL:** I transmitted courtesy copies of said document(s) to the person(s) shown above by electronic mail to the email address shown above.

2

3    ☒ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

4    ☐ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

5

6    Executed on April 22, 2020, at Los Angeles, California.

7

8                                      _____
                                              GINA ESFANDI
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
                                          2
                                    PROOF OF SERVICE

Recording requested by:
**KEITH KNOX**
**TAX COLLECTOR**
**COUNTY OF LOS ANGELES**

When recorded mail to:

GIRARDI,THOMAS V AND
GIRARDI AND KEESE
1126 WILSHIRE BLVD
LOS ANGELES CA 90017

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

# 20201509047
11/24/2020 08:04:00
$0.00

## CERTIFICATE OF TAX LIEN

**FILED BY**      LOS ANGELES COUNTY TAX COLLECTOR          **CERTIFICATE NUMBER:** 20315-11883
225 North Hill St., Rm. 122
Los Angeles, California 90012

This is to notify you that a tax lien has been filed with respect to unsecured property.

I, KEITH KNOX, TAX COLLECTOR of the County of Los Angeles, State of California, in compliance with the provisions of Section 2191.3 of the Revenue and Taxation Code, do hereby certify that there are on record in my office delinquent unsecured property taxes which were duly assessed, computed and levied together with penalties and costs prescribed by law for the years and in the amounts set forth below. Additional penalties will accrue on said taxes at the rate of $1\frac{1}{2}$% on the 1st day of each month beginning on the second month after delinquency.

**NAME OF ASSESSEE:**
GIRARDI,THOMAS V AND
KEESE, ROBERT M DBA
GIRARDI AND KEESE
1126 WILSHIRE BLVD
LOS ANGELES CA 90017

**YEAR/BILL NUMBER:**      20/40709135

**INDEX NUMBER:**          27142714

**SITUS OR ADDRESS:**      1126 WILSHIRE BLVD
LOS ANGELES

| TAX AMOUNT | COLLECTION COST | TOTAL LIEN AMOUNT | AMOUNT DUE** |
|---|---|---|---|
| 24608.23 | 49.00 | 24657.23 | Call Number Below |

** **For current amount due, call (213) 893-7935. Upon payment of the tax and all applicable penalties, a Release of Lien will be mailed to you along with recording instructions.**

From the time of recordation of this certificate, for a period of ten years or any extension thereof, the amount required to be paid as shown herein together with all accrued interest and penalties thereon will constitute a lien upon all real and personal property owned or hereafter acquired by the above names assessee with the County of Los Angeles. A copy of the recorded lien will be mailed to you under separate cover by the Los Angeles County Registrar-Recorder's Office.

NOTE:
There will be a service charge for any check returned by the bank for any reason.

**KEITH KNOX, TAX COLLECTOR**
**COUNTY OF LOS ANGELES**

Recording requested by:
**KEITH KNOX
TAX COLLECTOR
COUNTY OF LOS ANGELES**

When recorded mail to:

GIRARDI,THOMAS V AND
GIRARDI AND KEESE
1126 WILSHIRE BLVD
LOS ANGELES CA 90017

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

# 20211743943
11/24/2021 08:27:59
$0.00

## CERTIFICATE OF TAX LIEN

**FILED BY**      LOS ANGELES COUNTY TAX COLLECTOR          **CERTIFICATE NUMBER:**  21314-09985
225 North Hill St., Rm. 122
Los Angeles, California 90012

This is to notify you that a tax lien has been filed with respect to unsecured property.

I, KEITH KNOX, TAX COLLECTOR of the County of Los Angeles, State of California, in compliance with the provisions of Section 2191.3 of the Revenue and Taxation Code, do hereby certify that there are on record in my office delinquent unsecured property taxes which were duly assessed, computed and levied together with penalties and costs prescribed by law for the years and in the amounts set forth below. Additional penalties will accrue on said taxes at the rate of 1 ½ % on the 1st day of each month beginning on the second month after delinquency.

**NAME OF ASSESSEE:**
GIRARDI,THOMAS V AND
KEESE, ROBERT M DBA
GIRARDI AND KEESE
1126 WILSHIRE BLVD
LOS ANGELES CA 90017

**YEAR/BILL NUMBER:**       21/40736039

**INDEX NUMBER:**       27142714

**SITUS OR ADDRESS:**       1126 WILSHIRE BLVD
LOS ANGELES

| TAX AMOUNT | COLLECTION COST | TOTAL LIEN AMOUNT | AMOUNT DUE** |
|---|---|---|---|
| 27664.93 | 49.00 | 27713.93 | Call Number Below |

**        For current amount due, call (213) 893-7935.  Upon payment of the tax and all applicable penalties, a Release of Lien will be mailed to you along with recording instructions.

From the time of recordation of this certificate, for a period of ten years or any extension thereof, the amount required to be paid as shown herein together with all accrued interest and penalties thereon will constitute a lien upon all real and personal property owned or hereafter acquired by the above names assessee with the County of Los Angeles. A copy of the recorded lien will be mailed to you under separate cover by the Los Angeles County Registrar-Recorder's Office.

NOTE:
There will be a service charge for any check
returned by the bank for any reason.

**KEITH KNOX, TAX COLLECTOR
COUNTY OF LOS ANGELES**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF ESTATE'S RIGHT, TITLE AND INTEREST IN REAL PROPERTY FREE AND CLEAR OF LIENS OF KAREN GIRARDI, ALT FINANCIAL NETWORK, INC., STILLWELL MADISON, LLC, KCC CLASS ACTION SERVICES, LLC, LAW FINANCE GROUP, LLC, JOSEPH RUIGOMEZ, KATHLEEN RUIGOMEZ, AND JAIME RUIGOMEZ, AND LOS ANGELES COUNTY TAX COLLECTOR; (2) APPROVING OVERBID PROCEDURE; (3) APPROVING PAYMENT OF COMMISSIONS AND ADVANCED EXPENSES; (4) FINDING PURCHASERS ARE GOOD FAITH PURCHASERS; AND (5) WAIVING STAY UNDER RULE 6004(h); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 23, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Rafey Balabanian    rbalabanian@edelson.com, docket@edelson.com
- Shraddha Bharatia    notices@becket-lee.com
- Ori S Blumenfeld    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- Evan C Borges    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- Richard D Buckley    richard.buckley@arentfox.com
- Indira J. Cameron-Banks    indira@cameron-banks.com, tiffany@cameronbankslaw.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Ashleigh A Danker    adanker731@gmail.com
- Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com
- Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
- Lei Lei Wang Ekvall - DECEASED -    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Jeremy Faith    Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- James J Finsten    , jimfinsten@hotmail.com
- James J Finsten    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- Larry W Gabriel    lgabrielaw@outlook.com, tinadow17@gmail.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- Suzanne C Grandt    suzanne.grandt@calbar.ca.gov,
joan.randolph@calbar.ca.gov;vanessa.holton@calbar.ca.gov;robert.retana@calbar.ca.gov
- M. Jonathan Hayes    jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- Bradford G Hughes    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Lewis R Landau    Lew@Landaunet.com
- Craig G Margulies    Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Peter J Mastan    peter.mastan@dinsmore.com,
SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R. Matthai    ematthai@romalaw.com, lrobie@romalaw.com
- Daniel J McCarthy    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- Jack Meyer    jmeyer@ggtriallaw.com
- Elissa Miller    emiller@sulmeyerlaw.com,
emillersk@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- Scott Olson    scott.olson@bclplaw.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Carmela Pagay    ctp@lnbyg.com
- Carmela Pagay    ctp@lnbyb.com
- Ambrish B Patel    apatelEl@americaninfosource.com
- Leonard Pena    lpena@penalaw.com,
penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com
- Matthew D. Resnik    matt@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Kevin C Ronk    Kevin@portilloronk.com, Attorneys@portilloronk.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- William F Savino    wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- Gary A Starre    gastarre@gmail.com, mmoonniiee@gmail.com
- Richard P Steelman    rps@lnbyg.com, john@lnbyb.com
- Philip E Strok    pstrok@swelawfirm.com,
gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Terrence Swinson    terrenceswinson@gmail.com
- Boris Treyzon    btreyzon@actslaw.com, sgonzales@actslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Christopher K.S. Wong    christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **September 23, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| Honorable Barry Russell<br>United States Bankruptcy Court<br>Roybal Federal Building and Courthouse<br>255 E. Temple Street, Suite 1660<br>Courtroom 1668<br>Los Angeles, CA 90012 | Thomas Vincent Girardi<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017 | Thomas Vincent Girardi<br>Belmont Village Senior Living<br>455 East Angeleno Avenue<br>Burbank, CA 91501 |
| Thomas Vincent Girardi<br>100 N. Los Altos Drive<br>Pasadena, CA 91105 | | |

☒ *Service information continued on attached page*

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 23, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 23, 2022 | Damon Woo | /s/ Damon Woo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Estate's broker
Ted Clark
Compass
42 South Pasadena Avenue
Pasadena, CA 91105

Purchasers' Broker
John Zhang
81 N. 1st Avenue
Arcadia CA 90006

Karen Girardi
547 Bradford Avenue
Pasadena, CA 91105

Attorneys for Karen Girardi
Gary Starre
Starre & Cohn
15760 Ventura Boulevard, Suite 801
Encino, CA 91436

Alt Financial Network, Inc.
18022 Cowan, Suite 245
Irvine, CA 92614

Agent for Service for
Alt Financial Network, Inc.
Matthew Mullhofer
18012 Skypark Circle, Suite 100-A
Irvine, CA 92614

Stillwell Madison, LLC
36600 N. Pima Road, Suite 202B
Carefree, AZ 95377

Stillwell Madison, LLC
8 Harbor Pointe Cir
Bloomington, IL 61704

Attorneys for Stillwell Madison, LLC
Andrew C. Whitman
DLA Piper
2000 Avenue of the Stars Suite 400,
North Tower
Los Angeles, CA 90067

Agent for Service of Process for Stillwell
Madison, LLC
United States Corporation Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

KCC Class Action Services, LLC
222 N. Pacific Coast Highway, Third
Floor
El Segundo, CA 90245

KCC Class Action Services, LLC
3301 Kerner Boulevard
San Rafael, CA 94901

Attys for KCC Class Action Services, LLC
Michael Quinn
Vedder Price, LLP
1925 Century Park East, Suite 1900
Los Angeles, CA 90067

Agent for Service of Process for KCC
Class Action Services, LLC
United Agent Group Inc.
4640 Admiralty Way, 5th Floor
Marina Del Rey, CA 90292

Law Finance Group, LLC
591 Redwood Highway, Suite 1200
Mill Valley, CA 94941

Attorneys for Law Finance Group, LLC
Christopher Frost
Eisner, LLP
9601 Wilshire Boulevard, 7th Floor
Beverly Hills, CA 90210

Attorneys for Law Finance Group, LLC
Christopher Frost
Weinberg Gonser LLP
10866 Wilshire Boulevard, Suite 1650
Los Angeles, CA 90024-4321

Agent for Service for Law Finance
Group, LLC
CT Corporation
300 N. Brand Boulevard, Suite 700
Glendale, CA 91203

Joseph Ruigomez [per abstract]
Abir Cohen Treyzon Salo, LLP
16001 Ventura Boulevard, Suite 200
Encino, CA 91436

Kathleen Ruigomez [per abstract]
Abir Cohen Treyzon Salo, LLP
16001 Ventura Boulevard, Suite 200
Encino, CA 91436

Jamie Ruigomez [per abstract]
Abir Cohen Treyzon Salo, LLP
16001 Ventura Boulevard, Suite 200
Encino, CA 91436

Attorneys for Ruigomez Creditors
Alan W. Forsley
Fredman Lieberman Pearl LLP
1875 Century Park East, Suite 2230
Los Angeles, CA 90067

Los Angeles County Tax Collector
225 North Hill Street, Rm. 122
Los Angeles, CA 90012

Los Angeles County Tax Collector
P. O. Box 54110
Los Angeles, CA 90054-0110

Attorneys for Stillwell Madison, LLC
Andrew C. Whitman
Allen Matkins Leck Gamble Mallory &
Natsis
865 S Figueroa Street, Suite 2800
Los Angeles, CA 90017