TIMOTHY J. YOO (State Bar No. 155531)
tjy@lnbyg.com
CARMELA T. PAGAY (State Bar No. 195603)
ctp@lnbyg.com
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Jason Rund
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-21020-BR |
| THOMAS VINCENT GIRARDI, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH ELISSA MILLER, CHAPTER 7 TRUSTEE, CALIFORNIA ATTORNEY LENDING II, INC., A NEW YORK CORPORATION, AND COUNSEL FINANCIAL SERVICES, LLC, A DELAWARE LIMITED LIABILITY COMPANY; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF** |
| | Date:    April 18, 2023 |
| | Time:   10:00 a.m. |
| | Place:  Courtroom 1668 |
| | U.S. Bankruptcy Court |
| | 255 E. Temple Street |
| | Los Angeles, California |

1

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE**:

Jason M. Rund, the Chapter 7 Trustee for the bankruptcy estate of Thomas Vincent Girardi (the "TVG Trustee"), hereby moves this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013-1(o) to approve his settlement with Elissa D. Miller, solely in her capacity as the Chapter 7 Trustee of the bankruptcy estate of Girardi Keese (the "GK Trustee"), California Attorney Lending II, Inc., a New York Corporation ("CAL II"), and Counsel Financial Services, LLC, a Delaware limited liability company ("CFS"), in accordance with the parties' *Settlement Agreement* (the "Agreement").

**I.**

**INTRODUCTION**

After numerous discussions and extensive negotiations among the parties, the parties entered into the Agreement, which resolves the issues and claims related to the Kelco Liquidation Proceeds, the Kelco Reserve, the CAL II/CFS Dismissal Order Appeal, and the CAL II Payoff Request, which are defined and discussed hereinbelow. The Agreement eliminates the need for potentially protracted litigation between this estate and the bankruptcy estate of Girardi Keese and ends the litigation by commenced by the GK Trustee against CAL II and CFS. More importantly, this Agreement paves the road to immediate payments by the TVG Trustee to Cal II and the Ruigomez Creditors and cuts off fees and costs caused by delayed administration. Therefore, the TVG Trustee believes that the Agreement is in the best interest of the estate and should be approved by this Court.

**II.**

**FACTUAL BACKGROUND**

A.    **The Bankruptcy Cases**

On December 18, 2020, an involuntary chapter 7 bankruptcy petition was filed against Girardi Keese ("GK") commencing Case No. 2:20-bk-21022-BR (the "GK Bankruptcy Case") before this Court (the "Bankruptcy Court"). The petitioning creditors moved for the

1  appointment of an interim trustee which was granted by the Bankruptcy Court by order entered

2  January 5, 2021.  The GK Trustee was appointed as the interim chapter 7 trustee on January 6,

3  2021.  The order for relief was entered January 13, 2021 and the GK Trustee was reappointed.

4        On December 18, 2020, an involuntary chapter 7 bankruptcy petition was also filed

5  against Thomas V. Girardi ("TVG"), commencing this case (the "TVG Bankruptcy Case").  The

6  TVG Trustee was appointed interim trustee on January 5, 2021.  The order for relief was entered

7  in this case on January 13, 2021, and the TVG Trustee was reappointed as chapter 7 trustee.

8  **B.**      **Kelco Properties, LLC, the Kelco Avoidance Action and Sale of the Kelco Property**

9        TVG holds a 45% membership interest in Kelco Properties, LLC, a California limited

10  liability company ("Kelco").  Kelco was formed on or about October 1, 2009 and acquired

11  certain unimproved real property consisting of approximately 54.8 acres of land in Riverside

12  County, California (the "Kelco Property").

13        Although the 45% membership interest in Kelco is in the name of TVG, GK paid

14  approximately $4,160,000.00 to Kelco commencing in October 2009, presumably as capital

15  contributions for TVG.  Of the $4,160,000.00, GK paid Kelco $160,000.00 (the "Fraudulent

16  Transfers") during the 7-year period preceding the GK Bankruptcy Case.

17        On December 27, 2022, the GK Trustee filed a complaint against Kelco to avoid and

18  recover the Fraudulent Transfers, commencing Adversary Case No. 2:22-ap-01249-BR (the

19  "Kelco Avoidance Action").

20        Given that a sale of the Kelco Property was imminent, the GK Trustee, the TVG Trustee

21  and Kelco agreed to stay the Kelco Avoidance Action for 180 days and further agreed that if,

22  during the stay, Kelco liquidated any of its assets, Kelco would deliver and remit to the TVG

23  Trustee the net sales proceeds representing TVG's 45% interest in Kelco (the "Kelco

24  Liquidation Proceeds"), provided, however, that the total sum of $160,000.00 from the Kelco

25  Liquidation Proceeds (the "Kelco Reserve") would be delivered and remitted by the TVG

26  Trustee to the GK Trustee on account of the Fraudulent Transfers.  The parties also agreed that

27  the Kelco Adversary Action would be dismissed, with prejudice, within five (5) business days of

28

1  the GK Trustee's receipt of the Kelco Reserve.  The Bankruptcy Court approved the stipulated

2  agreement between the parties by order entered February 2, 2023.

3        The Kelco Property sold and on February 16, 2023, the TVG Trustee received

4  $8,115,666.51 of Kelco Liquidation Proceeds.  On February 21, 2023, the TVG Trustee

5  delivered and remitted $160,000.00 to the GK Trustee to fund the Kelco Reserve. Consequently,

6  the TVG Trustee is holding $7,955,666.51 in Kelco Liquidation Proceeds, and the GK Trustee is

7  holding $160,000.00 in the Kelco Reserve.  The Kelco Avoidance Action was subsequently

8  dismissed, with prejudice.

9  **C.**      **Secured Claims of CAL II and the Ruigomez Creditors in the TVG Bankruptcy**

10  **Case**

11        On March 12, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to Approve*

12  *Compromise under FRBP 9019* (the "TVG Ruigomez Compromise Motion").  Attached to the

13  TVG Ruigomez Compromise Motion as Exhibit 7 is the Settlement Agreement (the "TVG

14  Ruigomez Settlement") entered into by and between the TVG Trustee and Joseph Ruigomez,

15  Kathleen Ruigomez and Jaime Ruigomez (the "Ruigomez Creditors").  The TVG Ruigomez

16  Compromise Motion was approved by order of the Bankruptcy Court entered April 20, 2021.

17        Pursuant to the TVG Ruigomez Settlement (i) the Ruigomez Creditors have an allowed

18  claim in the amount of $11,747,245.95 as of the TVG Bankruptcy Case petition date (the "TVG

19  Ruigomez Claim") with a perfected security interest in all of TVG's personal property and all

20  real property of TVG in Riverside and Los Angeles Counties that existed on the petition date

21  and a reservation of rights to seek post-petition interest, and (ii) the TVG Trustee and the

22  Ruigomez Creditors mutually released claims.  Section 4.b. of the TVG Ruigomez Settlement

23  also provides:

24           "For each Ruigomez Collateral being administered, the sale

25           proceeds shall be distributed in the following order of priority: (1)

26           liens senior to the Ruigomez Liens, taxes arising from the sale

27           (including transfer and income taxes), and ordinary costs of sale

28           (including broker commissions, escrow, etc.); (2) the

1  administrative fees and costs of the bankruptcy estate; (3) 80% of

2  the balance to the Ruigomez Creditors to be applied towards the

3  Ruigomez Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee

4  to be held in trust for the allowed unsecured claimants of the

5  bankruptcy estate."

6      On May 19, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to Approve*

7  *Compromise of Controversy under FRBP 9019 with California Attorney Lending II* (the "TVG

8  CAL II Compromise Motion").  Attached to the TVG CAL II Compromise Motion as Exhibit 6

9  is the Settlement Agreement (the "TVG CAL II Settlement") entered into by and between the

10  TVG Trustee and CAL II.  The TVG CAL II Compromise Motion was approved by order of the

11  Bankruptcy Court entered June 21, 2021.

12      Pursuant to the TVG CAL II Settlement (i) CAL II has an allowed claim in the amount

13  of $6,402,213.49 plus $97,548.29 in legal fees as of the TVG Bankruptcy Case petition date (the

14  "TVG CAL II Claim") with a perfected security interest in all of TVG's personal property with

15  the exception of cash and bank accounts and a reservation of rights to seeks post-petition

16  interest, and (ii) the TVG Trustee and CAL II mutually released claims.  Section 6.b. of the

17  TVG CAL II Settlement also provides:

18      "For each CAL II's Collateral being administered, the sale

19      proceeds shall be distributed in the following order of priority: (1)

20      liens senior to CAL II's liens (if any"), *allowed* claim of

21      exemption, taxes arising from the sale (including transfer and

22      income taxes), and ordinary costs of sale (including broker

23      commissions, escrow, etc.); (2) the reasonable, necessary

24      administrative fees and costs of the bankruptcy estate assembling,

25      acquiring and disposing of said Collateral; (3) 80% of the balance

26      to be applied towards CAL II's Claim; and (4) the remainder (*i.e.*,

27      20%) to the Trustee to be held in trust for the allowed unsecured

28      claimants of the bankruptcy estate.  To be clear, CAL II will

continue to receive the foregoing 80% distributions until CAL II's

Claim is paid in full.  Once CAL II has been paid in full from this

Case and the Girardi Keese Case, the sale proceeds shall be

distributed in accordance with the Settlement Agreement

previously approved by the Bankruptcy Court between the Trustee

and the Ruigomez Creditors."

As to the Kelco Liquidation Proceeds currently held by the TVG Trustee in the TVG bankruptcy estate, CAL II has a first priority lien position and the Ruigomez Creditors have a second priority lien position.

**D.      Secured Claim of CAL II in the GK Bankruptcy Case and the CAL II Adversary Action**

On May 11, 2021, the GK Trustee filed her *Motion for Order Approving Compromise with California Attorney Lending II, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "GK CAL II Compromise Motion").  Attached to the GK CAL II Compromise Motion as Exhibit 5 is the Settlement Agreement (the "GK CAL II Settlement") entered into by and between the GK Trustee and CAL II.  The GK CAL II Compromise Motion was approved by order of the Bankruptcy Court entered June 9, 2021.

Pursuant to the GK CAL II Settlement, CAL II has an allowed claim in the amount of $6,508,361.55 as of the GK Bankruptcy Case petition date (the "GK CAL II Claim") with a first priority perfected security interest in substantially all of GK's personal property assets and a reservation of rights to seek post-petition interest and reasonable fees, costs or charges.

On August 31, 2022, the GK Trustee filed a complaint against CAL II, CFS, and Joseph D. DiNardo for declaratory relief and other claims for relief, commencing Adversary Case No. 2:22-ap-01169-BR (the "CAL II Adversary Action").

CAL II and CFS jointly filed a motion to dismiss the CAL II Adversary Action which the Bankruptcy Court granted, with prejudice and without leave to amend, by order entered February 16, 2023 (the "Dismissal Order").  The Dismissal Order provides that each party is to bear its own costs and fees.  The GK Trustee has appealed the Dismissal Order and elected to

1    have the appeal heard by the United States District Court for the Central District of California,

2    Case No. 2:23-cv-01637-MEMF (the "CAL II/CFS Dismissal Order Appeal").

3        Joseph D. DiNardo also filed a motion to dismiss the CAL II Adversary Action which

4    was granted, with prejudice and without leave to amend, by the Bankruptcy Court.  The GK

5    Trustee has appealed this dismissal order as well and also elected to have the appeal heard by

6    the United States District Court for the Central District of California (the "DiNardo Dismissal

7    Order Appeal").

8    **E.        The CAL II Payoff Request**

9        During the course of the GK Bankruptcy Case and the TVG Bankruptcy Case, the GK

10   Trustee and the TVG Trustee have made certain payments to CAL II on account of the GK CAL

11   II Claim and the TVG CAL II Claim.

12       On February 22, 2023, CAL II submitted its payoff statement to the TVG Trustee in the

13   total amount of $3,343,271.06 with per diem interest at $491.61 (the "Payoff Request").

14   Included in the Payoff Request is $1,162,685.12 in legal fees, including $819,117.77 in legal

15   fees incurred by CAL II defending the CAL II Adversary Action.  A true and correct copy of

16   the Payoff Request is attached as Exhibit 2 to the Declaration of Jason M. Rund (the "Rund

17   Declaration") and is incorporated herein by reference.

18   **F.        The Agreement**

19       Following extensive discussions and negotiations, the Parties entered into the Agreement

20   to resolve the issues and claims raised hereinabove, including the issues and claims related to

21   the Kelco Liquidation Proceeds, the Kelco Reserve, the CAL II/CFS Dismissal Order Appeal,

22   and the CAL II Payoff Request.

23       The Agreement provides, in pertinent part, as follows:

24            1.        CAL II has agreed to reduce the legal fees asserted in the Payoff Request

25                 by a total of $669,117.77.  As of the Effective Date[1] and in full and

---

[1]    "Effective Date" is the first business day after the Bankruptcy Court order approving the Agreement becomes final and no longer subject to appeal in both the GK Bankruptcy Case and the TVG Bankruptcy Case.

complete satisfaction of both the TVG CAL II Claim and the GK CAL II
Claim, CAL II shall have a single allowed Payoff Request as of February
22, 2023 in the amount of $2,674,153.29 plus per diem interest of
$491.61 from February 22, 2023 until paid in full as set forth in the
Agreement (the "Allowed Payoff Request").

2.    Except for the obligations and benefits set forth by and for the Parties in
this Agreement, upon the Effective Date, the TVG Trustee and the TVG
bankruptcy estate waive and release any and all ownership claims to the
Kelco Reserve.  The Kelco Reserve shall remain in the GK bankruptcy
estate for administration by the GK Trustee.  Notwithstanding the waiver
and release set forth herein, (a) the TVG Trustee has not waived and/or
released and shall be allowed to continue to prosecute his claim(s) filed in
the GK Bankruptcy Case for the benefit of the TVG bankruptcy estate,
and (b) all other rights of the TVG Trustee and the TVG bankruptcy
estate are preserved.

3.    Except for the obligations and benefits set forth by and for the Parties in
the Agreement, upon the Effective Date, the GK Trustee and the GK
bankruptcy estate waive and release any and all ownership claims to the
Kelco Liquidation Proceeds.  Notwithstanding the waiver and release set
forth herein, (a) the GK Trustee has not waived and/or released and shall
be allowed to continue to prosecute her claim(s) filed in the TVG
Bankruptcy Case for the benefit of the GK bankruptcy estate, and (b) all
other rights of the GK Trustee and the TVG bankruptcy estate are
preserved.  The Kelco Liquidation Proceeds shall remain in the TVG
bankruptcy estate for administration and payment by the TVG Trustee as
follows:

      a.    First, within five (5) business days of the Effective Date, the
            TVG Trustee shall pay CAL II the Allowed Payoff Request in

1    accordance with Section 6.b. of the TVG CAL II Settlement

2    provided, however, that the TVG Trustee shall not withhold

3    20% from the Allowed Payoff Request or the Kelco

4    Liquidation Proceeds for the allowed unsecured claimants of

5    the TVG bankruptcy estate; and

6         b.    Thereafter, in accordance with Section 4.b. of the TVG

7    Ruigomez Settlement with the express intent of the TVG

8    Trustee and the GK Trustee to reduce the amount of the TVG

9    Ruigomez Claim.

10        4.    Within five (5) business days of payment of the Allowed Payoff Request,

11    CAL II shall withdraw its Proofs of Claim filed in the GK Bankruptcy

12    Case and the TVG Bankruptcy Case. Except for Claim No. 72 filed by

13    CFS in its capacity as disbursing agent as a general unsecured claim in

14    the amount of $8,698,610.03 in the GK Bankruptcy Case against GK and

15    the GK bankruptcy estate, which the Parties agree CFS shall not be

16    required to withdraw pursuant to the Agreement, CFS has not filed and

17    will not file a Proof of Claim in the GK Bankruptcy Case and the TVG

18    Bankruptcy Case.  Notwithstanding any other provisions in the

19    Agreement, the GK Trustee and CFS expressly reserve all of their rights

20    with respect to Claim No. 72, including, without limitation, the GK

21    Trustee's right to object to and contest the validity and amount of Claim

22    No. 72 and CFS's right to defend against any objection.  The GK Trustee

23    and CFS agree that the Agreement does not allow, validate, disallow or

24    invalidate Claim No. 72.

25        5.    Within five (5) business days of the Effective Date, the GK Trustee shall

26    dismiss with prejudice the CAL II/CFS Dismissal Order Appeal.  The GK

27    Trustee expressly reserves the right to pursue any and all claims that the

28

GK bankruptcy estate has or may have against Joseph D. DiNardo,

including, without limitation, the DiNardo Dismissal Order Appeal.

6.    The Parties shall provide mutual releases.

A true and correct copy of the Agreement is attached as <u>Exhibit 1</u> to the Rund Declaration and
is incorporated herein by reference.

**III.**

**THE COMPROMISE SHOULD BE APPROVED**

**A.    The bankruptcy rules allow the Court to approve compromises of
controversies.**

Rule 9019(a) states that "the court may approve a compromise or settlement." Fed. R.
Bankr. P. 9019(a). The decision of whether a compromise should be accepted or rejected lies
within the sound discretion of the Court. <u>In re Carson</u>, 82 B.R. 847, 852 (Bankr. S.D. Ohio
1987); <u>In re Hydronic Enterprise, Inc.</u>, 58 B.R. 363, 365 (Bankr. D.R.I. 1986); <u>In re Mobile Air
Drilling Co., Inc.</u>, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); <u>Knowles v. Putterbaugh (In re
Hallet)</u>, 33 B.R. 564, 565 (Bankr. D. Me. 1983). For the reasons set forth below, the Court
should approve the Agreement.

Sound discretion is judicial power exercised fairly and equitably. As the Supreme
Court noted, the term "discretion" denotes the absence of a hard and fast rule:

> When invoked as a guide to judicial action, it means a sound
> discretion, that is to say, a discretion exercised not arbitrarily or willfully,
> but with regard to what is right and equitable under the circumstances and
> the law, and directed by the reasonableness and conscience of the judge to
> a just result.

<u>Langnes v. Green</u>, 282 U.S. 531, 541 (1931).

Correspondingly, the Ninth Circuit has recognized that "the bankruptcy court has great
latitude in approving settlements." <u>In re Woodson</u>, 839 F.2d 610, 620 (9th Cir. 1988).

**B.    Case law supports approval of the Agreement.**

It is well-established that, as a matter of public policy, settlements are favored over
continued litigation. <u>See, e.g.</u>, <u>In re A & C Properties</u>, 784 F.2d 1377 (9th Cir. 1986); <u>In re</u>

<u>Blair</u>, 538 F.2d 849, 851 (9th Cir. 1976); <u>In re Heissenger Resources, Ltd.,</u> 67 B.R. 378, 382 (C.D. Ill. 1986).

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case.  <u>See</u> <u>In re General Store of Beverly Hills</u>, 11 B.R. 539 (9th Cir. BAP 1981).  It is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but rather to "canvas the issues and see whether the settlement falls below the lowest point of the range of reasonableness."  <u>Heissenger Resources</u>, 67 B.R. at 383.

Among the factors to be considered in determining whether a settlement is fair, equitable and reasonable are the following:

        (a)     the probability of success in the litigation;

        (b)     any impediments to collection;

        (c)     the complexity, expense, inconvenience, and delay of litigation; and

        (d)     the interest of creditors with deference to their reasonable opinions.

<u>See</u> <u>A & C Properties</u>, 784 F.2d at 1381.

From an analysis of the foregoing factors in this case, the Court should conclude that the terms of the Agreement are fair and equitable and well within the range of reasonableness.

        1.  <u>The probability of success on the disputed matters is not guaranteed.</u>

There are two disputes being resolved by the Agreement.  As between the TVG Trustee and CAL II, all claims between the parties were released back in June 2021 upon entry of the order approving the TVG CAL II Settlement.  As such, the only issue remaining is whether CAL II is entitled to $819,117.77 in legal fees incurred by CAL II defending the CAL II Adversary Action in light of the language of the Dismissal Order, which provides that each party is to bear its own <u>costs</u> and <u>fees</u>.

CAL II took the position the waiver only applied to "costs."  The TVG Trustee disputed CAL II's position since it rendered the word "fees" a nullity.  The TVG Trustee also asserted that the TVG bankruptcy estate had nothing to do with the CAL II Adversary Action – hence, the legal fees should not be charged against the TVG bankruptcy estate.  Instead of litigating

these issues, the TVG Trustee requested and CAL II agreed to a discount of over 80% of the legal fees incurred by CAL II defending the CAL II Adversary Action.

The Agreement also resolves disputes between the two bankruptcy estates as to ownership of Kelco. As stated above, significant payments were made by GK to Kelco (presumably for capital contributions for TVG) commencing in October 2009. Of the $4,160,000.00, GK paid Kelco $160,000.00 during the 7-year period preceding the GK Bankruptcy Case. It is unclear, therefore, whether the GK bankruptcy estate has any direct interest in Kelco.

As was the case with CAL II, the 2 bankruptcy estates agreed to resolve their disputes without litigation, whereby the GK Trustee would retain $160,000 paid by GK to Kelco within the 7-year period preceding the GK Bankruptcy Case and the TVG Trustee would retain the balance of the Kelco Liquidation Proceeds.

2.  There are no impediments to collection.

There is no impediment to collection as the TVG bankruptcy estate is already holding the Kelco Liquidation Proceeds.

3.  The complexity of issues and expense for the estate.

The legal and factual issues involved are not complex. However, absent the Agreement, this estate will have to incur fees and expenses in formally litigating the disputed matters, likely in two separately bankruptcy cases, with no guarantee of a better result.

4.  The Agreement benefits the estate's creditors.

The Agreement resolves all disputes between the two bankruptcy estates as to the Kelco Liquidation Proceeds and ends the litigation commenced by the GK Trustee against CAL II and CFS. More importantly, the Agreement paves the road to immediate payoff by the TVG Trustee of CAL II (after applying a discount of $669,117.77 in legal fees) and allows the TVG Trustee to pay a significant distribution to the Ruigomez Creditors pursuant to Section 4.b. of the TVG Ruigomez Settlement. The other creditors of the TVG bankruptcy estate will benefit as well since the TVG Ruigomez Settlement allows holdback of administrative claims and a 20% carveout for the unsecured creditors of the estate.

1  Accordingly, the TVG Trustee submits that the Agreement is fair, reasonable, and in the

2  best interest of the estate and its creditors, and should therefore be approved by the Court.

3  **IV.**

4  **CONCLUSION**

5  Based on the foregoing, the TVG Trustee respectfully requests that the Court enter an

6  order:

7  1.    Granting the Motion;

8  2.    Approving the Agreement;

9  3.    Authorizing and directing the TVG Trustee, the GK Trustee, CAL II, and CFS to

10  take any and all steps necessary to effectuate the Agreement; and

11  4.    Providing such other and further relief as is just and proper.

12
DATED: March 23, 2023                    LEVENE, NEALE, BENDER, YOO &
13                                        GOLUBCHIK L.L.P.

14                                        By:    */s/ Carmela T. Pagay*
15                                              TIMOTHY J. YOO
                                              CARMELA T. PAGAY
16                                         Attorneys for Jason M. Rund
                                              Chapter 7 Trustee
17

12

## <u>DECLARATION OF JASON M. RUND</u>

I, Jason M. Rund, declare as follows:

1.     I am the duly-appointed, qualified, and acting Chapter 7 Trustee for the bankruptcy estate of Thomas Vincent Girardi. I have personal knowledge of the matters set forth herein and if called as a witness could and would testify competently thereto.  I submit this Declaration in support of the accompanying Motion to Approve Compromise with Elissa Miller, Chapter 7 Trustee, California Attorney Lending II, Inc., a New York corporation, and Counsel Financial Services, LLC, a Delaware limited liability company (the "Motion").  Unless the context indicates otherwise, capitalized terms herein shall have the meaning as defined in the Motion.

2.     I am requesting authority to enter into and consummate the Agreement that I entered into with the GK Trustee, CAL II, and CFS concerning various disputes among us.  A true and correct copy of the Agreement is attached hereto as <u>Exhibit 1</u> and is incorporated herein by reference.

3.     According to my investigation, TVG holds a 45% membership interest in Kelco. Kelco was formed on or about October 1, 2009 and acquired the Kelco Property.

4.     Although the 45% membership interest in Kelco is in the name of TVG, GK paid approximately $4,160,000.00 to Kelco commencing in October 2009, presumably as capital contributions for TVG.  Of the $4,160,000.00, GK paid Kelco $160,000.00 during the 7-year period preceding the GK Bankruptcy Case petition date.

5.     On or about December 27, 2022, the GK Trustee filed a complaint against Kelco to avoid and recover the Fraudulent Transfers, commencing the Kelco Avoidance Action.

6.     Given that a sale of the Kelco Property was imminent, the GK Trustee, Kelco, and I agreed to stay the Kelco Avoidance Action for 180 days (subject to further extension) and further agreed that if, during the stay, Kelco liquidated any of its assets, Kelco would deliver and remit to me the Kelco Liquidation Proceeds, <u>provided</u>, <u>however</u>, that I would deliver and remit the Kelco Reserve to the GK Trustee on account of the Fraudulent Transfers.  The parties also agreed that the Kelco Adversary Action would be dismissed, with prejudice, within five (5)

business days of the GK Trustee's receipt of the Kelco Reserve.  The Bankruptcy Court approved the stipulated agreement between the parties by order entered February 2, 2023.

7.      The Kelco Property sold and on February 16, 2023, I received $8,115,666.51 of Kelco Liquidation Proceeds.  On February 21, 2023, I delivered and remitted $160,000.00 to the GK Trustee to fund the Kelco Reserve.  Consequently, I am holding $7,955,666.51 in Kelco Liquidation Proceeds, and the GK Trustee is holding $160,000.00 in the Kelco Reserve.  I understand that the Kelco Avoidance Action was subsequently dismissed, with prejudice.

8.      On March 12, 2021, I filed the TVG Ruigomez Compromise Motion.  Attached to the TVG Ruigomez Compromise Motion as Exhibit 7 is the TVG Ruigomez Settlement entered into by and between the Ruigomez Creditors and me.  The TVG Ruigomez Compromise Motion was approved by order of the Bankruptcy Court entered April 20, 2021.

9.      Pursuant to the TVG Ruigomez Settlement (i) the Ruigomez Creditors have the allowed TVG Ruigomez Claim with a perfected security interest in all of TVG's personal property and all real property of TVG in Riverside and Los Angeles Counties that existed on the petition date and a reservation of rights to seek post-petition interest, and (ii) mutually released claims by me and the Ruigomez Creditors.  Section 4.b. of the TVG Ruigomez Settlement also provides:

> "For each Ruigomez Collateral being administered, the sale
> proceeds shall be distributed in the following order of priority: (1)
> liens senior to the Ruigomez Liens, taxes arising from the sale
> (including transfer and income taxes), and ordinary costs of sale
> (including broker commissions, escrow, etc.); (2) the
> administrative fees and costs of the bankruptcy estate; (3) 80% of
> the balance to the Ruigomez Creditors to be applied towards the
> Ruigomez Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee
> to be held in trust for the allowed unsecured claimants of the
> bankruptcy estate."

10.     On May 19, 2021, I filed the TVG CAL II Compromise Motion.  Attached to the TVG CAL II Compromise Motion as Exhibit 6 is the TVG CAL II Settlement entered into by and between CAL II and myself.  The TVG CAL II Compromise Motion was approved by order of the Bankruptcy Court entered June 21, 2021.

11.     Pursuant to the TVG CAL II Settlement (i) CAL II has an allowed TVG CAL II Claim with a perfected security interest in all of TVG's personal property with the exception of cash and bank accounts and a reservation of rights to seeks post-petition interest, and (ii) mutually released claims by me and CAL II.

12.     As to the Kelco Liquidation Proceeds currently held by me in this estate, CAL II has a first priority lien position, and the Ruigomez Creditors have a second priority lien position.

13.     During the course of the GK Bankruptcy Case and this case, the GK Trustee and I have made certain payments to CAL II on account of the GK CAL II Claim and the TVG CAL II Claim.

14.     On February 22, 2023, CAL II submitted its payoff statement to me in the total amount of $3,343,271.06 with per diem interest at $491.61 (the "Payoff Request").  Included in the Payoff Request is $1,162,685.12 in legal fees, including $819,117.77 in legal fees incurred by CAL II defending the CAL II Adversary Action.  The GK Trustee and I both dispute the entitlement to and the amount of legal fees asserted by CAL II.   A true and correct copy of the Payoff Request is attached hereto as Exhibit 2 and is incorporated herein by reference.

15.     Following extensive discussions and negotiations, the Parties entered into the Agreement to resolve the issues and claims raised hereinabove, including the issues and claims related to the Kelco Liquidation Proceeds, the Kelco Reserve, the CAL II/CFS Dismissal Order Appeal, and the CAL II Payoff Request.

16.     The Agreement resolves the dispute between this estate and the GK estate concerning ownership of the membership interest in Kelco, and consequently, entitlement to the Kelco Liquidation Proceeds, thereby eliminating any delay and cost associated with litigating such dispute.

17.  Additionally, the Agreement results in a significant reduction in the amount of $669,117.77 of the Payoff Request asserted by CAL II, the first priority lienholder against the Kelco Liquidation Proceeds without the need for a formal objection.

18.  Moreover, the Agreement allows me to fulfill my payment obligations under the TVG Ruigomez Settlement and the TVG CAL II Settlement.

19.  Therefore, I believe that I have exercised sound business judgment in entering into the Agreement and respectfully request that it be approved by this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on March 23, 2023 at El Segundo, California.

JASON M. RUND

# EXHIBIT "1"

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into by and between ELISSA D. MILLER, solely in her capacity as the chapter 7 trustee of the bankruptcy estate of Girardi Keese (the "GK Trustee"), JASON M. RUND, solely in his capacity as the chapter 7 trustee of the bankruptcy estate of Thomas V. Girardi (the "TVG Trustee"), CALIFORNIA ATTORNEY LENDING II, INC., a New York Corporation ("CAL II"), and COUNSEL FINANCIAL SERVICES, LLC, a Delaware limited liability company ("CFS").  The GK Trustee, the TVG Trustee, CAL II and CFS may hereinafter be referred to individually as a "Party" or collectively as the "Parties."

## RECITALS

### The Bankruptcy Cases

A.      On December 18, 2020, an involuntary chapter 7 bankruptcy petition was filed against Girardi Keese ("GK") commencing Case No. 2:20-bk-21022-BR (the "GK Bankruptcy Case") in the U.S. Bankruptcy Court for the Central District of California (the "Bankruptcy Court").  The petitioning creditors moved for the appointment of an interim trustee which was granted by the Bankruptcy Court by order entered January 5, 2021.  The GK Trustee was appointed as the interim chapter 7 trustee on January 6, 2021.  The order for relief was entered January 13, 2021 and, the same date, the GK Trustee was reappointed and has been serving in that capacity since.

B.      On December 18, 2020, an involuntary chapter 7 bankruptcy petition was also filed against Thomas V. Girardi ("TVG").  The TVG Trustee was appointed interim trustee on January 5, 2021.  The order for relief was entered in that case on January 13, 2021, and the TVG Trustee was reappointed as chapter 7 trustee.  The case is pending before the Bankruptcy Court as Case No. 2:20-bk-21020-BR (the "TVG Bankruptcy Case").

### Kelco Properties, LLC, the Kelco Avoidance Action and Sale of the Kelco Property

C.      TVG holds a 45% membership interest in Kelco Properties, LLC, a California limited liability company ("Kelco").  Kelco was formed on or about October 1, 2009 and acquired certain unimproved real property consisting of approximately 54.8 acres of land in Riverside County, California (the "Kelco Property").

D.      Although the 45% membership interest in Kelco is in the name of TVG, GK paid approximately $4,160,000.00 to Kelco commencing in October 2009, presumably as capital contributions for TVG.  Of the $4,160,000.00, GK paid Kelco $160,000.00 (the "Fraudulent Transfers") during the 7-year period preceding the GK Bankruptcy Case petition date.  It is unclear, therefore, whether TVG or GK should be considered as the holder of the 45% membership interest in Kelco.

E.      On December 27, 2022, the GK Trustee filed a complaint against Kelco to avoid and recover the Fraudulent Transfers, commencing Adversary Case No. 2:22-ap-01249-BR (the "Kelco Avoidance Action").

2936484.1

F.      Given that a sale of the Kelco Property was imminent, the GK Trustee, the TVG Trustee and Kelco agreed to stay the Kelco Adversary Action for 180 days (subject to further extension) and further agreed that if, during the stay, Kelco liquidated any of its assets, Kelco would deliver and remit to the TVG Trustee the net sales proceeds representing TVG's 45% interest in Kelco (the "Kelco Liquidation Proceeds"), provided, however, that the total sum of $160,000.00 from the Kelco Liquidation Proceeds (the "Kelco Reserve") would be delivered and remitted by the TVG Trustee to the GK Trustee on account of the Fraudulent Transfers.  The parties also agreed that the Kelco Adversary Action would be dismissed, with prejudice, within five (5) business days of the GK Trustee's receipt of the Kelco Reserve.  The Bankruptcy Court approved the stipulated agreement between the parties by order entered February 2, 2023.

G.      The Kelco Property sold and on February 16, 2023, the TVG Trustee received $8,115,666.51 of Kelco Liquidation Proceeds.  On February 21, 2023, the TVG Trustee delivered and remitted $160,000.00 to the GK Trustee to fund the Kelco Reserve.  Consequently, the TVG Trustee is holding $7,955,666.51 in Kelco Liquidation Proceeds and the GK Trustee is holding $160,000.00 in the Kelco Reserve.  The Kelco Avoidance Action was subsequently dismissed, with prejudice.

**Secured Claims of CAL II and the Ruigomez Creditors in the TVG Bankruptcy Case**

H.      On March 12, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to Approve Compromise under FRBP 9019* (the "TVG Ruigomez Compromise Motion").  Attached to the TVG Ruigomez Compromise Motion as Exhibit 7 is the Settlement Agreement (the "TVG Ruigomez Settlement") entered into by and between the TVG Trustee and Joseph Ruigomez, Kathleen Ruigomez and Jaime Ruigomez (the "Ruigomez Creditors").  The TVG Ruigomez Compromise Motion was approved by order of the Bankruptcy Court entered April 20, 2021.

I.      Pursuant to the TVG Ruigomez Settlement (i) the Ruigomez Creditors have an allowed claim in the amount of $11,747,245.95 as of the TVG Bankruptcy Case petition date (the "TVG Ruigomez Claim") with a perfected security interest in all of TVG's personal property and all real property of TVG in Riverside and Los Angeles Counties that existed on the petition date and a reservation of rights to seek post-petition interest, and (ii) the TVG Trustee and the Ruigomez Creditors mutually released claims.  Section 4.b. of the TVG Ruigomez Settlement also provides:

"For each Ruigomez Collateral being administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to the Ruigomez Liens, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the administrative fees and costs of the bankruptcy estate; (3) 80% of the balance to the Ruigomez Creditors to be applied towards the Ruigomez Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate."

J.      On May 19, 2021, the TVG Trustee filed his *Chapter 7 Trustee's Motion to Approve Compromise of Controversy under FRBP 9019 with California Attorney Lending II* (the "TVG CAL II Compromise Motion").  Attached to the TVG CAL II Compromise Motion as Exhibit 6 is the Settlement Agreement (the "TVG CAL II Settlement") entered into by and

between the TVG Trustee and CAL II.  The TVG CAL II Compromise Motion was approved by order of the Bankruptcy Court entered June 21, 2021.

K.    Pursuant to the TVG CAL II Settlement (i) CAL II has an allowed claim in the amount of $6,402,213.49 plus $97,548.29 in legal fees as of the TVG Bankruptcy Case petition date (the "TVG CAL II Claim") with a perfected security interest in all of TVG's personal property with the exception of cash and bank accounts and a reservation of rights to seeks post-petition interest, and (ii) the TVG Trustee and CAL II mutually released claims.  Section 6.b. of the TVG CAL II Settlement also provides:

> "For each CAL II's Collateral being administered, the sale proceeds shall be distributed in the following order of priority: (1) liens senior to CAL II's liens (if any), *allowed* claim of exemption, taxes arising from the sale (including transfer and income taxes), and ordinary costs of sale (including broker commissions, escrow, etc.); (2) the reasonable, necessary administrative fees and costs of the bankruptcy estate assembling, acquiring and disposing of said Collateral; (3) 80% of the balance to be applied towards CAL II's Claim; and (4) the remainder (*i.e.*, 20%) to the Trustee to be held in trust for the allowed unsecured claimants of the bankruptcy estate.  To be clear, CAL II will continue to receive the foregoing 80% distributions until CAL II's Claim is paid in full.  Once CAL II has been paid in full from this Case and the Girardi Keese Case, the sale proceeds shall be distributed in accordance with the Settlement Agreement previously approved by the Bankruptcy Court between the Trustee and the Ruigomez Creditors."

L.    As to the Kelco Liquidation Proceeds currently held by the TVG Trustee in the TVG bankruptcy estate, CAL II has a first priority lien position and the Ruigomez Creditors have a second priority lien position.

**Secured Claim of CAL II in the GK Bankruptcy Case and the CAL II Adversary Action**

M.    On May 11, 2021, the GK Trustee filed her *Motion for Order Approving Compromise with California Attorney Lending II, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "GK CAL II Compromise Motion").  Attached to the GK CAL II Compromise Motion as Exhibit 5 is the Settlement Agreement (the "GK CAL II Settlement") entered into by and between the GK Trustee and CAL II.  The GK CAL II Compromise Motion was approved by order of the Bankruptcy Court entered June 9, 2021.

N.    Pursuant to the GK CAL II Settlement, CAL II has an allowed claim in the amount of $6,508,361.55 as of the GK Bankruptcy Case petition date (the "GK CAL II Claim") with a first priority perfected security interest in substantially all of GK's personal property assets and a reservation of rights to seek post-petition interest and reasonable fees, costs or charges.

O.    On August 31, 2022, the GK Trustee filed a complaint against CAL II, CFS, and Joseph D. DiNardo for declaratory relief and other claims for relief, commencing Adversary Case No. 2:22-ap-01169-BR (the "CAL II Adversary Action").

P.    CAL II and CFS jointly filed a motion to dismiss the CAL II Adversary Action which the Bankruptcy Court granted, with prejudice and without leave to amend, by order

FINAL                                        3

entered February 16, 2023 (the "<u>Dismissal Order</u>").  The Dismissal Order provides that each party is to bear its own costs and fees.  The GK Trustee has appealed the Dismissal Order and elected to have the appeal heard by the United States District Court for the Central District of California, Case No. 2:23-cv-01637-MEMF (the "<u>CAL II/CFS Dismissal Order Appeal</u>").

     Q.     Joseph D. DiNardo also filed a motion to dismiss the CAL II Adversary Action which was granted, with prejudice and without leave to amend, by the Bankruptcy Court.  The GK Trustee has appealed this dismissal order as well and also elected to have the appeal heard by the United State District Court for the Central District of California (the "<u>DiNardo Dismissal Order Appeal</u>").

**The CAL II Payoff Request**

     R.     During the course of the GK Bankruptcy Case and the TVG Bankruptcy Case, the GK Trustee and the TVG Trustee have made certain payments to CAL II on account of the GK CAL II Claim and the TVG CAL II Claim.

     S.     On February 22, 2023, CAL II submitted its payoff statement to the TVG Trustee in the total amount of $3,343,271.06 with per diem interest at $491.61 (the "<u>Payoff Request</u>"). Included in the Payoff Request is $1,162,685.12 in legal fees, including $819,117.77 in legal fees incurred by CAL II defending the CAL II Adversary Action.  The TVG Trustee and the GK Trustee both dispute the entitlement to and the amount of legal fees asserted by CAL II.

     T.     The Parties have reached this Agreement to resolve the issues and claims raised in the Recitals including the issues and claims related to the Kelco Liquidation Proceeds, the Kelco Reserve, the CAL II/CFS Dismissal Order Appeal, and the CAL II Payoff Request.

     NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants, conditions, promises, and agreements contained herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

**ARTICLE 1
APPROVAL ORDER AND BINDING EFFECT**

     **1.1.**    <u>**Binding Effect**</u>.  This Agreement shall become effective and binding only upon entry by the Bankruptcy Court of a final order approving the Agreement (the "<u>Approval Order</u>") in both the GK Bankruptcy Case and the TVG Bankruptcy Case.  The Approval Order is "final" after it is entered unless an appeal is timely filed or a stay pending appeal is obtained.  In the event of a timely-filed appeal or stay, the order shall become final if and when the appeal is resolved in favor of the GK Trustee and/or the TVG Trustee.  In the event the stay pending appeal is lifted prior to the resolution of the appeal, the order shall become final upon the lifting of the stay pending appeal.  The "<u>Effective Date</u>" of this Agreement shall be the first business day after the Approval Order becomes final in both the GK Bankruptcy Case and the TVG Bankruptcy Case.  In the event that this Agreement is not approved by the Bankruptcy Court with a final Approval Order in both the GK Bankruptcy Case and the TVG Bankruptcy Case, this Agreement shall become null and void and of no force or effect.

**1.2.    Court Approval**.  Upon execution of this Agreement by the Parties, the GK Trustee and the TVG Trustee will timely file motions to be set for hearing on April 18, 2023 at 10:00 a.m. seeking Bankruptcy Court approval of this Agreement in the GK Bankruptcy Case and the TVG Bankruptcy Case, respectively.  The GK Trustee and the TVG Trustee shall use their best efforts to obtain the Bankruptcy Court's approval of the motions and this Agreement, and the Parties shall cooperate in this regard and in defending against an appeal of the Bankruptcy Court's approval of each motion.

## ARTICLE 2
## TERMS OF SETTLEMENT

**2.1.    The Allowed CAL II Payoff Request**.  CAL II has agreed to reduce the legal fees asserted in the Payoff Request by a total of $669,117.77.  As of the Effective Date and in full and complete satisfaction of both the TVG CAL II Claim and the GK CAL II Claim, CAL II shall have a single allowed Payoff Request as of February 22, 2023 in the amount of $2,674,153.29 plus per diem interest of $491.61 from February 22, 2023 until paid in full as set forth in this Agreement (the "Allowed Payoff Request").

**2.2.    The TVG Trustee's Waiver and Release of Claims to the Kelco Reserve**.  Except for the obligations and benefits set forth by and for the Parties in this Agreement, upon the Effective Date, the TVG Trustee and the TVG bankruptcy estate waive and release any and all ownership claims to the Kelco Reserve.  The Kelco Reserve shall remain in the GK bankruptcy estate for administration by the GK Trustee.  Notwithstanding the waiver and release set forth in this Section 2.2, (i) the TVG Trustee has not waived and/or released and shall be allowed to continue to prosecute his claim(s) filed in the GK Bankruptcy Case for the benefit of the TVG bankruptcy estate, and (ii) all other rights of the TVG Trustee and the TVG bankruptcy estate are preserved.

**2.3.    The GK Trustee's Waiver and Release of Claims to the Kelco Liquidation Proceeds**.  Except for the obligations and benefits set forth by and for the Parties in this Agreement, upon the Effective Date, the GK Trustee and the GK bankruptcy estate waive and release any and all ownership claims to the Kelco Liquidation Proceeds.  Notwithstanding the waiver and release set forth in this Section 2.3, (i) the GK Trustee has not waived and/or released and shall be allowed to continue to prosecute her claim(s) filed in the TVG Bankruptcy Case for the benefit of the GK bankruptcy estate, and (ii) all other rights of the GK Trustee and the TVG bankruptcy estate are preserved.  The Kelco Liquidation Proceeds shall remain in the TVG bankruptcy estate for administration and payment by the TVG Trustee as follows:

**(a)**    First, within five (5) business days of the Effective Date, the TVG Trustee shall pay CAL II the Allowed Payoff Request in accordance with Section 6.b. of the TVG CAL II Settlement provided, however, that the TVG Trustee shall not withhold 20% from the Allowed Payoff Request or the Kelco Liquidation Proceeds for the allowed unsecured claimants of the TVG bankruptcy estate; and

**(b)**    Thereafter, in accordance with Section 4.b. of the TVG Ruigomez Settlement with the express intent of the TVG Trustee and the GK Trustee to reduce the amount of the TVG Ruigomez Claim.

**2.4.    Withdrawal of CAL II Claims; No Further CFS Claims**.  Within five (5) business days of payment of the Allowed Payoff Request, Cal II shall withdraw its Proofs of Claim filed in the GK Bankruptcy Case and the TVG Bankruptcy Case. Except for Claim No. 72 filed by CFS in its capacity as disbursing agent as a general unsecured claim in the amount of $8,698,610.03 in the GK Bankruptcy Case against GK and the GK bankruptcy estate, which the Parties agree CFS shall not be required to withdraw pursuant to this Agreement, CFS has not filed and will not file a Proof of Claim in the GK Bankruptcy Case and the TVG Bankruptcy Case.  Notwithstanding any other provisions in this Agreement, the GK Trustee and CFS expressly reserve all of their rights with respect to Claim No. 72, including, without limitation, the GK Trustee's right to object to and contest the validity and amount of Claim No. 72 and CFS's right to defend against any objection.  The GK trustee and CFS agree that this Agreement does not allow, validate, disallow or invalidate Claim No. 72.

**2.5.    Dismissal of the CAL II/CFS Dismissal Order Appeal**.  Within five (5) business days of the Effective Date, the GK Trustee shall dismiss with prejudice the CAL II/CFS Dismissal Order Appeal.  The GK Trustee expressly reserves the right to pursue any and all claims that the GK bankruptcy estate has or may have against Joseph D. DiNardo, including, without limitation, the DiNardo Dismissal Order Appeal.

**2.6.    Releases**.

**(a)    Release of the GK Trustee, the GK Bankruptcy Estate, the TVG Trustee, and the TVG Bankruptcy Estate**.

Upon the Effective Date and except for the obligations and benefits set forth by and for the Parties in this Agreement, CAL II and CFS hereby release and forever discharge the GK bankruptcy estate, the TVG bankruptcy estate, the GK Trustee, the TVG Trustee, and the GK Trustee's and the TVG Trustee's attorneys and agents, each in their capacity(ies) as such (collectively, the "Trustee Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs, and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that CAL II and/or CFS have or may have against any, some, or all of the Trustee Released Parties in connection with, arising out of or related to the GK Bankruptcy Case and the TVG Bankruptcy Case.

For the avoidance of doubt, the claims being released herein shall include any and all legal fees incurred by CAL II or CFS arising out of or relating to CAL II's or CFS's involvement with GK and/or TVG including any legal fees incurred by CAL II or CFS defending claims brought against CAL II or CFS by third parties other than the GK Trustee or the TVG Trustee.

**(b)    Release of CAL II and CFS**.

Upon the Effective Date and except for the obligations and benefits set forth by and for the Parties in this Agreement, the GK Trustee on behalf of the GK bankruptcy estate and the TVG Trustee on behalf of the TVG bankruptcy estate (collectively, the "Trustee Releasors")

hereby release and forever discharge CAL II and CFS and their attorneys and agents (the "CAL II Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that the Trustee Releasors have or may have against the CAL II Released Parties in connection with, arising out of or related to the GK Bankruptcy Case and the TVG Bankruptcy Case.

For the avoidance of doubt, the CAL II Released Parties shall not include Joseph D. DiNardo, in his individual capacity (not as an agent or representative of CFS or CAL II), or any law firm or law practice that Joseph D. DiNardo has in the past, is currently or will become associated with in the future.

    **(c)**    **Unknown Claims**.

The Parties each acknowledge and assume the risk that subsequent to the execution of the Settlement Agreement, he, she, or it may discover facts or law, or may incur, suffer, or discover losses, damages, or injuries that are unknown and unanticipated at the time the Settlement Agreement was executed or became effective, which if known at such time may have materially affected his, her, or its decision to give the release contained herein.

    **(d)**    **Section 1542 Waiver**.

The GK Trustee on behalf of the GK bankruptcy estate, the TVG Trustee on behalf of the TVG bankruptcy estate, CAL II and CFS waive any and all rights they might otherwise possess under California Civil Code Section 1542 and similar provisions of law existing in any other jurisdiction.

California Civil Code Section 1542 provides as follows:

A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

**3.1.**    **No Undisclosed Inducements**.  The Parties represent that they have entered into this Agreement in reliance on their own investigation and that no representations, warranties, or promises other than those set forth in this Agreement were made by the Parties or their agents, employees, or counsel to induce either Party to enter into this Agreement.

**3.2.**    **Representation by Counsel**.  Each Party represents that he, she or it has obtained independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom.  The Parties

acknowledge that they are executing this Agreement voluntarily, without any duress or undue influence.

   **3.3.    Authority to Execute Agreement**.  The Parties warrant and represent that they are authorized to execute this Agreement on behalf of the respective parties and in their respective capacities as indicated below, provided however that the GK Trustee's and the TVG Trustee's execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

**ARTICLE 4**
**GENERAL PROVISIONS**

   **4.1.    Integration**.  This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof and no change, modification, amendment, termination or discharge of this Agreement shall be binding unless made in writing and executed by each of the parties.  All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party to another party with respect to the subject matter of this Agreement.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby.

   **4.2.    No Third-Party Beneficiaries**.  This Agreement is not for the benefit of any person who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement, and the provisions of this Agreement are not intended to affect the rights of any party or non-party against any person or entity who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement.

   **4.3.    Attorneys' Fees**.  With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, his/her/its reasonable attorneys' fees (other than the attorneys' fees and costs to prepare this Agreement and seek Bankruptcy Court approval of this Agreement).

   **4.4.    Survival**.  It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith.  All representations, warranties and covenants herein shall survive the execution of this Agreement.

**4.5.    Further Documentation**.  Following the date hereof, the parties must take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

**4.6.    Governing Law**.  This Agreement and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.

**4.7.    Jurisdiction**.  In the event a dispute arises under this Agreement, the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Agreement.

**4.8.    Interpretation**.  This Agreement shall be treated as jointly drafted and will not be construed against any Party as drafter.  Furthermore, in the event of any ambiguity in or dispute regarding the interpretation of this Agreement, the interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes the uncertainty to exist or against the draftsperson.

**4.9.    Meaning of Pronouns and Effect of Headings**.  As used in the Agreement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires.  The captions and paragraph headings in the Agreement are inserted solely for convenience or reference and shall not restrict, limit or otherwise affect the meaning of the Agreement.

**4.10.    Counterparts and Electronic Signatures**.  This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement.  A signature sent and received by facsimile or other electronic means shall constitute an original signature for purposes of this Agreement.  An electronic signature shall constitute an original signature for purposes of this Agreement.

**4.11.    Severability**.  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof.  If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

**4.12.    Waiver**.  No breach of any provision herein can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  No failure or delay on the part of any Party to exercise any right hereunder, nor any other indulgence of such Party, shall operate as a waiver of any other rights hereunder, nor shall any single exercise by any Party of any right hereunder preclude any other or further exercise thereof.  The rights and remedies herein provided are cumulative and not exclusive of any right or remedies provided by law.

**4.13.    Binding on Successors**.  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties,

including but not limited to any successor trustee and GK and TVG after the case is dismissed or closed.

**4.14.** __No Assignments or Delegation of Rights__.  No Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

**4.15.** __Further Assurances__.  The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

**4.16.** __Full Authority to Sign Agreement__.  Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the GK Trustee and the TVG Trustee, to bind their respective estate, subject only to approval of the Bankruptcy Court.

**4.17.** __Parties to Bear Own Costs__.  Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.

**4.18.** __Recitals Acknowledged__.  The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.


**IN WITNESS WHEREOF**, the Parties hereto hereby execute this Agreement as of the date of final signature below.

CALIFORNIA ATTORNEY LENDING II, INC.

DATED:  March _21_ , 2023

By: _____
      Paul R. Cody
Its: President & CEO


DATED:  March _21_ , 2023       COUNSEL FINANCIAL SERVICES, LLC

By: _____
      Megan B. Payne
Its: _____Vice President_____

DATED:  March _20_, 2023

_____

ELISSA D. MILLER, solely in her capacity as
Chapter 7 Trustee of the Girardi Keese estate

DATED:  March ___, 2023

_____

JASON M. RUND, solely in his capacity as
Chapter 7 Trustee of the Thomas V. Girardi estate

DATED:  March ____, 2023

_____
ELISSA D. MILLER, solely in her capacity as
Chapter 7 Trustee of the Girardi Keese estate


DATED:  March *21*, 2023

_____
JASON M. RUND, solely in his capacity as
Chapter 7 Trustee of the Thomas V. Girardi estate

FINAL                                                    11

# EXHIBIT "2"

**California Attorney Lending II, Inc**                         Statement date:         **2/22/2023**
P.O. Box 843758
Dallas, TX 75284-3758


**Jason M. Rund, Ch. 7 Trustee for the estate of Thomas Vincent Girardi**
Attention: Timothy J. Yoo, Attorney for Jason M. Rund
10250 Constellation Boulevard, Ste. 1700
Los Angeles, CA 90067
Email: tjy@lnbyb.com


| Date | Transaction | | Account Balance |
|------|-------------|--|----------------:|
| 12/18/20 | Allowed Claim Settlement Amount | $ | 6,402,213.49 |
| 05/19/21 | Legal Fees as of Petition Date Attributable to Debtor (1/3) | $ | 97,548.29 |
| 06/30/21 | Abikzer pmt 1, CK#1097 | $ | (2,093,235.90) |
| 06/30/21 | Abikzer pmt 2, CK#1098 | $ | (2,012,500.00) |
| 08/05/21 | 1122 Wilshire Blvd Sale Proceeds, CK#2008 | $ | (600,000.00) |
| | **Pre-Petition Balance Remaining:** | **$** | **1,794,025.88** |
| 08/12/21 | CK#400166560, Morgan Stanley | $ | (147,474.24) |
| 09/15/21 | CK#2014, Jason M. Rund, Trusee | $ | (124,391.60) |
| 11/12/21 | Post-petition annual closing fee due 11/12/21 | $ | 22,759.63 |
| 02/22/22 | Post-petition interest | $ | 635,666.28 |
| 02/22/22 | Legal Fees post-petition attributable to TVG (full amount) | $ | 1,162,685.12 |
| | **Post-Petition Balance Remaining:** | **$** | **3,343,271.06** |
| | **Per Diem** | **$** | **491.61** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH ELISSA MILLER, CHAPTER 7 TRUSTEE, CALIFORNIA ATTORNEY LENDING II, INC., A NEW YORK CORPORATION, AND COUNSEL FINANCIAL SERVICES, LLC, A DELAWARE LIMITED LIABILITY COMPANY; DECLARATION OF JASON M. RUND IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 24, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Rafey Balabanian    rbalabanian@edelson.com, docket@edelson.com;5926930420@filings.docketbird.com
- Shraddha Bharatia    notices@becket-lee.com
- Ori S Blumenfeld    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- Evan C Borges    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- Richard Dennis Buckley    rbuckley@safarianchoi.com
- Jacquelyn H Choi    jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com
- Marie E Christiansen    mchristiansen@vedderprice.com, ecfladocket@vedderprice.com,marie-christiansen-4166@ecf.pacerpro.com
- Jennifer Witherell Crastz    jcrastz@hrhlaw.com
- Ashleigh A Danker    adanker731@gmail.com
- Clifford S Davidson    csdavidson@swlaw.com, jlanglois@swlaw.com;cliff-davidson-7586@ecf.pacerpro.com;pdxecf@swlaw.com
- Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
- Lei Lei Wang Ekvall - DECEASED -    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Jeremy Faith    Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- James J Finsten    , jimfinsten@hotmail.com
- James J Finsten    jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- Larry W Gabriel    lgabrielaw@outlook.com, tinadow17@gmail.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Rosendo Gonzalez    rossgonzalez@gonzalezplc.com, rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**

- Suzanne C Grandt    suzanne.grandt@calbar.ca.gov, joan.randolph@calbar.ca.gov
- Stella A Havkin    stella@havkinandshrago.com, shavkinesq@gmail.com
- M. Jonathan Hayes    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
- Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
- Bradford G Hughes    bhughes@Clarkhill.com, mdelosreyes@clarkhill.com
- Brandon J Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Lewis R Landau    Lew@Landaunet.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Marc A Lieberman    marc.lieberman@flpllp.com, safa.saleem@flpllp.com
- Craig G Margulies    Craig@MarguliesFaithlaw.com,
  Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Peter J Mastan    peter.mastan@dinsmore.com,
  SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com
- Edith R. Matthai    ematthai@romalaw.com, lrobie@romalaw.com
- Daniel J McCarthy    dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;nchacon@hfbllp.com
- Jack Meyer    jmeyer@mckoolsmith.com
- Elissa Miller    elissa.miller@gmlaw.com,
  emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com
- Eric A Mitnick    MitnickLaw@gmail.com, mitnicklaw@gmail.com
- Scott Olson    scott.olson@bclplaw.com, scott-olson-2161@ecf.pacerpro.com,ecfsfdocket@vedderprice.com,nortega@vedderprice.com
- Carmela Pagay    ctp@lnbyb.com
- Carmela Pagay    ctp@lnbyg.com
- Ambrish B Patel    apatelEI@americaninfosource.com
- Leonard Pena    lpena@penalaw.com,
  penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- Michael J Quinn    mquinn@vedderprice.com, ecfladocket@vedderprice.com,michael-quinn-2870@ecf.pacerpro.com,ahirschkowitz@vedderprice.com
- Matthew D. Resnik    Matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Kevin C Ronk    Kevin@portillaronk.com, Attorneys@portillaronk.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- William F Savino    wsavino@woodsoviatt.com, lherald@woodsoviatt.com
- Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com
- Amir Shakoorian    AShakoorian@GGTrialLaw.com
- Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- Gary A Starre    gastarre@gmail.com, mmoonniiee@gmail.com
- Richard P Steelman    rps@lnbyg.com, john@lnbyb.com
- Philip E Strok    pstrok@swelawfirm.com,
  gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Terrence Swinson    terrenceswinson@gmail.com
- Boris Treyzon    btreyzon@actslaw.com, pjs@actslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Christopher K.S. Wong    christopher.wong@afslaw.com, yvonne.li@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                        F 9013-3.1.PROOF.SERVICE

**2. SERVED BY UNITED STATES MAIL**: On **March 24, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| Honorable Barry Russell<br>United States Bankruptcy Court<br>255 E. Temple Street, Suite 1660<br>Courtroom 1668<br>Los Angeles, CA 90012 | | |
| Thomas Vincent Girardi<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017 | Thomas Vincent Girardi<br>Belmont Village Senior Living<br>455 East Angeleno Avenue<br>Burbank, CA 91501 | Thomas Vincent Girardi<br>100 N. Los Altos Drive<br>Pasadena, CA 91105 |

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 24, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 24, 2023 | Damon Woo | /s/ Damon Woo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**